# United States District Court
## Northern District of Texas
## Office of the Clerk

*1100 Commerce Room 14A20*
*Dallas, Texas 75242-1003*

June 28, 2005

U.S. District Court
1 Courthouse Way
Boston, Massachusetts 02210

MAGISTRATE JUDGE

SUBJECT: FM Holdings LLC vs. Mahoney, et al 3-05-cv-166-G

Dear Sir or Madam:

The above action has been transferred to your court pursuant to the order of A. Joe Fish dated June 24, 2005.

Enclosed is a certified copy of the transfer order and docket sheet. You may access electronically filed documents at our ECF/PACER web address: http://ecf.txnd.uscourts.gov. Any documents not available electronically are enclosed in paper format.

Please acknowledge receipt of the certified copy of the transfer order and docket sheet by returning a received stamped copy of this letter in the enclosed envelope.

**05 - 11400 MLW**

Sincerely,
KAREN MITCHELL
*Clerk of Court*

By: _____
J. Baggett
*Deputy Clerk*

Enclosure

L5   3483
\ 1642 eft
(the word left with 1642 in the
middle )

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FM HOLDINGS, LLC f/k/a FORWARDMARKET, LLC, | ) | 05 L 11400 MLW |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| | ) | |
| VS. | ) | 3:05-CV-0166-G |
| | ) | |
| BILL MAHONEY and STEPHEN GREGORIO, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court are (1) the motion of the defendant Bill Mahoney

("Mahoney") to dismiss the claims asserted against him for lack of personal

jurisdiction, or, in the alternative, to dismiss the action for improper venue, or, in the

further alternative, to transfer this action to the District of Massachusetts; and (2) the

motion of the defendant Stephen Gregorio ("Gregorio") to transfer this action to the

District of Massachusetts. For the reasons discussed below, Mahoney's motion to

dismiss is denied, while the motions of Mahoney and Gregorio to transfer this action

to the District of Massachusetts are granted.

## I. BACKGROUND

On or about January 1, 2003, the plaintiff FM Holdings, LLC, f/k/a
Fowardmarket, LLC ("FM Holdings") -- a Texas limited liability company with its
principal place of business in Dallas, Texas -- entered into an Asset Purchase
Agreement (the "Agreement") with Excelergy Corporation ("Excelergy"), pursuant to
which Excelergy purchased certain assets and assumed certain liabilities of FM
Holdings. Original Petition ("Petition") ¶¶ 2, 8, attached as Exhibit 3 to the Notice
of Removal. In the months prior to the execution of the Agreement, the parties
negotiated the Agreement's terms and conditions. *Id*. ¶ 10. FM Holdings was
represented by Kevin Swenke ("Swenke"). Defendant Bill Mahoney's Brief in
Support of Rule 12(b)(2) Motion Objecting to Jurisdiction or Subject to and Without
Waiving Bill Mahoney's Rule 12(b)(2) Motion and, in the Alternative, Bill
Mahoney's Motion to Dismiss Pursuant to Rule 12(b)(3) for Improper Venue or,
Subject to and Without Waiving the Foregoing, in the Alternative, Defendant's
Motion to Dismiss Pursuant to 28 U.S.C.A. § 1391 or Subject to and Without
Waiving the Foregoing, in the Alternative, Defendant's Motion to Transfer for *Forum
Non-Conveniens* and 28 U.S.C.A. § 1404 ("Mahoney's Motion") at 1-2; Affidavit of J.
Kevin Swenke ("Swenke Affidavit") ¶¶ 5-6, attached as Exhibit 1 to Appendix in
Support of Plaintiff's Brief in Response to Defendant Bill Mahoney's Rule 12(b)(2)
and (3) Motions and Motion to Transfer Pursuant to 28 U.S.C.A. § 1404 and for

- 2 -

*Forum Non Conveniens*, and to Defendant Stephen Gregorio's Motion to Transfer
Venue. Excelergy was represented by Mahoney, then the Chief Executive Officer of
Excelergy, and Gregorio, then the Chief Financial Officer of Excelergy. Petition ¶ 11.
Mahoney and Gregorio are both residents of Massachusetts. *Id.* ¶¶ 3-4.

FM Holdings brought this case alleging that during the course of the
negotiations Mahoney and Gregorio (collectively, the "defendants") made certain
misrepresentations and omissions to FM Holdings, causing it to enter into the
Agreement. *Id.* ¶¶ 13-15. Specifically, FM Holdings asserts that one or both of the
defendants made the following misrepresentations or omissions: (1) that Excelergy
was profitable in the third quarter of 2002; (2) that Excelergy would be profitable in
the future; (3) that Excelergy's market value was $100 million; (4) failed to disclose
potential liability for Excelergy's breach of a lease agreement with Boston Properties,
Inc. ("Boston Properties"); and (5) failed to disclose that Excelergy had made
substantial personal loans to Mahoney. *Id.* ¶¶ 14, 16-17, 19, 21, 23, 26. The action
was originally filed in the 14th Judicial District Court of Dallas County, Texas on
December 20, 2004, and the defendants were served with the petition on
December 27, 2004. Petition at 1; Notice of Removal ¶ 1. On January 26, 2005, the
action was removed to this court.

## II. ANALYSIS

### A. Personal Jurisdiction

#### 1. *The Factual Standard: A Prima Facie Case*

When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident. *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.), *cert. denied*, 513 U.S. 930 (1994); *Gardemal v. Westin Hotel Company*, 186 F.3d 588, 592 (5th Cir. 1999). If the district court chooses to decide the matter without an evidentiary hearing, the plaintiff may meet its burden by presenting a *prima facie* case for personal jurisdiction. *Wilson*, 20 F.3d at 648; *Gardemal*, 186 F.3d at 592.

The court will take the allegations of the complaint as true, except where they are controverted by opposing affidavits, and all conflicts in the facts are resolved in favor of the plaintiff. *Wilson*, 20 F.3d at 648; *Gardemal*, 186 F.3d at 592. In making its determination, the court may consider affidavits, interrogatories, depositions, oral testimony, or any combination of recognized discovery methods. *Allred v. Moore & Peterson*, 117 F.3d 278, 281(5th Cir. 1997), *cert. denied*, 522 U.S. 1048 (1998); *Thompson v. Chrysler Motors Corporation*, 755 F.2d 1162, 1165 (5th Cir. 1985).

#### 2. *The Legal Standard*

A federal district court may exercise personal jurisdiction over a nonresident defendant if: (1) the long-arm statute of the forum state permits the exercise of

- 4 -

personal jurisdiction over the defendant; and (2) the exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution. *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002); see also *J.R. Stripling v. Jordan Production Company, LLC*, 234 F.3d 863, 869 (5th Cir. 2000). Applying state law, this court must first determine whether Texas, the forum state, could assert long-arm jurisdiction. *Pedelahore v. Astropark, Inc.*, 745 F.2d 346, 347 (5th Cir. 1984). Because the Texas long-arm statute confers jurisdiction to the limits of the federal constitution, *Access Telecom, Inc. v. MCI Telecommunications Corporation*, 197 F.3d 694, 716 (5th Cir. 1999), *cert. denied*, 531 U.S. 917 (2000); *Hall v. Helicopteros Nacionales de Colombia, S.A.*, 638 S.W.2d 870, 872 (Tex. 1982), *rev'd on other grounds*, 466 U.S. 408 (1984), the court need only concern itself with the federal due process inquiry. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999); *Ruston Gas Turbines, Inc. v. Donaldson Company, Inc.*, 9 F.3d 415, 418 (5th Cir. 1993); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 17. 041, *et seq.* (Vernon 1997) (Texas long-arm statute).

### 3. *Due Process Requirements*

Due process requires the satisfaction of two elements to exercise personal jurisdiction over a nonresident defendant: (1) the nonresident must have some minimum contact with the forum that results from an affirmative act on his part such that the nonresident defendant could anticipate being haled into the courts of the forum state; and (2) it must be fair or reasonable to require the nonresident to defend

- 5 -

the suit in the forum state. *Burger King Corporation v. Rudzewicz*, 471 U.S. 462,
474-77 (1985). The Due Process Clause ensures that persons have a "fair warning
that a particular activity may subject [them] to the jurisdiction of a foreign
sovereign." *Id.* at 472 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens,
J., concurring)).

## a. Minimum Contacts

To establish minimum contacts, a nonresident defendant must do some act by
which it "purposefully avails itself of the privilege of conducting activities within the
forum State, thus invoking the benefits and protections of its laws." *Hanson v.
Denckla*, 357 U.S. 235, 253 (1958) (citing *International Shoe Company v. Washington*,
326 U.S. 310, 319 (1945)); see also *Electrosource, Inc. v. Horizon Battery Technologies,
Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999). The unilateral activity of one asserting a
relationship with the nonresident defendant does not satisfy this requirement.
*World-Wide Volkswagen Corporation v. Woodson*, 444 U.S. 286, 298 (1980) (quoting
*Hanson*, 357 U.S. at 253). In determining whether the exercise of jurisdiction is
appropriate, the Supreme Court has considered whether a defendant's contacts with
the forum state make it reasonable to require the defendant to defend the particular
suit in that forum. *Shaffer*, 433 U.S. at 203; *Quill Corporation v. North Dakota*, 504
U.S. 298, 307 (1992).

Minimum contacts can be sufficient to establish two types of *in personam* jurisdiction over a nonresident defendant: specific jurisdiction and general jurisdiction. Specific jurisdiction exists if the cause of action is related to, or arises out of, the nonresident defendant's contacts with the forum state and those contacts meet the due process standard. *Stripling*, 234 F.3d at 871 (quotations and citations omitted). General jurisdiction, on the other hand, may be found when the claim is unrelated to the nonresident's contacts with the forum, but where those contacts are "continuous and systematic." *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984); *Alpine View Company Limited v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000).

Under either a specific or general jurisdiction analysis, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum [s]tate." *Burger King*, 471 U.S. at 474 (quoting *International Shoe*, 326 U.S. at 316). The "purposeful availment" requirement of the minimum contacts inquiry "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . or of the 'unilateral activity of another party or a third person.'" *Id.* at 475 (citations omitted). A plaintiff must establish a substantial connection between the nonresident defendant and the forum state. *Jones v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1068 n.9 (5th Cir.), *cert. denied*, 506 U.S. 867 (1992). "[W]hether the minimum

contacts are sufficient to justify subjection of the non-resident to suit in the forum is determined not on a mechanical and quantitative test, but rather under the particular facts upon the *quality and nature* of the activity with relation to the forum state." *Mississippi Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1006 (5th Cir. 1982) (emphasis added); see also *Coats v. Penrod Drilling Corporation*, 5 F.3d 877, 884 (5th Cir. 1993), *cert. denied*, 510 U.S. 1195 (1994).

In the instant action, FM Holdings argues that this court can exercise specific jurisdiction over Mahoney. Plaintiff's Brief in Response to Defendant Bill Mahoney's Rule 12(b)(2) and (3) Motions and Motion to Transfer Pursuant to 28 U.S.C.A. § 1404 and for *Forum Non Conveniens* and to Defendant Stephen Gregorio's Motion to Transfer Venue ("Plaintiff's Response") at 5. FM Holdings has not contended that this court has general personal jurisdiction over Mahoney. Accordingly, the court need only determine if it has specific personal jurisdiction over Mahoney.

FM Holdings asserts that Mahoney is subject to the jurisdiction of this court because his allegedly tortious conduct occurred, at least partly, in Texas. Plaintiff's Response at 5. Specifically, FM Holdings asserts that "Mahoney made numerous actionable misrepresentations to [FM Holdings] in Texas by telephone, facsimile, and email." *Id.* "Such communications into Texas," FM Holdings argues, "constitute purposeful availment of doing business in Texas sufficient to permit the [c]ourt to exercise specific personal jurisdiction over Mahoney." *Id.*

- 8 -

"When the actual content of communications with a forum gives rise to
intentional tort causes of action, this alone constitutes purposeful availment." *Wien
Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999). "The defendant is
purposefully availing himself of 'the privilege of causing a consequence' in Texas." *Id.*
(citing *Serras v. First Tennessee Bank National Association*, 875 F.2d 1212 (6th Cir.
1989)). In *Wien Air*, the court held that communications made by a non-resident
defendant to the plaintiff's employees in Texas which "contained the promises,
assurances, and representations that [were] at the heart of the lawsuit" were sufficient
to establish minimum contacts with Texas. *Id.* at 212. The Fifth Circuit made a
similar determination in *Lewis v. Fresne*, 252 F.3d 352 (5th Cir. 2001). In *Lewis*, the
court held that phone calls made by a non-resident defendant to a plaintiff in Texas
were sufficient to establish minimum contacts with Texas, where the purpose of the
call was to convince the plaintiff to make a loan to the defendant based on false
statements made during the call. *Lewis*, 252 F.3d at 358. In addition to the phone
call, another defendant was held to be subject to personal jurisdiction in Texas when
he "signed and sent security agreements to [the plaintiff] in Texas" which contained
alleged fraudulent representations. *Id.*

In reply, Mahoney cites this court's opinion in *British Aviation Insurance Group
v. American Eurocopter Corporation*, No. 3:96-CV-0392-G, 1997 WL 118425 (N.D.
Tex. March 12, 1997). Defendant Bill Mahoney's Reply Brief in Response to

- 9 -

Plaintiff FM Holdings, LLC, f/k/a Forwardmarket, LLC's Response ("Mahoney's Reply"). This court's decision in *British Aviation*, however, is distinguishable. There, the court stated that "it is not the small number of [the third-party defendant's] contacts with Texas that concerns the court but rather that these contacts do not appear to be *purposefully directed at Texas.*" *Id.* at *6 (emphasis in original). The non-resident third-party defendant in *British Aviation* was an insurance agency whose sole contact with the Texas plaintiffs was the mailing of insurance certificates. *Id.* However, these certificates, this court held, were incidental to its handling of the policy, and furthermore, Texas entities made up a very small portion of the entities to which the certificates were mailed. *Id.*

Mahoney further argues that because FM Holdings, through Swenke, initiated the talks between the parties, he is not subject to personal jurisdiction in Texas. Mahoney's Reply ¶ 5 (citing *British Aviation*, 1997 WL 118425 at * 3, for the proposition that "the unilateral activity of one asserting a relationship with the nonresident defendant does not satisfy [the purposeful availment] requirement"). However, it is Mahoney's actions, and not those of FM Holdings, that form the basis of FM Holding's arguments in support of personal jurisdiction.

As stated above, the allegations made in the complaint are to be construed as true, except when they are contradicted by opposing affidavits, and all conflicts must be resolved in favor of the plaintiff. *Wilson*, 20 F.3d at 648. In the original petition,

filed in Texas state court, FM Holdings claimed that the defendants made

misrepresentations and omissions regarding Excelergy's third quarter financial

performance via "email attachments sent to [FM Holdings] in Dallas County, Texas,

in telephone communications from Massachusetts to Plaintiff in Dallas County,

Texas, and in a presentation given to Plaintiff in Massachusetts." Petition ¶ 14. FM

Holdings further alleges that:

> [the] [d]efendants' misrepresentations and omissions to
> [FM Holdings] occurred in Massachusetts, but were
> received by [FM Holdings] in Dallas County, Texas.
> Specifically, [the] [d]efendants communicated their
> misrepresentations and omissions . . . via presentations to
> and exchanges with [FM Holdings] in Massachusetts, as
> well as to [FM Holdings] in Dallas County, Texas via
> documents and communications sent to [FM Holdings] by
> email, telephone, and facsimile.

*Id.* ¶ 28. FM Holdings further asserts that these misrepresentations "were a critical

factor that induced [FM Holdings] to enter into the Agreement." *Id.* ¶ 27.

In support of his motion to dismiss for lack of personal jurisdiction, Mahoney

has submitted an affidavit in which he states:

> During 2002 [FM Holdings], through its representative,
> Kevin Swenke, contacted me in Massachusetts to introduce
> himself and his company. Kevin Swenke made numerous
> trips to Boston, Massachusetts to discuss business matters
> with and make presentations to the company with which I
> [(Mahoney)] was employed at the time. At no time did I
> travel to Texas in connection with the matters about which
> [FM Holdings] now complains.

Affidavit of William T. Mahoney ("Mahoney Affidavit") ¶ 5, attached as Exhibit 1 to

Appendix [in Support of Bill Mahoney's Motion to Dismiss for Lack of Jurisdiction].

Nowhere in his affidavit does Mahoney dispute FM Holding's allegations that he

directed communications regarding the financial status of Excelergy to FM Holdings

in Texas via email, telephone, or facsimile. *See generally* Mahoney Affidavit. Thus, for

purposes of determining the instant motion to dismiss, the court accepts as true FM

Holdings' uncontroverted allegations that misrepresentations were made by Mahoney

and Gregorio via email, telephone, and facsimile communications directed towards

FM Holdings in Texas.

Mahoney directed communications regarding the Agreement to FM Holdings

in Texas. These communications, FM Holdings alleges, included reports on

Excelergy's profits in the third quarter of 2002, its potential profitability in the

future, and the market value of the company. Petition ¶¶ 21, 26, 28. The content of

the communications from Mahoney to FM Holdings is what gives rise to the causes

of action in this case. Moreover, these alleged misrepresentations are at the heart of

this action. Mahoney knew that the communications were directed towards FM

Holdings in Texas and that the contents of the communications would be relied upon

by FM Holdings. These actions represent Mahoney's purposeful availment of doing

business in Texas.

### b. Fair Play and Substantial Justice

The due process inquiry limits the court's power to exercise personal jurisdiction over a nonresident if the exercise of jurisdiction under the circumstances would offend "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). In determining whether the exercise of jurisdiction violates traditional notions of fair play and substantial justice, the court evaluates the following factors: (1) the burden on the defendant by having to litigate in the forum; (2) the forum state's interests in the lawsuit; (3) the plaintiff's interests in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the shared interest of states in furthering fundamental social policies. *Wien Air*, 195 F.3d at 215 (citing *Ruston Gas*, 9 F.3d at 421); *World-Wide Volkswagen*, 444 U.S. at 292. It is Mahoney's burden to show that, in light of these factors, conducting litigation in this court would be "so gravely difficult and inconvenient" that he would be at a "severe disadvantage" in comparison to FM Holdings. *Burger King*, 471 U.S. at 478 (citations omitted).

Mahoney argues that his burden in having to litigate in Texas would be substantial because (1) he and Gregorio are located in Massachusetts; (2) Excelergy is located in Massachusetts; (3) the landlord in the lease agreement which FM Holdings claims Excelergy prematurely terminated is located in Massachusetts; and (4) many of

- 13 -

the witnesses listed by the parties are located in Massachusetts. Mahoney's Reply ¶ 6. There is always some burden on a nonresident defendant when he must litigate in a foreign forum. The burdens listed by Mahoney, however, are no more onerous than those that every nonresident defendant faces when litigating outside his home state. Furthermore, Mahoney has failed to provide any persuasive argument which indicates that it would be a "severe disadvantage" to him to litigate this dispute in Texas.

The state of Texas clearly has an interest in protecting companies formed under its laws and based in Texas from the fraudulent acts of nonresidents. At the same time, however, Massachusetts clearly has an interest in holding accountable its residents who violate the Massachusetts Unfair Trade Practices Act. Thus, this factor remains balanced, and should not be used to disturb the plaintiff's choice of forum.

FM Holdings clearly has an interest in convenient and effective relief. It would appear that a Texas forum is certainly more convenient for FM Holdings. Additionally, it cannot be said that relief obtained in this court would be any more or less effective than relief obtained in the District of Massachusetts. Also, litigation in Texas would hinder neither the judicial system's interest in efficient resolution of controversies nor the shared interest of states in furthering fundamental social policies. There is no indication that this court provides a forum that so greatly favors

one party's interests over the other's. Accordingly, litigating this dispute in Texas does not offend the traditional notions of fair play and substantial justice.

### B. Improper Venue

In an alternative motion, Mahoney seeks dismissal of this action under Rule 12(b)(3) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1391 for improper venue. Mahoney's Motion ¶ 19. In its response, FM Holdings asserts that Mahoney waived his objection to venue because this action was removed to this court. Plaintiff's Response at 13. Mahoney argues that because he merely assented to Gregorio's removal of this action, he has not waived his improper venue objection. Mahoney's Reply ¶ 7.

"[Section] 1391 has no application to... a removed action. The venue of removed actions is governed by 28 U.S.C. . . . [§] 1441(a)." *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665 (1953). Generally, "a defendant who removes an action waives his objection to venue." *Burlington Northern & Santa Fe Railway Company v. Herzog Services, Inc.*, 990 F. Supp. 503, 504 (N.D. Tex. 1998). Removal is proper only if all served defendants join in the notice of removal. *Gillis v. Louisiana*, 294 F.3d 755, 759 (5th Cir. 2002). A defendant effectively joins in the notice of removal if he consents, in writing, to another defendants notice of removal. *Id.* By assenting to Gregorio's notice of removal, Mahoney has effectively joined in the removal petition. Thus, Mahoney has waived his objection to venue.

- 15 -

## C. Transfer of Venue under 28 U.S.C. § 1404(a)

When deciding whether to transfer venue, discretion must be exercised according to an "individualized, case-by-case consideration of convenience and fairness." *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964). Here, both Mahoney and Gregorio seek to have this action transferred to the District of Massachusetts pursuant to 28 U.S.C. § 1404(a). Motion to Dismiss ¶¶ 20-25; Brief in Support of Motion of Defendant Stephen Gregorio to Transfer Venue ("Gregorio's Motion") at 1.

### 1. *The Legal Standard*

A district court may transfer any civil case "[f]or the convenience of parties and witnesses, in the interest of justice, . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of Section 1404(a) "is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense . . . .'" *Van Dusen*, 376 U.S. at 616 (quoting *Continental Grain Company v. Barge FBL-585*, 364 U.S. 19, 26, 27 (1960)). The decision to transfer a pending case is committed to the sound discretion of the district court. *Jarvis Christian College v. Exxon Corporation*, 845 F.2d 523, 528 (5th Cir. 1988); see also *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998), *cert. denied*, 526 U.S. 1157 (1999); *Caldwell v. Palmetto State Savings Bank of South Carolina*, 811 F.2d 916, 919 (5th Cir. 1987). In exercising its discretion, the

court considers "all relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Peteet v. Dow Chemical Company*, 868 F.2d 1428, 1436 (5th Cir.) (internal quotations and citations omitted), *cert. denied*, 493 U.S. 935 (1989).

Generally, the plaintiff is afforded some deference in choosing a forum. *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966); *Lindloff v. Schenectady International*, 950 F. Supp. 183, 185 (E.D. Tex. 1996). However, the plaintiff's choice of forum has reduced significance where most of the operative facts occurred outside the district. *Lindloff*, 950 F. Supp. at 185; see also *Robertson v. Kiamichi Railroad Company, L.L.C.*, 42 F. Supp. 2d 651, 656 (E.D. Tex. 1999).

"The first issue that a district court must address in ruling on a motion to transfer under § 1404(a) is the question of whether the judicial district to which transfer is sought qualifies under the applicable venue statutes as a judicial district where the civil action 'might have been brought.'" *In re Horseshoe Entertainment*, 337 F.3d 429, 433 (5th Cir.), *cert. denied*, 540 U.S. 1049 (2003). This action could have originally been brought in the District of Massachusetts, as both defendants are citizens of Massachusetts and both reside in the district. *See* 28 U.S.C. § 1391(a)(1).

In deciding whether to transfer a case, the court should consider (1) the convenience of the parties, (2) the convenience of material witnesses, (3) the

- 17 -

availability of process to compel the presence of unwilling witnesses, (4) the cost of
obtaining the presence of witnesses, (5) the relative ease of access to sources of proof,
(6) calendar congestion, (7) where the events in issue took place, and (8) the interests
of justice in general. *Minka Lighting, Inc. v. Trans Globe Imports, Inc.*, No.
3:02-CV-2538-G, 2003 WL 21251684 at \*2 (N.D. Tex. May 23, 2003); see also
*Gundle Lining Construction Corporation v. Fireman's Fund Insurance Company*, 844 F.
Supp. 1163, 1165 (S.D. Tex. 1994). In addition to balancing the above factors,
"[t]he presence of a forum-selection clause [in an agreement between the parties] will
be a significant factor that figures centrally in the district court's calculus." *Stewart
Organization, Inc. v. Ricoh Corporation*, 487 U.S. 22, 29 (1988). "Under section
1404(a), a forum-selection clause is not to be given either 'dispositive consideration'
or 'no consideration.'" *Texas Source Group, Inc. v. CCH, Inc.*, 967 F. Supp. 234, 238
(S.D. Tex. 1997) (citing *Stewart*, 487 U.S. at 29, 31). Therefore, the court's analysis
under 28 U.S.C. § 1404(a) must include the parties' expression of their venue
preference. *Stewart*, 487 U.S. at 29-30; *Elliott v. Carnival Cruise Lines*, 231 F. Supp.
2d 555, 560 (S.D. Tex. 2002). Given the significance a valid forum-selection clause
may bear on the court's transfer analysis, the court will first determine whether the
Agreement's forum-selection clause is applicable to this action.

### 2. *The Forum Selection Clause*

Gregorio asserts that the Agreement's forum selection clause is applicable and warrants the transfer of this case to the United States District Court for the District of Massachusetts. Reply Brief in Support of Motion of Defendant Stephen Gregorio to Transfer Venue ("Gregorio's Reply") at 1-6. The plaintiff counters that the forum selection clause is not applicable to this action because the defendants were not parties to the agreement and because this is not a breach of contract cause of action. Plaintiff's Response at 22 n. 10.

#### a. Enforceability of the Forum-Selection Clause

The court first addresses whether the forum selection clause contained in the Agreement is enforceable. In deciding this question, the court applies federal law. *Stewart Organization, Inc.*, 487 U.S. at 31-32 (holding that "federal law . . . governs the District Court's decision whether to give effect to the parties' forum-selection clause . . . .").

A forum selection clause is *prima facie* valid and enforceable. *Seattle-First National Bank v. Manges*, 900 F.2d 795, 799 (5th Cir. 1990); *Kevlin Services, Inc. v. Lexington State Bank*, 46 F.3d 13, 15 (5th Cir. 1995); *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 589-95 (1991). To overcome the presumption of validity, the party challenging a forum selection clause has a "heavy burden" of demonstrating that enforcement of the clause would be unreasonable under the circumstances.

- 19 -

*Mitsui & Company (USA), Inc. v. Mira M/V*, 111 F.3d 33, 35 (5th Cir. 1997); see also
*M/S Bremen v. Zapata Off-Shore Company*, 407 U.S. 1, 15 (1972). In general, a court
will find it unreasonable to enforce a forum selection clause that is the product of
fraud or overreaching, violates strong public policy, or effectively deprives a party of
his day in court. *Mitsui*, 111 F.3d at 35; *M/S Bremen*, 407 U.S. at 15-18.

Neither side has argued that the forum-selection clause is not enforceable *as to
the parties to the Agreement*. Accordingly, the court finds the clause is, as a general
matter, enforceable; however, the court must determine whether the scope of the
clause encompasses the dispute in this case.

### b. Scope of Forum-Selection Clause

In resolving whether this case falls within the scope of the Agreement's forum-
selection clause, the court must answer two questions: (1) are Mahoney and
Gregorio, as non-parties to the Agreement, subject to the obligations of, and rights
conferred by, the forum-selection clause? and (2) does the forum-selection clause
cover tort causes of action? The forum-selection clause will apply to this case only if
both questions are answered in the affirmative.

### i. *Can Mahoney and Gregorio Enforce the Forum-Selection Clause?*

Several courts have held that a non-party to an agreement is bound by the
agreement's forum-selection clause where the non-party is so intertwined with the
relationship that it was foreseeable he would bound by the clause's restriction. E.g.,

*Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1299 (11th Cir. 1998), *cert. denied*, 525 U.S. 1093 (1999); *Hugel v. Corporation of Lloyd's*, 999 F.2d 206, 209-210 (7th Cir. 1993); *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 (9th Cir. 1988); *Texas Source Group, Inc.*, 967 F. Supp. at 237; *Clinton v. Janger*, 583 F. Supp. 284, 289-90 (N.D. Ill. 1984). Gregorio contends, on the basis of this proposition, that he is entitled to enforce the forum-selection clause against FM Holdings. Gregorio's Reply at 4-5. The court disagrees with Gregorio and finds that the Agreement's forum-selection clause cannot be enforced against FM Holdings by either defendant.

In certain instances, a non-party to a contract containing a forum-selection clause may fall within the scope of that clause. However, this is not one of those instances. In the cases cited by Gregorio where a non-party to an agreement has been included within the scope of a forum-selection clause, the relationship between the non-party and the party to the agreement was much closer than the relationship between Excelergy and Gregorio/Mahoney. For example, in *Hugel* and *Clinton*, the non-parties to the agreement bound by the forum-selection clause were the owners of the entities that were signatories to the agreement. *Hugel*, 999 F.2d 206 at 209-210; *Clinton*, 583 F. Supp. at 289-90; see also *Lipcon*, 148 F.3d at 1299 (spouses of owners of the party-entity were bound by the forum-selection clause). Additionally, in *Manetti-Farrow*, the non-party was an entity related to the entity which was a party to

- 21 -



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

JAN 2 6 2005

CLERK, U.S. DISTRICT COURT
By _____
Deputy

)
FM HOLDINGS, LLC, )
f/k/a Forward Market, LLC )
)
Plaintiff )
v. )
)   C.A. No. _ _____
BILL MAHONEY AND )
STEPHEN GREGORIO )
)
Defendants )
)

**305 CV 0166-G**

**ORIGINAL**

<u>NOTICE OF REMOVAL</u>

Defendants Bill Mahoney and Stephen Gregorio (collectively, the "Defendants"), pursuant to 28 U.S.C. § 1441(a), hereby file this Notice of Removal of the action currently pending in the 14th Judicial District of Dallas County, Texas, captioned as <u>FM Holdings, LLC f/k/a Forward Market, LLC v. Bill Mahoney and Stephen Gregorio</u>, Case No. 04-12672-A (the "Civil Action"), to the United States District Court for the Northern District of Texas, Dallas Division. In support hereof, the Defendants state as follows:

1.      On or about December 27, 2004, the Plaintiff caused a Citation and Original Petition in the Civil Action to be served on the Defendants. True and accurate copies of the Docket Sheet, Judge's Docket, Original Petition, Special Appearance to Present Motion Objecting to Jurisdiction, and Affidavit of William T. Mahoney are attached hereto as Exhibits A(1-5).

2.      At the time the Civil Action was filed and served, Defendant Gregorio was, and is, a citizen of Massachusetts.

3.      At the time the Civil Action was filed and served, Defendant Mahoney was, and is, a citizen of Massachusetts.

4. At the time the Civil Action was filed and served, Plaintiff alleged in the Original Petition that it was a Texas limited liability company with its principal place of business in Dallas County, Texas.

5. This Court has jurisdiction over the Civil Action pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

6. This Notice of Removal is timely filed, pursuant to 28 U.S.C. § 1446(b), within thirty (30) days of service of the Citation and Original Petition and within one (1) year from the date of commencement of the Civil Action.

7. Pursuant to Local Rule 81.1, within thirty (30) days the Defendants will file with this Court certified or attested copies of all records, proceedings, and docket entries in the Civil Action.

WHEREFORE, the Defendants respectfully request that the Civil Action be removed to the United States District Court for the Northern District of Texas, Dallas Division.

Respectfully submitted,

SHANNON, GRACEY, RATLIFF & MILLER, L.L.P.
777 Main Street, Suite 3800
Fort Worth, Texas 76102
(817) 336-9333  Telephone
(817) 336-3735  Facsimilie

Thomas J. Fisher
State Bar Card No.:  07064500

**ATTORNEYS FOR DEFENDANT
STEPHEN GREGORIO**

2

ASSENT TO REMOVAL:

**HOLMAN, ROBERTSON ELDRIDGE**
5949 Sherry Lane, Suite 1700
Dallas, Texas 75225
(214) 361-9494 Telephone
(214) 691-2109 Facsimile

By: _____
Charles R. Biddle
State Bar Card No.: 02299300
Ronald O. Holman
State Bar Card No.: 00903600

**ATTORNEYS FOR DEFENDANT
BILL MAHONEY**

3



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

|  |  |  |
|---|---|---|
| FM HOLDINGS, LLC, | ) | |
| f/k/a Forward Market, LLC | ) | |
| | ) | |
| Plaintiff | ) | |
| v. | ) | |
| | ) | C.A. No. _____ |
| BILL MAHONEY AND | ) | |
| STEPHEN GREGORIO | ) | |
| | ) | |
| Defendants | ) | |

## INDEX

1. Docket Sheet for Cause No. 04-12672-A, 14th District Court, Dallas County, Texas

2. Judge's Docket for Cause No. 04-12672-A, 14th District Court, Dallas County, Texas

3. Plaintiff's Original Petition filed December 20, 2004 in Cause No. 04-12672-A, 14th District Court, Dallas County, Texas

4. Special Appearance to Present Motion Objecting to Jurisdiction filed January 14, 2005 in Cause No. 04-12672-A, 14th District Court, Dallas County, Texas

5. Affidavit of William T. Mahoney filed January 14, 2005 in Cause No. 04-12672-A, 14th District Court, Dallas County, Texas

| PLAINTIFF NAME | PLAINTIFF ATTORNEY | FILE DATE | CASE NO. |
|---|---|---|---|
| FM HOLDINGS LLC FKA | MILLIMET R | 12/20/04 | 04-12672-A |
| | 24025538 | | |

| DEFENDANT NAME | DEFENDANT ATTORNEY | TYPE OF CASE |
|---|---|---|
| MAHONEY BILL ETAL | BIDDLE C | DAMAGES |
| | 02299300 | |

| DISPOSITION | COST AGAINST | DATE | REFERENCE | JUDGEMENT AMT |
|---|---|---|---|---|
| | TRUST FUND BALANCE | STATUS | | |
| | | ACTIVE | | |

| PLAINTIFF NAME | | PLAINTIFF ATTORNEY | | | | FILE DATE | | CASE NO. |
|---|---|---|---|---|---|---|---|---|
| FM HOLDINGS LLC FKA | | MILLIMET R | | | | 12/20/04 | | 04-12672-A |

| TRANS DT | TRANS DESCRIPTION | REFRNCE | P/D | CD | NON-FEE | DEPOSITS | CHARGES |
|---|---|---|---|---|---|---|---|
| 12/20/04 | SCHEEF & STONE LLP | 11516 | P | 10 | | 196.00 | |
| 12/20/04 | STATE INDIGENCE | | P | 12 | | | 10.00 |
| 12/20/04 | DC RECORDS MGT FEE | | P | 17 | | | 5.00 |
| 12/20/04 | CONTINGENCY FUND | | P | 24 | | | 5.00 |
| 12/20/04 | SECURITY FEE | | P | 26 | | | 5.00 |
| 12/20/04 | RECORD MGT FEE | | P | 27 | | | 5.00 |
| 12/20/04 | CIT & COP  ATTY | | P | 31 | | | 8.00 |
| 12/20/04 | CIT & COP  ATTY | | P | 31 | | | 8.00 |
| 12/20/04 | CLERKS FEE | | P | 31 | | | 50.00 |
| 12/20/04 | COURT RPT SVC FEE | | P | 33 | | | 15.00 |
| 12/20/04 | LAW LIBRARY FUND | | P | 36 | | | 15.00 |
| 12/20/04 | APPELLATE FUND | | P | 52 | | | 5.00 |
| 12/20/04 | STATE JUDICIAL FEE | | P | 53 | | | 40.00 |
| 12/20/04 | MEDIATION FUND | | P | 55 | | | 10.00 |
| 12/20/04 | FACILITY FEE | | P | 60 | | | 15.00 |
| 1/14/05 | AFFIDAVIT | | D | 31 | | | |
| 1/14/05 | SPEC APPR/OBJ/JURIS | | D | 31 | | | |
| 1/18/05 | RET CIT MIDDLESEX | | P | 51 | 85.00 | | |
| 1/18/05 | RET CIT PAID | | P | 59 | 85.00- | | |

***** CASE TOTALS *****

TOTAL GROSS CASE COSTS          281.00      NON-FEE ACCTS.              .00

                                            COUNTY DEPOSITS         196.00

                                            COUNTY CHARGES          196.00

                        CASE BALANCE                 .00

¢CT10 3



# JUDGE'S DOCKET, 14TH DISTRICT COURT

**MEDIATOR:** _____

| Action: DAMAGES | Filing: 12-20-04 | No. 04-12672-A |
|---|---|---|

| PARTIES | ATTORNEYS |
|---|---|
| FM HOLDINGS LLC FKA | MILLIMET ROBERT    24025538<br>5956 SHERRY LANE, Ste 140<br>DALLAS              TX  75225<br>214 373 1900<br>214-706-4200<br>214-706-4242 (fax)<br><br><br>VS.<br>1 MAHONEY BILL ETAL<br>2 GREGORIO STEPHEN | |

1. Charles R. Biddle 02299300
5949 Sherry Lane, Ste 1700
Dallas, TX 75225
214 361 9494 / 691-2109 Fax

| JURY DEMAND | | | | DATE GIVEN | TO | SETTINGS | DATE SET | TIME | DATE GIVEN | TO | SETTINGS | DATE SET | TIME |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| FEE PAID BY | VOL. | PAGE | | | | | | | | | | | |

**REPORTED HEARING**

| DATE | WIT. | EX. | RPTR | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |

**D I S P O S I T I O N**
- To fed court ........ □
- To another county ... □
- D.W.P. .............. □
- Nonsuit ............. □
- Default ............. □
- Agreed Jgt .......... □
- Summary Jgt ......... □
- Ex parte Jgt ........ □
- Nonjury trial ....... □
- Jgt on verdict ...... □
- Dir verd or NOV ..... □
- Other disposition ... □

**J U R Y   A C T I V I T Y**
- Voir dire _____
- Jury sworn _____
- Ev to jury _____
- Mistrial _____
- Hung jury _____
- Dismissed _____
- Verdict _____

3

CAUSE NO. _____

| | | |
|---|---|---|
| FM HOLDINGS, LLC, f/k/a FORWARDMARKET, LLC, | § § § | IN THE DISTRICT COURT |
| Plaintiff, | § § | |
| v. | § § | _____ JUDICIAL DISTRICT |
| BILL MAHONEY; STEPHEN GREGORIO, | § § § | |
| Defendants. | § § | DALLAS COUNTY, TEXAS |

### ORIGINAL PETITION

Plaintiff FM Holdings, LLC, f/k/a Forwardmarket, LLC ("Plaintiff") hereby files its Original Petition against Defendants Bill Mahoney and Stephen Gregorio (collectively, "Defendants") and shows in support thereof the following:

### Discovery Control Plan

1.     Plaintiff intends for discovery in this case to be conducted under Level 2 as described by Texas Rule of Civil Procedure 190.

### Parties and Jurisdiction

2.     Plaintiff FM Holdings, LLC, f/k/a Forwardmarket, LLC, is a Texas limited liability company having its principal place of business in Dallas County, Texas.

3.     Defendant Bill Mahoney ("Mahoney") is a Massachusetts resident having his principal residence at 179 Clifton Street, Belmont, Massachusetts 02478.  Service of citation may be had upon Defendant Mahoney by personally serving him at his residence or wherever he may be found.

4.     Defendant Stephen Gregorio ("Gregorio") is a Massachusetts resident having his principal residence at 11 Donald Road, Burlington, Massachusetts 01803-1502.  Service of

**ORIGINAL PETITION - Page 1**

citation may be had upon Defendant Gregorio by personally serving him at his residence or wherever he may be found.

5.      Venue is proper in this Court under Section 15.002(a)(1) of the Texas Practice and Remedies Code, as all or a substantial part of the events or omissions giving rise to the claims asserted herein arose in Dallas County, Texas.

6.      Jurisdiction is proper in this Court as the amount in controversy exceeds the jurisdictional minimums of this Court.

## Factual Background

7.      Prior to January 1, 2003, Plaintiff conducted a business that, among other things, designed, developed, manufactured, marketed, distributed, licensed, and provided maintenance and support for certain software products for retail energy suppliers.

8.      Effective January 1, 2003, Plaintiff entered into an Asset Purchase Agreement (the "Agreement") with Excelergy Corporation ("Excelergy"), pursuant to which Excelergy purchased certain assets and assumed certain liabilities of Plaintiff.

9.      Plaintiff and Excelergy executed the Agreement in counterparts, with Excelergy executing the Agreement in Massachusetts and Plaintiff executing the Agreement in Dallas County, Texas.

10.     Plaintiff entered into the Agreement after several months of negotiations with Excelergy.

11.     During these negotiations, Excelergy was represented by Defendant Mahoney, the then Chief Executive Officer of Excelergy, and Defendant Gregorio, the then Chief Financial Officer of Excelergy.

ORIGINAL PETITION - Page 2

12.     Upon information and belief, Defendants acted in concert and/or with the other's knowledge and approval.

13.     Plaintiff entered into the Agreement based on certain representations and omissions made by Defendants during these negotiations.

14.     Among their misrepresentations and omissions, Defendants represented to Plaintiff that Excelergy's 2002 Third Quarter ("Q3 2002"), which ended September 30, 2002, was the first profitable quarter in Excelergy's history. Defendants made these representations on numerous occasions throughout the negotiations and in advance of the execution of the Agreement (in November and December 2002) in email attachments sent to Plaintiff in Dallas County, Texas, in telephone communications from Massachusetts to Plaintiff in Dallas County, Texas, and in a presentation given to Plaintiff in Massachusetts.

15.     Defendants' representations regarding Excelergy's Q3 2002 financial results – a major milestone for Excelergy – were critical to (a) Plaintiff's determination that Excelergy was a viable, profitable, and healthy company and the appropriate counterparty to the transaction encompassed by the Agreement, and (b) to Plaintiff's allocation of risk regarding consideration within the Agreement.

16.     After Plaintiff's execution of the Agreement, however, Excelergy's auditors (upon information and belief, Ernst & Young LLP) discovered that Excelergy needed to restate its Q3 2002 financial results. Excelergy's restated Q3 2002 financial results showed that Excelergy's Q3 2002 was in fact unprofitable: instead of a profit of approximately $202,000, as Defendants reported to Plaintiff before execution of the Agreement, Excelergy's restated Q3 2002 financial results showed a loss of approximately $262,000, indicating that Excelergy had not actually reached the critical milestone of profitability.

17.   Upon information and belief, Excelergy's Q3 2002 financial results needed to be restated based on how certain revenues were booked by Defendants for Excelergy.

18.   Defendants' representations to Plaintiff regarding Excelergy's Q3 2002 financial results were a critical factor that induced Plaintiff to enter into the Agreement and the primary factor in Plaintiff's willingness to take Excelergy stock and future royalty payments in lieu of only cash as its consideration under the Agreement.

19.   Among their misrepresentations and omissions, Defendants also failed to disclose to Plaintiff before execution of the Agreement that Excelergy had intentionally and prematurely terminated its lease agreement with Boston Properties, Inc. ("BP") for its offices located in Lexington, Massachusetts (the "BP lease"). Upon information and belief, Excelergy breached the BP lease in September 2002 for purely economic reasons; this contingent liability, however, was not itemized or footnoted on Excelergy's Q3 2002 financial results provided to Plaintiff or attached as Schedule 4.05 to the Agreement. Upon information and belief, for Excelergy's breach of the BP lease, BP subsequently received a judgment in the amount of approximately $2.3 million.

20.   Plaintiff's lack of knowledge of Excelergy's potential liability for breach of the BP lease was a critical factor that induced Plaintiff to enter into the Agreement. At the time of breach of the BP lease, the contingent liability to Excelergy was as much as twenty percent of its available cash on hand of approximately $11 to $12 million. The impact of this liability was even more significant due to the fact that Excelergy was not yet profitable (as Defendants had represented to Plaintiff).

21.   Among their misrepresentations and omissions, Defendants also made numerous representations to Plaintiff during the negotiations (in approximately November and December

2002) that, as shown by Excelergy's Q3 2002 financial results and its 2002 Fourth Quarter ("Q4 2002") operating plan, Excelergy would be "profitable going forward." In fact, Defendant specifically represented to Plaintiff in Dallas County, Texas via telephone, in response to Plaintiff's inquiries, that its Q4 2002 was "going well" and was "on target." However, before execution of the Agreement, Defendants knew, but failed to disclose to Plaintiff, that Excelergy's Q4 2002 financial results were disastrous, resulting in Excelergy losing an estimated $1.8 million for Q4 2002 instead of recording a profit as represented.

22. Defendants' misrepresentations and omissions regarding Excelergy's Q4 2002 financial results were a critical factor that induced Plaintiff to enter into the Agreement.

23. Among their misrepresentations and omissions, Defendants also did not disclose to Plaintiff that, prior to the execution of the Agreement, Excelergy had made substantial personal loans (upon information and belief, between $400,000 and $500,000) to Defendant Mahoney. Plaintiff later learned that these loans amounted to as much as four percent (4%) of Excelergy's available cash on hand.

24. Not only were these personal loans to Defendant Mahoney illustrative of bad business practices, but because these loans were supposed to have been repaid to Excelergy from future bonuses paid to Defendant Mahoney by Excelergy, upon information and belief these loans applied significant pressure on Defendant Mahoney to take shortcuts and reach short-term company milestones to trigger quarterly bonuses.

25. Thus, Plaintiff's lack of knowledge of Excelergy's personal loans to Defendant Mahoney was a critical factor that induced Plaintiff to enter into the Agreement.

26. Among their misrepresentations and omissions, Defendants further made representations to Plaintiff during negotiations (in approximately November and December

2002) regarding the value of Excelergy stock that was part of Plaintiff's compensation under the Agreement. Specifically, Defendants represented to Plaintiff that Excelergy's market value was $100 million based on its size, growth, and profitability. In fact, Defendants represented to Plaintiff that Excelergy was regularly communicating with investment bankers regarding Excelergy's market value and prospects for an initial public offering, and with outside venture capitalists regarding their interest in investing capital in Excelergy. As of today, however, Excelergy is for sale and, upon information and belief, Excelergy's combined preferred and common stock is worthless.

27. Defendants' representations to Plaintiff regarding the value of Excelergy's stock were a critical factor that induced Plaintiff to enter into the Agreement.

28. Defendants' misrepresentations and omissions to Plaintiff occurred in Massachusetts, but were received by Plaintiff in Dallas County, Texas. Specifically, Defendants communicated their misrepresentations and omissions to Plaintiff in Massachusetts via presentations to and exchanges with Plaintiff in Massachusetts, as well as to Plaintiff in Dallas County, Texas via documents and communications sent to Plaintiff by email, telephone, and facsimile.

29. Since Plaintiff's execution of the Agreement, Defendant Mahoney has resigned from Excelergy without providing customary notice and, upon information and belief, without repaying the personal loans made to him by Excelergy, and Defendant Gregorio has been fired by Excelergy. Thus, Defendants are no longer Excelergy's Chief Executive Officer or Chief Financial Officer, respectively.

## Causes of Action

### A.    Negligent Misrepresentations

30.    Plaintiff realleges and incorporates by reference as if fully set forth herein all allegations contained in Paragraphs 1-29.

31.    Defendants' misrepresentations and omissions to Plaintiff were made in the course of Excelergy's business.

32.    Defendants' misrepresentations and omissions constituted false information for purposes of inducing Plaintiff to enter into the Agreement.

33.    Defendants failed to exercise reasonable care or competence in communicating their misrepresentations and omissions.

34.    Plaintiff justifiably relied upon Defendants' misrepresentations and omissions, causing it to enter into the Agreement and suffer pecuniary loss as a result.

35.    Plaintiff is therefore entitled to monetary damages in an amount to be determined at trial.

36.    All conditions precedent, if any, necessary to maintain this cause of action have been performed or have occurred.

### B.    The Massachusetts Unfair Trade Practices Act (Chapter 93A)

37.    Plaintiff realleges and incorporates by reference as if fully set forth herein all allegations contained in Paragraph 1-36.

38.    Section 11 of Chapter 93A provides a private cause of action to a person who is engaged in business and who suffers a loss as a result of an unfair or deceptive act or practice by another person also engaged in business.

39.     Chapter 93A applies to Defendants' misrepresentations and omissions regarding the sale or offering for sale of Excelergy stock.

40.     Defendants' misrepresentations and omissions occurred primarily and substantially within Massachusetts.

41.     As a result of Defendants' misrepresentations and omissions regarding Excelergy stock, Plaintiff is entitled to recover money damages in an amount to be determined at trial, including actual damages, and double or treble damages if Defendants' misrepresentations and omissions were willful or knowing; costs; and reasonable attorneys' fees.

42.     All conditions precedent, if any, necessary to maintain this cause of action have been performed or have occurred.

## Prayer

Plaintiff respectfully prays that Defendants be cited to appear and answer, and that upon final hearing, Plaintiff take judgment against Defendants for damages in an amount to be determined at trial, plus prejudgment and postjudgment interest at the highest rate allowed by law, their reasonable and necessary attorneys' fees and costs of suit, and such just and further relief to which they may be entitled.

Respectfully submitted,

Kimberly A. Elkjer
State Bar No. 06527040
Robert M. Millimet
State Bar No. 24025538
Scheef & Stone, LLP
5956 Sherry Lane
Suite 1400
Dallas, Texas 75225
(214) 706-4200
(214) 706-4242 (Fax)

ATTORNEYS FOR PLAINTIFF
FM HOLDINGS LLC, f/k/a FORWARDMARKET,
LLC



# SCHEEF & STONE, L.L.P.

*Legal counsel based on solid principles*

**FILED**
2004 DEC 20 PM 3: 25
JIM HAMLIN
DISTRICT CLERK
DALLAS CO., TEXAS
_____ DEPUTY

December 20, 2004

04-12672

Mr. Jim Hamlin
Dallas County District Clerk
George L. Allen, Sr. Courts Building
600 Commerce Street
Dallas, Texas 75202

> **Re:  FM Holdings, LLC, f/k/a Forwardmarket, LLC, Plaintiff v. Bill Mahoney; Stephen Gregorio, Defendants.**

Dear Mr. Hamlin:

Enclosed please find the original and five copies of an Original Petition in the above-referenced matter.  Please file the original and return the copies to us, along with citations for the named defendants.  Please call the undersigned at 214.706.4200 as soon as the citations are ready and we will send a courier to pick them up. Enclosed is my firm check in the amount of $196.00 for the filing fee and cost of citations.

Thank you for your assistance in this matter.

Sincerely yours,

Kimberly A. Elkjer

KAE:gs
Enclosures

# THE STATE OF TEXAS

**FORM NO. 353-3 – CITATION**

TO:

BILL MAHONEY
179 CLIFTON STREET
BELMONT, MA 02478

Filed in said Court on the _____ 20TH _____ day of _____ DECEMBER _____ 20 ___04___

Defendant, in the hereinafter styled and numbered cause:

FM HOLDINGS LLC FKA

Plaintiff

against

BILL MAHONEY ETAL, STEPHEN GREGORIO

You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. Your answer should be addressed to the clerk of the 4TH Judicial District Court at the George L. Allen, Sr. Courts Building, 600 Commerce Street, Dallas, Texas 75202-4606. Said Plaintiff being

FM HOLDINGS LLC FKA

Filed in said Court on the _____ 20TH _____ day of _____ DECEMBER _____ 20 ___04___

against

BILL MAHONEY ETAL, STEPHEN GREGORIO

for suit, said suit being numbered ___04-12672-A___ , the nature of which demand as follows: SUIT ON DAMAGES, ETC.,...

shown on said petition, a copy of which accompanies this citation.

If this citation is not served, it shall be returned unexecuted.

WITNESS: JIM HAMLIN, Clerk of the District Courts of Dallas, County Texas.

Given under my name and the Seal of said Court at office this the _____ 20TH _____ day of DECEMBER

ATTEST: JIM HAMLIN
Clerk of the District Courts of Dallas County, Texas

By _____ Deputy
SPRINGE MCKINLEY

---

ATTY **

No. ___04-12672-A___

FM HOLDINGS LLC FKA

vs.

BILL MAHONEY ETAL

# CITATION

**ISSUED**

This 20TH day of DECEMBER 20 04

JIM HAMLIN
Clerk, District Courts,
Dallas County, Texas

By _____ Deputy
SPRINGE MCKINLEY

Atty for PLAINTIFF

ROBERT MILLIMET
5956 SHERRY LANE
DALLAS, TX 75225

214/373-1900

DALLAS COUNTY CONSTABLE

FEES PAID

FEES NOT PAID

4

Cause No. 04-12672-A



| FM HOLDINGS, LLC, | § | IN THE DISTRICT COURT |
| F/K/A FORWARDMARKET, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | 14TH JUDICIAL DISTRICT |
| | § | |
| BILL MAHONEY and | § | |
| STEPHEN GREGORIO, | § | |
| | § | |
| Defendant | § | DALLAS COUNTY, TEXAS |

## SPECIAL APPEARANCE TO PRESENT
## MOTION OBJECTING TO JURISDICTION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Bill Mahoney (hereinafter referred to as "Mahoney"), Defendant in this cause and makes this special appearance under the authority of the TEX. R. CIV. P. 120a for the purpose of objecting to the jurisdiction of the Court over the person and property of Defendant, and as grounds therefor would show the Court as follows:

I.

### Purpose of Special Appearance

The special appearance is made to the entire proceeding as such is related to Mahoney.

II.

### Special Appearance Motion Filed First

This special appearance motion is filed before any motion to transfer or any other plea, pleading or motion filed by Defendant Bill Mahoney.

III.

## The Court Does Not Have Jurisdiction Over Defendant

This Court does not have jurisdiction over Mahoney, individually, because Mahoney is not amenable to process issued by the courts of Texas for the following reasons:

a.  Mahoney is not now, nor has he ever been, a resident of Texas and is not required to maintain and does not maintain a registered agent for service in Texas.

b.  Mahoney, in his individual capacity, does not now engage and has not engaged in business in Texas or has not committed any tort, in whole or in part, within the state.

c.  Mahoney does not maintain a place of business in Texas and has no employees, servants or agents within the state.

d.  Mahoney has no substantial connection with Texas arising from any action or conduct of Mahoney purposely directed toward Texas.

e.  Plaintiff's claims do not arise from and are not related to any activity conducted by Mahoney in Texas.

f.  Mahoney has no continuing and systematic contacts with Texas.

IV.

## Jurisdiction Deprives Defendant of Due Process

The assumption of jurisdiction by the Court over Mahoney's property would offend traditional notions of fair play and substantial justice, depriving Mahoney of due process as guaranteed by the Constitution of the United States.

For these reasons, Defendant Bill Mahoney requests that the Court set this motion for hearing on notice to Plaintiff FM Holdings, LLC f/k/a Forwardmarket, LLC, and that after hearing the Court grant this motion and dismiss the entire proceeding against Bill Mahoney for want of jurisdiction.

Respectfully submitted,

HOLMAN ROBERTSON ELDRIDGE
5949 Sherry Lane, Suite 1700
Dallas, Texas 75225
Telephone: (214)361-9494
Facsimile: (214)691-2109

By _____
Charles R. Biddle
State Bar Card No. 02299300

Ronald O. Holman
State Bar Card No.: 09903600

ATTORNEYS FOR DEFENDANT BILL MAHONEY

## VERIFICATION

STATE OF MASSACHUSETTS   §
                                     §

COUNTY OF MIDDLESEX    §

     BEFORE ME, the undersigned Notary Public, on this day personally appeared William T. Mahoney, and, after being duly sworn, stated under oath that he is a Defendant in this cause; and that he has read the above special appearance motion; and that every statement contained in the special appearance motion is within his personal knowledge and is true and correct.

                               WILLIAM T. MAHONEY

     SUBSCRIBED AND SWORN TO BEFORE ME on this 13 day of January, 2005.

SHEILA M. WHALEN
Notary Public
Commonwealth of Massachusetts
My Commission Expires
May 22, 2009

                    Sheila M Whalen
                    Notary Public in and for
                    the State of Massachusetts

## CERTIFICATE OF SERVICE

     I certify that a true and correct copy of the above and foregoing special appearance motion has this day been sent, via certified mail, return receipt requested, to Kimberly A. Elkjer, Scheef and Stone LLP, 5956 Sherry Lane, Suite 1400, Dallas, Texas 75225, on this 19 day of January, 2005.

                               Charles R. Biddle

SPECIAL APPEARANCE TO PRESENT
MOTION OBJECTING TO JURISDICTION                    Page 4
H:\wp\05\crb\mahoney\SPEC APP~01.doc

5

Cause No. 04-12672-A

| | | |
|---|---|---|
| FM HOLDINGS, LLC, | § | IN THE DISTRICT COURT |
| F/K/A FORWARDMARKET, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | 14TH JUDICIAL DISTRICT |
| | § | |
| BILL MAHONEY and | § | |
| STEPHEN GREGORIO, | § | |
| | § | |
| Defendant | § | DALLAS COUNTY, TEXAS |

## AFFIDAVIT OF WILLIAM T. MAHONEY

| | |
|---|---|
| STATE OF MASSACHUSETTS | § |
| | § |
| COUNTY OF MIDDLESEX | § |

BEFORE ME, the undersigned Notary Public, on this day personally appeared William T. Mahoney, who, being by me duly sworn on oath, deposed and said the following:

1.  "I am one of the Defendants in the above-styled and numbered cause.

2.  "I am a resident of the State of Massachusetts, United States of America, and have been a resident of Massachusetts since 2000. Prior to such time, I was a resident of South Carolina. I have never been a resident of the State of Texas.

3.  "At all times relevant to this dispute, I was acting in my capacity as Chief Executive Officer of Excelergy Corporation which was located in Massachusetts and all of my activities with respect to this matter took place in Massachusetts.

4.  "I have not been a resident of nor do I have any connection with the State of Texas nor have I in my individual capacity performed any act or consummated any transaction in Texas. Furthermore, a reading of Plaintiff's Original Petition indicates that its alleged cause of action 'occurred primarily and substantially within Massachusetts.' As a result and as indicated herein, the alleged cause of action did not arise in Texas.

5.  "During 2002 Plaintiff, through its representative, Kevin Swenke, contacted me in Massachusetts to introduce himself and his company. Kevin Swenke made numerous trips to Boston, Massachusetts to discuss business matters with and make presentations to the company with which I was employed at the time. At no time did I travel to Texas in connection with the matters about which Plaintiff now complains.

AFFIDAVIT OF WILLIAM T. MAHONEY
H:\wp\05\crb\mahoney\SPEC APP~AFF01.doc

Page 1

6.    I do not maintain a place of business in Texas and I do not have any employees, servants or agents in Texas.

7.    "Every statement contained in this affidavit is within my personal knowledge and is true and correct."

Further Affiant saith not.

_____
WILLIAM T. MAHONEY

SUBSCRIBED AND SWORN TO BEFORE ME on this 13 day of January, 2005.

SHEILA M. WHALEN
Notary Public
Commonwealth of Massachusetts
My Commission Expires
May 22, 2009

_____
Notary Public in and for
the State of Massachusetts

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above and foregoing special appearance motion has this day been sent, via certified mail, return receipt requested, to Kimberly A. Elkjer, Scheef and Stone LLP, 5956 Sherry Lane, Suite 1400, Dallas, Texas 75225, on this 14 day of January, 2005.

_____
Charles R. Biddle



RECEIVED

JAN 2 6 2005

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**United States District Court**
**Northern District of Texas**

305 CV 0166 - G

## Supplemental Civil Cover Sheet For Cases Removed
## From State Court

**This form must be attached to the Civil Cover Sheet at the time the case is filed in the U.S.
District Clerk's Office. Additional sheets may be used as necessary.**

**1.    State Court Information:**      # ORIGINAL

Please identify the court from which the case is being removed and specify the number
assigned to the case in that court.

| <u>Court</u> | <u>Case Number</u> |
|---|---|
| 14th Judicial District Court | 04-12672-A |

**2.    Style of the Case:**

Please include all Plaintiff(s), Defendant(s), Intervenor(s), Counterclaimant(s),
Crossclaimant(s) and Third Party Claimant(s) still remaining in the case and indicate their
party type. Also, please list the attorney(s) of record for each party named and include
their bar number, firm name, correct mailing address, and phone number (including area
code.)

| <u>Party and Party Type</u> | <u>Attorney(s)</u> |
|---|---|
| Plaintiff:<br>FM Holdings, L.L.C., f/k/a Forward Market, L.L.C. | Kimberly A. Elkjer, SCHEEF & STONE, L.L.P., 5956 Sherry Lane, Suite 1400, Dallas, Texas 75225 |
| Defendants:<br>Bill Mahoney | Charles R. Biddle, HOLMAN, ROBERTSON, ELDRIDGE, 5949 Sherry Lane, Suite 1700, Dallas, Texas 75225 |
| Stephen Gregorio | Thomas J. Fisher, SHANNON, GRACEY, RATLIFF & MILLER, L.L.P., 777 Main Street, Suite 3800, Fort Worth, Texas |

**3.    Jury Demand:**

Was a Jury Demand made in State Court?        ☐ Yes        <u>X</u> No

If "*Yes*," by which party and on what date?

_____          _____
Party                                                                          Date

**Supplemental Civil Cover Sheet**
**Page 2**

4.　　**Answer:**

　　　　Was an Answer made in State Court?　　☐ Yes　　X No

　　　　　　If "*Yes*," by which party and on what date?

　　　　　　_____　　　　_____
　　　　　　Party　　　　　　　　　　　　　　　　　　　　Date

5.　　**Unserved Parties:**

　　　　The following parties have not been served at the time this case was removed:

　　　　　　**Party**　　　　　　　　　　　　**Reason(s) for No Service**

N/A

6.　　**Nonsuited, Dismissed or Terminated Parties:**

　　　　Please indicate any changes from the style on the State Court papers and the reason for that change:

　　　　　　**Party**　　　　　　　　　　　　**Reason**

N/A

7.　　**Claims of the Parties:**

　　　　The filing party submits the following summary of the remaining claims of each party in this litigation:

　　　　　　**Party**　　　　　　　　　　　　**Claim(s)**

Plaintiff　　　　　　　　　　　　　　　Misrepresentation and violation of the Massachusetts Unfair Trade Practices Act

℗JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
FM Holdings, LLC f/k/a/ Forward Market, LLC

JAN 26 2005

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**DEFENDANTS**
Bill Mahoney, et al.

**3 05 CV 0166 - G**

County of Residence of First Listed Defendant ___ Middlesex County, MA ___
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**ORIGINAL**

**(b)** County of Residence of First Listed Plaintiff ___ Dallas County, TX ___
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Kimberly A. Elkjer, Scheef & Stone, 5956 Sherry Lane, Suite 1400, Dallas, Texas 75225 (214) 706-4200

Attorneys (If Known)
Thomas J. Fisher, Shannon, Gracey, Ratliff & Miller, L.L.P. 777 Main Street, Suite 3800, Fort Worth, Tx 76102 (817) 336-9333

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 U.S. Government Defendant | ☒ 4 Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☒ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

| | | | | | | Appeal to District |
|---|---|---|---|---|---|---|
| ☐ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Judge from Magistrate Judgment |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

Brief description of cause: Misrepresentation and violation of the Massachusetts Unfair Trade Practices Act.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ Undetermined

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE ___ N/A ___ DOCKET NUMBER ___ N/A ___

DATE
January 25, 2005

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

FILED

Jun    2005

CLERK, U.S. DISTRICT COURT
By _____
                    Deputy

|  |  |
|---|---|
| FM HOLDINGS, LLC,<br>f/k/a Forward Market, LLC | ) |
|  | ) |
|     Plaintiff | ) |
| v. | ) |
|  | ) |
| BILL MAHONEY AND<br>STEPHEN GREGORIO | ) |
|  | ) |
|     Defendants | ) |

C.A. No. **305 CV 0166-G**

ORIGINAL

## CERTIFICATE OF INTERESTED PERSONS

Defendants Bill Mahoney and Stephen Gregorio (collectively, the "Defendants"),

pursuant to Local Rule 3.1(f), hereby file this Certificate of Interested Persons:

1. Plaintiff FM Holdings, L.L.C., f/k/a Forward Market, L.L.C.
   Represented by: Kimberly A. Elkjer
         SCHEEF & STONE, L.L.P.
         5956 Sherry Lane, Suite 1400
         Dallas, Texas 75225
         (214) 706-4200  Telephone
         (214) 706-4242  Facsimile

2. Defendant Bill Mahoney
   Represented by: Charles R. Biddle
         HOLMAN, ROBERTSON, ELDRIDGE
         5949 Sherry Lane, Suite 1700
         Dallas, Texas 75225
         (214) 361-9494  Telephone
         (214) 691-2109  Facsimile

3. Defendant Stephen Gregorio
   Represented by: Thomas J. Fisher
         SHANNON, GRACEY, RATLIFF & MILLER, L.L.P.
         777 Main Street, Suite 3800
         Fort Worth, Texas 76102
         (817) 336-9333  Telephone
         (817) 336-3735  Facsimile

Respectfully submitted,

**SHANNON, GRACEY, RATLIFF & MILLER, L.L.P.**
777 Main Street, Suite 3800
Fort Worth, Texas 76102
(817) 336-9333 Telephone
(817) 336-3735 Facsimilie

Thomas J. Fisher
State Bar Card No.: 07064500

**ATTORNEYS FOR DEFENDANT
STEPHEN GREGORIO**



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS, DIVISION

FM HOLDINGS, LLC,                     §
F/K/A FORWARDMARKET, LLC,             §
                                      §
        Plaintiff,                    §
                                      §
vs.                                   §      C.A. No. 3:05-CV-0166-G
                                      §
BILL MAHONEY and                      §
STEPHEN GREGORIO,                     §
                                      §
        Defendant                     §

**DEFENDANT BILL MAHONEY'S MOTION OBJECTING TO PERSONAL
JURISDICTION PURSUANT TO RULE 12b(2) OR SUBJECT TO AND
WITHOUT WAIVING BILL MAHONEY'S RULE 12b(2) MOTION AND,
IN THE ALTERNATIVE, BILL MAHONEY'S MOTION TO DISMISS
PURSUANT TO RULE 12b(3) FOR IMPROPER VENUE OR
SUBJECT TO AND WITHOUT WAIVING THE FOREGOING, IN THE ALTERNATIVE,
TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO 28 U.S.C.A. § 1391
OR SUBJECT TO AND WITHOUT WAIVING THE FOREGOING AND
IN THE ALTERNATIVE DEFENDANT'S MOTION TO TRANSFER
PURSUANT TO 28 U.S.C.A. § 1404 AND FOR _FORUM NON CONVENIENS_**

TO THE HONORABLE COURT:

Bill Mahoney (hereinafter referred to as "Mahoney"), pursuant to 28 U.S.C.A. Rule

12b(2) files this his motion objecting to jurisdiction over his person and in support would say and

show as follows:

**I.**
**DEFENDANT BILL MAHONEY'S MOTION OBJECTING TO
PERSONAL JURISDICTION PURSUANT TO RULE 12b(2)**

1.      On or about December 20, 2004, Plaintiff filed its Original Petition in the 14th

Judicial District of Dallas County, Texas. It was assigned a cause number of 04-12672-A.

Mahoney was subsequently served in Belmont Massachusetts

2.     On or about January 5, 2004, Mahoney filed his special appearance to present motion objecting to jurisdiction in the above-mentioned cause number before any motion to transfer or any other plea, pleading or motion was filed by Mahoney.

3.     This Court does not have jurisdiction over Mahoney, individually, because Mahoney is not amenable to process issued by the courts of Texas for the following reasons:

(a)     Mahoney is not now nor has he ever been a resident of Texas and is not required to maintain and does not maintain a registered agent for service in Texas.

(b)     Mahoney, in his individual capacity does not now engage and has never engaged in business in Texas and has not committed any tort, in whole or in part, within Texas.

(c)     Mahoney does not maintain a place of business in Texas and has no employees, servants or agents within the state.

(d)     Mahoney has no substantial connection with Texas arising from any action or conduct of Mahoney purposely directed toward Texas.

(e)     Plaintiff's claims do not arise from and are not related to any activity conducted by Mahoney in Texas.

(f)     Mahoney has no continuing systematic contacts with Texas.

(g)     All of the Defendants according to Plaintiff's Original Petition are residents of Massachusetts.

4.     See Affidavit of Bill Mahoney attached to the appendix filed in this case and incorporated herein by reference as if set forth at length herein.

5.     Jurisdiction deprives Defendant of due process.  The assumption of jurisdiction by the Court over Mahoney's property would offend traditional notions of fair play and substantial justice, depriving Mahoney of due process as guaranteed by the Constitution of the United States.

For these reasons, Defendant Bill Mahoney requests that the Court, after notice to Plaintiff, FM Holdings, LLC f/k/a Forwardmarket, LLC, grant this motion and dismiss the entire proceeding against Bill Mahoney for want of personal jurisdiction.

## II.
### SUBJECT TO AND WITHOUT WAIVING BILL MAHONEY'S MOTION OBJECTING TO PERSONAL JURISDICTION PURSUANT TO RULE 12b(2), SUBJECT TO AND WITHOUT WAIVING BILL MAHONEY'S RULE 12b(2) MOTION AND IN THE ALTERNATIVE, BILL MAHONEY MOVES TO DISMISS THIS LAWSUIT AGAINST BILL MAHONEY PURSUANT TO U.S.C.A. RULE 12b(3) FOR IMPROPER VENUE

6.     Bill Mahoney is not nor has he been a resident of the State of Texas and does not maintain a registered agent for service in Texas.  Furthermore, he has not, in his individual capacity engaged in business in Texas and has not committed any tort in whole or in part in Texas.  He does not maintain a place of business in Texas and has no employees, servants, representatives or agents.  Mahoney has no substantial connection with Texas arising from any action or conduct of Mahoney purposely directed towards Texas and the claims raised by Plaintiff do not arise from and are not related to any activity conducted by Mahoney in Texas. Furthermore, Mahoney has no continuing systematic contacts with Texas.  Additionally, the company for which Mahoney worked, Excelergy Corporation is located in Massachusetts and, thus, it is a reasonable deduction that all material records and witnesses would be located also in Massachusetts.  Because Massachusetts is a more appropriate forum to litigate this matter, Bill

Mahoney respectfully requests that the Court dismiss this case pursuant to 28 U.S.C.A. Rule 12b(3).

## III.
### SUBJECT TO AND WITHOUT WAIVING BILL MAHONEY'S PRIOR MOTIONS AND IN THE ALTERNATIVE, BILL MAHONEY MOVES TO DISMISS THIS LAWSUIT AS VENUE IS IMPROPER

7.      Subject to the foregoing motions and without waiving same, but pleading in the alternative, Mahoney contends that venue is improper pursuant to 28 U.S.C.A. § 1391 in that, as indicated by Plaintiff's Original Petition, no Defendants reside within the State of Texas but instead reside in the State of Massachusetts.

8.      According to Plaintiff, "Defendant's misrepresentations and omissions occurred primarily and substantially within Massachusetts." (*See* Plaintiff's Original Petition.)

9.      Furthermore, if there was any district in which a defendant is subject to personal jurisdiction at the time the action is commenced, it is Massachusetts as all Defendants are located in Massachusetts as well as the company with which Plaintiff contends it entered into the agreement made the basis of this suit.

## IV.
### SUBJECT TO AND WITHOUT WAIVING BILL MAHONEY'S PRIOR MOTIONS AND IN THE ALTERNATIVE, BILL MAHONEY MOVES TO TRANSFER THE LAWSUIT TO MASSACHUSETTS ON THE BASIS OF *FORUM NONCONVENIENS* AND U.S.C.A. § 1404

10.      Subject to the foregoing and without waiving Mahoney's Rule 12b motions and, in the alternative, Mahoney requests that this matter be dismissed or, in the alternative, transferred pursuant to 28 U.S.C.A. § 1404 on the basis of *forum non-conveniens* as all claims by Plaintiff apparently arise out of or relate to acts or claims within the State of Massachusetts.

11.      As indicated in the Affidavit of Bill Mahoney, he is a resident of the State of Massachusetts and has never been a resident of Texas.

12. An examination of Plaintiff's Original Petition indicates that Plaintiff claims that the other Defendant, Stephen Gregorio, is also a resident of the State of Massachusetts. Furthermore, Plaintiff claims that "Defendant's misrepresentations and omissions occurred primarily and substantially within Massachusetts." (*See* Plaintiff's Original Petition.)

13. As indicated by the Affidavit of Bill Mahoney, the company for which he worked, Excelergy Corporation is located in Massachusetts. Bill Mahoney thus requests, subject to his Section 12b(2) and 12b(3) motion, that, in the alternative, this matter be transferred to Massachusetts.

As a result, Defendant Bill Mahoney requests that the Court, after notice to Plaintiff FM Holdings, LLC f/k/a Forwardmarket LLC grant his motion and dismiss the entire proceeding against Bill Mahoney for want of jurisdiction pursuant to 28 U.S.C.A. Rule 12b(2) or, subject to and without waiving such motion, in the alternative, to dismiss the entire proceeding against Bill Mahoney for improper venue pursuant to U.S.C.A. Rule 12b(3) or, subject to and without waiving the foregoing, in the alternative, dismiss this case or, subject to and without waiving the foregoing, in the alternative, to transfer this matter pursuant to 28 U.S.C.A. § 1391a to Massachusetts for *forum non conveniens*.

Respectfully submitted,

HOLMAN ROBERTSON ELDRIDGE
5949 Sherry Lane, Suite 1700
Dallas, Texas 75225
Telephone:     (214)361-9494
Facsimile:     (214)691-2109

By

Charles R. Biddle
State Bar Card No. 02299300

Ronald O. Holman
State Bar Card No.:  09903600

ATTORNEYS      FOR     DEFENDANT     BILL
MAHONEY

CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above and foregoing was sent, via certified mail, return receipt requested, to all counsel of record on this 2 day of February, 2005.

Charles R. Biddle



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FM HOLDINGS, LLC, | § | |
| F/K/A FORWARDMARKET, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | C.A. No. 3:05-CV-0166-G |
| | § | |
| BILL MAHONEY and | § | |
| STEPHEN GREGORIO, | § | |
| | § | |
| Defendant | § | |

DEFENDANT BILL MAHONEY'S BRIEF IN SUPPORT OF RULE 12b(2) MOTION
OBJECTING TO JURISDICTION OR SUBJECT TO AND WITHOUT WAIVING
BILL MAHONEY'S RULE 12b(2) MOTION AND, IN THE ALTERNATIVE,
BILL MAHONEY'S MOTION TO DISMISS PURSUANT TO RULE 12b(3)
FOR IMPROPER VENUE OR, SUBJECT TO AND WITHOUT WAIVING THE
FOREGOING, IN THE ALTERNATIVE, DEFENDANT'S MOTION TO DISMISS
PURSUANT TO 28 U.S.C.A. § 1391 OR SUBJECT TO AND WITHOUT WAIVING
THE FOREGOING, IN THE ALTERNATIVE, DEFENDANT'S MOTION
TO TRANSFER FOR *FORUM NON-CONVENIENS* AND 28 U.S.C.A. § 1404

Bill Mahoney ("Mahoney"), one of the Defendants, files this his brief in support of his

motion to dismiss for lack of jurisdiction pursuant to 28 U.S.C.A Rule 12b(2) and would show

the Court as follows:

## I.
## BACKGROUND

1.      Mahoney is an individual resident of the State of Massachusetts and in 2002 was

employed by an entity by the name of Excelergy Corporation ("Excelergy").  Mahoney was its

Chief Executive Officer.  Excelergy is a corporation located in Massachusetts.

2.      During 2002 FM Holdings f/k/a Forwardmarket LLC ("FM Holdings"), through

its representative, Kevin Swenke ("Swenke"), called Mahoney and introduced himself

("Swenke"), his company and some of its products.

3.      In the summer of 2002, Swenke and Mahoney met in person in Boston, Massachusetts, to discuss various aspects of the business and to prepare Swenke for his presentation to Excelergy's board and officers the next day.

4.      Swenke was present in Boston, Massachusetts, on several occasions to evaluate business matters.

5.      FM Holdings has now sued Mahoney individually claiming that certain negligent misrepresentations were made by Mahoney and the other Defendant, Stephen Gregorio, who was the Chief Financial Officer of Excelergy.  Plaintiff has also sued under the Massachusetts Unfair Trade Practices Act (Chapter 93A) and has asserted that "Defendant's misrepresentations and omissions occurred primarily and substantially within Massachusetts."  (See Plaintiff's Original Petition)

6.      As stated previously, Mahoney's only involvement at the times material hereto was that of the Chief Executive Officer of Excelergy.  At all times relevant to this dispute, Mahoney resided in and worked for Excelergy in Massachusetts.  In fact, Mahoney has lived in and worked in Massachusetts since 2000.  Prior to such time, he lived in South Carolina.  Mahoney does not have any offices located in Texas and is not personally required to maintain, nor does he maintain, a registered agent for service in Texas.  Mahoney has never maintained a place of business in Texas and has no employees within the State of Texas.  (See the Mahoney Affidavit attached to the appendix.)

7.      Mahoney has not committed any tort, in whole or in part, within the State of Texas.  Mahoney does not own property located in Texas.

8.      All of Mahoney's activities were performed on behalf of Excelergy in Massachusetts.  Morever, all of the facts giving rise to Plaintiff's allegations apparently took place in Massachusetts.  As indicated by Plaintiff's own petition negotiations made the basis of his suit "occurred primarily and substantially within Massachusetts."  (See Plaintiff's Original Petition)  Because Mahoney resides in Massachusetts, his contacts with Plaintiff were in his


capacity as an employee of Excelergy, Excelergy having its offices in Massachusetts, and the allegations as claimed by Plaintiff "occurred primarily and substantially within Massachusetts," a Texas court may not exercise personal jurisdiction over Mahoney, individually.

      9.     All Defendants, according to Plaintiff's petition, reside in Massachusetts and the Excelergy Corporation is located in Massachusetts. (*See* Plaintiff's Original Petition.)

## II.
## ARGUMENT AND AUTHORITIES – Rule 12b(2).

      10.    The Court must determine the existence of personal jurisdiction over a non-resident Defendant by reference to the state's long-arm statute and the due process clause of the Fourteenth Amendment. U.S.C.A. Const. Amend. 14. *Marathon Oil Co. v. A. G. Ruhrgas,* 182 F3d 291 (C.A. Tex.), 1999. A Texas court may only exercise jurisdiction over a non-resident if (1) the Texas long arm statute authorizes the exercise of jurisdiction and (2) the exercise of jurisdiction is consistent with federal and state constitutional guarantees. *Schlobohm vs. Shapiro,* 784 S.W.2d 355 (Tex. 1990); Tex. Civ. Prac. & Rem. Code Section 17.041-042.

**THE TEXAS LONG ARM STATUTE DOES NOT AUTHORIZE THIS COURT TO EXERCISE JURISDICTION OVER MAHONEY.**

      11.    The Texas long arm statute authorizes jurisdiction over any defendant that is "doing business" in Texas, which is defined to include: (1) contracts by mail or otherwise with a Texas resident where either party is to perform the contract in whole or in part in Texas; (2) the non-resident commits a tort in whole or in part in this state; or (3) the non-resident recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside of this state.

      12.    The Texas long arm statute does not authorize this Court to authorize jurisdiction over Mahoney because:

          (a)    He did not enter into a contract with Plaintiff. If a contract was entered into with Plaintiff it was with Mahoney's employer, Excelergy.

          (b)    Mahoney did not commit a tort, in whole or in part in Texas.

(c)     He never recruited Texas residents for employment.

Additionally, Mahoney has not otherwise been "doing business" in Texas.

## THIS COURT'S EXERCISE OF JURISDICTION OVER MAHONEY WOULD ALSO VIOLATE STATE AND FEDERAL DUE PROCESS REQUIREMENTS.

13.     In addition to meeting the requirements of Section 17.041 et seq. (Texas long arm statute), the exercise of jurisdiction over Mahoney must be consistent with the federal and state constitutional guarantees of due process.  As stated by the Supreme Court in *Schlobohm, id.*, the due process requirements are as follows:

(a)     Defendant's business in Texas would put a reasonable person on notice that he was subject to the call of the Texas courts; and

(b)     the quality and quantity of a Defendant's business in Texas must have conferred on Texas courts either:

(1)     specific jurisdiction:

a.      a defendant purposely did some act or completed some transaction in Texas;

b.      which gave rise to plaintiff's cause of action, or was connected with that act or transaction; or

(2)     general jurisdiction:  a defendant has continued and systematic contacts with Texas; and

(c)     the assumption of jurisdiction by Texas courts must not offend traditional notions of fair play and substantial justice.

## MAHONEY HAD NO NOTICE.

14.     Mahoney had no notice that he would be subject to the call of Texas courts in that Swenke, a representative of Plaintiff, initiated the communication and on several occasions traveled to Massachusetts to discuss business matters and make presentations to Excelergy Corporation.  Also, Mahoney had no employees, agents or property in Texas and had no obligation to perform any duties in Texas.  Any actions on the part of Mahoney were performed

in connection with his duties as the Chief Executive Officer of the company with which Plaintiff entered into an agreement in Massachusetts.

**LACK OF SPECIFIC JURISDICTION**.

15.     In order to give rise to specific jurisdiction, there must be some purposeful conduct, not the unilateral activity of a plaintiff or others.  *Guardian Royal Exchange vs. English China*, 815 S.W.2d 223, 228 (Tex. 1991).  In the instant case, there are no purposeful acts or a completion of a transaction in Texas.  If anything, any acts or transaction were completed in Massachusetts, and any actions on the part of Mahoney would have been performed in his capacity as Chief Executive Officer of Excelergy.  Because a non-resident defendant's activities must be purposely directed at the forum, ostensible reliance on a misrepresentation does not constitute a litmus paper test.  As the Dallas Court of Appeals held in *City of Riverview, M.I. vs. American Factors*, 77 S.W.3d 855, 858 (Tex. App. – Dallas 2002, no pet.), "[t]o allow jurisdiction over a defendant based on a single unsolicited and unanticipated contact initiated as a result of actions of the plaintiff would be directly contrary to the traditional notions of fair play and substantial justice which is at the heart of due process."  *D. H. Blair Inv. Banking Corp. vs. Reardon*, 97 S.W.3d 269, 275 (Tex. App. – Houston [14[th] Dist.] 2002, pet. filed) stands for the proposition that most courts and commentators agree that the effect test requires intentionally tortious conduct aimed at the forum.  It has also been held that causing an injury in Texas cannot, in and of itself, establish the necessary minimum contacts for jurisdiction.  *Laykin vs. McFall*, 830 S.W.2d 266 (Tex. App. – Amarillo 1992, no writ).  The Court, in *Guardian Royal Exchange Assur,, Ltd. vs. English China Clays P.L.C.*, 815 S.W.2d 223 (Tex. 1991), held "the substantial connection between the non-resident in the forum state necessary for finding of minimum contacts must come about by actions or conduct of the non-resident defendant purposely directly toward the forum state."  It stated "although not an independent component of the minimum contacts analysis, the concept of 'foreseeability' is implicit in the requirement that there be a substantial connection."  As indicated, Mahoney also did not recruit any Texas residents for

employment. Furthermore, with regard to telephone conversations, it has been held that a non-resident's telephone calls and correspondence directed to Texas are generally insufficient to confer personal jurisdiction. A telephone call placed from Texas by a plaintiff to a non-resident defendant has even less value for the purpose of establishing jurisdiction. *Tuscano v. Osterberg*, 82 S.W.3d 457 469-470 (Tex. App. – El Paso 2002, no pet.). In the instant case, Plaintiff's representative, Swenke, initiated the telephone calls. Thus, the exercise of personal jurisdiction by a Texas court over Mahoney would be improper.

**NO GENERAL JURISDICTION**

16. There has been no showing that Mahoney had any continuing or systematic activities in the forum state. Mere association with the forum state is insufficient. Rather, there must be substantial activities by Mahoney in Texas. As stated in the motion and the affidavit of Mahoney, he does not maintain an office or registered agent for service in Texas, he has not committed any tort, in whole or in part, in Texas, he does not own property located in Texas and he has never maintained a business in Texas. Furthermore, he has no employees within the state and has never recruited any Texas residents for employment.

**FAIR PLAY AND SUBSTANTIAL JUDGMENT**

17. Mahoney had no contacts with Texas other than to have received a telephone call initiated by Plaintiff's representative to introduce himself, his company and its products. Mahoney received the telephone calls in Massachusetts. Mahoney's employer at the time was located in Massachusetts and any witnesses that may be involved in this matter are also located in Massachusetts. Plaintiff's representative also made presentations in Massachusetts and was involved in business related matters in Massachusetts which now apparently give rise to his claim. Apparently, the only connection with Texas is that Plaintiff is located here. Thus, the Court should dismiss the claims of Plaintiff against Mahoney for lack of personal jurisdiction.

**MAHONEY HAS NOT HAD ANY MINIMUM OR CONTINUOUS AND SYSTEMATIC CONTACT WITH THE STATE OF TEXAS THAT WOULD JUSTIFY JURISDICTION OVER MAHONEY**

18.    The exercise of jurisdiction over Mahoney would offend concepts of fair play and substantial justice. Mahoney requests that this Court sustain his motion objecting to personal jurisdiction and enter a final judgment dismissing Plaintiff's entire proceeding against Bill Mahoney for lack of jurisdiction.

**SUBJECT TO THE FOREGOING AND WITHOUT WAIVING BILL MAHONEY'S RULE 12B(2) MOTION, IN THE ALTERNATIVE, BILL MAHONEY MOVES TO DISMISS THIS CASE FOR IMPROPER VENUE PURSUANT TO 28 U.S.C.A. RULE 12b(3) AND 28 U.S.C.A. §1391 FOR IMPROPER VENUE**

19.    Subject to the foregoing and without waiving same, Defendant Bill Mahoney moves that this matter be dismissed pursuant to 28 U.S.C.A. Rule 12(b)(3) or 28 U.S.C.A. 1391a:

(a)    Plaintiff, in its own Original Petition, claims that all Defendants reside in Massachusetts;

(b)    Plaintiff also claims in its Original Petition that "Defendants' misrepresentations and omissions occurred primarily and substantially in Massachusetts." (*See* Plaintiff's Original Petition.)

(c)    If the Defendants are subject to personal jurisdiction they would be subject to such jurisdiction in Massachusetts.

**SUBJECT TO THE FOREGOING AND WITHOUT WAIVING SAME, PLAINTIFF'S CLAIM, IF ANY, SHOULD BE HEARD IN MASSACHUSETTS BECAUSE IT IS AN AVAILABLE FORUM AND IT IS A MUCH MORE APPROPRIATE FORUM THAN DALLAS COUNTY, TEXAS.**

20.    The doctrine of *forum non conveniens* is an equitable doctrine exercised by the Court to resist imposition of an inconvenient jurisdiction on a litigant even if jurisdiction is supported by the long-arm statute and would not violate due process. Subject to his previous motions and, in the alternative, Mahoney files this motion to dismiss or, in the alternative, moves to transfer this case for *forum non conveniens*.

21.    Although the Texas Supreme Court has neither enthusiastically embraced the doctrine of *forum non conveniens,* nor revealed fully its contours, it has acknowledged the existence of the doctrine as

announced by the United States Supreme Court in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501 (1947), citing *Flaiz v. Moore,* 359 S.W.2d 872, 874 (Tex.1962). Texas recognizes the doctrine as a procedural rule which does not determine jurisdiction, but only determines that the jurisdiction which exists should not be exercised where another forum, also having jurisdiction, is better able to act. *McNutt v. Teledyne Indus., Inc.,* 693 S.W.2d 666, 668 (Tex.App.--Dallas 1985, *writ dism'd).*

22.     Texas courts will exercise the doctrine of *forum non conveniens* when it determines that, for the convenience of the litigants and witnesses, and in the interest of justice, the action should be instituted in another forum. *See, Sarreiddine v. Moussa,* 820 S.W.2d 837, 839 (Tex.App.--Dallas 1991, writ denied); *Van Winkle-Hooker Co. v. Rice,* 448 S.W.2d 824, 826 (Tex.Civ.App.—Dallas 1969, *no writ).* There are several steps in conducting *forum non conveniens* analysis, including (1) whether or not an adequate and superior alternative forum exists, and; (2) whether private and public interests favor the transfer of the action.

**Massachusetts is an adequate and superior forum**

23.     First, there must be a determination that an alternative forum exists, because the doctrine presumes that at least two forums are available to the plaintiff to pursue the claim. *See, Sarieddine,* 820 S.W.2d 837 at 841. The alternative forum element has two components, that is, an alternative forum must be available and adequate. A forum is "available" when the entire case and all the parties can come within the jurisdiction of that forum. The key question in deciding whether another forum is "available" for the purposes of *forum non conveniens* analysis, is whether the defendant is amenable to process in the alternative forum. *See, Quintero v. Klaveness Ship Lines,* 914 F.2d 717, 727 (5th Cir. 1990), cert. denied, 499 U.S. 925 (1990). Plaintiff, in its Original Petition, claims that both Defendants are residents of the state of Massachusetts and they are both amenable to process in Massachusetts. Once the moving party establishes that an available forum exists, the burden is on the plaintiff to prove that the available forum is not adequate. *See, Vaz Borralho v. Kevdril* Co., 696 F.2d 379, 393-394 (5th Cir. 1983).

**Both the private and public interest factors overwhelmingly weigh in favor of dismissing this matter or, in the alternative, transferring it to Massachusetts**

### Private Interests

24.     Texas courts must consider the following private interests of litigants when determining if the chosen forum is the most convenient:

      a.      Relative ease of access to sources of proof;

      b.      Availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses;

      c.      The enforcement of a judgment if one is obtained. *See, A.P. Keller Dev., Inc. v. One Jackson Place, Ltd.,* 890 S.W.2d 502, 505 (Tex.App.--E 1 Paso 1994, no writ).

It is a reasonable deduction that most, if not all, witnesses are located in Massachusetts as well as any salient records. Furthermore, the witnesses are not subject to compulsory process for attendance. Lastly, because all the witnesses in this matter would have to travel to Texas the case would not be easy, expeditious or inexpensive to litigate in a Texas court.

### Public Interests

25.     Texas courts have also held that the following public interest concerns should be analyzed in determining if a more appropriate forum exists:

      a.      The burden imposed upon the citizens and courts of Texas in trying a case that has no relation to Texas;

      b.      The general interest in having localized controversies decided locally; and

      c.      The interest in having a diversity case tried in a forum that is familiar with the law that must govern the action.

*See, A.P. Keller Dev., Inc., Id.*

Based on the foregoing, it is clear that the private and public interests weigh heavily in favor of transferring this case to a Massachusetts court and a jurisdiction that would provide a more convenient forum and a forum with a greater interest in the outcome of the litigation.

WHEREFORE, PREMISES CONSIDERED, Defendant Bill Mahoney moves this Court to enter an order dismissing the claims against him for want of personal jurisdiction or, subject to the

foregoing and without waiving same, the Court sustain his motion to dismiss this cause for improper venue pursuant to 28 U.S.C.A. § 1391a or, subject to the foregoing and without waiving same, to transfer this matter to Massachusetts in accordance with 28 U.S.C.A. § 1404 and *forum non conveniens* as Texas is not the appropriate forum for this matter.

Respectfully submitted,

HOLMAN ROBERTSON ELDRIDGE
5949 Sherry Lane, Suite 1700
Dallas, Texas  75225
Telephone:    (214)361-9494
Facsimile:    (214)691-2109

By

Charles R. Biddle
State Bar Card No. 02299300

Ronald O. Holman
State Bar Card No.:  09903600

ATTORNEYS FOR MAHONEY

CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above and foregoing has this day been sent, via certified mail, return receipt requested, to all counsel of record on this _2_ day of February, 2005.

Charles R. Biddle

BRIEF
H:\wp\05\crb\mahoney\SPEC APP–BRIEF01.doc



FILED

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

FEB - 2 2005

CLERK, U.S. DISTRICT COURT
By
Deputy

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

TRINOTTINGS, LLC,          §
D/B/A FORWARDMARKET, LLC,   §
                            §
        Plaintiff,          §
                            §
vs.                         §          C.A. No. 3:05-CV-0166-G
                            §
BILL MAHONEY and            §
STEPHEN GREGORIO,           §
                            §
        Defendant           §

## APPENDIX

Pursuant to Local Rule 56.6, Defendant Bill Mahoney files the following Appendix to his

motion to dismiss for lack of jurisdiction:

<u>Tab</u>

1.      Affidavit of Bill Mahoney

                        Respectfully submitted,

                        HOLMAN ROBERTSON ELDRIDGE
                        5949 Sherry Lane, Suite 1700
                        Dallas, Texas  75225
                        Telephone:    (214)361-9494
                        Facsimile:    (214)691-2109


                        By _____
                            Charles R. Biddle
                            State Bar Card No. 02299300

                            Ronald O. Holman
                            State Bar Card No.:  09903600

                        ATTORNEYS FOR MAHONEY

## CERTIFICATE OF SERVICE

    I certify that a true and correct copy of the above and foregoing has this day been sent, via certified mail, return receipt requested, to all counsel of record on this _z_ day of February, 2005.

Charles R. Biddle

Cause No. 04-12672-A

| | | |
|---|---|---|
| FM HOLDINGS, LLC,<br>F/K/A FORWARDMARKET, LLC, | §<br>§<br>§ | IN THE DISTRICT COURT |
| Plaintiff, | §<br>§ | DALLAS CO., TEXAS |
| | § | ———————————DEPUTY |
| vs. | §<br>§ | 14TH JUDICIAL DISTRICT |
| BILL MAHONEY and<br>STEPHEN GREGORIO, | §<br>§ | |
| Defendant | §<br>§ | DALLAS COUNTY, TEXAS |

### AFFIDAVIT OF WILLIAM T. MAHONEY

STATE OF MASSACHUSETTS   §
                                     §
COUNTY OF MIDDLESEX     §

     BEFORE ME, the undersigned Notary Public, on this day personally appeared William T. Mahoney, who, being by me duly sworn on oath, deposed and said the following:

1.    "I am one of the Defendants in the above-styled and numbered cause.

2.    "I am a resident of the State of Massachusetts, United States of America, and have been a resident of Massachusetts since 2000. Prior to such time, I was a resident of South Carolina. I have never been a resident of the State of Texas.

3.    "At all times relevant to this dispute, I was acting in my capacity as Chief Executive Officer of Excelergy Corporation which was located in Massachusetts and all of my activities with respect to this matter took place in Massachusetts.

4.    "I have not been a resident of nor do I have any connection with the State of Texas nor have I in my individual capacity performed any act or consummated any transaction in Texas. Furthermore, a reading of Plaintiff's Original Petition indicates that its alleged cause of action 'occurred primarily and substantially within Massachusetts.' As a result and as indicated herein, the alleged cause of action did not arise in Texas.

5.    "During 2002 Plaintiff, through its representative, Kevin Swenke, contacted me in Massachusetts to introduce himself and his company. Kevin Swenke made numerous trips to Boston, Massachusetts to discuss business matters with and make presentations to the company with which I was employed at the time. At no time did I travel to Texas in connection with the matters about which Plaintiff now complains.

6.    I do not maintain a place of business in Texas and I do not have any employees, servants or agents in Texas.

7.    "Every statement contained in this affidavit is within my personal knowledge and is true and correct."

Further Affiant saith not.

_____
WILLIAM T. MAHONEY

SUBSCRIBED AND SWORN TO BEFORE ME on this ⟶13 day of January, 2005.

SHEILA M. WHALEN
Notary Public
Commonwealth of Massachusetts
My Commission Expires
May 22, 2009

_____
Notary Public in and for
the State of Massachusetts

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above and foregoing special appearance motion has this day been sent, via certified mail, return receipt requested, to Kimberly A. Elkjer, Scheef and Stone LLP, 5956 Sherry Lane, Suite 1400, Dallas, Texas 75225, on this /4 day of January, 2005.

_____
Charles R. Biddle



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

FM HOLDINGS, LLC,                                  §
F/K/A FORWARDMARKET, LLC,                          §
                                                   §
        Plaintiff,                                 §
                                                   §
vs.                                                §        C.A. No. 3:05-CV-0166-G
                                                   §
BILL MAHONEY and                                   §
STEPHEN GREGORIO,                                  §
                                                   §
        Defendant                                  §

### ADOPTION OF CERTIFICATE OF INTERESTED PERSONS

Defendant Bill Mahoney (a "Defendant"), pursuant to Local Rule 3.1(f), hereby files this

Adoption of Certificate of Interested Persons previously filed by attorneys for Stephen Gregorio.

1.  Plaintiff FM Holdings, L.L.C. f/k/a Forwardmarket, L.L.C.
    Represented by:  Kimberly A. Elkjer
                     SCHEEF & STONE, L.L.P.
                     5956 Sherry Lane, Suite 1400
                     Dallas, Texas  75225
                     Telephone:  (214)706-4200
                     Facsimile:  (214)706-4242

2.  Defendant Bill Mahoney
    Represented by:  Charles R. Biddle
                     HOLMAN ROBERTSON ELDRIDGE
                     5949 Sherry Lane, Suite 1700
                     Dallas, Texas  75225
                     Telephone:  (214)361-9494
                     Facsimile:  (214)691-2109

3.  Defendant Stephen Gregario
    Represented by:  Thomas J. Fisher
                     SHANNON, GRACEY, RATLIFF & MILLER, L.L.P.
                     777 Main Street, Suite 3800
                     Fort Worth, Texas  76102
                     Telephone:  (817)336-9333
                     Facsimile:  (817)336-3735

ADOPTION OF CERTIFICATE OF INTERESTED PERSONS                                    Page 1
H:\wp\05\crb\mahoney\CERT INT PERSONS~01.doc

Respectfully submitted,

HOLMAN ROBERTSON ELDRIDGE
5949 Sherry Lane, Suite 1700
Dallas, Texas 75225
Telephone:      (214)361-9494
Facsimile:      (214)691-2109

By _____
    Charles R. Biddle
    State Bar Card No. 02299300

    Ronald O. Holman
    State Bar Card No.: 09903600

ATTORNEYS     FOR     DEFENDANT     BILL
MAHONEY

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above and foregoing was sent, via certified mail, return receipt requested, to all counsel of record on this ᴢ day of February, 2005.

_____
Charles R. Biddle



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

FM HOLDINGS, LLC, f/k/a )
FORWARDMARKET, LLC, )
)
      Plaintiff, )
v. )
)
BILL MAHONEY and STEPHEN )
GREGORIO, )
)
      Defendants. )

Civil Action No.
3: 05-CV-0166-G

## ANSWER AND AFFIRMATIVE DEFENSES OF
## STEPHEN GREGORIO TO ORIGINAL PETITION

Defendant Stephen Gregorio, by his attorneys, responds to the averments in the

Original Petition (the "Complaint") as follows:

### DISCOVERY CONTROL PLAN

1.      Because the Defendants have removed this action to federal district court,

Paragraph 1 is here inapplicable and requires no response. To the extent the averments

contained in paragraph 1 may be construed to require a response, Defendant Gregorio

denies them.

### PARTIES AND JURISDICTION

2.      Defendant Gregorio lacks knowledge or information sufficient to form a

belief as to the truth of the allegations contained in this paragraph and therefore denies

them.

3.      To the extent the allegations in this paragraph are directed to a defendant, entity, or individual other than Defendant Gregorio, no response is required.  To the extent the allegations are directed to Defendant Gregorio, he lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies them.

4.      Defendant Gregorio denies the allegations in this paragraph except admits that he resides in Massachusetts.

5.      To the extent the averments in this paragraph refer to state court proceedings they are inapplicable and require no response.  To the extent the averments may be construed to apply to the present proceedings in federal district court, Defendant Gregorio denies them.

6.      Paragraph 6 consists of legal conclusions to which no response is required. To the extent that the averments contained in paragraph 6 may be construed to require a response, Defendant Gregorio denies them.

## **FACTUAL BACKGROUND**

7.      Defendant Gregorio lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies them.

8.      Defendant Gregorio lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph, but states that any written agreement entered into by Excelergy speaks for itself.

9.    Defendant Gregorio lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies them.

10.    Defendant Gregorio denies the allegations in this paragraph except admits that there were negotiations preceding Plaintiff's entering into the Agreement.

11.    To the extent the allegations in this paragraph are directed to a defendant, entity, or individual other than Defendant Gregorio, no response is required. To the extent the allegations are directed to Defendant Gregorio, he lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies them except Defendant Gregorio admits that he had discussions on behalf of Excelergy with Kevin Swenke.

12.    To the extent the allegations in this paragraph are directed to a defendant, entity, or individual other than Defendant Gregorio, no response is required. To the extent the allegations are directed to Defendant Gregorio, he lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies them except Defendant Gregorio admits that he had discussions on behalf of Excelergy with Kevin Swenke.

13.    To the extent the allegations in this paragraph are directed to a defendant, entity, or individual other than Defendant Gregorio, no response is required. To the extent the allegations are directed to Defendant Gregorio, he lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies them.

14.     To the extent the allegations in this paragraph are directed to a defendant, entity, or individual other than Defendant Gregorio, no response is required.   To the extent the allegations are directed to Defendant Gregorio, he denies them.

15.     To the extent the allegations in this paragraph are directed to a defendant, entity, or individual other than Defendant Gregorio, no response is required.   To the extent the allegations are directed to Defendant Gregorio, he denies them.

16.     To the extent the allegations in this paragraph are directed to a defendant, entity, or individual other than Defendant Gregorio, no response is required.   To the extent the allegations are directed to Defendant Gregorio, he denies them.

17.     To the extent the allegations in this paragraph are directed to a defendant, entity, or individual other than Defendant Gregorio, no response is required.   To the extent the allegations are directed to Defendant Gregorio, he lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies them.

18.     To the extent the allegations in this paragraph are directed to a defendant, entity, or individual other than Defendant Gregorio, no response is required.   To the extent the allegations are directed to Defendant Gregorio, he denies them.

19.     To the extent the allegations in this paragraph are directed to a defendant, entity, or individual other than Defendant Gregorio, no response is required.   To the extent the allegations are directed to Defendant Gregorio, he denies them.

20.     To the extent the allegations in this paragraph are directed to a defendant, entity, or individual other than Defendant Gregorio, no response is required.   To the extent the allegations are directed to Defendant Gregorio, he denies them.

21.     To the extent the allegations in this paragraph are directed to a defendant, entity, or individual other than Defendant Gregorio, no response is required. To the extent the allegations are directed to Defendant Gregorio, he denies them.

22.     To the extent the allegations in this paragraph are directed to a defendant, entity, or individual, entity, or individual other than Defendant Gregorio, no response is required. To the extent the allegations are directed to Defendant Gregorio, he denies them.

23.     To the extent the allegations in this paragraph are directed to a defendant, entity, or individual other than Defendant Gregorio, no response is required. To the extent the allegations are directed to Defendant Gregorio, he denies them.

24.     To the extent the allegations in this paragraph are directed to a defendant, entity, or individual other than Defendant Gregorio, no response is required. To the extent the allegations are directed to Defendant Gregorio, he denies them.

25.     To the extent the allegations in this paragraph are directed to a defendant, entity, or individual other than Defendant Gregorio, no response is required. To the extent the allegations are directed to Defendant Gregorio, he denies them.

26.     To the extent the allegations in this paragraph are directed to a defendant, entity, or individual other than Defendant Gregorio, no response is required. To the extent the allegations are directed to Defendant Gregorio, he denies them.

27.     To the extent the allegations in this paragraph are directed to a defendant, entity, or individual other than Defendant Gregorio, no response is required. To the extent the allegations are directed to Defendant Gregorio, he denies them.

28.     To the extent the allegations in this paragraph are directed to a defendant, entity, or individual other than Defendant Gregorio, no response is required.  To the extent the allegations are directed to Defendant Gregorio, he denies them.

29.     To the extent the allegations in this paragraph are directed to a defendant, entity, or individual other than Defendant Gregorio, no response is required.  To the extent the allegations are directed to Defendant Gregorio, he denies them but states that he no longer works for Excelergy.

<div align="center">

**COUNT I**
**(NEGLIGENT MISREPRESENTATIONS)**

</div>

30.     Defendant Gregorio repeats and incorporates by reference his response to the averments contained in paragraphs 1 through 29 above.

31.     To the extent the allegations in this paragraph are directed to a defendant, entity, or individual other than Defendant Gregorio, no response is required.  To the extent the allegations are directed to Defendant Gregorio, he denies them.

32.     To the extent the allegations in this paragraph are directed to a defendant, entity, or individual other than Defendant Gregorio, no response is required.  To the extent the allegations are directed to Defendant Gregorio, he denies them.

33.     To the extent the allegations in this paragraph are directed to a defendant, entity, or individual other than Defendant Gregorio, no response is required.  To the extent the allegations are directed to Defendant Gregorio, he denies them.

34.     To the extent the allegations in this paragraph are directed to a defendant, entity, or individual other than Defendant Gregorio, no response is required.  To the extent the allegations are directed to Defendant Gregorio, he denies them.

35.     To the extent the allegations in this paragraph are directed to a defendant, entity, or individual other than Defendant Gregorio, no response is required.  To the extent the allegations are directed to Defendant Gregorio, he denies them.

36.     To the extent the allegations in this paragraph are directed to a defendant, entity, or individual other than Defendant Gregorio, no response is required.  To the extent the allegations are directed to Defendant Gregorio, he denies them.

## COUNT II
## (MASSACHUSETTS UNFAIR TRADE PRACTICES ACT)

37.     Defendant Gregorio repeats and incorporates by reference his response to the averments contained in paragraphs 1 through 36 above.

38.     Paragraph 38 consists of legal conclusions to which no response is required.  To the extent that the averments contained in paragraph 38 may be construed to require a response, Defendant Gregorio denies them.

39.     To the extent the allegations in this paragraph are directed to a defendant, entity, or individual other than Defendant Gregorio, no response is required.  To the extent the allegations are directed to Defendant Gregorio, he denies them.

40.     To the extent the allegations in this paragraph are directed to a defendant, entity, or individual other than Defendant Gregorio, no response is required.  To the extent the allegations are directed to Defendant Gregorio, he denies them.

41.     To the extent the allegations in this paragraph are directed to a defendant, entity, or individual other than Defendant Gregorio, no response is required.  To the extent the allegations are directed to Defendant Gregorio, he denies them.

42.    To the extent the allegations in this paragraph are directed to a defendant, entity, or individual other than Defendant Gregorio, no response is required. To the extent the allegations are directed to Defendant Gregorio, he denies them.

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

The Complaint must be dismissed because this Court lacks personal jurisdiction over Defendant Gregorio.

### THIRD AFFIRMATIVE DEFENSE

The Complaint must be dismissed because venue in this Court is improper.

### FOURTH AFFIRMATIVE DEFENSE

The Complaint is barred by the parole evidence rule.

### FIFTH AFFIRMATIVE DEFENSE

The Complaint is barred because any damages allegedly suffered by the Plaintiff are a result of their own negligence and/or the actions of a third party for which Defendant Gregorio is not responsible.

### SIXTH AFFIRMATIVE DEFENSE

The Plaintiff's claims under Mass. Gen. L. ch. 93A are barred because the Plaintiff cannot establish all of the statutory prerequisites to such a claim.

### SEVENTH AFFIRMATIVE DEFENSE

The Plaintiff's claims are barred and/or must be reduced because the Plaintiff has failed to mitigate its damages.

### EIGHTH AFFIRMATIVE DEFENSE

The Plaintiff's claims are barred by the doctrine of estoppel.

### NINTH AFFIRMATIVE DEFENSE

The Plaintiff's claims are barred by the doctrine of waiver.

### TENTH AFFIRMATIVE DEFENSE

The Plaintiff's claims are barred by the Plaintiff's unclean hands.

### ELEVENTH AFFIRMATIVE DEFENSE

The Plaintiff's claims are barred because the Plaintiff has failed to state its fraud claims with sufficient specificity.

### TWELFTH AFFIRMATIVE DEFENSE

The Plaintiff's claims are barred by the doctrine of laches.

### THIRTEENTH AFFIRMATIVE DEFENSE

The Plaintiff's claims are barred by the Statute of Limitations.

### FOURTEENTH AFFIRMATIVE DEFENSE

The Plaintiff's claims are barred by the Statute of Frauds.

### FIFTEENTH AFFIRMATIVE DEFENSE

Defendant Gregorio specifically reserves the right to assert such other and further affirmative defenses as are revealed in the course of discovery.

WHEREFORE, Defendant Gregorio respectfully requests that this Court enter judgment on dismissing all Counts of the Complaint with prejudice and award Defendant Gregorio the costs of defending this action to the extent permitted by law, including attorneys' fees, and for such other and further relief as this Court deems just and proper.

Respectfully submitted,

SHANNON GRACEY RATLIFF & MILLER, LLP
777 Main Street, Suite 3800
Fort Worth, Texas 76102
(817) 336-9333 Telephone
(817) 336-3735 Facsimile

By: _____

Thomas J. Fisher
State Bar Card No.: 07064500

*Of Counsel:*

Timothy C. Blank
BBO No. 548670
Michael. S. Shin
BBO No. 658134
DECHERT L.L.P.
00 Clarendon Street, 27th Floor
Boston, MA 02116
(617) 728-7100 Telephone
(617) 426-6567

**ATTORNEYS FOR DEFENDANT
STEPHEN GREGORIO**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

CLERK, U.S. DISTRICT COURT
By _____

| | |
|---|---|
| FM HOLDINGS, LLC, f/k/a FORWARDMARKET, LLC, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) |
| BILL MAHONEY and STEPHEN GREGORIO, | ) ) ) ) |
| Defendants. | ) ) |

Civil Action No.
3: 05-CV-0166-G

## MOTION OF DEFENDANT STEPHEN GREGORIO TO
## TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)

Defendant Stephen Gregorio, by his attorneys, hereby moves to transfer this action to the District of Massachusetts pursuant to 28 U.S.C. § 1404(a).[1]

As grounds for this Motion, Gregorio states that transfer is appropriate in this case as virtually all of the witnesses reside in Massachusetts, the documents and proof necessary for the prosecution and defense of this case are located in Massachusetts, Defendants lack the ability to compel the live testimony of necessary witnesses in Texas, the operative facts occurred in Massachusetts (by Plaintiff's own admission), Massachusetts law applies to this dispute, and the parties to the underlying contract in this dispute expressly agreed that all actions arising out of the contract would be brought in the District of Massachusetts. Accordingly, transfer is appropriate and will result in

---

[1] This Motion is based upon the argument and authorities contained herein, as well as the Brief in Support of Motion of Stephen Gregorio to Transfer Venue and the Appendix in Support of Stephen Gregorio's Motion to Transfer venue, all of which are incorporated herein by reference.

greater convenience to witnesses, less cost to the parties, and greater efficiency for the courts.

WHEREFORE, Defendant Gregorio respectfully requests that this action be transferred to the District of Massachusetts pursuant to 28 U.S.C. § 1404(a), and for such other and further relief as this Court deems just and proper.

Respectfully submitted,

**SHANNON GRACEY RATLIFF & MILLER, LLP**
777 Main Street, Suite 3800
Fort Worth, Texas 76102
(817) 336-9333  Telephone
(817) 336-3735  Facsimile

By:_____
      Thomas J. Fisher
      State Bar Card No.:  07064500

*Of Counsel:*
      Timothy C. Blank
      BBO No. 548670
      Michael. S. Shin
      BBO No. 658134
      **DECHERT L.L.P.**
      00 Clarendon Street, 27th Floor
      Boston, MA  02116
      (617) 728-7100  Telephone
      (617) 426-6567

**ATTORNEYS FOR DEFENDANT
STEPHEN GREGORIO**

## LOCAL RULE 7.1(b) CERTIFICATION

This motion is opposed by the Plaintiff. I certify that Timothy Blank, of counsel for Defendant Stephen Gregorio attempted in good faith to resolve the issues presented in this Motion during a teleconference with Kimberly A. Elkjer, counsel for the Plaintiff, held on February 1, 2005, but that agreement as to the Motion could not be reached.

_____
Thomas J. Fisher
February 7, 2005


## CERTIFICATE OF SERVICE

This is to certify that on the ___7th___ day of February, 2005, a true and correct copy of the above and foregoing document was mailed, certified mail, return receipt requested, to each attorney of record in this cause:

Ms. Kimberly A. Elkjer
Scheef & Stone, L.L.P.
5956 Sherry Lane, Suite 1400
Dallas, Texas 75225

Mr. Charles R. Biddle
Holman, Robertson, Eldridge
5949 Sherry Lane, Suite 1700
Dallas, Texas 75225

_____
Thomas J. Fisher



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

|  |  |  |
|---|---|---|
| FM HOLDINGS, LLC, f/k/a FORWARDMARKET, LLC, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. |
| v. | ) ) | 3: 05-CV-0166-G |
| BILL MAHONEY and STEPHEN GREGORIO, | ) ) ) | |
| Defendants. | ) ) | |

## BRIEF IN SUPPORT OF MOTION OF
## DEFENDANT STEPHEN GREGORIO TO TRANSFER VENUE

Defendant Stephen Gregorio ("Gregorio") respectfully submits this Brief in support of his motion to transfer this action to the District of Massachusetts pursuant to 28 U.S.C. § 1404(a). Transfer is appropriate in this case as virtually all of the witnesses reside in Massachusetts, the documents and proof necessary for the prosecution and defense of this case are located in Massachusetts, Defendants lack the ability to compel the live testimony of necessary witnesses in Texas, the operative facts occurred in Massachusetts (by Plaintiff's own admission), Massachusetts law applies to this dispute, and the parties to the underlying contract in this dispute expressly agreed that all actions arising out of the contract would be brought in the District of Massachusetts. Accordingly, and for the reasons set forth more fully below, transfer is appropriate and will result in greater convenience to witnesses, less cost to the parties, and greater efficiency for the courts.

## STATEMENT OF FACTS

### A.    The Complaint

Plaintiff FM Holdings, LLC f/k/a Forwardmarket, LLC ("FM Holdings") brings this two-count action under Massachusetts law against Defendants Bill Mahoney ("Mahoney") and Stephen Gregorio, formerly the Chief Executive Officer and Chief Financial Officer, respectively, of Excelergy Corporation ("Excelergy"). The Original Petition (the "Complaint") alleges that Forwardmarket entered into an Asset Purchase Agreement (the "Agreement") with Excelergy pursuant to which Excelergy purchased certain assets and assumed certain liabilities of Forwardmarket. Complaint, ¶ 8. The Complaint further alleges that during the course of the negotiations leading up to the Agreement, Defendants made certain misrepresentations and failed to disclose certain information that led Forwardmarket to enter into the Agreement. Id. ¶ 13. Specifically, the Complaint alleges that Defendants misrepresented to Forwardmarket: (1) that Excelergy was profitable in the third-quarter of 2002, id. ¶ 14; (2) that Excelergy would be "profitable going forward," id. ¶ 21; and (3) that Excelergy's market value was $100 million based on its size, growth, and profitability. Id. ¶ 26. In addition, the Complaint alleges that Defendants failed to disclose that Excelergy was potentially liable for a breach of a lease agreement with Boston Properties, Inc., id. ¶ 19, and that Excelergy had made substantial personal loans to Mahoney. Id. ¶ 23.

### B.    Evidence and Witnesses

The only individuals identified in the Complaint are Gregorio and Mahoney, both of whom the Complaint acknowledges are residents of Massachusetts. Complaint, ¶ 3-4.[1]

---

[1] Gregorio also objects on jurisdictional grounds. Upon information and belief, Defendant Mahoney will also be submitting papers objecting to jurisdiction and venue.

In addition, the only corporate entities mentioned in the Complaint are Excelergy, FM Holdings, and Forwardmarket. Excelergy is incorporated in Delaware with its headquarters in Lexington, Massachusetts. Gregorio Aff., ¶ 2. The Complaint indicates that the principal place of business of FM Holdings, formerly Forwardmarket, is in Dallas, Texas. Complaint, ¶ 2. J. Kevin Swenke, the founder of Forwardmarket, is the principal owner of FM Holdings. Gregorio Aff., ¶ 6.

Most or all of the financial and business records of Excelergy related to this case are located at Excelergy's headquarters in Massachusetts and/or are in the custody of Alfred Browne, III, who serves as outside legal counsel to Excelergy in Boston, Massachusetts. Id. ¶ 3. In addition, the following individuals who have knowledge relevant to the allegations in this case and therefore may potentially serve as witnesses to the case presently reside in Massachusetts: Browne; Robert Davoli and R. David Tabors, members of Excelergy's Board of Directors; Stuart R. Young and Kevin Monagle, members of the Excelergy's Executive Management Team; Amy Layous and Robert Paquette, former members of the Excelergy's Executive Management Team; Matthew Emsley, formerly Excelergy's Director of Finance & Human Resources; Mark Bane, formerly Excelergy's Vice President of Marketing; and Alphonse Lucchese, a former member of the Board of Directors. Id. ¶ 4. The only individuals on Excelergy's Board of Directors or Executive Management Team who are not residents of Massachusetts are Rudolph Das, a member of the Board who resides in Europe, and Swenke, a member of the Management Team who resides in Texas. Id. ¶ 5. Each of the individuals presently or formerly on the Board of Directors and on the Executive Management Team, as well as Browne, Bane, and Emsley, may have knowledge relevant to the claims in this case.

Id. ¶ 4.  Specifically, each of the individuals could potentially provide testimony as to, *inter alia*, the present and past financial condition of Excelergy and the alleged breach of the lease with Boston Properties.  Id.  In addition, the former and present members of the Board and Emsley could provide testimony as to the alleged loans to Mahoney.  Id.

Virtually all of the evidence and witnesses concerning Excelergy's alleged breach of its lease are also in Massachusetts.  Id. ¶ 7.  Any documents in Excelergy's possession relating to the lease are in its headquarters in Lexington, Massachusetts, and Boston Properties, identified in the Complaint as the lessor, is located in Boston, Massachusetts.  Id.

Finally, all of the documents requested by FM Holdings in its First Request For Production of Documents to Gregorio are located in Massachusetts.  First, all insurance and/or director and officer liability agreements potentially covering the present suit or relating to Defendants' positions at Excelergy are in the possession of Excelergy in Massachusetts.  Id. ¶ 8.  Second, copies of all employment and severance agreements are in the possession of Defendants and at Excelergy headquarters in Massachusetts.  Id. ¶ 9.  And third, all documents referring to Forwardmarket, correspondences sent to or received from Forwardmarket, referring or relating to the Agreement, or otherwise referring to or relating to the present suit are maintained at Excelergy's headquarters in Massachusetts.  Id. ¶¶ 10-11.

**C.    Venue and Governing Law Selection Provisions in the Agreement**

It is not disputed in this case that the Agreement contains express provisions designating Massachusetts courts as the appropriate venue for disputes arising under the Agreement and identifying Massachusetts law as the governing law for such disputes.

More specifically, the provisions designate the District of Massachusetts as the agreed-upon federal venue for disputes arising under the Agreement.[2]

## ARGUMENT & AUTHORITIES

The federal change of venue statute, 28 U.S.C. § 1404(a) ("§ 1404(a)"), states:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Transfer pursuant to § 1404(a) is appropriate in this case because venue is proper in the District of Massachusetts and, moreover, because factors indicating the convenience of the parties and witnesses and the interest of justice weigh heavily in favor of transfer.

## A.  VENUE IS PROPER IN THE DISTRICT OF MASSACHUSETTS

The initial inquiry to be addressed in ruling on a motion to transfer under § 1404(a) is whether the district to which transfer is sought qualifies under the applicable venue statutes as a district where the civil action "might have been brought." See In re Horseshoe Entertainment, 337 F.3d 429, 433 (5th Cir. 2003). Here, it is undisputable that venue is proper in the District of Massachusetts. Under 28 U.S.C. § 1391(a), a civil action brought in diversity may be brought in "a judicial district where any defendant resides, if all defendants reside in the same State," and as acknowledged in the Complaint, both Gregorio and Mahoney reside in the District of Massachusetts. Complaint, ¶¶ 3-4. Moreover, the Agreement specifically states that any action brought in federal court shall be brought in the District of Massachusetts with Massachusetts law governing the action.

---

[2]In a telephone conversation with counsel for Gregorio, counsel for Plaintiff did not dispute that the Agreement contains these provisions.

**B.    THE CONVENIENCE OF PARTIES AND WITNESSES FAVORS TRANSFER**

In determining whether the convenience of the parties and witnesses favors transfer of venue under § 1404(a), courts consider various factors, including: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; (4) the place of the alleged wrong; (5) the plaintiff's right to choose its forum; and (6) all other practical problems that make trial of a case easy, expeditious and inexpensive. See In re Volkswagen AG, 371 F.3d 201, 203 (5th Cir. 2004); Koehring Co. v. Hyde Constr. Co., Inc., 324 F.2d 295, 296 (5th Cir. 1964); Von Graffenreid v. Craig, 246 F. Supp. 2d 553, 562 (N.D. Tex. 2003).[3] These factors, considered as a whole, overwhelmingly favor transfer in this case.

**1.    Virtually All Sources of Proof Pertaining to Plaintiff's Claims Are in Massachusetts**

First, as noted above, most, if not all, of the potential sources of documentary evidence relevant to Plaintiff's claims are located in Massachusetts.  These sources of proof include documents and records pertaining to: (1) Excelergy's past and present financial condition--including, for example, its market value, size, growth, profitability, stock worth, and sales status; (2) alleged breach of lease with Boston Properties; (3) alleged personal loans to Defendant Mahoney; and (4) alleged bonus incentives for Defendant Mahoney.

---

[3] Some courts have also considered as a relevant factor the possibility of delay and prejudice if the case is transferred. See, e.g., Von Graffenreid, 246 F. Supp. 2d at 562.  Here, there is no reason to believe that a transfer would cause delay or prejudice.

### 2. Defendants Lack Power to Compel the Live Testimony of Virtually All Relevant Witnesses

Defendants lack the ability to compel the live testimony of any of Excelergy's past or present employees who do not live in Texas. As noted above, this includes virtually every present and former member of Excelergy's Board of Directors and Executive Management Team, as well as Alfred Browne, Matthew Emsley, and Mark Bane. These individuals each have knowledge and/or documents specifically relevant to the claims in this case, and thus the inability of Defendants to compel their live testimony in the absence of a transfer weighs heavily in favor of transferring this case to the District of Massachusetts, where all of the individuals reside and would be subject to the subpoena power of the federal district court in Massachusetts.[4]

### 3. The Present Venue is Inconvenient to Almost All Relevant Witnesses

The convenience of witnesses, which courts have considered the "most important factor" in determining a motion to transfer venue, see Elliott v. Carnival Cruise Lines, 231 F. Supp. 2d 555, 562 (S.D. Tex. 2002); Gundle Lining Constr. Corp. v. Fireman's Fund Ins. Co., 844 F. Supp. 1163, 1166 (S.D. Tex. 1994), overwhelmingly favors transfer to the District of Massachusetts because the costs of travel to this District for those

---

[4] While it is true that were this case to remain in this District, Defendants would be able to use the subpoena power of the courts in the District of Massachusetts to compel the deposition testimony of witnesses in Massachusetts, courts in considering motions to transfer venue have made clear the strong preference for live testimony. See Gulf Oil v. Gilbert, 330 U.S. 501, 511 (1947) ("[T]o fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their case on deposition, is to create a condition not satisfactory to the court, jury or most litigants."); In re Repetitive Stress Injury Litig., 850 F. Supp. 188, 194 (E.D.N.Y. 1994) ("[D]epositions . . . even when videotaped, are no substitute for live testimony." (citing Ledingham v. Parke-Davis Div., 628 F. Supp. 1447, 1451 (E.D.N.Y. 1986))). This holds especially true where, as here, a case involves allegations of fraud and misrepresentation. See Oil & Gas Ventures--First 1958 Fund, Ltd. v. Kung, 250 F. Supp. 744, 756 (S.D.N.Y. 1966) ("The importance of live witnesses at a trial revolving about charges of fraudulent conduct is evident."); see also Polaroid Corp. v. Casselman, 213 F. Supp. 379, 382 (D.C.N.Y. 1962) ("In determining credibility, there is nothing like the impact of live dramatis personae on the trier of the facts.").

witnesses willing to testify are substantial. This District is over eighteen hundred miles away from Massachusetts, where virtually all potential witnesses in this case reside. Thus, the cost of travel and lodging for all non-party witnesses would be prohibitive, and thus transfer to the District of Massachusetts is warranted. See Savoy Owners Assocs., Inc. v. Insurance Corp. of New York, No. 02 Civ. 6145, 2003 WL 941098, at *2 (S.D.N.Y. Mar. 6,2003) ("[Convenience of witnesses] factor is deemed so important because "[t]he lack of subpoena power coupled with the long-distance travel required if the witnesses were to voluntarily appear before the court could impede trial and would impose substantial expense on witnesses and on the plaintiff." (quoting Distefano v. Carozzi N. Am., Inc., No. 98 Civ. 7137, 2002 WL 31640476, at * 2 (E.D.N.Y. Nov. 16, 2002))).

The only identifiable witness in this case who maintains a residence in Texas is J. Kevin Swenke.[5] However, Swenke, as the principal owner of FM Holdings is in essence a party witness in this case, and as such, any inconveniences to him carry less weight than inconveniences to non-party witnesses.[6] See State Street Capital Corp. v. Dente, 855 F. Supp. 192, 198 (S.D. Tex. 1994) ("Moreover, it is the convenience of non-party witnesses, rather than that of party witnesses, that is the more important factor and is accorded greater weight in a transfer of venue analysis."). Moreover, to the extent that

---

[5] In addition, counsel for Plaintiff resides in Texas. However, the location of counsel is not a factor to be considered on a motion for change of venue. See In re Horseshoe, 337 F.3d at 434 ("The factor of 'location of counsel' is irrelevant and improper for consideration in determining the question of transfer of venue."); see also In re Volkswagen AG, 371 F.3d at 206 (reversible error to consider location of counsel in change of venue motion).

[6] It is also important to note that although he maintains a residence in Texas, any inconvenience caused to Swenke by a transfer would likely be minimal given that he is presently an employee of Excelergy, a Massachusetts company.

the convenience of party witnesses is important, it here favors transfer given that both Defendants are Massachusetts residents, while only Swenke is a Texas resident.[7]

### 4. Plaintiff Admits that the Alleged Misconduct Occurred in Massachusetts

There is no dispute that the alleged misconduct in this case occurred in Massachusetts. Indeed, Plaintiff admits in the Complaint that "Defendants' misrepresentations and omissions occurred primarily and substantially within Massachusetts." Complaint, ¶ 40. Thus, Plaintiff readily acknowledges that all of the relevant alleged conduct of Defendants, including alleged exchanges, presentations, and other communications took place in Massachusetts.

### 5. Plaintiff's Choice of Forum Is Not Dispositive

The only factor that weighs against transfer is the plaintiff's choice of forum, but that consideration alone does not warrant denial of transfer. See In re Horseshoe, 337 F.3d at 434 ("[T]he plaintiff's choice of forum is clearly a factor to be considered but in and of itself it is neither conclusive nor determinative."). Given that in this case the factors indicating the convenience of the parties and witnesses overwhelmingly favor transfer to the District of Massachusetts, Plaintiff's choice of forum is entitled to little deference, especially given that in dealing with Defendants in negotiating the Agreement on behalf of Forwardmarket, Swenke (presently the principal owner of Plaintiff) expressly agreed to the provisions of the Agreement designating Massachusetts as the appropriate forum for disputes. Accordingly, transfer to the District of Massachusetts is warranted.

---

[7] In addition, if Excelergy, is joined as an additional defendant, or a third-party defendant--which is highly likely--this factor would tip even further in favor of transfer.

## C.      TRANSFER IS WARRANTED IN THE INTEREST OF JUSTICE

Factors relevant to the "interest of justice" component of § 1404(a) include: (1) the pendency of related litigation in another forum, (2) delays due to docket congestion, (3) familiarity with the law that governs the action; and (4) the local interest in having localized controversies resolved at home. Von Graffenreid v. Craig, 246 F. Supp. 2d 553, 562 (N.D. Tex. 2003). Here, there is no related litigation in another forum, no indication of docket congestion in either the proposed transferor or transferee venues, or a "localized controversy." Thus, the only one of these factors that is applicable to this case is the respective courts' familiarity with the law that governs the action, and that factor favors transfer to the District of Massachusetts.

### 1.      Plaintiff Acknowledges that Massachusetts Law Governs

Although Plaintiff originally brought this case in Texas state court, Massachusetts law applies. Indeed, one of the two counts in the Complaint is expressly brought under the Massachusetts unfair trade practices statute, Mass. Gen. Laws ch. 93A, and thus, this case necessarily involves the interpretation of Massachusetts law. Moreover, the Agreement, which lies at the center of the dispute, contains provisions mandating venue in the District of Massachusetts for disputes arising under the Agreement,[8] and while the present action is not for breach of the Agreement, the existence of the provisions indicates that transfer to the District of Massachusetts is warranted. See Elliott, 231 F. Supp. 2d at 562 (forum-selection provisions provide some indication that convenience of parties would be better served by transfer to agreed upon forum); see also Texas Source Group, Inc. v. CCH, Inc. 967 F. Supp. 234, 238 (S.D. Tex. 1997) ("Under section

---

[8] As noted earlier, Plaintiff does not dispute that the Agreement contains specific provisions designating the District of Massachusetts as the agreed-upon federal venue for disputes arising under the Agreement and designating Massachusetts law as the governing law to any such disputes.

1404(a), a forum-selection clause is not to be given either 'dispositive consideration' or 'no consideration,' but it should be 'a significant factor that figures centrally in the [Court's] calculus.'" (quoting Stewart Org., Inc. v. Ricoh, Corp., 487 U.S. 22, 29 (1988))). Accordingly, transfer to the District of Massachusetts is appropriate in the interest of justice.

## CONCLUSION

For the foregoing reasons, Defendant Gregorio respectfully requests that, pursuant to 28 U.S.C. § 1404(a), this Court transfer this case to the District of Massachusetts.

Respectfully submitted,

SHANNON GRACEY RATLIFF & MILLER, LLP
777 Main Street, Suite 3800
Fort Worth, Texas 76102
(817) 336-9333 Telephone
(817) 336-3735 Facsimile

By:_____
      Thomas J. Fisher
      State Bar Card No.: 07064500

*Of Counsel:*
      Timothy C. Blank
      BBO No. 548670
      Michael. S. Shin
      BBO No. 658134
      DECHERT L.L.P.
      00 Clarendon Street, 27th Floor
      Boston, MA 02116
      (617) 728-7100 Telephone
      (617) 426-6567

**ATTORNEYS FOR DEFENDANT STEPHEN GREGORIO**

## CERTIFICATE OF SERVICE

This is to certify that on the ___7th___ day of February, 2005, a true and correct copy of the above and foregoing document was mailed, certified mail, return receipt requested, to each attorney of record in this cause:

Ms. Kimberly A. Elkjer
Scheef & Stone, L.L.P.
5956 Sherry Lane, Suite 1400
Dallas, Texas 75225

Mr. Charles R. Biddle
Holman, Robertson, Eldridge
5949 Sherry Lane, Suite 1700
Dallas, Texas 75225

_____
Thomas J. Fisher

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ORIGINAL

FM HOLDINGS, LLC, f/k/a )
FORWARDMARKET, LLC )
)
)
Plaintiff )
v. )
)
BILL MAHONEY and STEPHEN )
GREGORIO )
)
Defendants )

Civil Action No.
3: 05-CV-0166-G

CLERK, U.S. DISTRICT COURT
By _____

## APPENDIX IN SUPPORT OF STEPHEN GREGORIO'S MOTION TO TRANSFER VENUE

1.      Affidavit of Stephen N. Gregorio

Respectfully submitted,

**SHANNON GRACEY RATLIFF & MILLER, LLP**
777 Main Street, Suite 3800
Fort Worth, Texas 76102
(817) 336-9333 Telephone
(817) 336-3735 Facsimile

By:_____
         Thomas J. Fisher
         State Bar Card No.: 07064500

*Of Counsel:*
         Timothy C. Blank
         BBO No. 548670
         Michael. S. Shin
         BBO No. 658134
         **DECHERT L.L.P.**
         00 Clarendon Street, 27th Floor
         Boston, MA 02116
         (617) 728-7100 Telephone
         (617) 426-6567

**ATTORNEYS FOR DEFENDANT
STEPHEN GREGORIO**

## CERTIFICATE OF SERVICE

This is to certify that on the ___7th___ day of February, 2005, a true and correct copy of the above and foregoing document was mailed, certified mail, return receipt requested, to each attorney of record in this cause:

Ms. Kimberly A. Elkjer
Scheef & Stone, L.L.P.
5956 Sherry Lane, Suite 1400
Dallas, Texas 75225

Mr. Charles R. Biddle
Holman, Robertson, Eldridge
5949 Sherry Lane, Suite 1700
Dallas, Texas 75225

_____
Thomas J. Fisher

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

|  |  |  |
|---|---|---|
| FM HOLDINGS, LLC, f/k/a FORWARDMARKET, LLC, | ) ) ) ) | |
| Plaintiff, | ) | Civil Action No. |
| v. | ) ) | 3: 05-CV-0166-G |
| BILL MAHONEY and STEPHEN GREGORIO, | ) ) ) | |
| Defendants. | ) ) ) | |

### AFFIDAVIT OF STEPHEN N. GREGORIO IN SUPPORT OF HIS MOTION TO TRANSFER VENUE

STATE OF MASSACHUSETTS )
)
COUNTY OF MIDDLESEX )

On this day, Stephen N. Gregorio appeared before me, the undersigned notary public, and after I administered an oath to him, upon his oath, he said:

"My name is Stephen N. Gregorio, I am competent to make this affidavit, and I have personal knowledge of the facts stated below:

1.      I am a resident of the Commonwealth of Massachusetts.

2.      Excelergy Corporation ("Excelergy") is organized under the laws of Delaware with its principal place of business in Massachusetts. Excelergy maintains its headquarters in Lexington, Massachusetts.

3.     To the best of my knowledge, most or all of the business records of Excelergy related to this case are located at Excelergy's headquarters in Massachusetts and/or are in the custody of Alfred L. Browne, III, outside legal counsel to Excelergy and partner at the law firm Sullivan & Worchester in Boston, Massachusetts.

4.     To the best of my knowledge, the following individuals reside in Massachusetts and have knowledge relevant to the allegations in this case and therefore may potentially serve as witnesses to the case:

a.     Robert Davoli and R. David Tabors, members of Excelergy's Board of Directors;

b.     Stuart R. Young and Kevin Monagle, members of Excelergy's Executive Management Team;

c.     Amy Layous and Robert Paquette, former members of Excelergy's Executive Management Team;

d.     Matthew Emsley, Excelergy's former Director of Finance & Human Resources;

e.     Mark Bane, Excelergy's former Vice President of Marketing; and

f.     Alphonse Lucchese, a former member of the Board of Directors.

Each of these individuals has knowledge relevant to the allegations in the Complaint, including but not limited to the present and past financial condition of Excelergy and the alleged breach of the lease with Boston Properties. Additionally, the former and present members of Excelergy's Board of Directors identified above and Matthew Emsley have

AFFIDAVIT OF STEPHEN N. GREGORIO IN SUPPORT OF HIS MOTION TO TRANSFER VENUE-- PAGE 2
C:\Documents and Settings\mshin\Desktop\Gregorio\REVISED AFFIDAVIT of Stephen Gregorio.doc 2/2/05 7:13 PM

2

knowledge of the alleged loans to Defendant Mahoney.

5.      The only individuals on Excelergy's Board of Directors or Executive Management Team who, to my knowledge, are not residents of Massachusetts are Rudolph Das, a member of the Management Team who resides in Europe, and J. Kevin Swenke, a member of the Management Team who resides in Texas.

6.      To the best of my knowledge, J. Kevin Swenke, the founder of Forwardmarket, is presently the principal owner of FM Holdings, the plaintiff in this action.

7.      Virtually all of the evidence and witnesses concerning Excelergy's lease of its offices with Boston Properties are located in Boston, Massachusetts.

8.      Insurance and/or director and officer liability agreements potentially covering the present suit or relating to my and Defendant Mahoney's positions at Excelergy are in the possession of Excelergy in Massachusetts.

9.      All copies of all employment and severance agreements in my possession or in the possession of Excelergy are located in Massachusetts.

10.     All documents referring to Forwardmarket that are in my possession or the possession of Excelergy are located in Massachusetts.

11.     All correspondence sent to Forwardmarket by Excelergy or received by Excelergy from Forwardmarket that are in my possession or the possession of Excelergy are located in Massachusetts.

3

12.     All documents referring or relating to the Agreement, or otherwise referring to or relating to the present suit, that are in my possession or the possession of Excelergy are located in Massachusetts.

Further Affiant sayeth nothing."

_____
Stephen N. Gregorio

SWORN TO AND SIGNED before me, the undersigned notary, by Stephen N. Gregorio on the 3rd day of February, 2005.

_____
Notary Public in and for the State of Massachusetts

State of _MA_, County of _Middlesex_
Signed before me on this _3rd_ day
of _February_ by _Stephen Gregorio_
Notary Public _Joanne Furtado_

**AFFIDAVIT OF STEPHEN N. GREGORIO IN SUPPORT OF HIS MOTION TO TRANSFER VENUE-- PAGE 4**
C:\Documents and Settings\mshin\Desktop\Gregorio\REVISED AFFIDAVIT of Stephen Gregorio.doc 2/2/05 7:13 PM

4

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

FM HOLDINGS, LLC, §
F/K/A FORWARDMARKET, LLC, §
§
    Plaintiff, §
§
vs. **ORIGINAL** §
§
§
BILL MAHONEY; STEPHEN §
GREGORIO, §
§
    Defendants. §

Civil Action No.
3:05-CV-0166-G



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

FEB 22 2005

CLERK, U.S. DISTRICT COURT
By _____
                        Deputy

**PLAINTIFF'S BRIEF IN RESPONSE TO DEFENDANT BILL MAHONEY'S RULE
12(b)(2) AND (3) MOTIONS AND MOTION TO TRANSFER PURSUANT TO 28
U.S.C.A. § 1404 AND FOR *FORUM NON CONVENIENS*, AND TO DEFENDANT
STEPHEN GREGORIO'S MOTION TO TRANSFER VENUE**

Respectfully submitted,

Kimberly A. Elkjer
Texas State Bar No. 06527040
Robert M. Millimet
Texas State Bar No. 24025538
SCHEEF & STONE, L.L.P.
5956 Sherry Ln., Suite 1400
Dallas, Texas 75225
(214) 706-4200
(214) 706-4242 (Fax)

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I certify that on February 22, 2005, a true and correct copy of the foregoing was served upon all known counsel of record via first class U.S. mail as follows:

Charles R. Biddle
Ronald O. Holman
HOLMAN ROBERTSON ELDRIDGE
5949 Sherry Lane, Suite 1700
Dallas, Texas 75225

Thomas J. Fisher
SHANNON GRACEY RATLIFF & MILLER, LLP
777 Main Street, Suite 3800
Fort Worth, Texas 76102

# TABLE OF CONTENTS

I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY ....................................... 1

II.  ARGUMENTS AND AUTHORITIES........................................................................ 4

   A.   Defendant Mahoney Is Subject To Specific Personal Jurisdiction In Texas ................. 4

      1.   Mahoney's tortious conduct did not occur exclusively in Massachusetts. ...................... 5

      2.   Mahoney's corporate capacity contention is spurious. ..................................... 8

      3.   Plaintiff's first introducing itself to Mahoney is immaterial in light of Mahoney's
           subsequent contacts with Plaintiff in Texas. .................................................... 10

      4.   Traditional notions of fair play and substantial justice support jurisdiction. ................ 11

   B.   Mahoney Cannot Challenge Venue As Improper ......................................................... 13

   C.   The Doctrine of *Forum Non Conveniens* Is Inapplicable ............................................. 13

   D.   Transfer of Venue To The District of Massachusetts Is Unwarranted ........................... 14

      1.   The Private Interests ....................................................................................... 16

         a.   Ease of access to sources of proof. ........................................................ 16

         b.   The compulsion of witnesses. ................................................................ 17

         c.   The cost of attendance of willing witnesses. ........................................... 20

      2.   The Public Interests........................................................................................ 22

         a.   The local interest in wanting localized interests determined at home. .................... 22

         b.   The forum's familiarity with the substantive governing law. ................................ 22

      3.   Conclusion. .................................................................................................... 24

III.  CONCLUSION........................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Action Indus., Inc. v. United States Fidelity & Guar. Co.*, 358 F.3d 337 (5th Cir. 2004) ............. 14

*Baldwin v. Household Int'l, Inc.*, 36 S.W.3d 273 (Tex. App.—Houston [14th Dist] 2001, rule 53.7(f) mtn. denied) .................................................................................................................. 7

*Bank One, N.A. v. Euro-Alamo Invs., Inc.*, 211 F.Supp.2d 808 (N.D. Tex. 2002) ................ 15, 18

*Biometics, LLC v. New Womyn, Inc.*, 112 F.Supp.2d 869 (E.D. Mo. 2000) ................................. 19

*Brown v. Flowers Indus., Inc.*, 688 F.2d 328 (5th Cir. 1982) ....................................................... 6

*Burlington N. & Santa Fe Ry. Co. v. Herzog Servs., Inc.*, 990 F.Supp. 503 (N.D. Tex. 1998) .... 13

*Chretien v. Home Depot U.S.A., Inc.*, 169 F.Supp.2d 670 (S.D. Tex. 2001) ................................. 19

*Clary Corp. v. Smith*, 949 S.W.2d 452 (Tex. App.—Ft. Worth 1997, rvw. denied) .................... 23

*Continental Airlines, Inc. v. American Airlines, Inc.*, 805 F.Supp. 1392 (S.D. Tex. 1992) ......... 16

*Dealtime.com Ltd. v. McNulty*, 123 F.Supp.2d 750 (S.D. N.Y. 2000) .................................... 18, 19

*Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867 (5th Cir. 1999) .................... 4, 6

*Houk v. Kimberly-Clark Corp.*, 613 F.Supp. 923 (W.D. Mo. 1985) ..................................... 20, 23

*Lewis v. Fresne*, 252 F.3d 352 (5th Cir. 2001) ................................................................. 4, 5, 10, 12

*Long v. Grafton Executive Search, LLC*, 263 F.Supp.2d 1085 (N.D. Tex. 2003) ................... 6, 12

*Manning v. Zuckerman*, 444 N.E.2d 1262 (Mass. 1983) ............................................................. 23

*Milestone Props., Inc. v. Federated Metals Corp.*, 867 S.W.2d 113, 119 n.6 (Tex. App.—Austin 1993, no pet.) ............................................................................................................................. 23

*Nota Constr. Corp. v. Keyes Assocs., Inc.*, 694 N.E.2d 401 (Mass. App. Ct. 1998) ................... 23

*Nuovo Pignone, SpA v. Storman Asia M/V*, 310 F.3d 374 (5th Cir. 2002) ........................... 4, 6, 10

*Optimum Return LLC v. Cyberkatz Consulting, Inc.*, No. Civ.A.3:03-CV-1064D, 2004 WL 827835, at *1 (N.D. Tex. Mar. 26, 2004) ..................................................................................... 9

*Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663 (1953) ............................................................. 13

*Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996)....................................................... 13

*Schexnider v. McDermott Intern., Inc.*, 817 F.2d 1159 (5th Cir. 1987)............................. 15

*Seaboard Rice Milling Co. v. Chicago, R.I. & P. Ry. Co.*, 270 U.S. 363 (1926) ...................... 13

*Strasen v. Strasen*, 897 F.Supp. 1179 (E.D. Wis. 1995)...................................................... 15

*Texas Marine & Brokerage, Inc. v. Euton*, 120 F.Supp.2d 611 (E.D. Tex. 2000) ...................... 15

*Time, Inc. v. Manning*, 366 F.2d 690 (5th Cir. 1966) .............................................. 15, 24

*Van Dusen v. Barrack*, 376 U.S. 612 (1964) ....................................................................... 15

*Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208 (5th Cir. 1999) ........................... 4, 6, 8, 10, 11

*Wright v. Sage Eng'g, Inc.*, 137 S.W.3d 238, 250 (Tex. App.—Houston [1st Dist.] 2004, rvw.
   denied)................................................................................................ 6, 7, 9, 12

*Young v. Armstrong World Indus., Inc.*, 60 F.Supp. 399 (N.D. Tex. 1984) ........................ 18, 20

## Statutes

28 U.S.C. § 1391 ....................................................................................................... 13

28 U.S.C. § 1404(a) ......................................................................................... 13, 14,15

Fed. R. Civ. P. 12(b)(3)............................................................................................... 13

Fed. R. Civ. P. 45 ...................................................................................................... 16

Fed. R. Evid. 804(a)(5) .............................................................................................. 19

Tex. Bus. & Com. Code § 17.46(a) ............................................................................... 23

## Treatises

15 Wright, Miller & Cooper, *Federal Practice and Procedure* ¶ 3851 (1976)............................ 18

**PLAINTIFF'S BRIEF IN RESPONSE TO DEFENDANT BILL MAHONEY'S RULE 12(b)(2) AND (3) MOTIONS AND MOTION TO TRANSFER PURSUANT TO 28 U.S.C.A. § 1404 AND FOR *FORUM NON CONVENIENS*, AND TO DEFENDANT STEPHEN GREGORIO'S MOTION TO TRANSFER VENUE**

Defendant Bill Mahoney's ("Mahoney") motions to dismiss are unavailing and should be denied. Specific personal jurisdiction exists over Mahoney because he purposefully engaged in tortious conduct directed toward Plaintiff in Texas: he personally negotiated the purchase of Plaintiff by Excelergy Corporation ("Excelergy"), for which he was then its Chief Executive Officer ("CEO"), via numerous telephone, facsimile, and email communications with Plaintiff located in Texas. Mahoney has also waived his challenge to improper venue by removing this action from Texas state court. Further, the doctrine of *forum non conveniens* is inapplicable given that the proposed alternative forum is not abroad. Similarly, Mahoney and Defendant Stephen Gregorio's ("Gregorio") (collectively, "Defendants") separate motions to transfer venue do not establish that the strong presumption in favor of Plaintiff's choice of venue should be overcome – especially when the transfer of venue of this action to Massachusetts would only impermissibly shift the inconvenience from Defendants to Plaintiff.

Accordingly, the Court should deny Mahoney's motions to dismiss and Defendants' separate motions for transfer of venue, and order Mahoney to answer Plaintiff's complaint.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

1. Effective January 1, 2003, Plaintiff entered into an Asset Purchase Agreement (the "Agreement") with Excelergy, pursuant to which Excelergy purchased certain assets – including valuable intellectual property – and assumed certain liabilities of Plaintiff. (Affidavit of J. Kevin Swenke ("Swenke Aff."), which is incorporated herein by reference, ¶3, Appendix ("App."), pp. 1-2) Plaintiff is a Texas limited liability company having its principal place of

business in Dallas County, Texas. (*Id.*, ¶2, App., p. 1)  Excelergy is a Delaware corporation having its principal place of business in Lexington, Massachusetts. (*Id.*, ¶3, App., p. 2)

2.     Plaintiff and Excelergy executed the Agreement in counterparts, with Excelergy executing the Agreement in Massachusetts and Plaintiff executing the Agreement in Dallas County, Texas. (*Id.*, ¶4, App., p. 2)  Defendants, individually, are not parties to the Agreement. (*Id.*, ¶4, App., p. 2)

3.     Plaintiff entered into the Agreement after several months of negotiations with Excelergy, during which Excelergy was represented by Mahoney, the then Chief Executive Officer ("CEO") of Excelergy, and Gregorio, the then Chief Financial Officer ("CFO") of Excelergy. (*Id.*, ¶5, App., p. 2)  These negotiations occurred between the parties, with Defendants in Massachusetts and Plaintiff in Texas (for the most part). (*Id.*, ¶5, App., p. 2) During the months that the Agreement was being negotiated, there were several forms of communication between Defendants in Massachusetts and Plaintiff in Texas. (*Id.*, ¶5, App., p. 2) These negotiations occurred via telephone, facsimile, and e-mail, with such communications being initiated at times by Defendants. (*Id.*, ¶5 & exs. A-C thereto, App., p. 2)

4.     Plaintiff entered into the Agreement based on certain false representations and omissions made by Defendants during these negotiations regarding, among other things, Excelergy's financials, Defendants' forward-looking statements, and the value of Excelergy stock. (*Id.*, ¶7, App., p. 3)  Defendants' representations and omissions to Plaintiff occurred in Massachusetts, but were received by Plaintiff in Texas. (*Id.*, ¶7, App., p. 3)  Specifically, Defendants communicated their misrepresentations and omissions to Plaintiff in Texas via documents and communications sent to Plaintiff by e-mail, telephone, and facsimile. (*Id.*, ¶7 & ex. D thereto, App., p. 3)

5.    Mahoney also specifically made false forward-looking financial statements to Plaintiff in Texas via telephone that Excelergy would be "profitable going forward." (*Id.*, ¶8, App., p. 3) Gregorio, in response to Plaintiff's inquiries, also falsely represented to Plaintiff in Texas via telephone that Excelergy's 2002 Fourth Quarter was "going well" and was "on target." (*Id.*, ¶8, App., p. 3)

6.    Defendants' representations and omissions were critical to (a) Plaintiff's determination that Excelergy was a viable, profitable, and healthy company and the appropriate counterparty to the transaction encompassed by the Agreement; and (b) Plaintiff's willingness to take Excelergy stock and future royalty payments in lieu of cash as its consideration under the Agreement. (*Id.*, ¶9, App., p. 3)

7.    Since Plaintiff's execution of the Agreement, Mahoney has resigned from Excelergy without providing customary notice, and Gregorio has been fired by Excelergy. (*Id.*, ¶10, App., p. 3)   Thus, Mahoney and Gregorio are no longer Excelergy's CEO or CFO, respectively. (*Id.*, ¶10, App., p. 3)

8.    Plaintiff filed its original petition against Defendants in Texas state court in Dallas County, Texas in December 2004.

9.    Defendants subsequently removed this action to this Court.

10.    On February 2, 2005, Mahoney filed his motion to dismiss and motion to transfer venue to which this brief responds, and Gregorio filed his original answer and affirmative defenses to Plaintiff's original petition.

## II.     ARGUMENTS AND AUTHORITIES

### A.     Defendant Mahoney Is Subject To Specific Personal Jurisdiction In Texas

Personal jurisdiction will lie over a nonresident defendant if he is amenable to service of process under a state's long-arm statute, and if the assertion of jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999). Because Texas' long-arm statute has been interpreted to extend as far as the federal constitutional requirements of due process will allow, the Court need only determine whether the exercise of personal jurisdiction comports with federal due process limitations. *See id.*

The exercise of personal jurisdiction over a nonresident defendant is constitutionally permissible if (1) the nonresident "'purposefully availed himself of the benefits and protections'" of Texas by establishing minimum contacts with Texas so as to "'reasonably anticipate being haled into court'" in Texas, and (2) the exercise of jurisdiction does not offend "'traditional notions of fair play and substantial justice.'" *See Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 211 (5th Cir. 1999) (citations omitted). "Minimum contacts" include specific personal jurisdiction and general personal jurisdiction. *See Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). At issue here is only specific personal jurisdiction, which exists when the nonresident's "contacts with Texas 'arise from, or are directly related to, the cause of action.'" *See id.*

Absent an evidentiary hearing, Plaintiff need only establish a prima facie case of jurisdiction. *See Wien Air Alaska*, 195 F.3d at 211. In determining whether a prima facie case exists, the Court must accept as true Plaintiff's uncontroverted allegations, and resolve all conflicts between disputed facts in its favor. *See id.*; *see also Nuovo Pignone, SpA v. Storman Asia M/V*, 310 F.3d 374, 378 (5th Cir. 2002).

Mahoney's principal affidavit contentions as to specific personal jurisdiction are that (1) "all of [his] activities with respect to this matter took place in Massachusetts," (2) his allegedly tortious actions occurred in his capacity as CEO of Excelergy, and (3) "Plaintiff, through its representative, Kevin Swenke, contacted [him] in Massachusetts to introduce himself and his company." (Affidavit of William T. Mahoney ("Mahoney Aff."), ¶¶3, 5) These contentions disputing the existence of specific personal jurisdiction are belied by the facts and, in any event, are immaterial to whether Mahoney is subject to suit by Plaintiff in Texas.

                1.     <u>Mahoney's tortious conduct did not occur exclusively in Massachusetts.</u>

The evidence belies Mahoney's conclusory assertion that all of his allegedly tortious conduct occurred only in Massachusetts. Mahoney made numerous actionable misrepresentations to Plaintiff in Texas by telephone, facsimile, and email. (Swenke Aff., ¶¶7-8, App., p. 3) These misrepresentations related to the financial viability of Excelergy, pursuant to which Plaintiff agreed to sell its proprietary trade secret information to Excelergy to its economic detriment. (*Id.*, ¶¶3, 9, App., pp. 1-3) Such communications into Texas constitute purposeful availment of doing business in Texas sufficient to permit the Court to exercise specific personal jurisdiction over Mahoney. In fact, Mahoney emailed a document containing one of the misrepresentations on which this action is based to Plaintiff in Texas. (*Id.*, ¶7 & ex. D thereto, App., p. 3) Indeed, "[a] single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted." *See Lewis*, 252 F.3d at 358-59 (finding minimum contacts with Texas based on telephone conversation in which defendants made misrepresentations by omission, and loan documents and security agreements containing misrepresentations that were sent to Texas).

Similarly, in *Wien Air Alaska*, the plaintiff alleged that the nonresident defendant performed several tortious actions outside of Texas directed towards the plaintiff in Texas. *See* 195 F.3d at 212. As the Fifth Circuit stated, "[t]hese actions had foreseeable effects in the forum and were directed at the forum. These contacts take the form of letters, faxes, and phone calls to Texas" in which the nonresident defendant made fraudulent misrepresentations and promises, and failed to disclose material information. *See id.* In finding that the plaintiff had established a prima facie case of minimum contacts, the Fifth Circuit opined that

> It is of no use to say that the plaintiff "fortuitously" resided in Texas. . . . It may have been fortuitous, but the tortious nature of the directed activity constitutes purposeful availment. . . . [It] is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted.

*See id.* at 213, 215 (internal quotations and citation omitted). Indeed, "[e]ven where a defendant has no physical presence in the forum state, a single purposeful contact is sufficient to confer personal jurisdiction if the cause of action arises from the contact." *See Nuovo Pignone*, 310 F.3d at 379 (exercising personal jurisdiction); *see also Electrosource*, 176 F.3d at 874 (finding purposeful availment when nonresident defendant's contacts with Texas included negotiation and execution of technology transfer agreement to use plaintiff's Texas technology in India); *Brown v. Flowers Indus., Inc.*, 688 F.2d 328, 332 (5th Cir. 1982) (finding specific personal jurisdiction predicated on only one long-distance telephone call that allegedly constituted tort committed in whole or in part in forum state); *Long v. Grafton Executive Search, LLC*, 263 F.Supp.2d 1085, 1089 (N.D. Tex. 2003) (finding specific personal jurisdiction in Texas based on three telephone calls with Texas).

Further, in *Wright v. Sage Eng'g, Inc.*, 137 S.W.3d 238 (Tex. App.—Houston [1[st] Dist.] 2004, rvw. denied), the court likewise held that the nonresident defendant's misrepresentations

directed toward Texas were sufficient to confer specific personal jurisdiction. *See id.* at 251-52 (collecting Texas cases in which misrepresentations made in telephone calls to Texas were sufficient to support specific personal jurisdiction). The *Wright* court based its ruling on the following evidence: (1) the nonresident defendant made numerous representations on which the plaintiffs relied to their economic detriment; (2) the misrepresentations were directed toward Texas residents who received and relied on them in Texas; and (3) the misrepresentations induced the Texas plaintiffs to transfer their proprietary information to the nonresident defendant's company. *See id.* at 252. Thus, the *Wright* court concluded:

> By making misrepresentations in Texas with the ultimate goal of obtaining the trade secrets of Texas residents, [the nonresident defendant] purposefully availed himself of the benefits and protections of Texas law. When, as here, a defendant intentionally sends false information into a state, knowing it will be relied on by a resident of the forum state, there is a foreseeable consequence of direct economic injury to the resident at its domicile. Thus, it should have been foreseeable to [the nonresident defendant] that he might be haled into a Texas court to defend a lawsuit arising out of the alleged misrepresentations. Relatedly, a nexus exists between the torts that [the Texas plaintiffs] claim against [the nonresident defendant] and the alleged contacts with Texas; that is, [the nonresident defendant's] alleged misrepresentations give rise to some of the causes of action [the Texas plaintiffs] assert against him, particularly [their] claims for fraud and fraudulent inducement.

*See id.* And as another Texas state court has stated in evaluating specific personal jurisdiction,

> When the plaintiff alleges an action in tort that arose out of an act committed in Texas, the necessary proof is only that the purposeful act was committed in this State. Under the "commission of a tort" provision of the long arm statute, the jurisdictional requirements are met when the defendant, personally or through an agent, is the author of an act or omission within the forum state, and the petition states a cause of action in tort arising from such conduct. The act or omission within the state is a sufficient basis for the exercise of jurisdiction to determine whether or not the act or omission gives rise to liability in tort.

*Cf. Baldwin v. Household Int'l, Inc.*, 36 S.W.3d 273, 277-78 (Tex. App.—Houston [14[th] Dist] 2001, Rule 53.7(f) mtn. denied) (internal citation omitted; no specific jurisdiction when alleged misrepresentation was conveyed in unsuccessfully placed phone call to Texas).

Here, Mahoney made misrepresentations to Plaintiff in Texas by telephone, fax, and email on which Plaintiff relied, causing Plaintiff to transfer its valuable intellectual property to Excelergy. (Swenke Aff., ¶¶3, 7-9, App., pp. 1-3) The case law is clear that such tortious conduct resulting in injury in Texas confers specific personal jurisdiction over Mahoney. Mahoney cites no compelling contrary authority. Rather, Mahoney's authority (M. Br., pp. 5-6) is that merely causing an injury felt in Texas without purposeful tortious conduct aimed at Texas and that foreseeability alone are insufficient to confer specific personal jurisdiction. But as the evidence demonstrates, Mahoney engaged in tortious conduct that was purposefully directed toward Texas for which it was foreseeable that he could face suit in Texas. *See Wien Air Alaska*, 195 F.3d at 213 (because conflict between evidence regarding communications with Texas must be construed in plaintiff's favor, prima facie evidence indicated nonresident defendant directed affirmative misrepresentations and omissions to plaintiff in Texas). This is sufficient for the Court to exercise specific personal jurisdiction:

> The foreseeable effects of a tort "are to be assessed as *part* of the analysis of the defendant's relevant contacts with the forum." Foreseeable injury alone is not sufficient to confer specific jurisdiction, absent the direction of specific acts toward the forum. . . . When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment. The defendant is purposefully availing himself of "the privilege of causing a consequence" in Texas.

*See id.* at 212-13 (internal citations omitted).

Thus, this contention does not preclude Mahoney from being subject to the personal jurisdiction of the Court.

    2.    <u>Mahoney's corporate capacity contention is spurious.</u>

Mahoney attests that all of his relevant actions occurred only in his capacity as CEO of Excelergy and not in his individual capacity (Mahoney Aff., ¶¶2-3), but he provides no authority

(M. Br., p. 5) for his assertion that he is not subject to specific personal jurisdiction in Texas as a result. Because Plaintiff has otherwise made a prima facie case that Mahoney has sufficient contacts with Texas to support the exercise of specific personal jurisdiction, the Court should simply not entertain Mahoney's unsupported contention based on the fiduciary shield doctrine.[1]

Assuming, however, that the Court were inclined to address Mahoney's contention, the fiduciary shield doctrine does not deprive the Court of jurisdiction over Mahoney. In *Optimum Return LLC v. Cyberkatz Consulting, Inc.*, No. Civ.A.3:03-CV-1064D, 2004 WL 827835, at *1 (N.D. Tex. Mar. 26, 2004), the court rejected the application of the fiduciary shield doctrine as a bar to the exercise of personal jurisdiction, stating that "[t]he doctrine does not apply to corporate officers who, in their roles as corporate agents, injure persons by 'tortious activity even if such acts were performed within the scope of their employment as corporate officers.'" *See id.* at *3 (citations omitted). The court continued:

> It is well settled law that when corporate officers directly participate in or authorize the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable. The thrust of the general rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the "guiding spirit" behind the wrongful conduct . . . or the "central figure" in the challenged corporate activity.

*See id.* (internal quotations and citations omitted). Thus, because Plaintiff has alleged that Mahoney personally made actionable misrepresentations to Plaintiff in Texas, Plaintiff has met "its burden of presenting a prima facie case for personal jurisdiction on the ground that [Mahoney] directly and personally participated in tortious conduct. [Mahoney] cannot invoke the fiduciary shield doctrine to defeat jurisdiction." *See id.*; *see also Wright*, 137 S.W.3d at 250

---

[1] And because Mahoney has provided no legal argument for this contention, the Court should not consider any such legal support in a reply brief from Mahoney to which Plaintiff cannot respond.

("Texas courts applying the fiduciary shield doctrine have expressly limited its application to attempts to exercise *general* jurisdiction over a nonresident defendant" (emphasis in original)).

Finally, even if the Court were inclined to find that the fiduciary shield doctrine is somehow applicable, another exception to the fiduciary shield doctrine exists when the corporate officer was acting to further his personal interests. *See Lewis*, 252 F.3d at 359 n.6 (doctrine was inapplicable because plaintiff's claim did not rest solely on defendant's status as corporate officer but instead on defendant's personal tortious conduct; shield is removed if individual's personal interests motivate his actions). Here, as alleged in Plaintiff's complaint, because Excelergy made personal loans to Mahoney that were supposed to have been repaid to Excelergy from future bonuses paid to Mahoney by Excelergy, these loans applied significant pressure on Mahoney to take shortcuts and reach short-term company milestones to trigger quarterly bonuses. Because Mahoney has not contradicted these allegations, the Court is required to take these allegations as true, precluding Mahoney from asserting the fiduciary shield doctrine as a defense to jurisdiction. *See Wien Air Alaska*, 195 F.3d at 211; *Nuovo Pignone, SpA*, 310 F.3d at 378.

Thus, the fiduciary shield doctrine does not bar the Court's exercise of specific personal jurisdiction over Mahoney.

3.  Plaintiff's first introducing itself to Mahoney is immaterial in light of Mahoney's subsequent contacts with Plaintiff in Texas.

As the evidence shows, after the parties' initial introduction, Mahoney made numerous misrepresentations via telephone, email, and facsimile to Plaintiff in Texas in negotiating and consummating the Agreement. (Swenke Aff., ¶¶7-9, App., p. 3) In fact, the evidence shows that Mahoney initiated phone calls with Plaintiff in Texas and sent emails to Plaintiff in Texas,

including one e-mail that contains a misrepresentation that is the basis of this action.[2] (*Id.*, ¶¶5-8 & exs. A-D thereto, App., pp. 2-3) Thus, it cannot be said that Mahoney's contacts with Texas were solely the result of actions undertaken by Plaintiff, precluding this assertion as a defense to the exercise of jurisdiction. The Fifth Circuit rejected a similar assertion in *Wien Air Alaska*, reversing the district court that had found the contacts between the plaintiff and the nonresident defendant related to and developed out of an ongoing relationship between the parties established in Germany. *See* 195 F.3d at 211. The Fifth Circuit stated: "Even if the parties formed their relationship in Germany, however, a single act by [the nonresident defendant] directed toward Texas that gives rise to a cause of action by [the plaintiff] can support a finding of minimum contacts." *See id.* Thus, this contention does not preclude Mahoney from being subject to the personal jurisdiction of the Court.

4.    Traditional notions of fair play and substantial justice support jurisdiction.

Upon the plaintiff's establishing minimum contacts, the burden shifts to the defendant to make a "compelling case" that the exercise of jurisdiction would violate "traditional notions of fair play and substantial justice." *See id.* at 215. "It is rare to say the assertion is unfair after minimum contacts have been shown." *See id.* In making this determination, the interests to balance are (1) the burden on Mahoney in having to litigate in Texas; (2) Texas' interests in the litigation; (3) Plaintiff's interests in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) Texas' shared interest in furthering fundamental social policies. *See id.* "[O]nce minimum contacts are established, the interests of the forum and the plaintiff justify even large burdens on the defendant." *See id.*

---

[2] Although Mahoney argues that Swenke initiated all telephone calls between them, such argument is not supported by his affidavit.

Mahoney cannot show that the Court's exercise of jurisdiction would offend traditional notions of fair play and substantial justice. Not only would the inconvenience of litigating this dispute in Massachusetts simply be shifted from Mahoney to Plaintiff, but Texas has a significant interest in providing a forum for this litigation because Plaintiff, as the injured party, is a Texas citizen. *See id.* at 215-16 (holding exercise of jurisdiction in Texas over German nonresident defendant was fair and reasonable because injured party was corporation with its principal place of business located in Texas, and inconvenience of litigating dispute in Germany would be equally felt by Texas plaintiff); *Lewis*, 252 F.3d at 359 (because injured party was Texas resident, Texas had "significant interest" in providing forum to plaintiff); *Long*, 263 F.Supp.2d at 1090 (exercise of jurisdiction was proper because injurious effect of phone calls with and email to Texas occurred in Texas and was felt entirely by Texas resident, and forcing plaintiff to travel to Missouri to litigate dispute would not advance her interest in obtaining convenient and effective relief). The *Wright* court's analysis of this consideration is on point:

> Texas has a strong interest in adjudicating this dispute. As discussed in the minimum contacts analysis, [the nonresident defendant] is alleged to have committed tortious acts in Texas against Texas residents. The State of Texas has an obvious interest in providing a forum for resolving disputes involving its citizens, particularly those disputes in which the defendant allegedly committed a tort in whole or in part in Texas.
> . . .
> Undoubtedly, litigation away from home creates hardship for a defendant; however, there is no legal requirement that this hardship must be borne instead by the plaintiff whenever the defendant is not found in the state of the plaintiff's residence. While the burden on the nonresident defendant is a consideration in our due process analysis, it is not determinative. This is particularly true when, as in this case, Texas has a strong interest both in providing a forum for its residents and in holding parties who committed tortious acts against its residents accountable. We conclude that the exercise of personal jurisdiction over [the nonresident defendant] in this case comports with traditional notions of fair play and substantial justice.

*See* 137 S.W.3d at 253-54 (internal citations omitted).

Accordingly, the Court's exercise of personal jurisdiction over Mahoney is proper.

**B.      Mahoney Cannot Challenge Venue As Improper**

Mahoney's assertion that venue of this action is improper pursuant to Rule 12(b)(3) and under 28 U.S.C. § 1391 is untenable: because Defendants removed this action from Texas state court to this Court, they are barred by clear United States Supreme Court authority from making this improper venue challenge. *See Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665 (1953) ("s[ection] 1391 has no application to this case because this is a removed action. The venue of removed actions is governed by [section] 1441(a)"); *Seaboard Rice Milling Co. v. Chicago, R.I. & P. Ry. Co.*, 270 U.S. 363, 367 (1926) (district court acquires venue over nonresident defendant upon application for removal to district court); *Burlington N. & Santa Fe Ry. Co. v. Herzog Servs., Inc.*, 990 F.Supp. 503, (N.D. Tex. 1998) (rejecting section 1391(a) venue challenge based on *Polizzi* and *Seaboard Rice Milling*; "Although the result may seem harsh, it is consistent with the teaching of the Supreme Court that a defendant who removes an action waives his objection to venue"). Accordingly, the Court must deny Mahoney's motion challenging venue of this action as improper pursuant to Rule 12(b)(3) and under section 1391(a).

**C.      The Doctrine of *Forum Non Conveniens* Is Inapplicable**

Similarly, the Court must reject Mahoney's assertion that dismissal of this action is warranted by the doctrine of *forum non conveniens* under clear United States Supreme Court authority: the doctrine is applicable only when the alternative forum is outside of the United States. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 722 (1996) ("This transfer of venue function of the *forum non conveniens* doctrine has been superseded by statute [section 1404(a)] and to the extent we have continued to recognize that federal courts have the power to dismiss damages actions under the common-law *forum non conveniens* doctrine, we have done so only in

'cases where the alternative forum is abroad'"). Thus, because Mahoney's proposed alternative forum is Massachusetts, the *forum non conveniens* doctrine is inapplicable and dismissal of this action under the doctrine is impermissible.

**D.      Transfer of Venue To The District of Massachusetts Is Unwarranted**[3]

Retention of venue of this action in this Court is proper because Defendants cannot show that "the convenience of parties and witnesses" and "the interest of justice" overcome the strong presumption in favor of Plaintiff's choice of venue.  Defendants' assertions underlying their separate transfer of venue motions are simply insufficient to satisfy their burden to prove that transfer of venue to Massachusetts is warranted under the circumstances.

Section 1404(a) provides that "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  The determination of "convenience" depends upon several private and public interest factors, none of which alone are dispositive.  *See Action Indus., Inc. v. United States Fidelity & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004).  The private interest factors are (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to ensure the attendance of witnesses; (3) the cost of attendance of willing witnesses; and (4) all other practical issues rendering trial of a matter easy, expeditious, and inexpensive.  *See id.* at 340 n.8.  The public interest factors are (1) the administrative hurdles resulting from court congestion, (2) the local interest in wanting localized interests determined at home, (3) the forum's familiarity with the substantive governing law, and (4) the avoidance of unnecessary conflict of laws problems resulting from the application of foreign law.  *See id.*

---

[3] Although Mahoney purports to move to transfer venue pursuant to 28 U.S.C. § 1404(a), he does not cite to the statute (other than in the title and prayer of his brief) or any cases discussing the statute.  Gregorio's motion, however, is pursuant to section 1404(a).  Thus, Plaintiff's brief is in response to Gregorio's motion and to Mahoney's motion in the event that the Court deems a response to be necessary.

**PLAINTIFF'S BRIEF IN RESPONSE TO DEFENDANT BILL MAHONEY'S RULE 12(b)(2) AND (3) MOTIONS AND MOTION TO TRANSFER PURSUANT TO 28 U.S.C.A. § 1404 AND *FORUM NON CONVENIENS*, AND TO DEFENDANT STEPHEN GREGORIO'S MOTION TO TRANSFER VENUE - Page 14**

Defendants have the burden of proof to show that venue should be transferred from Texas to Massachusetts. *See Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966) ("the plaintiff's privilege of choosing venue places the burden on the defendant to demonstrate why the forum should be changed"). "To prevail, [Defendants] must demonstrate that the balance of convenience and justice *substantially weighs* in favor of the transfer." *See Texas Marine & Brokerage, Inc. v. Euton*, 120 F.Supp.2d 611, 613 (E.D. Tex. 2000) (emphasis added). "Moreover, there is a 'strong presumption in favor of the plaintiff's choice of forum that may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum.'" *See id.* (quoting *Schexnider v. McDermott Intern., Inc.*, 817 F.2d 1159, 1163 (5th Cir. 1987)); *see also Bank One, N.A. v. Euro-Alamo Invs., Inc.*, 211 F.Supp.2d 808, 812 (N.D. Tex. 2002) ("Plaintiff's choice of forum is entitled to substantial weight and should be highly esteemed"). "Section 1404(a) provides for transfer to a more convenient forum, not a forum likely to prove equally convenient or inconvenient." *See Van Dusen v. Barrack*, 376 U.S. 612, 645-46 (1964); *see also Bank One*, 211 F.Supp.2d at 812 ("The court may not transfer venue where the result will be merely to shift the burden of the trial from one party to the other").

Defendants cannot overcome the strong presumption in favor of Plaintiff's choice of Texas rather than Massachusetts for venue of this action. Neither the private interest factors nor the public interest factors establish that transfer of this action from Texas to Massachusetts would do more than simply shift the inconvenience from Defendants to Plaintiff. And, importantly, this is not a case of forum shopping; rather, Plaintiff is a citizen of Texas but, as Gregorio recognizes, *see infra*, Massachusetts law applies to this action. *See Strasen v. Strasen*, 897 F.Supp. 1179, 1188 (E.D. Wis. 1995) (denying motion to transfer venue from Wisconsin to

Texas — even though some events underlying plaintiff's complaint occurred, sources of proof were found, and defendants and all witnesses resided, in Texas — because of strong presumption in favor of plaintiff's choice of forum and because "[t]his is not a case of forum shopping; the plaintiff resides in the Eastern District of Wisconsin and the district clearly has some connection to the facts underlying this suit").

          1.     <u>The Private Interests</u>

               a.     <u>Ease of access to sources of proof.</u>

This factor does not strongly favor Defendants, notwithstanding their assertions to the contrary. Although Excelergy is admittedly based in Massachusetts and likely possesses relevant documents, Plaintiff also possesses relevant documents in Texas, including documentation relating to the injury sustained by Plaintiff in Texas. (Swenke Aff., ¶¶32, App., p. 8) But more importantly, as Gregorio admits (G. Br., p. 7 n. 4), maintenance of this action in Texas will not preclude access to any sources of information located in Massachusetts, as the parties may obtain such information from Excelergy or other third parties by non-party subpoena issued by the District Court for the District of Massachusetts pursuant to Rule 45 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 45; *see also Continental Airlines, Inc. v. American Airlines, Inc.*, 805 F.Supp. 1392, 1397 (S.D. Tex. 1992) (noting that not all relevant documents are needed for trial and that "documents can be produced and examined anywhere for discovery purposes"). Indeed, because Defendants are no longer employed by Excelergy (Swenke Aff., ¶10, App., p 3), whether venue of this action is in Texas or Massachusetts is essentially immaterial regarding discovery from Excelergy (or other third parties located in Massachusetts): access to documents in the possession of Excelergy (or Boston Properties regarding breach of Excelergy's lease)

requires either Plaintiff or Defendants to issue a subpoena from the District of Massachusetts to obtain such information.

Thus, because the documents relevant to this action are found in both Texas and Massachusetts, this factor does not weigh either in favor of transfer or against it.  Transfer of venue to Massachusetts would not significantly affect ease of access to unspecified sources of proof located in Massachusetts and would likely not do much more than simply shift any inconvenience from Defendants to Plaintiff.

<div align="center">b.    <u>The compulsion of witnesses.</u></div>

Although some Excelergy board members and employees enumerated in the affidavit of Stephen N. Gregorio ("G. Aff.") (¶4) reside in Massachusetts, Plaintiff's principal and its members all reside in Texas and other relevant Excelergy board members and employees – including some listed in Gregorio's affidavit – reside outside of Massachusetts.[4]  (Swenke Aff., ¶¶1, 13, 17, 21-28, App., pp. 1, 4-7)  Indeed, a comparison of the relevant witnesses identified by Gregorio and Swenke shows that more potentially relevant witnesses reside outside of, than in, Massachusetts.  (Swenke Aff., ¶¶11-31, App., pp. 4-8)  And importantly, Defendants have not shown – as they must – that any non-party witnesses residing in Massachusetts are key witnesses in this action.  Mahoney merely asserts (M. Br., p. 9) that "the witnesses are not subject to compulsory process for attendance"; and Gregorio merely attests (G. Aff, p. 2, ¶4) to the identity of certain Excelergy witnesses located in Massachusetts and states that "these individuals ha[ve] knowledge relevant to the allegations in the Complaint, including but not limited to the present and past financial condition of Excelergy and the alleged breach of the lease with Boston Properties. . . . and the alleged loans to Defendant Mahoney."  But Gregorio recognizes (G. Aff,

---

[4] Gregorio is disingenuous when he lists the Excelergy board members that reside in Massachusetts as being relevant (presumably only because they are Excelergy board members), yet fails to identify other Excelergy board members residing outside of Massachusetts as being similarly relevant.

p. 2, ¶4) that at best these individuals "*may potentially serve as witnesses to the case*" because of their unspecified knowledge.  (Emphasis added.)  This is simply an insufficient showing to warrant transfer of venue to Massachusetts:

> the moving Defendants must prove *with particularity* the reasons why they are inconvenienced by Plaintiffs' choice of forum:
> "The party seeking the transfer must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover.  The emphasis must be on this showing rather than on numbers.  One key witness may outweigh a great number of less important witnesses.  If a party has merely made a general allegation that witnesses will be necessary, without identifying them and indicating what their testimony will be, the application for transfer will be denied."

*See Young v. Armstrong World Indus., Inc.*, 60 F.Supp. 399, 401-02 (N.D. Tex. 1984) (emphasis in original; quoting 15 Wright, Miller & Cooper, *Federal Practice and Procedure* ¶ 3851 at 270-71 (1976)); *see also Bank One*, 211 F.Supp.2d at 812 (movant's burden of showing transfer of venue is appropriate "requires a particularized showing regarding why transfer is necessary, including identification of key witnesses and the general content of their testimony"); *Dealtime.com Ltd. v. McNulty*, 123 F.Supp.2d 750, 755 (S.D. N.Y. 2000) (by outlining particular witnesses' expected testimony "in only vague terms, they will not be considered as material witnesses whose convenience will affect the balancing inquiry").

Rather, Plaintiff's principal Swenke resides in Texas, and the alleged misrepresentations were committed by Defendants, who were Excelergy's then CEO and CFO during the negotiation and execution of the Agreement.  (Swenke Aff., ¶¶1, 5, 7, App., pp. 1-3)  Only these three individuals have first-hand knowledge of Defendants' representations and their effect on Plaintiff, making them the only key witnesses as to liability in this action.  All other potential witnesses as to liability are therefore merely cumulative or secondary.[5]  Defendants have also not

---

[5] As shown by the affidavit of Kevin Swenke, Plaintiff's reliance and damages witnesses also reside in Texas. (Swenke Aff., ¶¶23-29, App., pp. 6-7)

shown that any evidence from other witnesses as to liability is anything but potentially relevant, without more.[6]  This is simply insufficient to overcome the strong presumption in favor of Plaintiff's choice of forum and to shift the comparable inconvenience to Plaintiff, which would require at least Swenke to go to Massachusetts for trial:

> The Court has previously stated that the convenience of key witnesses is the most important factor in a motion to transfer venue. . . . At an absolute minimum, Defendants must identify key witnesses and provide a brief summary of their likely testimony in an effort to demonstrate to the Court why it would be inconvenient for them to testify [here].  Without a realistic and comprehensive summary of the testimony, it is impossible for the Court to determine if a witness' appearance is cumulative or unnecessary for trial.  Although Defendants in the instant case have proffered vague sentence-long descriptions of each witness' expected testimony, such nominal justifications are wholly inadequate under this standard of evaluation.

*See Chretien v. Home Depot U.S.A., Inc.*, 169 F.Supp.2d 670, 673 (S.D. Tex. 2001).

And as Gregorio admits (G. Br., p. 7, n. 4), while perhaps not preferred, any of these secondary witnesses may present testimony at trial by videotaped deposition.  Thus, although live witness testimony may be preferable in some instances, this factor does not warrant transfer of venue of this entire action to Massachusetts when only secondary witnesses are at issue and testimony from such individuals may be procured and submitted at trial under "the option of videotaping testimony of witnesses unwilling to travel."  *See Dealtime.com*, 123 F.Supp.2d at 757 (citing Fed. R. Evid. 804(a)(5); given such option, holding that this factor did not tip balance in favor of transfer of venue); *see also Biometics, LLC v. New Womyn, Inc.*, 112 F.Supp.2d 869, 876 (E.D. Mo. 2000) (assuming identified non-party witnesses would not voluntarily appear at trial, court nevertheless determined that "[a]ny evidence needed from these witnesses could be readily obtained by other means . . . such as deposition testimony or affidavits" because such

---

[6] In fact, Stuart Young, Kevin Monagle, Mark Bane, Amy Layous, and Rudolf Das had no material involvement with Plaintiff before execution of the Agreement. (Swenke Aff., ¶¶13-17, App., pp. 4-5)  Further, Messrs. Young and Das were not even employees of Excelergy during the relevant time period. (Swenke Aff., ¶¶ 13, 17, App., pp. 4-5)

witnesses were not key witnesses in patent infringement case in which their testimony was only about their use of accused product); *Houk v. Kimberly-Clark Corp.*, 613 F.Supp. 923, 931 (W.D. Mo. 1985) (unavailability of judicial process is not controlling when "defendant's argument merely assumes that the witnesses in question would not appear voluntarily at a trial in [Texas]"; noting that defendant also had not shown that use of videotaped depositions would be inadequate).

Thus, this factor weighs in favor of Plaintiff. Defendants have not met their burden, as their limited evidence in support of their motions – especially when juxtaposed against Swenke's affidavit – shows only that some cumulative and secondary witnesses as to liability may exist in Massachusetts. Nor have Defendants shown that the videotaped testimony of such witnesses would be inadequate. Plaintiff, however, has shown that other cumulative and secondary witnesses as to liability reside in South Carolina, California, and Oklahoma; and that Swenke is a key non-party witness on liability who resides in Texas. Further, all witnesses on reliance and damages reside in Texas.

> c.    The cost of attendance of willing witnesses.

Defendants separately assert the inconvenience of non-party witnesses located in Massachusetts having to travel to Texas for trial (M. Br., p. 9; G. Br., pp. 7-8), but neither Mahoney nor Gregorio submits any evidence of any non-party witnesses located outside of Texas that would be willing to travel to Texas to testify at trial but for the cost and inconvenience of such travel. Indeed, Defendants have identified no witnesses who would be unwilling to travel to Texas for trial. Rather, Defendants euphemistically refer to the plight of secondary "witnesses willing to testify" (G. Br., p. 8), without more. This lack of specificity precludes affording any weight to this factor in favor of transfer. *See Young*, 601 F.Supp. at 401 (denying motion to transfer venue because movants "have not stated with specificity the witnesses who

will be inconvenienced by a denial of their motions or other problems in the way of access to proof").

Further, Gregorio's supporting brief's discussion of this factor with respect to Plaintiff applies equally to Defendants. Gregorio notes (G. Br., p. 8) that Swenke "as the principal owner of [Plaintiff] is in essence a party witness in this case." But Swenke, individually, is plainly not a party to this action; therefore, transfer of venue of this action from Texas to Massachusetts would impose the equal inconvenience on Swenke (Swenke Aff., ¶33, App., pp. 8-9) as that asserted by Gregorio regarding Excelergy's board of directors and employees residing in Massachusetts, with one critical difference: Swenke is undoubtedly a key witness, whereas the secondary Excelergy individuals are not. And unlike the relevant Excelergy individuals residing in Massachusetts, Swenke's presence in Massachusetts would be required for any court hearings or proceedings.[7] Conversely, Defendants are named parties and, as such, "any inconveniences to [them] carry less weight than inconveniences to non-party witnesses" (G. Br., p. 8). In addition, Gregorio's assertion (G. Br., p. 9, n. 7) that this factor tips even more toward transfer "if Excelergy, is joined as an additional defendant, or a third-party defendant—which is highly likely" is rank speculation, as Excelergy is not a party to this action. But even if Excelergy were made a party to this action, for the reasons set forth *supra* in section II.A, it would similarly be subject to specific personal jurisdiction in Texas based on the representations of Defendants for which it is vicariously liable. Finally, Plaintiff has identified witnesses in Texas and Oklahoma whose testimony could be necessary on the issues of reliance and damages.

---

[7] Gregorio's assertion (G. Br., p. 8, n. 6) that "any inconvenience caused to Swenke by a transfer would likely be minimal given that he is presently an employee of Excelergy" is unavailing. Although Swenke is an employee of a company that is headquartered in Massachusetts, he is employed in Dallas, has no direct reports in Massachusetts, and has no regularly scheduled trips to Massachusetts. (Swenke Aff., ¶33, App., pp. 8-9) In fact, he has been given instructions by Excelergy to make every effort not to travel, unless necessary. (*Id.*) If this action is transferred to Massachusetts, he would be responsible for all such "private" travel costs. (*Id.*) Indeed, were this action transferred to Massachusetts, his presence in Massachusetts would undoubtedly be required for court hearings or proceedings, including trial. (*Id.*)

PLAINTIFF'S BRIEF IN RESPONSE TO DEFENDANT BILL MAHONEY'S RULE 12(b)(2) AND (3) MOTIONS AND MOTION TO TRANSFER PURSUANT TO 28 U.S.C.A. § 1404 AND *FORUM NON CONVENIENS*, AND TO DEFENDANT STEPHEN GREGORIO'S MOTION TO TRANSFER VENUE - Page 21

Thus, this factor, too, weighs in favor of Plaintiff.[8]

    2.    The Public Interests.

        a.    The local interest in wanting localized interests determined at home.

Neither of Defendants' motions and supporting briefs specifically addresses this factor, which is not surprising given that it weighs heavily in favor of venue in Texas. As previously stated *supra* in section II.A, Texas has a significant interest in providing a forum for the resolution of disputes involving tortious injury to its citizens, as is the case here.[9] *See Wright*, 137 S.W.3d at 253 ("Texas has a strong interest in adjudicating this dispute. . . . The State of Texas has an obvious interest in providing a forum for resolving disputes involving its citizens, particularly those disputes in which the defendant allegedly committed a tort in whole or in part in Texas").[10]

Thus, this factor strongly supports the Court's retention of venue in Texas.

        b.    The forum's familiarity with the substantive governing law.

Gregorio's supporting brief (G. Br., pp. 9-10) asserts that this action should be transferred because "the alleged misconduct in this case occurred in Massachusetts" and because "Massachusetts law applies," as evidenced by Plaintiff's claim that Defendants violated the

---

[8] As to the final private interest of other practical issues rendering trial easy, expeditious, and inexpensive, Plaintiff knows of none and Defendants do not discuss this factor. Thus, it is immaterial to the balancing analysis.

[9] Plaintiff is a Texas entity with its principal place of business located in Dallas County, Texas. (Swenke Aff., ¶2, App., p. 1) In addition, the owners of Plaintiff all reside in Texas. (Swenke Aff., ¶¶23-28, App., pp. 6-7)

[10] Gregorio (G. Br., p. 9), however, asserts that "Plaintiff's choice of forum is entitled to little deference" supposedly because the Agreement designates Massachusetts as the forum for disputes between the parties. But the Agreement's forum selection clause to which Gregorio refers is irrelevant: it is found in a contract between Excelergy and Plaintiff, not Defendants and Plaintiff, precluding Defendants from claiming any entitlement to invoke it. (Swenke Aff., ¶4, App., p. 2) Further, the Agreement's forum selection clause is expressly narrowly tailored to actions relating to disputes regarding its provisions – which are not at issue in this action – as Gregorio's supporting brief (G. Br., p. 10; emphasis added) admits: "the Agreement, which lies at the center of the dispute, contains provisions mandating venue in the District of Massachusetts *for disputes arising under the Agreement, and while the present action is not for breach of the Agreement . . . .*"

PLAINTIFF'S BRIEF IN RESPONSE TO DEFENDANT BILL MAHONEY'S RULE 12(b)(2) AND (3) MOTIONS AND MOTION TO TRANSFER PURSUANT TO 28 U.S.C.A. § 1404 AND *FORUM NON CONVENIENS*, AND TODEFENDANT STEPHEN GREGORIO'S MOTION TO TRANSFER VENUE - Page 22

Massachusetts unfair trade practices act, Chapter 93A.[11]  But as previously indicated *supra* in section II.A, Defendants' tortious conduct occurred also in Texas to the extent that their misrepresentations were communicated to Plaintiff in Texas and that Plaintiff, as a Texas citizen, sustained injury in Texas.  Further, Gregorio's supporting brief does not demonstrate that the Court's supposed unfamiliarity with Massachusetts substantive law is any less than that of the District Court for the District of Massachusetts without the assistance of the parties' briefing, or otherwise should preclude the Court from serving as the tribunal for this action.  Indeed, courts sitting in diversity commonly must apply the law of another forum pursuant to choice of law principles.  Further, the nature of the claims alleged by Plaintiff – negligent misrepresentation and violation of Chapter 93A – have similar counterparts and elements under Texas law with which the Court undoubtedly has experience.[12]

Thus, this factor is at best entitled to minimal weight in favor of transfer.  *See Houk*, 613 F.Supp. at 932 (expressing "the general view" that factor of leaving construction of another state's law to courts most familiar with it "is to be given little weight where . . . the foreign law to be applied is neither complex or unsettled"; noting also that court was "routinely" asked to apply other jurisdictions' law in diversity actions).[13]

---

[11] Gregorio's contention constitutes a judicial admission that Massachusetts law, including Chapter 93A, governs the substantive claims in this action.  Regardless of whether the Court grants his motion, Gregorio cannot later claim that contacts with Massachusetts are insufficient to preclude application of Massachusetts law to the substantive claims raised in this action.

[12] As to the elements of Plaintiff's negligent misrepresentation claim, Massachusetts and Texas law are identical.  *See Nota Constr. Corp. v. Keyes Assocs., Inc.*, 694 N.E.2d 401, 405 (Mass. App. Ct. 1998); *Milestone Props., Inc. v. Federated Metals Corp.*, 867 S.W.2d 113 (Tex. App.—Austin 1993, no pet.).  As to Plaintiff's unfair trade practices claim, Massachusetts and Texas law similarly proscribe unfair or deceptive trade practices, but Massachusetts law recognizes a cause of action for businesses whereas Texas law generally does not.  *See Manning v. Zuckerman*, 444 N.E.2d 1262, 1264-65 (Mass. 1983); Tex. Bus. & Com. Code § 17.46(a); *Clary Corp. v. Smith*, 949 S.W.2d 452, 463-64 (Tex. App.—Ft. Worth 1997, *rvw. denied*).

[13] As to the other public interests of the administrative hurdles resulting from court congestion and the avoidance of unnecessary conflict of laws problems resulting from the application of foreign law, no party has submitted any evidence or argument regarding these factors and therefore they are immaterial to the balancing analysis.

### 3. Conclusion.

Defendants cannot show that the strong presumption in favor of Plaintiff's choice of venue is overcome by sufficient considerations of convenience and justice, necessitating transfer of this action from Texas to Massachusetts. *See Time, Inc.*, 366 F.2d at 698 ("'Plaintiff's privilege to choose, or not to be ousted from, his chosen forum is highly esteemed'"). Assuming that Plaintiff prevails on Mahoney's motions to dismiss, venue of this action is proper in this Court. And this is not a case of forum shopping, as Plaintiff acknowledges that Massachusetts substantive law applies to the claims in this action. At best, Defendants have shown that considerations of convenience and justice would simply shift the burden of inconvenience from Defendants to Plaintiff without any significant enhancement of convenience.

Indeed, because Mahoney's motion contains no evidence delineating with particularity and specificity the witnesses and evidence for which transfer to Massachusetts would be rendered more convenient, it is plainly insufficient to satisfy his burden. Gregorio's motion is likewise insufficient because it generally identifies some individuals with knowledge who "may potentially serve as witnesses" and who may be unwilling to travel to Texas for trial. Further, not only do Defendants not show that videotaped testimony from such individuals would be inadequate, but they also do not dispute that the key witnesses in this action are only them and Swenke – all of whom are subject to the Court's compulsory process. In fact, other potentially relevant Excelergy personnel and members of Plaintiff reside outside of Massachusetts and in Texas, respectively. Finally, access to unspecified sources of proof from non-parties in Massachusetts is the same whether venue of this action is in Texas or Massachusetts.

## III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Mahoney's motions to dismiss, deny Defendants' separate motions to transfer venue, and order Mahoney to answer Plaintiff's complaint.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

FEB 2 2 2005

CLERK, U.S. DISTRICT COURT
By _____
Deputy

| | | |
|---|---|---|
| FM HOLDINGS, LLC, | § | |
| F/K/A FORWARDMARKET, LLC, | § | |
| | § | |
| Plaintiff, | § | Civil Action No. |
| | § | 3:05-CV-0166-G |
| vs. | § | |
| | § | |
| BILL MAHONEY; STEPHEN | § | |
| GREGORIO, | § | |
| | § | |
| Defendants. | § | |

**ORIGINAL**

**APPENDIX IN SUPPORT OF PLAINTIFF'S BRIEF IN RESPONSE TO DEFENDANT BILL MAHONEY'S RULE 12(b)(2) AND (3) MOTIONS AND MOTION TO TRANSFER PURSUANT TO 28 U.S.C.A. § 1404 AND FOR *FORUM NON CONVENIENS*, AND TO DEFENDANT STEPHEN GREGORIO'S MOTION TO TRANSFER VENUE**

Tab 1    Affidavit of J. Kevin Swenke    App. pp. 001-024

Respectfully submitted,

Kimberly A. Elkjer
Texas State Bar No. 06527040
Robert M. Millimet
Texas State Bar No. 24025538
SCHEEF & STONE, L.L.P.
5956 Sherry Ln., Suite 1400
Dallas, Texas 75225
(214) 706-4200
(214) 706-4242 (Fax)

ATTORNEYS FOR PLAINTIFF

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 22, 2005, a true and correct copy of the foregoing was served

upon all known counsel of record via first class U.S. mail as follows:

Charles R. Biddle
Ronald O. Holman
HOLMAN ROBERTSON ELDRIDGE
5949 Sherry Lane, Suite 1700
Dallas, Texas 75225

Thomas J. Fisher
SHANNON GRACEY RATLIFF & MILLER, LLP
777 Main Street, Suite 3800
Fort Worth, Texas 76102

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FM HOLDINGS, LLC, | § | |
| F/K/A FORWARDMARKET, LLC, | § | |
| | § | |
| Plaintiff, | § | Civil Action No. |
| | § | 3:05-CV-0166-G |
| vs. | § | |
| | § | |
| BILL MAHONEY; STEPHEN | § | |
| GREGORIO, | § | |
| | § | |
| Defendants. | § | |

## AFFIDAVIT OF J. KEVIN SWENKE

| | |
|---|---|
| THE STATE OF TEXAS | § |
| | § |
| COUNTY OF DALLAS | § |

Before me, the undersigned authority, personally appeared J. Kevin Swenke, who, being by me duly sworn, deposed as follows:

1.     My name is J. Kevin Swenke.  I am the principal of Plaintiff FM Holdings, LLC, f/k/a Forwardmarket, LLC ("Plaintiff").  I reside in Dallas County, Texas.  I have personal knowledge of the facts set forth herein.  I am over 21 years of age, have never been convicted of a felony, and am of sound mind and capable of making this affidavit.  The statements made herein are true and correct and are based on my own personal knowledge.

### The Factual Background

2.     Plaintiff is a Texas limited liability company having its principal place of business in Dallas County, Texas.

3.     Effective January 1, 2003, Plaintiff entered into an Asset Purchase Agreement (the "Agreement") with Excelergy Corporation ("Excelergy"), pursuant to which Excelergy

purchased certain assets – including valuable intellectual property – and assumed certain liabilities of Plaintiff. Excelergy is a Delaware corporation having its principal place of business in Lexington, Massachusetts.

4.      Plaintiff and Excelergy executed the Agreement in counterparts, with Excelergy executing the Agreement in Massachusetts and Plaintiff executing the Agreement in Dallas County, Texas. Bill Mahoney ("Mahoney") and Stephen Gregorio ("Gregorio") (collectively, "Defendants"), individually, are not parties to the Agreement.

5.      Plaintiff entered into the Agreement after several months of negotiations with Excelergy, during which Excelergy was represented by Mahoney, the then Chief Executive Officer ("CEO") of Excelergy, and Gregorio, the then Chief Financial Officer ("CFO") of Excelergy. These negotiations occurred between the parties, with Mahoney and Gregorio in Massachusetts and Plaintiff in Texas (for the most part). During the months that the Agreement was being negotiated, there were several forms of communication between Defendants in Massachusetts and me in Texas. These negotiations occurred via telephone, facsimile, and e-mail, with such communications being initiated at times by Mahoney and Gregorio.

6.      Attached to this affidavit are some of Mahoney's communications to Plaintiff in Texas. Attached hereto as Exhibit A is an e-mail sent to me at Kevin@3102maple.com that I received in Texas from Mahoney on or around August 13, 2002. (E-mail sent to me at Kevin@3102maple.com can only be read on my computer in Dallas.) This e-mail also references the fact that Mahoney set a specific time on the following day for us to talk by phone while I was in Texas and he was in Massachusetts. Attached hereto as Exhibit B is a copy of the proposed term sheet that formed the basis of the Agreement that was signed by Mahoney and faxed to me in Texas. Attached hereto as Exhibit C is a copy of the execution page of the

**AFFIDAVIT OF J. KEVIN SWENKE - Page 2**

**APP 002**

Agreement that was signed by Mahoney (and other execution pages related to the Agreement signed by Mahoney and Gregorio) and faxed to me in Texas.

7.      Plaintiff entered into the Agreement based on certain false representations and omissions made by Mahoney and Gregorio during these negotiations regarding, among other things, Excelergy's financials, Defendants' forward-looking statements, and the value of Excelergy stock.  Mahoney and Gregorio's representations and omissions to Plaintiff occurred in Massachusetts, but were received by Plaintiff in Texas.  Specifically, Mahoney and Gregorio communicated their misrepresentations and omissions to Plaintiff in Texas via documents and communications sent to Plaintiff by e-mail, telephone, and facsimile.  For example, attached hereto as Exhibit D is an e-mail with an attachment that I received in Texas from Mahoney that contains Defendants' misrepresentation regarding the value of Excelergy that Plaintiff relied on.

8.      Mahoney also specifically made false forward-looking financial statements to me in Texas via telephone that Excelergy would be "profitable going forward."  Gregorio, in response to Plaintiff's inquiries, also falsely represented to me in Texas via telephone that Excelergy's 2002 Fourth Quarter was "going well" and was "on target."

9.      Mahoney and Gregorio's representations and omissions were critical to (a) Plaintiff's determination that Excelergy was a viable, profitable, and healthy company and the appropriate counterparty to the transaction encompassed by the Agreement; and (b) Plaintiff's willingness to take Excelergy stock and future royalty payments in lieu of cash as its consideration under the Agreement.

10.     Since Plaintiff's execution of the Agreement, Mahoney has resigned from Excelergy without providing customary notice, and Gregorio has been fired by Excelergy.  Thus, Mahoney and Gregorio are no longer Excelergy's CEO or CFO, respectively.

**AFFIDAVIT OF J. KEVIN SWENKE - Page 3**

## **The Location and Purported Relevance of Defendants' Potential Witnesses**

11.      In making this affidavit, I reviewed the list of individuals purportedly residing in Massachusetts and having knowledge relevant to the claims in this action that were identified in paragraph 4 of Gregorio's affidavit submitted in support of his motion to transfer venue.

12.      To the best of my knowledge, while some of these individuals may possess relevant knowledge of some facts underlying the claims in this action, none of them is likely anything more than a cumulative or secondary witness in this action.  Rather, the key witnesses in this action are only myself as the principal of Plaintiff; and Mahoney and Gregorio as the then CEO and CFO of Excelergy, who together made all of the business decisions for Excelergy, had knowledge of and to the best of my knowledge were solely responsible for the reporting of Excelergy's financials, and made all of the misrepresentations and omissions to me as the principal of Plaintiff upon which I and Plaintiff's other members justifiably relied.

13.      I do not agree with Gregorio that Stuart R. Young is a person who may possess knowledge relevant to the claims in this action, as Mr. Young was not an employee of Excelergy during the negotiation and execution of the Agreement.  Further, Mr. Young is a resident of Pennsylvania, not Massachusetts.

14.      I do not agree with Gregorio that Kevin Monagle is a person who may possess knowledge relevant to the claims in this action, as Mr. Monagle was an Excelergy employee and shareholder during the negotiation and execution of the Agreement, but before execution of the Agreement had no material involvement with Plaintiff and made no representations to Plaintiff regarding Excelergy's financials.  I acknowledge, however, that Mr. Monagle is a Massachusetts resident.

15.    I do not agree with Gregorio that Mark Bane is a person who may possess knowledge relevant to the claims in this action, as Mr. Bane was an Excelergy employee responsible for marketing and advertising during the time of the negotiation and execution of the Agreement, but before execution of the Agreement had no material involvement with Plaintiff and made no representations to Plaintiff regarding Excelergy's financials.  I acknowledge, however, that Mr. Bane is a Massachusetts resident.

16.    I do not agree with Gregorio that Amy Layous is a person who may possess knowledge relevant to the claims in this action, as Ms. Layous was an Excelergy employee with responsibilities in Excelergy's engineering department during the negotiation and execution of the Agreement, but before execution of the Agreement had no material involvement with Plaintiff and made no representations to Plaintiff regarding Excelergy's financials.  I acknowledge, however, that Ms. Layous is a Massachusetts resident.

17.    I do not agree with Gregorio that Rudolf Das is a person who may possess knowledge relevant to the claims in this action, as Mr. Das was not an employee of Excelergy during the negotiation and execution of the Agreement.  I do agree with Gregorio, however, that Mr. Das resides in the Netherlands.

18.    I agree with Gregorio, however, that Robert Davoli, R. David Tabors, and Alphonse Lucchese are Excelergy board members residing in Massachusetts who may possess knowledge relevant to the claims in this action (although, as I stated, I believe that they are no more than cumulative or secondary witnesses).

19.    I agree with Gregorio, however, that Matthew Emsley is an Excelergy employee dealing with financial matters who resides in Massachusetts and may possess knowledge relevant

to the claims in this action (although, as I stated, I believe that Mr. Emsley is no more than a cumulative or secondary witness).

20.     I agree with Gregorio, however, that Robert Paquette is an Excelergy employee residing in Massachusetts (although, as I stated, I believe that Mr. Paquette is no more than a cumulative or secondary witness).  Mr. Paquette had phone communications with Plaintiff's engineering team based in Oklahoma City, Oklahoma regarding Plaintiff's intellectual property before execution of the Agreement; he was not involved whatsoever in the discussions between myself and Defendants regarding Excelergy's financials.

### The Location and Relevance of Plaintiffs' Potential Witnesses

21.     Dave McNamara was the Vice President of Sales for Excelergy at the time of execution of the Agreement.  Although not one of the three key witnesses in this action, Mr. McNamara may nevertheless be an important witness because he may possess knowledge regarding the sales and associated revenue recognition issues that were the primary reasons why Excelergy restated its 2002 Third and Fourth Quarter financials after execution of the Agreement.  Mr. McNamara resides in South Carolina.

22.     Mark Gorenberg was an Excelergy board member at the time of execution of the Agreement who was not identified by Gregorio but may possess knowledge relevant to the claims in this action like the other relevant Excelergy board members identified by Gregorio (Messrs. Davoli, Tabors, and Lucchese).  Mr. Gorenberg is a resident of California.

23.     David Turner is a member/owner of Plaintiff.  As a member/owner of Plaintiff and based on Mahoney and Gregorio's representations to me, Mr. Turner provided me with consent to approve Excelergy's acquisition of Plaintiff.  Mr. Turner is a resident of Dallas, Texas.

24.     Robert Turner is a member/owner of Plaintiff. As a member/owner of Plaintiff and based on Mahoney and Gregorio's representations to me, Mr. Turner provided me with consent to approve Excelergy's acquisition of Plaintiff. Mr. Turner is a resident of Houston, Texas.

25.     Dan Wilhite is a member/owner of Plaintiff. As a member/owner of Plaintiff and based on Defendants' representations to me, Mr. Wilhite provided me with consent to approve Excelergy's acquisition of Plaintiff. Mr. Wilhite is a resident of Dallas, Texas.

26.     Jim Wichlund is a member/owner of Plaintiff. As a member/owner of Plaintiff and based on Defendants' representations to me, Mr. Wichlund provided me with consent to approve Excelergy's acquisition of Plaintiff. Mr. Wichlund is a resident of Houston, Texas.

27.     John Corrigan is a member/owner of Plaintiff. As a member/owner of Plaintiff and based on Defendants' representations to me, Mr. Corrigan provided me with consent to approve Excelergy's acquisition of Plaintiff. Mr. Corrigan is a resident of Dallas, Texas.

28.     ANG Holdings, LLC ("ANG") is a member/owner of Plaintiff. As a member/owner of Plaintiff and based on Defendants' representations to me, Mike Buchanan, debtor-in-possession of ANG, provided me with consent to approve Excelergy's acquisition of Plaintiff. Mr. Buchanan is a resident of Dallas, Texas. Further, the ANG bankruptcy was pending, and to the best of my knowledge is still pending, in the Northern District of Texas, Dallas Division.

29.     Plaintiff's CPA is Leo Preolo. Mr. Preolo provided financial guidance and advice to Plaintiff relating to the Excelergy transaction before Plaintiff's execution of the Agreement. Mr. Preolo resides in Dallas, Texas.

30.     To the extent that Gregorio is correct that Robert Paquette is a potentially relevant witness in this action, Marc Barker would likewise be a potentially relevant witness in this action.  Mr. Barker was the President of Aeternitas, which is the technology company that performed all of the software development for Plaintiff that Excelergy purchased in the Agreement.  Mr. Barker and/or his company were contacted by telephone by Mr. Paquette for purposes of Excelergy's due diligence regarding Plaintiff's technology before execution of the Agreement.  Mr. Barker resides in Oklahoma City, Oklahoma.

31.     To the extent that Gregorio is correct that Robert Paquette is a potentially relevant witness in this action, Nathan Stogsdill would likewise be a potentially relevant witness in this action.  Mr. Stogsdill was the Senior Engineer of Aeternitas, which is the technology company that performed all of the software development for Plaintiff that Excelergy purchased in the Agreement.  Mr. Stogsdill was contacted by telephone by Mr. Paquette for purposes of Excelergy's due diligence regarding Plaintiff's technology before execution of the Agreement.  Mr. Stogsdill resides in Oklahoma City, Oklahoma.

### Other Convenience Considerations

32.     Plaintiff possesses relevant documents in Texas, including the Agreement and documents relating to the negotiations of the Agreement.  Further, documentation relating to the injury sustained by Plaintiff's members may also be found in Texas.

33.     Although I am an employee of a company that is headquartered in Massachusetts, I am employed in Dallas, have no direct reports in Massachusetts, and have no regularly scheduled trips to Massachusetts.  I have been given instructions by Excelergy to make every effort not to travel, unless necessary.  If this action is transferred to Massachusetts, I would be responsible for all such "private" travel costs.  Indeed, were this action transferred to

Massachusetts, my presence in Massachusetts would undoubtedly be required for court hearings or proceedings, including trial.

FURTHER AFFIANT SAYETH NOT.

_____
J. KEVIN SWENKE

Given under my hand and seal of this office this 21ST day of FEBRUARY, 2005.

_____
Notary Public in and for the State of Texas

SEAL

_____
MICHAEL R. GORDON
Printed Name

MICHAEL R. GORDON
Notary Public, State of Texas
My Commission Exp. 12-03-2005

**AFFIDAVIT OF J. KEVIN SWENKE - Page 9**

**APP 009**





Excelergy
osed Term She

-----Original Message-----
From: Mahoney, Bill [mailto:bill.mahoney@excelergy.com]
Sent: Tuesday, August 13, 2002 4:14 PM
To: 'kevin@3102maple.com'
Subject: FW: ForwardMarket Term Sheet -- Confidential


Kevin- Please accept the attached sheet as a departure point. Tomorrow after
3 pm Eastern is the best time for us to talk. Thx, Bill

-----Original Message-----
From:    Gregorio, Stephen
Sent:    Tuesday, August 13, 2002 5:09 PM
To:      Mahoney, Bill
Cc:      Bullock, Cary
Subject:       ForwardMarket Term Sheet -- Confidential

Bill --

Here is the term sheet for ForwardMarket as we discussed.  Phano

  <<Excelergy Proposed Term Sheet for ForwardMarket.com, 8-12-02.doc>>

**APP 010**

**EXHIBIT "A"**

# Excelergy Corporation Proposed Term Sheet
## to Acquire ForwardMarket.com

| | |
|---|---|
| **Buyer:** | Excelergy Corporation ("Excelergy" or the "Buyer"). |
| **Seller:** | ForwardMarket.com ("ForwardMarket" or "Seller") |
| **Security:** | Excelergy Common Stock |
| **Consideration:** | On the Closing Date, the Company will pay the Seller 1) $250,000 in cash, and 2) issue the Seller 172,500 shares of Excelergy Common Stock, par value $.01 per share, based upon the Company's current capitalization of approximately 34,500,000 fully-diluted shares outstanding (.5%) |
| **Asset Purchase:** | Excelergy will purchase all of the assets of ForwardMarket, including all client lists, client agreements, intellectual property, patents, patents pending, trademarks, software code and related copyrights, software licenses, personal and real property and equipment, and any other assets of Seller, including both the MDS product line and the HedgeDirect concept |
| **Earn Out:** | Depending upon the amount of total cumulative revenues (license, consulting services, and maintenance) generated by the HedgeDirect product over the three (3) years following the Closing, the Seller has the ability to earn additional shares of Excelergy Common Stock based upon the following table: |

| HedgeDirect Cumulative Revenues Generated 3 Years | Additional Equity (sh.) |
|---|---|
| >$2,500,000 - $5,000,000 | 175,000 |
| >5,000,001 - $10,000,000 | 350,000 |
| >$10,000,001 - $25,000,000 | 525,000 |
| >$25,000,001 | 875,000 |

Revenues generated will be based upon generally accepted accounting principles.

**APP 011**

| | |
|---|---|
| **Employment Agreement:** | Excelergy will provide J. Kevin Swenke ("Swenke") with a three (3) year employment agreement in which Swenke agrees to work exclusively for Excelergy.  Swenke's initial position will be Vice President Retail Energy Markets, reporting directly to Excelergy's CEO.  Swenke will join Excelergy's executive management team.  Swenke's employment agreement will include annual base salary compensation of $150,000 per year, eligibility in Excelergy's executive management bonus program, and a five (5) year non-compete agreement after his employment with the Company ends. |
| **Stock Options:** | Swenke will receive an incentive stock option to purchase 175,000 shares of Excelergy common stock at the fair market value price as determined by Excelergy's Board of Directors at the meeting immediately after the Closing.  Such stock options will vest annually at the rate of 25% per year over 4 years on Swenke's anniversary employment date.  Such options will be granted under Excelergy's 1998 Stock Option Plan. |
| **Closing Date:** | Both parties will make reasonable efforts to close this transaction by September 20, 2002.  Both parties agree to move forward on a good faith and exclusive basis to effect a closing. |
| **Market Standoff Provision:** | In connection with the Company's initial public offering, the Seller agrees not to sell or to offer to sell any securities of the Company for up to 180 days upon request of the Company and its underwriters.  All officers and directors and certain employees are required to enter into similar lock-up agreements. |
| **No Transfers To Competitors:** | Each stockholder who receives shares in this transaction shall be forbidden from selling shares to a company or any other third party that is competitive to the Company. |
| **The Purchase Agreement:** | The purchase of ForwardMarket will be made pursuant to a Purchase and Sale Agreement drafted by counsel to the Company.  Such agreement shall contain, among other things, appropriate representations and warranties of the Seller; covenants of the Seller reflecting the provisions set forth herein and other typical covenants; and appropriate conditions of closing.  Until the Purchase and Sale Agreement is signed by both the Company and ForwardMarket, there will not exist |

**APP 012**

any binding obligations on the part of either party.

**Approval:** Final approval of the definitive documents by Excelergy is subject to approval from its Board of Directors.

**Other:** Seller agrees not to shop any portion of ForwardMarket to any other potential buyer from the execution of this term sheet until the estimated Closing Date. If Seller violates this provision, Seller agrees to immediately pay Excelergy $100,000 as remuneration.

Both parties agree to the foregoing terms and conditions as evidenced by their signature below:

Excelergy Corporation                ForwardMarket.com

_____              _____
Signature                            Signature

_____              _____
Printed Name                         Printed Name

_____              _____
Date                                 Date

**APP 013**

B

**Excelergy Corporation Proposed Term Sheet to Acquire Forwardmarket**

**Buyer:** Excelergy Corporation ("Excelergy", "Company" or "Buyer").

**Seller:** Forwardmarket, LLC ("Forwardmarket" or "Seller")

**Security:** Excelergy Common Stock

**Consideration:** On the Closing Date, Buyer will pay the Seller 1) $250,000 in cash, and 2) issue the Seller 172,500 shares of Excelergy Common Stock, par value $.01 per share, based upon the Company's current capitalization of approximately 34,500,000 fully-diluted shares outstanding (.5%). ForwardMarket agrees not to distribute the above shares to its stockholders for a period of 18 months after the closing of this transaction.

Buyer will also pay Seller $150,000 per executed HD Customer Engagement Letter(s) ("Engagement Letter") with a maximum payment of $300,000; payable upon each such signing. Engagement Letter consideration is subject to a two (2) year limit beginning upon the closing of this transaction.

An Engagement Letter shall be defined as a written letter of intent ("LOI") executed by a duly authorized Customer principal, containing either:

1) a Customer must agree to:
   a) dedicate resources to collaborate on development of the HD pilot system,
   b) agree to pilot the HD platform upon completion and compensate Buyer for end user customer transactions during the pilot test. Pilot is subject to customer acceptance requirements and has no requirements on term, volume, or upfront capital requirements.
   c) Agree to pay transaction fees during pilot

2) a definitive order or contract for HD product or services.

**Asset Purchase:** Excelergy will purchase all of the assets of Forwardmarket, including all client lists, client agreements, intellectual property, patents, patents pending, trademarks, software code and related copyrights, software licenses, personal and real

APP 014



EXHIBIT "B"

property and equipment, and any other assets of Seller, including both the MDS product line and the HedgeDirect concept.

**Earn Out:**

Forwardmarket will receive a royalty payable in cash equal to 7% of HedgeDirect revenues up to a cumulative maximum royalty of $1,500,000. Royalty shall not be earned or payable until cumulative HD revenues have reached $1,000,000 (the "Hurdle"). Royalty shall be subject to a 6-year time limit starting upon closing of this transaction.

If Buyer does not complete a commercially viable version of the HD product within 24 months from closing, then Buyer will pay Seller $300,000. Development schedule, budgeting, and commitment of resources to the HD product shall be at the Buyer's sole discretion.

**Employment Agreement:**

Excelergy will provide J. Kevin Swenke ("Swenke") with a three (3) year employment agreement in which Swenke agrees to work exclusively for Excelergy. Swenke's initial position will be Vice President Retail Energy Markets, reporting directly to Excelergy's CEO. Swenke will join Excelergy's executive management team. Swenke's employment agreement will include annual base salary compensation of $150,000 per year, eligibility in Excelergy's executive management bonus program, and a five (5) year non-compete agreement after his employment with the Company ends.

Swenke will receive severance if his employment is involuntarily terminated by the Buyer without cause. If such termination occurs within the first 18 months of employment, Swenke will receive 12 months of base salary as severance. If such termination occurs after the initial 18 months but prior to the completion of the 3-year term, Swenke will receive 3 months of base salary as severance.

**Stock Options:**

Swenke will receive an incentive stock option to purchase 175,000 shares of Excelergy common stock at the fair market value price as determined by Excelergy's Board of Directors at the meeting immediately after the Closing (price not guaranteed, but current price is $0.27 per share). Such stock options will vest annually at the rate of 25% per year over 4 years on Swenke's anniversary employment date. Such options will be granted under Excelergy's 1998 Stock Option Plan.

**Closing Date/Effective Date:** Both parties will make reasonable efforts to close and make this transaction effective by December 31, 2002. The $250,000 cash consideration will be due and payable on January 2, 2003.

**Market Standoff Provision:** In connection with the Company's initial public offering, the Seller agrees not to sell or to offer to sell any securities of the Company for up to 180 days upon request of the Company and its underwriters, or such earlier date that is granted to the Company's senior executive officers. All officers and directors and certain employees are required to enter into similar lock-up agreements.

**No Transfers To Competitors:** Each stockholder who receives shares in this transaction shall be forbidden from selling shares to a company or any other third party that is competitive to the Company.

**The Purchase Agreement:** The purchase of ForwardMarket will be made pursuant to a Purchase and Sale Agreement drafted by counsel to the Company. Such agreement shall contain, among other things, appropriate representations and warranties by both parties; covenants reflecting the provisions set forth herein and other typical covenants; and appropriate conditions of closing. Until the Purchase and Sale Agreement is signed by both the Company and ForwardMarket, there will not exist any binding obligations on the part of either party.

**Approval:** Final approval of the definitive documents are subject to final due diligence by both parties and approvals from each party's respective Board of Directors and/or Members.

APP 016

Both parties agree to the foregoing terms and conditions as evidenced by their signature below:

Excelergy Corporation                              Forwardmarket, LLC

_____                           _____
Signature                                         Signature

William T. Mahoney                                J. Kevin Swenke
Printed Name                                      Printed Name

_____                           _____12-13-02_____
Date    12/17/02                                  Date

**APP 017**



# FAX COVER SHEET

To: Kevin Swenne

Fax: 214-853-4262

Date: 1-8-02

From: Stephen Gregorio, VP CFO
  Work: 781-372-5153
  Fax:  781-372-5298
  Cell:  617-283-0285
  Email: sgregorio@excelergy.com

Number of pages: 5 Including this cover sheet

Comments:

4 execution pages enclosed.
4 originals to be sent overnight to
David Turner of all original sign.

Welcome Aboard!

Steve

10 Maguire Road, Suite 111  Lexington, MA  02421
TEL: 617-372-5000  FAX: 781-372-5298

APP 018

EXHIBIT "C"

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be duly executed as of the day and year first above written.

### EXCELERGY CORPORATION

By: _____

Name: WILLIAM T. MAHANEY

Title: PRESIDENT + CEO

### FORWARDMARKET, LLC

By: _____

Name: KEVIN SWENKE

Title: PRESIDENT

_____

J. Kevin Swenke

**APP 019**

Assignment and Assumption Agreement – Page 2

IN WITNESS WHEREOF, the parties hereto have caused this Assignment and Assumption Agreement to be duly executed as of the day and year first above written.

EXCELERGY CORPORATION

By: _____

Name: WILLIAM T. MAHONEY

Title: PRESIDENT & CEO

FORWARDMARKET, LLC

By: _____

Name: KEVIN SWENKE

Title: PRESIDENT

**APP 020**

J. Kevin Swenke                                                    January 8, 2002

We sincerely look forward to your joining the Excelergy team. This offer is valid until 5:00 pm Eastern Standard Time on January 8, 2003. You agree that you have received adequate consideration for this agreement. If this offer correctly sets forth your understanding and all of the above terms and conditions are agreeable to you, please indicate your written acceptance below and return the signed letter to me.

The rights of Excelergy set forth in this Agreement are in addition to any rights Excelergy has under the Asset Purchase Agreement or any of the Ancillary Agreements (as defined therein) executed in connection therewith. To the extent there is any conflict between any of the provisions set forth herein and any of the provisions set forth in the Asset Purchase Agreement or any of the Ancillary Agreements, the Asset Purchase Agreement and/or the Ancillary Agreements shall prevail.

Kevin, we look forward to having you join us at Excelergy as a significant contributor.

Very truly yours,

EXCELERGY CORPORATION

By: _____
   Stephen Gregorio
   Vice President, Chief Financial Officer


I have read and understand, and agree with, the terms of this employment offer letter.


Signature: _____          Date: January 8, 2003
   J. Kevin Swenke

Scheduled Start Date: **January 8, 2003**

**APP 021**

Non-Competition, Nondisclosure and Developments Agreement – Page 6

9.7    Any waiver by the Company of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach of such provision or any other provision hereof. In addition, any amendment to or modification of this Agreement or any waiver of any provision hereof must be in writing and signed by the Company.

9.8    I agree that each provision and the subparts of each provision herein shall be treated as a separate and independent clause, and the unenforceability of any one clause shall in no way impair the enforceability of any of the other clauses of the Agreement. Moreover, if one or more of the provisions contained in this Agreement shall for any reason be held to be excessively broad as to scope, activity, subject or otherwise, so as to be unenforceable by law, such provision or provisions shall be construed by the appropriate judicial body by limiting or reducing it or them, so as to be enforceable to the maximum extent compatible with the applicable law as it shall then appear. I hereby further agree that the language of all parts of this agreement shall in all cases be construed as a whole according to its fair meaning and not strictly for or against either of the parties.

9.9    The headings contained herein are for the sole purpose of convenience of reference, and shall not in any way limit or affect the meaning or interpretation of any of the terms or provisions of this Agreement.

9.10    I acknowledge and agree that this Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts and shall in all respects be interpreted, enforced and governed under the internal and domestic laws of such state, without giving effect to the principles of conflicts of laws of such state. I further agree that any claims or legal actions by one party against the other arising out of the relationship between the parties contemplated herein (whether or not arising under this Agreement) shall be governed by the laws of the Commonwealth of Massachusetts and shall be commenced and maintained in any state or federal court located in such state, and I hereby submit to the jurisdiction and venue of any such court.

**AGREED AND ACCEPTED:**

Name:    **J. KEVIN SWENKE**

Employee: _____    Date: _1 - 8 - 03_
          Signature

Witness: _Sharon Capps_    Date: _1 - 8 - 03_

EXCELERGY CORPORATION

By: _____

Name: _WILLIAM T. MAHONEY_

Its: _PRESIDENT + CEO_

                                Date: _1/8/03_

APP 022



    
Excelergy    Excelergy Offer
osed Term She:Analysis.xls (...

-----Original Message-----
From: Mahoney, Bill [mailto:bill.mahoney@excelergy.com]
Sent: Tuesday, August 13, 2002 4:14 PM
To: 'kevin@3102maple.com'
Subject: FW: ForwardMarket Term Sheet -- Confidential


Kevin- Please accept the attached sheet as a departure point. Tomorrow after
3 pm Eastern is the best time for us to talk. Thx, Bill

-----Original Message-----
From:  Gregorio, Stephen
Sent:  Tuesday, August 13, 2002 5:09 PM
To:      Mahoney, Bill
Cc:      Bullock, Cary
Subject:        ForwardMarket Term Sheet -- Confidential

Bill --

Here is the term sheet for ForwardMarket as we discussed.  Phano

  <<Excelergy Proposed Term Sheet for ForwardMarket.com, 8-12-02.doc>>


**APP 023**

1                                                **EXHIBIT "D"**

| | Offer | | Offer Value 1 | | Offer Value 2 |
|---|---|---|---|---|---|
| Excelergy Valuation | | $ | 100,000,000 | $ | 50,000,000 |
| Outstanding Shares | | | 34,500,000 | | 34,500,000 |
| $/share | | $ | 2.90 | $ | 1.45 |
| | | | | | |
| Cash | $ 250,000 | $ | 250,000 | $ | 250,000 |
| | | | | | |
| Stock | 172,500 | $ | 500,000 | $ | 250,000 |
| | | | | | |
| Stock Earn Out | | | | | |
| 2.5-5.0 | 175,000 | $ | 507,246 | $ | 253,623 |
| 5.0-10 | 350,000 | $ | 1,014,493 | $ | 507,246 |
| 10-25.0 | 525,000 | $ | 1,521,739 | $ | 760,870 |
| 25 up | 875,000 | $ | 2,536,232 | $ | 1,268,116 |
| | | | | | |
| **Total Offer Value** | | | | | |
| High | | $ | 3,286,232 | $ | 1,768,116 |
| Low | | $ | 1,257,246 | $ | 753,623 |

**APP 024**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

FEB 2 4 2005

CLERK, U.S. DISTRICT COURT
By _____
Deputy

| | |
|---|---|
| FM HOLDINGS, LLC,<br>F/K/A FORWARDMARKET, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>BILL MAHONEY; STEPHEN<br>GREGORIO,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

Civil Action No.
3:05-CV-0166-G

**ORIGINAL**

**PLAINTIFF'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL RESPONSE TO
DEFENDANT BILL MAHONEY'S RULE 12(b)(2) AND (3) MOTIONS AND MOTION
TO TRANSFER PURSUANT TO 28 U.S.C.A. § 1404 AND FOR *FORUM NON
CONVENIENS*, AND TO DEFENDANT STEPHEN GREGORIO'S MOTION TO
TRANSFER VENUE**

Pursuant to Federal Rule of Civil Procedure 15 and Local Rule 15.1, Plaintiff hereby

moves for leave to file its Supplemental Response to Defendant Bill Mahoney's Rule 12(b)(2)

and (3) Motions and Motion to Transfer Pursuant to 28 U.S.C.A. § 1404 and for *Forum Non

Conveniens*, and to Defendant Stephen Gregorio's Motion to Transfer Venue. Attached hereto

as Exhibit A is a copy of Plaintiff's proposed supplemental response. Plaintiff filed its Response

on Tuesday, February 22, 2005. Because the basis of Plaintiff's supplemental response was not

available as of February 22nd and because Defendants will not be prejudiced by the proposed

supplementation, Plaintiff respectfully requests that the Court grant its motion for leave to file its

supplemental response.

**I.     DISCUSSION**

Defendant Mahoney filed his motion on February 2, 2005, which imposed a deadline on

Plaintiff of Tuesday, February 22, 2005, to file a response thereto under Local Rule 7.1(e) (time

to file response to opposed motion is within 20 days from date motion is filed). Defendant Gregorio filed his motion on Monday, February, February 7, 2005, which imposed a deadline of Monday, February 28, 2005, for Plaintiff to respond thereto under Local Rule 7.1(e) (time to file response to opposed motion is within 20 days from date motion is filed). Plaintiff filed its response to Defendants' Motions in one pleading on Tuesday, February 22, 2005. Although Defendants filed their motions separately, they each asserted a motion to transfer venue and therefore Plaintiff chose to respond to Defendants' motions in one response for the convenience of the Court. Defendants have until Wednesday, March 9, 2005, to file a reply brief under Local Rule 7.1(f) (time to file reply brief on opposed motion is within 15 days from date response is filed).

Court congestion is one of the public interest factors at issue in the assessment of Defendants' separate motions to transfer venue. In footnote 13 of its response, Plaintiff indicated that because neither party had submitted any evidence or argument on the court congestion factor, it was immaterial to the balancing analysis used for evaluating a motion to transfer venue. Plaintiff submitted no evidence or argument on the court congestion factor, however, only because PACER was down before Plaintiff's response was due, precluding Plaintiff from acquiring the Civil Justice Reform Act Report for 2003 (the "Report"), which has the latest figures regarding the backlog of the dockets of the Northern District of Texas and the District of Massachusetts. *See* Affidavit of Leah Siegel, attached hereto as Exhibit B. PACER was still not working properly the following day (Wednesday, February 23, 2005) with respect to the Report, precluding Plaintiff from filing this motion until today (Thursday, February 24, 2005). *See id.* PACER was still not working properly on February 24th, but Plaintiff has retrieved relevant portions of the Report, *see id.*, and seeks to supplement its response to Defendants' motions to

PLAINTIFF'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL RESPONSE TO DEFENDANT BILL MAHONEY'S RULE 12(b)(2) AND (3) MOTIONS AND MOTION TO TRANSFER PURSUANT TO 28 U.S.C.A. § 1404 AND *FORUM NON CONVENIENS*, AND TO DEFENDANT STEPHEN GREGORIO'S MOTION TO TRANSFER VENUE - Page 2

present such evidence to the Court for its use in assessing Defendants' separate motions to transfer venue.

Because Defendants have until March 9, 2005 to file their reply briefs, Defendants should not be prejudiced by Plaintiff's proposed supplementation and therefore justice requires that the Court grant Plaintiff's motion. *See* Fed. R. Civ. P. 15(a) (leave to amend party's pleading "shall be freely given when justice so requires").

## II.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant its motion for leave and take into consideration Plaintiff's attached supplemental response in evaluating Defendants' separate motions to transfer venue.

Respectfully submitted,

Kimberly A. Elkjer
Texas State Bar No. 06527040
Robert M. Millimet
Texas State Bar No. 24025538
SCHEEF & STONE, L.L.P.
5956 Sherry Ln., Suite 1400
Dallas, Texas 75225
(214) 706-4200
(214) 706-4242 (Fax)

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF CONFERENCE

Kimberly A. Elkjer, counsel for Plaintiff, attempted twice on Thursday, February 24, 2005 to contact Charles R. Biddle, counsel for Defendant Mahoney, and Timothy Blank, of counsel for Defendant Gregorio to personally hold separate conferences regarding Plaintiff's motion. Because Plaintiff's counsel was unable to reach counsel for each Defendant, Plaintiff files this motion under the assumption that it is being opposed by Defendants.

## CERTIFICATE OF SERVICE

I certify that on February 24, 2005, a true and correct copy of the foregoing was served

upon all known counsel of record via facsimile and first class U.S. mail as follows:

Charles R. Biddle
Ronald O. Holman
HOLMAN ROBERTSON ELDRIDGE
5949 Sherry Lane, Suite 1700
Dallas, Texas 75225

Thomas J. Fisher
SHANNON GRACEY RATLIFF & MILLER, LLP
777 Main Street, Suite 3800
Fort Worth, Texas 76102

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FM HOLDINGS, LLC, | § | |
| F/K/A FORWARDMARKET, LLC, | § | |
| | § | |
| Plaintiff, | § | Civil Action No. |
| | § | 3:05-CV-0166-G |
| vs. | § | |
| | § | |
| BILL MAHONEY; ~~STEPHEN~~ | § | |
| GREGORIO, | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S SUPPLEMENTAL RESPONSE TO DEFENDANT BILL MAHONEY'S RULE 12(b)(2) AND (3) MOTIONS AND MOTION TO TRANSFER PURSUANT TO 28 U.S.C.A. § 1404 AND FOR *FORUM NON CONVENIENS*, AND TO DEFENDANT STEPHEN GREGORIO'S MOTION TO TRANSFER VENUE**

Court congestion is one of the public interest "convenience" factors underlying Defendants' separate motions to transfer venue. *See Action Indus., Inc. v. United States Fidelity & Guar. Co.*, 358 F.3d 337, 340 n.8 (5th Cir. 2004) (public interest factors include administrative hurdles resulting from court congestion). Defendants submit no evidence or argument regarding this factor, which is not surprising because it weighs in Plaintiff's favor and against transfer of venue of this action from Texas to Massachusetts.

The Civil Justice Reform Act Report for 2003, the relevant portions of which are attached as Exhibit 1 to the Affidavit of Leah Siegel attached hereto as Exhibit A, has the latest figures regarding the backlog of the dockets of the Northern District of Texas and the District of Massachusetts. These figures demonstrate that the Northern District of Texas is much *less* congested than the District of Massachusetts:

**EXHIBIT "A"**

- As of March 31, 2003, the District of Massachusetts had 154 total cases and 22 pending motions, for an average of 5.92 cases and 8.6 motions per judge, respectively, and the Northern District of Texas had 47 total cases and 7 pending motions, for an average of 1.96 cases and 3.2 motions per judge, respectively.

- As of September 30, 2003, the District of Massachusetts had 171 total cases, 186 pending motions, and 4 bench trials, and the Northern District of Texas had 43 total cases, 48 pending motions, and 3 bench trials.

Accordingly, this factor also weighs against transfer of venue of this action from Texas to Massachusetts.

Respectfully submitted,

Kimberly A. Elkjer
Texas State Bar No. 06527040
Robert M. Millimet
Texas State Bar No. 24025538
SCHEEF & STONE, L.L.P.
5956 Sherry Ln., Suite 1400
Dallas, Texas 75225
(214) 706-4200
(214) 706-4242 (Fax)

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I certify that on February 24, 2005, a true and correct copy of the foregoing was served upon all known counsel of record via facsimile and first class U.S. mail as follows:

Charles R. Biddle
Ronald O. Holman
HOLMAN ROBERTSON ELDRIDGE
5949 Sherry Lane, Suite 1700
Dallas, Texas 75225

Thomas J. Fisher
SHANNON GRACEY RATLIFF & MILLER, LLP
777 Main Street, Suite 3800
Fort Worth, Texas 76102

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

FM HOLDINGS, LLC,        §
F/K/A FORWARDMARKET, LLC, §
       §
       Plaintiff, §          Civil Action No.
       §          3:05-CV-0166-G
vs.        §
       §
BILL MAHONEY; STEPHEN §
GREGORIO, §
       §
       Defendants. §

## AFFIDAVIT OF LEAH SIEGEL

THE STATE OF TEXAS     §
                            §
COUNTY OF DALLAS     §

Before me, the undersigned authority, personally appeared Leah Siegel, who, being by me duly sworn, deposed as follows:

1.      My name is Leah Siegel. I am a legal assistant with Scheef & Stone, LLP, counsel for Plaintiff FM Holdings, LLC, f/k/a Forwardmarket, LLC ("Plaintiff") in the above-captioned action. I have personal knowledge of the facts set forth herein. I am over 21 years of age, have never been convicted of a felony, and am of sound mind and capable of making this affidavit. The statements made herein are true and correct and are based on my own personal knowledge.

2.      It is my understanding that the Civil Justice Reform Act Report for 2003 (the "Report") has the latest official federal court figures regarding the backlog of the dockets of all the federal courts, including the Northern District of Texas and the District of Massachusetts. The Report may be downloaded from PACER.

**EXHIBIT "B"**

3.      I attempted to retrieve the Report from PACER on Tuesday, February 22, 2005, but PACER was completely down at the multiple times I checked the status of PACER (which was until at least 5 p.m.).  I was therefore unable to access the Report on that date.

4.      I contacted the 800 number for PACER on February 22nd regarding when I would be able to obtain access to PACER and the Report.  A PACER employee named Shannon told me that the PACER system was indeed not working and she had no knowledge as to when it would be fixed.

5.      On February 23rd, however, I was able to download some of the Report; a portion of the Report was not retrievable.  Counsel for Plaintiff therefore advised me to attempt to retrieve the full Report the following day, Thursday, February 24, 2005.

6.      On February 24th, I was again able to retrieve only portions of the Report (on both days, the portion of the report identifying the nature of the cases in the federal courts lacked such information for the Northern District of Texas).

7.      Attached hereto as Exhibit 1 is a true and correct copy of portions of the Report that I was able to retrieve from PACER on February 24th.

FURTHER AFFIANT SAYETH NOT.

_____
LEAH SIEGEL

Given under my hand and seal of this office this _24th_ day of _February_, 2005.

JERRI SANOJA
NOTARY PUBLIC STATE OF TEXAS
COMMISSION EXPIRES:
SEPTEMBER 18, 2005

_____
Notary Public in and for the State of Texas

SEAL

_____
Printed Name

**AFFIDAVIT OF LEAH SIEGEL - Page 2**

# EXHIBIT 1

CJRA  -  DISTRICT AND CIRCUIT AVER

AS OF DATE: 03/31/2003

|  | JUDGE COUNT | CASES | MOTION PENDIN |
|---|---|---|---|
| **DISTRICT:0090    DISTRICT OF COLUMBIA** | | | |
| MAGISTRATE JUDGES: | 3 | | |
| DISTRICT JUDGES: | 22 | | |
| TOTAL JUDGES: | 25 | | |
| TOTAL CASES: | | 391 | 89 |
| AVERAGES PER JUDGE: | | 15.64 | 35.7 |
| **CIRCUIT 00 TOTALS:** | | | |
| MAGISTRATE JUDGES: | 3 | | |
| DISTRICT JUDGES: | 22 | | |
| TOTAL JUDGES: | 25 | | |
| TOTAL CASES: | | 391 | 89 |
| AVERAGES PER JUDGE: | | 15.64 | 35.7 |
| **DISTRICT:0100    MAINE** | | | |
| MAGISTRATE JUDGES: | 3 | | |
| DISTRICT JUDGES: | 5 | | |
| TOTAL JUDGES: | 8 | | |
| TOTAL CASES: | | 0 | |
| AVERAGES PER JUDGE: | | 0.00 | 0.8 |
| **DISTRICT:0101    MASSACHUSETTS** | | | |
| MAGISTRATE JUDGES: | 7 | | |
| DISTRICT JUDGES: | 19 | | |
| TOTAL JUDGES: | 26 | | |
| TOTAL CASES: | | 154 | 22 |
| AVERAGES PER JUDGE: | | 5.92 | 8.6 |
| **DISTRICT:0102    NEW HAMPSHIRE** | | | |
| MAGISTRATE JUDGES: | 1 | | |
| DISTRICT JUDGES: | 4 | | |
| TOTAL JUDGES: | 5 | | |
| TOTAL CASES: | | 10 | |
| AVERAGES PER JUDGE: | | 2.00 | 0.8 |

CJRA  -  DISTRICT AND CIRCUIT AVER

AS OF DATE: 03/31/2003

|  | JUDGE COUNT | CASES | MOTION PENDIN |
|---|---|---|---|
| DISTRICT:0103   RHODE ISLAND | | | |
| MAGISTRATE JUDGES: | 3 | | |
| DISTRICT JUDGES: | 4 | | |
| TOTAL JUDGES: | 7 | | |
| TOTAL CASES: | | 23 | 4 |
| AVERAGES PER JUDGE: | | 3.29 | 6.5 |
| DISTRICT:0104   PUERTO RICO | | | |
| MAGISTRATE JUDGES: | 4 | | |
| DISTRICT JUDGES: | 11 | | |
| TOTAL JUDGES: | 15 | | |
| TOTAL CASES: | | 126 | 44 |
| AVERAGES PER JUDGE: | | 8.40 | 29.6 |

CIRCUIT 01 TOTALS:

|  | JUDGE COUNT | CASES | MOTION PENDIN |
|---|---|---|---|
| MAGISTRATE JUDGES: | 18 | | |
| DISTRICT JUDGES: | 43 | | |
| TOTAL JUDGES: | 61 | | |
| TOTAL CASES: | | 313 | 72 |
| AVERAGES PER JUDGE: | | 5.13 | 11.9 |
| DISTRICT:0205   CONNECTICUT | | | |
| MAGISTRATE JUDGES: | 5 | | |
| DISTRICT JUDGES: | 13 | | |
| TOTAL JUDGES: | 18 | | |
| TOTAL CASES: | | 247 | 14 |
| AVERAGES PER JUDGE: | | 13.72 | 7.7 |
| DISTRICT:0206   NEW YORK NORTHERN | | | |
| MAGISTRATE JUDGES: | 6 | | |
| DISTRICT JUDGES: | 7 | | |
| TOTAL JUDGES: | 13 | | |
| TOTAL CASES: | | 308 | 28 |
| AVERAGES PER JUDGE: | | 23.69 | 22.1 |

CJRA  -  DISTRICT AND CIRCUIT AVER

AS OF DATE: 03/31/2003

|  | JUDGE COUNT | CASES | MOTION PENDIN |
|---|---|---|---|

DISTRICT:0207   NEW YORK EASTERN

```
                MAGISTRATE JUDGES:              14
                DISTRICT JUDGES:                23
                TOTAL JUDGES:                   37

                TOTAL CASES:                                826         16
                AVERAGES PER JUDGE:                       22.32        4.5

DISTRICT:0208   NEW YORK SOUTHERN

                MAGISTRATE JUDGES:              16
                DISTRICT JUDGES:                47
                TOTAL JUDGES:                   63

                TOTAL CASES:                               1137        105
                AVERAGES PER JUDGE:                       18.05       16.8

DISTRICT:0209   NEW YORK WESTERN

                MAGISTRATE JUDGES:               6
                DISTRICT JUDGES:                 7
                TOTAL JUDGES:                   13

                TOTAL CASES:                                271         18
                AVERAGES PER JUDGE:                       20.85       14.2

DISTRICT:0210   VERMONT

                MAGISTRATE JUDGES:               1
                DISTRICT JUDGES:                 2
                TOTAL JUDGES:                    3

                TOTAL CASES:                                  3
                AVERAGES PER JUDGE:                        1.00        0.3


CIRCUIT 02 TOTALS:
_____

                MAGISTRATE JUDGES:              48
                DISTRICT JUDGES:                99
                TOTAL JUDGES:                  147

                TOTAL CASES:                               2792        184
                AVERAGES PER JUDGE:                       18.99       12.5
```

CJRA  -  DISTRICT AND CIRCUIT AVER

AS OF DATE: 03/31/2003

|  | JUDGE COUNT | CASES | MOTION PENDIN |
|---|---|---|---|

```
DISTRICT:0311   DELAWARE

                MAGISTRATE JUDGES:               1
                DISTRICT JUDGES:                 8
                TOTAL JUDGES:                    9
```

```
                     TOTAL CASES:                                    49          1
                     AVERAGES PER JUDGE:                           5.44        1.2

        DISTRICT:0312   NEW JERSEY

                     MAGISTRATE JUDGES:                 14
                     DISTRICT JUDGES:                   25
                     TOTAL JUDGES:                      39

                     TOTAL CASES:                                   211         17
                     AVERAGES PER JUDGE:                           5.41        4.4

        DISTRICT:0313   PENNSYLVANIA EASTERN

                     MAGISTRATE JUDGES:                 11
                     DISTRICT JUDGES:                   40
                     TOTAL JUDGES:                      51

                     TOTAL CASES:                                   485         11
                     AVERAGES PER JUDGE:                           9.51        2.2

        DISTRICT:0314   PENNSYLVANIA MIDDLE

                     MAGISTRATE JUDGES:                  4
                     DISTRICT JUDGES:                   13
                     TOTAL JUDGES:                      17

                     TOTAL CASES:                                    47         13
                     AVERAGES PER JUDGE:                           2.76        8.1

        DISTRICT:0315   PENNSYLVANIA WESTERN

                     MAGISTRATE JUDGES:                  8
                     DISTRICT JUDGES:                   17
                     TOTAL JUDGES:                      25

                     TOTAL CASES:                                   185         19
                     AVERAGES PER JUDGE:                           7.40        7.9
                                        CJRA  -  DISTRICT AND CIRCUIT AVER

           AS OF DATE: 03/31/2003
```

|  | JUDGE COUNT | CASES | MOTION PENDIN |
|---|---|---|---|
| DISTRICT:0391   VIRGIN ISLANDS |  |  |  |
| MAGISTRATE JUDGES: | 2 |  |  |
| DISTRICT JUDGES: | 5 |  |  |
| TOTAL JUDGES: | 7 |  |  |
| TOTAL CASES: |  | 218 | 3 |
| AVERAGES PER JUDGE: |  | 31.14 | 4.5 |

```
        CIRCUIT 03 TOTALS:
        _____
```

```
                MAGISTRATE JUDGES:              40
                DISTRICT JUDGES:              108
                TOTAL JUDGES:                 148

                TOTAL CASES:                                 1195            66
                AVERAGES PER JUDGE:                          8.07           4.5

DISTRICT:0416   MARYLAND

                MAGISTRATE JUDGES:               9
                DISTRICT JUDGES:               15
                TOTAL JUDGES:                  24

                TOTAL CASES:                                   40
                AVERAGES PER JUDGE:                           1.67           0.1

DISTRICT:0417   NO. CAROLINA EASTERN

                MAGISTRATE JUDGES:               3
                DISTRICT JUDGES:                4
                TOTAL JUDGES:                   7

                TOTAL CASES:                                   16             6
                AVERAGES PER JUDGE:                           2.29           9.8

DISTRICT:0418   NO. CAROLINA MIDDLE

                MAGISTRATE JUDGES:               3
                DISTRICT JUDGES:                6
                TOTAL JUDGES:                   9

                TOTAL CASES:                                   49            29
                AVERAGES PER JUDGE:                           5.44          33.1
                             CJRA  -  DISTRICT AND CIRCUIT AVER
```

AS OF DATE: 03/31/2003

| | JUDGE<br>COUNT | CASES | MOTION<br>PENDIN |
|---|---|---|---|

```
DISTRICT:0419   NO. CAROLINA WESTERN

                MAGISTRATE JUDGES:               3
                DISTRICT JUDGES:                3
                TOTAL JUDGES:                   6

                TOTAL CASES:                                   37            11
                AVERAGES PER JUDGE:                           6.17          18.6

DISTRICT:0420   SOUTH CAROLINA

                MAGISTRATE JUDGES:               8
                DISTRICT JUDGES:               11
                TOTAL JUDGES:                  19

                TOTAL CASES:                                   40            23
                AVERAGES PER JUDGE:                           2.11          12.5
```

DISTRICT:0422   VIRGINIA EASTERN

                    MAGISTRATE JUDGES:              11
                    DISTRICT JUDGES:                15
                    TOTAL JUDGES:                   26

                    TOTAL CASES:                              5          2
                    AVERAGES PER JUDGE:                    0.19        0.8

DISTRICT:0423   VIRGINIA WESTERN

                    MAGISTRATE JUDGES:               3
                    DISTRICT JUDGES:                 7
                    TOTAL JUDGES:                   10

                    TOTAL CASES:                             26         11
                    AVERAGES PER JUDGE:                   2.60       11.7

DISTRICT:0424   W. VIRGINIA NORTHERN

                    MAGISTRATE JUDGES:               3
                    DISTRICT JUDGES:                 4
                    TOTAL JUDGES:                    7

                    TOTAL CASES:                             15          1
                    AVERAGES PER JUDGE:                   2.14        2.4

                              CJRA  -  DISTRICT AND CIRCUIT AVER

                AS OF DATE: 03/31/2003

---

|                                        | JUDGE COUNT | CASES | MOTION PENDIN |
|----------------------------------------|-------------|-------|---------------|
| DISTRICT:0425   W. VIRGINIA SOUTHERN   |             |       |               |
| MAGISTRATE JUDGES:                     | 4           |       |               |
| DISTRICT JUDGES:                       | 7           |       |               |
| TOTAL JUDGES:                          | 11          |       |               |
| TOTAL CASES:                           |             | 4     | 1             |
| AVERAGES PER JUDGE:                    |             | 0.36  | 1.0           |

CIRCUIT 04 TOTALS:

---

                    MAGISTRATE JUDGES:              47
                    DISTRICT JUDGES:                72
                    TOTAL JUDGES:                  119

                    TOTAL CASES:                            232         88
                    AVERAGES PER JUDGE:                   1.95        7.4

DISTRICT:053L   LOUISIANA EASTERN

                    MAGISTRATE JUDGES:               6
                    DISTRICT JUDGES:                18
                    TOTAL JUDGES:                   24

```
                    TOTAL CASES:                                22        2
                    AVERAGES PER JUDGE:                       0.92      1.1

     DISTRICT:053N   LOUISIANA MIDDLE

                    MAGISTRATE JUDGES:            3
                    DISTRICT JUDGES:             4
                    TOTAL JUDGES:                7

                    TOTAL CASES:                              7816        5
                    AVERAGES PER JUDGE:                    1116.57      8.1

     DISTRICT:0536   LOUISIANA WESTERN

                    MAGISTRATE JUDGES:            6
                    DISTRICT JUDGES:             8
                    TOTAL JUDGES:               14

                    TOTAL CASES:                                58        7
                    AVERAGES PER JUDGE:                       4.14      5.2
                         CJRA  -  DISTRICT AND CIRCUIT AVER
```

                    AS OF DATE: 03/31/2003

---

| | JUDGE COUNT | CASES | MOTION PENDIN |
|---|---|---|---|
| **DISTRICT:0537  MISSISSIPPI NORTHERN** | | | |
| MAGISTRATE JUDGES: | 5 | | |
| DISTRICT JUDGES: | 5 | | |
| TOTAL JUDGES: | 10 | | |
| TOTAL CASES: | | 19 | |
| AVERAGES PER JUDGE: | | 1.90 | 0.8 |
| **DISTRICT:0538  MISSISSIPPI SOUTHERN** | | | |
| MAGISTRATE JUDGES: | 4 | | |
| DISTRICT JUDGES: | 8 | | |
| TOTAL JUDGES: | 12 | | |
| TOTAL CASES: | | 43 | 20 |
| AVERAGES PER JUDGE: | | 3.58 | 17.3 |
| **DISTRICT:0539  TEXAS NORTHERN** | | | |
| MAGISTRATE JUDGES: | 10 | | |
| DISTRICT JUDGES: | 14 | | |
| TOTAL JUDGES: | 24 | | |
| TOTAL CASES: | | 47 | 7 |
| AVERAGES PER JUDGE: | | 1.96 | 3.2 |
| **DISTRICT:0540  TEXAS EASTERN** | | | |
| MAGISTRATE JUDGES: | 7 | | |

```
                    DISTRICT JUDGES:                  11
                    TOTAL JUDGES:                     18

                    TOTAL CASES:                                35          3
                    AVERAGES PER JUDGE:                        1.94        2.1

      DISTRICT:0541   TEXAS SOUTHERN

                    MAGISTRATE JUDGES:                17
                    DISTRICT JUDGES:                  20
                    TOTAL JUDGES:                     37

                    TOTAL CASES:                                57         11
                    AVERAGES PER JUDGE:                        1.54        3.0
                                        CJRA  -  DISTRICT AND CIRCUIT AVER

          AS OF DATE: 03/31/2003
```

|                          | JUDGE COUNT | CASES | MOTION PENDIN |
|--------------------------|-------------|-------|---------------|
| DISTRICT:0542  TEXAS WESTERN | | | |
| MAGISTRATE JUDGES: | 14 | | |
| DISTRICT JUDGES: | 15 | | |
| TOTAL JUDGES: | 29 | | |
| TOTAL CASES: | | 44 | 3 |
| AVERAGES PER JUDGE: | | 1.52 | 1.2 |
| CIRCUIT 05 TOTALS: | | | |
| MAGISTRATE JUDGES: | 72 | | |
| DISTRICT JUDGES: | 103 | | |
| TOTAL JUDGES: | 175 | | |
| TOTAL CASES: | | 8141 | 63 |
| AVERAGES PER JUDGE: | | 46.52 | 3.6 |
| DISTRICT:0643  KENTUCKY EASTERN | | | |
| MAGISTRATE JUDGES: | 4 | | |
| DISTRICT JUDGES: | 12 | | |
| TOTAL JUDGES: | 16 | | |
| TOTAL CASES: | | 28 | 5 |
| AVERAGES PER JUDGE: | | 1.75 | 3.5 |
| DISTRICT:0644  KENTUCKY WESTERN | | | |
| MAGISTRATE JUDGES: | 4 | | |
| DISTRICT JUDGES: | 7 | | |
| TOTAL JUDGES: | 11 | | |
| TOTAL CASES: | | 40 | |
| AVERAGES PER JUDGE: | | 3.64 | 0.5 |



DISTRICT:0645   MICHIGAN EASTERN

       MAGISTRATE JUDGES:           8
       DISTRICT JUDGES:          21
       TOTAL JUDGES:             29

       TOTAL CASES:                   72        10
       AVERAGES PER JUDGE:            2.48     3.4
                       CJRA  -  DISTRICT AND CIRCUIT AVER

AS OF DATE: 03/31/2003

---

|  | JUDGE COUNT | CASES | MOTION PENDIN |
|---|---|---|---|

DISTRICT:0646   MICHIGAN WESTERN

       MAGISTRATE JUDGES:           4
       DISTRICT JUDGES:           6
       TOTAL JUDGES:             10

       TOTAL CASES:                   14
       AVERAGES PER JUDGE:            1.40     0.7

DISTRICT:0647   OHIO NORTHERN

       MAGISTRATE JUDGES:           9
       DISTRICT JUDGES:          18
       TOTAL JUDGES:             27

       TOTAL CASES:                   72        26
       AVERAGES PER JUDGE:            2.67     9.9

DISTRICT:0648   OHIO SOUTHERN

       MAGISTRATE JUDGES:           5
       DISTRICT JUDGES:          12
       TOTAL JUDGES:             17

       TOTAL CASES:                 176      19
       AVERAGES PER JUDGE:           10.35    11.5

DISTRICT:0649   TENNESSEE EASTERN

       MAGISTRATE JUDGES:           8
       DISTRICT JUDGES:           7
       TOTAL JUDGES:             15

       TOTAL CASES:                   44         5
       AVERAGES PER JUDGE:            2.93     3.6

DISTRICT:0650   TENNESSEE MIDDLE

       MAGISTRATE JUDGES:           3
       DISTRICT JUDGES:           7
       TOTAL JUDGES:             10

```
                        TOTAL CASES:                           41         4
                        AVERAGES PER JUDGE:                  4.10       4.5
                                            CJRA  -  DISTRICT AND CIRCUIT AVER

          AS OF DATE: 03/31/2003
```

|  | JUDGE COUNT | CASES | MOTION PENDIN |
|---|---|---|---|
| **DISTRICT:0651   TENNESSEE WESTERN** | | | |
| MAGISTRATE JUDGES: | 3 | | |
| DISTRICT JUDGES: | 7 | | |
| TOTAL JUDGES: | 10 | | |
| TOTAL CASES: | | 26 | 3 |
| AVERAGES PER JUDGE: | | 2.60 | 3.5 |
| **CIRCUIT 06 TOTALS:** | | | |
| MAGISTRATE JUDGES: | 48 | | |
| DISTRICT JUDGES: | 97 | | |
| TOTAL JUDGES: | 145 | | |
| TOTAL CASES: | | 513 | 76 |
| AVERAGES PER JUDGE: | | 3.54 | 5.3 |
| **DISTRICT:0752   ILLINOIS NORTHERN** | | | |
| MAGISTRATE JUDGES: | 10 | | |
| DISTRICT JUDGES: | 36 | | |
| TOTAL JUDGES: | 46 | | |
| TOTAL CASES: | | 426 | 7 |
| AVERAGES PER JUDGE: | | 9.26 | 1.6 |
| **DISTRICT:0753   ILLINOIS CENTRAL** | | | |
| MAGISTRATE JUDGES: | 4 | | |
| DISTRICT JUDGES: | 6 | | |
| TOTAL JUDGES: | 10 | | |
| TOTAL CASES: | | 9 | 2 |
| AVERAGES PER JUDGE: | | 0.90 | 2.7 |
| **DISTRICT:0754   ILLINOIS SOUTHERN** | | | |
| MAGISTRATE JUDGES: | 3 | | |
| DISTRICT JUDGES: | 6 | | |
| TOTAL JUDGES: | 9 | | |
| TOTAL CASES: | | 51 | 1 |
| AVERAGES PER JUDGE: | | 5.67 | 1.5 |

```
                                            CJRA  -  DISTRICT AND CIRCUIT AVER

          AS OF DATE: 03/31/2003
```

|  | JUDGE COUNT | CASES | MOTION PENDIN |
|---|---|---|---|
| **DISTRICT:0755  INDIANA NORTHERN** | | | |
| MAGISTRATE JUDGES: | 4 | | |
| DISTRICT JUDGES: | 6 | | |
| TOTAL JUDGES: | 10 | | |
| TOTAL CASES: | | 29 | 2 |
| AVERAGES PER JUDGE: | | 2.90 | 2.0 |
| **DISTRICT:0756  INDIANA SOUTHERN** | | | |
| MAGISTRATE JUDGES: | 8 | | |
| DISTRICT JUDGES: | 6 | | |
| TOTAL JUDGES: | 14 | | |
| TOTAL CASES: | | 88 | 3 |
| AVERAGES PER JUDGE: | | 6.29 | 2.2 |
| **DISTRICT:0757  WISCONSIN EASTERN** | | | |
| MAGISTRATE JUDGES: | 4 | | |
| DISTRICT JUDGES: | 8 | | |
| TOTAL JUDGES: | 12 | | |
| TOTAL CASES: | | 17 | 2 |
| AVERAGES PER JUDGE: | | 1.42 | 2.0 |
| **DISTRICT:0758  WISCONSIN WESTERN** | | | |
| MAGISTRATE JUDGES: | 2 | | |
| DISTRICT JUDGES: | 2 | | |
| TOTAL JUDGES: | 4 | | |
| TOTAL CASES: | | 0 | |
| AVERAGES PER JUDGE: | | 0.00 | 0.0 |
| **CIRCUIT 07 TOTALS:** | | | |
| MAGISTRATE JUDGES: | 35 | | |
| DISTRICT JUDGES: | 70 | | |
| TOTAL JUDGES: | 105 | | |
| TOTAL CASES: | | 620 | 19 |
| AVERAGES PER JUDGE: | | 5.90 | 1.8 |

CJRA - DISTRICT AND CIRCUIT AVER

AS OF DATE: 03/31/2003

|  | JUDGE COUNT | CASES | MOTION PENDIN |
|---|---|---|---|

DISTRICT:0860   ARKANSAS EASTERN

    MAGISTRATE JUDGES:      5
    DISTRICT JUDGES:       6
    TOTAL JUDGES:         11

    TOTAL CASES:            19     2
    AVERAGES PER JUDGE:    1.73   2.0

DISTRICT:0861   ARKANSAS WESTERN

    MAGISTRATE JUDGES:      2
    DISTRICT JUDGES:       3
    TOTAL JUDGES:         5

    TOTAL CASES:             0
    AVERAGES PER JUDGE:    0.00   0.0

DISTRICT:0862   IOWA NORTHERN

    MAGISTRATE JUDGES:      2
    DISTRICT JUDGES:       6
    TOTAL JUDGES:         8

    TOTAL CASES:           15
    AVERAGES PER JUDGE:    1.88   1.1

DISTRICT:0863   IOWA SOUTHERN

    MAGISTRATE JUDGES:      3
    DISTRICT JUDGES:       5
    TOTAL JUDGES:         8

    TOTAL CASES:           12     1
    AVERAGES PER JUDGE:`   1.50   2.1

DISTRICT:0864   MINNESOTA

    MAGISTRATE JUDGES:      9
    DISTRICT JUDGES:      12
    TOTAL JUDGES:       21

    TOTAL CASES:           25
    AVERAGES PER JUDGE:    1.19   0.1

                 CJRA  -  DISTRICT AND CIRCUIT AVER

      AS OF DATE: 03/31/2003

---

| | JUDGE COUNT | CASES | MOTION PENDIN |
|---|---|---|---|

DISTRICT:0865   MISSOURI EASTERN

    MAGISTRATE JUDGES:      8
    DISTRICT JUDGES:      11
    TOTAL JUDGES:      19

```
                TOTAL CASES:                                    10          1
                AVERAGES PER JUDGE:                            0.53        0.6

DISTRICT:0866   MISSOURI WESTERN

                MAGISTRATE JUDGES:                 5
                DISTRICT JUDGES:                   9
                TOTAL JUDGES:                     14

                TOTAL CASES:                                    37          1
                AVERAGES PER JUDGE:                            2.64        0.8

DISTRICT:0867   NEBRASKA

                MAGISTRATE JUDGES:                 3
                DISTRICT JUDGES:                   8
                TOTAL JUDGES:                     11

                TOTAL CASES:                                     9          1
                AVERAGES PER JUDGE:                            0.82        1.4

DISTRICT:0868   NORTH DAKOTA

                MAGISTRATE JUDGES:                 3
                DISTRICT JUDGES:                   5
                TOTAL JUDGES:                      8

                TOTAL CASES:                                     5
                AVERAGES PER JUDGE:                            0.63        0.3

DISTRICT:0869   SOUTH DAKOTA

                MAGISTRATE JUDGES:                 4
                DISTRICT JUDGES:                   6
                TOTAL JUDGES:                     10

                TOTAL CASES:                                    11
                AVERAGES PER JUDGE:                            1.10        0.4
                                 CJRA  -  DISTRICT AND CIRCUIT AVER

      AS OF DATE: 03/31/2003
```

---

```
                                       JUDGE                    MOTION
                                       COUNT       CASES        PENDIN


      CIRCUIT 08 TOTALS:
      _____

                MAGISTRATE JUDGES:                44
                DISTRICT JUDGES:                  71
                TOTAL JUDGES:                    115

                TOTAL CASES:                                   143          9
                AVERAGES PER JUDGE:                           1.24        0.8

DISTRICT:097-   ALASKA
```

```
              MAGISTRATE JUDGES:              6
              DISTRICT JUDGES:                6
              TOTAL JUDGES:                  12

              TOTAL CASES:                            14
              AVERAGES PER JUDGE:                    1.17          0.2

DISTRICT:0970   ARIZONA

              MAGISTRATE JUDGES:             13
              DISTRICT JUDGES:               27
              TOTAL JUDGES:                  40

              TOTAL CASES:                           190            4
              AVERAGES PER JUDGE:        .            4.75          1.1

DISTRICT:0971   CALIFORNIA NORTHERN

              MAGISTRATE JUDGES:             13
              DISTRICT JUDGES:               22
              TOTAL JUDGES:                  35

              TOTAL CASES:                           328            9
              AVERAGES PER JUDGE:                    9.37          2.6

DISTRICT:0972   CALIFORNIA EASTERN

              MAGISTRATE JUDGES:             12
              DISTRICT JUDGES:               15
              TOTAL JUDGES:                  27

              TOTAL CASES:                           343            7
              AVERAGES PER JUDGE:                   12.70          2.6
```

                              CJRA  -  DISTRICT AND CIRCUIT AVER

     AS OF DATE: 03/31/2003

---

|                 | JUDGE COUNT | CASES | MOTION PENDIN |
|-----------------|-------------|-------|---------------|

```
DISTRICT:0973   CALIFORNIA CENTRAL

              MAGISTRATE JUDGES:             23
              DISTRICT JUDGES:               39
              TOTAL JUDGES:                  62

              TOTAL CASES:                           604           30
              AVERAGES PER JUDGE:                    9.74          4.9

DISTRICT:0974   CALIFORNIA SOUTHERN

              MAGISTRATE JUDGES:             11
              DISTRICT JUDGES:               14
              TOTAL JUDGES:                  25

              TOTAL CASES:                            76
              AVERAGES PER JUDGE:                    3.04          0.3
```

DISTRICT:0975    HAWAII

        MAGISTRATE JUDGES:            5
        DISTRICT JUDGES:            10
        TOTAL JUDGES:              15

        TOTAL CASES:                              272              5
        AVERAGES PER JUDGE:                     18.13            3.6

DISTRICT:0976    IDAHO

        MAGISTRATE JUDGES:            2
        DISTRICT JUDGES:             4
        TOTAL JUDGES:               6

        TOTAL CASES:                               29
        AVERAGES PER JUDGE:                      4.83            0.1

DISTRICT:0977    MONTANA

        MAGISTRATE JUDGES:            5
        DISTRICT JUDGES:             5
        TOTAL JUDGES:              10

        TOTAL CASES:                               35              4
        AVERAGES PER JUDGE:                      3.50            4.6

                              CJRA  -  DISTRICT AND CIRCUIT AVER

        AS OF DATE: 03/31/2003

_____

                                    JUDGE                      MOTION
                                    COUNT          CASES       PENDIN


DISTRICT:0978    NEVADA

        MAGISTRATE JUDGES:            5
        DISTRICT JUDGES:            11
        TOTAL JUDGES:              16

        TOTAL CASES:                               97              1
        AVERAGES PER JUDGE:                      6.06            0.6

DISTRICT:0979    OREGON

        MAGISTRATE JUDGES:            8
        DISTRICT JUDGES:            10
        TOTAL JUDGES:              18

        TOTAL CASES:                               48              5
        AVERAGES PER JUDGE:                      2.67            3.1

DISTRICT:0980    WASHINGTON EASTERN

        MAGISTRATE JUDGES:            3
        DISTRICT JUDGES:             7
        TOTAL JUDGES:              10

        TOTAL CASES:                               18              4

```
                AVERAGES PER JUDGE:                         1.80        4.5

    DISTRICT:0981    WASHINGTON WESTERN

                MAGISTRATE JUDGES:              5
                DISTRICT JUDGES:               11
                TOTAL JUDGES:                  16

                TOTAL CASES:                               15           4
                AVERAGES PER JUDGE:                       0.94         2.6

    DISTRICT:0993    GUAM

                MAGISTRATE JUDGES:              0
                DISTRICT JUDGES:                1
                TOTAL JUDGES:                   1

                TOTAL CASES:                                8           1
                AVERAGES PER JUDGE:                       8.00        17.0
                                    CJRA  -  DISTRICT AND CIRCUIT AVER
```

AS OF DATE: 03/31/2003

---

| | JUDGE COUNT | CASES | MOTION PENDIN |
|---|---|---|---|

```
    DISTRICT:0994    NORTHERN MARIANAS

                MAGISTRATE JUDGES:              0
                DISTRICT JUDGES:                1
                TOTAL JUDGES:                   1

                TOTAL CASES:                                4
                AVERAGES PER JUDGE:                       4.00         0.0


    CIRCUIT 09 TOTALS:
    _____

                MAGISTRATE JUDGES:            111
                DISTRICT JUDGES:             183
                TOTAL JUDGES:               294

                TOTAL CASES:                             2081          80
                AVERAGES PER JUDGE:                      7.08         2.7

    DISTRICT:1082    COLORADO

                MAGISTRATE JUDGES:              7
                DISTRICT JUDGES:               13
                TOTAL JUDGES:                  20

                TOTAL CASES:                              182          38
                AVERAGES PER JUDGE:                      9.10        19.3

    DISTRICT:1083    KANSAS

                MAGISTRATE JUDGES:              8
```

```
            DISTRICT JUDGES:                10
            TOTAL JUDGES:                   18

            TOTAL CASES:                              26           9
            AVERAGES PER JUDGE:                       1.44         5.0

    DISTRICT:1084   NEW MEXICO

            MAGISTRATE JUDGES:             15
            DISTRICT JUDGES:               11
            TOTAL JUDGES:                  26

            TOTAL CASES:                              39          47
            AVERAGES PER JUDGE:                       1.50        18.2
                            CJRA  -  DISTRICT AND CIRCUIT AVER
```

        AS OF DATE: 03/31/2003

---

```
                            JUDGE                   MOTION
                            COUNT        CASES      PENDIN
```

    DISTRICT:1085   OKLAHOMA NORTHERN

```
            MAGISTRATE JUDGES:              3
            DISTRICT JUDGES:               7
            TOTAL JUDGES:                  10

            TOTAL CASES:                              44          16
            AVERAGES PER JUDGE:                       4.40        16.6
```

    DISTRICT:1086   OKLAHOMA EASTERN

```
            MAGISTRATE JUDGES:             2
            DISTRICT JUDGES:               2
            TOTAL JUDGES:                  4

            TOTAL CASES:                              7           3
            AVERAGES PER JUDGE:                       1.75        8.7
```

    DISTRICT:1087   OKLAHOMA WESTERN

```
            MAGISTRATE JUDGES:            11
            DISTRICT JUDGES:              11
            TOTAL JUDGES:                 22

            TOTAL CASES:                              12          3
            AVERAGES PER JUDGE:                       0.55        1.6
```

    DISTRICT:1088   UTAH

```
            MAGISTRATE JUDGES:             5
            DISTRICT JUDGES:               9
            TOTAL JUDGES:                 14

            TOTAL CASES:                              86          8
            AVERAGES PER JUDGE:                       6.14        6.0
```

    DISTRICT:1089   WYOMING

```
              MAGISTRATE JUDGES:              7
              DISTRICT JUDGES:                3
              TOTAL JUDGES:                  10

              TOTAL CASES:                              78          2
              AVERAGES PER JUDGE:                     7.80        2.0
                        CJRA  -  DISTRICT AND CIRCUIT AVER
```

        AS OF DATE: 03/31/2003

---

|                          | JUDGE<br>COUNT | CASES | MOTION<br>PENDIN |
|--------------------------|---------------|-------|------------------|

CIRCUIT 10 TOTALS:

---

```
              MAGISTRATE JUDGES:             58
              DISTRICT JUDGES:               66
              TOTAL JUDGES:                 124

              TOTAL CASES:                             474         129
              AVERAGES PER JUDGE:                     3.82        10.4
```

DISTRICT:1126   ALABAMA NORTHERN

```
              MAGISTRATE JUDGES:              5
              DISTRICT JUDGES:               10
              TOTAL JUDGES:                  15

              TOTAL CASES:                              86          35
              AVERAGES PER JUDGE:                     5.73        23.7
```

DISTRICT:1127   ALABAMA MIDDLE

```
              MAGISTRATE JUDGES:              4
              DISTRICT JUDGES:                9
              TOTAL JUDGES:                  13

              TOTAL CASES:                              56          12
              AVERAGES PER JUDGE:                     4.31         9.6
```

DISTRICT:1128   ALABAMA SOUTHERN

```
              MAGISTRATE JUDGES:              4
              DISTRICT JUDGES:                7
              TOTAL JUDGES:                  11

              TOTAL CASES:                              17          13
              AVERAGES PER JUDGE:                     1.55        12.0
```

DISTRICT:1129   FLORIDA NORTHERN

```
              MAGISTRATE JUDGES:              6
              DISTRICT JUDGES:                6
              TOTAL JUDGES:                  12
```

```
                    TOTAL CASES:                               5          1
                    AVERAGES PER JUDGE:                      0.42        1.0
                              CJRA  -  DISTRICT AND CIRCUIT AVER

        AS OF DATE: 03/31/2003
```

| | JUDGE COUNT | CASES | MOTION PENDIN |
|---|---|---|---|
| **DISTRICT:113A   FLORIDA MIDDLE** | | | |
| MAGISTRATE JUDGES: | 12 | | |
| DISTRICT JUDGES: | 22 | | |
| TOTAL JUDGES: | 34 | | |
| TOTAL CASES: | | 72 | 17 |
| AVERAGES PER JUDGE: | | 2.12 | 5.0 |
| **DISTRICT:113C   FLORIDA SOUTHERN** | | | |
| MAGISTRATE JUDGES: | 16 | | |
| DISTRICT JUDGES: | 24 | | |
| TOTAL JUDGES: | 40 | | |
| TOTAL CASES: | | 383 | 58 |
| AVERAGES PER JUDGE: | | 9.58 | 14.6 |
| **DISTRICT:113E   GEORGIA NORTHERN** | | | |
| MAGISTRATE JUDGES: | 11 | | |
| DISTRICT JUDGES: | 17 | | |
| TOTAL JUDGES: | 28 | | |
| TOTAL CASES: | | 58 | 6 |
| AVERAGES PER JUDGE: | | 2.07 | 2.1 |
| **DISTRICT:113G   GEORGIA MIDDLE** | | | |
| MAGISTRATE JUDGES: | 3 | | |
| DISTRICT JUDGES: | 9 | | |
| TOTAL JUDGES: | 12 | | |
| TOTAL CASES: | | 28 | 3 |
| AVERAGES PER JUDGE: | | 2.33 | 2.8 |
| **DISTRICT:113J   GEORGIA SOUTHERN** | | | |
| MAGISTRATE JUDGES: | 3 | | |
| DISTRICT JUDGES: | 6 | | |
| TOTAL JUDGES: | 9 | | |
| TOTAL CASES: | | 2 | |
| AVERAGES PER JUDGE: | | 0.22 | 0.6 |

```
                              CJRA  -  DISTRICT AND CIRCUIT AVER

        AS OF DATE: 03/31/2003
```

|  | JUDGE COUNT | CASES | MOTION PENDIN |
|---|---|---|---|
| **CIRCUIT 11 TOTALS:** |  |  |  |
| MAGISTRATE JUDGES: | 64 |  |  |
| DISTRICT JUDGES: | 110 |  |  |
| TOTAL JUDGES: | 174 |  |  |
| TOTAL CASES: |  | 707 | 148 |
| AVERAGES PER JUDGE: |  | 4.06 | 8.5 |
| **GRAND TOTALS:** |  |  |  |
| MAGISTRATE JUDGES: | 588 |  |  |
| DISTRICT JUDGES: | 1044 |  |  |
| TOTAL JUDGES: | 1632 |  |  |
| TOTAL CASES: |  | 17602 | 1029 |
| AVERAGES PER JUDGE: |  | 10.79 | 6.3 |

DISTRICT SUMMARY REPORT
AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR DISTRICT OF COLUMBIA

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Robinson, Debra Ann | 0 | 3 | 0 |
| Kay, Allan | 4 | 4 | 0 |
| Facciola, John M. | 3 | 0 | 0 |
| SUBTOTAL | 7 | 7 | 0 |
| **DISTRICT JUDGES** | | | |
| Bryant, William B. | 13 | 17 | 0 |
| Flannery, Thomas A. | 0 | 0 | 0 |
| Oberdorfer, Louis F. | 8 | 15 | 0 |
| Penn, John G. | 13 | 59 | 0 |
| Green, Joyce Hens | 0 | 0 | 0 |
| Johnson, Norma Holloway | 70 | 16 | 0 |
| Jackson, Thomas Penfield | 62 | 122 | 0 |
| Hogan, Thomas F. | 28 | 10 | 0 |
| Lamberth, Royce C. | 18 | 34 | 0 |
| Kessler, Gladys | 9 | 7 | 0 |
| Friedman, Paul L. | 26 | 113 | 1 |
| Urbina, Ricardo M. | 10 | 0 | 0 |
| Sullivan, Emmet G. | 18 | 0 | 0 |
| Robertson, James | 6 | 1 | 0 |
| Kollar-Kotelly, Colleen | 10 | 50 | 0 |
| Kennedy, Henry H., Jr. | 17 | 95 | 0 |
| Roberts, Richard W. | 30 | 99 | 0 |
| Huvelle, Ellen Segal | 4 | 0 | 0 |
| Walton, Reggie B. | 13 | 39 | 0 |
| Bates, John D. | 9 | 12 | 0 |
| Leon, Richard J. | 18 | 136 | 0 |
| Collyer, Rosemary M. | 0 | 8 | 0 |
| SUBTOTAL | 382 | 833 | 1 |
| DISTRICT TOTAL: | 389 | 840 | 1 |
| CIRCUIT TOTAL: | 389 | 840 | 1 |

DISTRICT SUMMARY REPORT
AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR MAINE

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|

MAGISTRATE JUDGES

|  | | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|---|
| | Cohen, David M. | 0 | 0 | 0 |
| | Kravchuk, Margaret J. | 0 | 0 | 0 |
| | Brownell, William S. | 0 | 0 | 0 |
| SUBTOTAL | | 0 | 0 | 0 |

DISTRICT JUDGES

| | | | | |
|---|---|---|---|---|
| | Boyle, Francis J. | 0 | 0 | 0 |
| | Carter, Gene | 2 | 4 | 0 |
| | Hornby, D. Brock | 0 | 2 | 0 |
| | Barbadoro, Paul J. | 0 | 1 | 0 |
| | Singal, George Z. | 0 | 0 | 0 |
| | Woodcock, John A, Jr. | 1 | 0 | 0 |
| | Dorsey, Peter C. | 0 | 0 | 0 |
| SUBTOTAL | | 3 | 7 | 0 |

DISTRICT TOTAL:                                3      7      0

□

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR MASSACHUSETTS

|  | | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|---|

MAGISTRATE JUDGES

| | | | | |
|---|---|---|---|---|
| | Alexander, Joyce L. | 0 | 0 | 0 |
| | Cohen, Lawrence P. | 1 | 2 | 0 |
| | Collings, Robert B. | 6 | 2 | 0 |
| | Bowler, Marianne B. | 0 | 3 | 0 |
| | Swartwood, Charles B. | 2 | 10 | 0 |
| | Neiman, Kenneth P. | 2 | 2 | 0 |
| | Dein, Judith G. | 0 | 0 | 0 |
| SUBTOTAL | | 11 | 19 | 0 |

DISTRICT JUDGES

| | | | | |
|---|---|---|---|---|
| | Tauro, Joseph L. | 0 | 0 | 0 |
| | Skinner, Walter Jay | 2 | 0 | 0 |
| | Mazzone, A. David | 4 | 4 | 0 |
| | Keeton, Robert E. | 11 | 0 | 0 |
| | Zobel, Rya W. | 19 | 7 | 0 |
| | Young, William G. | 0 | 0 | 0 |
| | Wolf, Mark L. | 13 | 9 | 0 |
| | Woodlock, Douglas F. | 10 | 30 | 4 |
| | Harrington, Edward F. | 24 | 20 | 0 |
| | Gorton, Nathaniel M. | 7 | 4 | 0 |
| | Stearns, Richard G. | 3 | 21 | 0 |
| | Lindsay, Reginald C. | 8 | 15 | 0 |
| | Saris, Patti B. | 2 | 2 | 0 |
| | Ponsor, Michael A. | 12 | 11 | 0 |
| | Gertner, Nancy | 13 | 9 | 0 |

|                              | CASES | MOTIONS PENDING | BENCH TRIALS |
|------------------------------|-------|-----------------|--------------|
| O'Toole, George A., Jr.      | 13    | 10              | 0            |
| Dyk, Timothy Belcher         | 1     | 0               | 0            |
| Lasker, Morris E.            | 2     | 16              | 0            |
| Unassigned                   | 16    | 9               | 0            |
| SUBTOTAL                     | 160   | 167             | 4            |
| DISTRICT TOTAL:              | 171   | 186             | 4            |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

## U.S. DISTRICT COURT FOR NEW HAMPSHIRE

|                              | CASES | MOTIONS PENDING | BENCH TRIALS |
|------------------------------|-------|-----------------|--------------|
| **MAGISTRATE JUDGES**        |       |                 |              |
| Muirhead, James R.           | 0     | 0               | 0            |
| SUBTOTAL                     | 0     | 0               | 0            |
| **DISTRICT JUDGES**          |       |                 |              |
| Diclerico, Joseph A., Jr.    | 1     | 0               | 0            |
| Barbadoro, Paul J.           | 5     | 0               | 0            |
| Torres, Ernest C.            | 1     | 1               | 0            |
| McAuliffe, Steven J.         | 1     | 0               | 0            |
| SUBTOTAL                     | 8     | 1               | 0            |
| DISTRICT TOTAL:              | 8     | 1               | 0            |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

## U.S. DISTRICT COURT FOR RHODE ISLAND

|                              | CASES | MOTIONS PENDING | BENCH TRIALS |
|------------------------------|-------|-----------------|--------------|
| **MAGISTRATE JUDGES**        |       |                 |              |
| Hagopian, Jacob              | 0     | 0               | 0            |
| Lovegreen, Robert W.         | 0     | 1               | 0            |
| Martin, David L.             | 0     | 0               | 0            |
| SUBTOTAL                     | 0     | 1               | 0            |
| **DISTRICT JUDGES**          |       |                 |              |
| Lagueux, Ronald R.           | 8     | 15              | 0            |
| Torres, Ernest C.            | 2     | 2               | 0            |
| Lisi, Mary M.                | 3     | 5               | 0            |
| Smith, William E.            | 4     | 7               | 0            |

|                    | CASES | MOTIONS PENDING | BENCH TRIALS |
|--------------------|-------|-----------------|--------------|
| SUBTOTAL           | 17    | 29              | 0            |
| DISTRICT TOTAL:    | 17    | 30              | 0            |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                          RUN: 04/13/2004

### U.S. DISTRICT COURT FOR PUERTO RICO

|                             | CASES | MOTIONS PENDING | BENCH TRIALS |
|-----------------------------|-------|-----------------|--------------|
| **MAGISTRATE JUDGES**       |       |                 |              |
| Castellanos, Jesus          | 0     | 0               | 0            |
| Arenas, Justo               | 0     | 1               | 0            |
| Delgado-Colon, Aida M.      | 0     | 0               | 0            |
| Gelpi, Gustavo A.           | 0     | 0               | 0            |
| SUBTOTAL                    | 0     | 1               | 0            |
| **DISTRICT JUDGES**         |       |                 |              |
| Lagueux, Ronald R.          | 0     | 7               | 0            |
| Singal, George Z.           | 1     | 0               | 0            |
| Perez-Gimenez, Juan M.      | 19    | 75              | 0            |
| Gierbolini-Ortiz,gilberto   | 32    | 50              | 0            |
| Cerezo, Carmen Consuelo     | 1     | 0               | 0            |
| Pieras, Jaime, Jr.          | 19    | 97              | 0            |
| Acosta, Raymond L.          | 20    | 94              | 0            |
| Laffitte, Hector M.         | 2     | 8               | 0            |
| Fuste, Jose Antonio         | 1     | 53              | 0            |
| Casellas, Salvador E.       | 3     | 19              | 0            |
| Dominguez, Daniel R.        | 7     | 0               | 0            |
| Garcia-Gregory, Jay A.      | 5     | 25              | 0            |
| Ward, Robert J.             | 1     | 1               | 0            |
| SUBTOTAL                    | 111   | 429             | 0            |
| DISTRICT TOTAL:             | 111   | 430             | 0            |
| CIRCUIT  TOTAL:             | 310   | 654             | 4            |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                          RUN: 04/13/2004

### U.S. DISTRICT COURT FOR CONNECTICUT

|                          | CASES | MOTIONS PENDING | BENCH TRIALS |
|--------------------------|-------|-----------------|--------------|
| **MAGISTRATE JUDGES**    |       |                 |              |
| Smith, Thomas P.         | 3     | 0               | 0            |
| Margolis, Joan G.        | 1     | 0               | 0            |
| Fitzsimmons, Holly B.    | 5     | 0               | 1            |

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| Martinez, Donna F. | 5 | 2 | 0 |
| Garfinkel, William I. | 15 | 3 | 0 |
| SUBTOTAL | 29 | 5 | 1 |

DISTRICT JUDGES

| Burns, Ellen B. | 16 | 18 | 1 |
| Eginton, Warren W. | 16 | 5 | 0 |
| Dorsey, Peter C. | 3 | 0 | 0 |
| Nevas, Alan H. | 17 | 11 | 0 |
| Covello, Alfred V. | 9 | 2 | 0 |
| Chatigny, Robert N. | 24 | 7 | 1 |
| Squatrito, Dominic J. | 26 | 33 | 1 |
| Thompson, Alvin W. | 62 | 33 | 1 |
| Arterton, Janet Bond | 2 | 0 | 0 |
| Droney, Christopher F. | 50 | 29 | 1 |
| Hall, Janet C. | 5 | 1 | 0 |
| Uderhill, Stefan R. | 30 | 18 | 0 |
| Goettel, Gerard L. | 6 | 11 | 0 |
| SUBTOTAL | 266 | 168 | 5 |

DISTRICT TOTAL: 295 173 6

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003 RUN: 04/13/2004

U.S. DISTRICT COURT FOR NEW YORK NORTHERN

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|

MAGISTRATE JUDGES

| Dibianco, Gustave J. | 4 | 1 | 0 |
| Homer, David R. | 0 | 0 | 0 |
| Sharpe, Gary | 1 | 22 | 0 |
| Peebles, David E. | 0 | 3 | 0 |
| Treece, Randolph F. | 0 | 7 | 0 |
| Kudrle, Larry A. | 0 | 0 | 0 |
| SUBTOTAL | 5 | 33 | 0 |

DISTRICT JUDGES

| Munson, Howard G. | 35 | 65 | 0 |
| McCurn, Neal P. | 8 | 0 | 1 |
| McAvoy, Thomas J. | 33 | 15 | 0 |
| Scullin, Frederick J., Jr. | 28 | 34 | 1 |
| Kahn, Lawrence E. | 80 | 48 | 0 |
| Mordue, Norman A. | 80 | 83 | 0 |
| Hurd, David N. | 55 | 52 | 0 |
| SUBTOTAL | 319 | 297 | 2 |

DISTRICT TOTAL:                                        324        330          2
                                              DISTRICT SUMMARY REPORT
                    AS OF DATE: 09/30/2003                    RUN: 04/13/2004


                            U.S. DISTRICT COURT FOR NEW YORK EASTERN


                                                      MOTIONS        BENCH
                                              CASES   PENDING        TRIALS


            MAGISTRATE JUDGES

            Chrein, Simon A.                     3        0            0
            Azrack, Joan M.                      1        2            0
            Orenstein, Michael L.               1        0            0
            Gold, Steven M.                      4        2            0
            Go, Marilyn                          9        5            0
            Lindsey, Arlene R.                   1        0            0
            Mann, Roanne L.                      0        0            0
            Pohorelsky, Viktor V.                3        1            0
            Levy, Robert M.                      1        0            0
            Boyle, E. Thomas                     2        0            0
            Pollak, Cheryl                      16        6            0
            Wall, William D.                     2        4            0
            Bloom, Lois                          0        3            0

      SUBTOTAL                                  43       23            0


            DISTRICT JUDGES

            Wolle, Charles R.                    2        1            0
            Mishler, Jacob                       1        2            0
            Weinstein, Jack B.                  21        2            0
            Platt, Thomas C., Jr.               72        0            0
            Sifton, Charles P.                  11        1            0
            Glasser, Israel Leo                 42       10            0
            Wexler, Leonard D.                   0        0            0
            Korman, Edward R.                   17        8            0
            Dearie, Raymond J.                  76       32            0
            Spatt, Arthur D.                    35        0            0
            Amon, Carol Bagley                  57       21            0
            Johnson, Sterling, Jr.              43       20            0
            Hurley, Denis R.                    43        1            0
            Trager, David G.                    52        0            0
            Seybert, Joanna                     37        0            0
            Ross, Allyne                        38        4            0
            Gleeson, John                       43        5            0
            Friedman, Bernard A.                 1        0            0
            Block, Frederic                     34        3            0
            Gershon, Nina                       31       26            0
            Garaufis, Nicholas G.               39       27            0
            Sand, Leonard B.                     1        2            0

      SUBTOTAL                                 696      165            0


  DISTRICT TOTAL:                              739      188            0
                                      DISTRICT SUMMARY REPORT
                    AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR NEW YORK SOUTHERN

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Bernikow, Leonard | 0 | 0 | 0 |
| Dolinger, Michael H. | 1 | 34 | 0 |
| Francis, James C. Iv | 2 | 0 | 0 |
| Katz, Theodore H. | 0 | 0 | 0 |
| Ellis, Ronald L. | 0 | 0 | 0 |
| Peck, Andrew J. | 0 | 0 | 0 |
| Smith, Lisa M. | 0 | 0 | 0 |
| Eaton, Douglas F. | 1 | 0 | 0 |
| Pitman, Henry B. | 2 | 0 | 0 |
| Yanthis, George A. | 6 | 4 | 0 |
| Fox, Kevin N. | 4 | 2 | 0 |
| Maas, Frank S. | 4 | 1 | 0 |
| Freeman, Debra C. | 0 | 16 | 0 |
| Gorenstein, Gabriel W. | 0 | 0 | 0 |
| Fox, Mark D. | 2 | 5 | 0 |
| Goldberg, Martin R. | 0 | 0 | 0 |
| SUBTOTAL | 22 | 62 | 0 |
| **DISTRICT JUDGES** | | | |
| Stein, Sidney H. | 8 | 13 | 0 |
| Jones, Barbara S. | 38 | 72 | 1 |
| Rakoff, Jed S. | 13 | 12 | 0 |
| Casey, Richard Conway | 86 | 78 | 0 |
| Hellerstein, Alvin K. | 13 | 3 | 0 |
| Berman, Richard M. | 43 | 18 | 0 |
| McMahon, Colleen | 18 | 39 | 0 |
| Real, Manuel L. | 2 | 0 | 0 |
| Pauley, William H., III | 13 | 10 | 0 |
| Buchwald, Naomi Reice | 11 | 0 | 0 |
| Tsoucalas, Nicholas | 1 | 0 | 0 |
| Marrero, Victor | 11 | 6 | 0 |
| Daniels, George B. | 102 | 289 | 0 |
| Swain, Laura Taylor | 40 | 91 | 0 |
| Lynch, Gerard E. | 7 | 4 | 0 |
| Robinson, Stephen C. | 10 | 0 | 0 |
| Motley, Constance Baker | 8 | 10 | 0 |
| Pollack, Milton | 6 | 0 | 0 |
| Brieant, Charles L., Jr. | 17 | 4 | 0 |
| Knapp, Whitman | 0 | 0 | 0 |
| Griesa, Thomas P. | 113 | 22 | 0 |
| Carter, Robert L. | 4 | 5 | 1 |
| Duffy, Kevin Thomas | 8 | 2 | 0 |
| Conner, William C. | 4 | 0 | 0 |
| Owen, Richard | 65 | 41 | 0 |
| Goettel, Gerard L. | 0 | 0 | 0 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR NEW YORK SOUTHERN

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| Haight, Charles S., Jr. | 13 | 25 | 1 |
| Sweet, Robert W. | 24 | 1 | 0 |
| Sand, Leonard B. | 4 | 3 | 0 |
| Sprizzo, John E. | 53 | 16 | 1 |
| Kram, Shirley Wohl | 5 | 13 | 0 |
| Keenan, John F. | 4 | 3 | 0 |
| Leisure, Peter K. | 7 | 16 | 0 |
| Stanton, Louis L. | 3 | 2 | 0 |
| Cedarbaum, Miriam Goldman | 13 | 0 | 0 |
| Mukasey, Michael B. | 60 | 64 | 0 |
| Wood, Kimba M. | 16 | 30 | 0 |
| Patterson, Robert P., Jr. | 7 | 7 | 0 |
| Martin, John S., Jr. | 1 | 8 | 0 |
| McKenna, Lawrence M. | 122 | 51 | 3 |
| Preska, Loretta A. | 24 | 0 | 0 |
| Batts, Deborah A. | 68 | 78 | 0 |
| Cote, Denise | 12 | 0 | 0 |
| Kaplan, Lewis A. | 112 | 12 | 0 |
| Baer, Harold, Jr. | 1 | 11 | 0 |
| Koeltl, John G. | 14 | 2 | 0 |
| Chin, Denny | 23 | 0 | 0 |
| Scheindlin, Shira Ann | 4 | 1 | 0 |
| SUBTOTAL | 1231 | 1062 | 7 |
| DISTRICT TOTAL: | 1253 | 1124 | 7 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR NEW YORK WESTERN

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Foschio, Leslie G. | 10 | 43 | 0 |
| Scott, Hugh B. | 11 | 0 | 0 |
| Feldman, Jonathan | 18 | 0 | 0 |
| Schroeder, H. Kenneth | 10 | 54 | 0 |
| Payson, Marian W. | 3 | 0 | 0 |
| SUBTOTAL | 52 | 97 | 0 |
| **DISTRICT JUDGES** | | | |
| Curtin, John T. | 37 | 7 | 0 |
| Elfvin, John T. | 29 | 14 | 0 |
| Telesca, Michael A. | 15 | 0 | 0 |
| Larimer, David G. | 36 | 24 | 0 |
| Arcara, Richard J. | 59 | 99 | 0 |
| Skretny, William M. | 17 | 3 | 0 |

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| Siragusa, Charles J. | 27 | 26 | 0 |
| SUBTOTAL | 220 | 173 | 0 |
| DISTRICT TOTAL: | 272 | 270 | 0 |

DISTRICT SUMMARY REPORT
AS OF DATE: 09/30/2003                    RUN: 04/13/2004

## U.S. DISTRICT COURT FOR VERMONT

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Niedermeier, Jerome J. | 0 | 0 | 0 |
| SUBTOTAL | 0 | 0 | 0 |
| **DISTRICT JUDGES** | | | |
| Murtha, J. Garvan | 2 | 0 | 0 |
| Sessions, William K., III | 6 | 0 | 0 |
| SUBTOTAL | 8 | 0 | 0 |
| DISTRICT TOTAL: | 8 | 0 | 0 |
| CIRCUIT TOTAL: | 2891 | 2085 | 15 |

DISTRICT SUMMARY REPORT
AS OF DATE: 09/30/2003                    RUN: 04/13/2004

## U.S. DISTRICT COURT FOR DELAWARE

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Thynge, Mary Pat | 0 | 3 | 0 |
| SUBTOTAL | 0 | 3 | 0 |
| **DISTRICT JUDGES** | | | |
| Latchum, James L. | 0 | 0 | 0 |
| Farnan, Joseph J., Jr. | 16 | 23 | 0 |
| Robinson, Sue L. | 16 | 3 | 3 |
| McKelvie, Roderick R. | 0 | 0 | 0 |
| Sleet, Gregory M. | 7 | 20 | 0 |
| Jordan, Kent A. | 13 | 26 | 0 |
| Wolin, Alfred M. | 0 | 4 | 0 |
| SUBTOTAL | 52 | 76 | 3 |

DISTRICT TOTAL:                                52        79         3

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                          RUN: 04/13/2004

U.S. DISTRICT COURT FOR NEW JERSEY

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Haneke, G. Donald | 0 | 0 | 0 |
| Hedges, Ronald J. | 0 | 0 | 0 |
| Rosen, Joel | 0 | 0 | 0 |
| Hughes, John J. | 0 | 0 | 0 |
| Wigenton, Susan D. | 0 | 0 | 0 |
| Arleo, Madeline Cox | 0 | 0 | 0 |
| Falk, Mark | 0 | 0 | 0 |
| Shwartz, Patty | 0 | 0 | 0 |
| Donio, Ann Marie | 0 | 0 | 0 |
| Knight, Edward R. | 0 | 0 | 0 |
| Mautone, Anthony R. | 0 | 0 | 0 |
| SUBTOTAL | 0 | 0 | 0 |
| **DISTRICT JUDGES** | | | |
| Brotman, Stanley S. | 1 | 1 | 0 |
| Debevoise, Dickinson R. | 6 | 3 | 0 |
| Thompson, Anne E. | 4 | 0 | 0 |
| Ackerman, Harold A. | 10 | 5 | 0 |
| Bissell, John W. | 10 | 2 | 0 |
| Rodriguez, Joseph H. | 1 | 0 | 0 |
| Brown, Garrett E.i, Jr. | 0 | 0 | 0 |
| Wolin, Alfred M. | 4 | 4 | 0 |
| Lifland, John C. | 22 | 75 | 0 |
| Bassler, William G. | 6 | 10 | 0 |
| Cooper, Mary Little | 5 | 4 | 2 |
| Irenas, Joseph E. | 0 | 2 | 0 |
| Simandle, Jerome B. | 7 | 0 | 1 |
| Walls, William H. | 21 | 11 | 0 |
| Greenaway, Joseph A., Jr. | 12 | 4 | 0 |
| Hayden, Katharine S. | 11 | 1 | 0 |
| Hochberg, Faith S. | 0 | 13 | 0 |
| Pisano, Joel A. | 1 | 0 | 0 |
| Cavanaugh, Dennis M. | 16 | 16 | 0 |
| Martini, William J. | 22 | 19 | 0 |
| Linares, Jose L. | 34 | 65 | 0 |
| Chesler, Stanley R. | 10 | 10 | 0 |
| Kugler, Robert B. | 5 | 0 | 0 |
| Wolfson, Freda L. | 3 | 0 | 0 |
| SUBTOTAL | 211 | 245 | 3 |
| DISTRICT TOTAL: | 211 | 245 | 3 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                               RUN: 04/13/2004

U.S. DISTRICT COURT FOR PENNSYLVANIA EASTERN

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Leomporra, Tullio Gene | 0 | 0 | 0 |
| Scuderi, Peter B. | 0 | 0 | 0 |
| Melinson, James R. | 0 | 0 | 0 |
| Angell, M. Faith | 0 | 0 | 0 |
| Smith, Charles B. | 0 | 0 | 0 |
| Rapoport, Arnold C. | 0 | 0 | 0 |
| Welsh, Diane M. | 0 | 0 | 0 |
| Reuter, Thomas J. | 0 | 0 | 0 |
| Wells, Carol Sandra Moore | 0 | 1 | 0 |
| Hart, Jacob P. | 0 | 0 | 0 |
| Caracappa, Linda K. | 0 | 0 | 0 |
| SUBTOTAL | 0 | 1 | 0 |
| **DISTRICT JUDGES** | | | |
| Farnan, Joseph J., Jr. | 0 | 0 | 0 |
| Jordan, Kent A. | 0 | 0 | 0 |
| Fullam, John P. | 7 | 20 | 0 |
| Weiner, Charles R. | 4 | 36 | 0 |
| Troutman, E. Mac | 0 | 1 | 0 |
| Vanartsdalen, Donald W. | 0 | 0 | 0 |
| Ditter, J. William, Jr. | 0 | 0 | 0 |
| Newcomer, Clarence C. | 1 | 9 | 0 |
| Green, Clifford Scott | 7 | 0 | 0 |
| Pollak, Louis H. | 13 | 11 | 0 |
| Shapiro, Norma L. | 2 | 4 | 0 |
| Giles, James T. | 24 | 1 | 0 |
| O'Neill, Thomas N., Jr. | 4 | 1 | 0 |
| Kelly, James M. | 3 | 0 | 0 |
| Katz, Marvin | 0 | 0 | 0 |
| Ludwig, Edmund V. | 2 | 0 | 0 |
| Kelly, Robert F. | 5 | 0 | 0 |
| Van Antwerpen, Franklin S | 1 | 1 | 0 |
| Reed, Lowell A., Jr. | 0 | 0 | 0 |
| Dubois, Jan E. | 5 | 9 | 0 |
| Hutton, Herbert J. | 4 | 0 | 0 |
| Buckwalter, Ronald L. | 4 | 1 | 0 |
| Bartle, Harvey, III | 166 | 1 | 0 |
| Yohn, William H., Jr. | 0 | 4 | 0 |
| Dalzell, Stewart | 0 | 0 | 0 |
| Padova, John R. | 0 | 0 | 0 |
| Joyner, J. Curtis | 6 | 0 | 0 |
| Robreno, Eduardo C. | 2 | 4 | 0 |
| Brody, Anita B. | 5 | 0 | 0 |
| Kauffman, Bruce W. | 8 | 0 | 0 |
| McLaughlin, Mary A. | 6 | 2 | 0 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR PENNSYLVANIA EASTERN

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| Tucker, Petrese B. | 16 | 8 | 0 |
| Schiller, Berle M. | 3 | 1 | 0 |
| Surrick, R. Barclay | 27 | 53 | 1 |
| Davis, Legrome D. | 0 | 5 | 0 |
| Baylson, Michael M. | 1 | 1 | 0 |
| Rufe, Cynthia M. | 0 | 0 | 0 |
| Savage, Timothy J. | 2 | 10 | 0 |
| Gardner, James Knoll | 4 | 3 | 0 |
| Unassigned | 0 | 5 | 2 |
| SUBTOTAL | 332 | 191 | 3 |
| DISTRICT TOTAL: | 332 | 192 | 3 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR PENNSYLVANIA MIDDLE

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Smyser, J. Andrew | 0 | 0 | 0 |
| Blewitt, Thomas M. | 2 | 0 | 0 |
| Mannion, Malachy E. | 0 | 2 | 0 |
| Askey, William H. | 0 | 0 | 0 |
| SUBTOTAL | 2 | 2 | 0 |
| **DISTRICT JUDGES** | | | |
| Nealon, William J., Jr. | 1 | 0 | 0 |
| Muir, Malcolm | 0 | 0 | 0 |
| Conaboy, Richard P. | 0 | 0 | 0 |
| Rambo, Sylvia H. | 4 | 2 | 0 |
| Caldwell, William W. | 0 | 0 | 0 |
| Kosik, Edwin M. | 1 | 0 | 0 |
| Sleet, Gregory M. | 1 | 0 | 0 |
| McClure, James Focht, Jr. | 12 | 49 | 0 |
| Vanaskie, Thomas I. | 7 | 32 | 0 |
| Caputo, A. Richard | 5 | 36 | 0 |
| Munley, James M. | 3 | 17 | 0 |
| Kane, Yvette | 6 | 14 | 0 |
| Conner, Christopher C. | 3 | 6 | 0 |
| Jones, John E., III | 2 | 1 | 0 |
| SUBTOTAL | 45 | 157 | 0 |

DISTRICT TOTAL:                                    47      159      0
                                           DISTRICT SUMMARY REPORT
                    AS OF DATE: 09/30/2003           RUN: 04/13/2004

                    U.S. DISTRICT COURT FOR PENNSYLVANIA WESTERN

                                           MOTIONS        BENCH
                                  CASES    PENDING        TRIALS


          MAGISTRATE JUDGES

          Sensenich, Ila Jeanne           1        0         1
          Mitchell, Robert C.             2        0         0
          Caiazza, Francis X.            1        0         0
          Baxter, Susan Paradise          0        0         0
          Hay, Amy R.                     1        0         0
          Pesto, Keith A.                 1        3         0

     SUBTOTAL                             6        3         1


          DISTRICT JUDGES

          Fullam, John P.               19        0         0
          Cohill, Maurice B., Jr.       17       46         1
          Diamond, Gustave               1        0         0
          Bloch, Alan N.                 0        2         0
          Standish, William L.          26       78         1
          Ambrose, Donetta W.           16        0         0
          Lancaster, Gary L.            20       18         0
          Cindrich, Robert J.           26       21         1
          McLaughlin, Sean J.            4        2         0
          Conti, Joy Flowers             7        9         0
          Cercone, David Stewart         8       31         0
          McVerry, Terrence F.           3       24         0
          Schwab, Arthur J.              8        0         0

     SUBTOTAL                           155      231         3


DISTRICT TOTAL:                          161      234         4
                                     DISTRICT SUMMARY REPORT
                    AS OF DATE: 09/30/2003          RUN: 04/13/2004

                    U.S. DISTRICT COURT FOR VIRGIN ISLANDS

                                           MOTIONS        BENCH
                                  CASES    PENDING        TRIALS


          MAGISTRATE JUDGES

          Barnard, Geoffrey W.           0       32         0
          Resnick, Jeffrey L.            0        0         0

     SUBTOTAL                            0       32         0


          DISTRICT JUDGES

| | | | |
|---|---|---|---|
| Moore, Thomas K. | 114 | 30 | 0 |
| Finch, Raymond L. | 74 | 12 | 0 |
| Brotman, Stanley S. | 5 | 6 | 0 |
| Giles, James T. | 1 | 0 | 0 |
| Dubois, Jan E. | 0 | 1 | 0 |
| Unassigned | 6 | 3 | 0 |
| SUBTOTAL | 200 | 52 | 0 |
| DISTRICT TOTAL: | 200 | 84 | 0 |
| CIRCUIT TOTAL: | 1003 | 993 | 13 |

DISTRICT SUMMARY REPORT
AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR MARYLAND

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| MAGISTRATE JUDGES | | | |
| Schulze, Jillyn K. | 0 | 0 | 0 |
| Connelly, William G. | 0 | 0 | 0 |
| Gauvey, Susan K. | 0 | 0 | 0 |
| Grimm, Paul W | 1 | 0 | 0 |
| Day, Charles Bernard | 0 | 0 | 0 |
| Bredar, James K. | 0 | 0 | 0 |
| Gesner, Beth P. | 0 | 0 | 0 |
| Laws, Victor H., III | 0 | 0 | 0 |
| Digirolamo, Thomas M. | 0 | 0 | 0 |
| SUBTOTAL | 1 | 0 | 0 |
| DISTRICT JUDGES | | | |
| Motz, J. Frederick | 52 | 0 | 0 |
| Smalkin, Frederic N. | 0 | 0 | 0 |
| Garbis, Marvin J. | 5 | 0 | 0 |
| Nickerson, William M. | 3 | 0 | 0 |
| Legg, Benson Everett | 8 | 0 | 0 |
| Chasanow, Deborah K. | 1 | 0 | 0 |
| Messitte, Peter J. | 2 | 0 | 0 |
| Williams, Alexander, Jr. | 1 | 0 | 0 |
| Davis, Andre M. | 2 | 0 | 0 |
| Blake, Catherine C. | 5 | 1 | 0 |
| Quarles, William D., Jr. | 6 | 0 | 0 |
| Bennett, Richard D. | 1 | 0 | 0 |
| SUBTOTAL | 86 | 1 | 0 |
| DISTRICT TOTAL: | 87 | 1 | 0 |

DISTRICT SUMMARY REPORT
AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR NO  CAROLINA EASTERN

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Mason, William N. | 0 | 0 | 0 |
| Webb, William A. | 0 | 4 | 0 |
| Daniel, David W. | 0 | 0 | 0 |
| SUBTOTAL | 0 | 4 | 0 |
| **DISTRICT JUDGES** | | | |
| Britt, W. Earl | 5 | 29 | 0 |
| Fox, James C. | 10 | 33 | 0 |
| Boyle, Terrence William | 2 | 12 | 0 |
| Howard, Malcolm J. | 5 | 41 | 0 |
| Flanagan, Louise W. | 0 | 0 | 0 |
| SUBTOTAL | 22 | 115 | 0 |
| DISTRICT TOTAL: | 22 | 119 | 0 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR NO  CAROLINA MIDDLE

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Eliason, Russell A. | 0 | 11 | 0 |
| Sharp, Trevor P. | 4 | 14 | 0 |
| Dixon, Wallace W. | 0 | 1 | 0 |
| SUBTOTAL | 4 | 26 | 0 |
| **DISTRICT JUDGES** | | | |
| Erwin, Richard C. | 0 | 0 | 0 |
| Bullock, Frank W., Jr. | 4 | 33 | 0 |
| Tilley, N. Carlton, Jr. | 21 | 75 | 1 |
| Osteen, William L., Sr. | 7 | 75 | 0 |
| Beaty, James A., Jr. | 12  1 | 52 | 0 |
| Unassigned | 1 | 0 | 0 |
| SUBTOTAL | 45 | 335 | 1 |
| DISTRICT TOTAL: | 49 | 361 | 1 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR NO CAROLINA WESTERN

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** |  |  |  |
| Horn, Carl, III | 1 | 2 | 0 |
| Cogburn, Max O. | 0 | 0 | 0 |
| Swearingen, E. S. | 0 | 0 | 0 |
| SUBTOTAL | 1 | 2 | 0 |
| **DISTRICT JUDGES** |  |  |  |
| Voorhees, Richard L. | 9 | 17 | 0 |
| Mullen, Graham Calder | 18 | 119 | 0 |
| Thornburg, Lacy H. | 0 | 0 | 0 |
| McKnight, H. Brent | 8 | 0 | 0 |
| SUBTOTAL | 35 | 136 | 0 |
| **DISTRICT TOTAL:** | 36 | 138 | 0 |

DISTRICT SUMMARY REPORT
AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR SOUTH CAROLINA

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** |  |  |  |
| Carr, Robert S. | 0 | 0 | 0 |
| Catoe, William M., Jr. | 0 | 0 | 0 |
| McCrorey, Joseph R. | 0 | 0 | 0 |
| Marchant, Bristow | 0 | 0 | 0 |
| Kosko, George C. | 0 | 0 | 0 |
| Rogers, Thomas Edward, III | 0 | 0 | 0 |
| Hendricks, Bruce Howe | 0 | 0 | 0 |
| Buchanan, Robert L., Jr. | 0 | 0 | 0 |
| SUBTOTAL | 0 | 0 | 0 |
| **DISTRICT JUDGES** |  |  |  |
| Blatt, Solomon, Jr. | 5 | 11 | 0 |
| Perry, Matthew J., Jr. | 7 | 23 | 1 |
| Hawkins, Falcon B. | 0 | 0 | 0 |
| Houck, C. Weston | 22 | 171 | 0 |
| Anderson, George Ross, Jr. | 1 | 0 | 0 |
| Anderson, Joseph F., Jr. | 4 | 3 | 0 |
| Norton, David C. | 2 | 1 | 0 |
| Herlong, Henry M., Jr. | 0 | 0 | 0 |

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| Currie, Cameron McGowan | 4 | 2 | 0 |
| Duffy, Patrick Michael | 11 | 8 | 0 |
| Seymour, Margaret B. | 0 | 1 | 0 |
| Wooten, Terry L. | 3 | 1 | 0 |
| Floyd, Henry F. | 0 | 0 | 0 |
| Cook, Julian Abele, Jr. | 1 | 0 | 0 |
| SUBTOTAL | 60 | 221 | 1 |
| DISTRICT TOTAL: | 60 | 221 | 1 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR VIRGINIA EASTERN

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Lowe, David G. | 0 | 0 | 0 |
| Sewell, W. Curtis | 0 | 0 | 0 |
| Miller, Tommy E. | 0 | 0 | 0 |
| Prince, William T. | 0 | 0 | 0 |
| Bradberry, James E. | 0 | 1 | 0 |
| Poretz, Barry R. | 0 | 0 | 0 |
| Jones, Thomas R., Jr. | 0 | 0 | 0 |
| Buchanan, Theresa C. | 0 | 0 | 0 |
| Dohnal, Dennis | 1 | 4 | 0 |
| Stillman, F. Bradford | 0 | 1 | 0 |
| O'Grady, Liam | 0 | 0 | 0 |
| SUBTOTAL | 1 | 6 | 0 |
| **DISTRICT JUDGES** | | | |
| Bryan, Albert V., Jr. | 0 | 0 | 0 |
| Williams, Richard L. | 0 | 2 | 0 |
| Cacheris, James C. | 0 | 0 | 0 |
| Doumar, Robert G. | 0 | 4 | 0 |
| Hilton, Claude M. | 1 | 0 | 0 |
| Spencer, James R. | 1 | 2 | 0 |
| Ellis, Thomas Selby, III | 0 | 0 | 0 |
| Smith, Rebecca Beach | 0 | 0 | 0 |
| Morgan, Henry Coke, Jr. | 0 | 0 | 0 |
| Payne, Robert E. | 0 | 0 | 0 |
| Brinkema, Leonie M. | 0 | 0 | 0 |
| Jackson, Raymond Alvin | 0 | 0 | 0 |
| Friedman, Jerome B. | 1 | 4 | 0 |
| Lee, Gerald Bruce | 0 | 0 | 0 |
| Hudson, Henry E. | 0 | 0 | 0 |
| SUBTOTAL | 3 | 12 | 0 |
| DISTRICT TOTAL: | 4 | 18 | 0 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR VIRGINIA WESTERN

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Conrad, Glen E. | 0 | 6 | 0 |
| Crigler, B. Waugh | 0 | 0 | 0 |
| Sargent, Pamela M. | 0 | 0 | 0 |
| SUBTOTAL | 0 | 6 | 0 |
| **DISTRICT JUDGES** | | | |
| Turk, James C. | 9 | 53 | 0 |
| Williams, Glen M. | 10 | 5 | 0 |
| Michael, James H., Jr. | 1 | 1 | 0 |
| Kiser, Jackson L. | 1 | 42 | 0 |
| Wilson, Samuel Grayson | 0 | 0 | 0 |
| Jones, James Parker | 1 | 0 | 0 |
| Moon, Norman K. | 4 | 4 | 0 |
| SUBTOTAL | 26 | 105 | 0 |
| DISTRICT TOTAL: | 26 | 111 | 0 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR W VIRGINIA NORTHERN

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Seibert, James E. | 0 | 0 | 0 |
| Kaull, John S. | 0 | 2 | 0 |
| Joel, David J. | 0 | 0 | 0 |
| SUBTOTAL | 0 | 2 | 0 |
| **DISTRICT JUDGES** | | | |
| Maxwell, Robert Earl | 15 | 15 | 0 |
| Stamp, Frederick P., Jr. | 1 | 0 | 0 |
| Keeley, Irene M. | 0 | 0 | 0 |
| Broadwater, W. Craig | 3 | 22 | 0 |
| Williams, Richard L. | 0 | 4 | 0 |
| SUBTOTAL | 19 | 41 | 0 |

DISTRICT TOTAL:                                    19        43        0

                                          DISTRICT SUMMARY REPORT
                   AS OF DATE: 09/30/2003              RUN: 04/13/2004

                        U.S. DISTRICT COURT FOR W  VIRGINIA SOUTHERN

                                              MOTIONS      BENCH
                                   CASES      PENDING      TRIALS


          MAGISTRATE JUDGES

          Taylor, Maurice G. Jr.        0         0          0
          Hogg, Jerry D.               0         0          0
          Stanley, Mary E.             0         0          0
          Vandervort, R. Clarke        0         0          0

     SUBTOTAL                           0         0          0


          DISTRICT JUDGES

          Haden, Charles H., II        0         0          0
          Copenhaver, John T., Jr.     3        37          0
          Staker, Robert J.            0         0          0
          Hallanan, Elizabeth V.       0         0          0
          Faber, David A.              0         0          0
          Goodwin, Joseph R.           0         0          0
          Chambers, Robert C.          2         0          0

     SUBTOTAL                           5        37          0


 DISTRICT TOTAL:                        5        37          0

 CIRCUIT  TOTAL:                      308      1049          2

                                          DISTRICT SUMMARY REPORT
                   AS OF DATE: 09/30/2003              RUN: 04/13/2004

                        U.S. DISTRICT COURT FOR LOUISIANA EASTERN

                                              MOTIONS      BENCH
                                   CASES      PENDING      TRIALS


          MAGISTRATE JUDGES

          Chasez, Alma                 0         0          0
          Moore, Louis, Jr.            0         0          0
          Wilkinson, Joseph C., Jr.    0         0          0
          Shushan, Sally               0         0          0
          Roby, Karen Wells            0         0          0
          Knowles, Daniel E., III      0         2          0

     SUBTOTAL                           0         2          0


          DISTRICT JUDGES

          Duplantier, Adrian G.        0         0          0

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| Beer, Peter | 1 | 2 | 0 |
| McNamara, A. J. | 0 | 0 | 0 |
| Feldman, Martin L. C. | 1 | 0 | 0 |
| Livaudais, Marcel, Jr. | 2 | 0 | 0 |
| Berrigan, Helen G. | 1 | 2 | 0 |
| Duval, Stanwood R., Jr. | 2 | 0 | 0 |
| Vance, Sarah S. | 2 | 3 | 0 |
| Porteous, G. Thomas, Jr. | 2 | 4 | 1 |
| Fallon, Eldon E. | 20 | 0 | 0 |
| Lemmon, Mary Ann Vial | 2 | 8 | 0 |
| Lemelle, Ivan L. R. | 3 | 2 | 0 |
| Barbier, Carl J. | 0 | 0 | 0 |
| Engelhardt, Kurt D. | 0 | 1 | 1 |
| Zainey, Jay C. | 2 | 2 | 0 |
| Africk, Lance M. | 1 | 15 | 0 |
| SUBTOTAL | 39 | 39 | 2 |
| DISTRICT TOTAL: | 39 | 41 | 2 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003          RUN: 04/13/2004

U.S. DISTRICT COURT FOR LOUISIANA MIDDLE

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Riedlinger, Stephen C. | 0 | 3 | 0 |
| Noland, Christine | 0 | 6 | 0 |
| Dalby, Docia L. | 0 | 0 | 0 |
| SUBTOTAL | 0 | 9 | 0 |
| **DISTRICT JUDGES** | | | |
| Parker, John V. | 1 | 10 | 0 |
| Polozola, Frank J. | 3 | 1 | 0 |
| Tyson, Ralph E. | 7813 | 22 | 1 |
| Brady, James J. | 8 | 2 | 0 |
| SUBTOTAL | 7825 | 35 | 1 |
| DISTRICT TOTAL: | 7825 | 44 | 1 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003          RUN: 04/13/2004

U.S. DISTRICT COURT FOR LOUISIANA WESTERN

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |

|                        |     |     |     |
|------------------------|-----|-----|-----|
| Methvin, Mildred E.    | 0   | 0   | 0   |
| Payne, Roy S.          | 1   | 1   | 0   |
| Wilson, Alonzo P.      | 2   | 0   | 0   |
| Kirk, James D.         | 2   | 2   | 0   |
| Hill, Charles M.       | 0   | 0   | 0   |
| Hayes, Karen           | 0   | 1   | 0   |
| Shemwell, Robert       | 0   | 0   | 0   |
| SUBTOTAL               | 5   | 4   | 0   |

### DISTRICT JUDGES

|                         |     |     |     |
|-------------------------|-----|-----|-----|
| Stagg, Tom              | 1   | 1   | 0   |
| Little, F. A., Jr.      | 6   | 18  | 0   |
| Walter, Donald E.       | 3   | 5   | 1   |
| Haik, Richard T.        | 37  | 20  | 0   |
| Trimble, James T., Jr.  | 22  | 2   | 0   |
| Doherty, Rebecca F.     | 4   | 0   | 0   |
| Melancon, Tucker L.     | 2   | 0   | 0   |
| James, Robert G.        | 2   | 1   | 0   |
| Drell, Dee D.           | 5   | 0   | 0   |
| Hicks, S. Maurice, Jr.  | 3   | 0   | 0   |
| Minaldi, Patricia H.    | 3   | 0   | 0   |
| SUBTOTAL                | 88  | 47  | 1   |

| DISTRICT TOTAL: | 93 | 51 | 1 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                RUN: 04/13/2004

U.S. DISTRICT COURT FOR MISSISSIPPI NORTHERN

|                      | CASES | MOTIONS PENDING | BENCH TRIALS |
|----------------------|-------|-----------------|--------------|

### MAGISTRATE JUDGES

|                    |     |     |     |
|--------------------|-----|-----|-----|
| Davis, Jerry A.    | 4   | 0   | 0   |
| Alexander, Allan   | 4   | 0   | 0   |
| Bogen, Eugene M.   | 2   | 7   | 0   |
| SUBTOTAL           | 10  | 7   | 0   |

### DISTRICT JUDGES

|                       |     |     |     |
|-----------------------|-----|-----|-----|
| Biggers, Neal         | 2   | 7   | 0   |
| Davidson, Glen H.     | 12  | 1   | 0   |
| Pepper, W. Allen, Jr. | 5   | 5   | 0   |
| Mills, Michael P.     | 1   | 1   | 0   |
| SUBTOTAL              | 20  | 14  | 0   |

| DISTRICT TOTAL: | 30 | 21 | 0 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                RUN: 04/13/2004

U.S. DISTRICT COURT FOR MISSISSIPPI SOUTHERN

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Roper, John M. | 0 | 0 | 0 |
| Nicols, Alfred G., Jr. | 0 | 0 | 0 |
| Sumner, James C. | 0 | 0 | 0 |
| Guirola, Louis, Jr. | 3 | 0 | 0 |
| SUBTOTAL | 3 | 0 | 0 |
| **DISTRICT JUDGES** | | | |
| Russell, Dan M., Jr. | 0 | 0 | 0 |
| Senter, L. T., Jr. | 0 | 26 | 0 |
| Barbour, William Henry, Jr. | 3 | 30 | 0 |
| Lee, Tom S. | 3 | 7 | 0 |
| Wingate, Henry T. | 17 | 38 | 2 |
| Gex, Walter J., III | 1 | 4 | 0 |
| Pickering, Charles W., Sr. | 9  1 | 13 | 0 |
| Bramlette, David | 2 | 6 | 0 |
| SUBTOTAL | 35 | 224 | 2 |
| DISTRICT TOTAL: | 38 | 224 | 2 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003               RUN: 04/13/2004

U.S. DISTRICT COURT FOR TEXAS NORTHERN

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Sanderson, William F. | 0 | 2 | 0 |
| Warnick, J. Q. Jr. | 0 | 0 | 0 |
| Averitte, Clinton E. | 0 | 0 | 0 |
| Kaplan, Jeffrey A. | 1 | 0 | 0 |
| Bleil, Charles M. | 0 | 0 | 0 |
| Stickney, Paul D. | 1 | 0 | 0 |
| Koenig, Nancy M. | 0 | 0 | 0 |
| Ramirez, Irma C. | 1 | 0 | 0 |
| Lane, Philip R. | 0 | 0 | 0 |
| Roach, Robert K. | 0 | 0 | 0 |
| SUBTOTAL | 3 | 2 | 0 |
| **DISTRICT JUDGES** | | | |
| Sanders, Barefoot | 2 | 0 | 0 |

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| Robinson, Mary Lou | 4 | 0 | 0 |
| Ward, T. John | 0 | 0 | 0 |
| Buchmeyer, Jerry | 5 | 20 | 1 |
| Fish, A. Joe | 0 | 0 | 0 |
| Maloney, Robert B. | 0 | 3 | 0 |
| Fitzwater, Sidney A. | 2 | 0 | 0 |
| Cummings, Samuel Ray | 0 | 0 | 0 |
| McBryde, John H. | 0 | 0 | 0 |
| Solis, Jorge A. | 6 | 15 | 0 |
| Means, Terry | 3 | 0 | 0 |
| Lindsay, Sam A. | 8 | 7 | 2 |
| Lynn, Barbara M. G. | 7 | 1 | 0 |
| Godbey, David C. | 3 | 0 | 0 |
| Kinkeade, James Edgar | 0 | 0 | 0 |
| SUBTOTAL | 40 | 46 | 3 |
| | | | |
| DISTRICT TOTAL: | 43 | 48 | 3 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR TEXAS EASTERN

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| McKee, Harry W. | 1 | 0 | 0 |
| Hines, Earl S. | 0 | 0 | 0 |
| Guthrie, Judith K. | 0 | 0 | 0 |
| Radford, Wendell C. | 1 | 0 | 0 |
| Craven, Carolyn M. | 1 | 0 | 0 |
| Bush, Don D. | 1 | 0 | 0 |
| SUBTOTAL | 4 | 0 | 0 |
| | | | |
| **DISTRICT JUDGES** | | | |
| Justice, William Wayne | 0 | 0 | 0 |
| Steger, William M. | 0 | 0 | 0 |
| Cobb, Howell | 0 | 0 | 0 |
| Brown, Paul N. | 5 | 2 | 0 |
| Schell, Richard A. | 12 | 6 | 0 |
| Folsom, David | 5 | 1 | 0 |
| Heartfield, Thad | 0 | 6 | 0 |
| Ward, T. John | 2 | 4 | 0 |
| Davis, Leonard E. | 0 | 6 | 0 |
| Clark, Ron | 1 | 0 | 0 |
| Unassigned | 2 | 15 | 0 |
| SUBTOTAL | 27 | 40 | 0 |
| | | | |
| DISTRICT TOTAL: | 31 | 40 | 0 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR TEXAS SOUTHERN

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Botley, Calvin | 0 | 0 | 0 |
| Notzon, Marcel C. | 0 | 0 | 0 |
| Garza, Fidencio G., Jr. | 0 | 0 | 0 |
| Stacy, Frances | 0 | 0 | 0 |
| Johnson, Nancy K. | 0 | 0 | 0 |
| Froeschner, John R. | 3 | 3 | 1 |
| Crone, Marcia A. | 0 | 0 | 0 |
| Ormsby, Peter E. | 0 | 0 | 0 |
| Black, John W. | 0 | 2 | 0 |
| Milloy, Maryrose | 0 | 0 | 0 |
| Ramos, Dorina | 0 | 0 | 0 |
| Ellington, B. Janice | 1 | 0 | 0 |
| Cooper-Hill, Jane | 0 | 0 | 0 |
| Recio, Felix, Jr. | 0 | 0 | 0 |
| Arce-Flores, Adriana | 0 | 0 | 0 |
| Unassigned Usm | 3 | 2 | 0 |
| SUBTOTAL | 7 | 7 | 1 |
| **DISTRICT JUDGES** | | | |
| Kazen, George P. | 1 | 0 | 0 |
| Vela, Filemon B. | 1 | 2 | 0 |
| Head, Hayden W., Jr. | 3 | 2 | 0 |
| Hinojosa, Ricardo H. | 7 | 1 | 0 |
| Hughes, Lynn N. | 11 | 60 | 0 |
| Hittner, David | 0 | 0 | 0 |
| Hoyt, Kenneth M. | 2 | 1 | 0 |
| Lake, Simeon Timothy, III | 0 | 0 | 0 |
| Harmon, Melinda | 5 | 37 | 1 |
| Rainey, John D. | 9 | 1 | 0 |
| Kent, Samuel B. | 4 | 2 | 0 |
| Werlein, Ewing, Jr. | 3 | 0 | 0 |
| Rosenthal, Lee H. | 1 | 0 | 0 |
| Jack, Janis Graham | 0 | 0 | 0 |
| Gilmore, Vanessa D. | 2 | 0 | 0 |
| Atlas, Nancy F. | 1 | 1 | 0 |
| Tagle, Hilda G. | 2 | 4 | 0 |
| Ellison, Keith P. | 0 | 0 | 0 |
| Crane, Randy | 4 | 1 | 0 |
| Hanen, Andrew S. | 0 | 4 | 0 |
| SUBTOTAL | 56 | 116 | 1 |
| DISTRICT TOTAL: | 63 | 123 | 2 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR TEXAS WESTERN

|                          | CASES | MOTIONS PENDING | BENCH TRIALS |
|--------------------------|-------|-----------------|--------------|
| **MAGISTRATE JUDGES**    |       |                 |              |
| Edwards, Durwood         | 0     | 0               | 0            |
| Green, Dennis G.         | 0     | 0               | 0            |
| Capelle, Stephen         | 1     | 0               | 0            |
| Primomo, John C.         | 0     | 0               | 0            |
| Nowak, Nancy S.          | 1     | 0               | 0            |
| Mesa, Richard            | 0     | 0               | 0            |
| McDonald, Michael S.     | 0     | 0               | 0            |
| Platt, L. Stuart         | 0     | 1               | 0            |
| Mathy, Pamela Ann        | 0     | 0               | 0            |
| Austin, Andrew W.        | 0     | 0               | 0            |
| Ludlum, Alia Moses       | 0     | 0               | 0            |
| Garney, Norbert J.       | 0     | 0               | 0            |
| Manske, Jeffrey C.       | 0     | 0               | 0            |
| Pitman, Robert L.        | 0     | 0               | 0            |
| Deaton, William W, Jr.   | 0     | 0               | 0            |
| **SUBTOTAL**             | 2     | 1               | 0            |
| **DISTRICT JUDGES**      |       |                 |              |
| Justice, William Wayne   | 7     | 0               | 0            |
| Hudspeth, Harry Lee      | 1     | 2               | 0            |
| Restani, Jane A.         | 0     | 3               | 0            |
| Nowlin, James R.         | 2     | 0               | 0            |
| Prado, Edward C.         | 0     | 0               | 0            |
| Smith, Walter S., Jr.    | 1     | 3               | 0            |
| Sparks, Sam              | 0     | 0               | 0            |
| Furgeson, W. Royal, Jr.  | 5     | 14              | 0            |
| Garcia, Orlando L.       | 1     | 4               | 0            |
| Biery, Samuel F., Jr.    | 4     | 10              | 0            |
| Briones, David           | 0     | 0               | 0            |
| Martinez, Philip R.      | 0     | 0               | 0            |
| Ludlum, Alia Moses       | 0     | 0               | 0            |
| Junell, Robert A.        | 5     | 1               | 0            |
| Cardone, Kathleen        | 0     | 0               | 0            |
| Yeakel, Earl L., III     | 0     | 0               | 0            |
| Montalvo, Frank          | 0     | 0               | 0            |
| Rodriguez, Xavier        | 6     | 0               | 0            |
| **SUBTOTAL**             | 32    | 37              | 0            |
| **DISTRICT TOTAL:**      | 34    | 38              | 0            |
| **CIRCUIT TOTAL:**       | 8196  | 630             | 11           |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR KENTUCKY EASTERN

|       | CASES | MOTIONS PENDING | BENCH TRIALS |
|-------|-------|-----------------|--------------|

```
                    MAGISTRATE JUDGES

                    Patterson, Peggy P.            0        2        0
                    Wehrman, J. Gregory           0        0        0
                    Todd, James B.                0        0        0
                    Johnson, J. B., Jr.           0        0        0

        SUBTOTAL                                  0        2        0


                    DISTRICT JUDGES

                    Siler, Eugene E., Jr.         1        0        0
                    Wiseman, Thomas A., Jr.       0        0        1
                    Bertelsman, William O.        4        6        0
                    Unthank, G. Wix               0        0        0
                    Wilhoit, Henry R., Jr.        2        3        0
                    Forester, Karl S.            0        0        0
                    Hood, Joseph M.              3        2        0
                    Coffman, Jennifer B.         1        0        0
                    Caldwell, Karen K.           5        8        0
                    Russell, Thomas B.           0        3        0
                    Reeves, Danny C.             3        0        0
                    Bunning, David L.            4        9        0

        SUBTOTAL                                 23       31        1


DISTRICT TOTAL:                                  23       33        1
```

DISTRICT SUMMARY REPORT
                    AS OF DATE: 09/30/2003                  RUN: 04/13/2004

U.S. DISTRICT COURT FOR KENTUCKY WESTERN

|  |  | MOTIONS | BENCH |
|---|---|---|---|
|  | CASES | PENDING | TRIALS |

```
                    MAGISTRATE JUDGES

                    King, William D.              0        0        0
                    Gambill, C. Cleveland         0        0        0
                    Moyer, James D.               1        0        0
                    Goebel, E. Robert             0        0        0

        SUBTOTAL                                  1        0        0


                    DISTRICT JUDGES

                    Johnstone, Edward H.          0        0        0
                    Simpson, Charles R., III     19        0        0
                    Coffman, Jennifer B.          3        0        0
                    Heyburn, John G., II          5        1        0
                    Russell, Thomas B.            3        1        0
                    McKinley, Joseph H., Jr.      7        0        0
                    Unassigned                    0        0        1
```

```
        SUBTOTAL                            37        2        1


DISTRICT TOTAL:                            38        2        1
                              DISTRICT SUMMARY REPORT
            AS OF DATE: 09/30/2003            RUN: 04/13/2004

                  U.S. DISTRICT COURT FOR MICHIGAN EASTERN

                                     MOTIONS    BENCH
                              CASES  PENDING    TRIALS


        MAGISTRATE JUDGES

        Carlson, Thomas A.        0        0        0
        Pepe, Steven D.           0        0        0
        Binder, Charles E.        0        0        0
        Morgan, Virginia          0        0        0
        Scheer, Donald A.         0        1        0
        Capel, Wallace, Jr.       0        0        0
        Whalen, R. Steven         0        0        0
        Komives, Paul J.          0        0        0

        SUBTOTAL                  0        1        0


        DISTRICT JUDGES

        Keith, Damon J.           1        1        0
        Feikens, John             3        8        0
        Cook, Julian Abele, Jr.   5        0        0
        Newblatt, Stewart A.      0        0        0
        Cohn, Avern               1        0        0
        Taylor, Anna Diggs        0        0        0
        Woods, George E.         12        0        0
        Zatkoff, Lawrence P.      0        0        0
        Duggan, Patrick J.        3        3        0
        Friedman, Bernard A.      3        0        0
        Gadola, Paul V.           3        2        0
        Rosen, Gerald E.          7       11        1
        Cleland, Robert H.        0        0        0
        Edmunds, Nancy G.        17        0        0
        Hood, Denise Page         8       14        2
        Borman, Paul D.           3        5        0
        O'Meara, John Corbett     3        0        0
        Tarnow, Arthur J.         1        4        0
        Steeh, George Caram, III  0        0        0
        Roberts, Victoria A.      2        0        0
        Battani, Marianne O.      1        0        0
        Lawson, David M.         11       18        1

        SUBTOTAL                 84       66        4


DISTRICT TOTAL:                   84       67        4
                              DISTRICT SUMMARY REPORT
            AS OF DATE: 09/30/2003            RUN: 04/13/2004

                  U.S. DISTRICT COURT FOR MICHIGAN WESTERN
```

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Brenneman, Hugh W. Jr. | 0 | 0 | 0 |
| Scoville, Joseph G. | 0 | 0 | 0 |
| Greeley, Timothy P. | 0 | 0 | 0 |
| Carmody, Ellen | 0 | 0 | 0 |
| SUBTOTAL | 0 | 0 | 0 |
| **DISTRICT JUDGES** | | | |
| Miles, Wendell A. | 1 | 4 | 0 |
| Hillman, Douglas W. | 0 | 0 | 0 |
| Enslen, Richard A. | 7 | 0 | 0 |
| Bell, Robert Holmes | 4 | 4 | 0 |
| McKeague, David W. | 2 | 0 | 0 |
| Quist, Gordon J. | 2 | 3 | 0 |
| SUBTOTAL | 16 | 11 | 0 |
| **DISTRICT TOTAL:** | 16 | 11 | 0 |

DISTRICT SUMMARY REPORT
AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR OHIO NORTHERN

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Streepy, Jack B. | 0 | 0 | 0 |
| Perelman, David S. | 0 | 4 | 0 |
| Gallas, James S. | 0 | 2 | 0 |
| Hemann, Patricia A. | 0 | 0 | 0 |
| Armstrong, Vernelis K. | 0 | 0 | 0 |
| Vecchiarelli, Nancy A. | 0 | 2 | 0 |
| Thomas, James D. | 0 | 0 | 0 |
| Limbert, George J. | 1 | 2 | 0 |
| Baughman, William H. | 1 | 6 | 0 |
| SUBTOTAL | 2 | 16 | 0 |
| **DISTRICT JUDGES** | | | |
| Manos, John M. | 3 | 30 | 0 |
| Aldrich, Ann | 4 | 5 | 0 |
| Potter, John W. | 0 | 0 | 0 |
| Dowd, David D., Jr. | 0 | 5 | 0 |
| Bell, Sam H. | 0 | 0 | 0 |
| Matia, Paul R. | 2 | 11 | 0 |

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| Wells, Lesley Brooks | 11 | 32 | 0 |
| Carr, James G. | 4 | 7 | 0 |
| Oliver, Solomon, Jr. | 8 | 0 | 0 |
| Katz, David A. | 8 | 11 | 0 |
| O'Malley, Kathleen M. | 3 | 0 | 0 |
| Economus, Peter C. | 0 | 6 | 0 |
| Nugent, Donald C. | 1 | 4 | 0 |
| Gaughan, Patricia A. | 2 | 1 | 0 |
| Gwin, James S. | 0 | 0 | 0 |
| Polster, Dan A. | 4 | 4 | 0 |
| Adams, John R. | 0 | 15 | 0 |
| SUBTOTAL | 50 | 131 | 0 |
| DISTRICT TOTAL: | 52 | 147 | 0 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                              RUN: 04/13/2004

U.S. DISTRICT COURT FOR OHIO SOUTHERN

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Abel, Mark R. | 3 | 0 | 0 |
| King, Norah M. | 1 | 0 | 0 |
| Merz, Michael R. | 1 | 1 | 0 |
| Kemp, Terrence | 0 | 1 | 0 |
| Sherman, Jack, Jr. | 3 | 1 | 0 |
| Hogan, Timothy S. | 1 | 3 | 0 |
| Ovington, Sharon L. | 1 | 0 | 0 |
| SUBTOTAL | 10 | 6 | 0 |
| **DISTRICT JUDGES** | | | |
| Spiegel, S. Arthur | 46 | 16 | 0 |
| Holschuh, John David | 11 | 10 | 0 |
| Rice, Walter Herbert | 20 | 0 | 0 |
| Weber, Herman J. | 7 | 32 | 0 |
| Graham, James L. | 4 | 3 | 0 |
| Smith, George C. | 16 | 5 | 0 |
| Beckwith, Sandra S. | 12 | 73 | 0 |
| Dlott, Susan J. | 17 | 40 | 0 |
| Sargus, Edmund A., Jr. | 8 | 0 | 0 |
| Marbley, Algenon L. | 16 | 7 | 0 |
| Rose, Thomas M. | 13 | 10 | 0 |
| Frost, Gregory L. | 4 | 0 | 0 |
| Unassigned | 0 | 3 | 0 |
| SUBTOTAL | 174 | 199 | 0 |
| DISTRICT TOTAL: | 184 | 205 | 0 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                              RUN: 04/13/2004

U.S. DISTRICT COURT FOR TENNESSEE EASTERN

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** |  |  |  |
| Murrian, Robert P. | 0 | 0 | 0 |
| Powers, John Y. | 0 | 1 | 0 |
| Phillips, Thomas W. | 0 | 0 | 0 |
| Inman, Dennis Hisey | 2 | 0 | 0 |
| Carter, William B. Mitche | 0 | 2 | 0 |
| Shirley, C. Clifford | 3 | 1 | 0 |
| Guyton, H. Bruce | 0 | 0 | 0 |
| SUBTOTAL | 5 | 4 | 0 |
| **DISTRICT JUDGES** |  |  |  |
| Hull, Thomas Gray | 0 | 0 | 0 |
| Jarvis, James H. | 6 | 21 | 0 |
| Edgar, R. Allan | 2 | 9 | 0 |
| Jordan, Robert Leon | 3 | 2 | 1 |
| Collier, Curtis Lynn | 0 | 1 | 0 |
| Phillips, Thomas W. | 11 | 23 | 0 |
| Varlan, Thomas A. | 5 | 20 | 0 |
| Greer, J. Ronnie | 3 | 0 | 0 |
| SUBTOTAL | 30 | 76 | 1 |
| DISTRICT TOTAL: | 35 | 80 | 1 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR TENNESSEE MIDDLE

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** |  |  |  |
| Griffin, Juliet E. | 2 | 0 | 0 |
| Brown, Joe B. | 0 | 0 | 0 |
| Knowles, E. Clifton | 0 | 0 | 0 |
| Unassigned Usm | 1 | 0 | 0 |
| SUBTOTAL | 3 | 0 | 0 |
| **DISTRICT JUDGES** |  |  |  |
| Wiseman, Thomas A., Jr. | 6 | 6 | 0 |
| Nixon, John T. | 12 | 14 | 0 |
| Higgins, Thomas A. | 3 | 13 | 0 |
| Echols, Robert L. | 0 | 0 | 0 |

```
                              Campbell, Todd J.              4        0        0
                              Trauger, Aleta Arthur          5        3        0
                              Haynes, William Joseph, Jr.    1        3        0

              SUBTOTAL                                      31       39        0


  DISTRICT TOTAL:                                           34       39        0
```

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                          RUN: 04/13/2004

U.S. DISTRICT COURT FOR TENNESSEE WESTERN

|  |  | MOTIONS | BENCH |
|---|---|---|---|
|  | CASES | PENDING | TRIALS |

MAGISTRATE JUDGES

| | | | |
|---|---|---|---|
| Allen, James H., Sr. | 0 | 0 | 0 |
| Vescovo, Diane K. | 0 | 0 | 0 |
| Pham, Tu M. | 0 | 0 | 0 |
| SUBTOTAL | 0 | 0 | 0 |

DISTRICT JUDGES

| | | | |
|---|---|---|---|
| Gibbons, Julia Smith | 0 | 0 | 0 |
| Johnstone, Edward H. | 0 | 1 | 0 |
| Todd, James Dale | 4 | 1 | 0 |
| McCalla, Jon P. | 1 | 0 | 0 |
| Donald, Bernice Bouie | 11 | 20 | 1 |
| Mays, Samuel H., Jr. | 4 | 12 | 0 |
| Breen, J. Daniel | 4 | 29 | 0 |
| SUBTOTAL | 24 | 63 | 1 |

```
  DISTRICT TOTAL:                                           24       63        1

  CIRCUIT  TOTAL:                                          490      647        8
```

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                          RUN: 04/13/2004

U.S. DISTRICT COURT FOR ILLINOIS NORTHERN

|  |  | MOTIONS | BENCH |
|---|---|---|---|
|  | CASES | PENDING | TRIALS |

MAGISTRATE JUDGES

| | | | |
|---|---|---|---|
| Rosemond, W. Thomas, Jr. | 0 | 0 | 0 |
| Bobrick, Edward A. | 1 | 0 | 0 |
| Mahoney, Patrick M. | 0 | 0 | 0 |
| Ashman, Martin C. | 4 | 0 | 0 |
| Keys, Arlander | 2 | 0 | 0 |
| Denlow, Morton | 0 | 0 | 0 |
| Levin, Ian H. | 4 | 0 | 0 |

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| Nolan, Nan R. | 5 | 2 | 0 |
| Schenikier, Sidney | 0 | 0 | 0 |
| Brown, Geraldine Soat | 4 | 0 | 0 |
| Mason, Michael T. | 2 | 0 | 0 |
| Unassigned Usm | 1 | 0 | 0 |
| **SUBTOTAL** | 23 | 2 | 0 |

DISTRICT JUDGES

| | | | |
|---|---|---|---|
| Urbom, Warren K. | 2 | 0 | 0 |
| Rosenbaum, James M. | 0 | 3 | 0 |
| Grady, John F. | 7 | 1 | 0 |
| Aspen, Marvin E. | 0 | 0 | 0 |
| Moran, James B. | 15 | 3 | 0 |
| Shadur, Milton I. | 3 | 0 | 0 |
| Kocoras, Charles P. | 115 | 0 | 0 |
| Nordberg, John A. | 13 | 16 | 0 |
| Hart, William T. | 3 | 2 | 0 |
| Plunkett, Paul E. | 4 | 0 | 0 |
| Norgle, Charles R., Sr. | 6 | 0 | 0 |
| Holderman, James F., Jr. | 0 | 0 | 0 |
| Duff, Brian Barnett | 0 | 0 | 0 |
| Leinenweber, Harry D. | 19 | 0 | 0 |
| Zagel, James B. | 33 | 12 | 0 |
| Conlon, Suzanne B. | 0 | 0 | 0 |
| Marovich, George M. | 5 | 27 | 0 |
| Lindberg, George W. | 2 | 0 | 0 |
| Andersen, Wayne R. | 38 | 5 | 0 |
| Reinhard, Philip G. | 28 | 0 | 0 |
| Castillo, Ruben | 0 | 0 | 0 |
| Manning, Blanche M. | 12 | 0 | 0 |
| Coar, David H. | 3 | 13 | 0 |
| Gettleman, Robert W. | 6 | 0 | 0 |
| Bucklo, Elaine E. | 5 | 0 | 0 |
| Gottschall, Joan B. | 33 | 1 | 0 |
| Pallmeyer, Rebecca R. | 4 | 0 | 0 |
| Kennelly, Matthew F. | 2 | 0 | 0 |
| Hibbler, William J. | 18 | 0 | 0 |
| Guzman, Ronald A. | 8 | 0 | 0 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR ILLINOIS NORTHERN

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| Darrah, John W. | 4 | 0 | 0 |
| Lefkow, Joan Humphrey | 12 | 0 | 0 |
| St. Eve, Amy J. | 6 | 0 | 0 |
| Der-Yeghiayan, Samuel | 9 | 0 | 0 |
| Unassigned | 2 | 0 | 0 |
| **SUBTOTAL** | 417 | 83 | 0 |
| **DISTRICT TOTAL:** | 440 | 85 | 0 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR ILLINOIS CENTRAL

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Evans, Charles H. | 0 | 0 | 0 |
| Bernthal, David G. | 0 | 0 | 0 |
| Cudmore, Byron G. | 0 | 0 | 0 |
| Gorman, John A. | 2 | 1 | 0 |
| SUBTOTAL | 2 | 1 | 0 |
| **DISTRICT JUDGES** | | | |
| Baker, Harold Albert | 2 | 0 | 0 |
| Mihm, Michael M. | 1 | 1 | 0 |
| Mills, Richard | 3 | 0 | 0 |
| McDade, Joe Billy | 0 | 6 | 0 |
| McCuskey, Michael Patrick | 1 | 1 | 0 |
| Scott, Jeanne E. | 2 | 0 | 0 |
| SUBTOTAL | 9 | 8 | 0 |
| DISTRICT TOTAL: | 11 | 9 | 0 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR ILLINOIS SOUTHERN

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Conn, Gerald B. | 0 | 0 | 0 |
| Frazier, Phillip M | 1 | 2 | 0 |
| Proud, Clifford J. | 4 | 0 | 0 |
| SUBTOTAL | 5 | 2 | 0 |
| **DISTRICT JUDGES** | | | |
| Foreman, James L. | 4 | 0 | 0 |
| Stiehl, William D. | 1 | 0 | 0 |
| Gilbert, J. Phil | 9 | 10 | 0 |
| Murphy, G. Patrick | 8 | 0 | 0 |
| Herndon, David R. | 11 | 4 | 0 |
| Reagan, Michael J. | 10 | 1 | 0 |
| SUBTOTAL | 43 | 15 | 0 |

DISTRICT TOTAL:                                48        17        0

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR INDIANA NORTHERN

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Rodovich, Andrew P. | 6 | 1 | 0 |
| Pierce, Robin D. | 0 | 0 | 0 |
| Cosbey, Roger B. | 2 | 1 | 0 |
| Nuechterlein, Christopher | 4 | 6 | 0 |
| Cherry, Paul R. | 0 | 0 | 0 |
| SUBTOTAL | 12 | 8 | 0 |
| **DISTRICT JUDGES** | | | |
| Sharp, Allen | 0 | 10 | 0 |
| Lee, William C. | 1 | 1 | 0 |
| Moody, James T. | 0 | 6 | 0 |
| Miller, Robert L., Jr. | 2 | 1 | 0 |
| Lozano, Rudy | 4 | 0 | 0 |
| Simon, Philip Peter | 14 | 12 | 0 |
| Springmann, Theresa L. | 2 | 0 | 0 |
| SUBTOTAL | 23 | 30 | 0 |

DISTRICT TOTAL:                                35        38        0

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR INDIANA SOUTHERN

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Godich, John P. | 6 | 0 | 0 |
| Foster, Kennard P. | 0 | 0 | 0 |
| Hussmann, William G., Jr. | 1 | 0 | 0 |
| Shields, V. Sue | 3 | 0 | 0 |
| Baker, Tim A. | 0 | 0 | 0 |
| Lawrence, William T. | 0 | 0 | 0 |
| Lewis, Jordan D. | 0 | 0 | 0 |
| Naville, Michael G. | 0 | 0 | 0 |
| Unassigned Usm | 0 | 0 | 0 |
| SUBTOTAL | 10 | 0 | 0 |

DISTRICT JUDGES

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| Dillin, S. Hugh | 0 | 0 | 0 |
| Barker, Sarah Evans | 12 | 18 | 0 |
| McKinney, Larry J. | 19 | 13 | 0 |
| Tinder, John Daniel | 18 | 8 | 0 |
| Hamilton, David F. | 30 | 0 | 0 |
| Young, Richard L. | 13 | 3 | 0 |
| SUBTOTAL | 92 | 42 | 0 |

| | | | |
|---|---|---|---|
| DISTRICT TOTAL: | 102 | 42 | 0 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                RUN: 04/13/2004

U.S. DISTRICT COURT FOR WISCONSIN EASTERN

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Goodstein, Aaron E. | 0 | 0 | 0 |
| Gorence, Patricia J. | 1 | 6 | 0 |
| Callahan, William E. | 0 | 0 | 0 |
| Sickel, James | 0 | 0 | 0 |
| SUBTOTAL | 1 | 6 | 0 |
| **DISTRICT JUDGES** | | | |
| Gordon, Myron L. | 0 | 0 | 0 |
| Curran, Thomas J. | 0 | 0 | 0 |
| Stadtmueller, J.p. | 4 | 0 | 0 |
| Randa, Rudolph T. | 1 | 2 | 0 |
| Clevert, C. N. | 2 | 4 | 0 |
| Adelman, Lynn S. | 4 | 0 | 0 |
| Griesbach, William C. | 0 | 0 | 0 |
| SUBTOTAL | 11 | 6 | 0 |

| | | | |
|---|---|---|---|
| DISTRICT TOTAL: | 12 | 12 | 0 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                RUN: 04/13/2004

U.S. DISTRICT COURT FOR WISCONSIN WESTERN

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Crocker, Stephen L. | 0 | 0 | 0 |
| Skupniewitz, Joseph W. | 0 | 0 | 0 |

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| SUBTOTAL | 0 | 0 | 0 |

DISTRICT JUDGES

| | | | |
|---|---|---|---|
| Crabb, Barbara B. | 0 | 0 | 0 |
| Shabaz, John C. | 0 | 0 | 0 |
| SUBTOTAL | 0 | 0 | 0 |
| DISTRICT TOTAL: | 0 | 0 | 0 |
| CIRCUIT TOTAL: | 648 | 203 | 0 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR ARKANSAS EASTERN

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|

MAGISTRATE JUDGES

| | | | |
|---|---|---|---|
| Jones, Henry L., Jr. | 1 | 0 | 0 |
| Young, H. David | 0 | 0 | 0 |
| Forster, John, Jr. | 0 | 0 | 0 |
| Cavaneau, Jerry W. | 0 | 0 | 0 |
| Ray, J. Thomas | 0 | 0 | 0 |
| SUBTOTAL | 1 | 0 | 0 |

DISTRICT JUDGES

| | | | |
|---|---|---|---|
| Eisele, Garnett Thomas | 2 | 1 | 0 |
| Howard , George, Jr | 5 | 5 | 0 |
| Reasoner, Stephen M. | 9 | 9 | 0 |
| Wright, Susan Webber | 1 | 0 | 0 |
| Wilson, William R., Jr. | 0 | 34 | 0 |
| Moody, James Maxwell | 3 | 0 | 0 |
| SUBTOTAL | 20 | 49 | 0 |
| DISTRICT TOTAL: | 21 | 49 | 0 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR ARKANSAS WESTERN

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|

MAGISTRATE JUDGES

| | | | |
|---|---|---|---|
| Stites, Beverly | 0 | 0 | 0 |
| Snepherd, Bobby E. | 0 | 0 | 0 |

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| SUBTOTAL | 0 | 0 | 0 |

### DISTRICT JUDGES

|  | | | |
|---|---|---|---|
| Hendren, Jimm Larry | 0 | 0 | 0 |
| Barnes, Harry F. | 0 | 0 | 0 |
| Dawson, Robert T. | 0 | 0 | 0 |
| SUBTOTAL | 0 | 0 | 0 |
| DISTRICT TOTAL: | 0 | 0 | 0 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                 RUN: 04/13/2004

#### U.S. DISTRICT COURT FOR IOWA NORTHERN

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|

### MAGISTRATE JUDGES

|  | | | |
|---|---|---|---|
| Jarvey, John A. | 0 | 0 | 0 |
| Zoss, Paul A. | 0 | 0 | 0 |
| SUBTOTAL | 0 | 0 | 0 |

### DISTRICT JUDGES

|  | | | |
|---|---|---|---|
| McManus, Edward J. | 0 | 0 | 0 |
| O'Brien, Donald E. | 2 | 12 | 0 |
| Eisele, Garnett Thomas | 1 | 1 | 0 |
| Melloy, Michael J. | 5 | 0 | 0 |
| Bennett, Mark W. | 5 | 5 | 0 |
| Reade, Linda R. | 1 | 0 | 0 |
| SUBTOTAL | 14 | 18 | 0 |
| DISTRICT TOTAL: | 14 | 18 | 0 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                 RUN: 04/13/2004

#### U.S. DISTRICT COURT FOR IOWA SOUTHERN

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|

### MAGISTRATE JUDGES

|  | | | |
|---|---|---|---|
| Bremer, Celeste | 0 | 0 | 0 |
| Walters, Ross A. | 4 | 0 | 0 |
| Shields, Thomas J. | 3 | 5 | 0 |
| Peterson, Richard W. | 0 | 0 | 0 |

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| SUBTOTAL | 7 | 5 | 0 |

DISTRICT JUDGES

| | | | |
|---|---|---|---|
| Vietor, Harold D. | 2 | 2 | 0 |
| Wolle, Charles R. | 2 | 0 | 0 |
| Longstaff, Ronald E. | 2 | 0 | 0 |
| Pratt, Robert W. | 2 | 5 | 0 |
| Gritzner, James E. | 6 | 3 | 0 |
| SUBTOTAL | 14 | 10 | 0 |

| | | | |
|---|---|---|---|
| DISTRICT TOTAL: | 21 | 15 | 0 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR MINNESOTA

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| MAGISTRATE JUDGES | | | |
| Noel, Franklin L. | 0 | 0 | 0 |
| Lebedoff, Jonathan G. | 0 | 0 | 0 |
| Erickson, Raymond L. | 0 | 0 | 0 |
| Boylan, Arthur J. | 0 | 0 | 0 |
| Nelson, Susan Richard | 0 | 0 | 0 |
| Mayeron, janie S. | 0 | 0 | 0 |
| Klein, Mary Kay | 0 | 0 | 0 |
| Cudd, J. Earl | 0 | 0 | 0 |
| SUBTOTAL | 0 | 0 | 0 |

DISTRICT JUDGES

| | | | |
|---|---|---|---|
| Alsop, Donald D. | 1 | 0 | 0 |
| MacLaughlin, Harry H. | 0 | 0 | 0 |
| Renner, Robert G. | 0 | 0 | 0 |
| Magnuson, Paul A. | 6 | 0 | 0 |
| Rosenbaum, James M. | 0 | 0 | 0 |
| Doty, David S. | 1 | 0 | 0 |
| Kyle, Richard H. | 0 | 0 | 0 |
| Davis, Michael James | 6 | 1 | 0 |
| Tunheim, John R. | 5 | 0 | 0 |
| Montgomery, Ann D. | 0 | 0 | 0 |
| Frank, Donovan W. | 2 | 0 | 0 |
| Ericksen, Joan N. | 3 | 0 | 0 |
| SUBTOTAL | 24 | 1 | 0 |

| | | | |
|---|---|---|---|
| DISTRICT TOTAL: | 24 | 1 | 0 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR MISSOURI EASTERN

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Noce, David D. | 0 | 0 | 0 |
| Jackson, Carol E. | 0 | 0 | 0 |
| Buckles, Frederick R. | 2 | 2 | 0 |
| Perry, Catherine D. | 0 | 0 | 0 |
| Blanton, Lewis M. | 0 | 0 | 0 |
| Adelman, Terry I. | 1 | 0 | 0 |
| Davis, Lawrence O. | 0 | 0 | 0 |
| Medler, Mary A. | 0 | 0 | 0 |
| Mummert, Thomas C. | 0 | 0 | 0 |
| Fleissig, Audrey G. | 0 | 0 | 0 |
| SUBTOTAL | 3 | 2 | 0 |
| **DISTRICT JUDGES** | | | |
| Nangle, John F. | 0 | 4 | 0 |
| Limbaugh, Stephen N. | 0 | 0 | 0 |
| Hamilton, Jean C. | 0 | 0 | 0 |
| Stohr, Donald J. | 0 | 0 | 0 |
| Jackson, Carol E. | 1 | 0 | 0 |
| Shaw, Charles A. | 0 | 0 | 0 |
| Perry, Catherine D. | 0 | 0 | 0 |
| Webber, E. Richard | 3 | 0 | 0 |
| Sippel, Rodney W. | 1 | 0 | 0 |
| Autrey, Henry Edward | 0 | 0 | 0 |
| Unassigned | 1 | 5 | 0 |
| SUBTOTAL | 6 | 9 | 0 |
| DISTRICT TOTAL: | 9 | 11 | 0 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR MISSOURI WESTERN

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| England, James C. | 0 | 1 | 0 |
| Knox, William A. | 1 | 0 | 0 |
| Maugnmer, John T. | 1 | 0 | 0 |
| Larsen, Robert E. | 0 | 0 | 0 |
| Hayes, Sarah W. | 1 | 14 | 0 |
| SUBTOTAL | 3 | 15 | 0 |

DISTRICT JUDGES

| | | | |
|---|---|---|---|
| Clark, Russell G. | 0 | 0 | 0 |
| Wright, Scott O. | 6 | 2 | 0 |
| Sachs, Howard F. | 4 | 0 | 0 |
| Stevens, Joseph E., Jr. | 0 | 0 | 0 |
| Whipple, Dean | 5 | 7 | 0 |
| Gaitan, Fernando J., Jr. | 12 | 13 | 0 |
| Smith, Ortrie D. | 3 | 0 | 0 |
| Fenner, Gary A. | 3 | 0 | 0 |
| Laughrey, Nanette K. | 1 | 0 | 0 |
| Dorr, Richard E. | 1 | 0 | 0 |
| Unassigned | 7 | 5 | 0 |
| SUBTOTAL | 42 | 27 | 0 |

DISTRICT TOTAL:                          45        42         0

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003              RUN: 04/13/2004

U.S. DISTRICT COURT FOR NEBRASKA

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|

MAGISTRATE JUDGES

| | | | |
|---|---|---|---|
| Piester, David L. | 0 | 0 | 0 |
| Thalken, Thomas D. | 0 | 0 | 0 |
| Gossett, F. A., III | 0 | 0 | 0 |
| SUBTOTAL | 0 | 0 | 0 |

DISTRICT JUDGES

| | | | |
|---|---|---|---|
| Urbom, Warren K. | 1 | 0 | 0 |
| Strom, Lyle E. | 4 | 7 | 0 |
| Kopf, Richard G. | 0 | 0 | 0 |
| Shanahan, Thomas M. | 0 | 0 | 0 |
| Bataillon, Joseph F. | 3 | 0 | 0 |
| Camp, Laurie Smith | 1 | 0 | 0 |
| SUBTOTAL | 9 | 7 | 0 |

DISTRICT TOTAL:                           9         7         0

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003              RUN: 04/13/2004

U.S. DISTRICT COURT FOR NORTH DAKOTA

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|

MAGISTRATE JUDGES

|  | | | |
|---|---|---|---|
| Klein, Karen | 0 | 0 | 0 |
| Kautzmann, Dwight, C.h. | 0 | 0 | 0 |
| Senechal, Alice R. | 0 | 0 | 0 |
| SUBTOTAL | 0 | 0 | 0 |

DISTRICT JUDGES

|  | | | |
|---|---|---|---|
| Conmy, Patrick A. | 1 | 0 | 0 |
| Webb, Rodney S. | 3 | 4 | 0 |
| Hovland, Daniel L. | 0 | 4 | 0 |
| Erickson, Ralph R. | 1 | 3 | 0 |
| SUBTOTAL | 5 | 11 | 0 |

| DISTRICT TOTAL: | 5 | 11 | 0 |
|---|---|---|---|

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                RUN: 04/13/2004

U.S. DISTRICT COURT FOR SOUTH DAKOTA

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|

MAGISTRATE JUDGES

|  | | | |
|---|---|---|---|
| Simko, John E. | 0 | 0 | 0 |
| Young, Marshall P. | 0 | 0 | 0 |
| Moreno, Mark A. | 0 | 0 | 0 |
| Devine, Myles J. | 0 | 0 | 0 |
| SUBTOTAL | 0 | 0 | 0 |

DISTRICT JUDGES

|  | | | |
|---|---|---|---|
| Bogue, Andrew W. | 1 | 0 | 0 |
| Jones, John B. | 0 | 0 | 0 |
| Battey, Richard H. | 2 | 9 | 0 |
| Piersol, Lawrence L. | 6 | 4 | 0 |
| Kornmann, Charles Bruno | 0 | 0 | 0 |
| Schreier, Karen E. | 1 | 0 | 0 |
| SUBTOTAL | 10 | 13 | 0 |

| DISTRICT TOTAL: | 10 | 13 | 0 |
|---|---|---|---|

| CIRCUIT TOTAL: | 158 | 167 | 0 |
|---|---|---|---|

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                RUN: 04/13/2004

U.S. DISTRICT COURT FOR ALASKA

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|

MAGISTRATE JUDGES

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| Roberts, John D. | 0 | 0 | 0 |
| Branson, Albert H. | 0 | 0 | 0 |
| Jamin, Matthew D. | 0 | 0 | 0 |
| Guss, Mary E. | 0 | 0 | 0 |
| Pallenberg, Philip M. | 0 | 0 | 0 |
| Miller, Joseph W. | 0 | 0 | 0 |
| SUBTOTAL | 0 | 0 | 0 |

DISTRICT JUDGES

| | | | |
|---|---|---|---|
| Von Der Heydt, James A. | 0 | 0 | 0 |
| Fitzgerald, James M. | 0 | 0 | 0 |
| Holland, H. Russel | 8 | 2 | 0 |
| Singleton, James K. | 7 | 0 | 1 |
| Sedwick, John W. | 14 | 0 | 0 |
| Beistline, Ralph R. | 0 | 1 | 0 |
| SUBTOTAL | 29 | 3 | 1 |

DISTRICT TOTAL:                     29          3          1

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                          RUN: 04/13/2004

U.S. DISTRICT COURT FOR ARIZONA

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Sitver, Morton | 2 | 1 | 1 |
| Fiora, Nancy | 0 | 0 | 0 |
| Verkamp, Stephen L. | 0 | 0 | 0 |
| Mathis, Virginia | 0 | 0 | 0 |
| Carruth, James C. | 0 | 0 | 0 |
| Edmonds, Glenda E. | 0 | 0 | 0 |
| Anderson, Lawrence O. | 0 | 0 | 0 |
| Velasco, Bernardo P. | 0 | 0 | 0 |
| Irwin, Jay R. | 0 | 0 | 0 |
| Duncan, David K. | 3 | 1 | 0 |
| Pyle, Charles R. | 0 | 0 | 0 |
| Marshall, Jacqueline J. | 0 | 1 | 0 |
| SUBTOTAL | 5 | 3 | 1 |

DISTRICT JUDGES

| | | | |
|---|---|---|---|
| Urbom, Warren K. | 1 | 0 | 0 |
| Diclerico, Joseph A., Jr. | 3 | 0 | 0 |
| Holland, H. Russel | 10 | 0 | 1 |
| Panner, Owen M. | 0 | 2 | 0 |
| Sedwick, John W. | 3 | 0 | 0 |

Case Case:05-cv-4000168V Document 27-1 Filed 02/24/2005 Page Page 78 of 82

| | | | |
|---|---|---|---|
| Ezra, David A. | 2 | 2 | 0 |
| Hardy, Charles L. | 2 | 0 | 0 |
| Coughenour, John C. | 1 | 0 | 0 |
| Carroll, Earl H. | 12 | 10 | 1 |
| Marquez, Alfredo C. | 5 | 2 | 0 |
| Browning, William D. | 8 | 0 | 0 |
| Rosenblatt, Paul G. | 11 | 0 | 0 |
| Zilly, Thomas S. | 1 | 0 | 0 |
| Broomfield, Robert C. | 13 | 0 | 0 |
| Strand, Roger G. | 2 | 10 | 0 |
| McNamee, Stephen M. | 25 | 3 | 0 |
| Roll, John M. | 3 | 0 | 0 |
| Silver, Roslyn O. | 16 | 2 | 0 |
| Zapata, Frank R. | 14 | 3 | 0 |
| Collins, Raner | 1 | 1 | 0 |
| Teilborg, James A. | 10 | 0 | 0 |
| Bolton, Susan R. | 4 | 0 | 0 |
| Murguia, Mary H. | 10 | 5 | 0 |
| Martone, Frederick J. | 0 | 0 | 0 |
| Jorgenson, Cindy K. | 0 | 1 | 0 |
| Bury, David C. | 2 | 2 | 0 |
| Campbell, David G. | 1 | 0 | 0 |
| **SUBTOTAL** | 160 | 43 | 2 |

| | | | |
|---|---|---|---|
| DISTRICT TOTAL: | 165 | 46 | 3 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003          RUN: 04/13/2004

U.S. DISTRICT COURT FOR CALIFORNIA NORTHERN

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Brazil, Wayne D. | 0 | 0 | 1 |
| Trumbull, Patricia | 1 | 2 | 0 |
| Infante, Edward A. | 0 | 3 | 0 |
| James, Maria-Elena | 5 | 2 | 0 |
| Zimmerman, Bernard | 1 | 0 | 0 |
| Larson, James L. | 5 | 5 | 0 |
| Laporte, Elizabeth D. | 0 | 1 | 0 |
| Spero, Joseph | 0 | 0 | 0 |
| Seeborg, Richard | 1 | 1 | 0 |
| Chen, Edward M. | 0 | 0 | 0 |
| Lloyd, Howard R. | 0 | 1 | 0 |
| **SUBTOTAL** | 13 | 15 | 1 |

| | | | |
|---|---|---|---|
| **DISTRICT JUDGES** | | | |
| Conti, Samuel | 5 | 0 | 0 |
| Schwarzer, William W | 0 | 0 | 0 |
| Henderson, Thelton E. | 12 | 0 | 0 |
| Patel, Marilyn H. | 23 | 2 | 0 |
| Jensen, D. Lowell | 6 | 1 | 0 |

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| Smith, Fern M. | 0 | 0 | 0 |
| Walker, Vaughn R. | 30 | 2 | 0 |
| Ware, James | 37 | 34 | 0 |
| Armstrong, Saundra Brown | 7 | 0 | 0 |
| Whyte, Ronald M. | 100 | 28 | 0 |
| Wilken, Claudia | 21 | 20 | 0 |
| Chesney, Maxine M. | 6 | 3 | 0 |
| Illston, Susan Yvonne | 10 | 9 | 0 |
| Breyer, Charles R. | 0 | 0 | 0 |
| Jenkins, Martin J. | 22 | 6 | 0 |
| Fogel, Jeremy D. | 22 | 4 | 0 |
| Alsup, William Haskell | 7 | 0 | 0 |
| Hamilton, Phyllis J. | 14 | 2 | 0 |
| White, Jeffrey Steven | 3 | 4 | 0 |
| Unassigned | 5 | 0 | 0 |
| | | | |
| SUBTOTAL | 330 | 115 | 0 |
| | | | |
| DISTRICT TOTAL: | 343 | 130 | 1 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR CALIFORNIA EASTERN

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Moulds, John F. | 0 | 0 | 0 |
| Hollows, Gregory G. | 1 | 0 | 0 |
| Beck, Dennis L. | 1 | 1 | 0 |
| Nowinski, Peter A. | 0 | 0 | 0 |
| Snyder, Sandra | 2 | 1 | 0 |
| Drozd, Dale A. | 1 | 3 | 0 |
| O'Neill, Lawrence J. | 2 | 0 | 0 |
| Mueller, Kimberly J. | 0 | 0 | 0 |
| Goldner, Theresa A. | 0 | 0 | 0 |
| Kellison, Craig M. | 0 | 0 | 0 |
| Yosemite Magistrate Judge | 0 | 3 | 0 |
| | | | |
| SUBTOTAL | 7 | 8 | 0 |
| | | | |
| **DISTRICT JUDGES** | | | |
| Karlton, Lawrence K. | 39 | 11 | 0 |
| Fitzgerald, James M. | 1 | 1 | 0 |
| Schwartz, Milton L. | 0 | 0 | 0 |
| Singleton, James K. | 22 | 9 | 0 |
| Coyle, Robert E. | 37 | 16 | 0 |
| Panner, Owen M. | 3 | 0 | 0 |
| Garcia, Edward J. | 9 | 2 | 0 |
| Shubb, William B. | 23 | 2 | 0 |
| Levi, David F. | 45 | 8 | 0 |
| Wanger, Oliver W. | 38 | 14 | 0 |
| Burrell, Garland E., Jr. | 34 | 5 | 0 |
| Whaley, Robert H. | 3 | 15 | 0 |

```
                    Ishii, Anthony W.                41        1        0
                    Damrell, Frank C., Jr.           23        3        0
                    England, Morrison C., Jr.        36        0        0
                    Unassigned                        0        1        0

        SUBTOTAL                                    354       88        0


DISTRICT TOTAL:                                     361       96        0
                                          DISTRICT SUMMARY REPORT
                    AS OF DATE: 09/30/2003             RUN: 04/13/2004
```

## U.S. DISTRICT COURT FOR CALIFORNIA CENTRAL

|                             | CASES | MOTIONS PENDING | BENCH TRIALS |
|-----------------------------|-------|-----------------|--------------|
| **MAGISTRATE JUDGES**       |       |                 |              |
| Eick, Charles F.            | 1     | 0               | 0            |
| Turchin, Carolyn            | 0     | 0               | 0            |
| Hillman, Stephen J.         | 0     | 1               | 0            |
| McMahon, James W.           | 0     | 6               | 0            |
| Robbins, Brian Q.           | 0     | 0               | 0            |
| Wistrich, Andrew J.         | 2     | 10              | 0            |
| Block, Robert N.            | 0     | 0               | 0            |
| Chapman, Rosalyn M.         | 0     | 0               | 0            |
| Woehrle, Carla M.           | 3     | 4               | 0            |
| Nakazato, Arthur            | 1     | 6               | 0            |
| Zarefsky, Ralph             | 0     | 0               | 0            |
| Nagle, Margaret A.          | 0     | 0               | 0            |
| Johnson, Jeffrey W.         | 0     | 0               | 0            |
| Larson, Stephen G.          | 0     | 1               | 0            |
| Goldman, Marc L.            | 0     | 2               | 0            |
| Kenton, Victor B.           | 0     | 0               | 0            |
| Walsh, Patrick J.           | 0     | 0               | 0            |
| Lum, Jennifer T.            | 1     | 0               | 0            |
| Olguin, Fernando M.         | 1     | 0               | 0            |
| Abrams, Paul L.             | 0     | 0               | 0            |
| Segal, Suzanne H.           | 0     | 0               | 0            |
| McEwen, Willard W., Jr.     | 0     | 0               | 0            |
| Miller, Stephen E.          | 0     | 0               | 0            |
| **SUBTOTAL**                | 9     | 30              | 0            |
| **DISTRICT JUDGES**         |       |                 |              |
| Hauk, A. Andrew             | 0     | 0               | 0            |
| Real, Manuel L.             | 0     | 0               | 0            |
| Kelleher, Robert J.         | 4     | 0               | 0            |
| Byrne, William Mattnew, Jr. | 108   | 2               | 0            |
| Takasugi, Robert M.         | 9     | 16              | 0            |
| Waters, Laughlin E.         | 0     | 0               | 0            |
| Pfaelzer, Mariana R.        | 11    | 0               | 0            |
| Hatter, Terry J., Jr.       | 26    | 2               | 2            |
| Marshall, Consuelo Bland    | 20    | 4               | 0            |
| Rafeedie, Edward            | 2     | 0               | 0            |
| Stotler, Alicemarie H.      | 11    | 11              | 0            |

```
                    Rea, William J.                    5       3        0
                    Keller, William Duffy              1       2        0
                    Wilson, Stephen V.                14      42        0
                    Letts, J. Spencer                 22       0        0
                    Tevrizian, Dickran M., Jr.         8       1        0
                    Lew, Ronald S.w.                  19       0        0
                    Taylor, Gary L.                   12       2        0
                    Baird, Lourdes G.                 13       5        0
```

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR CALIFORNIA CENTRAL

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| Collins, Audrey B. | 17 | 1 | 0 |
| Paez, Richard A. | 4 | 0 | 0 |
| Timlin, Robert J. | 62 | 135 | 0 |
| King, George H. | 8 | 5 | 0 |
| Pregerson, Dean D. | 21 | 1 | 0 |
| Snyder, Christina A. | 11 | 9 | 0 |
| Morrow, Margaret M. | 24 | 3 | 0 |
| Matz, A. Howard | 9 | 9 | 0 |
| Carter, David O. | 1 | 11 | 0 |
| Manella, Nora Margaret | 14 | 1 | 0 |
| Feess, Gary | 26 | 2 | 0 |
| Cooper, Florence-Marie | 11 | 2 | 0 |
| Phillips, Virginia Anne | 9 | 1 | 0 |
| Walter, John F. | 5 | 2 | 0 |
| Anderson, Percy | 2 | 2 | 1 |
| Klausner, Robert G. | 4 | 1 | 0 |
| Otero, S. James | 1 | 3 | 0 |
| Selna, James V. | 3 | 0 | 0 |
| Carney, Cormac J. | 5 | 0 | 0 |
| Unassigned | 3 | 8 | 2 |
| SUBTOTAL | 525 | 286 | 5 |
| DISTRICT TOTAL: | 534 | 316 | 5 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR CALIFORNIA SOUTHERN

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| MAGISTRATE JUDGES |  |  |  |
| Porter, Louisa S. | 0 | 0 | 0 |
| Papas, Leo S. | 1 | 0 | 0 |
| Brooks, Ruben B. | 0 | 0 | 0 |
| Battaglia, Anthony J. | 0 | 0 | 0 |
| Aaron, Cynthia G. | 0 | 0 | 0 |
| Stiven, James F. | 0 | 0 | 0 |
| Houston, John A. | 0 | 0 | 0 |
| Stormes, Nita L. | 0 | 0 | 0 |

|  |  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|---|
| Benitez, Roger T. | | 0 | 0 | 0 |
| Schmitt, Joseph E. | | 0 | 0 | 0 |
| SUBTOTAL | | 1 | 0 | 0 |

DISTRICT JUDGES

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| Turrentine, Howard B. | 0 | 0 | 0 |
| Thompson, Gordon, Jr. | 0 | 0 | 0 |
| Enright, William B. | 0 | 0 | 0 |
| Singleton, James K. | 1 | 0 | 0 |
| Keep, Judith Nelsen | 1 | 0 | 0 |
| Brewster, Rudi M. | 7 | 5 | 0 |
| Rhoades, John S., Sr. | 3 | 10 | 0 |
| Huff, Marilyn L. | 0 | 0 | 0 |
| Whaley, Robert H. | 6 | 0 | 0 |
| Gonzalez, Irma E. | 1 | 1 | 0 |
| Jones, Napoleon A., Jr. | 14 | 0 | 0 |
| Moskowitz, Barry Ted | 31 | 0 | 0 |
| Miller, Jeffrey T. | 5 | 1 | 0 |
| Whelan, Thomas J. | 5 | 1 | 0 |
| Lorenz, M. James | 9 | 0 | 0 |
| Burns, Larry A. | 0 | 0 | 0 |
| Sabraw, Dana M. | 0 | 0 | 0 |
| Hayes, William Q. | 0 | 0 | 0 |
| Houston, John A. | 0 | 0 | 0 |
| SUBTOTAL | 83 | 18 | 0 |

| DISTRICT TOTAL: | 84 | 18 | 0 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR HAWAII

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| MAGISTRATE JUDGES | | | |
| Tokairin, Bert S. | 0 | 0 | 0 |
| Conklin, Daral G. | 0 | 0 | 0 |
| Kurren, Barry | 13 | 0 | 0 |
| Yamashita, Francis I. | 0 | 0 | 0 |
| Kobayashi, Leslie E. | 2 | 0 | 0 |
| Chang, Kevin S. | 2 | 2 | 0 |
| SUBTOTAL | 17 | 2 | 0 |

DISTRICT JUDGES

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| King, Samuel P. | 7 | 0 | 0 |
| Coyle, Robert E. | 1 | 2 | 0 |
| Kay, Alan Cooke | 5 | 3 | 0 |
| Ezra, David A. | 9 | 0 | 0 |
| Gilimor, Helen W. | 3 | 2 | 0 |

| | | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|---|
| Mollway, Susan Oki | | 0 | 0 | 0 |
| Jones, Robert E. | | 2 | 2 | 0 |
| Real, Manuel L. | | 7 | 0 | 0 |
| Aspen, Marvin E. | | 1 | 0 | 0 |
| SUBTOTAL | | 35 | 9 | 0 |

DISTRICT TOTAL: 52 11 0

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003          RUN: 04/13/2004

### U.S. DISTRICT COURT FOR IDAHO

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Williams, Mikel H. | 1 | 0 | 0 |
| Boyle, Larry M. | 1 | 0 | 0 |
| SUBTOTAL | 2 | 0 | 0 |
| **DISTRICT JUDGES** | | | |
| Reed, Edward C., Jr. | 2 | 0 | 0 |
| Lodge, Edward J. | 4 | 1 | 0 |
| Winmill, B. Lynn | 13 | 0 | 0 |
| Carter, David O. | 1 | 0 | 0 |
| SUBTOTAL | 20 | 1 | 0 |

DISTRICT TOTAL: 22 1 0

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003          RUN: 04/13/2004

### U.S. DISTRICT COURT FOR MONTANA

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Holter, Robert M. | 0 | 0 | 0 |
| Anderson, Richard W. | 4 | 1 | 0 |
| Erickson, Leif B. | 1 | 1 | 0 |
| Ostby, Carolyn S. | 3 | 0 | 0 |
| Schuster, Gerard M. | 0 | 0 | 0 |
| SUBTOTAL | 8 | 2 | 0 |
| **DISTRICT JUDGES** | | | |
| Lovell, Charles C. | 0 | 0 | 0 |

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| Shanstrom, Jack D. | 3 | 5 | 0 |
| Molloy, Donald W. | 11 | 38 | 0 |
| Cebull, Richard F. | 1 | 0 | 0 |
| Haddon, Sam E. | 2 | 3 | 0 |
| SUBTOTAL | 17 | 46 | 0 |
| DISTRICT TOTAL: | 25 | 48 | 0 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR NEVADA

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Johnston, Robert J. | 0 | 0 | 0 |
| Leavitt, Lawrence, R. | 1 | 0 | 0 |
| McQuaid, Robert A., Jr. | 0 | 0 | 0 |
| Cooke, Valerie P. | 0 | 0 | 0 |
| Leen, Peggy A. | 0 | 0 | 0 |
| SUBTOTAL | 1 | 0 | 0 |
| **DISTRICT JUDGES** | | | |
| Reed, Edward C., Jr. | 13 | 3 | 0 |
| George, Lloyd D. | 17 | 0 | 0 |
| McKibben, Howard D. | 3 | 0 | 0 |
| Pro, Philip M. | 6 | 1 | 0 |
| Ezra, David A. | 0 | 0 | 0 |
| Hagen, David Warner | 4 | 0 | 0 |
| Quackenbush, Justin L. | 2 | 0 | 0 |
| Hunt, Roger L. | 9 | 2 | 0 |
| Dawson, Kent J. | 9 | 2 | 0 |
| Hicks, Larry R. | 10 | 1 | 0 |
| Mahan, James C. | 17 | 0 | 0 |
| SUBTOTAL | 90 | 9 | 0 |
| DISTRICT TOTAL: | 91 | 9 | 0 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR OREGON

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Juba, George E. | 0 | 0 | 0 |
| Jelderks, Jonn | 3 | 2 | 0 |

| | | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|---|
| | Coffin, Thomas M. | 5 | 1 | 0 |
| | Ashmanskas, Donald C. | 6 | 11 | 0 |
| | Stewart, Janice M. | 3 | 7 | 0 |
| | Cooney, John | 8 | 2 | 0 |
| | Hubel, Dennis J. | 1 | 0 | 0 |
| | Bloom, Stephen M. | 0 | 0 | 0 |
| SUBTOTAL | | 26 | 23 | 0 |

DISTRICT JUDGES

| | | | | |
|---|---|---|---|---|
| | Shanstrom, Jack D. | 0 | 0 | 0 |
| | Panner, Owen M. | 1 | 2 | 0 |
| | Redden, James A. | 0 | 0 | 0 |
| | Frye, Helen J. | 1 | 3 | 0 |
| | Marsh, Malcolm F. | 1 | 0 | 0 |
| | Jones, Robert E. | 0 | 0 | 0 |
| | Hogan, Michael R. | 3 | 4 | 0 |
| | Haggerty, Ancer L. | 2 | 17 | 0 |
| | Aiken, Ann | 2 | 1 | 0 |
| | King, Garr M. | 5 | 2 | 0 |
| | Brown, Anna J. | 1 | 5 | 0 |
| | Mosman, Michael W. | 1 | 0 | 0 |
| SUBTOTAL | | 17 | 34 | 0 |

DISTRICT TOTAL: 43 57 0

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003          RUN: 04/13/2004

U.S. DISTRICT COURT FOR WASHINGTON EASTERN

| | | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|---|
| MAGISTRATE JUDGES | | | | |
| | Imbrogno, Cynthia | 0 | 0 | 0 |
| SUBTOTAL | | 0 | 0 | 0 |

DISTRICT JUDGES

| | | | | |
|---|---|---|---|---|
| | Quackenbush, Justin L. | 0 | 0 | 0 |
| | McDonald, Alan A. | 0 | 0 | 0 |
| | Nielsen, William Flemming | 10 | 0 | 0 |
| | Van Sickle, Fred | 2 | 3 | 0 |
| | Whaley, Robert H. | 3 | 29 | 0 |
| | Shea, Edward F. | 4 | 18 | 0 |
| | Suko, Lonny R. | 1 | 4 | 0 |
| SUBTOTAL | | 20 | 54 | 0 |

DISTRICT TOTAL: 20 54 0

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR WASHINGTON WESTERN

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Arnold, John K. | 0 | 0 | 0 |
| Martinez, Ricardo | 0 | 0 | 0 |
| Benton, Monica J. | 0 | 1 | 0 |
| Strombom, Karen L. | 0 | 0 | 0 |
| Theiler, Mary A. | 1 | 0 | 0 |
| Kleweno, Gilbert H. | 0 | 0 | 0 |
| Uhrig, Ira J. | 0 | 0 | 0 |
| Weinberg, John L. | 0 | 0 | 0 |
| Unassigned Usm | 0 | 4 | 0 |
| SUBTOTAL | 1 | 5 | 0 |
| **DISTRICT JUDGES** | | | |
| McGovern, Walter T. | 0 | 0 | 0 |
| Tanner, Jack E. | 0 | 0 | 0 |
| Rothstein, Barbara Jacobs | 1 | 72 | 0 |
| Coughenour, John C. | 0 | 0 | 0 |
| Dimmick, Carolyn R. | 0 | 0 | 0 |
| Bryan, Robert J. | 0 | 0 | 0 |
| Browning, William D. | 0 | 0 | 0 |
| Zilly, Thomas S. | 3 | 1 | 0 |
| Burgess, Franklin D. | 0 | 0 | 0 |
| Lasnik, Robert S. | 6 | 2 | 0 |
| Pechman, Marsha J. | 1 | 0 | 0 |
| Leighton, Ronald B. | 2 | 0 | 0 |
| Breyer, Charles R. | 0 | 0 | 0 |
| Unassigned | 0 | 19 | 0 |
| SUBTOTAL | 13 | 94 | 0 |

DISTRICT TOTAL:                           14    99    0

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR GUAM

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **DISTRICT JUDGES** | | | |
| Unpingco, John S. | 8 | 15 | 0 |
| SUBTOTAL | 8 | 15 | 0 |

DISTRICT TOTAL:                                    8        15        0

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FM HOLDINGS, LLC f/k/a | ) | |
| FORWARDMARKET, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| | ) | |
| VS. | ) | 3:05-CV-0166-G |
| | ) | |
| BILL MAHONEY and | ) | |
| STEPHEN GREGORIO, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the court is the plaintiff's motion for leave to file supplemental response

to the defendants' motions for summary judgment. The plaintiff's motion is

**GRANTED**. For purposes of determining the time for filing a reply brief, as

provided by Local Rule 7.1(f), the court shall consider the plaintiff's response to have

been filed the day of this order. Defendants shall file their reply, if any, no later than

**March 15, 2005**.

**SO ORDERED**.

February 28, 2005.

A. JOE FISH
CHIEF JUDGE



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

FM HOLDINGS, LLC,                  §
F/K/A FORWARDMARKET, LLC,          §
                                   §
        Plaintiff,                 §         Civil Action No.
                                   §         3:05-CV-0166-G
vs.                                §
                                   §
BILL MAHONEY; STEPHEN              §
GREGORIO,                          §
                                   §
        Defendants.                §

**PLAINTIFF'S SUPPLEMENTAL RESPONSE TO DEFENDANT BILL MAHONEY'S
RULE 12(b)(2) AND (3) MOTIONS AND MOTION TO TRANSFER PURSUANT TO 28
U.S.C.A. § 1404 AND FOR *FORUM NON CONVENIENS*, AND TO DEFENDANT
STEPHEN GREGORIO'S MOTION TO TRANSFER VENUE**

Court congestion is one of the public interest "convenience" factors underlying

Defendants' separate motions to transfer venue. *See Action Indus., Inc. v. United States Fidelity

& Guar. Co.*, 358 F.3d 337, 340 n.8 (5th Cir. 2004) (public interest factors include administrative

hurdles resulting from court congestion). Defendants submit no evidence or argument regarding

this factor, which is not surprising because it weighs in Plaintiff's favor and against transfer of

venue of this action from Texas to Massachusetts.

The Civil Justice Reform Act Report for 2003, the relevant portions of which are attached

as Exhibit 1 to the Affidavit of Leah Siegel attached hereto as Exhibit A, has the latest figures

regarding the backlog of the dockets of the Northern District of Texas and the District of

Massachusetts. These figures demonstrate that the Northern District of Texas is much *less*

congested than the District of Massachusetts:

- As of March 31, 2003, the District of Massachusetts had 154 total cases and 22 pending motions, for an average of 5.92 cases and 8.6 motions per judge, respectively, and the Northern District of Texas had 47 total cases and 7 pending motions, for an average of 1.96 cases and 3.2 motions per judge, respectively.

- As of September 30, 2003, the District of Massachusetts had 171 total cases, 186 pending motions, and 4 bench trials, and the Northern District of Texas had 43 total cases, 48 pending motions, and 3 bench trials.

Accordingly, this factor also weighs against transfer of venue of this action from Texas to Massachusetts.

Respectfully submitted,

Kimberly A. Elkjer
Texas State Bar No. 06527040
Robert M. Millimet
Texas State Bar No. 24025538
SCHEEF & STONE, L.L.P.
5956 Sherry Ln., Suite 1400
Dallas, Texas 75225
(214) 706-4200
(214) 706-4242 (Fax)

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I certify that on February 24, 2005, a true and correct copy of the foregoing was served upon all known counsel of record via facsimile and first class U.S. mail as follows:

Charles R. Biddle
Ronald O. Holman
HOLMAN ROBERTSON ELDRIDGE
5949 Sherry Lane, Suite 1700
Dallas, Texas 75225

Thomas J. Fisher
SHANNON GRACEY RATLIFF & MILLER, LLP
777 Main Street, Suite 3800
Fort Worth, Texas 76102

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FM HOLDINGS, LLC, | § | |
| F/K/A FORWARDMARKET, LLC, | § | |
| | § | |
| Plaintiff, | § | Civil Action No. |
| | § | 3:05-CV-0166-G |
| vs. | § | |
| | § | |
| BILL MAHONEY; STEPHEN | § | |
| GREGORIO, | § | |
| | § | |
| Defendants. | § | |

## AFFIDAVIT OF LEAH SIEGEL

| | |
|---|---|
| THE STATE OF TEXAS | § |
| | § |
| COUNTY OF DALLAS | § |

Before me, the undersigned authority, personally appeared Leah Siegel, who, being by me duly sworn, deposed as follows:

1.      My name is Leah Siegel.  I am a legal assistant with Scheef & Stone, LLP, counsel for Plaintiff FM Holdings, LLC, f/k/a Forwardmarket, LLC ("Plaintiff") in the above-captioned action.  I have personal knowledge of the facts set forth herein.  I am over 21 years of age, have never been convicted of a felony, and am of sound mind and capable of making this affidavit.  The statements made herein are true and correct and are based on my own personal knowledge.

2.      It is my understanding that the Civil Justice Reform Act Report for 2003 (the "Report") has the latest official federal court figures regarding the backlog of the dockets of all the federal courts, including the Northern District of Texas and the District of Massachusetts. The Report may be downloaded from PACER.

**EXHIBIT "A"**

3.     I attempted to retrieve the Report from PACER on Tuesday, February 22, 2005, but PACER was completely down at the multiple times I checked the status of PACER (which was until at least 5 p.m.).  I was therefore unable to access the Report on that date.

4.     I contacted the 800 number for PACER on February 22nd regarding when I would be able to obtain access to PACER and the Report.  A PACER employee named Shannon told me that the PACER system was indeed not working and she had no knowledge as to when it would be fixed.

5.     On February 23rd, however, I was able to download some of the Report; a portion of the Report was not retrievable.  Counsel for Plaintiff therefore advised me to attempt to retrieve the full Report the following day, Thursday, February 24, 2005.

6.     On February 24th, I was again able to retrieve only portions of the Report (on both days, the portion of the report identifying the nature of the cases in the federal courts lacked such information for the Northern District of Texas).

7.     Attached hereto as Exhibit 1 is a true and correct copy of portions of the Report that I was able to retrieve from PACER on February 24th.


FURTHER AFFIANT SAYETH NOT.

_____
LEAH SIEGEL

Given under my hand and seal of this office this 24th day of February, 2005.

_____
Notary Public in and for the State of Texas

**JERRI SANOJA**
NOTARY PUBLIC STATE OF TEXAS
COMMISSION EXPIRES:
SEPTEMBER 18, 2005

SEAL

_____
Jerri Sanoja
Printed Name


**AFFIDAVIT OF LEAH SIEGEL - Page 2**

# EXHIBIT 1

CJRA  -  DISTRICT AND CIRCUIT AVER

AS OF DATE: 03/31/2003

| | JUDGE COUNT | CASES | MOTION PENDIN |
|---|---|---|---|
| **DISTRICT:0090    DISTRICT OF COLUMBIA** | | | |
| MAGISTRATE JUDGES: | 3 | | |
| DISTRICT JUDGES: | 22 | | |
| TOTAL JUDGES: | 25 | | |
| TOTAL CASES: | | 391 | 89 |
| AVERAGES PER JUDGE: | | 15.64 | 35.7 |
| **CIRCUIT 00 TOTALS:** | | | |
| MAGISTRATE JUDGES: | 3 | | |
| DISTRICT JUDGES: | 22 | | |
| TOTAL JUDGES: | 25 | | |
| TOTAL CASES: | | 391 | 89 |
| AVERAGES PER JUDGE: | | 15.64 | 35.7 |
| **DISTRICT:0100    MAINE** | | | |
| MAGISTRATE JUDGES: | 3 | | |
| DISTRICT JUDGES: | 5 | | |
| TOTAL JUDGES: | 8 | | |
| TOTAL CASES: | | 0 | |
| AVERAGES PER JUDGE: | | 0.00 | 0.8 |
| **DISTRICT:0101    MASSACHUSETTS** | | | |
| MAGISTRATE JUDGES: | 7 | | |
| DISTRICT JUDGES: | 19 | | |
| TOTAL JUDGES: | 26 | | |
| TOTAL CASES: | | 154 | 22 |
| AVERAGES PER JUDGE: | | 5.92 | 8.6 |
| **DISTRICT:0102    NEW HAMPSHIRE** | | | |
| MAGISTRATE JUDGES: | 1 | | |
| DISTRICT JUDGES: | 4 | | |
| TOTAL JUDGES: | 5 | | |
| TOTAL CASES: | | 10 | |
| AVERAGES PER JUDGE: | | 2.00 | 0.8 |

CJRA  -  DISTRICT AND CIRCUIT AVER

AS OF DATE: 03/31/2003

|  | JUDGE COUNT | CASES | MOTION PENDIN |
|---|---|---|---|

DISTRICT:0103   RHODE ISLAND

|  | JUDGE COUNT | CASES | MOTION PENDIN |
|---|---|---|---|
| MAGISTRATE JUDGES: | 3 |  |  |
| DISTRICT JUDGES: | 4 |  |  |
| TOTAL JUDGES: | 7 |  |  |
| TOTAL CASES: |  | 23 | 4 |
| AVERAGES PER JUDGE: |  | 3.29 | 6.5 |

DISTRICT:0104   PUERTO RICO

| MAGISTRATE JUDGES: | 4 |  |  |
|---|---|---|---|
| DISTRICT JUDGES: | 11 |  |  |
| TOTAL JUDGES: | 15 |  |  |
| TOTAL CASES: |  | 126 | 44 |
| AVERAGES PER JUDGE: |  | 8.40 | 29.6 |

CIRCUIT 01 TOTALS:

| MAGISTRATE JUDGES: | 18 |  |  |
|---|---|---|---|
| DISTRICT JUDGES: | 43 |  |  |
| TOTAL JUDGES: | 61 |  |  |
| TOTAL CASES: |  | 313 | 72 |
| AVERAGES PER JUDGE: |  | 5.13 | 11.9 |

DISTRICT:0205   CONNECTICUT

| MAGISTRATE JUDGES: | 5 |  |  |
|---|---|---|---|
| DISTRICT JUDGES: | 13 |  |  |
| TOTAL JUDGES: | 18 |  |  |
| TOTAL CASES: |  | 247 | 14 |
| AVERAGES PER JUDGE: |  | 13.72 | 7.7 |

DISTRICT:0206   NEW YORK NORTHERN

| MAGISTRATE JUDGES: | 6 |  |  |
|---|---|---|---|
| DISTRICT JUDGES: | 7 |  |  |
| TOTAL JUDGES: | 13 |  |  |
| TOTAL CASES: |  | 308 | 28 |
| AVERAGES PER JUDGE: |  | 23.69 | 22.1 |

CJRA  -  DISTRICT AND CIRCUIT AVER

AS OF DATE: 03/31/2003

|  | JUDGE COUNT | CASES | MOTION PENDIN |
|---|---|---|---|

DISTRICT:0207   NEW YORK EASTERN

```
          MAGISTRATE JUDGES:                14
          DISTRICT JUDGES:                  23
          TOTAL JUDGES:                     37

          TOTAL CASES:                                   826           16
          AVERAGES PER JUDGE:                          22.32          4.5

DISTRICT:0208   NEW YORK SOUTHERN

          MAGISTRATE JUDGES:                16
          DISTRICT JUDGES:                  47
          TOTAL JUDGES:                     63

          TOTAL CASES:                                  1137          105
          AVERAGES PER JUDGE:                          18.05         16.8

DISTRICT:0209   NEW YORK WESTERN

          MAGISTRATE JUDGES:                 6
          DISTRICT JUDGES:                   7
          TOTAL JUDGES:                     13

          TOTAL CASES:                                   271           18
          AVERAGES PER JUDGE:                          20.85         14.2

DISTRICT:0210   VERMONT

          MAGISTRATE JUDGES:                 1
          DISTRICT JUDGES:                   2
          TOTAL JUDGES:                      3

          TOTAL CASES:                                     3
          AVERAGES PER JUDGE:                           1.00          0.3


CIRCUIT 02 TOTALS:


          MAGISTRATE JUDGES:                48
          DISTRICT JUDGES:                  99
          TOTAL JUDGES:                    147

          TOTAL CASES:                                  2792          184
          AVERAGES PER JUDGE:                          18.99         12.5
                              CJRA  -  DISTRICT AND CIRCUIT AVER

          AS OF DATE: 03/31/2003
```

| | JUDGE COUNT | CASES | MOTION PENDIN |
|---|---|---|---|

```
DISTRICT:0311   DELAWARE

          MAGISTRATE JUDGES:                 1
          DISTRICT JUDGES:                   8
          TOTAL JUDGES:                      9
```

```
                    TOTAL CASES:                        49        1
                    AVERAGES PER JUDGE:               5.44      1.2

    DISTRICT:0312   NEW JERSEY

                    MAGISTRATE JUDGES:        14
                    DISTRICT JUDGES:          25
                    TOTAL JUDGES:             39

                    TOTAL CASES:                       211       17
                    AVERAGES PER JUDGE:               5.41      4.4

    DISTRICT:0313   PENNSYLVANIA EASTERN

                    MAGISTRATE JUDGES:        11
                    DISTRICT JUDGES:          40
                    TOTAL JUDGES:             51

                    TOTAL CASES:                       485       11
                    AVERAGES PER JUDGE:               9.51      2.2

    DISTRICT:0314   PENNSYLVANIA MIDDLE

                    MAGISTRATE JUDGES:         4
                    DISTRICT JUDGES:          13
                    TOTAL JUDGES:             17

                    TOTAL CASES:                        47       13
                    AVERAGES PER JUDGE:               2.76      8.1

    DISTRICT:0315   PENNSYLVANIA WESTERN

                    MAGISTRATE JUDGES:         8
                    DISTRICT JUDGES:          17
                    TOTAL JUDGES:             25

                    TOTAL CASES:                       185       19
                    AVERAGES PER JUDGE:               7.40      7.9
                             CJRA - DISTRICT AND CIRCUIT AVER

        AS OF DATE: 03/31/2003
```

```
                                     JUDGE              MOTION
                                     COUNT      CASES   PENDIN


    DISTRICT:0391   VIRGIN ISLANDS

                    MAGISTRATE JUDGES:         2
                    DISTRICT JUDGES:           5
                    TOTAL JUDGES:              7

                    TOTAL CASES:                       218        3
                    AVERAGES PER JUDGE:              31.14      4.5


    CIRCUIT 03 TOTALS:
    _____
```

```
            MAGISTRATE JUDGES:              40
            DISTRICT JUDGES:               108
            TOTAL JUDGES:                  148

            TOTAL CASES:                                  1195              66
            AVERAGES PER JUDGE:                           8.07             4.5

DISTRICT:0416   MARYLAND

            MAGISTRATE JUDGES:               9
            DISTRICT JUDGES:                15
            TOTAL JUDGES:                   24

            TOTAL CASES:                                    40
            AVERAGES PER JUDGE:                           1.67             0.1

DISTRICT:0417   NO. CAROLINA EASTERN

            MAGISTRATE JUDGES:               3
            DISTRICT JUDGES:                 4
            TOTAL JUDGES:                    7

            TOTAL CASES:                                    16               6
            AVERAGES PER JUDGE:                           2.29             9.8

DISTRICT:0418   NO. CAROLINA MIDDLE

            MAGISTRATE JUDGES:               3
            DISTRICT JUDGES:                 6
            TOTAL JUDGES:                    9

            TOTAL CASES:                                    49              29
            AVERAGES PER JUDGE:                           5.44            33.1
                              CJRA  -  DISTRICT AND CIRCUIT AVER
```

        AS OF DATE: 03/31/2003

| | JUDGE COUNT | CASES | MOTION PENDIN |
|---|---|---|---|

DISTRICT:0419   NO. CAROLINA WESTERN

```
            MAGISTRATE JUDGES:               3
            DISTRICT JUDGES:                 3
            TOTAL JUDGES:                    6

            TOTAL CASES:                                    37              11
            AVERAGES PER JUDGE:                           6.17            18.6

DISTRICT:0420   SOUTH CAROLINA

            MAGISTRATE JUDGES:               8
            DISTRICT JUDGES:                11
            TOTAL JUDGES:                   19

            TOTAL CASES:                                    40              23
            AVERAGES PER JUDGE:                           2.11            12.5
```

DISTRICT:0422   VIRGINIA EASTERN

    MAGISTRATE JUDGES:        11
    DISTRICT JUDGES:         15
    TOTAL JUDGES:           26

    TOTAL CASES:                 5       2
    AVERAGES PER JUDGE:       0.19   0.8

DISTRICT:0423   VIRGINIA WESTERN

    MAGISTRATE JUDGES:         3
    DISTRICT JUDGES:          7
    TOTAL JUDGES:           10

    TOTAL CASES:              26    11
    AVERAGES PER JUDGE:       2.60   11.7

DISTRICT:0424   W. VIRGINIA NORTHERN

    MAGISTRATE JUDGES:         3
    DISTRICT JUDGES:          4
    TOTAL JUDGES:            7

    TOTAL CASES:              15     1
    AVERAGES PER JUDGE:       2.14   2.4

                   CJRA  -  DISTRICT AND CIRCUIT AVER

AS OF DATE: 03/31/2003

| | JUDGE COUNT | CASES | MOTION PENDIN |
|---|---|---|---|
| DISTRICT:0425   W. VIRGINIA SOUTHERN | | | |
| MAGISTRATE JUDGES: | 4 | | |
| DISTRICT JUDGES: | 7 | | |
| TOTAL JUDGES: | 11 | | |
| TOTAL CASES: | | 4 | 1 |
| AVERAGES PER JUDGE: | | 0.36 | 1.0 |

CIRCUIT 04 TOTALS:

    MAGISTRATE JUDGES:        47
    DISTRICT JUDGES:         72
    TOTAL JUDGES:         119

    TOTAL CASES:            232    88
    AVERAGES PER JUDGE:       1.95   7.4

DISTRICT:053L   LOUISIANA EASTERN

    MAGISTRATE JUDGES:         6
    DISTRICT JUDGES:         18
    TOTAL JUDGES:         24

```
                    TOTAL CASES:                                    22              2
                    AVERAGES PER JUDGE:                           0.92            1.1

       DISTRICT:053N   LOUISIANA MIDDLE

                    MAGISTRATE JUDGES:                   3
                    DISTRICT JUDGES:                     4
                    TOTAL JUDGES:                        7

                    TOTAL CASES:                                  7816              5
                    AVERAGES PER JUDGE:                        1116.57            8.1

       DISTRICT:0536   LOUISIANA WESTERN

                    MAGISTRATE JUDGES:                   6
                    DISTRICT JUDGES:                     8
                    TOTAL JUDGES:                       14

                    TOTAL CASES:                                    58              7
                    AVERAGES PER JUDGE:                           4.14            5.2
```

                                           CJRA  -  DISTRICT AND CIRCUIT AVER

       AS OF DATE: 03/31/2003

---

|  | JUDGE COUNT | CASES | MOTION PENDIN |
|---|---|---|---|
| **DISTRICT:0537   MISSISSIPPI NORTHERN** | | | |
| MAGISTRATE JUDGES: | 5 | | |
| DISTRICT JUDGES: | 5 | | |
| TOTAL JUDGES: | 10 | | |
| TOTAL CASES: | | 19 | |
| AVERAGES PER JUDGE: | | 1.90 | 0.8 |
| **DISTRICT:0538   MISSISSIPPI SOUTHERN** | | | |
| MAGISTRATE JUDGES: | 4 | | |
| DISTRICT JUDGES: | 8 | | |
| TOTAL JUDGES: | 12 | | |
| TOTAL CASES: | | 43 | 20 |
| AVERAGES PER JUDGE: | | 3.58 | 17.3 |
| **DISTRICT:0539   TEXAS NORTHERN** | | | |
| MAGISTRATE JUDGES: | 10 | | |
| DISTRICT JUDGES: | 14 | | |
| TOTAL JUDGES: | 24 | | |
| TOTAL CASES: | | 47 | 7 |
| AVERAGES PER JUDGE: | | 1.96 | 3.2 |
| **DISTRICT:0540   TEXAS EASTERN** | | | |
| MAGISTRATE JUDGES: | 7 | | |

```
        DISTRICT JUDGES:              11
        TOTAL JUDGES:                 18

        TOTAL CASES:                              35            3
        AVERAGES PER JUDGE:                     1.94          2.1
```

DISTRICT:0541   TEXAS SOUTHERN

```
        MAGISTRATE JUDGES:           17
        DISTRICT JUDGES:             20
        TOTAL JUDGES:                37

        TOTAL CASES:                              57           11
        AVERAGES PER JUDGE:                     1.54          3.0
```

CJRA  -  DISTRICT AND CIRCUIT AVER

AS OF DATE: 03/31/2003

```
                              JUDGE                    MOTION
                              COUNT        CASES       PENDIN
```

DISTRICT:0542   TEXAS WESTERN

```
        MAGISTRATE JUDGES:           14
        DISTRICT JUDGES:             15
        TOTAL JUDGES:                29

        TOTAL CASES:                              44            3
        AVERAGES PER JUDGE:                     1.52          1.2
```

CIRCUIT 05 TOTALS:

```
        MAGISTRATE JUDGES:           72
        DISTRICT JUDGES:            103
        TOTAL JUDGES:               175

        TOTAL CASES:                            8141           63
        AVERAGES PER JUDGE:                    46.52          3.6
```

DISTRICT:0643   KENTUCKY EASTERN

```
        MAGISTRATE JUDGES:            4
        DISTRICT JUDGES:             12
        TOTAL JUDGES:                16

        TOTAL CASES:                              28            5
        AVERAGES PER JUDGE:                     1.75          3.5
```

DISTRICT:0644   KENTUCKY WESTERN

```
        MAGISTRATE JUDGES:            4
        DISTRICT JUDGES:              7
        TOTAL JUDGES:                11

        TOTAL CASES:                              40
        AVERAGES PER JUDGE:                     3.64          0.5
```

DISTRICT:0645   MICHIGAN EASTERN

      MAGISTRATE JUDGES:        8
      DISTRICT JUDGES:         21
      TOTAL JUDGES:           29

      TOTAL CASES:                72       10
      AVERAGES PER JUDGE:        2.48     3.4

                                CJRA  -  DISTRICT AND CIRCUIT AVER

      AS OF DATE: 03/31/2003

---

|  | JUDGE COUNT | CASES | MOTION PENDIN |
|---|---|---|---|

DISTRICT:0646   MICHIGAN WESTERN

      MAGISTRATE JUDGES:        4
      DISTRICT JUDGES:         6
      TOTAL JUDGES:          10

      TOTAL CASES:                14
      AVERAGES PER JUDGE:        1.40     0.7

DISTRICT:0647   OHIO NORTHERN

      MAGISTRATE JUDGES:        9
      DISTRICT JUDGES:        18
      TOTAL JUDGES:          27

      TOTAL CASES:                72       26
      AVERAGES PER JUDGE:        2.67     9.9

DISTRICT:0648   OHIO SOUTHERN

      MAGISTRATE JUDGES:        5
      DISTRICT JUDGES:        12
      TOTAL JUDGES:          17

      TOTAL CASES:              176      19
      AVERAGES PER JUDGE:      10.35    11.5

DISTRICT:0649   TENNESSEE EASTERN

      MAGISTRATE JUDGES:        8
      DISTRICT JUDGES:         7
      TOTAL JUDGES:          15

      TOTAL CASES:                44        5
      AVERAGES PER JUDGE:        2.93     3.6

DISTRICT:0650   TENNESSEE MIDDLE

      MAGISTRATE JUDGES:        3
      DISTRICT JUDGES:         7
      TOTAL JUDGES:          10

```
                    TOTAL CASES:                                    41        4
                    AVERAGES PER JUDGE:                           4.10      4.5
                                           CJRA  -  DISTRICT AND CIRCUIT AVER

          AS OF DATE: 03/31/2003


                                         JUDGE                        MOTION
                                         COUNT        CASES          PENDIN


   DISTRICT:0651   TENNESSEE WESTERN

              MAGISTRATE JUDGES:            3
              DISTRICT JUDGES:              7
              TOTAL JUDGES:                10

              TOTAL CASES:                               26            3
              AVERAGES PER JUDGE:                       2.60         3.5


   CIRCUIT 06 TOTALS:
   _____

              MAGISTRATE JUDGES:           48
              DISTRICT JUDGES:             97
              TOTAL JUDGES:               145

              TOTAL CASES:                              513           76
              AVERAGES PER JUDGE:                      3.54          5.3

   DISTRICT:0752   ILLINOIS NORTHERN

              MAGISTRATE JUDGES:           10
              DISTRICT JUDGES:             36
              TOTAL JUDGES:                46

              TOTAL CASES:                              426            7
              AVERAGES PER JUDGE:                      9.26          1.6

   DISTRICT:0753   ILLINOIS CENTRAL

              MAGISTRATE JUDGES:            4
              DISTRICT JUDGES:              6
              TOTAL JUDGES:                10

              TOTAL CASES:                                9            2
              AVERAGES PER JUDGE:                       0.90         2.7

   DISTRICT:0754   ILLINOIS SOUTHERN

              MAGISTRATE JUDGES:            3
              DISTRICT JUDGES:              6
              TOTAL JUDGES:                 9

              TOTAL CASES:                               51            1
              AVERAGES PER JUDGE:                       5.67         1.5
                                           CJRA  -  DISTRICT AND CIRCUIT AVER

          AS OF DATE: 03/31/2003
```

|  | JUDGE<br>COUNT | CASES | MOTION<br>PENDIN |
|---|---|---|---|
| DISTRICT:0755   INDIANA NORTHERN | | | |
| MAGISTRATE JUDGES: | 4 | | |
| DISTRICT JUDGES: | 6 | | |
| TOTAL JUDGES: | 10 | | |
| TOTAL CASES: | | 29 | 2 |
| AVERAGES PER JUDGE: | | 2.90 | 2.0 |
| DISTRICT:0756   INDIANA SOUTHERN | | | |
| MAGISTRATE JUDGES: | 8 | | |
| DISTRICT JUDGES: | 6 | | |
| TOTAL JUDGES: | 14 | | |
| TOTAL CASES: | | 88 | 3 |
| AVERAGES PER JUDGE: | | 6.29 | 2.2 |
| DISTRICT:0757   WISCONSIN EASTERN | | | |
| MAGISTRATE JUDGES: | 4 | | |
| DISTRICT JUDGES: | 8 | | |
| TOTAL JUDGES: | 12 | | |
| TOTAL CASES: | | 17 | 2 |
| AVERAGES PER JUDGE: | | 1.42 | 2.0 |
| DISTRICT:0758   WISCONSIN WESTERN | | | |
| MAGISTRATE JUDGES: | 2 | | |
| DISTRICT JUDGES: | 2 | | |
| TOTAL JUDGES: | 4 | | |
| TOTAL CASES: | | 0 | |
| AVERAGES PER JUDGE: | | 0.00 | 0.0 |
| CIRCUIT 07 TOTALS: | | | |
| MAGISTRATE JUDGES: | 35 | | |
| DISTRICT JUDGES: | 70 | | |
| TOTAL JUDGES: | 105 | | |
| TOTAL CASES: | | 620 | 19 |
| AVERAGES PER JUDGE: | | 5.90 | 1.8 |

CJRA  -  DISTRICT AND CIRCUIT AVER

AS OF DATE: 03/31/2003

|  | JUDGE<br>COUNT | CASES | MOTION<br>PENDIN |
|---|---|---|---|

DISTRICT:0860    ARKANSAS EASTERN

    MAGISTRATE JUDGES:          5
    DISTRICT JUDGES:            6
    TOTAL JUDGES:             11

    TOTAL CASES:                     19         2
    AVERAGES PER JUDGE:           1.73    2.0

DISTRICT:0861    ARKANSAS WESTERN

    MAGISTRATE JUDGES:          2
    DISTRICT JUDGES:            3
    TOTAL JUDGES:             5

    TOTAL CASES:                      0
    AVERAGES PER JUDGE:           0.00    0.0

DISTRICT:0862    IOWA NORTHERN

    MAGISTRATE JUDGES:          2
    DISTRICT JUDGES:            6
    TOTAL JUDGES:             8

    TOTAL CASES:                   15
    AVERAGES PER JUDGE:           1.88    1.1

DISTRICT:0863    IOWA SOUTHERN

    MAGISTRATE JUDGES:          3
    DISTRICT JUDGES:            5
    TOTAL JUDGES:             8

    TOTAL CASES:                   12         1
    AVERAGES PER JUDGE:           1.50    2.1

DISTRICT:0864    MINNESOTA

    MAGISTRATE JUDGES:          9
    DISTRICT JUDGES:           12
    TOTAL JUDGES:            21

    TOTAL CASES:                   25
    AVERAGES PER JUDGE:           1.19    0.1

CJRA  -  DISTRICT AND CIRCUIT AVER

    AS OF DATE: 03/31/2003

| | JUDGE COUNT | CASES | MOTION PENDIN |
|---|---|---|---|

DISTRICT:0865    MISSOURI EASTERN

    MAGISTRATE JUDGES:          8
    DISTRICT JUDGES:           11
    TOTAL JUDGES:           19

```
                    TOTAL CASES:                                    10          1
                    AVERAGES PER JUDGE:                            0.53        0.6

DISTRICT:0866    MISSOURI WESTERN

                    MAGISTRATE JUDGES:              5
                    DISTRICT JUDGES:               9
                    TOTAL JUDGES:                 14

                    TOTAL CASES:                                    37          1
                    AVERAGES PER JUDGE:                           2.64        0.8

DISTRICT:0867    NEBRASKA

                    MAGISTRATE JUDGES:              3
                    DISTRICT JUDGES:               8
                    TOTAL JUDGES:                 11

                    TOTAL CASES:                                     9          1
                    AVERAGES PER JUDGE:                           0.82        1.4

DISTRICT:0868    NORTH DAKOTA

                    MAGISTRATE JUDGES:              3
                    DISTRICT JUDGES:               5
                    TOTAL JUDGES:                  8

                    TOTAL CASES:                                     5
                    AVERAGES PER JUDGE:                           0.63        0.3

DISTRICT:0869    SOUTH DAKOTA

                    MAGISTRATE JUDGES:              4
                    DISTRICT JUDGES:               6
                    TOTAL JUDGES:                 10

                    TOTAL CASES:                                    11
                    AVERAGES PER JUDGE:                           1.10        0.4
```
☐                                   CJRA  -  DISTRICT AND CIRCUIT AVER

          AS OF DATE: 03/31/2003

| | JUDGE COUNT | CASES | MOTION PENDIN |
|---|---|---|---|

CIRCUIT 08 TOTALS:

```
                    MAGISTRATE JUDGES:             44
                    DISTRICT JUDGES:              71
                    TOTAL JUDGES:                115

                    TOTAL CASES:                                   143          9
                    AVERAGES PER JUDGE:                           1.24        0.8

DISTRICT:097-    ALASKA
```

```
            MAGISTRATE JUDGES:              6
            DISTRICT JUDGES:                6
            TOTAL JUDGES:                  12

            TOTAL CASES:                               14
            AVERAGES PER JUDGE:                       1.17            0.2

DISTRICT:0970   ARIZONA

            MAGISTRATE JUDGES:             13
            DISTRICT JUDGES:               27
            TOTAL JUDGES:                  40

            TOTAL CASES:                              190             4
            AVERAGES PER JUDGE:                       4.75           1.1

DISTRICT:0971   CALIFORNIA NORTHERN

            MAGISTRATE JUDGES:             13
            DISTRICT JUDGES:               22
            TOTAL JUDGES:                  35

            TOTAL CASES:                              328             9
            AVERAGES PER JUDGE:                       9.37           2.6

DISTRICT:0972   CALIFORNIA EASTERN

            MAGISTRATE JUDGES:             12
            DISTRICT JUDGES:               15
            TOTAL JUDGES:                  27

            TOTAL CASES:                              343             7
            AVERAGES PER JUDGE:                      12.70           2.6
                          CJRA  -  DISTRICT AND CIRCUIT AVER

        AS OF DATE: 03/31/2003
```

|  | JUDGE COUNT | CASES | MOTION PENDIN |
|---|---|---|---|

```
DISTRICT:0973   CALIFORNIA CENTRAL

            MAGISTRATE JUDGES:             23
            DISTRICT JUDGES:               39
            TOTAL JUDGES:                  62

            TOTAL CASES:                              604            30
            AVERAGES PER JUDGE:                       9.74           4.9

DISTRICT:0974   CALIFORNIA SOUTHERN

            MAGISTRATE JUDGES:             11
            DISTRICT JUDGES:               14
            TOTAL JUDGES:                  25

            TOTAL CASES:                               76
            AVERAGES PER JUDGE:                       3.04           0.3
```

DISTRICT:0975   HAWAII

```
        MAGISTRATE JUDGES:            5
        DISTRICT JUDGES:            10
        TOTAL JUDGES:              15

        TOTAL CASES:                            272            5
        AVERAGES PER JUDGE:                   18.13          3.6
```

DISTRICT:0976   IDAHO

```
        MAGISTRATE JUDGES:            2
        DISTRICT JUDGES:             4
        TOTAL JUDGES:               6

        TOTAL CASES:                             29
        AVERAGES PER JUDGE:                    4.83          0.1
```

DISTRICT:0977   MONTANA

```
        MAGISTRATE JUDGES:            5
        DISTRICT JUDGES:             5
        TOTAL JUDGES:              10

        TOTAL CASES:                             35            4
        AVERAGES PER JUDGE:                    3.50          4.6
```

                        CJRA  -  DISTRICT AND CIRCUIT AVER

AS OF DATE: 03/31/2003

| | JUDGE COUNT | CASES | MOTION PENDIN |
|---|---|---|---|

DISTRICT:0978   NEVADA

```
        MAGISTRATE JUDGES:            5
        DISTRICT JUDGES:            11
        TOTAL JUDGES:              16

        TOTAL CASES:                             97            1
        AVERAGES PER JUDGE:                    6.06          0.6
```

DISTRICT:0979   OREGON

```
        MAGISTRATE JUDGES:            8
        DISTRICT JUDGES:            10
        TOTAL JUDGES:              18

        TOTAL CASES:                             48            5
        AVERAGES PER JUDGE:                    2.67          3.1
```

DISTRICT:0980   WASHINGTON EASTERN

```
        MAGISTRATE JUDGES:            3
        DISTRICT JUDGES:             7
        TOTAL JUDGES:              10

        TOTAL CASES:                             18            4
```

```
                    AVERAGES PER JUDGE:                        1.80      4.5

        DISTRICT:0981    WASHINGTON WESTERN

                    MAGISTRATE JUDGES:              5
                    DISTRICT JUDGES:               11
                    TOTAL JUDGES:                  16

                    TOTAL CASES:                              15        4
                    AVERAGES PER JUDGE:                      0.94      2.6

        DISTRICT:0993    GUAM

                    MAGISTRATE JUDGES:              0
                    DISTRICT JUDGES:                1
                    TOTAL JUDGES:                   1

                    TOTAL CASES:                               8        1
                    AVERAGES PER JUDGE:                      8.00     17.0
                                CJRA  -  DISTRICT AND CIRCUIT AVER

            AS OF DATE: 03/31/2003
```

```
                                          JUDGE                  MOTION
                                          COUNT       CASES      PENDIN


        DISTRICT:0994    NORTHERN MARIANAS

                    MAGISTRATE JUDGES:              0
                    DISTRICT JUDGES:                1
                    TOTAL JUDGES:                   1

                    TOTAL CASES:                               4
                    AVERAGES PER JUDGE:                      4.00      0.0


        CIRCUIT 09 TOTALS:


                    MAGISTRATE JUDGES:            111
                    DISTRICT JUDGES:             183
                    TOTAL JUDGES:                294

                    TOTAL CASES:                            2081       80
                    AVERAGES PER JUDGE:                     7.08      2.7

        DISTRICT:1082    COLORADO

                    MAGISTRATE JUDGES:              7
                    DISTRICT JUDGES:               13
                    TOTAL JUDGES:                  20

                    TOTAL CASES:                             182       38
                    AVERAGES PER JUDGE:                     9.10     19.3

        DISTRICT:1083    KANSAS

                    MAGISTRATE JUDGES:              8
```

```
            DISTRICT JUDGES:            10
            TOTAL JUDGES:               18

            TOTAL CASES:                              26          9
            AVERAGES PER JUDGE:  _____              1.44        5.0

   DISTRICT:1084   NEW MEXICO

            MAGISTRATE JUDGES:         15
            DISTRICT JUDGES:           11
            TOTAL JUDGES:              26

            TOTAL CASES:                              39         47
            AVERAGES PER JUDGE:                       1.50       18.2
                                 CJRA  -  DISTRICT AND CIRCUIT AVER

         AS OF DATE: 03/31/2003
```

_____

```
                                   JUDGE                      MOTION
                                   COUNT         CASES        PENDIN


   DISTRICT:1085   OKLAHOMA NORTHERN

            MAGISTRATE JUDGES:          3
            DISTRICT JUDGES:            7
            TOTAL JUDGES:              10

            TOTAL CASES:                              44         16
            AVERAGES PER JUDGE:                       4.40       16.6

   DISTRICT:1086   OKLAHOMA EASTERN

            MAGISTRATE JUDGES:          2
            DISTRICT JUDGES:            2
            TOTAL JUDGES:               4

            TOTAL CASES:                               7          3
            AVERAGES PER JUDGE:                       1.75        8.7

   DISTRICT:1087   OKLAHOMA WESTERN

            MAGISTRATE JUDGES:         11
            DISTRICT JUDGES:           11
            TOTAL JUDGES:              22

            TOTAL CASES:                              12          3
            AVERAGES PER JUDGE:                       0.55        1.6

   DISTRICT:1088   UTAH

            MAGISTRATE JUDGES:          5
            DISTRICT JUDGES:            9
            TOTAL JUDGES:              14

            TOTAL CASES:                              86          8
            AVERAGES PER JUDGE:                       6.14        6.0

   DISTRICT:1089   WYOMING
```

```
MAGISTRATE JUDGES:              7
DISTRICT JUDGES:                3
TOTAL JUDGES:                  10

TOTAL CASES:                               78        2
AVERAGES PER JUDGE:                      7.80      2.0
                      CJRA  -  DISTRICT AND CIRCUIT AVER
```

AS OF DATE: 03/31/2003

---

|  | JUDGE COUNT | CASES | MOTION PENDIN |
|---|---|---|---|
| **CIRCUIT 10 TOTALS:** | | | |
| MAGISTRATE JUDGES: | 58 | | |
| DISTRICT JUDGES: | 66 | | |
| TOTAL JUDGES: | 124 | | |
| TOTAL CASES: | | 474 | 129 |
| AVERAGES PER JUDGE: | | 3.82 | 10.4 |
| **DISTRICT:1126   ALABAMA NORTHERN** | | | |
| MAGISTRATE JUDGES: | 5 | | |
| DISTRICT JUDGES: | 10 | | |
| TOTAL JUDGES: | 15 | | |
| TOTAL CASES: | | 86 | 35 |
| AVERAGES PER JUDGE: | | 5.73 | 23.7 |
| **DISTRICT:1127   ALABAMA MIDDLE** | | | |
| MAGISTRATE JUDGES: | 4 | | |
| DISTRICT JUDGES: | 9 | | |
| TOTAL JUDGES: | 13 | | |
| TOTAL CASES: | | 56 | 12 |
| AVERAGES PER JUDGE: | | 4.31 | 9.6 |
| **DISTRICT:1128   ALABAMA SOUTHERN** | | | |
| MAGISTRATE JUDGES: | 4 | | |
| DISTRICT JUDGES: | 7 | | |
| TOTAL JUDGES: | 11 | | |
| TOTAL CASES: | | 17 | 13 |
| AVERAGES PER JUDGE: | | 1.55 | 12.0 |
| **DISTRICT:1129   FLORIDA NORTHERN** | | | |
| MAGISTRATE JUDGES: | 6 | | |
| DISTRICT JUDGES: | 6 | | |
| TOTAL JUDGES: | 12 | | |

```
                              TOTAL CASES:                                  5          1
                              AVERAGES PER JUDGE:                        0.42        1.0
                                            CJRA  -  DISTRICT AND CIRCUIT AVER

                AS OF DATE: 03/31/2003
```

|  | JUDGE COUNT | CASES | MOTION PENDIN |
|---|---|---|---|
| **DISTRICT:113A  FLORIDA MIDDLE** | | | |
| MAGISTRATE JUDGES: | 12 | | |
| DISTRICT JUDGES: | 22 | | |
| TOTAL JUDGES: | 34 | | |
| TOTAL CASES: | | 72 | 17 |
| AVERAGES PER JUDGE: | | 2.12 | 5.0 |
| **DISTRICT:113C  FLORIDA SOUTHERN** | | | |
| MAGISTRATE JUDGES: | 16 | | |
| DISTRICT JUDGES: | 24 | | |
| TOTAL JUDGES: | 40 | | |
| TOTAL CASES: | | 383 | 58 |
| AVERAGES PER JUDGE: | | 9.58 | 14.6 |
| **DISTRICT:113E  GEORGIA NORTHERN** | | | |
| MAGISTRATE JUDGES: | 11 | | |
| DISTRICT JUDGES: | 17 | | |
| TOTAL JUDGES: | 28 | | |
| TOTAL CASES: | | 58 | 6 |
| AVERAGES PER JUDGE: | | 2.07 | 2.1 |
| **DISTRICT:113G  GEORGIA MIDDLE** | | | |
| MAGISTRATE JUDGES: | 3 | | |
| DISTRICT JUDGES: | 9 | | |
| TOTAL JUDGES: | 12 | | |
| TOTAL CASES: | | 28 | 3 |
| AVERAGES PER JUDGE: | | 2.33 | 2.8 |
| **DISTRICT:113J  GEORGIA SOUTHERN** | | | |
| MAGISTRATE JUDGES: | 3 | | |
| DISTRICT JUDGES: | 6 | | |
| TOTAL JUDGES: | 9 | | |
| TOTAL CASES: | | 2 | |
| AVERAGES PER JUDGE: | | 0.22 | 0.6 |

```
                                            CJRA  -  DISTRICT AND CIRCUIT AVER

                AS OF DATE: 03/31/2003
```

|  | JUDGE COUNT | CASES | MOTION PENDIN |
|---|---|---|---|
| CIRCUIT 11 TOTALS: | | | |
| MAGISTRATE JUDGES: | 64 | | |
| DISTRICT JUDGES: | 110 | | |
| TOTAL JUDGES: | 174 | | |
| TOTAL CASES: | | 707 | 148 |
| AVERAGES PER JUDGE: | | 4.06 | 8.5 |
| GRAND TOTALS: | | | |
| MAGISTRATE JUDGES: | 588 | | |
| DISTRICT JUDGES: | 1044 | | |
| TOTAL JUDGES: | 1632 | | |
| TOTAL CASES: | | 17602 | 1029 |
| AVERAGES PER JUDGE: | | 10.79 | 6.3 |

```
                                        DISTRICT SUMMARY REPORT
                AS OF DATE: 09/30/2003              RUN: 04/13/2004

                        U.S. DISTRICT COURT FOR DISTRICT OF COLUMBIA

                                           MOTIONS      BENCH
                                   CASES   PENDING      TRIALS


        MAGISTRATE JUDGES

        Robinson, Debra Ann           0         3          0
        Kay, Allan                    4         4          0
        Facciola, John M.             3         0          0

    SUBTOTAL                          7         7          0


        DISTRICT JUDGES

        Bryant, William B.           13        17          0
        Flannery, Thomas A.           0         0          0
        Oberdorfer, Louis F.          8        15          0
        Penn, John G.                13        59          0
        Green, Joyce Hens             0         0          0
        Johnson, Norma Holloway      70        16          0
        Jackson, Thomas Penfield     62       122          0
        Hogan, Thomas F.             28        10          0
        Lamberth, Royce C.           18        34          0
        Kessler, Gladys               9         7          0
        Friedman, Paul L.            26       113          1
        Urbina, Ricardo M.           10         0          0
        Sullivan, Emmet G.           18         0          0
        Robertson, James              6         1          0
        Kollar-Kotelly, Colleen      10        50          0
        Kennedy, Henry H., Jr.       17        95          0
        Roberts, Richard W.          30        99          0
        Huvelle, Ellen Segal          4         0          0
        Walton, Reggie B.            13        39          0
        Bates, John D.                9        12          0
        Leon, Richard J.             18       136          0
        Collyer, Rosemary M.          0         8          0

    SUBTOTAL                        382       833          1


  DISTRICT TOTAL:                   389       840          1

  CIRCUIT  TOTAL:                   389       840          1
```

```
                                        DISTRICT SUMMARY REPORT
                AS OF DATE: 09/30/2003              RUN: 04/13/2004

                        U.S. DISTRICT COURT FOR MAINE

                                           MOTIONS      BENCH
                                   CASES   PENDING      TRIALS


        MAGISTRATE JUDGES
```

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| Cohen, David M. | 0 | 0 | 0 |
| Kravchuk, Margaret J. | 0 | 0 | 0 |
| Brownell, William S. | 0 | 0 | 0 |
| SUBTOTAL | 0 | 0 | 0 |

DISTRICT JUDGES

| | | | |
|---|---|---|---|
| Boyle, Francis J. | 0 | 0 | 0 |
| Carter, Gene | 2 | 4 | 0 |
| Hornby, D. Brock | 0 | 2 | 0 |
| Barbadoro, Paul J. | 0 | 1 | 0 |
| Singal, George Z. | 0 | 0 | 0 |
| Woodcock, John A, Jr. | 1 | 0 | 0 |
| Dorsey, Peter C. | 0 | 0 | 0 |
| SUBTOTAL | 3 | 7 | 0 |

DISTRICT TOTAL:                                   3          7          0

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                        RUN: 04/13/2004

U.S. DISTRICT COURT FOR MASSACHUSETTS

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|

MAGISTRATE JUDGES

| | | | |
|---|---|---|---|
| Alexander, Joyce L. | 0 | 0 | 0 |
| Cohen, Lawrence P. | 1 | 2 | 0 |
| Collings, Robert B. | 6 | 2 | 0 |
| Bowler, Marianne B. | 0 | 3 | 0 |
| Swartwood, Charles B. | 2 | 10 | 0 |
| Neiman, Kenneth P. | 2 | 2 | 0 |
| Dein, Judith G. | 0 | 0 | 0 |
| SUBTOTAL | 11 | 19 | 0 |

DISTRICT JUDGES

| | | | |
|---|---|---|---|
| Tauro, Joseph L. | 0 | 0 | 0 |
| Skinner, Walter Jay | 2 | 0 | 0 |
| Mazzone, A. David | 4 | 4 | 0 |
| Keeton, Robert E. | 11 | 0 | 0 |
| Zobel, Rya W. | 19 | 7 | 0 |
| Young, William G. | 0 | 0 | 0 |
| Wolf, Mark L. | 13 | 9 | 0 |
| Woodlock, Douglas P. | 10 | 30 | 4 |
| Harrington, Edward F. | 24 | 20 | 0 |
| Gorton, Nathaniel M. | 7 | 4 | 0 |
| Stearns, Richard G. | 3 | 21 | 0 |
| Lindsay, Reginald C. | 8 | 15 | 0 |
| Saris, Patti B. | 2 | 2 | 0 |
| Ponsor, Michael A. | 12 | 11 | 0 |
| Gertner, Nancy | 13 | 9 | 0 |

```
                   O'Toole, George A., Jr.         13      10       0
                   Dyk, Timothy Belcher             1       0       0
                   Lasker, Morris E.                2      16       0
                   Unassigned                      16       9       0

         SUBTOTAL                                 160     167       4


DISTRICT TOTAL:                                   171     186       4
```

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR NEW HAMPSHIRE

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| MAGISTRATE JUDGES | | | |
| Muirhead, James R. | 0 | 0 | 0 |
| SUBTOTAL | 0 | 0 | 0 |
| DISTRICT JUDGES | | | |
| Diclerico, Joseph A., Jr. | 1 | 0 | 0 |
| Barbadoro, Paul J. | 5 | 0 | 0 |
| Torres, Ernest C. | 1 | 1 | 0 |
| McAuliffe, Steven J. | 1 | 0 | 0 |
| SUBTOTAL | 8 | 1 | 0 |
| DISTRICT TOTAL: | 8 | 1 | 0 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR RHODE ISLAND

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| MAGISTRATE JUDGES | | | |
| Hagopian, Jacob | 0 | 0 | 0 |
| Lovegreen, Robert W. | 0 | 1 | 0 |
| Martin, David L. | 0 | 0 | 0 |
| SUBTOTAL | 0 | 1 | 0 |
| DISTRICT JUDGES | | | |
| Lagueux, Ronald R. | 8 | 15 | 0 |
| Torres, Ernest C. | 2 | 2 | 0 |
| Lisi, Mary M. | 3 | 5 | 0 |
| Smith, William E. | 4 | 7 | 0 |

```
        SUBTOTAL                                17      29       0


   DISTRICT TOTAL:                              17      30       0
□
                                        DISTRICT SUMMARY REPORT
            AS OF DATE: 09/30/2003               RUN: 04/13/2004


                 U.S. DISTRICT COURT FOR PUERTO RICO

                                              MOTIONS    BENCH
                                     CASES    PENDING    TRIALS


        MAGISTRATE JUDGES

            Castellanos, Jesus          0        0        0
            Arenas, Justo               0        1        0
            Delgado-Colon, Aida M.      0        0        0
            Gelpi, Gustavo A.           0        0        0

        SUBTOTAL                        0        1        0


        DISTRICT JUDGES

            Lagueux, Ronald R.          0        7        0
            Singal, George Z.           1        0        0
            Perez-Gimenez, Juan M.     19       75        0
            Gierbolini-Ortiz,gilberto  32       50        0
            Cerezo, Carmen Consuelo     1        0        0
            Pieras, Jaime, Jr.         19       97        0
            Acosta, Raymond L.         20       94        0
            Laffitte, Hector M.         2        8        0
            Fuste, Jose Antonio         1       53        0
            Casellas, Salvador E.       3       19        0
            Dominguez, Daniel R.        7        0        0
            Garcia-Gregory, Jay A.      5       25        0
            Ward, Robert J.             1        1        0

        SUBTOTAL                      111      429        0


   DISTRICT TOTAL:                     111      430        0

   CIRCUIT  TOTAL:                     310      654        4
□
                                        DISTRICT SUMMARY REPORT
            AS OF DATE: 09/30/2003               RUN: 04/13/2004


                 U.S. DISTRICT COURT FOR CONNECTICUT

                                              MOTIONS    BENCH
                                     CASES    PENDING    TRIALS


        MAGISTRATE JUDGES

            Smith, Thomas P.            3        0        0
            Margolis, Joan G.           1        0        0
            Fitzsimmons, Holly B.       5        0        1
```

| | | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|---|
| | Martinez, Donna F. | 5 | 2 | 0 |
| | Garfinkel, William I. | 15 | 3 | 0 |
| SUBTOTAL | | 29 | 5 | 1 |

DISTRICT JUDGES

| | | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|---|
| | Burns, Ellen B. | 16 | 18 | 1 |
| | Eginton, Warren W. | 16 | 5 | 0 |
| | Dorsey, Peter C. | 3 | 0 | 0 |
| | Nevas, Alan H. | 17 | 11 | 0 |
| | Covello, Alfred V. | 9 | 2 | 0 |
| | Chatigny, Robert N. | 24 | 7 | 1 |
| | Squatrito, Dominic J. | 26 | 33 | 1 |
| | Thompson, Alvin W. | 62 | 33 | 1 |
| | Arterton, Janet Bond | 2 | 0 | 0 |
| | Droney, Christopher F. | 50 | 29 | 1 |
| | Hall, Janet C. | 5 | 1 | 0 |
| | Uderhill, Stefan R. | 30 | 18 | 0 |
| | Goettel, Gerard L. | 6 | 11 | 0 |
| SUBTOTAL | | 266 | 168 | 5 |

| DISTRICT TOTAL: | | 295 | 173 | 6 |
|---|---|---|---|---|

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR NEW YORK NORTHERN

| | | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|---|

MAGISTRATE JUDGES

| | | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|---|
| | Dibianco, Gustave J. | 4 | 1 | 0 |
| | Homer, David R. | 0 | 0 | 0 |
| | Sharpe, Gary | 1 | 22 | 0 |
| | Peebles, David E. | 0 | 3 | 0 |
| | Treece, Randolph F. | 0 | 7 | 0 |
| | Kudrle, Larry A. | 0 | 0 | 0 |
| SUBTOTAL | | 5 | 33 | 0 |

DISTRICT JUDGES

| | | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|---|
| | Munson, Howard G. | 35 | 65 | 0 |
| | McCurn, Neal P. | 8 | 0 | 1 |
| | McAvoy, Thomas J. | 33 | 15 | 0 |
| | Scullin, Frederick J., Jr. | 28 | 34 | 1 |
| | Kahn, Lawrence E. | 80 | 48 | 0 |
| | Mordue, Norman A. | 80 | 83 | 0 |
| | Hurd, David N. | 55 | 52 | 0 |
| SUBTOTAL | | 319 | 297 | 2 |

DISTRICT TOTAL:                                     324      330        2

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                              RUN: 04/13/2004

U.S. DISTRICT COURT FOR NEW YORK EASTERN

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Chrein, Simon A. | 3 | 0 | 0 |
| Azrack, Joan M. | 1 | 2 | 0 |
| Orenstein, Michael L. | 1 | 0 | 0 |
| Gold, Steven M. | 4 | 2 | 0 |
| Go, Marilyn | 9 | 5 | 0 |
| Lindsey, Arlene R. | 1 | 0 | 0 |
| Mann, Roanne L. | 0 | 0 | 0 |
| Pohorelsky, Viktor V. | 3 | 1 | 0 |
| Levy, Robert M. | 1 | 0 | 0 |
| Boyle, E. Thomas | 2 | 0 | 0 |
| Pollak, Cheryl | 16 | 6 | 0 |
| Wall, William D. | 2 | 4 | 0 |
| Bloom, Lois | 0 | 3 | 0 |
| SUBTOTAL | 43 | 23 | 0 |
| **DISTRICT JUDGES** | | | |
| Wolle, Charles R. | 2 | 1 | 0 |
| Mishler, Jacob | 1 | 2 | 0 |
| Weinstein, Jack B. | 21 | 2 | 0 |
| Platt, Thomas C., Jr. | 72 | 0 | 0 |
| Sifton, Charles P. | 11 | 1 | 0 |
| Glasser, Israel Leo | 42 | 10 | 0 |
| Wexler, Leonard D. | 0 | 0 | 0 |
| Korman, Edward R. | 17 | 8 | 0 |
| Dearie, Raymond J. | 76 | 32 | 0 |
| Spatt, Arthur D. | 35 | 0 | 0 |
| Amon, Carol Bagley | 57 | 21 | 0 |
| Johnson, Sterling, Jr. | 43 | 20 | 0 |
| Hurley, Denis R. | 43 | 1 | 0 |
| Trager, David G. | 52 | 0 | 0 |
| Seybert, Joanna | 37 | 0 | 0 |
| Ross, Allyne | 38 | 4 | 0 |
| Gleeson, John | 43 | 5 | 0 |
| Friedman, Bernard A. | 1 | 0 | 0 |
| Block, Frederic | 34 | 3 | 0 |
| Gershon, Nina | 31 | 26 | 0 |
| Garaufis, Nicholas G. | 39 | 27 | 0 |
| Sand, Leonard B. | 1 | 2 | 0 |
| SUBTOTAL | 696 | 165 | 0 |

DISTRICT TOTAL:                                     739      188        0

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                              RUN: 04/13/2004

U.S. DISTRICT COURT FOR NEW YORK SOUTHERN

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Bernikow, Leonard | 0 | 0 | 0 |
| Dolinger, Michael H. | 1 | 34 | 0 |
| Francis, James C. Iv | 2 | 0 | 0 |
| Katz, Theodore H. | 0 | 0 | 0 |
| Ellis, Ronald L. | 0 | 0 | 0 |
| Peck, Andrew J. | 0 | 0 | 0 |
| Smith, Lisa M. | 0 | 0 | 0 |
| Eaton, Douglas F. | 1 | 0 | 0 |
| Pitman, Henry B. | 2 | 0 | 0 |
| Yanthis, George A. | 6 | 4 | 0 |
| Fox, Kevin N. | 4 | 2 | 0 |
| Maas, Frank S. | 4 | 1 | 0 |
| Freeman, Debra C. | 0 | 16 | 0 |
| Gorenstein, Gabriel W. | 0 | 0 | 0 |
| Fox, Mark D. | 2 | 5 | 0 |
| Goldberg, Martin R. | 0 | 0 | 0 |
| SUBTOTAL | 22 | 62 | 0 |
| **DISTRICT JUDGES** | | | |
| Stein, Sidney H. | 8 | 13 | 0 |
| Jones, Barbara S. | 38 | 72 | 1 |
| Rakoff, Jed S. | 13 | 12 | 0 |
| Casey, Richard Conway | 86 | 78 | 0 |
| Hellerstein, Alvin K. | 13 | 3 | 0 |
| Berman, Richard M. | 43 | 18 | 0 |
| McMahon, Colleen | 18 | 39 | 0 |
| Real, Manuel L. | 2 | 0 | 0 |
| Pauley, William H., III | 13 | 10 | 0 |
| Buchwald, Naomi Reice | 11 | 0 | 0 |
| Tsoucalas, Nicholas | 1 | 0 | 0 |
| Marrero, Victor | 11 | 6 | 0 |
| Daniels, George B. | 102 | 289 | 0 |
| Swain, Laura Taylor | 40 | 91 | 0 |
| Lynch, Gerard E. | 7 | 4 | 0 |
| Robinson, Stephen C. | 10 | 0 | 0 |
| Motley, Constance Baker | 8 | 10 | 0 |
| Pollack, Milton | 6 | 0 | 0 |
| Brieant, Charles L., Jr. | 17 | 4 | 0 |
| Knapp, Whitman | 0 | 0 | 0 |
| Griesa, Thomas P. | 113 | 22 | 0 |
| Carter, Robert L. | 4 | 5 | 1 |
| Duffy, Kevin Thomas | 8 | 2 | 0 |
| Conner, William C. | 4 | 0 | 0 |
| Owen, Richard | 65 | 41 | 0 |
| Goettel, Gerard L. | 0 | 0 | 0 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003         RUN: 04/13/2004

U.S. DISTRICT COURT FOR NEW YORK SOUTHERN

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| Haight, Charles S., Jr. | 13 | 25 | 1 |
| Sweet, Robert W. | 24 | 1 | 0 |
| Sand, Leonard B. | 4 | 3 | 0 |
| Sprizzo, John E. | 53 | 16 | 1 |
| Kram, Shirley Wohl | 5 | 13 | 0 |
| Keenan, John F. | 4 | 3 | 0 |
| Leisure, Peter K. | 7 | 16 | 0 |
| Stanton, Louis L. | 3 | 2 | 0 |
| Cedarbaum, Miriam Goldman | 13 | 0 | 0 |
| Mukasey, Michael B. | 60 | 64 | 0 |
| Wood, Kimba M. | 16 | 30 | 0 |
| Patterson, Robert P., Jr. | 7 | 7 | 0 |
| Martin, John S., Jr. | 1 | 8 | 0 |
| McKenna, Lawrence M. | 122 | 51 | 3 |
| Preska, Loretta A. | 24 | 0 | 0 |
| Batts, Deborah A. | 68 | 78 | 0 |
| Cote, Denise | 12 | 0 | 0 |
| Kaplan, Lewis A. | 112 | 12 | 0 |
| Baer, Harold, Jr. | 1 | 11 | 0 |
| Koeltl, John G. | 14 | 2 | 0 |
| Chin, Denny | 23 | 0 | 0 |
| Scheindlin, Shira Ann | 4 | 1 | 0 |
| SUBTOTAL | 1231 | 1062 | 7 |

DISTRICT TOTAL: 1253 1124 7

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                RUN: 04/13/2004

U.S. DISTRICT COURT FOR NEW YORK WESTERN

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Foschio, Leslie G. | 10 | 43 | 0 |
| Scott, Hugh B. | 11 | 0 | 0 |
| Feldman, Jonathan | 18 | 0 | 0 |
| Schroeder, H. Kenneth | 10 | 54 | 0 |
| Payson, Marian W. | 3 | 0 | 0 |
| SUBTOTAL | 52 | 97 | 0 |
| **DISTRICT JUDGES** | | | |
| Curtin, John T. | 37 | 7 | 0 |
| Elfvin, John T. | 29 | 14 | 0 |
| Telesca, Michael A. | 15 | 0 | 0 |
| Larimer, David G. | 36 | 24 | 0 |
| Arcara, Richard J. | 59 | 99 | 0 |
| Skretny, William M. | 17 | 3 | 0 |

| | | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|---|
| Siragusa, Charles J. | | 27 | 26 | 0 |
| | SUBTOTAL | 220 | 173 | 0 |
| DISTRICT TOTAL: | | 272 | 270 | 0 |

DISTRICT SUMMARY REPORT
AS OF DATE: 09/30/2003                RUN: 04/13/2004

### U.S. DISTRICT COURT FOR VERMONT

| | | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|---|
| **MAGISTRATE JUDGES** | | | | |
| Niedermeier, Jerome J. | | 0 | 0 | 0 |
| | SUBTOTAL | 0 | 0 | 0 |
| **DISTRICT JUDGES** | | | | |
| Murtha, J. Garvan | | 2 | 0 | 0 |
| Sessions, William K., III | | 6 | 0 | 0 |
| | SUBTOTAL | 8 | 0 | 0 |
| DISTRICT TOTAL: | | 8 | 0 | 0 |
| CIRCUIT TOTAL: | | 2891 | 2085 | 15 |

DISTRICT SUMMARY REPORT
AS OF DATE: 09/30/2003                RUN: 04/13/2004

### U.S. DISTRICT COURT FOR DELAWARE

| | | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|---|
| **MAGISTRATE JUDGES** | | | | |
| Thynge, Mary Pat | | 0 | 3 | 0 |
| | SUBTOTAL | 0 | 3 | 0 |
| **DISTRICT JUDGES** | | | | |
| Latchum, James L. | | 0 | 0 | 0 |
| Farnan, Joseph J., Jr. | | 16 | 23 | 0 |
| Robinson, Sue L. | | 16 | 3 | 3 |
| McKelvie, Roderick R. | | 0 | 0 | 0 |
| Sleet, Gregory M. | | 7 | 20 | 0 |
| Jordan, Kent A. | | 13 | 26 | 0 |
| Wolin, Alfred M. | | 0 | 4 | 0 |
| | SUBTOTAL | 52 | 76 | 3 |

```
DISTRICT TOTAL:                                   52      79       3
☐                                      DISTRICT SUMMARY REPORT
                   AS OF DATE: 09/30/2003_____.      RUN: 04/13/2004

                         U.S. DISTRICT COURT FOR NEW JERSEY

                                                  MOTIONS     BENCH
                                          CASES   PENDING     TRIALS


            MAGISTRATE JUDGES

            Haneke, G. Donald                0        0          0
            Hedges, Ronald J.                0        0          0
            Rosen, Joel                      0        0          0
            Hughes, John J.                  0        0          0
            Wigenton, Susan D.               0        0          0
            Arleo, Madeline Cox              0        0          0
            Falk, Mark                       0        0          0
            Shwartz, Patty                   0        0          0
            Donio, Ann Marie                 0        0          0
            Knight, Edward R.                0        0          0
            Mautone, Anthony R.              0        0          0

      SUBTOTAL                               0        0          0


            DISTRICT JUDGES

            Brotman, Stanley S.              1        1          0
            Debevoise, Dickinson R.          6        3          0
            Thompson, Anne E.                4        0          0
            Ackerman, Harold A.             10        5          0
            Bissell, John W.                10        2          0
            Rodriguez, Joseph H.             1        0          0
            Brown, Garrett E.i, Jr.          0        0          0
            Wolin, Alfred M.                 4        4          0
            Lifland, John C.                22       75          0
            Bassler, William G.              6       10          0
            Cooper, Mary Little              5        4          2
            Irenas, Joseph E.                0        2          0
            Simandle, Jerome B.              7        0          1
            Walls, William H.               21       11          0
            Greenaway, Joseph A., Jr.       12        4          0
            Hayden, Katharine S.            11        1          0
            Hochberg, Faith S.               0       13          0
            Pisano, Joel A.                  1        0          0
            Cavanaugh, Dennis M.            16       16          0
            Martini, William J.            22       19          0
            Linares, Jose L.               34       65          0
            Chesler, Stanley R.            10       10          0
            Kugler, Robert B.                5        0          0
            Wolfson, Freda L.                3        0          0

      SUBTOTAL                             211      245          3


DISTRICT TOTAL:                            211      245          3
```

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                          RUN: 04/13/2004

U.S. DISTRICT COURT FOR PENNSYLVANIA EASTERN

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Leomporra, Tullio Gene | 0 | 0 | 0 |
| Scuderi, Peter B. | 0 | 0 | 0 |
| Melinson, James R. | 0 | 0 | 0 |
| Angell, M. Faith | 0 | 0 | 0 |
| Smith, Charles B. | 0 | 0 | 0 |
| Rapoport, Arnold C. | 0 | 0 | 0 |
| Welsh, Diane M. | 0 | 0 | 0 |
| Reuter, Thomas J. | 0 | 0 | 0 |
| Wells, Carol Sandra Moore | 0 | 1 | 0 |
| Hart, Jacob P. | 0 | 0 | 0 |
| Caracappa, Linda K. | 0 | 0 | 0 |
| SUBTOTAL | 0 | 1 | 0 |
| **DISTRICT JUDGES** | | | |
| Farnan, Joseph J., Jr. | 0 | 0 | 0 |
| Jordan, Kent A. | 0 | 0 | 0 |
| Fullam, John P. | 7 | 20 | 0 |
| Weiner, Charles R. | 4 | 36 | 0 |
| Troutman, E. Mac | 0 | 1 | 0 |
| Vanartsdalen, Donald W. | 0 | 0 | 0 |
| Ditter, J. William, Jr. | 0 | 0 | 0 |
| Newcomer, Clarence C. | 1 | 9 | 0 |
| Green, Clifford Scott | 7 | 0 | 0 |
| Pollak, Louis H. | 13 | 11 | 0 |
| Shapiro, Norma L. | 2 | 4 | 0 |
| Giles, James T. | 24 | 1 | 0 |
| O'Neill, Thomas N., Jr. | 4 | 1 | 0 |
| Kelly, James M. | 3 | 0 | 0 |
| Katz, Marvin | 0 | 0 | 0 |
| Ludwig, Edmund V. | 2 | 0 | 0 |
| Kelly, Robert F. | 5 | 0 | 0 |
| Van Antwerpen, Franklin S | 1 | 1 | 0 |
| Reed, Lowell A., Jr. | 0 | 0 | 0 |
| Dubois, Jan E. | 5 | 9 | 0 |
| Hutton, Herbert J. | 4 | 0 | 0 |
| Buckwalter, Ronald L. | 4 | 1 | 0 |
| Bartle, Harvey, III | 166 | 1 | 0 |
| Yohn, William H., Jr. | 0 | 4 | 0 |
| Dalzell, Stewart | 0 | 0 | 0 |
| Padova, John R. | 0 | 0 | 0 |
| Joyner, J. Curtis | 6 | 0 | 0 |
| Robreno, Eduardo C. | 2 | 4 | 0 |
| Brody, Anita B. | 5 | 0 | 0 |
| Kauffman, Bruce W. | 8 | 0 | 0 |
| McLaughlin, Mary A. | 6 | 2 | 0 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR PENNSYLVANIA EASTERN

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| Tucker, Petrese B. | 16 | 8 | 0 |
| Schiller, Berle M. | 3 | 1 | 0 |
| Surrick, R. Barclay | 27 | 53 | 1 |
| Davis, Legrome D. | 0 | 5 | 0 |
| Baylson, Michael M. | 1 | 1 | 0 |
| Rufe, Cynthia M. | 0 | 0 | 0 |
| Savage, Timothy J. | 2 | 10 | 0 |
| Gardner, James Knoll | 4 | 3 | 0 |
| Unassigned | 0 | 5 | 2 |
| SUBTOTAL | 332 | 191 | 3 |

DISTRICT TOTAL:                          332    192    3

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR PENNSYLVANIA MIDDLE

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Smyser, J. Andrew | 0 | 0 | 0 |
| Blewitt, Thomas M. | 2 | 0 | 0 |
| Mannion, Malachy E. | 0 | 2 | 0 |
| Askey, William H. | 0 | 0 | 0 |
| SUBTOTAL | 2 | 2 | 0 |
| **DISTRICT JUDGES** | | | |
| Nealon, William J., Jr. | 1 | 0 | 0 |
| Muir, Malcolm | 0 | 0 | 0 |
| Conaboy, Richard P. | 0 | 0 | 0 |
| Rambo, Sylvia H. | 4 | 2 | 0 |
| Caldwell, William W. | 0 | 0 | 0 |
| Kosik, Edwin M. | 1 | 0 | 0 |
| Sleet, Gregory M. | 1 | 0 | 0 |
| McClure, James Focht, Jr. | 12 | 49 | 0 |
| Vanaskie, Thomas I. | 7 | 32 | 0 |
| Caputo, A. Richard | 5 | 36 | 0 |
| Munley, James M. | 3 | 17 | 0 |
| Kane, Yvette | 6 | 14 | 0 |
| Conner, Christopher C. | 3 | 6 | 0 |
| Jones, John E., III | 2 | 1 | 0 |
| SUBTOTAL | 45 | 157 | 0 |

DISTRICT TOTAL:                                    47      159        0

U.S. DISTRICT COURT FOR PENNSYLVANIA WESTERN

|  |  | MOTIONS | BENCH |
|---|---|---|---|
|  | CASES | PENDING | TRIALS |

MAGISTRATE JUDGES

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| Sensenich, Ila Jeanne | 1 | 0 | 1 |
| Mitchell, Robert C. | 2 | 0 | 0 |
| Caiazza, Francis X. | 1 | 0 | 0 |
| Baxter, Susan Paradise | 0 | 0 | 0 |
| Hay, Amy R. | 1 | 0 | 0 |
| Pesto, Keith A. | 1 | 3 | 0 |
| SUBTOTAL | 6 | 3 | 1 |

DISTRICT JUDGES

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| Fullam, John P. | 19 | 0 | 0 |
| Cohill, Maurice B., Jr. | 17 | 46 | 1 |
| Diamond, Gustave | 1 | 0 | 0 |
| Bloch, Alan N. | 0 | 2 | 0 |
| Standish, William L. | 26 | 78 | 1 |
| Ambrose, Donetta W. | 16 | 0 | 0 |
| Lancaster, Gary L. | 20 | 18 | 0 |
| Cindrich, Robert J. | 26 | 21 | 1 |
| McLaughlin, Sean J. | 4 | 2 | 0 |
| Conti, Joy Flowers | 7 | 9 | 0 |
| Cercone, David Stewart | 8 | 31 | 0 |
| McVerry, Terrence F. | 3 | 24 | 0 |
| Schwab, Arthur J. | 8 | 0 | 0 |
| SUBTOTAL | 155 | 231 | 3 |

DISTRICT TOTAL:                                   161      234        4

U.S. DISTRICT COURT FOR VIRGIN ISLANDS

|  |  | MOTIONS | BENCH |
|---|---|---|---|
|  | CASES | PENDING | TRIALS |

MAGISTRATE JUDGES

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| Barnard, Geoffrey W. | 0 | 32 | 0 |
| Resnick, Jeffrey L. | 0 | 0 | 0 |
| SUBTOTAL | 0 | 32 | 0 |

DISTRICT JUDGES

```
                     Moore, Thomas K.              114      30        0
                     Finch, Raymond L.              74      12        0
                     Brotman, Stanley S.             5       6        0
                     Giles, James T.    _____       1       0        0
                     Dubois, Jan E.                  0       1        0
                     Unassigned                      6       3        0

        SUBTOTAL                                    200      52        0


DISTRICT TOTAL:                                     200      84        0

CIRCUIT  TOTAL:                                    1003     993       13
```

                               DISTRICT SUMMARY REPORT
                AS OF DATE: 09/30/2003              RUN: 04/13/2004

                     U.S. DISTRICT COURT FOR MARYLAND

|  |  | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
|  | CASES | | |

MAGISTRATE JUDGES

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| Schulze, Jillyn K. | 0 | 0 | 0 |
| Connelly, William G. | 0 | 0 | 0 |
| Gauvey, Susan K. | 0 | 0 | 0 |
| Grimm, Paul W | 1 | 0 | 0 |
| Day, Charles Bernard | 0 | 0 | 0 |
| Bredar, James K. | 0 | 0 | 0 |
| Gesner, Beth P. | 0 | 0 | 0 |
| Laws, Victor H., III | 0 | 0 | 0 |
| Digirolamo, Thomas M. | 0 | 0 | 0 |
| SUBTOTAL | 1 | 0 | 0 |

DISTRICT JUDGES

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| Motz, J. Frederick | 52 | 0 | 0 |
| Smalkin, Frederic N. | 0 | 0 | 0 |
| Garbis, Marvin J. | 5 | 0 | 0 |
| Nickerson, William M. | 3 | 0 | 0 |
| Legg, Benson Everett | 8 | 0 | 0 |
| Chasanow, Deborah K. | 1 | 0 | 0 |
| Messitte, Peter J. | 2 | 0 | 0 |
| Williams, Alexander, Jr. | 1 | 0 | 0 |
| Davis, Andre M. | 2 | 0 | 0 |
| Blake, Catherine C. | 5 | 1 | 0 |
| Quarles, William D., Jr. | 6 | 0 | 0 |
| Bennett, Richard D. | 1 | 0 | 0 |
| SUBTOTAL | 86 | 1 | 0 |

```
DISTRICT TOTAL:                                      87       1        0
```
                               DISTRICT SUMMARY REPORT
                AS OF DATE: 09/30/2003              RUN: 04/13/2004

U.S. DISTRICT COURT FOR NO CAROLINA EASTERN

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Mason, William N. | 0 | 0 | 0 |
| Webb, William A. | 0 | 4 | 0 |
| Daniel, David W. | 0 | 0 | 0 |
| SUBTOTAL | 0 | 4 | 0 |
| **DISTRICT JUDGES** | | | |
| Britt, W. Earl | 5 | 29 | 0 |
| Fox, James C. | 10 | 33 | 0 |
| Boyle, Terrence William | 2 | 12 | 0 |
| Howard, Malcolm J. | 5 | 41 | 0 |
| Flanagan, Louise W. | 0 | 0 | 0 |
| SUBTOTAL | 22 | 115 | 0 |
| DISTRICT TOTAL: | 22 | 119 | 0 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                RUN: 04/13/2004

U.S. DISTRICT COURT FOR NO CAROLINA MIDDLE

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Eliason, Russell A. | 0 | 11 | 0 |
| Sharp, Trevor P. | 4 | 14 | 0 |
| Dixon, Wallace W. | 0 | 1 | 0 |
| SUBTOTAL | 4 | 26 | 0 |
| **DISTRICT JUDGES** | | | |
| Erwin, Richard C. | 0 | 0 | 0 |
| Bullock, Frank W., Jr. | 4 | 33 | 0 |
| Tilley, N. Carlton, Jr. | 21 | 75 | 1 |
| Osteen, William L., Sr. | 7 | 75 | 0 |
| Beaty, James A., Jr. | 12 1 | 52 | 0 |
| Unassigned | 1 | 0 | 0 |
| SUBTOTAL | 45 | 335 | 1 |
| DISTRICT TOTAL: | 49 | 361 | 1 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                RUN: 04/13/2004

U.S. DISTRICT COURT FOR NO CAROLINA WESTERN

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Horn, Carl, III | 1 | 2 | 0 |
| Cogburn, Max O. | 0 | 0 | 0 |
| Swearingen, E. S. | 0 | 0 | 0 |
| SUBTOTAL | 1 | 2 | 0 |
| **DISTRICT JUDGES** | | | |
| Voorhees, Richard L. | 9 | 17 | 0 |
| Mullen, Graham Calder | 18 | 119 | 0 |
| Thornburg, Lacy H. | 0 | 0 | 0 |
| McKnight, H. Brent | 8 | 0 | 0 |
| SUBTOTAL | 35 | 136 | 0 |
| **DISTRICT TOTAL:** | 36 | 138 | 0 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR SOUTH CAROLINA

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Carr, Robert S. | 0 | 0 | 0 |
| Catoe, William M., Jr. | 0 | 0 | 0 |
| McCrorey, Joseph R. | 0 | 0 | 0 |
| Marchant, Bristow | 0 | 0 | 0 |
| Kosko, George C. | 0 | 0 | 0 |
| Rogers, Thomas Edward, III | 0 | 0 | 0 |
| Hendricks, Bruce Howe | 0 | 0 | 0 |
| Buchanan, Robert L., Jr. | 0 | 0 | 0 |
| SUBTOTAL | 0 | 0 | 0 |
| **DISTRICT JUDGES** | | | |
| Blatt, Solomon, Jr. | 5 | 11 | 0 |
| Perry, Matthew J., Jr. | 7 | 23 | 1 |
| Hawkins, Falcon B. | 0 | 0 | 0 |
| Houck, C. Weston | 22 | 171 | 0 |
| Anderson, George Ross, Jr. | 1 | 0 | 0 |
| Anderson, Joseph F., Jr. | 4 | 3 | 0 |
| Norton, David C. | 2 | 1 | 0 |
| Herlong, Henry M., Jr. | 0 | 0 | 0 |

| | | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|---|
| Currie, Cameron McGowan | | 4 | 2 | 0 |
| Duffy, Patrick Michael | | 11 | 8 | 0 |
| Seymour, Margaret B. | | 0 | 1 | 0 |
| Wooten, Terry L. | | 3 | 1 | 0 |
| Floyd, Henry F. | | 0 | 0 | 0 |
| Cook, Julian Abele, Jr. | | 1 | 0 | 0 |
| SUBTOTAL | | 60 | 221 | 1 |
| DISTRICT TOTAL: | | 60 | 221 | 1 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003          RUN: 04/13/2004

## U.S. DISTRICT COURT FOR VIRGINIA EASTERN

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Lowe, David G. | 0 | 0 | 0 |
| Sewell, W. Curtis | 0 | 0 | 0 |
| Miller, Tommy E. | 0 | 0 | 0 |
| Prince, William T. | 0 | 0 | 0 |
| Bradberry, James E. | 0 | 1 | 0 |
| Poretz, Barry R. | 0 | 0 | 0 |
| Jones, Thomas R., Jr. | 0 | 0 | 0 |
| Buchanan, Theresa C. | 0 | 0 | 0 |
| Dohnal, Dennis | 1 | 4 | 0 |
| Stillman, F. Bradford | 0 | 1 | 0 |
| O'Grady, Liam | 0 | 0 | 0 |
| SUBTOTAL | 1 | 6 | 0 |
| **DISTRICT JUDGES** | | | |
| Bryan, Albert V., Jr. | 0 | 0 | 0 |
| Williams, Richard L. | 0 | 2 | 0 |
| Cacheris, James C. | 0 | 0 | 0 |
| Doumar, Robert G. | 0 | 4 | 0 |
| Hilton, Claude M. | 1 | 0 | 0 |
| Spencer, James R. | 1 | 2 | 0 |
| Ellis, Thomas Selby, III | 0 | 0 | 0 |
| Smith, Rebecca Beach | 0 | 0 | 0 |
| Morgan, Henry Coke, Jr. | 0 | 0 | 0 |
| Payne, Robert E. | 0 | 0 | 0 |
| Brinkema, Leonie M. | 0 | 0 | 0 |
| Jackson, Raymond Alvin | 0 | 0 | 0 |
| Friedman, Jerome B. | 1 | 4 | 0 |
| Lee, Gerald Bruce | 0 | 0 | 0 |
| Hudson, Henry E. | 0 | 0 | 0 |
| SUBTOTAL | 3 | 12 | 0 |
| DISTRICT TOTAL: | 4 | 18 | 0 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003          RUN: 04/13/2004

U.S. DISTRICT COURT FOR VIRGINIA WESTERN

|                              | CASES | MOTIONS PENDING | BENCH TRIALS |
|------------------------------|-------|-----------------|--------------|
| **MAGISTRATE JUDGES**        |       |                 |              |
| Conrad, Glen E.              | 0     | 6               | 0            |
| Crigler, B. Waugh            | 0     | 0               | 0            |
| Sargent, Pamela M.           | 0     | 0               | 0            |
| SUBTOTAL                     | 0     | 6               | 0            |
|                              |       |                 |              |
| **DISTRICT JUDGES**          |       |                 |              |
| Turk, James C.               | 9     | 53              | 0            |
| Williams, Glen M.            | 10    | 5               | 0            |
| Michael, James H., Jr.       | 1     | 1               | 0            |
| Kiser, Jackson L.            | 1     | 42              | 0            |
| Wilson, Samuel Grayson       | 0     | 0               | 0            |
| Jones, James Parker          | 1     | 0               | 0            |
| Moon, Norman K.              | 4     | 4               | 0            |
| SUBTOTAL                     | 26    | 105             | 0            |

DISTRICT TOTAL:                      26    111    0

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003          RUN: 04/13/2004

U.S. DISTRICT COURT FOR W VIRGINIA NORTHERN

|                              | CASES | MOTIONS PENDING | BENCH TRIALS |
|------------------------------|-------|-----------------|--------------|
| **MAGISTRATE JUDGES**        |       |                 |              |
| Seibert, James E.            | 0     | 0               | 0            |
| Kaull, John S.               | 0     | 2               | 0            |
| Joel, David J.               | 0     | 0               | 0            |
| SUBTOTAL                     | 0     | 2               | 0            |
|                              |       |                 |              |
| **DISTRICT JUDGES**          |       |                 |              |
| Maxwell, Robert Earl         | 15    | 15              | 0            |
| Stamp, Frederick P., Jr.     | 1     | 0               | 0            |
| Keeley, Irene M.             | 0     | 0               | 0            |
| Broadwater, W. Craig         | 3     | 22              | 0            |
| Williams, Richard L.         | 0     | 4               | 0            |
| SUBTOTAL                     | 19    | 41              | 0            |

DISTRICT TOTAL:                                        19       43        0

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                           RUN: 04/13/2004

U.S. DISTRICT COURT FOR W VIRGINIA SOUTHERN

|                              | CASES | MOTIONS PENDING | BENCH TRIALS |
|------------------------------|-------|-----------------|--------------|
| **MAGISTRATE JUDGES**        |       |                 |              |
| Taylor, Maurice G. Jr.       | 0     | 0               | 0            |
| Hogg, Jerry D.               | 0     | 0               | 0            |
| Stanley, Mary E.             | 0     | 0               | 0            |
| Vandervort, R. Clarke        | 0     | 0               | 0            |
| SUBTOTAL                     | 0     | 0               | 0            |
| **DISTRICT JUDGES**          |       |                 |              |
| Haden, Charles H., II        | 0     | 0               | 0            |
| Copenhaver, John T., Jr.     | 3     | 37              | 0            |
| Staker, Robert J.            | 0     | 0               | 0            |
| Hallanan, Elizabeth V.       | 0     | 0               | 0            |
| Faber, David A.              | 0     | 0               | 0            |
| Goodwin, Joseph R.           | 0     | 0               | 0            |
| Chambers, Robert C.          | 2     | 0               | 0            |
| SUBTOTAL                     | 5     | 37              | 0            |

DISTRICT TOTAL:                                         5       37        0

CIRCUIT  TOTAL:                                       308     1049        2

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                           RUN: 04/13/2004

U.S. DISTRICT COURT FOR LOUISIANA EASTERN

|                              | CASES | MOTIONS PENDING | BENCH TRIALS |
|------------------------------|-------|-----------------|--------------|
| **MAGISTRATE JUDGES**        |       |                 |              |
| Chasez, Alma                 | 0     | 0               | 0            |
| Moore, Louis, Jr.            | 0     | 0               | 0            |
| Wilkinson, Joseph C., Jr.    | 0     | 0               | 0            |
| Shushan, Sally               | 0     | 0               | 0            |
| Roby, Karen Wells            | 0     | 0               | 0            |
| Knowles, Daniel E., III      | 0     | 2               | 0            |
| SUBTOTAL                     | 0     | 2               | 0            |
| **DISTRICT JUDGES**          |       |                 |              |
| Duplantier, Adrian G.        | 0     | 0               | 0            |

```
                        Beer, Peter                      1        2        0
                        McNamara, A. J.                  0        0        0
                        Feldman, Martin L. C.           1        0        0
                        Livaudais, Marcel, Jr.          2        0        0
                        Berrigan, Helen G.              1        2        0
                        Duval, Stanwood R., Jr.         2        0        0
                        Vance, Sarah S.                 2        3        0
                        Porteous, G. Thomas, Jr.        2        4        1
                        Fallon, Eldon E.               20        0        0
                        Lemmon, Mary Ann Vial           2        8        0
                        Lemelle, Ivan L. R.             3        2        0
                        Barbier, Carl J.                0        0        0
                        Engelhardt, Kurt D.             0        1        1
                        Zainey, Jay C.                  2        2        0
                        Africk, Lance M.                1       15        0

            SUBTOTAL                                    39       39        2


DISTRICT TOTAL:                                         39       41        2
```

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR LOUISIANA MIDDLE

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Riedlinger, Stephen C. | 0 | 3 | 0 |
| Noland, Christine | 0 | 6 | 0 |
| Dalby, Docia L. | 0 | 0 | 0 |
| SUBTOTAL | 0 | 9 | 0 |
| **DISTRICT JUDGES** | | | |
| Parker, John V. | 1 | 10 | 0 |
| Polozola, Frank J. | 3 | 1 | 0 |
| Tyson, Ralph E. | 7813 | 22 | 1 |
| Brady, James J. | 8 | 2 | 0 |
| SUBTOTAL | 7825 | 35 | 1 |
| DISTRICT TOTAL: | 7825 | 44 | 1 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR LOUISIANA WESTERN

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |

|  | | | |
|---|---|---|---|
| Methvin, Mildred E. | 0 | 0 | 0 |
| Payne, Roy S. | 1 | 1 | 0 |
| Wilson, Alonzo P. | 2 | 0 | 0 |
| Kirk, James D. | 2 | 2 | 0 |
| Hill, Charles M. | 0 | 0 | 0 |
| Hayes, Karen | 0 | 1 | 0 |
| Shemwell, Robert | 0 | 0 | 0 |
| SUBTOTAL | 5 | 4 | 0 |

DISTRICT JUDGES

|  | | | |
|---|---|---|---|
| Stagg, Tom | 1 | 1 | 0 |
| Little, F. A., Jr. | 6 | 18 | 0 |
| Walter, Donald E. | 3 | 5 | 1 |
| Haik, Richard T. | 37 | 20 | 0 |
| Trimble, James T., Jr. | 22 | 2 | 0 |
| Doherty, Rebecca F. | 4 | 0 | 0 |
| Melancon, Tucker L. | 2 | 0 | 0 |
| James, Robert G. | 2 | 1 | 0 |
| Drell, Dee D. | 5 | 0 | 0 |
| Hicks, S. Maurice, Jr. | 3 | 0 | 0 |
| Minaldi, Patricia H. | 3 | 0 | 0 |
| SUBTOTAL | 88 | 47 | 1 |

DISTRICT TOTAL: 93 51 1

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003          RUN: 04/13/2004

U.S. DISTRICT COURT FOR MISSISSIPPI NORTHERN

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| MAGISTRATE JUDGES | | | |
| Davis, Jerry A. | 4 | 0 | 0 |
| Alexander, Allan | 4 | 0 | 0 |
| Bogen, Eugene M. | 2 | 7 | 0 |
| SUBTOTAL | 10 | 7 | 0 |
| DISTRICT JUDGES | | | |
| Biggers, Neal | 2 | 7 | 0 |
| Davidson, Glen H. | 12 | 1 | 0 |
| Pepper, W. Allen, Jr. | 5 | 5 | 0 |
| Mills, Michael P. | 1 | 1 | 0 |
| SUBTOTAL | 20 | 14 | 0 |

DISTRICT TOTAL: 30 21 0

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003          RUN: 04/13/2004

U.S. DISTRICT COURT FOR MISSISSIPPI SOUTHERN

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Roper, John M. | 0 | 0 | 0 |
| Nicols, Alfred G., Jr. | 0 | 0 | 0 |
| Sumner, James C. | 0 | 0 | 0 |
| Guirola, Louis, Jr. | 3 | 0 | 0 |
| SUBTOTAL | 3 | 0 | 0 |
| **DISTRICT JUDGES** | | | |
| Russell, Dan M., Jr. | 0 | 0 | 0 |
| Senter, L. T., Jr. | 0 | 26 | 0 |
| Barbour, William Henry, Jr. | 3 | 30 | 0 |
| Lee, Tom S. | 3 | 7 | 0 |
| Wingate, Henry T. | 17 | 38 | 2 |
| Gex, Walter J., III | 1 | 4 | 0 |
| Pickering, Charles W., Sr. | 9    1 | 13 | 0 |
| Bramlette, David | 2 | 6 | 0 |
| SUBTOTAL | 35 | 224 | 2 |
| **DISTRICT TOTAL:** | 38 | 224 | 2 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                          RUN: 04/13/2004

U.S. DISTRICT COURT FOR TEXAS NORTHERN

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Sanderson, William F. | 0 | 2 | 0 |
| Warnick, J. Q. Jr. | 0 | 0 | 0 |
| Averitte, Clinton E. | 0 | 0 | 0 |
| Kaplan, Jeffrey A. | 1 | 0 | 0 |
| Bleil, Charles M. | 0 | 0 | 0 |
| Stickney, Paul D. | 1 | 0 | 0 |
| Koenig, Nancy M. | 0 | 0 | 0 |
| Ramirez, Irma C. | 1 | 0 | 0 |
| Lane, Philip R. | 0 | 0 | 0 |
| Roach, Robert K. | 0 | 0 | 0 |
| SUBTOTAL | 3 | 2 | 0 |
| **DISTRICT JUDGES** | | | |
| Sanders, Barefoot | 2 | 0 | 0 |

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| Robinson, Mary Lou | 4 | 0 | 0 |
| Ward, T. John | 0 | 0 | 0 |
| Buchmeyer, Jerry | 5 | 20 | 1 |
| Fish, A. Joe | 0 | 0 | 0 |
| Maloney, Robert B. | 0 | 3 | 0 |
| Fitzwater, Sidney A. | 2 | 0 | 0 |
| Cummings, Samuel Ray | 0 | 0 | 0 |
| McBryde, John H. | 0 | 0 | 0 |
| Solis, Jorge A. | 6 | 15 | 0 |
| Means, Terry | 3 | 0 | 0 |
| Lindsay, Sam A. | 8 | 7 | 2 |
| Lynn, Barbara M. G. | 7 | 1 | 0 |
| Godbey, David C. | 3 | 0 | 0 |
| Kinkeade, James Edgar | 0 | 0 | 0 |
| | | | |
| SUBTOTAL | 40 | 46 | 3 |
| | | | |
| DISTRICT TOTAL: | 43 | 48 | 3 |

DISTRICT SUMMARY REPORT
AS OF DATE: 09/30/2003                     RUN: 04/13/2004

U.S. DISTRICT COURT FOR TEXAS EASTERN

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| McKee, Harry W. | 1 | 0 | 0 |
| Hines, Earl S. | 0 | 0 | 0 |
| Guthrie, Judith K. | 0 | 0 | 0 |
| Radford, Wendell C. | 1 | 0 | 0 |
| Craven, Carolyn M. | 1 | 0 | 0 |
| Bush, Don D. | 1 | 0 | 0 |
| | | | |
| SUBTOTAL | 4 | 0 | 0 |
| | | | |
| **DISTRICT JUDGES** | | | |
| Justice, William Wayne | 0 | 0 | 0 |
| Steger, William M. | 0 | 0 | 0 |
| Cobb, Howell | 0 | 0 | 0 |
| Brown, Paul N. | 5 | 2 | 0 |
| Schell, Richard A. | 12 | 6 | 0 |
| Folsom, David | 5 | 1 | 0 |
| Heartfield, Thad | 0 | 6 | 0 |
| Ward, T. John | 2 | 4 | 0 |
| Davis, Leonard E. | 0 | 6 | 0 |
| Clark, Ron | 1 | 0 | 0 |
| Unassigned | 2 | 15 | 0 |
| | | | |
| SUBTOTAL | 27 | 40 | 0 |
| | | | |
| DISTRICT TOTAL: | 31 | 40 | 0 |

DISTRICT SUMMARY REPORT
AS OF DATE: 09/30/2003                     RUN: 04/13/2004

U.S. DISTRICT COURT FOR TEXAS SOUTHERN

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Botley, Calvin | 0 | 0 | 0 |
| Notzon, Marcel C. | 0 | 0 | 0 |
| Garza, Fidencio G., Jr. | 0 | 0 | 0 |
| Stacy, Frances | 0 | 0 | 0 |
| Johnson, Nancy K. | 0 | 0 | 0 |
| Froeschner, John R. | 3 | 3 | 1 |
| Crone, Marcia A. | 0 | 0 | 0 |
| Ormsby, Peter E. | 0 | 0 | 0 |
| Black, John W. | 0 | 2 | 0 |
| Milloy, Maryrose | 0 | 0 | 0 |
| Ramos, Dorina | 0 | 0 | 0 |
| Ellington, B. Janice | 1 | 0 | 0 |
| Cooper-Hill, Jane | 0 | 0 | 0 |
| Recio, Felix, Jr. | 0 | 0 | 0 |
| Arce-Flores, Adriana | 0 | 0 | 0 |
| Unassigned Usm | 3 | 2 | 0 |
| SUBTOTAL | 7 | 7 | 1 |
| **DISTRICT JUDGES** | | | |
| Kazen, George P. | 1 | 0 | 0 |
| Vela, Filemon B. | 1 | 2 | 0 |
| Head, Hayden W., Jr. | 3 | 2 | 0 |
| Hinojosa, Ricardo H. | 7 | 1 | 0 |
| Hughes, Lynn N. | 11 | 60 | 0 |
| Hittner, David | 0 | 0 | 0 |
| Hoyt, Kenneth M. | 2 | 1 | 0 |
| Lake, Simeon Timothy, III | 0 | 0 | 0 |
| Harmon, Melinda | 5 | 37 | 1 |
| Rainey, John D. | 9 | 1 | 0 |
| Kent, Samuel B. | 4 | 2 | 0 |
| Werlein, Ewing, Jr. | 3 | 0 | 0 |
| Rosenthal, Lee H. | 1 | 0 | 0 |
| Jack, Janis Graham | 0 | 0 | 0 |
| Gilmore, Vanessa D. | 2 | 0 | 0 |
| Atlas, Nancy F. | 1 | 1 | 0 |
| Tagle, Hilda G. | 2 | 4 | 0 |
| Ellison, Keith P. | 0 | 0 | 0 |
| Crane, Randy | 4 | 1 | 0 |
| Hanen, Andrew S. | 0 | 4 | 0 |
| SUBTOTAL | 56 | 116 | 1 |
| DISTRICT TOTAL: | 63 | 123 | 2 |

DISTRICT SUMMARY REPORT
AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR TEXAS WESTERN

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| MAGISTRATE JUDGES |  |  |  |
| Edwards, Durwood | 0 | 0 | 0 |
| Green, Dennis G. | 0 | 0 | 0 |
| Capelle, Stephen | 1 | 0 | 0 |
| Primomo, John C. | 0 | 0 | 0 |
| Nowak, Nancy S. | 1 | 0 | 0 |
| Mesa, Richard | 0 | 0 | 0 |
| McDonald, Michael S. | 0 | 0 | 0 |
| Platt, L. Stuart | 0 | 1 | 0 |
| Mathy, Pamela Ann | 0 | 0 | 0 |
| Austin, Andrew W. | 0 | 0 | 0 |
| Ludlum, Alia Moses | 0 | 0 | 0 |
| Garney, Norbert J. | 0 | 0 | 0 |
| Manske, Jeffrey C. | 0 | 0 | 0 |
| Pitman, Robert L. | 0 | 0 | 0 |
| Deaton, William W, Jr. | 0 | 0 | 0 |
| SUBTOTAL | 2 | 1 | 0 |
| DISTRICT JUDGES |  |  |  |
| Justice, William Wayne | 7 | 0 | 0 |
| Hudspeth, Harry Lee | 1 | 2 | 0 |
| Restani, Jane A. | 0 | 3 | 0 |
| Nowlin, James R. | 2 | 0 | 0 |
| Prado, Edward C. | 0 | 0 | 0 |
| Smith, Walter S., Jr. | 1 | 3 | 0 |
| Sparks, Sam | 0 | 0 | 0 |
| Furgeson, W. Royal, Jr. | 5 | 14 | 0 |
| Garcia, Orlando L. | 1 | 4 | 0 |
| Biery, Samuel F., Jr. | 4 | 10 | 0 |
| Briones, David | 0 | 0 | 0 |
| Martinez, Philip R. | 0 | 0 | 0 |
| Ludlum, Alia Moses | 0 | 0 | 0 |
| Junell, Robert A. | 5 | 1 | 0 |
| Cardone, Kathleen | 0 | 0 | 0 |
| Yeakel, Earl L., III | 0 | 0 | 0 |
| Montalvo, Frank | 0 | 0 | 0 |
| Rodriguez, Xavier | 6 | 0 | 0 |
| SUBTOTAL | 32 | 37 | 0 |
| DISTRICT TOTAL: | 34 | 38 | 0 |
| CIRCUIT TOTAL: | 8196 | 630 | 11 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR KENTUCKY EASTERN

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|

MAGISTRATE JUDGES

| | | | |
|---|---|---|---|
| Patterson, Peggy P. | 0 | 2 | 0 |
| Wehrman, J. Gregory | 0 | 0 | 0 |
| Todd, James B. | 0 | 0 | 0 |
| Johnson, J. B., Jr. | 0 | 0 | 0 |
| SUBTOTAL | 0 | 2 | 0 |

DISTRICT JUDGES

| | | | |
|---|---|---|---|
| Siler, Eugene E., Jr. | 1 | 0 | 0 |
| Wiseman, Thomas A., Jr. | 0 | 0 | 1 |
| Bertelsman, William O. | 4 | 6 | 0 |
| Unthank, G. Wix | 0 | 0 | 0 |
| Wilhoit, Henry R., Jr. | 2 | 3 | 0 |
| Forester, Karl S. | 0 | 0 | 0 |
| Hood, Joseph M. | 3 | 2 | 0 |
| Coffman, Jennifer B. | 1 | 0 | 0 |
| Caldwell, Karen K. | 5 | 8 | 0 |
| Russell, Thomas B. | 0 | 3 | 0 |
| Reeves, Danny C. | 3 | 0 | 0 |
| Bunning, David L. | 4 | 9 | 0 |
| SUBTOTAL | 23 | 31 | 1 |

DISTRICT TOTAL: 23 33 1

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR KENTUCKY WESTERN

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|

MAGISTRATE JUDGES

| | | | |
|---|---|---|---|
| King, William D. | 0 | 0 | 0 |
| Gambill, C. Cleveland | 0 | 0 | 0 |
| Moyer, James D. | 1 | 0 | 0 |
| Goebel, E. Robert | 0 | 0 | 0 |
| SUBTOTAL | 1 | 0 | 0 |

DISTRICT JUDGES

| | | | |
|---|---|---|---|
| Johnstone, Edward H. | 0 | 0 | 0 |
| Simpson, Charles R., III | 19 | 0 | 0 |
| Coffman, Jennifer B. | 3 | 0 | 0 |
| Heyburn, John G., II | 5 | 1 | 0 |
| Russell, Thomas B. | 3 | 1 | 0 |
| McKinley, Joseph H., Jr. | 7 | 0 | 0 |
| Unassigned | 0 | 0 | 1 |

|                          | CASES | MOTIONS PENDING | BENCH TRIALS |
|--------------------------|-------|-----------------|--------------|
| SUBTOTAL                 | 37    | 2               | 1            |
| DISTRICT TOTAL:          | 38    | 2               | 1            |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR MICHIGAN EASTERN

|                          | CASES | MOTIONS PENDING | BENCH TRIALS |
|--------------------------|-------|-----------------|--------------|
| **MAGISTRATE JUDGES**    |       |                 |              |
| Carlson, Thomas A.       | 0     | 0               | 0            |
| Pepe, Steven D.          | 0     | 0               | 0            |
| Binder, Charles E.       | 0     | 0               | 0            |
| Morgan, Virginia         | 0     | 0               | 0            |
| Scheer, Donald A.        | 0     | 1               | 0            |
| Capel, Wallace, Jr.      | 0     | 0               | 0            |
| Whalen, R. Steven        | 0     | 0               | 0            |
| Komives, Paul J.         | 0     | 0               | 0            |
| SUBTOTAL                 | 0     | 1               | 0            |
| **DISTRICT JUDGES**      |       |                 |              |
| Keith, Damon J.          | 1     | 1               | 0            |
| Feikens, John            | 3     | 8               | 0            |
| Cook, Julian Abele, Jr.  | 5     | 0               | 0            |
| Newblatt, Stewart A.     | 0     | 0               | 0            |
| Cohn, Avern              | 1     | 0               | 0            |
| Taylor, Anna Diggs       | 0     | 0               | 0            |
| Woods, George E.         | 12    | 0               | 0            |
| Zatkoff, Lawrence P.     | 0     | 0               | 0            |
| Duggan, Patrick J.       | 3     | 3               | 0            |
| Friedman, Bernard A.     | 3     | 0               | 0            |
| Gadola, Paul V.          | 3     | 2               | 0            |
| Rosen, Gerald E.         | 7     | 11              | 1            |
| Cleland, Robert H.       | 0     | 0               | 0            |
| Edmunds, Nancy G.        | 17    | 0               | 0            |
| Hood, Denise Page        | 8     | 14              | 2            |
| Borman, Paul D.          | 3     | 5               | 0            |
| O'Meara, John Corbett    | 3     | 0               | 0            |
| Tarnow, Arthur J.        | 1     | 4               | 0            |
| Steeh, George Caram, III | 0     | 0               | 0            |
| Roberts, Victoria A.     | 2     | 0               | 0            |
| Battani, Marianne O.     | 1     | 0               | 0            |
| Lawson, David M.         | 11    | 18              | 1            |
| SUBTOTAL                 | 84    | 66              | 4            |
| DISTRICT TOTAL:          | 84    | 67              | 4            |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR MICHIGAN WESTERN

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|

**MAGISTRATE JUDGES**

| | | | |
|---|---|---|---|
| Brenneman, Hugh W. Jr. | 0 | 0 | 0 |
| Scoville, Joseph G. | 0 | 0 | 0 |
| Greeley, Timothy P. | 0 | 0 | 0 |
| Carmody, Ellen | 0 | 0 | 0 |
| SUBTOTAL | 0 | 0 | 0 |

**DISTRICT JUDGES**

| | | | |
|---|---|---|---|
| Miles, Wendell A. | 1 | 4 | 0 |
| Hillman, Douglas W. | 0 | 0 | 0 |
| Enslen, Richard A. | 7 | 0 | 0 |
| Bell, Robert Holmes | 4 | 4 | 0 |
| McKeague, David W. | 2 | 0 | 0 |
| Quist, Gordon J. | 2 | 3 | 0 |
| SUBTOTAL | 16 | 11 | 0 |

| | | | |
|---|---|---|---|
| DISTRICT TOTAL: | 16 | 11 | 0 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

## U.S. DISTRICT COURT FOR OHIO NORTHERN

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|

**MAGISTRATE JUDGES**

| | | | |
|---|---|---|---|
| Streepy, Jack B. | 0 | 0 | 0 |
| Perelman, David S. | 0 | 4 | 0 |
| Gallas, James S. | 0 | 2 | 0 |
| Hemann, Patricia A. | 0 | 0 | 0 |
| Armstrong, Vernelis K. | 0 | 0 | 0 |
| Vecchiarelli, Nancy A. | 0 | 2 | 0 |
| Thomas, James D. | 0 | 0 | 0 |
| Limbert, George J. | 1 | 2 | 0 |
| Baughman, William H. | 1 | 6 | 0 |
| SUBTOTAL | 2 | 16 | 0 |

**DISTRICT JUDGES**

| | | | |
|---|---|---|---|
| Manos, John M. | 3 | 30 | 0 |
| Aldrich, Ann | 4 | 5 | 0 |
| Potter, John W. | 0 | 0 | 0 |
| Dowd, David D., Jr. | 0 | 5 | 0 |
| Bell, Sam H. | 0 | 0 | 0 |
| Matia, Paul R. | 2 | 11 | 0 |

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| Wells, Lesley Brooks | 11 | 32 | 0 |
| Carr, James G. | 4 | 7 | 0 |
| Oliver, Solomon, Jr. | 8 | 0 | 0 |
| Katz, David A. | 8 | 11 | 0 |
| O'Malley, Kathleen M. | 3 | 0 | 0 |
| Economus, Peter C. | 0 | 6 | 0 |
| Nugent, Donald C. | 1 | 4 | 0 |
| Gaughan, Patricia A. | 2 | 1 | 0 |
| Gwin, James S. | 0 | 0 | 0 |
| Polster, Dan A. | 4 | 4 | 0 |
| Adams, John R. | 0 | 15 | 0 |
| | | | |
| SUBTOTAL | 50 | 131 | 0 |

DISTRICT TOTAL:  52  147  0

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR OHIO SOUTHERN

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Abel, Mark R. | 3 | 0 | 0 |
| King, Norah M. | 1 | 0 | 0 |
| Merz, Michael R. | 1 | 1 | 0 |
| Kemp, Terrence | 0 | 1 | 0 |
| Sherman, Jack, Jr. | 3 | 1 | 0 |
| Hogan, Timothy S. | 1 | 3 | 0 |
| Ovington, Sharon L. | 1 | 0 | 0 |
| | | | |
| SUBTOTAL | 10 | 6 | 0 |
| | | | |
| **DISTRICT JUDGES** | | | |
| Spiegel, S. Arthur | 46 | 16 | 0 |
| Holschuh, John David | 11 | 10 | 0 |
| Rice, Walter Herbert | 20 | 0 | 0 |
| Weber, Herman J. | 7 | 32 | 0 |
| Graham, James L. | 4 | 3 | 0 |
| Smith, George C. | 16 | 5 | 0 |
| Beckwith, Sandra S. | 12 | 73 | 0 |
| Dlott, Susan J. | 17 | 40 | 0 |
| Sargus, Edmund A., Jr. | 8 | 0 | 0 |
| Marbley, Algenon L. | 16 | 7 | 0 |
| Rose, Thomas M. | 13 | 10 | 0 |
| Frost, Gregory L. | 4 | 0 | 0 |
| Unassigned | 0 | 3 | 0 |
| | | | |
| SUBTOTAL | 174 | 199 | 0 |

DISTRICT TOTAL:  184  205  0

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR TENNESSEE EASTERN

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Murrian, Robert P. | 0 | 0 | 0 |
| Powers, John Y. | 0 | 1 | 0 |
| Phillips, Thomas W. | 0 | 0 | 0 |
| Inman, Dennis Hisey | 2 | 0 | 0 |
| Carter, William B. Mitche | 0 | 2 | 0 |
| Shirley, C. Clifford | 3 | 1 | 0 |
| Guyton, H. Bruce | 0 | 0 | 0 |
| SUBTOTAL | 5 | 4 | 0 |
| **DISTRICT JUDGES** | | | |
| Hull, Thomas Gray | 0 | 0 | 0 |
| Jarvis, James H. | 6 | 21 | 0 |
| Edgar, R. Allan | 2 | 9 | 0 |
| Jordan, Robert Leon | 3 | 2 | 1 |
| Collier, Curtis Lynn | 0 | 1 | 0 |
| Phillips, Thomas W. | 11 | 23 | 0 |
| Varlan, Thomas A. | 5 | 20 | 0 |
| Greer, J. Ronnie | 3 | 0 | 0 |
| SUBTOTAL | 30 | 76 | 1 |
| DISTRICT TOTAL: | 35 | 80 | 1 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                RUN: 04/13/2004

U.S. DISTRICT COURT FOR TENNESSEE MIDDLE

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Griffin, Juliet E. | 2 | 0 | 0 |
| Brown, Joe B. | 0 | 0 | 0 |
| Knowles, E. Clifton | 0 | 0 | 0 |
| Unassigned Usm | 1 | 0 | 0 |
| SUBTOTAL | 3 | 0 | 0 |
| **DISTRICT JUDGES** | | | |
| Wiseman, Thomas A., Jr. | 6 | 6 | 0 |
| Nixon, John T. | 12 | 14 | 0 |
| Higgins, Thomas A. | 3 | 13 | 0 |
| Echols, Robert L. | 0 | 0 | 0 |

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| Campbell, Todd J. | 4 | 0 | 0 |
| Trauger, Aleta Arthur | 5 | 3 | 0 |
| Haynes, william Joseph, Jr. | 1 | 3 | 0 |
| SUBTOTAL | 31 | 39 | 0 |
| DISTRICT TOTAL: | 34 | 39 | 0 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR TENNESSEE WESTERN

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Allen, James H., Sr. | 0 | 0 | 0 |
| Vescovo, Diane K. | 0 | 0 | 0 |
| Pham, Tu M. | 0 | 0 | 0 |
| SUBTOTAL | 0 | 0 | 0 |
| **DISTRICT JUDGES** | | | |
| Gibbons, Julia Smith | 0 | 0 | 0 |
| Johnstone, Edward H. | 0 | 1 | 0 |
| Todd, James Dale | 4 | 1 | 0 |
| McCalla, Jon P. | 1 | 0 | 0 |
| Donald, Bernice Bouie | 11 | 20 | 1 |
| Mays, Samuel H., Jr. | 4 | 12 | 0 |
| Breen, J. Daniel | 4 | 29 | 0 |
| SUBTOTAL | 24 | 63 | 1 |
| DISTRICT TOTAL: | 24 | 63 | 1 |
| CIRCUIT TOTAL: | 490 | 647 | 8 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR ILLINOIS NORTHERN

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Rosemond, W. Thomas, Jr. | 0 | 0 | 0 |
| Bobrick, Edward A. | 1 | 0 | 0 |
| Mahoney, Patrick M. | 0 | 0 | 0 |
| Ashman, Martin C. | 4 | 0 | 0 |
| Keys, Arlander | 2 | 0 | 0 |
| Denlow, Morton | 0 | 0 | 0 |
| Levin, Ian H. | 4 | 0 | 0 |

|                          | CASES | MOTIONS PENDING | BENCH TRIALS |
|--------------------------|-------|------|------|
| Nolan, Nan R.            | 5     | 2    | 0    |
| Schenikier, Sidney       | 0     | 0    | 0    |
| Brown, Geraldine Soat    | 4     | 0    | 0    |
| Mason, Michael T.        | 2     | 0    | 0    |
| Unassigned Usm           | 1     | 0    | 0    |
| SUBTOTAL                 | 23    | 2    | 0    |

DISTRICT JUDGES

|                          | CASES | MOTIONS PENDING | BENCH TRIALS |
|--------------------------|-------|------|------|
| Urbom, Warren K.         | 2     | 0    | 0    |
| Rosenbaum, James M.      | 0     | 3    | 0    |
| Grady, John F.           | 7     | 1    | 0    |
| Aspen, Marvin E.         | 0     | 0    | 0    |
| Moran, James B.          | 15    | 3    | 0    |
| Shadur, Milton I.        | 3     | 0    | 0    |
| Kocoras, Charles P.      | 115   | 0    | 0    |
| Nordberg, John A.        | 13    | 16   | 0    |
| Hart, William T.         | 3     | 2    | 0    |
| Plunkett, Paul E.        | 4     | 0    | 0    |
| Norgle, Charles R., Sr.  | 6     | 0    | 0    |
| Holderman, James F., Jr. | 0     | 0    | 0    |
| Duff, Brian Barnett      | 0     | 0    | 0    |
| Leinenweber, Harry D.    | 19    | 0    | 0    |
| Zagel, James B.          | 33    | 12   | 0    |
| Conlon, Suzanne B.       | 0     | 0    | 0    |
| Marovich, George M.      | 5     | 27   | 0    |
| Lindberg, George W.      | 2     | 0    | 0    |
| Andersen, Wayne R.       | 38    | 5    | 0    |
| Reinhard, Philip G.      | 28    | 0    | 0    |
| Castillo, Ruben          | 0     | 0    | 0    |
| Manning, Blanche M.      | 12    | 0    | 0    |
| Coar, David H.           | 3     | 13   | 0    |
| Gettleman, Robert W.     | 6     | 0    | 0    |
| Bucklo, Elaine E.        | 5     | 0    | 0    |
| Gottschall, Joan B.      | 33    | 1    | 0    |
| Pallmeyer, Rebecca R.    | 4     | 0    | 0    |
| Kennelly, Matthew F.     | 2     | 0    | 0    |
| Hibbler, William J.      | 18    | 0    | 0    |
| Guzman, Ronald A.        | 8     | 0    | 0    |

DISTRICT SUMMARY REPORT
AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR ILLINOIS NORTHERN

|                          | CASES | MOTIONS PENDING | BENCH TRIALS |
|--------------------------|-------|------|------|
| Darrah, John W.          | 4     | 0    | 0    |
| Lefkow, Joan Humphrey    | 12    | 0    | 0    |
| St. Eve, Amy J.          | 6     | 0    | 0    |
| Der-Yeghiayan, Samuel    | 9     | 0    | 0    |
| Unassigned               | 2     | 0    | 0    |
| SUBTOTAL                 | 417   | 83   | 0    |
| DISTRICT TOTAL:          | 440   | 85   | 0    |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR ILLINOIS CENTRAL

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Evans, Charles H. | 0 | 0 | 0 |
| Bernthal, David G. | 0 | 0 | 0 |
| Cudmore, Byron G. | 0 | 0 | 0 |
| Gorman, John A. | 2 | 1 | 0 |
| SUBTOTAL | 2 | 1 | 0 |
| | | | |
| **DISTRICT JUDGES** | | | |
| Baker, Harold Albert | 2 | 0 | 0 |
| Mihm, Michael M. | 1 | 1 | 0 |
| Mills, Richard | 3 | 0 | 0 |
| McDade, Joe Billy | 0 | 6 | 0 |
| McCuskey, Michael Patrick | 1 | 1 | 0 |
| Scott, Jeanne E. | 2 | 0 | 0 |
| SUBTOTAL | 9 | 8 | 0 |

DISTRICT TOTAL:                          11        9        0

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR ILLINOIS SOUTHERN

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Cohn, Gerald B. | 0 | 0 | 0 |
| Frazier, Phillip M | 1 | 2 | 0 |
| Proud, Clifford J. | 4 | 0 | 0 |
| SUBTOTAL | 5 | 2 | 0 |
| | | | |
| **DISTRICT JUDGES** | | | |
| Foreman, James L. | 4 | 0 | 0 |
| Stiehl, William D. | 1 | 0 | 0 |
| Gilbert, J. Phil | 9 | 10 | 0 |
| Murphy, G. Patrick | 8 | 0 | 0 |
| Herndon, David R. | 11 | 4 | 0 |
| Reagan, Michael J. | 10 | 1 | 0 |
| SUBTOTAL | 43 | 15 | 0 |

DISTRICT TOTAL:                                        48        17         0

U.S. DISTRICT COURT FOR INDIANA NORTHERN

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Rodovich, Andrew P. | 6 | 1 | 0 |
| Pierce, Robin D. | 0 | 0 | 0 |
| Cosbey, Roger B. | 2 | 1 | 0 |
| Nuechterlein, Christopher | 4 | 6 | 0 |
| Cherry, Paul R. | 0 | 0 | 0 |
| SUBTOTAL | 12 | 8 | 0 |
| **DISTRICT JUDGES** | | | |
| Sharp, Allen | 0 | 10 | 0 |
| Lee, William C. | 1 | 1 | 0 |
| Moody, James T. | 0 | 6 | 0 |
| Miller, Robert L., Jr. | 2 | 1 | 0 |
| Lozano, Rudy | 4 | 0 | 0 |
| Simon, Philip Peter | 14 | 12 | 0 |
| Springmann, Theresa L. | 2 | 0 | 0 |
| SUBTOTAL | 23 | 30 | 0 |

DISTRICT TOTAL:                                       35        38         0

U.S. DISTRICT COURT FOR INDIANA SOUTHERN

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Godich, John P. | 6 | 0 | 0 |
| Foster, Kennard P. | 0 | 0 | 0 |
| Hussmann, William G., Jr. | 1 | 0 | 0 |
| Shields, V. Sue | 3 | 0 | 0 |
| Baker, Tim A. | 0 | 0 | 0 |
| Lawrence, William T. | 0 | 0 | 0 |
| Lewis, Jordan D. | 0 | 0 | 0 |
| Naville, Michael G. | 0 | 0 | 0 |
| Unassigned Usm | 0 | 0 | 0 |
| SUBTOTAL | 10 | 0 | 0 |

```
DISTRICT JUDGES

    Dillin, S. Hugh                    0         0         0
    Barker, Sarah Evans               12        18         0
    McKinney, Larry J.                19        13         0
    Tinder, John Daniel               18         8         0
    Hamilton, David F.                30         0         0
    Young, Richard L.                 13         3         0

        SUBTOTAL                      92        42         0


DISTRICT TOTAL:                      102        42         0
                            DISTRICT SUMMARY REPORT
        AS OF DATE: 09/30/2003                  RUN: 04/13/2004


            U.S. DISTRICT COURT FOR WISCONSIN EASTERN

                                           MOTIONS     BENCH
                                   CASES   PENDING    TRIALS


    MAGISTRATE JUDGES

    Goodstein, Aaron E.                0         0         0
    Gorence, Patricia J.               1         6         0
    Callahan, William E.               0         0         0
    Sickel, James                      0         0         0

        SUBTOTAL                       1         6         0


    DISTRICT JUDGES

    Gordon, Myron L.                   0         0         0
    Curran, Thomas J.                  0         0         0
    Stadtmueller, J.p.                 4         0         0
    Randa, Rudolph T.                  1         2         0
    Clevert, C. N.                     2         4         0
    Adelman, Lynn S.                   4         0         0
    Griesbach, William C.              0         0         0

        SUBTOTAL                      11         6         0


DISTRICT TOTAL:                       12        12         0
                            DISTRICT SUMMARY REPORT
        AS OF DATE: 09/30/2003                  RUN: 04/13/2004


            U.S. DISTRICT COURT FOR WISCONSIN WESTERN

                                           MOTIONS     BENCH
                                   CASES   PENDING    TRIALS


    MAGISTRATE JUDGES

    Crocker, Stephen L.                0         0         0
    Skupniewitz, Joseph W.             0         0         0
```

|  |  |  |  |
|---|---|---|---|
| SUBTOTAL | | 0 | 0 | 0 |

DISTRICT JUDGES

| | | | | |
|---|---|---|---|
| Crabb, Barbara B. | 0 | 0 | 0 |
| Shabaz, John C. | 0 | 0 | 0 |
| SUBTOTAL | 0 | 0 | 0 |

DISTRICT TOTAL:                    0        0        0

CIRCUIT  TOTAL:                  648      203        0

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003              RUN: 04/13/2004

U.S. DISTRICT COURT FOR ARKANSAS EASTERN

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Jones, Henry L., Jr. | 1 | 0 | 0 |
| Young, H. David | 0 | 0 | 0 |
| Forster, John, Jr. | 0 | 0 | 0 |
| Cavaneau, Jerry W. | 0 | 0 | 0 |
| Ray, J. Thomas | 0 | 0 | 0 |
| SUBTOTAL | 1 | 0 | 0 |
| **DISTRICT JUDGES** | | | |
| Eisele, Garnett Thomas | 2 | 1 | 0 |
| Howard , George, Jr | 5 | 5 | 0 |
| Reasoner, Stephen M. | 9 | 9 | 0 |
| Wright, Susan Webber | 1 | 0 | 0 |
| Wilson, William R., Jr. | 0 | 34 | 0 |
| Moody, James Maxwell | 3 | 0 | 0 |
| SUBTOTAL | 20 | 49 | 0 |

DISTRICT TOTAL:                   21       49        0

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003              RUN: 04/13/2004

U.S. DISTRICT COURT FOR ARKANSAS WESTERN

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Stites, Beverly | 0 | 0 | 0 |
| Shepherd, Bobby E. | 0 | 0 | 0 |

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| SUBTOTAL | 0 | 0 | 0 |

DISTRICT JUDGES

| | | | |
|---|---|---|---|
| Hendren, Jimm Larry | 0 | 0 | 0 |
| Barnes, Harry F. | 0 | 0 | 0 |
| Dawson, Robert T. | 0 | 0 | · 0 |
| SUBTOTAL | 0 | 0 | 0 |

| DISTRICT TOTAL: | 0 | 0 | 0 |
|---|---|---|---|

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR IOWA NORTHERN

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|

MAGISTRATE JUDGES

| | | | |
|---|---|---|---|
| Jarvey, John A. | 0 | 0 | 0 |
| Zoss, Paul A. | 0 | 0 | 0 |
| SUBTOTAL | 0 | 0 | 0 |

DISTRICT JUDGES

| | | | |
|---|---|---|---|
| McManus, Edward J. | 0 | 0 | 0 |
| O'Brien, Donald E. | 2 | 12 | 0 |
| Eisele, Garnett Thomas | 1 | 1 | 0 |
| Melloy, Michael J. | 5 | 0 | 0 |
| Bennett, Mark W. | 5 | 5 | 0 |
| Reade, Linda R. | 1 | 0 | 0 |
| SUBTOTAL | 14 | 18 | 0 |

| DISTRICT TOTAL: | 14 | 18 | 0 |
|---|---|---|---|

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR IOWA SOUTHERN

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|

MAGISTRATE JUDGES

| | | | |
|---|---|---|---|
| Bremer, Celeste | 0 | 0 | 0 |
| Walters, Ross A. | 4 | 0 | 0 |
| Shields, Thomas J. | 3 | 5 | 0 |
| Peterson, Richard W. | 0 | 0 | 0 |

|  |  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|---|
| SUBTOTAL |  | 7 | 5 | 0 |

DISTRICT JUDGES

| Vietor, Harold D. | 2 | 2 | 0 |
|---|---|---|---|
| Wolle, Charles R. | 2 | 0 | 0 |
| Longstaff, Ronald E. | 2 | 0 | 0 |
| Pratt, Robert W. | 2 | 5 | 0 |
| Gritzner, James E. | 6 | 3 | 0 |

| SUBTOTAL | 14 | 10 | 0 |
|---|---|---|---|

| DISTRICT TOTAL: | 21 | 15 | 0 |
|---|---|---|---|

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

## U.S. DISTRICT COURT FOR MINNESOTA

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|

MAGISTRATE JUDGES

| Noel, Franklin L. | 0 | 0 | 0 |
|---|---|---|---|
| Lebedoff, Jonathan G. | 0 | 0 | 0 |
| Erickson, Raymond L. | 0 | 0 | 0 |
| Boylan, Arthur J. | 0 | 0 | 0 |
| Nelson, Susan Richard | 0 | 0 | 0 |
| Mayeron, janie S. | 0 | 0 | 0 |
| Klein, Mary Kay | 0 | 0 | 0 |
| Cudd, J. Earl | 0 | 0 | 0 |

| SUBTOTAL | 0 | 0 | 0 |
|---|---|---|---|

DISTRICT JUDGES

| Alsop, Donald D. | 1 | 0 | 0 |
|---|---|---|---|
| MacLaughlin, Harry H. | 0 | 0 | 0 |
| Renner, Robert G. | 0 | 0 | 0 |
| Magnuson, Paul A. | 6 | 0 | 0 |
| Rosenbaum, James M. | 0 | 0 | 0 |
| Doty, David S. | 1 | 0 | 0 |
| Kyle, Richard H. | 0 | 0 | 0 |
| Davis, Michael James | 6 | 1 | 0 |
| Tunheim, John R. | 5 | 0 | 0 |
| Montgomery, Ann D. | 0 | 0 | 0 |
| Frank, Donovan W. | 2 | 0 | 0 |
| Ericksen, Joan N. | 3 | 0 | 0 |

| SUBTOTAL | 24 | 1 | 0 |
|---|---|---|---|

| DISTRICT TOTAL: | 24 | 1 | 0 |
|---|---|---|---|

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR MISSOURI EASTERN

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Noce, David D. | 0 | 0 | 0 |
| Jackson, Carol E. | 0 | 0 | 0 |
| Buckles, Frederick R. | 2 | 2 | 0 |
| Perry, Catherine D. | 0 | 0 | 0 |
| Blanton, Lewis M. | 0 | 0 | 0 |
| Adelman, Terry I. | 1 | 0 | 0 |
| Davis, Lawrence O. | 0 | 0 | 0 |
| Medler, Mary A. | 0 | 0 | 0 |
| Mummert, Thomas C. | 0 | 0 | 0 |
| Fleissig, Audrey G. | 0 | 0 | 0 |
| SUBTOTAL | | 3 | 2 | 0 |
| | | | |
| **DISTRICT JUDGES** | | | |
| Nangle, John F. | 0 | 4 | 0 |
| Limbaugh, Stephen N. | 0 | 0 | 0 |
| Hamilton, Jean C. | 0 | 0 | 0 |
| Stohr, Donald J. | 0 | 0 | 0 |
| Jackson, Carol E. | 1 | 0 | 0 |
| Shaw, Charles A. | 0 | 0 | 0 |
| Perry, Catherine D. | 0 | 0 | 0 |
| Webber, E. Richard | 3 | 0 | 0 |
| Sippel, Rodney W. | 1 | 0 | 0 |
| Autrey, Henry Edward | 0 | 0 | 0 |
| Unassigned | 1 | 5 | 0 |
| SUBTOTAL | | 6 | 9 | 0 |
| | | | |
| DISTRICT TOTAL: | 9 | 11 | 0 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR MISSOURI WESTERN

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| England, James C. | 0 | 1 | 0 |
| Knox, William A. | 1 | 0 | 0 |
| Maughmer, John T. | 1 | 0 | 0 |
| Larsen, Robert E. | 0 | 0 | 0 |
| Hayes, Sarah W. | 1 | 14 | 0 |
| SUBTOTAL | | 3 | 15 | 0 |

```
DISTRICT JUDGES

Clark, Russell G.                    0        0        0
Wright, Scott O.                     6        2        0
Sachs, Howard F.                     4        0        0
Stevens, Joseph E., Jr.              0        0        0
Whipple, Dean                        5        7        0
Gaitan, Fernando J., Jr.            12       13        0
Smith, Ortrie D.                     3        0        0
Fenner, Gary A.                      3        0        0
Laughrey, Nanette K.                 1        0        0
Dorr, Richard E.                     1        0        0
Unassigned                           7        5        0
```

                    SUBTOTAL            42       27        0


DISTRICT TOTAL:                        45       42        0

                              DISTRICT SUMMARY REPORT
          AS OF DATE: 09/30/2003            RUN: 04/13/2004

                U.S. DISTRICT COURT FOR NEBRASKA

                                    MOTIONS    BENCH
                            CASES    PENDING    TRIALS


```
MAGISTRATE JUDGES

Piester, David L.                    0        0        0
Thalken, Thomas D.                   0        0        0
Gossett, F. A., III                  0        0        0
```

                    SUBTOTAL             0        0        0


```
DISTRICT JUDGES

Urbom, Warren K.                     1        0        0
Strom, Lyle E.                       4        7        0
Kopf, Richard G.                     0        0        0
Shanahan, Thomas M.                  0        0        0
Bataillon, Joseph F.                 3        0        0
Camp, Laurie Smith                   1        0        0
```

                    SUBTOTAL             9        7        0


DISTRICT TOTAL:                         9        7        0

                              DISTRICT SUMMARY REPORT
          AS OF DATE: 09/30/2003            RUN: 04/13/2004

                U.S. DISTRICT COURT FOR NORTH DAKOTA

                                    MOTIONS    BENCH
                            CASES    PENDING    TRIALS


MAGISTRATE JUDGES

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| Klein, Karen | 0 | 0 | 0 |
| Kautzmann, Dwight, C.h. | 0 | 0 | 0 |
| Senechal, Alice R. | 0 | 0 | 0 |
| SUBTOTAL | 0 | 0 | 0 |
| | | | |
| DISTRICT JUDGES | | | |
| | | | |
| Conmy, Patrick A. | 1 | 0 | 0 |
| Webb, Rodney S. | 3 | 4 | 0 |
| Hovland, Daniel L. | 0 | 4 | 0 |
| Erickson, Ralph R. | 1 | 3 | 0 |
| SUBTOTAL | 5 | 11 | 0 |
| | | | |
| DISTRICT TOTAL: | 5 | 11 | 0 |

DISTRICT SUMMARY REPORT
AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR SOUTH DAKOTA

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| MAGISTRATE JUDGES | | | |
| | | | |
| Simko, John E. | 0 | 0 | 0 |
| Young, Marshall P. | 0 | 0 | 0 |
| Moreno, Mark A. | 0 | 0 | 0 |
| Devine, Myles J. | 0 | 0 | 0 |
| SUBTOTAL | 0 | 0 | 0 |
| | | | |
| DISTRICT JUDGES | | | |
| | | | |
| Bogue, Andrew W. | 1 | 0 | 0 |
| Jones, John B. | 0 | 0 | 0 |
| Battey, Richard H. | 2 | 9 | 0 |
| Piersol, Lawrence L. | 6 | 4 | 0 |
| Kornmann, Charles Bruno | 0 | 0 | 0 |
| Schreier, Karen E. | 1 | 0 | 0 |
| SUBTOTAL | 10 | 13 | 0 |
| | | | |
| DISTRICT TOTAL: | 10 | 13 | 0 |
| CIRCUIT TOTAL: | 158 | 167 | 0 |

DISTRICT SUMMARY REPORT
AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR ALASKA

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|

MAGISTRATE JUDGES

| | | | |
|---|---|---|---|
| Roberts, John D. | 0 | 0 | 0 |
| Branson, Albert H. | 0 | 0 | 0 |
| Jamin, Matthew D. | 0 | 0 | 0 |
| Guss, Mary E. | 0 | 0 | 0 |
| Pallenberg, Philip M. | 0 | 0 | 0 |
| Miller, Joseph W. | 0 | 0 | 0 |
| SUBTOTAL | 0 | 0 | 0 |

DISTRICT JUDGES

| | | | |
|---|---|---|---|
| Von Der Heydt, James A. | 0 | 0 | 0 |
| Fitzgerald, James M. | 0 | 0 | 0 |
| Holland, H. Russel | 8 | 2 | 0 |
| Singleton, James K. | 7 | 0 | 1 |
| Sedwick, John W. | 14 | 0 | 0 |
| Beistline, Ralph R. | 0 | 1 | 0 |
| SUBTOTAL | 29 | 3 | 1 |

DISTRICT TOTAL: 29 3 1

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR ARIZONA

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|

MAGISTRATE JUDGES

| | | | |
|---|---|---|---|
| Sitver, Morton | 2 | 1 | 1 |
| Fiora, Nancy | 0 | 0 | 0 |
| Verkamp, Stephen L. | 0 | 0 | 0 |
| Mathis, Virginia | 0 | 0 | 0 |
| Carruth, James C. | 0 | 0 | 0 |
| Edmonds, Glenda E. | 0 | 0 | 0 |
| Anderson, Lawrence O. | 0 | 0 | 0 |
| Velasco, Bernardo P. | 0 | 0 | 0 |
| Irwin, Jay R. | 0 | 0 | 0 |
| Duncan, David K. | 3 | 1 | 0 |
| Pyle, Charles R. | 0 | 0 | 0 |
| Marshall, Jacqueline J. | 0 | 1 | 0 |
| SUBTOTAL | 5 | 3 | 1 |

DISTRICT JUDGES

| | | | |
|---|---|---|---|
| Urbom, Warren K. | 1 | 0 | 0 |
| Diclerico, Joseph A., Jr. | 3 | 0 | 0 |
| Holland, H. Russel | 10 | 0 | 1 |
| Panner, Owen M. | 0 | 2 | 0 |
| Sedwick, John W. | 3 | 0 | 0 |

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| Ezra, David A. | 2 | 2 | 0 |
| Hardy, Charles L. | 2 | 0 | 0 |
| Coughenour, John C. | 1 | 0 | 0 |
| Carroll, Earl H. | 12 | 10 | 1 |
| Marquez, Alfredo C. | 5 | 2 | 0 |
| Browning, William D. | 8 | 0 | 0 |
| Rosenblatt, Paul G. | 11 | 0 | 0 |
| Zilly, Thomas S. | 1 | 0 | 0 |
| Broomfield, Robert C. | 13 | 0 | 0 |
| Strand, Roger G. | 2 | 10 | 0 |
| McNamee, Stephen M. | 25 | 3 | 0 |
| Roll, John M. | 3 | 0 | 0 |
| Silver, Roslyn O. | 16 | 2 | 0 |
| Zapata, Frank R. | 14 | 3 | 0 |
| Collins, Raner | 1 | 1 | 0 |
| Teilborg, James A. | 10 | 0 | 0 |
| Bolton, Susan R. | 4 | 0 | 0 |
| Murguia, Mary H. | 10 | 5 | 0 |
| Martone, Frederick J. | 0 | 0 | 0 |
| Jorgenson, Cindy K. | 0 | 1 | 0 |
| Bury, David C. | 2 | 2 | 0 |
| Campbell, David G. | 1 | 0 | 0 |
| **SUBTOTAL** | 160 | 43 | 2 |
| **DISTRICT TOTAL:** | 165 | 46 | 3 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR CALIFORNIA NORTHERN

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Brazil, Wayne D. | 0 | 0 | 1 |
| Trumbull, Patricia | 1 | 2 | 0 |
| Infante, Edward A. | 0 | 3 | 0 |
| James, Maria-Elena | 5 | 2 | 0 |
| Zimmerman, Bernard | 1 | 0 | 0 |
| Larson, James L. | 5 | 5 | 0 |
| Laporte, Elizabeth D. | 0 | 1 | 0 |
| Spero, Joseph | 0 | 0 | 0 |
| Seeborg, Richard | 1 | 1 | 0 |
| Chen, Edward M. | 0 | 0 | 0 |
| Lloyd, Howard R. | 0 | 1 | 0 |
| **SUBTOTAL** | 13 | 15 | 1 |
| **DISTRICT JUDGES** | | | |
| Conti, Samuel | 5 | 0 | 0 |
| Schwarzer, William W | 0 | 0 | 0 |
| Henderson, Thelton E. | 12 | 0 | 0 |
| Patel, Marilyn H. | 23 | 2 | 0 |
| Jensen, D. Lowell | 6 | 1 | 0 |

```
                Smith, Fern M.                       0         0         0
                Walker, Vaughn R.                   30         2         0
                Ware, James                         37        34         0
                Armstrong, Saundra Brown             7         0         0
                Whyte, Ronald M.                   100        28         0
                Wilken, Claudia                     21        20         0
                Chesney, Maxine M.                    6         3         0
                Illston, Susan Yvonne               10         9         0
                Breyer, Charles R.                   0         0         0
                Jenkins, Martin J.                  22         6         0
                Fogel, Jeremy D.                    22         4         0
                Alsup, William Haskell               7         0         0
                Hamilton, Phyllis J.                14         2         0
                White, Jeffrey Steven                3         4         0
                Unassigned                           5         0         0

     SUBTOTAL                                      330       115         0


DISTRICT TOTAL:                                    343       130         1
                              DISTRICT SUMMARY REPORT
          AS OF DATE: 09/30/2003                    RUN: 04/13/2004


                U.S. DISTRICT COURT FOR CALIFORNIA EASTERN

                                            MOTIONS     BENCH
                                    CASES   PENDING     TRIALS


        MAGISTRATE JUDGES

                Moulds, John F.                       0         0         0
                Hollows, Gregory G.                   1         0         0
                Beck, Dennis L.                       1         1         0
                Nowinski, Peter A.                    0         0         0
                Snyder, Sandra                        2         1         0
                Drozd, Dale A.                        1         3         0
                O'Neill, Lawrence J.                  2         0         0
                Mueller, Kimberly J.                  0         0         0
                Goldner, Theresa A.                   0         0         0
                Kellison, Craig M.                    0         0         0
                Yosemite Magistrate Judge             0         3         0

     SUBTOTAL                                         7         8         0


        DISTRICT JUDGES

                Karlton, Lawrence K.                 39        11         0
                Fitzgerald, James M.                  1         1         0
                Schwartz, Milton L.                   0         0         0
                Singleton, James K.                  22         9         0
                Coyle, Robert E.                     37        16         0
                Panner, Owen M.                       3         0         0
                Garcia, Edward J.                     9         2         0
                Shubb, William B.                    23         2         0
                Levi, David F.                       45         8         0
                Wanger, Oliver W.                    38        14         0
                Burrell, Garland E., Jr.             34         5         0
                Whaley, Robert H.                     3        15         0
```

|                              | CASES | MOTIONS PENDING | BENCH TRIALS |
|------------------------------|-------|-----------------|--------------|
| Ishii, Anthony W.            | 41    | 1               | 0            |
| Damrell, Frank C., Jr.       | 23    | 3               | 0            |
| England, Morrison C., Jr.    | 36    | 0               | 0            |
| Unassigned                   | 0     | 1               | 0            |
| **SUBTOTAL**                 | 354   | 88              | 0            |
| **DISTRICT TOTAL:**          | 361   | 96              | 0            |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR CALIFORNIA CENTRAL

|                              | CASES | MOTIONS PENDING | BENCH TRIALS |
|------------------------------|-------|-----------------|--------------|
| **MAGISTRATE JUDGES**        |       |                 |              |
| Eick, Charles F.             | 1     | 0               | 0            |
| Turchin, Carolyn             | 0     | 0               | 0            |
| Hillman, Stephen J.          | 0     | 1               | 0            |
| McMahon, James W.            | 0     | 6               | 0            |
| Robbins, Brian Q.            | 0     | 0               | 0            |
| Wistrich, Andrew J.          | 2     | 10              | 0            |
| Block, Robert N.             | 0     | 0               | 0            |
| Chapman, Rosalyn M.          | 0     | 0               | 0            |
| Woehrle, Carla M.            | 3     | 4               | 0            |
| Nakazato, Arthur             | 1     | 6               | 0            |
| Zarefsky, Ralph              | 0     | 0               | 0            |
| Nagle, Margaret A.           | 0     | 0               | 0            |
| Johnson, Jeffrey W.          | 0     | 0               | 0            |
| Larson, Stephen G.           | 0     | 1               | 0            |
| Goldman, Marc L.             | 0     | 2               | 0            |
| Kenton, Victor B.            | 0     | 0               | 0            |
| Walsh, Patrick J.            | 0     | 0               | 0            |
| Lum, Jennifer T.             | 1     | 0               | 0            |
| Olguin, Fernando M.          | 1     | 0               | 0            |
| Abrams, Paul L.              | 0     | 0               | 0            |
| Segal, Suzanne H.            | 0     | 0               | 0            |
| McEwen, Willard W., Jr.      | 0     | 0               | 0            |
| Miller, Stephen E.           | 0     | 0               | 0            |
| **SUBTOTAL**                 | 9     | 30              | 0            |
| **DISTRICT JUDGES**          |       |                 |              |
| Hauk, A. Andrew              | 0     | 0               | 0            |
| Real, Manuel L.              | 0     | 0               | 0            |
| Kelleher, Robert J.          | 4     | 0               | 0            |
| Byrne, William Matthew, Jr.  | 108   | 2               | 0            |
| Takasugi, Robert M.          | 9     | 16              | 0            |
| Waters, Laughlin E.          | 0     | 0               | 0            |
| Pfaelzer, Mariana R.         | 11    | 0               | 0            |
| Hatter, Terry J., Jr.        | 26    | 2               | 2            |
| Marshall, Consuelo Bland     | 20    | 4               | 0            |
| Rafeedie, Edward             | 2     | 0               | 0            |
| Stotler, Alicemarie H.       | 11    | 11              | 0            |

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| Rea, William J. | 5 | 3 | 0 |
| Keller, William Duffy | 1 | 2 | 0 |
| Wilson, Stephen V. | 14 | 42 | 0 |
| Letts, J. Spencer | 22 | 0 | 0 |
| Tevrizian, Dickran M., Jr. | 8 | 1 | 0 |
| Lew, Ronald S.w. | 19 | 0 | 0 |
| Taylor, Gary L. | 12 | 2 | 0 |
| Baird, Lourdes G. | 13 | 5 | 0 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003               RUN: 04/13/2004

U.S. DISTRICT COURT FOR CALIFORNIA CENTRAL

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| Collins, Audrey B. | 17 | 1 | 0 |
| Paez, Richard A. | 4 | 0 | 0 |
| Timlin, Robert J. | 62 | 135 | 0 |
| King, George H. | 8 | 5 | 0 |
| Pregerson, Dean D. | 21 | 1 | 0 |
| Snyder, Christina A. | 11 | 9 | 0 |
| Morrow, Margaret M. | 24 | 3 | 0 |
| Matz, A. Howard | 9 | 9 | 0 |
| Carter, David O. | 1 | 11 | 0 |
| Manella, Nora Margaret | 14 | 1 | 0 |
| Feess, Gary | 26 | 2 | 0 |
| Cooper, Florence-Marie | 11 | 2 | 0 |
| Phillips, Virginia Anne | 9 | 1 | 0 |
| Walter, John F. | 5 | 2 | 0 |
| Anderson, Percy | 2 | 2 | 1 |
| Klausner, Robert G. | 4 | 1 | 0 |
| Otero, S. James | 1 | 3 | 0 |
| Selna, James V. | 3 | 0 | 0 |
| Carney, Cormac J. | 5 | 0 | 0 |
| Unassigned | 3 | 8 | 2 |
| SUBTOTAL | 525 | 286 | 5 |
| DISTRICT TOTAL: | 534 | 316 | 5 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003               RUN: 04/13/2004

U.S. DISTRICT COURT FOR CALIFORNIA SOUTHERN

| | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| MAGISTRATE JUDGES | | | |
| Porter, Louisa S. | 0 | 0 | 0 |
| Papas, Leo S. | 1 | 0 | 0 |
| Brooks, Ruben B. | 0 | 0 | 0 |
| Battaglia, Anthony J. | 0 | 0 | 0 |
| Aaron, Cynthia G. | 0 | 0 | 0 |
| Stiven, James F. | 0 | 0 | 0 |
| Houston, John A. | 0 | 0 | 0 |
| Stormes, Nita L. | 0 | 0 | 0 |

|                              | CASES | MOTIONS PENDING | BENCH TRIALS |
|------------------------------|-------|-----------------|--------------|
| Benitez, Roger T.            | 0     | 0               | 0            |
| Schmitt, Joseph E.           | 0     | 0               | 0            |
| **SUBTOTAL**                 | 1     | 0               | 0            |

## DISTRICT JUDGES

|                              | CASES | MOTIONS PENDING | BENCH TRIALS |
|------------------------------|-------|-----------------|--------------|
| Turrentine, Howard B.        | 0     | 0               | 0            |
| Thompson, Gordon, Jr.        | 0     | 0               | 0            |
| Enright, William B.          | 0     | 0               | 0            |
| Singleton, James K.          | 1     | 0               | 0            |
| Keep, Judith Nelsen          | 1     | 0               | 0            |
| Brewster, Rudi M.            | 7     | 5               | 0            |
| Rhoades, John S., Sr.        | 3     | 10              | 0            |
| Huff, Marilyn L.             | 0     | 0               | 0            |
| Whaley, Robert H.            | 6     | 0               | 0            |
| Gonzalez, Irma E.            | 1     | 1               | 0            |
| Jones, Napoleon A., Jr.      | 14    | 0               | 0            |
| Moskowitz, Barry Ted         | 31    | 0               | 0            |
| Miller, Jeffrey T.           | 5     | 1               | 0            |
| Whelan, Thomas J.            | 5     | 1               | 0            |
| Lorenz, M. James             | 9     | 0               | 0            |
| Burns, Larry A.              | 0     | 0               | 0            |
| Sabraw, Dana M.              | 0     | 0               | 0            |
| Hayes, William Q.            | 0     | 0               | 0            |
| Houston, John A.             | 0     | 0               | 0            |
| **SUBTOTAL**                 | 83    | 18              | 0            |

| **DISTRICT TOTAL:**          | 84    | 18              | 0            |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                          RUN: 04/13/2004

## U.S. DISTRICT COURT FOR HAWAII

|                              | CASES | MOTIONS PENDING | BENCH TRIALS |
|------------------------------|-------|-----------------|--------------|

## MAGISTRATE JUDGES

|                              | CASES | MOTIONS PENDING | BENCH TRIALS |
|------------------------------|-------|-----------------|--------------|
| Tokairin, Bert S.            | 0     | 0               | 0            |
| Conklin, Daral G.            | 0     | 0               | 0            |
| Kurren, Barry                | 13    | 0               | 0            |
| Yamashita, Francis I.        | 0     | 0               | 0            |
| Kobayashi, Leslie E.         | 2     | 0               | 0            |
| Chang, Kevin S.              | 2     | 2               | 0            |
| **SUBTOTAL**                 | 17    | 2               | 0            |

## DISTRICT JUDGES

|                              | CASES | MOTIONS PENDING | BENCH TRIALS |
|------------------------------|-------|-----------------|--------------|
| King, Samuel P.              | 7     | 0               | 0            |
| Coyle, Robert E.             | 1     | 2               | 0            |
| Kay, Alan Cooke              | 5     | 3               | 0            |
| Ezra, David A.               | 9     | 0               | 0            |
| Gillmor, Helen W.            | 3     | 2               | 0            |

|                        | CASES | MOTIONS PENDING | BENCH TRIALS |
|------------------------|-------|-----------------|--------------|
| Mollway, Susan Oki     | 0     | 0               | 0            |
| Jones, Robert E.       | 2     | 2               | 0            |
| Real, Manuel L.        | 7     | 0               | 0            |
| Aspen, Marvin E.       | 1     | 0               | 0            |
| SUBTOTAL               | 35    | 9               | 0            |
|                        |       |                 |              |
| DISTRICT TOTAL:        | 52    | 11              | 0            |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

### U.S. DISTRICT COURT FOR IDAHO

|                          | CASES | MOTIONS PENDING | BENCH TRIALS |
|--------------------------|-------|-----------------|--------------|
| **MAGISTRATE JUDGES**    |       |                 |              |
| Williams, Mikel H.       | 1     | 0               | 0            |
| Boyle, Larry M.          | 1     | 0               | 0            |
| SUBTOTAL                 | 2     | 0               | 0            |
|                          |       |                 |              |
| **DISTRICT JUDGES**      |       |                 |              |
| Reed, Edward C., Jr.     | 2     | 0               | 0            |
| Lodge, Edward J.         | 4     | 1               | 0            |
| Winmill, B. Lynn         | 13    | 0               | 0            |
| Carter, David O.         | 1     | 0               | 0            |
| SUBTOTAL                 | 20    | 1               | 0            |
|                          |       |                 |              |
| DISTRICT TOTAL:          | 22    | 1               | 0            |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

### U.S. DISTRICT COURT FOR MONTANA

|                          | CASES | MOTIONS PENDING | BENCH TRIALS |
|--------------------------|-------|-----------------|--------------|
| **MAGISTRATE JUDGES**    |       |                 |              |
| Holter, Robert M.        | 0     | 0               | 0            |
| Anderson, Richard W.     | 4     | 1               | 0            |
| Erickson, Leif B.        | 1     | 1               | 0            |
| Ostby, Carolyn S.        | 3     | 0               | 0            |
| Schuster, Gerard M.      | 0     | 0               | 0            |
| SUBTOTAL                 | 8     | 2               | 0            |
|                          |       |                 |              |
| **DISTRICT JUDGES**      |       |                 |              |
| Lovell, Charles C.       | 0     | 0               | 0            |

```
                    Shanstrom, Jack D.            3           5           0
                    Molloy, Donald W.            11          38           0
                    Cebull, Richard F.            1           0           0
                    Haddon, Sam E.                2           3           0

        SUBTOTAL                                 17          46           0


DISTRICT TOTAL:                                  25          48           0
```

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR NEVADA

|  |  | MOTIONS | BENCH |
|---|---|---|---|
|  | CASES | PENDING | TRIALS |

MAGISTRATE JUDGES

| | | | |
|---|---|---|---|
| Johnston, Robert J. | 0 | 0 | 0 |
| Leavitt, Lawrence, R. | 1 | 0 | 0 |
| McQuaid, Robert A., Jr. | 0 | 0 | 0 |
| Cooke, Valerie P. | 0 | 0 | 0 |
| Leen, Peggy A. | 0 | 0 | 0 |
| SUBTOTAL | 1 | 0 | 0 |

DISTRICT JUDGES

| | | | |
|---|---|---|---|
| Reed, Edward C., Jr. | 13 | 3 | 0 |
| George, Lloyd D. | 17 | 0 | 0 |
| McKibben, Howard D. | 3 | 0 | 0 |
| Pro, Philip M. | 6 | 1 | 0 |
| Ezra, David A. | 0 | 0 | 0 |
| Hagen, David Warner | 4 | 0 | 0 |
| Quackenbush, Justin L. | 2 | 0 | 0 |
| Hunt, Roger L. | 9 | 2 | 0 |
| Dawson, Kent J. | 9 | 2 | 0 |
| Hicks, Larry R. | 10 | 1 | 0 |
| Mahan, James C. | 17 | 0 | 0 |
| SUBTOTAL | 90 | 9 | 0 |

```
DISTRICT TOTAL:                                  91           9           0
```

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR OREGON

|  |  | MOTIONS | BENCH |
|---|---|---|---|
|  | CASES | PENDING | TRIALS |

MAGISTRATE JUDGES

| | | | |
|---|---|---|---|
| Juba, George E. | 0 | 0 | 0 |
| Jelderks, John | 3 | 2 | 0 |

| | | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|---|
| Coffin, Thomas M. | | 5 | 1 | 0 |
| Ashmanskas, Donald C. | | 6 | 11 | 0 |
| Stewart, Janice M. | | 3 | 7 | 0 |
| Cooney, John | | 8 | 2 | 0 |
| Hubel, Dennis J. | | 1 | 0 | 0 |
| Bloom, Stephen M. | | 0 | 0 | 0 |
| SUBTOTAL | | 26 | 23 | 0 |

DISTRICT JUDGES

| | | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|---|
| Shanstrom, Jack D. | | 0 | 0 | 0 |
| Panner, Owen M. | | 1 | 2 | 0 |
| Redden, James A. | | 0 | 0 | 0 |
| Frye, Helen J. | | 1 | 3 | 0 |
| Marsh, Malcolm F. | | 1 | 0 | 0 |
| Jones, Robert E. | | 0 | 0 | 0 |
| Hogan, Michael R. | | 3 | 4 | 0 |
| Haggerty, Ancer L. | | 2 | 17 | 0 |
| Aiken, Ann | | 2 | 1 | 0 |
| King, Garr M. | | 5 | 2 | 0 |
| Brown, Anna J. | | 1 | 5 | 0 |
| Mosman, Michael W. | | 1 | 0 | 0 |
| SUBTOTAL | | 17 | 34 | 0 |

DISTRICT TOTAL: 43 57 0

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                    RUN: 04/13/2004

U.S. DISTRICT COURT FOR WASHINGTON EASTERN

| | | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|---|
| **MAGISTRATE JUDGES** | | | | |
| Imbrogno, Cynthia | | 0 | 0 | 0 |
| SUBTOTAL | | 0 | 0 | 0 |

DISTRICT JUDGES

| | | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|---|
| Quackenbush, Justin L. | | 0 | 0 | 0 |
| McDonald, Alan A. | | 0 | 0 | 0 |
| Nielsen, William Flemming | | 10 | 0 | 0 |
| Van Sickle, Fred | | 2 | 3 | 0 |
| Whaley, Robert H. | | 3 | 29 | 0 |
| Shea, Edward F. | | 4 | 18 | 0 |
| Suko, Lonny R. | | 1 | 4 | 0 |
| SUBTOTAL | | 20 | 54 | 0 |

DISTRICT TOTAL: 20 54 0

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                          RUN: 04/13/2004

U.S. DISTRICT COURT FOR WASHINGTON WESTERN

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **MAGISTRATE JUDGES** | | | |
| Arnold, John K. | 0 | 0 | 0 |
| Martinez, Ricardo | 0 | 0 | 0 |
| Benton, Monica J. | 0 | 1 | 0 |
| Strombom, Karen L. | 0 | 0 | 0 |
| Theiler, Mary A. | 1 | 0 | 0 |
| Kleweno, Gilbert H. | 0 | 0 | 0 |
| Uhrig, Ira J. | 0 | 0 | 0 |
| Weinberg, John L. | 0 | 0 | 0 |
| Unassigned Usm | 0 | 4 | 0 |
| **SUBTOTAL** | 1 | 5 | 0 |
| **DISTRICT JUDGES** | | | |
| McGovern, Walter T. | 0 | 0 | 0 |
| Tanner, Jack E. | 0 | 0 | 0 |
| Rothstein, Barbara Jacobs | 1 | 72 | 0 |
| Coughenour, John C. | 0 | 0 | 0 |
| Dimmick, Carolyn R. | 0 | 0 | 0 |
| Bryan, Robert J. | 0 | 0 | 0 |
| Browning, William D. | 0 | 0 | 0 |
| Zilly, Thomas S. | 3 | 1 | 0 |
| Burgess, Franklin D. | 0 | 0 | 0 |
| Lasnik, Robert S. | 6 | 2 | 0 |
| Pechman, Marsha J. | 1 | 0 | 0 |
| Leighton, Ronald B. | 2 | 0 | 0 |
| Breyer, Charles R. | 0 | 0 | 0 |
| Unassigned | 0 | 19 | 0 |
| **SUBTOTAL** | 13 | 94 | 0 |
| **DISTRICT TOTAL:** | 14 | 99 | 0 |

DISTRICT SUMMARY REPORT

AS OF DATE: 09/30/2003                          RUN: 04/13/2004

U.S. DISTRICT COURT FOR GUAM

|  | CASES | MOTIONS PENDING | BENCH TRIALS |
|---|---|---|---|
| **DISTRICT JUDGES** | | | |
| Unpingco, John S. | 8 | 15 | 0 |
| **SUBTOTAL** | 8 | 15 | 0 |

DISTRICT TOTAL:                                    8        15        0





# SCHEEF & STONE, L.L.P.

*Legal counsel based on solid principles*



RECEIVED

MAR − 3 2005

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

March 2, 2005

Clerk, United States District Court
Northern District of Texas
1100 Commerce Street, Suite 1452
Dallas, Texas 75242

> Re: **Civil Action No. 3:05-CV-0166-G; FM Holdings, LLC, f/k/a Forwardmarket, LLC, Plaintiff v. Bill Mahoney; Stephen Gregorio, Defendants**

Dear Clerk:

Please accept this letter as notice that I intend to be on vacation the following dates:

> March 4, 2005 thru March 14, 2005
> April 21, 2005 thru April 24, 2005

In accordance with the Texas Lawyer's Creed, please do not schedule a hearing, trial, or any other deadlines in this case during these dates or within two business days before and after these dates.

By copy of this letter to all counsel of record, I am notifying counsel of my vacation plans, and request that no depositions or other activities in connection with this case be set during such time periods.

Sincerely yours,

Kimberly A. Elkjer

KAE:gs
Enclosures
cc:  Thomas J. Fisher              Timothy C. Blank, Esq.
     SHANNON GRACEY RATLIFF & MILLER    DECHERT LLP
     777 Main Street, Suite 3800      200 Clarendon Street, 27th Floor
     Fort Worth, Texas 76102         Boston, Massachusetts 02166-5021

---

5956 Sherry Lane • Suite 1400 • Dallas, Texas 75225 • Tel: (214) 706-4200 • Fax: (214) 706-4242 • www.scheefandstone.com

Clerk, United States District Court
March 2, 2005
Page 2


Charles R. Biddle, Esq.
HOLMAN ROBERTSON ELDRIDGE
5949 Sherry Lane, Suite 1700
Dallas, Texas  75225

ORIGINAL

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAR 1 4 2005

CLERK, U.S. DISTRICT COURT
By _____

| | | |
|---|---|---|
| FM HOLDINGS, LLC, F/K/A FORWARDMARKET, LLC, | § § § | |
| Plaintiff, | § § | |
| vs. | § § | C.A. No. 3:05-CV-0166-G |
| BILL MAHONEY and STEPHEN GREGORIO, | § § § | |
| Defendants | § § | |

## DEFENDANT BILL MAHONEY'S REPLY BRIEF IN RESPONSE TO PLAINTIFF FM HOLDINGS, LLC, F/K/A FORWARD MARKET, LLC'S RESPONSE

Defendant Bill Mahoney ("Mahoney") reurges his motion to dismiss for lack of personal jurisdiction and files this his reply to Plaintiff's response to Mahoney's previous motions and would show as follows:

1.      Mahoney did not purposefully engage in any alleged tortious conduct directed to Plaintiff in Texas.  Swenke said that negotiations occurred via telephone, facsimile and email; however, Swenke only attaches one email from Bill Mahoney dated August 13, 2002. (which by the way is duplicated and attached to Swenke Affidavit, Pages APP 010 and 023.)  Mahoney, on the other hand, stated as follows:

> "During 2002 Plaintiff, through its representative, Kevin Swenke, contacted me in Massachusetts to introduce himself and his company. Kevin Swenke made numerous trips to Boston, Massachusetts to discuss business matters with and make presentations to the company with which I was employed at the time.  At no time did I travel to Texas in connection with the matters about which Plaintiff now complains."

In *Ronald R. Cathey vs. Thomas M. Scipione*[1], the Court held as follows:

---

[1] Civil Action No. 3:96-CV-1730-G, United States District Court for the Northern District of Texas, Dallas Division, 1997 U.S. Dist. LEXUS 16716, May 1, 1997

DEFENDANT BILL MAHONEY'S REPLY BRIEF IN RESPONSE TO
PLAINTIFF FM HOLDINGS, LLC, F/K/A FORWARD MARKET, LLC'S RESPONSE                     Page 1
H:\wp\05\crb\mahoney\REPLY BRIEF~01.doc

"Due process requires the satisfaction of two elements to exercise personal jurisdiction over a non-resident Defendant: (1) the non-resident must have some [*8] minimum contact with the forum which results from an affirmative act on its part such that the non-resident defendant could anticipate being hauled into the courts of the forum state; and (2) it must be fair or reasonable to require the non-resident to defend the suit in the forum state. Citing *Burger King Corporation vs. Rudzewicz*, 471 U.S. 462, 474-77, 85 L.Ed.2d 528, 105 S.Ct. 2174 (1985); *C & H Transportation Co. Inc. vs. Jensen and Reynolds Construction Company*, 719 F.2d 1267, 1269 (5ᵗʰ Cir. 1983 [citations omitted], cert. den'd., 466 U.S. 945, 80 L.Ed.2d 475 104 S.Ct. 1930 [1984]). The Due Process Clause insures that persons have 'fair warning that a particular activity may subject a person to the jurisdiction of a foreign sovereign.' (*Shaffer vs. Heitner*, 443 U.S. 186, 218, 53 L.Ed.2d 683, 97 S.Ct. 2569 [1977] [Stephens, J. concurring])."

The court further held as follows:

"To establish minimum contacts a non-resident defendant must do some act by which he 'purposely avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.' Citing *Hanson vs. Denckla*, 357 U.S.235, 253, 2 L.Ed.2d 1283 . . ."

In connection with the "purposeful availment" requirement, the Court stated:

". . . The 'purposeful availment' requirement of the minimum contacts inquiry 'ensures that a defendant will not be hauled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . or of the 'unilateral activity of another party or a third person.'" *Id.* at 475 [*11] (citations omitted). A plaintiff must establish a substantial connection between the non-resident defendant and the forum state. *Jones vs. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1068 n.9 (5ᵗʰ Cir.), cert. denied, 506 U.S. 867, 121 L.Ed.2d 136, 113 S.Ct. 193 (1992) . . ."

Finally, in analyzing the due process requirements to impose jurisdiction over a non-resident, the Court stated:

"A court must consider all factors when making the purposeful availment inquiry – 'no single factor, particularly the number of contacts, is determinative.' Citing *Stuart*, 772 F.2d at 1192. 'Whether the minimum contacts are sufficient to justify subjection of the non-resident to suit in the forum is determined not on a mechanical and quantitative test, but rather under the particular facts upon the quality and nature of the activity with relation to the forum state.' *Mississippi Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1006 (5ᵗʰ Cir. 1982); se also *D. J.*

*Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F2d 542, 547 (5th Cir. [*12] 1985)."

2.      In the instant case, uncontradicted evidence establishes that Swenke initiated the telephone calls to Mahoney and his employer at the time, Excelergy Corporation, to discuss the purchase of certain assets and the assumption of certain liabilities of Plaintiff. Excelergy is a Delaware Corporation with its principal place of business in Massachusetts. The only evidence Plaintiff has produced concerning Mahoney's involvement or communications (other than Swenke's stark accusations) is one email from Bill Mahoney dated August 13, 2002. (Swenke Affidavit, tabs A and B.) On the other hand, Mahoney in his affidavit states, "[a]t all times relevant to this dispute I was acting in my capacity as chief executive officer of Excelergy Corporation which was located in Massachusetts and all of my activities with respect to this matter took place in Massachusetts." Mahoney also states that:

> "Kevin Swenke made numerous trips to Boston, Massachusetts to discuss business matters with and make presentations to the company with which I was employed at the time. At no time did I travel to Texas in connection with the matters about which Plaintiff now complains."

Plaintiff in its petition judicially admits that its alleged cause of action "occurred primarily and substantially within Massachusetts." Swenke's own statement acknowledges that fact. Mahoney did not purposefully avail himself of the benefits of this state. The critical inquiry in these cases is "whether the context suggests that the non-resident defendant purposely availed himself to the benefits of the forum state." *Brown*, 688 F.2d at 333; *Southmark Corporation v. Life Investors, Inc.*[2]  Interestingly, Swenke agreed to accept the position of Vice President, Retail Energy Markets, for Excelergy, the Massachusetts company which he claims has no value and with which he continues to be employed. (Swenke affidavit, tabs A and B.) He also agreed to join

---

[2] 851 F.2d 763, 771-73 (5th Cir. 1988)

Excelergy's management team. (Swenke affidavit, tabs A and B.) Section 9.10 of Swenke's written agreement with Excelergy provides as follows:

> "I acknowledge and agree that this agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts and shall in all respects be interpreted, enforced and governed under the internal domestic laws of such state, without giving effect to the principles of conflicts of laws of such state. I further agree that any claims or legal actions by one party against the other arising out of the relationship between the parties contemplated herein (whether or not arising out of this agreement) shall be governed by the laws of the Commonwealth of Massachusetts and shall be commenced and maintained in any state or federal court located in such state, and I hereby submit to the jurisdiction and venue of any such court." (Swenke affidavit, tab C, Page "APP 022.")

Although Plaintiff and Swenke "as the principal of Plaintiff" (see Swenke affidavit, Page 4, Paragraph L) are _now_ claiming negligent misrepresentations were received in Texas, in his employment agreement with Excelergy, Swenke acknowledged and agreed that he would be subject to the jurisdiction and venue of the Commonwealth of Massachusetts.

3.  In _The British Aviation Insurance Group vs. American Eurocopter Corporation_[3], the court, in discussing the "purposeful availment" requirement cited _Product Promotions, Inc. vs. Cousteau_, 495 F.2d 483, 496 & n.23 (5th Cir. 1974) and stated as follows:

> "(purposeful availment cannot be inferred from the mere fortuity that plaintiff happens to be a forum resident.) Even if Caledonian were aware that the statements contained in the certificate, if false, could cause injury to AEC in Texas – a fact for which there is no support in the record – this alone is not a 'sufficient benchmark' for exercising personal jurisdiction. See _Burgher King_, 471 U.S. at 474, _Southmark_, 851 F.2d at 773."

4.  Mahoney's corporate capacity contention is far from being spurious. Mahoney has always testified that he was acting in his capacity as CEO of Excelergy and not as an individual. (Mahoney affidavit, Paragraph 3.) Most importantly, Plaintiff has judicially

---

[3] Civil Action No. 3:96-CV-0392-G, United States District for the Northern District of Texas, Dallas Division, 1997 U.S. Dist. Lexis 4837, March 12, 1997

admitted that "Defendants' misrepresentations and omissions to Plaintiff were made in the course of Excelergy's business." (Plaintiff's Original Petition, Page 7, Paragraph 31). Mahoney's statements support the fiduciary shield doctrine. In *Frank A. St. Claire vs. Ensurelink*[4], with respect to the fiduciary shield doctrine, the court held as follows:

> "The doctrine holds that 'an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has in personam jurisdiction over the corporation. . .' *Id.* The doctrine is justified on the basis that 'it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer.' *Saktides vs. Cooper*, 742 F.SuPages 382, 385 (W.D. Tex. 1990) quoting *Marine Midland Bank vs. Miller*, 664 F.2d 899, 902 (2nd Cir. 1981)."

Contrary to Plaintiff's allegations, there is no evidence whatsoever concerning any personal loans to Mahoney, individually, that created "significant pressure on him to take shortcuts. . . ." It is totally baseless and unfounded. The evidence clearly establishes that Mahoney at all times was acting as CEO of Excelergy Corporation in connection with the allegations made the basis of this suit.

5.    The fact that Plaintiff initiated contact with Defendant is critical because it constitutes "unilateral activity of another party or a third person." (See *British Aviation Insurance Group, Id.*) Thus, for Plaintiff to now claim that its initiation of contact is immaterial is unwarranted especially in light of the totality of the circumstances.

6.    Traditional notions of fair play and substantial justice do not support jurisdiction. Plaintiff has failed to prove minimum contact. The burden on Mahoney in having to litigate in Texas would be substantial since both Defendants are located in Massachusetts. Excelergy, the company whose value is in issue, is located in Massachusetts. Boston Properties, Inc., the

---

[4] Civil Action No. 3:01-CV-1548-G, United States District Court for the Northern District of Texas, Dallas Division, 2002 U.S. Dist. Lexis 7052, April 19, 2002

landlord to the lease agreement which Plaintiff claims Excelergy prematurely terminated, is also located in Massachusetts. (Plaintiff's Original Petition, Page 4, Paragraph 19.) Furthermore, many of the witnesses listed by Defendant Gregorio and Plaintiff are located in Massachusetts or in close proximity thereto. Plaintiff itself has judicially admitted that Massachusetts law is applicable and that "Defendant's misrepresentations and omissions occurred primarily and substantially within Massachusetts." (See Plaintiff's Original Petition, Page 8, Paragraph 40.) Mahoney is a resident of the State of Massachusetts. He has never been a resident of Texas. He has not performed any acts or transactions in Texas in his individual capacity and at no time did he travel to Texas in connection with the matters about which Plaintiff complains. (Mahoney Affidavit, Page 1.) In the agreement that Swenke executed with Excelergy Corporation, he submits to jurisdiction and venue in Massachusetts. (Swenke Affidavit, Tab C, Page APP 022.) In conclusion, the judicial systems interest in effective resolution and Texas' shared interest in fundamental social policies mandate that there is no personal jurisdiction over Bill Mahoney.

7.     Mahoney did not seek removal of this matter from State Court, but simply assented to Defendant Gregorio's removal of this action. At no time has Mahoney admitted by words or action that there is personal jurisdiction over him, but to the contrary, has at all times contested the assumption of personal jurisdiction over him.

8.     In the alternative and without waiving the assertion of no personal jurisdiction, Mahoney believes that the case should have only been brought, if at all, in Massachusetts where both Defendants reside and the state and district in which a substantial part of the events or omissions giving rise to the claim occurred. This case is ripe to be transferred to Massachusetts since (i) all documents relevant to this matter are located in Massachusetts, (ii) Excelergy's principal place of business is located in Massachusetts, (iii) Boston Properties, Inc., the landlord

to the lease agreement upon which Plaintiff is basing a claim of premature termination, is located

in Massachusetts, and (iv) most witnesses are located in Massachusetts. Plaintiff argues that

there will not be inconvenience for witnesses or discovery matters and that Massachusetts courts

could simply issue subpoenas. However, any discovery disputes involving non-parties would

have to be determined in Massachusetts. In the event that a non-party witness files a motion to

quash or for a protective order, such motions will also have to be heard in Massachusetts.

Additionally, Plaintiff claims that Massachusetts law applies and argues that Massachusetts

recognizes a cause of action for businesses but Texas does not. (See footnote 12, Page 23,

Plaintiff's brief.) In essence, Plaintiff seeks the benefits of Massachusetts law while at the same

time requiring all witnesses to travel to Texas based upon allegations that do not overcome the

minimum contact requirements. This is a prime example of "forum shopping." The decision to

transfer a pending case is committed to the sound discretion of the district court. *Jarvis*

*Christian College vs. Exxon Corporation*, 845, F.2d 523, 528 (5th Cir. 1988). Generally, the

Plaintiff is afforded some deference in choosing a forum." *Time, Inc. vs. Manning*, 366 F.2d

690, 698 (5th Cir. 1966); *Lindloff v. Schenectady International*, 950 F.SuPages 183, 185 (E.D.

Tex. 1966). However, the Plaintiff's choice of forum has reduced significance where most of the

operative facts occurred outside of the district. *Lindloff*, 950 F.SuPages at 185 . . . In the instant

case, most of the operative facts as alleged by Plaintiff in its Original Petition occurred in

Massachusetts. (See Plaintiff's Original Petition on Page 8, Paragraph 40.) Accordingly, in the

alternative, Mahoney requests that this matter be transferred to Massachusetts in order to

"prevent the waste of time, energy and money" and "to protect litigants, witnesses and the public

against unnecessary inconvenience and expense . . ." (See *The Whistler Group, Inc. vs. PNI*

*Corporation*, Civil Action No. 3:03-CV-1536-G, in the United States District Court for the Northern District of Texas, Dallas Division, 203 U.S. Dist., Lexis 21968, December 5, 2003.)

<u>CONCLUSION</u>

9.     Defendant Bill Mahoney requests that this Court enter an order dismissing the claims against him for lack of personal jurisdiction or lack of venue or, in the alternative, transferring this matter to Massachusetts.

Respectfully submitted,

HOLMAN ROBERTSON ELDRIDGE
5949 Sherry Lane, Suite 1700
Dallas, Texas 75225
Telephone:    (214)361-9494
Facsimile:    (214)691-2109

By _____
Charles R. Biddle
State Bar Card No. 02299300

Ronald O. Holman
State Bar Card No.:  09903600

ATTORNEYS FOR MAHONEY

<u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the above and foregoing has this day been sent, via certified mail, return receipt requested, to all counsel of record on this /4TH day of March, 2005.

_____
Charles R. Biddle

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

FILED

MAR 1 5 2006

CLERK, U.S. DISTRICT COURT
By_____
Deputy

|  |  |
|---|---|
| FM HOLDINGS, LLC, f/k/a FORWARDMARKET, LLC, | ) ) ) |
| Plaintiff, | ) |
| v. | ) |
| BILL MAHONEY and STEPHEN GREGORIO, | ) ) ) |
| Defendants. | ) ) |

Civil Action No.
3: 05-CV-0166-G

### DEFENDANT STEPHEN GREGORIO'S MOTION FOR LEAVE TO FILE REPLY BRIEF IN EXCESS OF TEN PAGES IN SUPPORT OF DEFENDANT STEPHEN GREGORIO TO TRANSFER VENUE

Defendant Stephen Gregorio hereby moves for leave to file his reply brief in support of his motion to transfer venue, attached hereto as Exhibit "A", in excess of the 10-page limit in Local Rule 7.2. In response to Defendant Gregorio's motion to transfer and Defendant Bill Mahoney's motions pursuant to Fed. R. Civ. P. 12(b)(3) and (3), Plaintiff submitted a twenty-five page brief, which set forth arguments not addressed in Gregorio's original brief, including the contention that the forum selection clause in the Asset Purchase Agreement did not apply to this case. In addition, Plaintiff submitted a supplemental response to address the additional issue of court congestion. Defendant Gregorio has since filing his opening brief been able to obtain a copy of the Asset Purchase Agreement from a third party, and thus requests that this Court grant leave to file the excess pages required to address fully the arguments presented in Plaintiff's Reply and Supplemental Reply Briefs.

Respectfully submitted,

**SHANNON GRACEY RATLIFF & MILLER, LLP**
777 Main Street, Suite 3800
Fort Worth, Texas 76102
(817) 336-9333 Telephone
(817) 336-3735 Facsimile

By: _____
          Thomas J. Fisher
          State Bar Card No.: 07064500

*Of Counsel:*

Timothy C. Blank
BBO No. 548670
Michael. S. Shin
BBO No. 658134
**DECHERT LLP**
00 Clarendon Street, 27th Floor
Boston, MA 02116
(617) 728-7100 Telephone
(617) 426-6567

**ATTORNEYS FOR DEFENDANT
STEPHEN GREGORIO**

## <u>CERTIFICATE OF CONFERENCE</u>

On March 15, 2005, I contacted counsel regarding their opposition to this Motion. Charles R. Biddle, counsel for Plaintiff is unopposed to this Motion. I have attempted to contact Kimberly A. Elkjer, counsel for Defendant Mahoney, but was unable to reach her and it is assumed that she is opposed.

_____
Thomas J. Fisher

## CERTIFICATE OF SERVICE

I certify that on March 16, 2005, a true and correct copy of the foregoing was served upon all known counsel of record via first class U.S. Mail as follows:

Charles R. Biddle
Ronald O. Holman
HOLMAN ROBERTSON ELDRIDGE
5949 Sherry Lane, Suite 1700
Dallas, Texas 75225

Kimberly A. Elkjer
ROBERT M. MILLIMET
Scheef & Stone, L.L.P.
5956 Sherry Lane, Suite 1400
Dallas, Texas 75225

_____
Thomas J. Fisher

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FM HOLDINGS, LLC, f/k/a FORWARDMARKET, LLC, | ) ) ) | |
| Plaintiff, | ) | Civil Action No. |
| v. | ) ) | 3: 05-CV-0166-G |
| BILL MAHONEY and STEPHEN GREGORIO, | ) ) ) | |
| Defendants. | ) ) | |

## <u>REPLY BRIEF IN SUPPORT OF MOTION OF DEFENDANT STEPHEN GREGORIO TO TRANSFER VENUE</u>

Respectfully submitted,

**SHANNON GRACEY RATLIFF & MILLER, LLP**
777 Main Street, Suite 3800
Fort Worth, Texas  76102
(817) 336-9333  Telephone
(817) 336-3735  Facsimile

By:_____
　　　　Thomas J. Fisher
　　　　State Bar Card No.:  07064500

*Of Counsel:*

Timothy C. Blank
BBO No. 548670
Michael. S. Shin
BBO No. 658134
**DECHERT L.L.P.**
200 Clarendon Street, 27th Floor
Boston, MA  02116
(617) 728-7100  Telephone
(617) 426-6567  Facsimile

**ATTORNEYS FOR DEFENDANT
STEPHEN GREGORIO**


EXHIBIT
A

## CERTIFICATE OF SERVICE

I certify that on March 15, 2005, a true and correct copy of the foregoing was served on all known counsel of record via first class U.S. mail as follows:

Charles R. Biddle
Ronald O. Holman
HOLMAN ROBERTSON ELDRIDGE
5949 Sherry Lane, Suite 1700
Dallas, Texas  75225

Kimberly A. Elkjer
Robert M. Millimet
SCHEEF & STONE, L.L.P.
5956 Sherry Ln., Suite 1400
Dallas, Texas  75225

# TABLE OF CONTENTS

A.    THE FORUM-SELECTION CLAUSE IN THE ASSET PURCHASE
      AGREEMENT CONSTITUTES GROUNDS FOR TRANSFER ...........................1

B.    THE PRIVATE INTEREST FACTORS FAVOR TRANSFER..............................6

      1.    Plaintiff's Choice of Venue Has Reduced Significance
            Because Plaintiff Alleges that the Operative Facts
            Occurred in the District of Massachusetts.............................................6

      2.    Sources of Proof.................................................................7

      3.    Convenience of Witnesses........................................................7

      4.    Cost of Attendance of Willing Witnesses.............................................10

C.    THE PUBLIC INTEREST FACTORS FAVOR TRANSFER................................11

      1.    Massachusetts's Interest in Adjudicating This Dispute..............................11

      2.    Respective Venues' Familiarity With Governing Law..............................12

      3.    Docket Congestion...............................................................12

D.    CONCLUSION

# TABLE OF AUTHORITIES

**Cases**

*Allegiant Physicians Services, Inc. v. Sturdy Memorial Hospital,*
    926 F. Supp. 1106 (N.D. Ga. 1996)................................................11

*American Patriot Insur. Agency v. Mutual Risk Mgmt., Ltd,*
    364 F.3d 884 (7th Cir. 2004)............................................3, 4, 5

*Clinton v. Janger,* 583 F. Supp. 284 (N.D. Ill. 1984)....................................5

*Comerica Bank v. Whitehall Specialties, Inc.,* 352 F. Supp.
    2d 1077 (C.D. Cal. 2004)..............................................................5

*Continental Airlines, Inc. v. American Airlines, Inc.,*
    805 F. Supp. 1392 (S.D. Tex. 1992)......................................8, 9

*E.I. Dupont de Nemours & Company v. Diamond Shamrock Corp.,*
    522 F. Supp. 588 (D. Del. 1981))..................................................6

*Elliott v. Carnival Cruise Lines,* 231 F. Supp. 2d 555
    (S.D. Tex. 2002)...........................................................................6

*Gary Scott Int'l, Inc. v. Baroudi,* 981 F. Supp. 714 (D. Mass. 1997)....................................11

*Golber v. Baybank Valley Trust Co.,* 704 N.E. 2d 1191
    (Mass. App. Ct. 1999).................................................................10

*Greiner v. American Motor Sales Corp.,* 645 F. Supp. 277
    (E.D. Tex. 1986)...........................................................................6

*Hoffman v. Burroughs Corp.,* 571 F. Supp. 545 (N.D. Tex. 1982)....................................3

*International Software Systems, Inc. v. Amplicon, Inc.,*
    77 F.3d 112 (5th Cir. 1996)...........................................................3

*Isbell v. DM Records, Inc.,* No. Civ. A. 3:02-CV-1408-G, 2004
    WL 1243153, at *1 (N.D. Tex. June 4, 2004)................................14

*Jumara v. State Farm Ins. Co.,* 55 F.3d 873 (3d Cir. 1995)...........................................7

*Lemery v. Ford Motor Co.,* 244 F. Supp. 2d 720 (S.D. Tex. 2002)....................................9

*Lindloff v. Schenectady Int'l,* 950 F. Supp. 183 (E.D. Tex. 1996)....................................6

*Manetti-Farrow, Inc. v. Gucci America, Inc.,* 858 F.2d 509 (9th Cir. 1988)...............2, 4, 5

*Mannatech Inc. v. See,* No. Civ. A. 399CV1877G, 2000 WL 256326, at *1
    (N.D. Tex. March 7, 2000)...........................................................9

*Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216 (5th Cir. 1998)............................2, 5

*Minka Lighting, Inc. v. Trans Globe Imports, Inc.*, No. Civ. A. 3:02-CV-2538-G,
 2003 WL 21251684, at *1 (N.D. Tex. May 23, 2003)............................................6

*Mitsui & Co. (USA), Inc., v. Mira M/V*, 111 F.3d 33, 35 (5th Cir. 1997)...............................5

*Nobel Insur. Co. v. Acme Truck Line, Inc.*, No. Civ. A. 3:99-CV-2950-G,
 2000 WL 298908, at *1 (N.D. Tex. 2000)...........................................................8

*Savoy Owners Assocs., Inc. v. Insurance Corp., of New York*,
 No. 02-Civ-6145, 2003 WL 941098, at *1 (S.D.N.Y. Mar. 6, 2003)........................11

*Soil Building Sys. v. CMI Terex Corp.*, No. Civ. A. 3:04-CV-0210-G,
 2004 WL 1283966, at *1 (N.D. Tex. June 6, 2004)...................................3, 4, 5, 6

*Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988).....................................................3

*Terra Intern., Inc. v. Mississippi Chemical Corp.*,
 922 F. Supp. 1334 (N.D. Iowa 1996).................................................................4

*Texas Instruments Inc. v. Micron Semiconductor, Inc.*,
 815 F. Supp. 994 (E.D. Tex. 1993)...................................................................7

*Texas Source Group, Inc. v. CCH, Inc.*, 967 F. Supp. 234 (S.D. Tex. 1997).................3, 5, 6

*Whistler Group, Inc. v. PNI Corp.*, No. Civ. A. 3:03-CV-1536-G, 2003
 WL 22939214, at *1 (N.D. Tex. Dec. 5, 2003).............................................6, 14

*Young v. Armstrong World Indus., Inc.*, 601 F. Supp. 399 (N.D. Tex. 1984)........................8

**Statutes**

28 U.S.C.  § 1404(a)....................................................................1, 5, 6, 14

28 U.S.C.  § 1406(a)............................................................................5

## REPLY BRIEF IN SUPPORT OF MOTION OF
## DEFENDANT STEPHEN GREGORIO TO TRANSFER VENUE

Defendant Stephen Gregorio ("Gregorio") submits this memorandum in reply to

Plaintiff's opposition to Gregorio's motion to transfer venue to the District of Massachusetts,

pursuant to 28 U.S.C. § 1404(a). As shown below, the forum selection clause in the Asset

Purchase Agreement applies to this case and constitutes sufficient grounds for transfer.

Moreover, even if the Court finds that the forum selection clause creates only a presumption in

favor of transfer, transfer is appropriate because Plaintiff's attempts to discredit the private and

public interest considerations that weigh in favor of transfer are unavailing and because Plaintiff

has failed to demonstrate that transfer would cause any substantial inconvenience to it or others.

Thus, despite Plaintiff's unsupported assertion to the contrary, transfer would not entail a mere

shift in inconvenience between parties but rather would be for "the convenience of the parties and

witnesses" overall and generally "in the interest of justice," within the meaning of § 1404(a).

Indeed, the *sole* consideration Plaintiff has identified that weighs against transfer is that plaintiff's

principal, Kevin Swenke, resides in Texas. Convenience to Swenke alone does not provide

grounds to deny transfer given the presumption in favor of transfer created by the forum selection

clause in the Asset Purchase Agreement and the other considerations favoring transfer discussed

below. Accordingly, this Court should grant Gregorio's motion to transfer venue to the District

of Massachusetts.

**A.     The Forum-Selection Clause in the Asset Purchase Agreement Constitutes Grounds
          for Transfer**

It is undisputed that the Asset Purchase Agreement (the "Agreement") contains a forum-

selection clause that designates the District of Massachusetts as the venue for all actions in

federal court. In its response brief, however, Plaintiff claims that the forum selection clause in

the Agreement is "irrelevant" because the clause does not apply to the present case and because

Defendants are not part of the Agreement and thus cannot "invoke" the clause.[1] See Plaintiff's Response Br., at 22 n.10. These contentions are entirely without force.

The Agreement's forum-selection clause reads as follows:

> **Jurisdiction.** Any action or proceeding seeking to enforce any provision of, or based on any right arising out of, this Agreement may be brought against any of the parties exclusively in the courts of the State of Commonwealth of Massachusetts or the federal courts of the District of Massachusetts, and each of the parties hereby consents to the jurisdiction of such courts (and of the appropriate appellate courts) in any such action or proceeding and waives ay objection to venue laid therein. Process in any such action or proceeding may be served on any party anywhere in the world, whether within or without the Commonwealth of Massachusetts.

See Asset Purchase Agreement, at 35 (Exhibit 1).[2]

Although Plaintiff does not assert a breach of contract claim in this case, the forum selection clause in the Agreement applies to this case because Plaintiff's claims are sufficiently based on the rights arising under the Agreement. See Marinechance Shipping, Ltd. v. Sebastian, 143 F.3d 216, 221-22 (5th Cir. 1998) ("We find no persuasive support for [a general contract-tort] distinction."); Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 514 (9th Cir. 1988) ("[F]orum selection clauses can be equally applicable to contractual and tort causes of action."). Indeed numerous courts have held that forum selection clauses apply in cases involving causes of

---

[1] Plaintiff implies that Gregorio admitted in his memorandum that the forum selection clause does not apply to this case. To the contrary, because Gregorio did not have access to the specific language of the clause, he made no statement about the applicability of the clause. Gregorio's statement (quoted only in part by Plaintiff) that "while the present action is not for breach of the Agreement, the existence of the provisions indicates that transfer to the District of Massachusetts is warranted" cannot be construed as an admission that the clause does not apply.

[2] Prior to submitting the Brief in Support of Motion of Defendant Gregorio to Transfer Venue, counsel for Gregorio was unable to obtain a copy of the Agreement. Counsel for Plaintiff claimed that she could not provide a copy because she did not have a copy of the final, executed version (despite the fact that Plaintiff later attached to its response brief a copy of the signature page of the Agreement and that Swenke stated in his affidavit that he is in possession of the Agreement, Swenke Aff., ¶ 32). Thus, in his moving brief Gregorio raised the issue to the extent possible without the actual language of the forum-selection clause. Counsel for Gregorio has since been able to obtain a copy of the Agreement through a third party and reproduces the language of the forum selection clause to rebut Plaintiff's assertion that the clause is inapplicable to this case. See Plaintiff's Response Br., at 22 n.10.

action similar to those brought here by Plaintiff.[3] See Soil Building Sys. v. CMI Terex Corp., No. Civ. A. 3:04-CV-0210-G, 2004 WL 1283966, at *6 (N.D. Tex. June 6, 2004) (forum selection clause applied to claims for negligent misrepresentation and under Texas Deceptive Trade Practices Act); Texas Source Group, Inc. v. CCH, Inc., 967 F. Supp. 234, 237-38 (S.D. Tex. 1997) (claims for negligent misrepresentation and fraud subject to forum selection clause because they "arise out of the parties' contractual relationship and implicate the Agreement"); Hoffman v. Burroughs Corp., 571 F. Supp. 545, 547 (N.D. Tex. 1982) (forum selection clause applied to claims under Texas Deceptive Trade Practices Act and for fraudulent misrepresentation as inducement to enter into contract); see also American Patriot Insur. Agency v. Mutual Risk Mgmt., Ltd, 364 F.3d 884, 889 (7th Cir. 2004) (forum selection clause applied to fraud claims). As the Seventh Circuit noted in American Patriot:

> [A] dispute over a contract does not cease to be such merely because instead of charging breach of contract the plaintiff charges a fraudulent breach, or fraudulent inducement, or fraudulent performance. . . . [T]he existence of multiple remedies for wrongs arising out of a contractual relationship does not obliterate the contractual setting, does not make the dispute any less one arising under or out of or concerning the contract, and does not point to a better forum for adjudicating the parties' dispute than the one they had selected to resolve their contractual disputes.

American Patriot, 364 F.3d at 889. Because Plaintiff's claims in this case are based on allegations that Defendants made misrepresentations that induced Plaintiff to enter into the Agreement, the claims "arise out of the parties' contractual relationship and implicate the Agreement" and thus are subject to the forum selection clause.[4] See Texas Source Group, 967 F. Supp. at 238.

---

[3] Federal common law applies in interpreting forum selection clauses for purposes of a motion to transfer pursuant to 1404(a). See Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 27-29 (1988); International Software Systems, Inc. v. Amplicon, Inc., 77 F.3d 112, 115 (5th Cir. 1996).

[4] Plaintiffs' assertion that the forum selection clause is "expressly narrowly tailored" does not change this conclusion. The forum-selection clause in the Agreement is not distinctively more narrow than in the cases cited above, see, e.g., Soil Building, 2004 WL 1283966, at *5-*6 ("actions brought to enforce or construe any of the provisions of this agreement"); Texas Source Group, 967 F. Supp. at 236 (suit "under" the agreement), and the general legal principle concerning the applicability of forum selection clauses to

Moreover, "[w]hether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract," Manetti-Farrow, 858 F.2d at 514; see Soil Building, 2004 WL 1283966, at *5, and the Agreement contains an integration clause that states that the Agreement (and specified ancillary agreements)

> constitute the entire agreement between the parties with respect to the subject matter hereof and supersede all prior agreements, understandings and negotiations, both written and oral, between the parties with respect to the subject matter hereof. No representation, inducement, promise, understanding, condition or warranty not set forth herein has been made or relied upon by either party hereto.

Exhibit 1, at 35. Plaintiff's claims necessarily entail interpretation of the integration provisions in the contract, and thus the forum selection clause applies. This Court's decision in Soil Building is precisely on point. In that case, this Court held that the plaintiff's negligent misrepresentation claim was governed by the forum selection clause because the claims "require interpretation of the contract." 2004 WL 1283966, at *6. Specifically, this Court stated that the forum selection clause applied because the plaintiff alleged that the defendant made false and incorrect representations and thus the claims "necessarily require the court to interpret the parameters of the Sales Agreement's provisions that disclaim all oral representations and prior agreements." Id. The same conclusion applies with respect to the forum selection clause in the Agreement and Plaintiff's claims in this case.

In addition, the fact that Defendants were not individually parties to the Agreement does not limit the applicability of the forum selection clause to this case--especially given that Defendants were both signatories to the Agreement as officers of Excelergy and the alleged conduct is so closely related to the contractual relationship. American Patriot, 364 F.3d at 889

---

related tort causes of action does not vary according to minute differences in the language of various clauses. See American Patriot, 364 F.3d at 889 ("And as for the plaintiff's argument that the word 'concerning' in the Shareholder Agreement's forum-selection clause is narrower than the more common term 'arising out of,' this is semantic quibbling."); Terra Intern., Inc. v. Mississippi Chemical Corp., 922 F. Supp. 1334, 1379 (N.D. Iowa 1996) ("[T]he critical question is not whether the language of the forum selection clause at issue expressly encompasses non-contract claims, but instead whether the non-contract claims asserted are directly or indirectly related to the contractual relationship of the parties.").

("Nor is a forum selection clause to be defeated by suing an affiliate or affiliates of the party to the contract in which the clause appears, or *employees of the affiliates*." (emphasis added)); Manetti-Farrow, 858 F.2d at 514 n.5 (rejecting argument that forum selection clause only applied to the defendant who signed the contract because "the alleged conduct of the non-parties is so closely related to the contractual relationship that the forum selection clause applies to all defendants"); Comerica Bank v. Whitehall Specialties, Inc., 352 F. Supp. 2d 1077, 1082 n.5 (C.D. Cal. 2004) ("Here the individual defendants are closely related to the contractual relationship because they are the owners and *directors* of Whitehall, one of the parties to the contract. The forum selection clause can therefore be applied to them as well." (emphasis added)); Texas Source Group, 967 F. Supp. at 237 ("[E]ven though Clarkson is not a signatory to the Agreement, his relationship with the plaintiffs and the defendants is so inextricably intertwined that he should be subject to the forum-selection clause."); Clinton v. Janger, 583 F. Supp. 284, 290 (N.D. Ill. 1984) ("[A] range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses.").

In sum, Plaintiff's attempt to circumvent the forum selection clause is unsuccessful. A forum selection clause is "prima facie valid and enforceable," Soil Building, 2004 WL 1283966, at *4, and to overcome the presumption of validity the party challenging the clause must make a "heavy showing" that the clause is unreasonable. Id. (quoting Mitsui & Co. (USA), Inc., v. Mira M/V, 111 F.3d 33, 35 (5th Cir. 1997)); see also Marinechance, 143 F.3d at 220 ("strong showing" required to defeat presumption of validity).

Here, Plaintiff's mere suggestion that the forum selection clause does not apply because of its choice of causes of action and defendants does not constitute such a showing. American Patriot, 364 F.3d at 888 ("These are really the same argument, and amount to saying that a plaintiff can defeat a forum-selection clause by its choice of . . . legal theories to press, and of defendants to name in the suit. If this were true, such clauses would be empty. It is not true."). Moreover, the applicability of the forum selection clause to the claims in this case constitutes

sufficient grounds for transfer to the venue designated in the clause pursuant to the Courts discretion under 28 U.S.C. § 1406(a). See Soil Building, 2004 WL 1283966, at *6 (transferring case under § 1406(a) because of forum selection clause where plaintiff moved for transfer under § 1404(a)). At the very least, the forum selection clause in the Agreement "provides some indication that the convenience of the parties would presumably be better served by transfer" to the designated venue, Elliott v. Carnival Cruise Lines, 231 F. Supp. 2d 555, 561 (S.D. Tex. 2002), and the Court should begin with this presumption in considering the private and public interest factors below. See id. at 563 (granting motion to transfer because nonmovant did "not present[] sufficient evidence to override the presumption created by the forum-selection clause that trial would be more convenient" in transferee venue); Texas Source Group, 967 F. Supp. at 239 ("[P]laintiffs would have needed to demonstrate exceptional circumstances for this Court to have denied the transfer on the grounds of inconvenience.").

**B.    The Private Interest Factors Favor Transfer**

  1. Plaintiff's Choice of Venue Has Reduced Significance Because Plaintiff Alleges that the Operative Facts Occurred in the District of Massachusetts

  Plaintiff makes much of the fact that some courts have stated that in considering motions to transfer venue under § 1404(a), there is a presumption in favor of a plaintiff's choice of forum.[5] See Plaintiff's Response Br., at 15. As noted above, this presumption is overridden by the strong presumption in favor of transfer created by the Agreement's forum selection clause. Moreover, Plaintiff fails to acknowledge the countervailing rule that "the plaintiff's choice of forum has reduced significance where most of the operative facts occurred outside the district." Minka Lighting, Inc. v. Trans Globe Imports, Inc., No. Civ. A. 3:02-CV-2538-G, 2003 WL 21251684, at *1 (N.D. Tex. May 23, 2003); see Lindloff v. Schenectady Int'l, 950 F. Supp. 183, 185 (E.D. Tex. 1996); Greiner v. American Motor Sales Corp., 645 F. Supp. 277, 279 (E.D. Tex.

---

[5] However, it is important to note that "[t]he preference for honoring a plaintiff's choice of forum is simply that, a preference; it is not a right." Whistler Group, Inc. v. PNI Corp, No. Civ. A. 3:03-CV-1536-G, 2003 WL 22939214, at *7 (N.D. Tex. Dec. 5, 2003) (quoting E.I. Dupong de Nemours & Company v. Diamond Shamrock Corp., 522 F. Supp. 588, 592 (D. Del. 1981)).

1986) ("[W]here none of the operative facts occur within the forum of plaintiff's original selection, his choice is entitled to only minimal consideration.") see also Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995) ("whether the claim arose elsewhere" one of factors to be considered). Here, Plaintiff expressly alleges in the Complaint that "Defendants' misrepresentations and omissions occurred primarily and substantially within Massachusetts."[6] Compl. ¶ 40. Thus, Plaintiff's choice of venue in this District is entitled to little, if any, weight.[7]

### 2. Sources of Proof

Plaintiff does not directly deny that the vast majority of documents and other sources of proof relevant to Plaintiff's claims are in Massachusetts. Rather, Plaintiff confusingly concludes that "this factor does not weigh either in favor of transfer or against it" because the parties could gain access to documents in Massachusetts by virtue of nonparty subpoenas. This, however, would be true in *any* case, and thus according to Plaintiff's logic, this factor would *never* weigh into a court's analysis in determining a § 1404(a) transfer motion. The plain fact of the matter is that virtually all of the sources of proof relevant to this case are in Massachusetts and this factor therefore favors transfer.[8]

### 3. Convenience of Witnesses

In addressing this factor, Plaintiff misconstrues the relevant inquiry, arguing not that more relevant witnesses reside in Texas than in Massachusetts, but rather that "more potentially relevant witnesses reside outside of, than in, Massachusetts." Plaintiff's Response Br., at 17.

---

[6] In arguing that this Court can assert personal jurisdiction over Defendant Mahoney, Plaintiff does not dispute that Defendants' alleged conduct occurred in Massachusetts, only that Plaintiff *received* several communications from Mahoney in Texas. Plaintiff's Response Br., at 5-8.

[7] Plaintiff's assertion that this is not a case of forum shopping does not weigh into the calculus. See Texas Instruments Inc. v. Micron Semiconductor, Inc., 815 F. Supp. 994, 996 (E.D. Tex. 1993) ("The Court is concerned only with whether the choice of forum is a proper one under the law, and not with the motives of the party selecting the forum.").

[8] Plaintiff does attempt to identify some documents in Texas. In his affidavit, Swenke states that he possesses relevant documents in Texas. However, the only document he clearly identifies is the Agreement, a copy of which is also in Excelergy's possession in Massachusetts. Moreover, Swenke's statement that certain unspecified documents relating to the negotiations of the Agreement and to Plaintiff's damages does not alter the conclusion that virtually all sources of proof are in Massachusetts. As noted in Gregorio's opening brief, the documents in Massachusetts include those pertaining to Excelergy's financial condition, the Boston Properties lease, the loans to Mahoney, and the bonus incentives for Mahoney.

Indeed, Plaintiff somehow construes the fact that certain potential witnesses reside in South Carolina and California as favoring denial of the motion. See id. at 20.

The relevant comparison is between witnesses located in Massachusetts and those in Texas, and this comparison clearly favors transfer.[9] In his opening brief, Gregorio identified a number of potential witnesses and described the relevant knowledge each had with regard to the claims in this case. Plaintiff's argument that Gregorio's initial showing was insufficient is unconvincing. Indeed, Plaintiff's own citation to Young v. Armstrong World Indus., Inc., 601 F. Supp. 399 (N.D. Tex. 1984), is illuminating:

> the moving Defendants must prove with particularity the reasons why they are inconvenienced by Plaintiffs' choice of forum:
>
> The party seeking the transfer must *clearly specify the key witnesses to be called* and must make a *general statement* of what their testimony will cover. The emphasis must be on this showing rather than on numbers. One key witness may outweigh a great number of less important witnesses. If a party has merely made a general allegation that witnesses will be necessary, without identifying them and indicating what their testimony will be, the application for transfer will be denied.

Id. at 401-02 (emphasis added); see also Nobel Insur. Co. v. Acme Truck Line, Inc., No. Civ. A. 3:99-CV-2950-G, 2000 WL 298908, at *2 (N.D. Tex. 2000) ("[T]he party seeking transfer must clearly specify the key witnesses to be called an must make a *general statement* of what their testimony will cover." (quoting Continental Airlines, Inc. v. American Airlines, Inc., 805 F. Supp. 1392, 1396 (S.D. Tex. 1992))). Gregorio has clearly satisfied this burden by identifying specific witnesses and outlining the specific issues as to which that those individuals have knowledge. Plaintiff suggests that in order to make a sufficient showing for transfer a movant must secure a witnesses commitment to testify and must provide the precise testimony to be given at trial. This is simply not possible at this juncture of the case, nor is such a standard supported in the case law.

---

[9] Thus, Plaintiff's contention that Gregorio is "disingenuous" in referring only to Excelergy Board members who live in Massachusetts as relevant, Plaintiff's Response Br., at 17 n.4, is misplaced. Gregorio did in fact identify Excelergy Board members who do not live in Massachusetts, and he left them out of the analysis because they neither favored nor disfavored transfer.

Even if the Court were to credit Swenke's conclusory assertions that several of the potential witnesses identified by Gregorio do not have knowledge relevant, Swenke does *not* dispute that Alfred Browne III, Robert Davoli, R. David Tabors, Alphonse Lucchese, Matthew Emsley, and Robert Paquette have knowledge relevant to Plaintiff's claims.[10]  Swenke Aff., ¶¶ 18-20.

In contrast to the showing made by Gregorio, the only potential witnesses in Texas that Plaintiff identifies are Swenke, Plaintiff's CPA (Leo Preolo), and Plaintiff's "members/owner." As for the latter, Swenke's affidavit merely states that each "member/owner" provided consent for Excelergy's purchase of Plaintiff.[11]  Plaintiff provides no indication of what relevant testimony any of these individuals could provide, other than mere background information.  In addition, because Preolo is an employee of Plaintiff, his convenience is afforded less consideration than for other witnesses.  See Lemery v. Ford Motor Co., 244 F. Supp. 2d 720, 731 (S.D. Tex. 2002) (witnesses who are employees of a defendant are entitled to less weight); Mannatech Inc. v. See, No. Civ. A. 399CV1877G, 2000 WL 256326, at *3 (N.D. Tex. March 7, 2000) (same). Continental Airlines, 805 F. Supp. at 1397 (same). And as noted in Gregorio's opening brief, Swenke, as Plaintiff's principal, should be treated for present purposes as a party witness, and thus his convenience should be given minimal weight--or at least no more weight than that of Defendants.  Plaintiff's contention that Swenke is a nonparty witness because he is not the named plaintiff is disingenuous.  Swenke is clearly the motivating force behind and has the primary interest in this litigation; Swenke's convenience should not be given heightened consideration merely because he chose not to bring suit in his individual name.

Even assuming, *arguendo*, that Swenke is a nonparty witness, the inconvenience caused to him by transferring the case does not outweigh the inconvenience to witnesses in

---

[10] In addition, two other individuals possess information central to Plaintiff's claims: Cary G. Bullock, founder, former CEO, and former Chairman of Excelergy, who lives in Belmont, MA and was with Excelergy during the negotiation and execution of the Agreement; and Christopher Cazer, former Vice President of Research & Development and CTO, who lives in New York state and was involved in evaluating Plaintiff's technology.

[11] Swenke's mention of the bankruptcy proceedings of one of the owner/members, ANG Holdings, LLC, has no bearing whatsoever on the present motion.

Massachusetts caused by maintaining the case in Texas.  Plaintiff argues that Swenke and Defendants are the only key witnesses, and all other witnesses are "secondary or cumulative." Plaintiff's apparent basis for this contention is that Swenke and Defendants were the only individuals present at the time the alleged misrepresentations were made.  But a number of issues pertaining to other than the actual alleged misrepresentations are crucial to Plaintiff's claims. Indeed, to prove negligent misrepresentation, Plaintiff must show, *inter alia*, that the alleged misrepresentations were false and that Defendants "fail[ed] to exercise reasonable care or competence in obtaining or communicating the information."  See Golber v. Baybank Valley Trust Co., 704 N.E. 2d 1191, 1192 (Mass. App. Ct. 1999).  Thus, clearly, the knowledge of the witnesses, which includes information pertaining to the past and present financial condition of Excelergy, accounting issues, the loans to Mahoney, Mahoney's bonus incentives, and the lease with Boston Properties, is central to Plaintiff's claims.

Finally, in attempt to further muddy the issue, Plaintiff contends that the testimony of the witnesses identified by Gregorio could be presented by videotaped deposition.  To be sure, the cases cited by Plaintiff suggest that in certain circumstances, videotaped depositions might be adequate.  However, this does not change the fact, noted in Gregorio's opening brief, that all else being equal, courts prefer live testimony.  Indeed, Plaintiff does not explain why this court should deny transfer and settle for videotaped depositions given the viable option of transferring the case to a venue in which live testimony is much more likely.  Given that much of the case likely will depend on credibility determinations by the court, securing live testimony is more crucial than in the ordinary case, and thus resort to video depositions for what would likely be a substantial majority of witnesses is not a reasonable alternative to transfer.

4.    Cost of Attendance of Willing Witnesses

Plaintiff's assertion that Defendants have not identified any witnesses who "would be willing to travel to Texas to testify at trial but for the cost and inconvenience of such travel, " Plaintiff's Response Br., at 20, has no bearing on the present motion, and unsurprisingly,

Plaintiffs do not cite to any authority for such an inquiry. The question is not whether Defendants can identify specific witnesses who would be unwilling to travel to Texas, but rather whether Texas is an inconvenient forum for those who might be willing to testify. See Savoy Owners Assocs., Inc. v. Insurance Corp., of New York, No. 02-Civ-6145, 2003 WL 941098, at *2 (S.D.N.Y. Mar. 6, 2003) ("[Convenience of witnesses] factor is deemed so important because "[t]he lack of subpoena power coupled with the long-distance travel required *if* the witnesses were to voluntarily appear before the court could impede trial and would impose substantial expense on witnesses and on the plaintiff." (emphasis added)). Thus, the cost of travel to Texas would surely burden those would be willing to testify or, alternatively, would be prohibitive for potential witnesses. Either way, the conclusion is the same: Texas is an inconvenient forum for the majority of potential witnesses in this case.

**C.   The Public Interest Factors Favor Transfer**

       1.   Massachusetts's Interest in Adjudicating This Dispute

Plaintiff argues that "Texas has a significant interest in providing a forum for the resolution of disputes involving tortious injury to its citizens." Plaintiff's Response Br., at 22. While this certainly may be the case, Texas's interest is outweighed by Massachusetts's interest in adjudicating the present dispute, given all of the factors tying Plaintiff's claims to Massachusetts. See Allegiant Physicians Services, Inc. v. Sturdy Memorial Hospital, 926 F. Supp. 1106, 1119 (N.D. Ga. 1996) ("While it cannot be said Georgia has no interest in remedying harm to one of its corporate residents, any interest Georgia possesses is tempered by Massachusetts' interest in adjudicating contractual disputes where the entire transaction occurred in Massachusetts, the contract was delivered and executed in Massachusetts, [and] the contract expressly provides for the application of Massachusetts law . . . ."); see also Gary Scott Int'l, Inc. v. Baroudi, 981 F. Supp. 714 (D. Mass. 1997) (Massachusetts has significant interest in adjudicating dispute where interpretation of Massachusetts state law involved). Accordingly, this factor favors transfer.



2.    Respective Venues' Familiarity With Governing Law

Plaintiff's contention that Gregorio has not demonstrated that "the Court's supposed unfamiliarity with Massachusetts substantive law is any less than that of the District Court for the District of Massachusetts" is on its face absurd.[12]  Simply by virtue of getting more exposure to Massachusetts law--just as this Court deals more frequently with Texas law--courts in the District of Massachusetts clearly have greater expertise as to Massachusetts substantive law than other federal district courts.  Moreover, while Plaintiff asserts on the one hand that Massachusetts and Texas substantive law are "similar" as to Plaintiff's claims, it acknowledges on the other hand that unlike its Massachusetts counterpart, the Texas unfair trade practices statute does not recognize a cause of action for businesses.  Although it obviously is neither impossible nor unheard of for a district court outside of Massachusetts to adjudicate claims based in Massachusetts state law, the District of Massachusetts is the better equipped to do so, and thus this factor weighs substantially in favor of transfer.

3.    Docket Congestion

In a supplement to its response brief, Plaintiff  provides statistics from the 2003 Civil Justice Reform Act Report ("CJRA Report"), and concludes from the report that this District is "much less congested" that the District of Massachusetts.  Plaintiff's Supplemental Response Br., at 1.  This contention is entirely without merit.

As an initial matter, the statistics Plaintiff provides are completely outdated.  The CJRA Report Plaintiff submitted provides snapshots of the respective district courts in March 31, 2003, and in September, 30, 2003.  These figures, from over a year and a half to two years ago, do not

---

[12] Plaintiff contends that Gregorio admits that "Massachusetts law, including Chapter 93A, governs the substantive claims in this action" and thus "cannot later claim that contacts within Massachusetts are insufficient to preclude application of Massachusetts law to the substantive claims raised in this action." Plaintiff's Response Br., at 23 n.11.  To the contrary, Gregorio merely noted in his opening brief that Plaintiff was asserting that Massachusetts law applied by bringing a claim under Mass. Gen. Laws ch. 93A and by alleging that Defendants' misrepresentations and omissions occurred primarily and substantially within Massachusetts.  See Brief in Support of Motion of Defendant Stephen Gregorio to Transfer Venue, at 9-10.  Gregorio did not (and does not) admit that Plaintiff alleged sufficient contacts to state a claim under chapter 93A or otherwise under Massachusetts state law.

provide a basis on which this Court can make any conclusions as to the relative congestion of the two districts.

More fundamentally, even if a more recent CJRA Report was available, the data provided in the reports is not particularly relevant for present purposes. Indeed, Plaintiff obscures the fact that the CJRA Reports provide very specific information about the district court dockets that is not entirely relevant for present purposes. The CJRA reports provide three sets of data for each district court judge: (1) the number of cases *over three years old*; (2) the number of motions pending *for over six months*; and (3) the number of bench trials. These figures are not precise indicators of overall court congestion but rather serve as rough proxies for certain types of congestion on courts' dockets.

A closer look at the statistics for 2003 provided by the Administrative Office of the United States Courts highlights the limited utility of the CJRA Reports. [13] According to these statistics, during the 12-month period ending September 30, 2003, the District Massachusetts had *fewer* pending civil cases that the Northern District of Texas (3,695 compared to 4,542). See Table C-3A: U.S. District Courts--Civil Cases Pending, by Nature of Suit and District (Exhibit 2). In addition, during that period there was not a substantial difference in the medial time interval from filing to disposition of civil cases in the districts (10.7 months compared to 7.2). See Table C-5: U.S. District Courts--Median Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition (Exhibit 3).

Current statistics from the Administrative Office of the Court, for the 12-month period ending September 30, 2004, indicate that the there is no appreciable difference in terms of court congestion between the two districts. See U.S. District Court--Judicial Caseload Profiles (Exhibit

---

[13] This information is publicly available. See Judicial Business of the United States Courts 2003, available at http://www.uscourts.gov/judbus2003/contents.html.

4).[14]  Indeed, there were almost twice as many filings in this District than in the District of Massachusetts (6,560 compared to 3,819), as well as slightly more pending cases (4,686 compared to 4,496).[15]  Id.  More important, as this Court has recognized, are the statistics that indicate the median times from filing to disposition, see, e.g., Isbell v. DM Records, Inc., No. Civ. A. 3:02-CV-1408-G, 2004 WL 1243153, at *15 (N.D. Tex. June 4, 2004) ("the comparative calendar congestion (i.e., the amount of time needed to adjudicate a civil dispute)"); Whistler Group, Inc. v. PNI Corp., No. Civ. A. 3:03-CV-1536-G, 2003 WL 22939214, at *4 (N.D. Tex. Dec. 5, 2003) (same), and those statistics do not significantly differ between the districts (7.4 months in this District compared to 9.4 months in the District of Massachusetts).[16]  See Exhibit 4. Accordingly, this factor does not significantly favor or disfavor transfer.

## CONCLUSION

For the foregoing reasons, Defendant Gregorio respectfully requests that, pursuant to 28 U.S.C. § 1404(a), this Court transfer this case to the District of Massachusetts.

---

[14] This information is publicly available. See Judicial Business of the United States Courts 2003, available at http://www.uscourts.gov/judbus2003/contents.html. See Federal Court Management Statistics 2004, available at http://www.uscourts.gov/cgi-bin/cmsd2004.pl.

[15] Per judgeship, there were 547 total filings, 452 civil filings, and 391 pending cases in this District compared to 294 total filings, 255 civil filings, and 346 pending cases in the District of Massachusetts. See Exhibit 4.

[16] The numbers for both the median time from filing to trial of civil cases and the number of civil cases over three years old are larger for the District of Massachusetts than for this District. However, as the explanation of the terms indicates, these figures include data for cases on appeal in other courts and thus may be skewed by various factors, such as the pendency in a particular district of a large number of related cases awaiting resolution of appeals. See Explanation of Terms, available at http://www.uscourts.gov/library/fcmstat/cmsexpl04.html (Exhibit 5).

ORIGINAL

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**FILED**

MAR 1 5 2006

CLERK, U.S. DISTRICT COURT
By_____
Deputy

_____
                                              )
FM HOLDINGS, LLC, f/k/a                       )
FORWARDMARKET, LLC,                           )
                                              )
            Plaintiff,                        )        Civil Action No.
v.                                            )        3: 05-CV-0166-G
                                              )
BILL MAHONEY and STEPHEN                      )
GREGORIO,                                     )
                                              )
            Defendants.                       )
_____    )

**DEFENDANT STEPHEN GREGORIO'S MOTION FOR LEAVE TO FILE
REPLY BRIEF IN EXCESS OF TEN PAGES IN SUPPORT OF
DEFENDANT STEPHEN GREGORIO TO TRANSFER VENUE**

Defendant Stephen Gregorio hereby moves for leave to file his reply brief in support of

his motion to transfer venue, attached hereto as Exhibit "A", in excess of the 10-page limit in

Local Rule 7.2.    In response to Defendant Gregorio's motion to transfer and Defendant Bill

Mahoney's motions pursuant to Fed. R. Civ. P. 12(b)(3) and (3), Plaintiff submitted a twenty-five

page brief, which set forth arguments not addressed in Gregorio's original brief, including the

contention that the forum selection clause in the Asset Purchase Agreement did not apply to this

case.  In addition, Plaintiff submitted a supplemental response to address the additional issue of

court congestion.   Defendant Gregorio has since filing his opening brief been able to obtain a

copy of the Asset Purchase Agreement from a third party, and thus requests that this Court grant

leave to file the excess pages required to address fully the arguments presented in Plaintiff's

Reply and Supplemental Reply Briefs.

Respectfully submitted,

**SHANNON GRACEY RATLIFF & MILLER, LLP**
777 Main Street, Suite 3800
Fort Worth, Texas 76102
(817) 336-9333  Telephone
(817) 336-3735  Facsimile

By: _____
          Thomas J. Fisher
          State Bar Card No.:  07064500

*Of Counsel:*

Timothy C. Blank
BBO No. 548670
Michael. S. Shin
BBO No. 658134
**DECHERT LLP**
00 Clarendon Street, 27th Floor
Boston, MA  02116
(617) 728-7100  Telephone
(617) 426-6567

**ATTORNEYS FOR DEFENDANT
STEPHEN GREGORIO**

## CERTIFICATE OF CONFERENCE

On March 15, 2005, I contacted counsel regarding their opposition to this Motion. Charles R. Biddle, counsel for Plaintiff is unopposed to this Motion.  I have attempted to contact Kimberly A. Elkjer, counsel for Defendant Mahoney, but was unable to reach her and it is assumed that she is opposed.

_____
Thomas J. Fisher

## CERTIFICATE OF SERVICE

I certify that on March 16, 2005, a true and correct copy of the foregoing was served upon all known counsel of record via first class U.S. Mail as follows:

Charles R. Biddle
Ronald O. Holman
HOLMAN ROBERTSON ELDRIDGE
5949 Sherry Lane, Suite 1700
Dallas, Texas 75225

Kimberly A. Elkjer
ROBERT M. MILLIMET
Scheef & Stone, L.L.P.
5956 Sherry Lane, Suite 1400
Dallas, Texas 75225

_____
Thomas J. Fisher

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

|  |  |  |
|---|---|---|
| FM HOLDINGS, LLC, f/k/a<br>FORWARDMARKET, LLC, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. |
| v. | ) ) | 3: 05-CV-0166-G |
| BILL MAHONEY and STEPHEN<br>GREGORIO, | ) ) ) | |
| Defendants. | ) ) ) | |

## <u>REPLY BRIEF IN SUPPORT OF MOTION OF<br>DEFENDANT STEPHEN GREGORIO TO TRANSFER VENUE</u>

Respectfully submitted,

**SHANNON GRACEY RATLIFF & MILLER, LLP**
777 Main Street, Suite 3800
Fort Worth, Texas  76102
(817) 336-9333  Telephone
(817) 336-3735  Facsimile

By:_____

       Thomas J. Fisher
       State Bar Card No.:  07064500

*Of Counsel:*

Timothy C. Blank
BBO No. 548670
Michael. S. Shin
BBO No. 658134
**DECHERT L.L.P.**
200 Clarendon Street, 27th Floor
Boston, MA  02116
(617) 728-7100  Telephone
(617) 426-6567  Facsimile

**ATTORNEYS FOR DEFENDANT
STEPHEN GREGORIO**


EXHIBIT
A

## CERTIFICATE OF SERVICE

I certify that on March 15, 2005, a true and correct copy of the foregoing was served on all known counsel of record via first class U.S. mail as follows:

Charles R. Biddle
Ronald O. Holman
HOLMAN ROBERTSON ELDRIDGE
5949 Sherry Lane, Suite 1700
Dallas, Texas 75225

Kimberly A. Elkjer
Robert M. Millimet
SCHEEF & STONE, L.L.P.
5956 Sherry Ln., Suite 1400
Dallas, Texas 75225

# TABLE OF CONTENTS

A.     THE FORUM-SELECTION CLAUSE IN THE ASSET PURCHASE AGREEMENT CONSTITUTES GROUNDS FOR TRANSFER ............................1

B.     THE PRIVATE INTEREST FACTORS FAVOR TRANSFER...............................6

     1.     Plaintiff's Choice of Venue Has Reduced Significance Because Plaintiff Alleges that the Operative Facts Occurred in the District of Massachusetts...............................................6

     2.     Sources of Proof................................................................7

     3.     Convenience of Witnesses......................................................7

     4.     Cost of Attendance of Willing Witnesses................................10

C.     THE PUBLIC INTEREST FACTORS FAVOR TRANSFER................................11

     1.     Massachusetts's Interest in Adjudicating This Dispute..............11

     2.     Respective Venues' Familiarity With Governing Law................12

     3.     Docket Congestion.............................................................12

D.     CONCLUSION

# TABLE OF AUTHORITIES

**Cases**

*Allegiant Physicians Services, Inc. v. Sturdy Memorial Hospital,*
    926 F. Supp. 1106 (N.D. Ga. 1996)...................................................................11

*American Patriot Insur. Agency v. Mutual Risk Mgmt., Ltd,*
    364 F.3d 884 (7th Cir. 2004)...............................................................3, 4, 5

*Clinton v. Janger,* 583 F. Supp. 284 (N.D. Ill. 1984)..............................................5

*Comerica Bank v. Whitehall Specialties, Inc.,* 352 F. Supp.
    2d 1077 (C.D. Cal. 2004)....................................................................5

*Continental Airlines, Inc. v. American Airlines, Inc.,*
    805 F. Supp. 1392 (S.D. Tex. 1992).......................................................8, 9

*E.I. Dupong de Nemours & Company v. Diamond Shamrock Corp.,*
    522 F. Supp. 588 (D. Del. 1981))............................................................6

*Elliott v. Carnival Cruise Lines,* 231 F. Supp. 2d 555
    (S.D. Tex. 2002).....................................................................6

*Gary Scott Int'l, Inc. v. Baroudi,* 981 F. Supp. 714 (D. Mass. 1997)....................................11

*Golber v. Baybank Valley Trust Co.,* 704 N.E. 2d 1191
    (Mass. App. Ct. 1999)..................................................................10

*Greiner v. American Motor Sales Corp.,* 645 F. Supp. 277
    (E.D. Tex. 1986).......................................................................6

*Hoffman v. Burroughs Corp.,* 571 F. Supp. 545 (N.D. Tex. 1982)....................................3

*International Software Systems, Inc. v. Amplicon, Inc.,*
    77 F.3d 112 (5th Cir. 1996)..................................................................3

*Isbell v. DM Records, Inc.,* No. Civ. A. 3:02-CV-1408-G, 2004
    WL 1243153, at *1 (N.D. Tex. June 4, 2004)....................................................14

*Jumara v. State Farm Ins. Co.,* 55 F.3d 873 (3d Cir. 1995)....................................7

*Lemery v. Ford Motor Co.,* 244 F. Supp. 2d 720 (S.D. Tex. 2002)....................................9

*Lindloff v. Schenectady Int'l,* 950 F. Supp. 183 (E.D. Tex. 1996)....................................6

*Manetti-Farrow, Inc. v. Gucci America, Inc.,* 858 F.2d 509 (9th Cir. 1988)........................2, 4, 5

*Mannatech Inc. v. See,* No. Civ. A. 399CV1877G, 2000 WL 256326, at *1
    (N.D. Tex. March 7, 2000)...................................................................9

*Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216 (5th Cir. 1998)..........................2, 5

*Minka Lighting, Inc. v. Trans Globe Imports, Inc.*, No. Civ. A. 3:02-CV-2538-G,
    2003 WL 21251684, at *1 (N.D. Tex. May 23, 2003)............................................6

*Mitsui & Co. (USA), Inc., v. Mira M/V*, 111 F.3d 33, 35 (5th Cir. 1997)...............................5

*Nobel Insur. Co. v. Acme Truck Line, Inc.*, No. Civ. A. 3:99-CV-2950-G,
    2000 WL 298908, at *1 (N.D. Tex. 2000).........................................................8

*Savoy Owners Assocs., Inc. v. Insurance Corp., of New York*,
    No. 02-Civ-6145, 2003 WL 941098, at *1 (S.D.N.Y. Mar. 6, 2003).........................11

*Soil Building Sys. v. CMI Terex Corp.*, No. Civ. A. 3:04-CV-0210-G,
    2004 WL 1283966, at *1 (N.D. Tex. June 6, 2004)...................................3, 4, 5, 6

*Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988)....................................................3

*Terra Intern., Inc. v. Mississippi Chemical Corp.*,
    922 F. Supp. 1334 (N.D. Iowa 1996)................................................................4

*Texas Instruments Inc. v. Micron Semiconductor, Inc.*,
    815 F. Supp. 994 (E.D. Tex. 1993).................................................................7

*Texas Source Group, Inc. v. CCH, Inc.*, 967 F. Supp. 234 (S.D. Tex. 1997).....................3, 5, 6

*Whistler Group, Inc. v. PNI Corp.*, No. Civ. A. 3:03-CV-1536-G, 2003
    WL 22939214, at *1 (N.D. Tex. Dec. 5, 2003)...............................................6, 14

*Young v. Armstrong World Indus., Inc.*, 601 F. Supp. 399 (N.D. Tex. 1984)........................8

**Statutes**

28 U.S.C. § 1404(a)...........................................................................1, 5, 6, 14

28 U.S.C. § 1406(a)....................................................................................5

## REPLY BRIEF IN SUPPORT OF MOTION OF
## DEFENDANT STEPHEN GREGORIO TO TRANSFER VENUE

Defendant Stephen Gregorio ("Gregorio") submits this memorandum in reply to

Plaintiff's opposition to Gregorio's motion to transfer venue to the District of Massachusetts,

pursuant to 28 U.S.C. § 1404(a). As shown below, the forum selection clause in the Asset

Purchase Agreement applies to this case and constitutes sufficient grounds for transfer.

Moreover, even if the Court finds that the forum selection clause creates only a presumption in

favor of transfer, transfer is appropriate because Plaintiff's attempts to discredit the private and

public interest considerations that weigh in favor of transfer are unavailing and because Plaintiff

has failed to demonstrate that transfer would cause any substantial inconvenience to it or others.

Thus, despite Plaintiff's unsupported assertion to the contrary, transfer would not entail a mere

shift in inconvenience between parties but rather would be for "the convenience of the parties and

witnesses" overall and generally "in the interest of justice," within the meaning of § 1404(a).

Indeed, the *sole* consideration Plaintiff has identified that weighs against transfer is that plaintiff's

principal, Kevin Swenke, resides in Texas. Convenience to Swenke alone does not provide

grounds to deny transfer given the presumption in favor of transfer created by the forum selection

clause in the Asset Purchase Agreement and the other considerations favoring transfer discussed

below. Accordingly, this Court should grant Gregorio's motion to transfer venue to the District

of Massachusetts.

A.    **The Forum-Selection Clause in the Asset Purchase Agreement Constitutes Grounds
      for Transfer**

It is undisputed that the Asset Purchase Agreement (the "Agreement") contains a forum-

selection clause that designates the District of Massachusetts as the venue for all actions in

federal court. In its response brief, however, Plaintiff claims that the forum selection clause in

the Agreement is "irrelevant" because the clause does not apply to the present case and because

Defendants are not part of the Agreement and thus cannot "invoke" the clause.[1]  See Plaintiff's

Response Br., at 22 n.10.  These contentions are entirely without force.

The Agreement's forum-selection clause reads as follows:

> **Jurisdiction.** Any action or proceeding seeking to enforce any
> provision of, or based on any right arising out of, this Agreement
> may be brought against any of the parties exclusively in the courts of
> the State of Commonwealth of Massachusetts or the federal courts of
> the District of Massachusetts, and each of the parties hereby consents
> to the jurisdiction of such courts (and of the appropriate appellate
> courts) in any such action or proceeding and waives ay objection to
> venue laid therein.  Process in any such action or proceeding may be
> served on any party anywhere in the world, whether within or
> without the Commonwealth of Massachusetts.

See Asset Purchase Agreement, at 35 (Exhibit 1).[2]

Although Plaintiff does not assert a breach of contract claim in this case, the forum

selection clause in the Agreement applies to this case because Plaintiff's claims are sufficiently

based on the rights arising under the Agreement.  See Marinechance Shipping, Ltd. v. Sebastian,

143 F.3d 216, 221-22 (5th Cir. 1998) ("We find no persuasive support for [a general contract-tort]

distinction."); Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 514 (9th Cir. 1988)

("[F]orum selection clauses can be equally applicable to contractual and tort causes of action.").

Indeed numerous courts have held that forum selection clauses apply in cases involving causes of

---

[1] Plaintiff implies that Gregorio admitted in his memorandum that the forum selection clause does not
apply to this case.  To the contrary, because Gregorio did not have access to the specific language of the
clause, he made no statement about the applicability of the clause.  Gregorio's statement (quoted only in
part by Plaintiff) that "while the present action is not for breach of the Agreement, the existence of the
provisions indicates that transfer to the District of Massachusetts is warranted" cannot be construed as an
admission that the clause does not apply.

[2] Prior to submitting the Brief in Support of Motion of Defendant Gregorio to Transfer Venue, counsel for
Gregorio was unable to obtain a copy of the Agreement.  Counsel for Plaintiff claimed that she could not
provide a copy because she did not have a copy of the final, executed version (despite the fact that Plaintiff
later attached to its response brief a copy of the signature page of the Agreement and that Swenke stated in
his affidavit that he is in possession of the Agreement, Swenke Aff., ¶ 32).  Thus, in his moving brief
Gregorio raised the issue to the extent possible without the actual language of the forum-selection clause.
Counsel for Gregorio has since been able to obtain a copy of the Agreement through a third party and
reproduces the language of the forum selection clause to rebut Plaintiff's assertion that the clause is
inapplicable to this case.  See Plaintiff's Response Br., at 22 n.10.

action similar to those brought here by Plaintiff.[3]  See Soil Building Sys. v. CMI Terex Corp., No. Civ. A. 3:04-CV-0210-G, 2004 WL 1283966, at *6 (N.D. Tex. June 6, 2004) (forum selection clause applied to claims for negligent misrepresentation and under Texas Deceptive Trade Practices Act); Texas Source Group, Inc. v. CCH, Inc., 967 F. Supp. 234, 237-38 (S.D. Tex. 1997) (claims for negligent misrepresentation and fraud subject to forum selection clause because they "arise out of the parties' contractual relationship and implicate the Agreement"); Hoffman v. Burroughs Corp., 571 F. Supp. 545, 547 (N.D. Tex. 1982) (forum selection clause applied to claims under Texas Deceptive Trade Practices Act and for fraudulent misrepresentation as inducement to enter into contract); see also American Patriot Insur. Agency v. Mutual Risk Mgmt., Ltd, 364 F.3d 884, 889 (7th Cir. 2004) (forum selection clause applied to fraud claims). As the Seventh Circuit noted in American Patriot:

> [A] dispute over a contract does not cease to be such merely because instead of charging breach of contract the plaintiff charges a fraudulent breach, or fraudulent inducement, or fraudulent performance. . . . [T]he existence of multiple remedies for wrongs arising out of a contractual relationship does not obliterate the contractual setting, does not make the dispute any less one arising under or out of or concerning the contract, and does not point to a better forum for adjudicating the parties' dispute than the one they had selected to resolve their contractual disputes.

American Patriot, 364 F.3d at 889.  Because Plaintiff's claims in this case are based on allegations that Defendants made misrepresentations that induced Plaintiff to enter into the Agreement, the claims "arise out of the parties' contractual relationship and implicate the Agreement" and thus are subject to the forum selection clause.[4]  See Texas Source Group, 967 F. Supp. at 238.

---

[3] Federal common law applies in interpreting forum selection clauses for purposes of a motion to transfer pursuant to 1404(a). See Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 27-29 (1988); International Software Systems, Inc. v. Amplicon, Inc., 77 F.3d 112, 115 (5th Cir. 1996).

[4] Plaintiffs' assertion that the forum selection clause is "expressly narrowly tailored" does not change this conclusion.  The forum-selection clause in the Agreement is not distinctively more narrow than in the cases cited above, see, e.g., Soil Building, 2004 WL 1283966, at *5-*6 ("actions brought to enforce or construe any of the provisions of this agreement"); Texas Source Group, 967 F. Supp. at 236 (suit "under" the agreement), and the general legal principle concerning the applicability of forum selection clauses to

Moreover, "[w]hether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract," Manetti-Farrow, 858 F.2d at 514; see Soil Building, 2004 WL 1283966, at *5, and the Agreement contains an integration clause that states that the Agreement (and specified ancillary agreements)

> constitute the entire agreement between the parties with respect to the subject matter hereof and supersede all prior agreements, understandings and negotiations, both written and oral, between the parties with respect to the subject matter hereof. No representation, inducement, promise, understanding, condition or warranty not set forth herein has been made or relied upon by either party hereto.

Exhibit 1, at 35. Plaintiff's claims necessarily entail interpretation of the integration provisions in the contract, and thus the forum selection clause applies. This Court's decision in Soil Building is precisely on point. In that case, this Court held that the plaintiff's negligent misrepresentation claim was governed by the forum selection clause because the claims "require interpretation of the contract." 2004 WL 1283966, at *6. Specifically, this Court stated that the forum selection clause applied because the plaintiff alleged that the defendant made false and incorrect representations and thus the claims "necessarily require the court to interpret the parameters of the Sales Agreement's provisions that disclaim all oral representations and prior agreements." Id. The same conclusion applies with respect to the forum selection clause in the Agreement and Plaintiff's claims in this case.

In addition, the fact that Defendants were not individually parties to the Agreement does not limit the applicability of the forum selection clause to this case--especially given that Defendants were both signatories to the Agreement as officers of Excelergy and the alleged conduct is so closely related to the contractual relationship. American Patriot, 364 F.3d at 889

---

related tort causes of action does not vary according to minute differences in the language of various clauses. See American Patriot, 364 F.3d at 889 ("And as for the plaintiff's argument that the word 'concerning' in the Shareholder Agreement's forum-selection clause is narrower than the more common term 'arising out of,' this is semantic quibbling."); Terra Intern., Inc. v. Mississippi Chemical Corp., 922 F. Supp. 1334, 1379 (N.D. Iowa 1996) ("[T]he critical question is not whether the language of the forum selection clause at issue expressly encompasses non-contract claims, but instead whether the non-contract claims asserted are directly or indirectly related to the contractual relationship of the parties.").

("Nor is a forum selection clause to be defeated by suing an affiliate or affiliates of the party to the contract in which the clause appears, or *employees of the affiliates*." (emphasis added)); Manetti-Farrow, 858 F.2d at 514 n.5 (rejecting argument that forum selection clause only applied to the defendant who signed the contract because "the alleged conduct of the non-parties is so closely related to the contractual relationship that the forum selection clause applies to all defendants"); Comerica Bank v. Whitehall Specialties, Inc., 352 F. Supp. 2d 1077, 1082 n.5 (C.D. Cal. 2004) ("Here the individual defendants are closely related to the contractual relationship because they are the owners and *directors* of Whitehall, one of the parties to the contract. The forum selection clause can therefore be applied to them as well." (emphasis added)); Texas Source Group, 967 F. Supp. at 237 ("[E]ven though Clarkson is not a signatory to the Agreement, his relationship with the plaintiffs and the defendants is so inextricably intertwined that he should be subject to the forum-selection clause."); Clinton v. Janger, 583 F. Supp. 284, 290 (N.D. Ill. 1984) ("[A] range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses.").

In sum, Plaintiff's attempt to circumvent the forum selection clause is unsuccessful. A forum selection clause is "prima facie valid and enforceable," Soil Building, 2004 WL 1283966, at *4, and to overcome the presumption of validity the party challenging the clause must make a "heavy showing" that the clause is unreasonable. Id. (quoting Mitsui & Co. (USA), Inc., v. Mira M/V, 111 F.3d 33, 35 (5th Cir. 1997)); see also Marinechance, 143 F.3d at 220 ("strong showing" required to defeat presumption of validity).

Here, Plaintiff's mere suggestion that the forum selection clause does not apply because of its choice of causes of action and defendants does not constitute such a showing. American Patriot, 364 F.3d at 888 ("These are really the same argument, and amount to saying that a plaintiff can defeat a forum-selection clause by its choice of . . . legal theories to press, and of defendants to name in the suit. If this were true, such clauses would be empty. It is not true."). Moreover, the applicability of the forum selection clause to the claims in this case constitutes

sufficient grounds for transfer to the venue designated in the clause pursuant to the Courts discretion under 28 U.S.C. § 1406(a). See Soil Building, 2004 WL 1283966, at *6 (transferring case under § 1406(a) because of forum selection clause where plaintiff moved for transfer under § 1404(a)). At the very least, the forum selection clause in the Agreement "provides some indication that the convenience of the parties would presumably be better served by transfer" to the designated venue, Elliott v. Carnival Cruise Lines, 231 F. Supp. 2d 555, 561 (S.D. Tex. 2002), and the Court should begin with this presumption in considering the private and public interest factors below. See id. at 563 (granting motion to transfer because nonmovant did "not present[] sufficient evidence to override the presumption created by the forum-selection clause that trial would be more convenient" in transferee venue); Texas Source Group, 967 F. Supp. at 239 ("[P]laintiffs would have needed to demonstrate exceptional circumstances for this Court to have denied the transfer on the grounds of inconvenience.").

## B.    The Private Interest Factors Favor Transfer

### 1.    Plaintiff's Choice of Venue Has Reduced Significance Because Plaintiff Alleges that the Operative Facts Occurred in the District of Massachusetts

Plaintiff makes much of the fact that some courts have stated that in considering motions to transfer venue under § 1404(a), there is a presumption in favor of a plaintiff's choice of forum.[5] See Plaintiff's Response Br., at 15. As noted above, this presumption is overridden by the strong presumption in favor of transfer created by the Agreement's forum selection clause. Moreover, Plaintiff fails to acknowledge the countervailing rule that "the plaintiff's choice of forum has reduced significance where most of the operative facts occurred outside the district." Minka Lighting, Inc. v. Trans Globe Imports, Inc., No. Civ. A. 3:02-CV-2538-G, 2003 WL 21251684, at *1 (N.D. Tex. May 23, 2003); see Lindloff v. Schenectady Int'l, 950 F. Supp. 183, 185 (E.D. Tex. 1996); Greiner v. American Motor Sales Corp., 645 F. Supp. 277, 279 (E.D. Tex.

---

[5] However, it is important to note that "[t]he preference for honoring a plaintiff's choice of forum is simply that, a preference; it is not a right." Whistler Group, Inc. v. PNI Corp, No. Civ. A. 3:03-CV-1536-G, 2003 WL 22939214, at *7 (N.D. Tex. Dec. 5, 2003) (quoting E.I. Dupong de Nemours & Company v. Diamond Shamrock Corp., 522 F. Supp. 588, 592 (D. Del. 1981)).

1986) ("[W]here none of the operative facts occur within the forum of plaintiff's original selection, his choice is entitled to only minimal consideration.") see also Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995) ("whether the claim arose elsewhere" one of factors to be considered). Here, Plaintiff expressly alleges in the Complaint that "Defendants' misrepresentations and omissions occurred primarily and substantially within Massachusetts."[6] Compl. ¶ 40. Thus, Plaintiff's choice of venue in this District is entitled to little, if any, weight.[7]

### 2.    Sources of Proof

Plaintiff does not directly deny that the vast majority of documents and other sources of proof relevant to Plaintiff's claims are in Massachusetts. Rather, Plaintiff confusingly concludes that "this factor does not weigh either in favor of transfer or against it" because the parties could gain access to documents in Massachusetts by virtue of nonparty subpoenas. This, however, would be true in *any* case, and thus according to Plaintiff's logic, this factor would *never* weigh into a court's analysis in determining a § 1404(a) transfer motion. The plain fact of the matter is that virtually all of the sources of proof relevant to this case are in Massachusetts and this factor therefore favors transfer.[8]

### 3.    Convenience of Witnesses

In addressing this factor, Plaintiff misconstrues the relevant inquiry, arguing not that more relevant witnesses reside in Texas than in Massachusetts, but rather that "more potentially relevant witnesses reside outside of, than in, Massachusetts." Plaintiff's Response Br., at 17.

---

[6] In arguing that this Court can assert personal jurisdiction over Defendant Mahoney, Plaintiff does not dispute that Defendants' alleged conduct occurred in Massachusetts, only that Plaintiff *received* several communications from Mahoney in Texas. Plaintiff's Response Br., at 5-8.

[7] Plaintiff's assertion that this is not a case of forum shopping does not weigh into the calculus. See Texas Instruments Inc. v. Micron Semiconductor, Inc., 815 F. Supp. 994, 996 (E.D. Tex. 1993) ("The Court is concerned only with whether the choice of forum is a proper one under the law, and not with the motives of the party selecting the forum.").

[8] Plaintiff does attempt to identify some documents in Texas. In his affidavit, Swenke states that he possesses relevant documents in Texas. However, the only document he clearly identifies is the Agreement, a copy of which is also in Excelergy's possession in Massachusetts. Moreover, Swenke's statement that certain unspecified documents relating to the negotiations of the Agreement and to Plaintiff's damages does not alter the conclusion that virtually all sources of proof are in Massachusetts. As noted in Gregorio's opening brief, the documents in Massachusetts include those pertaining to Excelergy's financial condition, the Boston Properties lease, the loans to Mahoney, and the bonus incentives for Mahoney.

Indeed, Plaintiff somehow construes the fact that certain potential witnesses reside in South Carolina and California as favoring denial of the motion. See id. at 20.

The relevant comparison is between witnesses located in Massachusetts and those in Texas, and this comparison clearly favors transfer.[9] In his opening brief, Gregorio identified a number of potential witnesses and described the relevant knowledge each had with regard to the claims in this case. Plaintiff's argument that Gregorio's initial showing was insufficient is unconvincing. Indeed, Plaintiff's own citation to Young v. Armstrong World Indus., Inc., 601 F. Supp. 399 (N.D. Tex. 1984), is illuminating:

> the moving Defendants must prove with particularity the reasons why they are inconvenienced by Plaintiffs' choice of forum:
>
> The party seeking the transfer must *clearly specify the key witnesses to be called* and must make a *general statement* of what their testimony will cover. The emphasis must be on this showing rather than on numbers. One key witness may outweigh a great number of less important witnesses. If a party has merely made a general allegation that witnesses will be necessary, without identifying them and indicating what their testimony will be, the application for transfer will be denied.

Id. at 401-02 (emphasis added); see also Nobel Insur. Co. v. Acme Truck Line, Inc., No. Civ. A. 3:99-CV-2950-G, 2000 WL 298908, at *2 (N.D. Tex. 2000) ("[T]he party seeking transfer must clearly specify the key witnesses to be called an must make a *general statement* of what their testimony will cover." (quoting Continental Airlines, Inc. v. American Airlines, Inc., 805 F. Supp. 1392, 1396 (S.D. Tex. 1992))). Gregorio has clearly satisfied this burden by identifying specific witnesses and outlining the specific issues as to which that those individuals have knowledge. Plaintiff suggests that in order to make a sufficient showing for transfer a movant must secure a witnesses commitment to testify and must provide the precise testimony to be given at trial. This is simply not possible at this juncture of the case, nor is such a standard supported in the case law.

---

[9] Thus, Plaintiff's contention that Gregorio is "disingenuous" in referring only to Excelergy Board members who live in Massachusetts as relevant, Plaintiff's Response Br., at 17 n.4, is misplaced. Gregorio did in fact identify Excelergy Board members who do not live in Massachusetts, and he left them out of the analysis because they neither favored nor disfavored transfer.

Even if the Court were to credit Swenke's conclusory assertions that several of the potential witnesses identified by Gregorio do not have knowledge relevant, Swenke does *not* dispute that Alfred Browne III, Robert Davoli, R. David Tabors, Alphonse Lucchese, Matthew Emsley, and Robert Paquette have knowledge relevant to Plaintiff's claims.[10]  Swenke Aff., ¶¶ 18-20.

In contrast to the showing made by Gregorio, the only potential witnesses in Texas that Plaintiff identifies are Swenke, Plaintiff's CPA (Leo Preolo), and Plaintiff's "members/owner." As for the latter, Swenke's affidavit merely states that each "member/owner" provided consent for Excelergy's purchase of Plaintiff.[11]  Plaintiff provides no indication of what relevant testimony any of these individuals could provide, other than mere background information.  In addition, because Preolo is an employee of Plaintiff, his convenience is afforded less consideration than for other witnesses.  See Lemery v. Ford Motor Co., 244 F. Supp. 2d 720, 731 (S.D. Tex. 2002) (witnesses who are employees of a defendant are entitled to less weight); Mannatech Inc. v. See, No. Civ. A. 399CV1877G, 2000 WL 256326, at *3 (N.D. Tex. March 7, 2000) (same). Continental Airlines, 805 F. Supp. at 1397 (same). And as noted in Gregorio's opening brief, Swenke, as Plaintiff's principal, should be treated for present purposes as a party witness, and thus his convenience should be given minimal weight--or at least no more weight than that of Defendants.  Plaintiff's contention that Swenke is a nonparty witness because he is not the named plaintiff is disingenuous.  Swenke is clearly the motivating force behind and has the primary interest in this litigation; Swenke's convenience should not be given heightened consideration merely because he chose not to bring suit in his individual name.

Even assuming, *arguendo*, that Swenke is a nonparty witness, the inconvenience caused to him by transferring the case does not outweigh the inconvenience to witnesses in

---

[10] In addition, two other individuals possess information central to Plaintiff's claims: Cary G. Bullock, founder, former CEO, and former Chairman of Excelergy, who lives in Belmont, MA and was with Excelergy during the negotiation and execution of the Agreement; and Christopher Cazer, former Vice President of Research & Development and CTO, who lives in New York state and was involved in evaluating Plaintiff's technology.

[11] Swenke's mention of the bankruptcy proceedings of one of the owner/members, ANG Holdings, LLC, has no bearing whatsoever on the present motion.

Massachusetts caused by maintaining the case in Texas. Plaintiff argues that Swenke and Defendants are the only key witnesses, and all other witnesses are "secondary or cumulative." Plaintiff's apparent basis for this contention is that Swenke and Defendants were the only individuals present at the time the alleged misrepresentations were made. But a number of issues pertaining to other than the actual alleged misrepresentations are crucial to Plaintiff's claims. Indeed, to prove negligent misrepresentation, Plaintiff must show, *inter alia*, that the alleged misrepresentations were false and that Defendants "fail[ed] to exercise reasonable care or competence in obtaining or communicating the information." See Golber v. Baybank Valley Trust Co., 704 N.E. 2d 1191, 1192 (Mass. App. Ct. 1999). Thus, clearly, the knowledge of the witnesses, which includes information pertaining to the past and present financial condition of Excelergy, accounting issues, the loans to Mahoney, Mahoney's bonus incentives, and the lease with Boston Properties, is central to Plaintiff's claims.

Finally, in attempt to further muddy the issue, Plaintiff contends that the testimony of the witnesses identified by Gregorio could be presented by videotaped deposition. To be sure, the cases cited by Plaintiff suggest that in certain circumstances, videotaped depositions might be adequate. However, this does not change the fact, noted in Gregorio's opening brief, that all else being equal, courts prefer live testimony. Indeed, Plaintiff does not explain why this court should deny transfer and settle for videotaped depositions given the viable option of transferring the case to a venue in which live testimony is much more likely. Given that much of the case likely will depend on credibility determinations by the court, securing live testimony is more crucial than in the ordinary case, and thus resort to video depositions for what would likely be a substantial majority of witnesses is not a reasonable alternative to transfer.

4.     Cost of Attendance of Willing Witnesses

Plaintiff's assertion that Defendants have not identified any witnesses who "would be willing to travel to Texas to testify at trial but for the cost and inconvenience of such travel," Plaintiff's Response Br., at 20, has no bearing on the present motion, and unsurprisingly,

Plaintiffs do not cite to any authority for such an inquiry. The question is not whether Defendants can identify specific witnesses who would be unwilling to travel to Texas, but rather whether Texas is an inconvenient forum for those who might be willing to testify. See Savoy Owners Assocs., Inc. v. Insurance Corp., of New York, No. 02-Civ-6145, 2003 WL 941098, at *2 (S.D.N.Y. Mar. 6, 2003) ("[Convenience of witnesses] factor is deemed so important because "[t]he lack of subpoena power coupled with the long-distance travel required *if* the witnesses were to voluntarily appear before the court could impede trial and would impose substantial expense on witnesses and on the plaintiff." (emphasis added)). Thus, the cost of travel to Texas would surely burden those would be willing to testify or, alternatively, would be prohibitive for potential witnesses. Either way, the conclusion is the same: Texas is an inconvenient forum for the majority of potential witnesses in this case.

**C.     The Public Interest Factors Favor Transfer**

    1.     Massachusetts's Interest in Adjudicating This Dispute

Plaintiff argues that "Texas has a significant interest in providing a forum for the resolution of disputes involving tortious injury to its citizens." Plaintiff's Response Br., at 22. While this certainly may be the case, Texas's interest is outweighed by Massachusetts's interest in adjudicating the present dispute, given all of the factors tying Plaintiff's claims to Massachusetts. See Allegiant Physicians Services, Inc. v. Sturdy Memorial Hospital, 926 F. Supp. 1106, 1119 (N.D. Ga. 1996) ("While it cannot be said Georgia has no interest in remedying harm to one of its corporate residents, any interest Georgia possesses is tempered by Massachusetts' interest in adjudicating contractual disputes where the entire transaction occurred in Massachusetts, the contract was delivered and executed in Massachusetts, [and] the contract expressly provides for the application of Massachusetts law . . . ."); see also Gary Scott Int'l, Inc. v. Baroudi, 981 F. Supp. 714 (D. Mass. 1997) (Massachusetts has significant interest in adjudicating dispute where interpretation of Massachusetts state law involved). Accordingly, this factor favors transfer.

2.    Respective Venues' Familiarity With Governing Law

Plaintiff's contention that Gregorio has not demonstrated that "the Court's supposed unfamiliarity with Massachusetts substantive law is any less than that of the District Court for the District of Massachusetts" is on its face absurd.[12]  Simply by virtue of getting more exposure to Massachusetts law--just as this Court deals more frequently with Texas law--courts in the District of Massachusetts clearly have greater expertise as to Massachusetts substantive law than other federal district courts.  Moreover, while Plaintiff asserts on the one hand that Massachusetts and Texas substantive law are "similar" as to Plaintiff's claims, it acknowledges on the other hand that unlike its Massachusetts counterpart, the Texas unfair trade practices statute does not recognize a cause of action for businesses.  Although it obviously is neither impossible nor unheard of for a district court outside of Massachusetts to adjudicate claims based in Massachusetts state law, the District of Massachusetts is the better equipped to do so, and thus this factor weighs substantially in favor of transfer.

3.    Docket Congestion

In a supplement to its response brief, Plaintiff  provides statistics from the 2003 Civil Justice Reform Act Report ("CJRA Report"), and concludes from the report that this District is "much less congested" that the District of Massachusetts.  Plaintiff's Supplemental Response Br., at 1.  This contention is entirely without merit.

As an initial matter, the statistics Plaintiff provides are completely outdated.  The CJRA Report Plaintiff submitted provides snapshots of the respective district courts in March 31, 2003, and in September, 30, 2003.  These figures, from over a year and a half to two years ago, do not

---

[12] Plaintiff contends that Gregorio admits that "Massachusetts law, including Chapter 93A, governs the substantive claims in this action" and thus "cannot later claim that contacts within Massachusetts are insufficient to preclude application of Massachusetts law to the substantive claims raised in this action."  Plaintiff's Response Br., at 23 n.11.  To the contrary, Gregorio merely noted in his opening brief that Plaintiff was asserting that Massachusetts law applied by bringing a claim under Mass. Gen. Laws ch. 93A and by alleging that Defendants' misrepresentations and omissions occurred primarily and substantially within Massachusetts.  See Brief in Support of Motion of Defendant Stephen Gregorio to Transfer Venue, at 9-10.  Gregorio did not (and does not) admit that Plaintiff alleged sufficient contacts to state a claim under chapter 93A or otherwise under Massachusetts state law.

provide a basis on which this Court can make any conclusions as to the relative congestion of the two districts.

More fundamentally, even if a more recent CJRA Report was available, the data provided in the reports is not particularly relevant for present purposes. Indeed, Plaintiff obscures the fact that the CJRA Reports provide very specific information about the district court dockets that is not entirely relevant for present purposes. The CJRA reports provide three sets of data for each district court judge: (1) the number of cases *over three years old*; (2) the number of motions pending *for over six months*; and (3) the number of bench trials. These figures are not precise indicators of overall court congestion but rather serve as rough proxies for certain types of congestion on courts' dockets.

A closer look at the statistics for 2003 provided by the Administrative Office of the United States Courts highlights the limited utility of the CJRA Reports. [13] According to these statistics, during the 12-month period ending September 30, 2003, the District Massachusetts had *fewer* pending civil cases that the Northern District of Texas (3,695 compared to 4,542). See Table C-3A: U.S. District Courts--Civil Cases Pending, by Nature of Suit and District (Exhibit 2). In addition, during that period there was not a substantial difference in the medial time interval from filing to disposition of civil cases in the districts (10.7 months compared to 7.2). See Table C-5: U.S. District Courts--Median Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition (Exhibit 3).

Current statistics from the Administrative Office of the Court, for the 12-month period ending September 30, 2004, indicate that the there is no appreciable difference in terms of court congestion between the two districts. See U.S. District Court--Judicial Caseload Profiles (Exhibit

---

[13] This information is publicly available. See Judicial Business of the United States Courts 2003, available at http://www.uscourts.gov/judbus2003/contents.html.

4).[14]  Indeed, there were almost twice as many filings in this District than in the District of Massachusetts (6,560 compared to 3,819), as well as slightly more pending cases (4,686 compared to 4,496).[15]  Id.  More important, as this Court has recognized, are the statistics that indicate the median times from filing to disposition, see, e.g., Isbell v. DM Records, Inc., No. Civ. A. 3:02-CV-1408-G, 2004 WL 1243153, at *15 (N.D. Tex. June 4, 2004) ("the comparative calendar congestion (i.e., the amount of time needed to adjudicate a civil dispute)"); Whistler Group, Inc. v. PNI Corp., No. Civ. A. 3:03-CV-1536-G, 2003 WL 22939214, at *4 (N.D. Tex. Dec. 5, 2003) (same), and those statistics do not significantly differ between the districts (7.4 months in this District compared to 9.4 months in the District of Massachusetts).[16]  See Exhibit 4. Accordingly, this factor does not significantly favor or disfavor transfer.

## CONCLUSION

For the foregoing reasons, Defendant Gregorio respectfully requests that, pursuant to 28 U.S.C. § 1404(a), this Court transfer this case to the District of Massachusetts.

---

[14] This information is publicly available. See Judicial Business of the United States Courts 2003, available at http://www.uscourts.gov/judbus2003/contents.html. See Federal Court Management Statistics 2004, available at http://www.uscourts.gov/cgi-bin/cmsd2004.pl.

[15] Per judgeship, there were 547 total filings, 452 civil filings, and 391 pending cases in this District compared to 294 total filings, 255 civil filings, and 346 pending cases in the District of Massachusetts. See Exhibit 4.

[16] The numbers for both the median time from filing to trial of civil cases and the number of civil cases over three years old are larger for the District of Massachusetts than for this District. However, as the explanation of the terms indicates, these figures include data for cases on appeal in other courts and thus may be skewed by various factors, such as the pendency in a particular district of a large number of related cases awaiting resolution of appeals. See Explanation of Terms, available at http://www.uscourts.gov/library/fcmstat/cmsexpl04.html (Exhibit 5).

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

```
                                        )
FM HOLDINGS, LLC, f/k/a                 )
FORWARDMARKET, LLC,                     )
                                        )
              Plaintiff,                )
v.                                      )
                                        )
BILL MAHONEY and STEPHEN                )
GREGORIO,                               )
                                        )
              Defendants.               )
                                        )
```

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

MAR 1 6 2005

CLERK, U.S. DISTRICT COURT

By _____
            Deputy

Civil Action No.
3: 05-CV-0166-G

## REPLY BRIEF IN SUPPORT OF MOTION OF
## DEFENDANT STEPHEN GREGORIO TO TRANSFER VENUE

Respectfully submitted,

**SHANNON GRACEY RATLIFF & MILLER, LLP**
777 Main Street, Suite 3800
Fort Worth, Texas 76102
(817) 336-9333 Telephone
(817) 336-3735 Facsimile

By: _____
        Thomas J. Fisher
        State Bar Card No.: 07064500

*Of Counsel:*

Timothy C. Blank
BBO No. 548670
Michael. S. Shin
BBO No. 658134
**DECHERT L.L.P.**
200 Clarendon Street, 27th Floor
Boston, MA 02116
(617) 728-7100 Telephone
(617) 426-6567 Facsimile

**ATTORNEYS FOR DEFENDANT
STEPHEN GREGORIO**

## CERTIFICATE OF SERVICE

I certify that on March 16, 2005, a true and correct copy of the foregoing was served on all known counsel of record via first class U.S. mail as follows:

Charles R. Biddle
Ronald O. Holman
HOLMAN ROBERTSON ELDRIDGE
5949 Sherry Lane, Suite 1700
Dallas, Texas 75225

Kimberly A. Elkjer
Robert M. Millimet
SCHEEF & STONE, L.L.P.
5956 Sherry Ln., Suite 1400
Dallas, Texas 75225

# TABLE OF CONTENTS

A.    THE FORUM-SELECTION CLAUSE IN THE ASSET PURCHASE
      AGREEMENT CONSTITUTES GROUNDS FOR TRANSFER ............................1

B.    THE PRIVATE INTEREST FACTORS FAVOR TRANSFER..............................6

      1.    Plaintiff's Choice of Venue Has Reduced Significance
            Because Plaintiff Alleges that the Operative Facts
            Occurred in the District of Massachusetts.............................................6

      2.    Sources of Proof.........................................................................7

      3.    Convenience of Witnesses...............................................................7

      4.    Cost of Attendance of Willing Witnesses.............................................10

C.    THE PUBLIC INTEREST FACTORS FAVOR TRANSFER................................11

      1.    Massachusetts's Interest in Adjudicating This Dispute..............................11

      2.    Respective Venues' Familiarity With Governing Law...............................12

      3.    Docket Congestion.......................................................................12

D.    CONCLUSION

# TABLE OF AUTHORITIES

**Cases**

*Allegiant Physicians Services, Inc. v. Sturdy Memorial Hospital,*
   926 F. Supp. 1106 (N.D. Ga. 1996)...................................................................11

*American Patriot Insur. Agency v. Mutual Risk Mgmt., Ltd,*
   364 F.3d 884 (7th Cir. 2004)...............................................................3, 4, 5

*Clinton v. Janger*, 583 F. Supp. 284 (N.D. Ill. 1984).................................................5

*Comerica Bank v. Whitehall Specialties, Inc.*, 352 F. Supp.
   2d 1077 (C.D. Cal. 2004)...................................................................5

*Continental Airlines, Inc. v. American Airlines, Inc.,*
   805 F. Supp. 1392 (S.D. Tex. 1992)......................................................8, 9

*E.I. Dupont de Nemours & Company v. Diamond Shamrock Corp.,*
   522 F. Supp. 588 (D. Del. 1981))........................................................6

*Elliott v. Carnival Cruise Lines*, 231 F. Supp. 2d 555
   (S.D. Tex. 2002)...................................................................6

*Gary Scott Int'l, Inc. v. Baroudi*, 981 F. Supp. 714 (D. Mass. 1997)....................................11

*Golber v. Baybank Valley Trust Co.*, 704 N.E. 2d 1191
   (Mass. App. Ct. 1999)...................................................................10

*Greiner v. American Motor Sales Corp.*, 645 F. Supp. 277
   (E.D. Tex. 1986)...................................................................6

*Hoffman v. Burroughs Corp.*, 571 F. Supp. 545 (N.D. Tex. 1982)....................................3

*International Software Systems, Inc. v. Amplicon, Inc.,*
   77 F.3d 112 (5th Cir. 1996)...................................................................3

*Isbell v. DM Records, Inc.*, No. Civ. A. 3:02-CV-1408-G, 2004
   WL 1243153, at *1 (N.D. Tex. June 4, 2004).....................................................14

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995)............................................7

*Lemery v. Ford Motor Co.*, 244 F. Supp. 2d 720 (S.D. Tex. 2002)....................................9

*Lindloff v. Schenectady Int'l*, 950 F. Supp. 183 (E.D. Tex. 1996)....................................6

*Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509 (9th Cir. 1988)...................2, 4, 5

*Mannatech Inc. v. See*, No. Civ. A. 399CV1877G, 2000 WL 256326, at *1
   (N.D. Tex. March 7, 2000)...................................................................9

*Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216 (5th Cir. 1998)..........................2, 5

*Minka Lighting, Inc. v. Trans Globe Imports, Inc.*, No. Civ. A. 3:02-CV-2538-G,
    2003 WL 21251684, at *1 (N.D. Tex. May 23, 2003)...........................................6

*Mitsui & Co. (USA), Inc., v. Mira M/V*, 111 F.3d 33, 35 (5th Cir. 1997)...............................5

*Nobel Insur. Co. v. Acme Truck Line, Inc.*, No. Civ. A. 3:99-CV-2950-G,
    2000 WL 298908, at *1 (N.D. Tex. 2000)..............................................................8

*Savoy Owners Assocs., Inc. v. Insurance Corp., of New York*,
    No. 02-Civ-6145, 2003 WL 941098, at *1 (S.D.N.Y. Mar. 6, 2003).........................11

*Soil Building Sys. v. CMI Terex Corp.*, No. Civ. A. 3:04-CV-0210-G,
    2004 WL 1283966, at *1 (N.D. Tex. June 6, 2004)...................................3, 4, 5, 6

*Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988)....................................................3

*Terra Intern., Inc. v. Mississippi Chemical Corp.*,
    922 F. Supp. 1334 (N.D. Iowa 1996)...................................................................4

*Texas Instruments Inc. v. Micron Semiconductor, Inc.*,
    815 F. Supp. 994 (E.D. Tex. 1993).....................................................................7

*Texas Source Group, Inc. v. CCH, Inc.*, 967 F. Supp. 234 (S.D. Tex. 1997)....................3, 5, 6

*Whistler Group, Inc. v. PNI Corp.*, No. Civ. A. 3:03-CV-1536-G, 2003
    WL 22939214, at *1 (N.D. Tex. Dec. 5, 2003)...............................................6, 14

*Young v. Armstrong World Indus., Inc.*, 601 F. Supp. 399 (N.D. Tex. 1984).........................8

## Statutes

28 U.S.C. § 1404(a)..................................................................................1, 5, 6, 14

28 U.S.C. § 1406(a)...........................................................................................5

## REPLY BRIEF IN SUPPORT OF MOTION OF
## DEFENDANT STEPHEN GREGORIO TO TRANSFER VENUE

Defendant Stephen Gregorio ("Gregorio") submits this memorandum in reply to Plaintiff's opposition to Gregorio's motion to transfer venue to the District of Massachusetts, pursuant to 28 U.S.C. § 1404(a). As shown below, the forum selection clause in the Asset Purchase Agreement applies to this case and constitutes sufficient grounds for transfer. Moreover, even if the Court finds that the forum selection clause creates only a presumption in favor of transfer, transfer is appropriate because Plaintiff's attempts to discredit the private and public interest considerations that weigh in favor of transfer are unavailing and because Plaintiff has failed to demonstrate that transfer would cause any substantial inconvenience to it or others. Thus, despite Plaintiff's unsupported assertion to the contrary, transfer would not entail a mere shift in inconvenience between parties but rather would be for "the convenience of the parties and witnesses" overall and generally "in the interest of justice," within the meaning of § 1404(a). Indeed, the *sole* consideration Plaintiff has identified that weighs against transfer is that plaintiff's principal, Kevin Swenke, resides in Texas. Convenience to Swenke alone does not provide grounds to deny transfer given the presumption in favor of transfer created by the forum selection clause in the Asset Purchase Agreement and the other considerations favoring transfer discussed below. Accordingly, this Court should grant Gregorio's motion to transfer venue to the District of Massachusetts.

A.    **The Forum-Selection Clause in the Asset Purchase Agreement Constitutes Grounds for Transfer**

It is undisputed that the Asset Purchase Agreement (the "Agreement") contains a forum-selection clause that designates the District of Massachusetts as the venue for all actions in federal court. In its response brief, however, Plaintiff claims that the forum selection clause in the Agreement is "irrelevant" because the clause does not apply to the present case and because

Defendants are not part of the Agreement and thus cannot "invoke" the clause.[1] See Plaintiff's

Response Br., at 22 n.10. These contentions are entirely without force.

The Agreement's forum-selection clause reads as follows:

> **Jurisdiction.** Any action or proceeding seeking to enforce any
> provision of, or based on any right arising out of, this Agreement
> may be brought against any of the parties exclusively in the courts of
> the State of Commonwealth of Massachusetts or the federal courts of
> the District of Massachusetts, and each of the parties hereby consents
> to the jurisdiction of such courts (and of the appropriate appellate
> courts) in any such action or proceeding and waives ay objection to
> venue laid therein. Process in any such action or proceeding may be
> served on any party anywhere in the world, whether within or
> without the Commonwealth of Massachusetts.

See Asset Purchase Agreement, at 35 (Exhibit 1).[2]

Although Plaintiff does not assert a breach of contract claim in this case, the forum

selection clause in the Agreement applies to this case because Plaintiff's claims are sufficiently

based on the rights arising under the Agreement. See Marinechance Shipping, Ltd. v. Sebastian,

143 F.3d 216, 221-22 (5th Cir. 1998) ("We find no persuasive support for [a general contract-tort]

distinction."); Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 514 (9th Cir. 1988)

("[F]orum selection clauses can be equally applicable to contractual and tort causes of action.").

Indeed numerous courts have held that forum selection clauses apply in cases involving causes of

---

[1] Plaintiff implies that Gregorio admitted in his memorandum that the forum selection clause does not
apply to this case. To the contrary, because Gregorio did not have access to the specific language of the
clause, he made no statement about the applicability of the clause. Gregorio's statement (quoted only in
part by Plaintiff) that "while the present action is not for breach of the Agreement, the existence of the
provisions indicates that transfer to the District of Massachusetts is warranted" cannot be construed as an
admission that the clause does not apply.

[2] Prior to submitting the Brief in Support of Motion of Defendant Gregorio to Transfer Venue, counsel for
Gregorio was unable to obtain a copy of the Agreement. Counsel for Plaintiff claimed that she could not
provide a copy because she did not have a copy of the final, executed version (despite the fact that Plaintiff
later attached to its response brief a copy of the signature page of the Agreement and that Swenke stated in
his affidavit that he is in possession of the Agreement, Swenke Aff., ¶ 32). Thus, in his moving brief
Gregorio raised the issue to the extent possible without the actual language of the forum-selection clause.
Counsel for Gregorio has since been able to obtain a copy of the Agreement through a third party and
reproduces the language of the forum selection clause to rebut Plaintiff's assertion that the clause is
inapplicable to this case. See Plaintiff's Response Br., at 22 n.10.

action similar to those brought here by Plaintiff.[3]  See Soil Building Sys. v. CMI Terex Corp., No. Civ. A. 3:04-CV-0210-G, 2004 WL 1283966, at *6 (N.D. Tex. June 6, 2004) (forum selection clause applied to claims for negligent misrepresentation and under Texas Deceptive Trade Practices Act); Texas Source Group, Inc. v. CCH, Inc., 967 F. Supp. 234, 237-38 (S.D. Tex. 1997) (claims for negligent misrepresentation and fraud subject to forum selection clause because they "arise out of the parties' contractual relationship and implicate the Agreement"); Hoffman v. Burroughs Corp., 571 F. Supp. 545, 547 (N.D. Tex. 1982) (forum selection clause applied to claims under Texas Deceptive Trade Practices Act and for fraudulent misrepresentation as inducement to enter into contract); see also American Patriot Insur. Agency v. Mutual Risk Mgmt., Ltd, 364 F.3d 884, 889 (7th Cir. 2004) (forum selection clause applied to fraud claims). As the Seventh Circuit noted in American Patriot:

> [A] dispute over a contract does not cease to be such merely because instead of charging breach of contract the plaintiff charges a fraudulent breach, or fraudulent inducement, or fraudulent performance. . . . [T]he existence of multiple remedies for wrongs arising out of a contractual relationship does not obliterate the contractual setting, does not make the dispute any less one arising under or out of or concerning the contract, and does not point to a better forum for adjudicating the parties' dispute than the one they had selected to resolve their contractual disputes.

American Patriot, 364 F.3d at 889.  Because Plaintiff's claims in this case are based on allegations that Defendants made misrepresentations that induced Plaintiff to enter into the Agreement, the claims "arise out of the parties' contractual relationship and implicate the Agreement" and thus are subject to the forum selection clause.[4]  See Texas Source Group, 967 F. Supp. at 238.

---

[3] Federal common law applies in interpreting forum selection clauses for purposes of a motion to transfer pursuant to 1404(a).  See Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 27-29 (1988); International Software Systems, Inc. v. Amplicon, Inc., 77 F.3d 112, 115 (5th Cir. 1996).

[4] Plaintiffs' assertion that the forum selection clause is "expressly narrowly tailored" does not change this conclusion.  The forum-selection clause in the Agreement is not distinctively more narrow than in the cases cited above, see, e.g., Soil Building, 2004 WL 1283966, at *5-*6 ("actions brought to enforce or construe any of the provisions of this agreement"); Texas Source Group, 967 F. Supp. at 236 (suit "under" the agreement), and the general legal principle concerning the applicability of forum selection clauses to

Moreover, "[w]hether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract," Manetti-Farrow, 858 F.2d at 514; see Soil Building, 2004 WL 1283966, at *5, and the Agreement contains an integration clause that states that the Agreement (and specified ancillary agreements)

> constitute the entire agreement between the parties with respect to the subject matter hereof and supersede all prior agreements, understandings and negotiations, both written and oral, between the parties with respect to the subject matter hereof. No representation, inducement, promise, understanding, condition or warranty not set forth herein has been made or relied upon by either party hereto.

Exhibit 1, at 35. Plaintiff's claims necessarily entail interpretation of the integration provisions in the contract, and thus the forum selection clause applies. This Court's decision in Soil Building is precisely on point. In that case, this Court held that the plaintiff's negligent misrepresentation claim was governed by the forum selection clause because the claims "require interpretation of the contract." 2004 WL 1283966, at *6. Specifically, this Court stated that the forum selection clause applied because the plaintiff alleged that the defendant made false and incorrect representations and thus the claims "necessarily require the court to interpret the parameters of the Sales Agreement's provisions that disclaim all oral representations and prior agreements." Id. The same conclusion applies with respect to the forum selection clause in the Agreement and Plaintiff's claims in this case.

In addition, the fact that Defendants were not individually parties to the Agreement does not limit the applicability of the forum selection clause to this case--especially given that Defendants were both signatories to the Agreement as officers of Excelergy and the alleged conduct is so closely related to the contractual relationship. American Patriot, 364 F.3d at 889

---

related tort causes of action does not vary according to minute differences in the language of various clauses. See American Patriot, 364 F.3d at 889 ("And as for the plaintiff's argument that the word 'concerning' in the Shareholder Agreement's forum-selection clause is narrower than the more common term 'arising out of,' this is semantic quibbling."); Terra Intern., Inc. v. Mississippi Chemical Corp., 922 F. Supp. 1334, 1379 (N.D. Iowa 1996) ("[T]he critical question is not whether the language of the forum selection clause at issue expressly encompasses non-contract claims, but instead whether the non-contract claims asserted are directly or indirectly related to the contractual relationship of the parties.").

("Nor is a forum selection clause to be defeated by suing an affiliate or affiliates of the party to the contract in which the clause appears, or *employees of the affiliates*." (emphasis added)); Manetti-Farrow, 858 F.2d at 514 n.5 (rejecting argument that forum selection clause only applied to the defendant who signed the contract because "the alleged conduct of the non-parties is so closely related to the contractual relationship that the forum selection clause applies to all defendants"); Comerica Bank v. Whitehall Specialties, Inc., 352 F. Supp. 2d 1077, 1082 n.5 (C.D. Cal. 2004) ("Here the individual defendants are closely related to the contractual relationship because they are the owners and *directors* of Whitehall, one of the parties to the contract. The forum selection clause can therefore be applied to them as well." (emphasis added)); Texas Source Group, 967 F. Supp. at 237 ("[E]ven though Clarkson is not a signatory to the Agreement, his relationship with the plaintiffs and the defendants is so inextricably intertwined that he should be subject to the forum-selection clause."); Clinton v. Janger, 583 F. Supp. 284, 290 (N.D. Ill. 1984) ("[A] range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses.").

In sum, Plaintiff's attempt to circumvent the forum selection clause is unsuccessful. A forum selection clause is "prima facie valid and enforceable," Soil Building, 2004 WL 1283966, at *4, and to overcome the presumption of validity the party challenging the clause must make a "heavy showing" that the clause is unreasonable. Id. (quoting Mitsui & Co. (USA), Inc., v. Mira M/V, 111 F.3d 33, 35 (5th Cir. 1997)); see also Marinechance, 143 F.3d at 220 ("strong showing" required to defeat presumption of validity).

Here, Plaintiff's mere suggestion that the forum selection clause does not apply because of its choice of causes of action and defendants does not constitute such a showing. American Patriot, 364 F.3d at 888 ("These are really the same argument, and amount to saying that a plaintiff can defeat a forum-selection clause by its choice of . . . legal theories to press, and of defendants to name in the suit. If this were true, such clauses would be empty. It is not true."). Moreover, the applicability of the forum selection clause to the claims in this case constitutes

sufficient grounds for transfer to the venue designated in the clause pursuant to the Courts discretion under 28 U.S.C. § 1406(a). See Soil Building, 2004 WL 1283966, at *6 (transferring case under § 1406(a) because of forum selection clause where plaintiff moved for transfer under § 1404(a)). At the very least, the forum selection clause in the Agreement "provides some indication that the convenience of the parties would presumably be better served by transfer" to the designated venue, Elliott v. Carnival Cruise Lines, 231 F. Supp. 2d 555, 561 (S.D. Tex. 2002), and the Court should begin with this presumption in considering the private and public interest factors below. See id. at 563 (granting motion to transfer because nonmovant did "not present[] sufficient evidence to override the presumption created by the forum-selection clause that trial would be more convenient" in transferee venue); Texas Source Group, 967 F. Supp. at 239 ("[P]laintiffs would have needed to demonstrate exceptional circumstances for this Court to have denied the transfer on the grounds of inconvenience.").

**B.       The Private Interest Factors Favor Transfer**

> 1.       Plaintiff's Choice of Venue Has Reduced Significance Because Plaintiff Alleges that the Operative Facts Occurred in the District of Massachusetts

Plaintiff makes much of the fact that some courts have stated that in considering motions to transfer venue under § 1404(a), there is a presumption in favor of a plaintiff's choice of forum.[5] See Plaintiff's Response Br., at 15. As noted above, this presumption is overridden by the strong presumption in favor of transfer created by the Agreement's forum selection clause. Moreover, Plaintiff fails to acknowledge the countervailing rule that "the plaintiff's choice of forum has reduced significance where most of the operative facts occurred outside the district." Minka Lighting, Inc. v. Trans Globe Imports, Inc., No. Civ. A. 3:02-CV-2538-G, 2003 WL 21251684, at *1 (N.D. Tex. May 23, 2003); see Lindloff v. Schenectady Int'l, 950 F. Supp. 183, 185 (E.D. Tex. 1996); Greiner v. American Motor Sales Corp., 645 F. Supp. 277, 279 (E.D. Tex.

---

[5] However, it is important to note that "[t]he preference for honoring a plaintiff's choice of forum is simply that, a preference; it is not a right." Whistler Group, Inc. v. PNI Corp, No. Civ. A. 3:03-CV-1536-G, 2003 WL 22939214, at *7 (N.D. Tex. Dec. 5, 2003) (quoting E.I. Dupong de Nemours & Company v. Diamond Shamrock Corp., 522 F. Supp. 588, 592 (D. Del. 1981)).

1986) ("[W]here none of the operative facts occur within the forum of plaintiff's original selection, his choice is entitled to only minimal consideration.") see also Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995) ("whether the claim arose elsewhere" one of factors to be considered). Here, Plaintiff expressly alleges in the Complaint that "Defendants' misrepresentations and omissions occurred primarily and substantially within Massachusetts."[6] Compl. ¶ 40. Thus, Plaintiff's choice of venue in this District is entitled to little, if any, weight.[7]

### 2.  Sources of Proof

Plaintiff does not directly deny that the vast majority of documents and other sources of proof relevant to Plaintiff's claims are in Massachusetts. Rather, Plaintiff confusingly concludes that "this factor does not weigh either in favor of transfer or against it" because the parties could gain access to documents in Massachusetts by virtue of nonparty subpoenas. This, however, would be true in *any* case, and thus according to Plaintiff's logic, this factor would *never* weigh into a court's analysis in determining a § 1404(a) transfer motion. The plain fact of the matter is that virtually all of the sources of proof relevant to this case are in Massachusetts and this factor therefore favors transfer.[8]

### 3.  Convenience of Witnesses

In addressing this factor, Plaintiff misconstrues the relevant inquiry, arguing not that more relevant witnesses reside in Texas than in Massachusetts, but rather that "more potentially relevant witnesses reside outside of, than in, Massachusetts." Plaintiff's Response Br., at 17.

---

[6] In arguing that this Court can assert personal jurisdiction over Defendant Mahoney, Plaintiff does not dispute that Defendants' alleged conduct occurred in Massachusetts, only that Plaintiff *received* several communications from Mahoney in Texas. Plaintiff's Response Br., at 5-8.

[7] Plaintiff's assertion that this is not a case of forum shopping does not weigh into the calculus. See Texas Instruments Inc. v. Micron Semiconductor, Inc., 815 F. Supp. 994, 996 (E.D. Tex. 1993) ("The Court is concerned only with whether the choice of forum is a proper one under the law, and not with the motives of the party selecting the forum.").

[8] Plaintiff does attempt to identify some documents in Texas. In his affidavit, Swenke states that he possesses relevant documents in Texas. However, the only document he clearly identifies is the Agreement, a copy of which is also in Excelergy's possession in Massachusetts. Moreover, Swenke's statement that certain unspecified documents relating to the negotiations of the Agreement and to Plaintiff's damages does not alter the conclusion that virtually all sources of proof are in Massachusetts. As noted in Gregorio's opening brief, the documents in Massachusetts include those pertaining to Excelergy's financial condition, the Boston Properties lease, the loans to Mahoney, and the bonus incentives for Mahoney.

REPLY BRIEF IN SUPPORT OF MOTION OF DEFENDANT
STEPHEN GREGORIO TO TRANSFER VENUE--PAGE 7
C:\Documents and Settings\mshin\Desktop\Gregorio\Reply Brief\FINAL REPLY BRIEF.rtf 3/15/05 2:22 PM

Indeed, Plaintiff somehow construes the fact that certain potential witnesses reside in South Carolina and California as favoring denial of the motion. See id. at 20.

The relevant comparison is between witnesses located in Massachusetts and those in Texas, and this comparison clearly favors transfer.[9] In his opening brief, Gregorio identified a number of potential witnesses and described the relevant knowledge each had with regard to the claims in this case. Plaintiff's argument that Gregorio's initial showing was insufficient is unconvincing. Indeed, Plaintiff's own citation to Young v. Armstrong World Indus., Inc., 601 F. Supp. 399 (N.D. Tex. 1984), is illuminating:

> the moving Defendants must prove with particularity the reasons why they are inconvenienced by Plaintiffs' choice of forum:
>
> The party seeking the transfer must *clearly specify the key witnesses to be called* and must make a *general statement* of what their testimony will cover. The emphasis must be on this showing rather than on numbers. One key witness may outweigh a great number of less important witnesses. If a party has merely made a general allegation that witnesses will be necessary, without identifying them and indicating what their testimony will be, the application for transfer will be denied.

Id. at 401-02 (emphasis added); see also Nobel Insur. Co. v. Acme Truck Line, Inc., No. Civ. A. 3:99-CV-2950-G, 2000 WL 298908, at *2 (N.D. Tex. 2000) ("[T]he party seeking transfer must clearly specify the key witnesses to be called an must make a *general statement* of what their testimony will cover." (quoting Continental Airlines, Inc. v. American Airlines, Inc., 805 F. Supp. 1392, 1396 (S.D. Tex. 1992))). Gregorio has clearly satisfied this burden by identifying specific witnesses and outlining the specific issues as to which that those individuals have knowledge. Plaintiff suggests that in order to make a sufficient showing for transfer a movant must secure a witnesses commitment to testify and must provide the precise testimony to be given at trial. This is simply not possible at this juncture of the case, nor is such a standard supported in the case law.

---

[9] Thus, Plaintiff's contention that Gregorio is "disingenuous" in referring only to Excelergy Board members who live in Massachusetts as relevant, Plaintiff's Response Br., at 17 n.4, is misplaced. Gregorio did in fact identify Excelergy Board members who do not live in Massachusetts, and he left them out of the analysis because they neither favored nor disfavored transfer.

REPLY BRIEF IN SUPPORT OF MOTION OF DEFENDANT
STEPHEN GREGORIO TO TRANSFER VENUE--PAGE 8
C:\Documents and Settings\mshin\Desktop\Gregorio\Reply Brief\FINAL REPLY BRIEF.rtf 3/15/05 2:22 PM

Even if the Court were to credit Swenke's conclusory assertions that several of the potential witnesses identified by Gregorio do not have knowledge relevant, Swenke does *not* dispute that Alfred Browne III, Robert Davoli, R. David Tabors, Alphonse Lucchese, Matthew Emsley, and Robert Paquette have knowledge relevant to Plaintiff's claims.[10]  Swenke Aff., ¶¶ 18-20.

In contrast to the showing made by Gregorio, the only potential witnesses in Texas that Plaintiff identifies are Swenke, Plaintiff's CPA (Leo Preolo), and Plaintiff's "members/owner." As for the latter, Swenke's affidavit merely states that each "member/owner" provided consent for Excelergy's purchase of Plaintiff.[11]  Plaintiff provides no indication of what relevant testimony any of these individuals could provide, other than mere background information.  In addition, because Preolo is an employee of Plaintiff, his convenience is afforded less consideration than for other witnesses.  See Lemery v. Ford Motor Co., 244 F. Supp. 2d 720, 731 (S.D. Tex. 2002) (witnesses who are employees of a defendant are entitled to less weight); Mannatech Inc. v. See, No. Civ. A. 399CV1877G, 2000 WL 256326, at *3 (N.D. Tex. March 7, 2000) (same).  Continental Airlines, 805 F. Supp. at 1397 (same). And as noted in Gregorio's opening brief, Swenke, as Plaintiff's principal, should be treated for present purposes as a party witness, and thus his convenience should be given minimal weight--or at least no more weight than that of Defendants.  Plaintiff's contention that Swenke is a nonparty witness because he is not the named plaintiff is disingenuous.  Swenke is clearly the motivating force behind and has the primary interest in this litigation; Swenke's convenience should not be given heightened consideration merely because he chose not to bring suit in his individual name.

Even assuming, *arguendo*, that Swenke is a nonparty witness, the inconvenience caused to him by transferring the case does not outweigh the inconvenience to witnesses in

---

[10] In addition, two other individuals possess information central to Plaintiff's claims: Cary G. Bullock, founder, former CEO, and former Chairman of Excelergy, who lives in Belmont, MA and was with Excelergy during the negotiation and execution of the Agreement; and Christopher Cazer, former Vice President of Research & Development and CTO, who lives in New York state and was involved in evaluating Plaintiff's technology.

[11] Swenke's mention of the bankruptcy proceedings of one of the owner/members, ANG Holdings, LLC, has no bearing whatsoever on the present motion.

Massachusetts caused by maintaining the case in Texas. Plaintiff argues that Swenke and Defendants are the only key witnesses, and all other witnesses are "secondary or cumulative." Plaintiff's apparent basis for this contention is that Swenke and Defendants were the only individuals present at the time the alleged misrepresentations were made. But a number of issues pertaining to other than the actual alleged misrepresentations are crucial to Plaintiff's claims. Indeed, to prove negligent misrepresentation, Plaintiff must show, *inter alia*, that the alleged misrepresentations were false and that Defendants "fail[ed] to exercise reasonable care or competence in obtaining or communicating the information." See Golber v. Baybank Valley Trust Co., 704 N.E. 2d 1191, 1192 (Mass. App. Ct. 1999). Thus, clearly, the knowledge of the witnesses, which includes information pertaining to the past and present financial condition of Excelergy, accounting issues, the loans to Mahoney, Mahoney's bonus incentives, and the lease with Boston Properties, is central to Plaintiff's claims.

Finally, in attempt to further muddy the issue, Plaintiff contends that the testimony of the witnesses identified by Gregorio could be presented by videotaped deposition. To be sure, the cases cited by Plaintiff suggest that in certain circumstances, videotaped depositions might be adequate. However, this does not change the fact, noted in Gregorio's opening brief, that all else being equal, courts prefer live testimony. Indeed, Plaintiff does not explain why this court should deny transfer and settle for videotaped depositions given the viable option of transferring the case to a venue in which live testimony is much more likely. Given that much of the case likely will depend on credibility determinations by the court, securing live testimony is more crucial than in the ordinary case, and thus resort to video depositions for what would likely be a substantial majority of witnesses is not a reasonable alternative to transfer.

4. Cost of Attendance of Willing Witnesses

Plaintiff's assertion that Defendants have not identified any witnesses who "would be willing to travel to Texas to testify at trial but for the cost and inconvenience of such travel," Plaintiff's Response Br., at 20, has no bearing on the present motion, and unsurprisingly,

**REPLY BRIEF IN SUPPORT OF MOTION OF DEFENDANT**
**STEPHEN GREGORIO TO TRANSFER VENUE--PAGE 10**
C:\Documents and Settings\mshin\Desktop\Gregorio\Reply Brief\FINAL REPLY BRIEF.rtf 3/15/05 2:22 PM

Plaintiffs do not cite to any authority for such an inquiry. The question is not whether Defendants can identify specific witnesses who would be unwilling to travel to Texas, but rather whether Texas is an inconvenient forum for those who might be willing to testify. See Savoy Owners Assocs., Inc. v. Insurance Corp., of New York, No. 02-Civ-6145, 2003 WL 941098, at *2 (S.D.N.Y. Mar. 6, 2003) ("[Convenience of witnesses] factor is deemed so important because "[t]he lack of subpoena power coupled with the long-distance travel required *if* the witnesses were to voluntarily appear before the court could impede trial and would impose substantial expense on witnesses and on the plaintiff." (emphasis added)). Thus, the cost of travel to Texas would surely burden those would be willing to testify or, alternatively, would be prohibitive for potential witnesses. Either way, the conclusion is the same: Texas is an inconvenient forum for the majority of potential witnesses in this case.

## C.    The Public Interest Factors Favor Transfer

### 1.    Massachusetts's Interest in Adjudicating This Dispute

Plaintiff argues that "Texas has a significant interest in providing a forum for the resolution of disputes involving tortious injury to its citizens." Plaintiff's Response Br., at 22. While this certainly may be the case, Texas's interest is outweighed by Massachusetts's interest in adjudicating the present dispute, given all of the factors tying Plaintiff's claims to Massachusetts. See Allegiant Physicians Services, Inc. v. Sturdy Memorial Hospital, 926 F. Supp. 1106, 1119 (N.D. Ga. 1996) ("While it cannot be said Georgia has no interest in remedying harm to one of its corporate residents, any interest Georgia possesses is tempered by Massachusetts' interest in adjudicating contractual disputes where the entire transaction occurred in Massachusetts, the contract was delivered and executed in Massachusetts, [and] the contract expressly provides for the application of Massachusetts law . . . ."); see also Gary Scott Int'l, Inc. v. Baroudi, 981 F. Supp. 714 (D. Mass. 1997) (Massachusetts has significant interest in adjudicating dispute where interpretation of Massachusetts state law involved). Accordingly, this factor favors transfer.

2.    Respective Venues' Familiarity With Governing Law

Plaintiff's contention that Gregorio has not demonstrated that "the Court's supposed unfamiliarity with Massachusetts substantive law is any less than that of the District Court for the District of Massachusetts" is on its face absurd.[12]  Simply by virtue of getting more exposure to Massachusetts law--just as this Court deals more frequently with Texas law--courts in the District of Massachusetts clearly have greater expertise as to Massachusetts substantive law than other federal district courts.  Moreover, while Plaintiff asserts on the one hand that Massachusetts and Texas substantive law are "similar" as to Plaintiff's claims, it acknowledges on the other hand that unlike its Massachusetts counterpart, the Texas unfair trade practices statute does not recognize a cause of action for businesses.  Although it obviously is neither impossible nor unheard of for a district court outside of Massachusetts to adjudicate claims based in Massachusetts state law, the District of Massachusetts is the better equipped to do so, and thus this factor weighs substantially in favor of transfer.

3.    Docket Congestion

In a supplement to its response brief, Plaintiff  provides statistics from the 2003 Civil Justice Reform Act Report ("CJRA Report"), and concludes from the report that this District is "much less congested" that the District of Massachusetts.  Plaintiff's Supplemental Response Br., at 1. This contention is entirely without merit.

As an initial matter, the statistics Plaintiff provides are completely outdated.  The CJRA Report Plaintiff submitted provides snapshots of the respective district courts in March 31, 2003, and in September, 30, 2003.  These figures, from over a year and a half to two years ago, do not

---

[12] Plaintiff contends that Gregorio admits that "Massachusetts law, including Chapter 93A, governs the substantive claims in this action" and thus "cannot later claim that contacts within Massachusetts are insufficient to preclude application of Massachusetts law to the substantive claims raised in this action." Plaintiff's Response Br., at 23 n.11.  To the contrary, Gregorio merely noted in his opening brief that Plaintiff was asserting that Massachusetts law applied by bringing a claim under Mass. Gen. Laws ch. 93A and by alleging that Defendants' misrepresentations and omissions occurred primarily and substantially within Massachusetts. See Brief in Support of Motion of Defendant Stephen Gregorio to Transfer Venue, at 9-10.  Gregorio did not (and does not) admit that Plaintiff alleged sufficient contacts to state a claim under chapter 93A or otherwise under Massachusetts state law.

provide a basis on which this Court can make any conclusions as to the relative congestion of the two districts.

More fundamentally, even if a more recent CJRA Report was available, the data provided in the reports is not particularly relevant for present purposes. Indeed, Plaintiff obscures the fact that the CJRA Reports provide very specific information about the district court dockets that is not entirely relevant for present purposes. The CJRA reports provide three sets of data for each district court judge: (1) the number of cases *over three years old*; (2) the number of motions pending *for over six months*; and (3) the number of bench trials. These figures are not precise indicators of overall court congestion but rather serve as rough proxies for certain types of congestion on courts' dockets.

A closer look at the statistics for 2003 provided by the Administrative Office of the United States Courts highlights the limited utility of the CJRA Reports. [13] According to these statistics, during the 12-month period ending September 30, 2003, the District Massachusetts had *fewer* pending civil cases that the Northern District of Texas (3,695 compared to 4,542). See Table C-3A: U.S. District Courts--Civil Cases Pending, by Nature of Suit and District (Exhibit 2). In addition, during that period there was not a substantial difference in the medial time interval from filing to disposition of civil cases in the districts (10.7 months compared to 7.2). See Table C-5: U.S. District Courts--Median Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition (Exhibit 3).

Current statistics from the Administrative Office of the Court, for the 12-month period ending September 30, 2004, indicate that the there is no appreciable difference in terms of court congestion between the two districts. See U.S. District Court--Judicial Caseload Profiles (Exhibit

---

[13] This information is publicly available. See Judicial Business of the United States Courts 2003, available at http://www.uscourts.gov/judbus2003/contents.html.

4).[14]  Indeed, there were almost twice as many filings in this District than in the District of Massachusetts (6,560 compared to 3,819), as well as slightly more pending cases (4,686 compared to 4,496).[15]  Id.  More important, as this Court has recognized, are the statistics that indicate the median times from filing to disposition, see, e.g., Isbell v. DM Records, Inc., No. Civ. A. 3:02-CV-1408-G, 2004 WL 1243153, at *15 (N.D. Tex. June 4, 2004) ("the comparative calendar congestion (i.e., the amount of time needed to adjudicate a civil dispute)"); Whistler Group, Inc. v. PNI Corp., No. Civ. A. 3:03-CV-1536-G, 2003 WL 22939214, at *4 (N.D. Tex. Dec. 5, 2003) (same), and those statistics do not significantly differ between the districts (7.4 months in this District compared to 9.4 months in the District of Massachusetts).[16]  See Exhibit 4. Accordingly, this factor does not significantly favor or disfavor transfer.

## CONCLUSION

For the foregoing reasons, Defendant Gregorio respectfully requests that, pursuant to 28 U.S.C. § 1404(a), this Court transfer this case to the District of Massachusetts.

---

[14] This information is publicly available.  See Judicial Business of the United States Courts 2003, available at http://www.uscourts.gov/judbus2003/contents.html.  See Federal Court Management Statistics 2004, available at http://www.uscourts.gov/cgi-bin/cmsd2004.pl.

[15] Per judgeship, there were 547 total filings, 452 civil filings, and 391 pending cases in this District compared to 294 total filings, 255 civil filings, and 346 pending cases in the District of Massachusetts.  See Exhibit 4.

[16] The numbers for both the median time from filing to trial of civil cases and the number of civil cases over three years old are larger for the District of Massachusetts than for this District.  However, as the explanation of the terms indicates, these figures include data for cases on appeal in other courts and thus may be skewed by various factors, such as the pendency in a particular district of a large number of related cases awaiting resolution of appeals.  See Explanation of Terms, available at http://www.uscourts.gov/library/fcmstat/cmsexpl04.html (Exhibit 5).

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

NORTHERN DISTRICT OF TEXAS
FILED

MAR 1 6 2005

CLERK, U.S. DISTRICT COURT
By _____
Deputy

|  |  |
|---|---|
| FM HOLDINGS, LLC, f/k/a FORWARDMARKET, LLC, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. ) 3: 05-CV-0166-G |
| BILL MAHONEY and STEPHEN GREGORIO, | ) ) ) |
| Defendants. | ) ) ) |

### APPENDIX IN SUPPORT OF REPLY BRIEF IN SUPPORT OF DEFENDANT STEPHEN GREGORIO TO TRANSFER VENUE

| Tab 1 | Asset Purchase Agreement | App. pp. 001-038 |
|---|---|---|
| Tab 2 | U.S. District Courts – Median Time Intervals From Filing to Disposition of Civil Cases | App. pp. 039-041 |
| Tab 3 | U.S. District Courts – Civil Cases Pending, by Nature of Suit and District | App. pp. 042-044 |
| Tab 4 | U.S. District Court – Judicial Caseload Profile | App. pp. 045-047 |
| Tab 5 | Explanation of Selected Terms | App. pp. 049-050 |

Respectfully submitted,

**SHANNON GRACEY RATLIFF & MILLER, LLP**
777 Main Street, Suite 3800
Fort Worth, Texas 76102
(817) 336-9333 Telephone
(817) 336-3735 Facsimile

By: _____
Thomas J. Fisher
State Bar Card No.: 07064500

APPENDIX IN SUPPORT OF REPLY BRIEF IN SUPPORT OF DEFENDANT
STEPHEN GREGORIO TO TRANSFER VENUE-- PAGE 1

*Of Counsel:*

Timothy C. Blank
BBO No. 548670
Michael. S. Shin
BBO No. 658134
**DECHERT LLP**
00 Clarendon Street, 27th Floor
Boston, MA 02116
(617) 728-7100 Telephone
(617) 426-6567

**ATTORNEYS FOR DEFENDANT
STEPHEN GREGORIO**

## CERTIFICATE OF SERVICE

I certify that on March 15, 2005, a true and correct copy of the foregoing was served

upon all known counsel of record via first class U.S. Mail as follows:

Charles R. Biddle
Ronald O. Holman
HOLMAN ROBERTSON ELDRIDGE
5949 Sherry Lane, Suite 1700
Dallas, Texas 75225

Kimberly A. Elkjer
ROBERT M. MILLIMET
Scheef & Stone, L.L.P.
5956 Sherry Lane, Suite 1400
Dallas, Texas 75225

Thomas J. Fisher

# **EXHIBIT 1**

## ASSET PURCHASE AGREEMENT

This **ASSET PURCHASE AGREEMENT** effective as of January 1, 2003 (the "Effective Date") by and among Excelergy Corporation, a Delaware corporation ("Buyer"); Forwardmarket, LLC, a Texas limited liability company ("Seller"); and J. Kevin Swenke, an individual residing in Dallas, Texas ("Swenke").

### RECITALS:

**WHEREAS,** Seller conducts a business (the "Business") that, among other things, designs, develops, manufactures, markets, distributes, licenses and provides maintenance and support for certain software products for retail energy customers;

**WHEREAS,** Swenke is the sole manager of Seller and the record and beneficial owner of a majority of the membership interests of Seller; and

**WHEREAS,** Buyer desires to purchase certain assets and assume certain liabilities of Seller, and Seller desires to sell and transfer all of such assets and liabilities to Buyer, upon the terms and subject to the conditions hereinafter set forth.

**NOW, THEREFORE,** in consideration of the foregoing and the representations, warranties, covenants and agreements herein contained, the parties hereto agree as follows:

### ARTICLE I
### DEFINITIONS

**1.01. Certain Definitions.** The following terms, as used herein, have the following meanings:

"Affiliate" means, with respect to any Person, any Person directly or indirectly controlling, controlled by, or under common control with such other Person.

"Ancillary Agreements" means the (i) Conveyance Documents; (ii) the Assignment and Assumption Agreement; (iii) the Excelergy Corporation Employment Offer Letter with Swenke (the "Swenke Employment Agreement"); (iv) the several Stockholder Agreements and Release with each of the members of Seller; and (v) the Employee Non-Competition, Nondisclosure and Developments Agreement with Swenke.

"Business Intellectual Property" means all Intellectual Property that is owned or held by or on behalf of Seller or that is being, and/or has been, used, or is currently under development (including in concept phase of development) for use by Seller as the Business has been, is currently or is currently planned to be conducted, including without limitation the HedgeDirect Patent Application.

App 002

 

Asset Purchase Agreement – Page 2

"Closing Date" means the date of the Closing as set forth in Section 2.06, which Closing shall occur as soon as practicable after the Effective Date.

"Code" means the Internal Revenue Code of 1986, as amended.

"Computer Programs" means (i) any and all computer programs (including, without limitation, sets of statements or instructions to be used directly or indirectly in a computer in order to bring about a certain result), and (ii) all associated data and compilations of data, regardless of their form or embodiment. The term "Computer Programs" shall include, without limitation, all versions of any and all such computer programs, all screen displays and designs thereof, all component modules of source code, object code and natural language code therefor, all descriptions, flow-charts and other work product used to design, plan, organize and develop any of the foregoing, and all documentation, including without limitation user manuals and training materials, relating to any of the foregoing.

"HedgeDirect Patent Application" means the United States patent application entitled "Automated Retail Energy Hedge Transaction Process" as filed by Seller in the United States Patent and Trademark Office on May 7, 2002, and including without limitation (i) any U.S. or foreign patents resulting from such application; (ii) the U.S. Provisional Application Serial No. 60/289,195 filed May 7, 2001 to which such application claims the benefit; (iii) any divisionals, continuations, continuation-in-part applications, and continued prosecution applications (and their relevant international equivalents) of such patent application; and (iv) any international (non-United States) patent applications and provisional applications (and the relevant international equivalents to divisionals, continuations, continuation-in-part applications and continued prosecution applications) of such patent application and the resulting patents.

"GAAP" means generally accepted accounting principles applied on a consistent basis.

"Intellectual Property" means all tangible or intangible proprietary information and materials, including without limitation:

(a)    (i) all inventions (whether patentable or unpatentable, whether or not reduced to practice and in whatever phase of development (including but not limited to concept or design phase), all improvements thereon, and all patents, patent applications and patent disclosures, together with all reissuances, continuations, continuations-in-part, divisions, revisions, extensions and re-examinations thereof, (ii) all trademarks, services marks, trade dress, logos, trade names, domain names, and corporate names, together with all translations, adaptations, derivations and combinations thereof and including all goodwill associated therewith, and all applications, registrations and renewals in connection therewith, (iii) all copyrights and all applications, registrations and renewals in connection therewith, (iv) all mask works and all applications, registrations and renewals in connection therewith, (v) all trade secrets and confidential business information (including ideas, research and development, know-how, formulas, compositions, manufacturing and production process and techniques, methods, schematics, technology, technical data, designs, drawings, flowcharts, block diagrams,

Asset Purchase Agreement – Page 3

specifications, customer and supplier lists, pricing and cost information and business and marketing plans and proposals), and (vi) all Computer Programs and firmware (including data, databases and related documentation);

(b)      all documents, records and files relating to (i) design, end user documentation, development, quality control, maintenance, object code, source code and any procedural code (the "Technical Documentation") and (ii) sales, marketing or customer support for, and tangible embodiments of, all intellectual property described herein; and

(c)      all licenses, agreements and other rights in any third party product or any third party intellectual property described in (a) and (b) above other than any "off-the-shelf" third party software or related intellectual property.

"Leased Real Property" means all Real Property that is leased or subleased by Seller.

"Lien" means, with respect to any asset, any mortgage, lien, pledge, charge, security interest, restriction or encumbrance of any kind in respect of such asset.

"Material Adverse Change" means a material adverse change in the business, assets, condition (financial or otherwise), results of operations or prospects of Seller or the Business.

"Material Adverse Effect" means a material adverse effect on the business, assets, condition (financial or otherwise), results of operations or prospects of Seller or the Business.

"MDS" means the proprietary retail energy market software platform developed, marketed and distributed by Seller.

"Person" means an individual, corporation, partnership, association, trust or other entity or organization, including a government or political subdivision or an agency or instrumentality thereof.

"Securities" shall have the meaning ascribed to it in Section 5.10.

"Securities Act" means the Securities Act of 1933, and the rules and regulations promulgated thereunder.

"Share Distribution Date" shall mean July 8, 2004.

"Software" means all elements of the Computer Programs used or developed (including in the concept phase) by Seller identified on Schedule 3.13 (including but not limited to "MDS" and "HedgeDirect") and all such Computer Programs in their entirety.

"to Seller's Knowledge," "Known to Seller" and words of similar import mean to the knowledge of Seller, Swenke or any other Affiliate of Seller.

APP 004

Asset Purchase Agreement – Page 4

"to Swenke's Knowledge," "Known to Swenke" and words of similar import mean to the knowledge of Swenke.

## ARTICLE II
## PURCHASE AND SALE

**2.01. Purchase and Sale.** Upon the terms and subject to the conditions of this Agreement, Buyer agrees to purchase from Seller and Seller agrees to sell, transfer, assign and deliver, or cause to be sold, transferred, assigned and delivered, to Buyer effective as of the Effective Date good and marketable title to all of the assets, contract rights, properties and business, other than the Excluded Assets, of every kind and description, wherever located, real, personal or mixed, tangible or intangible, owned or held by Seller or otherwise used in the Business (the "Purchased Assets"), and including without limitation all right, title and interest of Seller in, to and under such of the foregoing as are more specifically described below:

(a)    the Software and all Intellectual Property Rights pertaining thereto;

(b)    the Business Intellectual Property, and any and all Computer Programs, Technical Documentation and other Intellectual Property Rights used, owned or licensed by Seller (or otherwise held by Seller), including without limitation the items listed on Schedule 3.13;

(c)    all leases and subleases of, and other interests, in real property used by Seller or held by Seller, including without limitation those properties listed on Schedule 3.07;

(d)    all personal property and interests therein used by Seller or held by Seller, including machinery, equipment, furniture, office equipment, communications equipment, and other tangible property, including without limitation the items listed on Schedule 3.07;

(e)    all raw materials, work-in-process, finished goods, supplies and other inventories, wherever situated, used by Seller or held by Seller;

(f)    all rights under all contracts, agreements, leases, licenses, commitments, sales and purchase orders and other instruments used by Seller or held by Seller, including without limitation the items listed on Schedule 3.12 (collectively, the "Contracts");

(g)    all prepaid expenses and deposits, including without limitation ad valorem taxes, leases and rentals;

Asset Purchase Agreement – Page 5

(h)     all of Seller's rights, claims, credits, causes of action or rights of set-off against third parties, including, without limitation, unliquidated rights under manufacturers' and vendors' warranties;

(i)     all transferable licenses, permits or other governmental authorizations used by Seller or held by Seller;

(j)     all books, records, files and papers, whether in hard copy or computer format used by Seller or held by Seller, including, without limitation, engineering information, sales and promotional literature, manuals and data, sales and purchase correspondence, lists of present and former suppliers, lists of present and former customers, personnel and employment records, and all information relating to Taxes imposed on Seller; and

(k)     all goodwill associated with the Business or the Purchased Assets or otherwise with Seller, together with the right to represent to third parties that Buyer is the successor to the Business.

**2.02. Excluded Assets.** Buyer expressly understands and agrees that the assets and properties of Seller specifically identified on Schedule 2.02 (the "Excluded Assets") shall be excluded from the Purchased Assets.

**2.03. Assumption of Liabilities.** Upon the terms and subject to the conditions of this Agreement, Buyer agrees, effective as of the Effective Date, to assume the following liabilities (the "Assumed Liabilities"):

(a)     the specific liabilities of Seller listed on Schedule 2.03(a), but only up to the specific dollar amounts listed on Schedule 2.03(a);

(b)     all liabilities and obligations of Seller arising under the Contracts (other than liabilities or obligations attributable to any failure by Seller to comply with the terms thereof at any time); and

(c)     all warranty claims or expenses of Seller in respect of products sold or services rendered in connection with the Business through the Effective Date, but only to the extent that (i) such warranty conforms to the form of warranty attached to Schedule 2.03(c) or (ii) such claims or expenses are individually and in the aggregate immaterial to Seller or are otherwise specifically identified on Schedule 2.03(c).

**2.04. Excluded Liabilities.** Notwithstanding any provision in this Agreement or any other writing to the contrary, Buyer is assuming only the Assumed Liabilities and is not assuming any other liability or obligation of Seller or any Affiliate of Seller (or any predecessor owner of all or part of its business and assets) of whatever nature whether presently in existence or arising or asserted hereafter. All such other liabilities and obligations shall be retained by and remain obligations and liabilities of Seller or its Affiliates (all such liabilities and obligations not being

App   006



Asset Purchase Agreement – Page 6

assumed being herein referred to as the "Excluded Liabilities"). Without limiting the foregoing, none of the following shall be Assumed Liabilities for the purposes of this Agreement:

(a)    any and all liabilities and obligations of Seller for Taxes (including any Taxes that arise as a result of the transactions contemplated by this Agreement);

(b)    any liabilities or obligations relating to employee benefits or compensation arrangements of Seller;

(c)    except as specifically set forth in Section 2.03(a) or (c), any liability or obligation relating to the sales returns and allowances policies of Seller with respect to products sold prior to the Closing Date;

(d)    any liability or obligation for death, personal injury or property damage (whether based on negligence, breach of warranty, strict liability or any other theory) caused by or arising out of or resulting from, directly or indirectly, the sale by Seller of any products or services prior to the Closing Date;

(e)    except as specifically set forth in Section 2.03(a) or (c), any claims for refunds based on any warranty, express or implied, for products or services sold prior to the Closing Date;

(f)    any Environmental Liabilities; and

(g)    any liability or obligation relating to an Excluded Asset.

2.05.  **Assignment of Contracts and Rights.** Anything in this Agreement to the contrary notwithstanding, this Agreement shall not constitute an agreement to assign any Purchased Asset or any claim or right or any benefit arising thereunder or resulting therefrom if an attempted assignment thereof, without consent of a third party thereto, would constitute a breach or other contravention thereof or in any way adversely affect the rights of Buyer or Seller thereunder. Seller will use its best efforts to obtain the consent of the other parties to any such Purchased Asset or claim or right or any benefit arising thereunder for the assignment thereof to Buyer, as Buyer may request. If such consent is not obtained, or if an attempted assignment thereof would be ineffective or would adversely affect the rights of Seller thereunder so that Buyer would not in fact receive all such rights, Swenke, Seller and Buyer will cooperate in a mutually agreeable arrangement under which Buyer would obtain the benefits and assume the obligations thereunder in accordance with this Agreement, including subcontracting, sub-licensing, or subleasing to Buyer, or under which Seller would enforce for the benefit of Buyer, with Buyer assuming Seller's obligations, and any and all rights of Seller against a third party thereto. Seller will promptly pay to Buyer when received all monies received by Seller under any Purchased Asset or any claim or right or any benefit arising thereunder, except to the extent the same represents an Excluded Asset. In such event, Swenke or Seller and Buyer shall, to the extent the benefits therefrom and obligations thereunder have not been provided by alternate arrangements

Asset Purchase Agreement – Page 7

satisfactory to Buyer and Seller, negotiate in good faith an adjustment in the consideration paid by Buyer for the Purchased Assets.

**2.06. Purchase Price; Closing.** (a) The purchase price for the Purchased Assets (the "Purchase Price") is (i) US $250,000 in cash (the "Cash Consideration"), (ii) 172,500 shares of Common Stock of Buyer, par value $.01 per share (the "Share Consideration") (the Cash Consideration and the Share Consideration shall sometimes be collectively referred to as the "Closing Consideration"), (iii) the Additional Consideration, if any, to be paid and as determined pursuant to Section 2.07, and (iv) the assumption of the Assumed Liabilities. The Closing Consideration shall be paid to Seller as provided below and the Additional Consideration, if any, as provided in Section 2.07.

(b) The closing (the "Closing") of the purchase and sale of the Purchased Assets and the assumption of the Assumed Liabilities hereunder shall take place at the offices of Browne Rosedale & Lanouette LLP in Andover, Massachusetts as soon as practicable after the Effective Date, or at such other time or place as Buyer and Seller may agree. At the Closing,

(i) Buyer shall pay to Seller the Cash Consideration of $250,000 by wire transfer in immediately available funds to an account maintained by Seller, such account to be designated by Seller by written notice to Buyer not later than two business days prior to the Closing Date.

(ii) Seller and Buyer shall enter into an Assignment and Assumption Agreement substantially in the form attached hereto as Exhibit A, and Seller shall deliver to Buyer such deeds, bills of sale, endorsements, consents, assignments and other good and sufficient instruments of conveyance and assignment (the "Conveyance Documents") as the parties and their respective counsel shall deem reasonably necessary or appropriate to vest in Buyer all right, title and interest in, to and under the Purchased Assets.

(iii) Each of Seller, Swenke and Buyer shall execute and deliver each of the Ancillary Agreements to be entered into by it before or at the Closing, in each case substantially in the form attached as an Exhibit to this Agreement.

(iv) Buyer and each person listed on Exhibit B shall execute and deliver a Stockholder Agreement and Release, in each case in the form attached as Exhibit B hereto.

(v) Seller and Buyer shall execute and deliver all such instruments, documents and certificates as may be reasonably requested by the other party that are necessary, appropriate or desirable for the consummation at the Closing of the transactions contemplated by this Agreement.

App 008

Asset Purchase Agreement – Page 8

2.07. **Additional Consideration**. (a) Definitions. The following terms, as used in this Agreement, have the following meanings:

"Cash Receipts" shall mean the cash payments received by Buyer representing HedgeDirect Product Revenues.

"HedgeDirect" shall mean the proprietary software product conceived of and designed by Seller, and with respect to which Seller has filed the HedgeDirect Patent Application, to electronically manage the purchase and sale of structured financial products to individual, commercial and industrial retail energy customers.

"HedgeDirect Engagement Letter" shall mean a written letter of intent or agreement entered into by Buyer and a duly authorized representative of a customer of Buyer containing either:

(i) legally binding obligations on the part of customer to (a) dedicate resources to collaborate on development of the HedgeDirect PILOT System, (b) pilot, test and evaluate the completed and fully functional version of the HedgeDirect PILOT System (a "Pilot") and compensate Buyer for end user customer transactions during such Pilot, and (c) pay transaction fees, expenses and costs relating to such Pilot (it being agreed that any such Pilot letter of intent or agreement described in this clause (i) shall contain customary terms and conditions, but may be subject to customer acceptance requirements and need not have specific customer obligations relating to the term of such pilot, volume purchase requirements or, except as otherwise set forth herein, an upfront capital commitment on the part of the customer); or

(ii) a definitive order or contract for a HedgeDirect product or service.

"HedgeDirect Product Lines" shall mean (i) HedgeDirect, including any revision or enhancement of the software underlying HedgeDirect made by or for Buyer which retains all or part of the functionality of the software as conceived of and designed by Seller (the software, together with any revision or enhancement that complies with the terms of this clause (i) being referred to herein as the "Covered Software"); and (ii) any product in which any of the Covered Software is embedded or bundled; provided, however, that the HedgeDirect Product Lines shall exclude the following: (A) all products (including, without limitation, Computer Programs or other software products and related items) developed, licensed or distributed by Buyer on or prior to the date hereof, together with any revisions, enhancements or derivatives thereof, and any service performed (including, without limitation, implementation, installation, support, maintenance or training) by Buyer with respect to such products, except to the extent such Buyer products and/or services are embedded or bundled with the Covered Software, and (B) any hardware or equipment whatsoever.

"HedgeDirect Product Revenues" shall mean the revenues of Buyer recognized, in accordance with GAAP, from the license, implementation, installation, support or maintenance of, or training on, the HedgeDirect Product Lines, in all events calculated net of returns, shipping, customs in-transit insurance charges, and reseller fees (including VAR and OEM discounts)

Asset Purchase Agreement – Page 9

incurred in connection therewith, and sales, use, value added or similar taxes to the extent borne by Buyer; provided, however, that HedgeDirect Product Revenues shall exclude revenues attributable or relating to implementation, installation, support and maintenance of, or training on, the HedgeDirect Product Lines by unAffiliated third parties.

In the event that HedgeDirect Product Revenues relate to a product in which the Covered Software is embedded or bundled or where HedgeDirect Product Revenues would otherwise include another product of Buyer that has been embedded in the Covered Software, then HedgeDirect Product Revenues shall refer only to the portion of such HedgeDirect Product Revenues directly attributable to the Covered Software, and the following shall apply:

(i) where any of the Covered Software is embedded in, or bundled with other products (or where other products are embedded in, or bundled with, the Covered Software), the portion of HedgeDirect Product Revenues directly attributable to the Covered Software shall be not less than the average price charged to unrelated third parties for the Covered Software on a stand-alone basis during the immediately preceding two fiscal quarters of Buyer; provided, however, that any discount in the bundled product shall be apportioned between the Covered Software and such remainder of the product in proportion to their respective market prices; and

(ii) where the Covered Software is sold by Buyer as an outsourced application service and the fees received by Buyer are calculated on a per transaction basis, then HedgeDirect Product Revenues per transaction shall mean the average per transaction fee that Buyer charged its customers for such service during the immediately preceding two fiscal quarters of Buyer.

(b)     Additional Consideration. Subject to the terms and conditions set forth herein and in Section 2.08, Buyer agrees to make the cash payments set forth in clauses (i), (ii) and (iii) (the "Additional Consideration") to Seller. All amounts required to be paid by Buyer to Seller in accordance with clauses (i), (ii) and (iii) below shall be paid to Seller as follows: (A) any payment may be made by wire transfer of immediately available funds to the account designated by Seller pursuant to Section 2.06(b)(i) or as otherwise designated in writing by Seller; (B) any payment exceeding $100,000 shall be made by wire transfer of immediately available United States federal funds; (C) any payment exceeding $10,000, but not exceeding $100,000, may be made by bank certified, treasurer's or cashier's check; and (D) any payment not exceeding $10,000 may be made by ordinary check.

(i)     At such time as the cumulative Cash Receipts of Buyer after the Effective Date exceed $1,000,000, Buyer shall make quarterly payments to Seller based on the excess of such Cash Receipts over $1,000,000 as follows: Not later than forty-five (45) days after the end of each fiscal quarter of Buyer during the period commencing on the day after the Effective Date and ending on the sixth year anniversary of the Effective Date (the "Earn-Out Expiration Date"), Buyer shall pay to Seller seven percent (7%) of the aggregate Cash Receipts received by Buyer in the immediately preceding fiscal quarter; provided, however, that Buyer shall not be obligated to make any payment hereunder on the first $1,000,000 in cumulative Cash

App   O10

Asset Purchase Agreement – Page 10

Receipts received by Buyer; and, provided, further, in no event shall Buyer pay to Seller pursuant to this clause (i) more than $1,500,000 in the aggregate.

(ii)    Not later than thirty (30) days after the execution of each HedgeDirect Engagement Letter, Buyer shall pay to Seller $150,000 in respect of each such HedgeDirect Engagement Letter; provided that in no event shall Buyer pay to Seller pursuant to this clause (ii) more than $300,000 in the aggregate, and provided further that Buyer shall have no obligation to make any payment pursuant to this clause (ii) for any HedgeDirect Engagement Letter executed after the 24 month anniversary of the Effective Date.

(iii)    If, and only if, Buyer fails to satisfy the Required Resource Allocation (as described below) before the second year anniversary of the Effective Date, Buyer shall pay to Seller $300,000, not later than thirty (30) days after such second year anniversary. For purposes hereof, Buyer shall have satisfied the "Required Resource Allocation" if (i) Buyer provides reasonable evidence to Seller that Buyer and/or its personnel shall have expended 3,000 man-hours in the aggregate in connection with the design and development of the HedgeDirect product, including the management thereof, or (ii) Buyer earlier determines in good faith that Hedge Direct is not a commercially viable product.

(c)    Dispute. In the event that a dispute arises regarding the payments set forth in Section 2.07(b) and the parties are unable to resolve any such dispute after a period of thirty (30) business days, (or such longer period as the parties may hereafter agree), the parties shall submit all matters that remain in dispute to Ernst & Young, or if that firm will not agree to provide the required services, its estimated price or other terms are unreasonable, or it is otherwise not available, another nationally recognized firm of independent public accountants, for accounting arbitration (the "Accountants"). The parties shall use all reasonable efforts to cause such firm to render a decision resolving the matters submitted to it and, thereby, establish the amount of the payments due within thirty (30) days following submission. Judgment may be entered upon the determination of such firm in any court having jurisdiction over the party against which such determination is to be enforced. The fees and expenses of the Accountants shall be paid by the party whose calculation of the payments due is further (in dollar amount) from the calculation of the payments by the Accountants. Absent fraud or manifest error, the determination of such firm as to the payments due shall be final.

(d)    No Obligation to Commit Resources. The parties acknowledge and agree that nothing in this Section 2.07 obligates Buyer to develop, or commit resources to HedgeDirect. Buyer, in its sole discretion, shall determine whether, and in what manner, to set forth a development schedule, allocate a budget and commit resources to HedgeDirect. Seller's sole and exclusive remedy for a failure on the part of Buyer to develop, commercialize or otherwise commit resources to HedgeDirect shall be as set forth in Section 2.07(b)(iii), and, except as expressly set forth in said Section 2.07(b)(iii), Seller hereby waives any claims that the future conduct of the Business by Buyer was not undertaken to maximize the generation of Additional Consideration under this Section 2.07.

APP 011

Asset Purchase Agreement – Page 11

(e)    Sale of the Covered Software. In the event that Buyer sells outright to a third party (other than an Affiliate of Parent or Buyer) (a "Third Party Acquiror") substantially all of Buyer's right, title and interest (including all of Buyer's Intellectual Property rights) in and to the tangible and intangible property constituting the Covered Software (a "Covered Software Sale"), Buyer shall use all commercially reasonable efforts to have such Third Party Acquiror assume the obligations of Buyer under this Section 2.07.

(f)    Accelerated Payment. In the event that either (i) Buyer elects, in its sole discretion, to accelerate its payments obligations under this Section 2.07 by delivering written notice to Seller or (ii) Buyer consummates a Covered Software Sale prior to the Earn-Out Expiration Date in which the Third Party Acquiror does not expressly assume the payment obligations of Buyer under this Section 2.07 (an "Acceleration Event"), then Seller's rights to receive Additional Consideration hereunder shall immediately terminate, except that Buyer shall pay to Seller, within thirty (30) days of the occurrence of an Acceleration Event, a lump sum amount equal to the Additional Consideration Value (as defined below). As used herein, "Additional Consideration Value" means the difference between (x) the net present value (calculated using the prime rate plus three percent (3%) using the prime rate published by the Wall Street Journal under the category "Prime Rate:  The Base Rate on Corporate Loans posted by at least 75% of the Nation's 30 largest Banks" or, if the Wall Street Journal ceases to publish such rate, such other comparable index rate selected by Buyer in its reasonable discretion) of $1,500,000 payable on the Earn-Out Expiration Date less (y) the aggregate amount paid to Seller pursuant to Section 2.07(b)(i) as of and through the date of such Acceleration Event. Upon payment by Buyer of the Additional Consideration Value to Seller, this Section 2.07 shall immediately terminate, without any further liability of Buyer to Seller for Cash Receipts.

2.08.   Right of Offset. Buyer, at its option, shall have the right to offset against all payments required to be made by Buyer under Section 2.07 or otherwise pursuant to this Agreement or any Ancillary Agreement (other than salary or wages, excluding severance payments, properly accruing under the Swenke Employment Agreement), including but not limited to Additional Consideration, any amounts owing to Buyer or its Affiliates from Seller or its Affiliates (including Swenke) pursuant to this Agreement, the Ancillary Agreements or otherwise, including without limitation any amount owing pursuant to the indemnification provisions of Article VIII. Buyer shall be entitled to exercise its offset on the date Buyer is required to make any payment to Seller or its Affiliates, as the case may be (a "Buyer Payment"). In order to exercise its right to offset, Buyer shall provide to Seller a written notice of any offset claim (a "Claim Notice"), which Claim Notice shall specify in reasonable detail the nature and amount of any offset claim. Buyer may make more than one (1) offset claim with respect to any underlying state of facts. To dispute the nature or amount of any offset claim, Seller shall give written notice to Buyer (a "Counter Notice") within thirty (30) days (the "Counter Notice Period") following delivery of the Claim Notice. Such Counter Notice shall set forth in reasonable detail the basis for Seller's belief that Buyer is not entitled to indemnification as set forth in the Claim Notice, and shall specify any undisputed and disputed amounts (any such disputed amounts being referred to herein as "Contested Amounts"). Buyer shall be entitled to exercise its right to offset on the date Buyer is required to make any Buyer Payment with respect to (i) any amounts set forth in any Claim Notice that are undisputed in the applicable Counter

App 012

Asset Purchase Agreement – Page 12

Notice; (ii) the full amount of any claim, to the extent and as set forth in the applicable Claim Notice, if no Counter Notice is delivered to Buyer within the applicable Counter Notice Period; and/or (iii) any Contested Amount, provided that such Contested Amount shall in all events be held by Buyer in a segregated interest bearing account pending resolution with respect to such Contested Amount pursuant to the terms of this Agreement.

   **2.09. Allocation of Purchase Price.** (a) Not later than ninety (90) days after the Closing, Buyer shall deliver to Seller a statement (the "Allocation Statement"), setting forth the value of the Purchased Assets and of the noncompetition covenants contained in the Employee Non-Competition, Nondisclosure and Developments Agreement, which shall be used for the allocation of the Purchase Price and the Assumed Liabilities among the Purchased Assets and the covenant not to compete.

   (b)    Seller shall have a period of 15 days after the delivery of the Allocation Statement to present in writing to Buyer notice of any objections Seller may have to the allocation set forth in the Allocation Statement. Unless Seller timely objects, the Allocation Statement shall be binding on the parties without further adjustment.

   (c)    If Seller shall raise any objections within the 15 day period, Buyer and Seller shall negotiate in good faith and use their best efforts to resolve such dispute.

   (d)    Any adjustment made with respect to the Purchase Price pursuant to Section 2.08 of this Agreement shall be allocated in accordance with a determination mutually agreed by Seller and Buyer.

   (e)    No later than 10 days prior to the filing of their respective Forms 8594 relating to this transaction, each party shall deliver to the other party a copy of its Form 8594.

## ARTICLE III
### REPRESENTATIONS AND WARRANTIES OF SELLER AND SWENKE

   Except as set forth in the disclosure schedules dated as of the date hereof and delivered herewith to Buyer (which disclosure schedules identify the section and subsection to which each disclosure therein relates), Seller and Swenke, jointly and severally, represent and warrant to Buyer as of the date hereof that:

   **3.01. Existence and Power.** Seller is a limited liability company duly formed, validly existing and in good standing under the laws of its jurisdiction of formation, and has all company powers and all governmental licenses, authorizations, consents and approvals required to carry on the Business as now conducted and proposed to be conducted. Seller is duly qualified to do business as a foreign limited liability company and is in good standing in each jurisdiction where the character of the property owned or leased by it or the nature of its activities makes such qualification necessary, except for those jurisdictions where the failure to be so qualified would not, individually or in the aggregate, have a Material Adverse Effect. Seller has heretofore

App 013



Asset Purchase Agreement – Page 13

delivered to Buyer a true and complete copy of the articles of organization and regulations of Seller as currently in effect.

3.02. **Authorization; Execution.** (a) The execution, delivery and performance by Seller of this Agreement and each of the Ancillary Agreements, and the consummation by Seller of the transactions contemplated hereby and thereby are within Seller's powers and have been duly authorized by all necessary action on the part of Seller and no further action is required on the part of Seller to authorize this Agreement, any Ancillary Agreement to which it is a party or the transactions contemplated hereby and thereby. The members and managers of Seller have approved this Agreement and the transactions contemplated hereby in accordance with Seller's regulations and all applicable laws. At all times prior to the Closing Date, Seller has complied with its regulations and the applicable provisions of the Texas Limited Liability Company Act. Each of this Agreement and each Ancillary Agreement to which Seller is a party has been duly executed and delivered by Seller and constitutes a valid and binding agreement of Seller, enforceable in accordance with its terms, except to the extent that such enforcement is limited by bankruptcy, insolvency or other laws affecting the rights of creditors generally.

(b)    Swenke has all requisite power and authority to execute, deliver and perform this Agreement and each of the Ancillary Agreements to which Swenke is a party. The execution and delivery by Swenke of this Agreement and each of the Ancillary Agreements to which Swenke is a party are the valid and binding obligations of Swenke, enforceable against him in accordance with their terms, except to the extent that such enforcement is limited by bankruptcy, insolvency or other laws affecting the rights of creditors generally.

3.03. **Governmental Authorization; Consents.** (a) The execution, delivery and performance by Seller and Swenke of this Agreement and each of the Ancillary Agreements to which Seller or Swenke is a party require no action by or in respect of, or filing with, any governmental body, agency, official or authority.

(b) No consent, approval, waiver or other action by any Person (other than any governmental body, agency, official or authority referred to in (a) above) under any contract, agreement, indenture, lease, instrument or other document to which Seller or Swenke is a party or is bound is required or necessary for the execution, delivery and performance by Seller or Swenke of this Agreement and each Ancillary Agreement to which Seller or Swenke is a party, or for the consummation of the transactions contemplated hereby or thereby, except for such consents, approvals and waivers as have been obtained prior to the Closing or as are specifically set forth in Schedule 3.03 (each a "Required Consent" and collectively, the "Required Consents").

3.04. **Non-Contravention.** The execution, delivery and performance by Seller and Swenke of this Agreement and each Ancillary Agreement to which Seller or Swenke is a party, and the consummation of the transactions contemplated hereby and thereby, do not and will not (a) contravene or conflict with the articles of organization or regulations of Seller, (b) contravene or conflict with any provision of any law, regulation, judgment, injunction, order, Permit or decree binding upon or applicable to Seller or Swenke or the Business; (c) constitute a default

App 014

Asset Purchase Agreement – Page 14

(with or without notice or lapse of time, or both) under or give rise to any right of termination, cancellation or acceleration of any right or obligation of Seller or Swenke, or to a loss of any benefit, relating to the Business to which Seller is entitled under any provision of any agreement, contract or other instrument binding upon Seller or (d) result in the creation or imposition of any Lien on any Purchased Asset.

    **3.05. Financial Statements.** (a) Attached as Schedule 3.05 are true and complete copies of the unaudited balance sheet, income statements and statements of cash flow of Seller as of and for the fiscal years ended December 31, 2001 and 2002 (collectively, the "Financial Statements").

    (b)    The Financial Statements fairly present in all material respects the financial condition, operating results and cash flows of Seller as of the dates and during the periods indicated therein in accordance with GAAP during the periods involved, except for the omission of footnote disclosures and normally recurring year-end audit adjustments, all of which adjustments are immaterial in amount and significance.

    (c)    All accounts, notes receivable and other receivables reflected on the Seller's balance sheet for the fiscal year ended December 31, 2002 included in the Financial Statements (the "Current Balance Sheet") are valid, genuine and fully collectible within 30 days in the aggregate amount thereof, subject to normal and customary trade discounts, less any reserves for doubtful accounts recorded on the Current Balance Sheet. All accounts, notes receivable and other receivables of the Business at the date of the Current Balance Sheet have been included in the Current Balance Sheet.

    **3.06. Absence of Certain Changes.** Since September 30, 2002, except as reflected in the Financial Statements or in Schedule 3.06, each of Seller and Swenke have conducted the Business in the ordinary course consistent with past practices, and there has not been any:

    (a)    Material Adverse Change or any event, occurrence, development or state of circumstances or facts which could reasonably be expected to result in a Material Adverse Change, or any condition, event or occurrence which, individually or in the aggregate, could reasonably be expected to prevent or materially delay Seller's or Swenke's ability to consummate the transactions contemplated by this Agreement or perform its obligations hereunder or under the Ancillary Agreements;

    (b)    payment or grant of any right relating to the Business by Seller to any Interested Person, or any charge by any Interested Person to Seller relating to the Business, or other transaction between Seller relating to the Business and any Interested Person, except in any such case for employee compensation payments in the ordinary course of business of Seller consistent with past practice;

    (c)    incurrence, assumption or guarantee by Seller or Swenke of any indebtedness for borrowed money with respect to the Business other than in the ordinary course of business and in amounts and on terms consistent with past practices not exceeding $5,000;

App  015

Asset Purchase Agreement – Page 15

(d)     creation or assumption by Seller or Swenke of any Lien on any Purchased Asset;

(e)     damage, destruction or other casualty loss (whether or not covered by insurance) affecting the Business or any Purchased Asset in an amount greater than $5,000;

(f)     transaction or commitment made, or any contract or agreement entered into, by Seller or Swenke relating to the Business or any Purchased Asset (including the acquisition or disposition of any assets) or any relinquishment by Seller or Swenke of any contract or other right, in either case, material to the Business, other than transactions and commitments in the ordinary course of business consistent with past practices and those contemplated by this Agreement;

(g)     change in any method of Tax or financial accounting or accounting practice or any making of a Tax election or change of an existing election by Seller with respect to the Business;

(h)     (i) grant of any severance or termination pay or any bonus to any employee of Seller, (ii) entering into of any employment, deferred compensation or other similar agreement (or any amendment to any such existing agreement) with any employee of Seller, (iii) change in benefits payable under existing severance or termination pay policies of Seller or employment agreements to which any employee of Seller is a party or (iv) change in compensation, bonus or other benefits payable to employees of Seller;

(i)     capital expenditure, or commitment for a capital expenditure, for additions or improvements to property, plant and equipment in an amount greater than $5,000;

(j)     action which, if it had been taken or occurred after the execution of this Agreement, would have required the consent of Buyer pursuant to this Agreement; or

(k)     agreement, undertaking or commitment to do any of the foregoing.

**3.07. Properties.** (a) Seller leases or subleases all real property used in the Business. Schedule 3.07(a) describes all real property leased or subleased by Seller (the "Real Property"), specifying the name of the lessor or sublessor, the lease term and basic annual rent.

(b)     Schedule 3.07(b) describes all personal property owned, leased or subleased by Seller, including but not limited to machinery, equipment, furniture, vehicles, spare and replacement parts, and other trade fixtures and fixed assets, and any Liens thereon, specifying in the case of leases or subleases, the name of the lessor or sublessor, the lease term and basic annual rent.

(c)     All leases of personal property are in good standing and are valid, binding and enforceable in accordance with their respective terms, and there does not exist under any such lease any material breach by Seller or any event known to Seller that with notice or lapse of time or both, would constitute a material default.

APP 016

Asset Purchase Agreement – Page 16

(d)    No Purchased Asset is subject to any Lien, except:

     (i)    Liens disclosed on the Current Balance Sheet; or

     (ii)    Liens that will be terminated immediately upon the Closing.

(e)    Swenke has no direct ownership interest in any of the Purchased Assets, and no other person, other than the Seller has any ownership interest in any of the Purchased Assets. To Seller's knowledge, there are no developments affecting any of the Purchased Assets pending or threatened that might be expected to materially detract from the value of such Purchased Assets, materially interfere with any present or intended use of any such Purchased Assets or materially adversely affect the marketability of such Purchased Assets.

**3.08. Sufficiency of Purchased Assets.** As of the date of this Agreement, the Purchased Assets constitute all of the assets or property used or held for use in the Business other than the Excluded Assets. Other than the Excluded Assets, the Purchased Assets are adequate to conduct the Business as currently conducted.

**3.09. Title to Purchased Assets.** Upon consummation of the transactions contemplated hereby, except as specifically set forth in Section 3.13(k) below with respect to HedgeDirect, Buyer will have acquired good and marketable title in and to, or a valid leasehold interest in, each of the Purchased Assets, free and clear of all Liens.

**3.10. No Undisclosed Liabilities.** Except as disclosed in the Financial Statements or set forth in Schedule 3.10, there are no liabilities of the Business of any kind whatsoever, whether accrued, contingent, absolute, determined, determinable or otherwise, and there is no existing condition, situation or set of circumstances which could reasonably be expected to result in such a liability.

**3.11. Litigation.** Except as disclosed in Schedule 3.11 of the Disclosure Schedule, there is no claim, action, suit, investigation or proceeding (or any basis therefor) pending against, to the Seller's Knowledge or to Swenke's Knowledge, threatened against or affecting, the Business or any Purchased Asset, or the transactions contemplated hereby before any court or arbitrator or any governmental body, agency, official or authority.

**3.12. Material Contracts.** (a) Except for the Contracts disclosed in Schedule 3.12, as of the date of this Agreement, with respect to the Business, Seller is not a party to or subject to any:

     (i)    lease for real or personal property;

     (ii)    contract for the purchase of materials, supplies, goods, services, equipment or other assets providing for annual payments by Seller of, or pursuant to which in the last year Seller paid, in the aggregate $5,000 or more;

APP 017

Asset Purchase Agreement – Page 17

(iii)    sales, distribution or other similar agreement providing for the sale by Seller of materials, supplies, goods, services, equipment or other assets that provide for annual payments to Seller of, or pursuant to which in the last year Seller received, in the aggregate $5,000 or more;

(iv)    partnership, joint venture or other similar contract arrangement or agreement;

(v)    contract relating to indebtedness for borrowed money or the deferred purchase price of property (whether incurred, assumed, guaranteed or secured by any asset), except contracts relating to indebtedness incurred in the ordinary course of business in an amount not exceeding $5,000;

(vi)    employment or consulting agreement;

(vii)    license, technology transfer, franchise or other agreement in respect of any Intellectual Property or other property owned or used by Seller;

(viii)    agency, dealer, sales representative or other similar agreement;

(ix)    contract or other document that limits the freedom of Seller to compete in any line of business or with any Person or in any area to own, operate, sell, transfer, pledge or otherwise dispose of or encumber any Purchased Asset and that would so limit the freedom of Buyer after the Effective Date;

(x)    contract or commitment with or for the benefit of any Interested Person; or

(xii)    other contract or commitment not made in the ordinary course of business that is material to the Business taken as a whole.

(b)    Each Contract disclosed in any Schedule to this Agreement or required to be disclosed pursuant to Section 3.12(a) is a valid and binding agreement of Seller and is in full force and effect, and Seller is not, and neither to Seller's Knowledge nor Swenke's Knowledge, any other party thereto is in default in any material respect under the terms of any such Contract, nor, to Seller's Knowledge or Swenke's Knowledge, has any event or circumstance occurred that, with notice or lapse of time or both, would constitute an event of default thereunder.

3.13.  **Technology and Intellectual Property.** (a)  Schedule 3.13(a) lists: (i) all patents and all registered trademarks, service marks, copyrights and mask works, and any applications and renewals for any of the foregoing owned by or on behalf of Seller, or otherwise used in connection with the Business; (ii) all hardware products and tools, Computer Programs and firmware products and tools and services and Technical Documentation that are currently sold, published, offered, or under development (including in the concept phase) by Seller, or otherwise used in connection with the Business; and (iii) all licenses (in and out), sublicenses and other

APP 018

Asset Purchase Agreement – Page 18

agreements (A) to which Seller is a party and pursuant to which Seller or any other person is authorized to use any of the Business Intellectual Property or exercise any other right with regard thereto or (B) which otherwise relate to the Business. The disclosures described in clause (iii) of the preceding sentence include the identities of the parties to the relevant agreements, a brief description of the nature and subject matter thereof, the term thereof and the applicable payment terms (or summary of any formula or procedure for determining such payment terms).

(b)     Each item of the Business Intellectual Property is either: (i) owned solely by Seller free and clear of any liens; or (ii) rightfully used and authorized for use by Seller and its successors pursuant to a valid and enforceable written license. All of the Business Intellectual Property that is used by Seller pursuant to a license or other grant of a right by a third party to use its proprietary information is separately identified as such under Schedule 3.13(b). Seller has all rights in the Business Intellectual Property necessary to carry out the Business's former, current and currently planned future activities, including without limitation (except as noted on Schedule 3.13(b)) rights to make, use, exclude others from using, reproduce, modify, adapt, create derivative works based on, translate, distribute (directly and indirectly), transmit, display and perform publicly, license, rent, lease, assign and sell the Business Intellectual Property in all geographic locations and fields of use, and to sublicense any or all such rights to third parties, including the right to grant further sublicenses.

(c)     Seller is not in violation of any license, sublicense or other agreement to which Seller is a party or otherwise bound relating to any of the Business Intellectual Property. Except as noted in Schedule 3.13(c), neither Seller nor any of its Affiliates is obligated to provide any consideration (whether financial or otherwise) to any third party, nor is any third party otherwise entitled to any consideration, with respect to any exercise of rights by Seller or Buyer, as successor to Seller, in Business Intellectual Property.

(d)     The use of the Business Intellectual Property by Seller as currently used and as currently proposed to be used does not infringe any other Person's copyright, trade secret rights, right of privacy, right in personal data, moral right or other intellectual property right. The use by Seller of the Business Intellectual Property as currently used and as currently proposed to be used does not infringe any other Person's, patent, trademark, service mark, trade name, firm name, logo, trade dress or mask work. No claims (i) challenging the validity, enforceability, effectiveness or ownership by Seller of any of the Business Intellectual Property or (ii) to the effect that the use, reproduction, modification, manufacture, distribution, licensing, sublicensing, sale, or any other exercise of rights in any of the Business Intellectual Property by Seller, infringes or will infringe on any intellectual property or other proprietary or personal right of any Person have been asserted against Seller or, to Seller's Knowledge or Swenke's Knowledge, are threatened by any Person nor does there exist any valid basis for such a claim. To Seller's knowledge, there are no legal or governmental proceedings, including interference, re-examination, reissue, opposition, nullity, or cancellation proceedings pending that relate to any of the Business Intellectual Property, other than review of pending patent applications, and neither Seller nor Swenke is aware of any information indicating that such proceedings are threatened or contemplated by any governmental entity or any other Person. All granted or issued patents and mask works, all registered trademarks and service marks, and all copyright registrations owned

App 019

Asset Purchase Agreement – Page 19

by Seller are valid, enforceable and subsisting. To Seller's Knowledge, there is no unauthorized use, infringement, or misappropriation of any of the Business Intellectual Property by any third party, employee or former employee.

(e)    Schedule 3.13(e) separately lists all parties who have created any portion of, or otherwise have any rights in or to, the Business Intellectual Property. Seller has secured from all parties (including former employees, present and former consultants) who have created any portion of, or otherwise have any rights in or to, the Business Intellectual Property valid and enforceable written assignments of any such work, invention, improvement or other rights to Seller and has provided true and complete copies of such assignments to Buyer.

(f)    The transactions contemplated under this Agreement shall not alter, impair or otherwise affect any rights of Seller in any of the Business Intellectual Property.

(g)    Each of Seller and Swenke has taken commercially reasonable measures to protect the proprietary nature of the Business Intellectual Property and to maintain in confidence all trade secrets and confidential information owned or used by Seller in the Business. Without limiting the foregoing, all necessary registration, maintenance and renewal fees in connection with each item of Business Intellectual Property that is the subject of an application, certificate, filing, registration or other document issued by, filed with, or recorded by, any state, federal, government or other public legal authority (including the HedgeDirect Patent Application) (collectively, the "Registered Intellectual Property") have been paid, and all necessary documents have been filed with the relevant patent, copyright, trademark or other authorities in the United States or foreign jurisdictions, as the case may be, for purposes of maintaining such Registered Intellectual Property. With respect to the HedgeDirect Patent Application, Seller, its attorneys and Swenke have disclosed each known material prior art reference to the U.S. Patent and Trademark Office in compliance with their duty under 37 C.F.R. Section 1.54.

(h)    The Technical Documentation for the Software includes the source code and system documentation for all of the Software, as well as any pertinent commentary or explanation that may be reasonably necessary to render such materials understandable and usable by a trained computer programmer.

(i)    Except as set forth on Schedule 3.13(i), (i) the Software conforms in all material respects to the applicable Technical Documentation and all other documentation created by Seller with respect to the Software; and (ii) no portion of the Software contains any software routines or hardware components designed to permit unauthorized access; to disable or erase software, hardware or data; or to perform any other such actions.

(j)    Except as set forth on Schedule 3.13(j), the Business Intellectual Property does not include any Publicly Available Software and neither Seller now Swenke has used Publicly Available Software in whole or in part in the development of any part of the Business Intellectual Property in a manner that may subject the Business Intellectual Property in whole or in part, to all or part of the license obligations of any Publicly Available Software. "Publicly Available Software" means each of (i) any software that contains, or is derived in any manner (in whole or

APP  020



Asset Purchase Agreement -- Page 20

in part) from, any software that is distributed as free software, open source software (e.g. Linux), or similar licensing and distribution models; and (ii) any software that requires as a condition of use, modification, and/or distribution of such software that such software or other software incorporated into, derived from, or distributed with such software (a) be disclosed or distributed in source code form; (b) be licensed for the purpose of making derivative works; or (c) be redistributable at no or minimal charge. Publicly Available Software includes, without limitation, software licensed or distributed under any of the following licenses or distribution models similar to any of the following: (a) GNU General Public License (GPL) or Lesser/Library GPL (LGPL), (b) the Artistic License (e.g. PERL), (c) the Mozilla Public License, (d) the Netscape Public License, (e) the Sun Community Source License (SCSL), the Sun Industry Source License (SISL), and the Apache Server License.

(k)     Notwithstanding anything to the contrary contained herein, the representations and warranties of Seller and Swenke hereunder shall be limited as follows: (a) representations and warranties in this Section 3.17 to the effect that (i) HedgeDirect does not, and shall not, infringe any other Person's Intellectual Property or (ii) that Seller has all rights in HedgeDirect are made only "to Seller's knowledge" or "to Swenke's knowledge," as the case may be and (b) representations and warranties to the effect that Buyer shall obtain good and marketable title to HedgeDirect are made only "to Seller's knowledge." For avoidance of doubt, the parties acknowledge and agree that this Section 3.13(k) does not, and shall not, affect the representations and warranties in this Agreement to the extent such representations and warranties relate to any of the Purchased Assets other than HedgeDirect.

3.14. **Insurance Coverage.** Seller has no insurance policy or fidelity bond covering the Purchased Assets, the business and operations of the Business and its employees. Seller has not had any claim under any former insurance policy, and has never had the term of any former policy questioned, denied or disputed by the underwriters of such policies or bonds. Seller has never been denied insurance coverage by any underwriter.

3.15. **Compliance with Laws.** (a) Seller is not in violation of and has not violated, any applicable provisions of any laws, statutes, ordinances or regulations and to Seller's Knowledge or Swenke's Knowledge is not under investigation with respect to and has not been threatened to be charged with or given notice of any violation of, any law, rule, ordinance or regulation applicable to the Purchased Assets or the conduct of the Business.

(b)     Schedule 3.15(b) correctly describes each governmental license, permit, concession or franchise (a "Permit") material to the Business, together with the name of the governmental agency or entity issuing such Permit. Except as set forth on Schedule 3.15(b), such Permits are valid and in full force and effect and, assuming the related Required Consents have been obtained prior to the Closing Date, are transferable by Seller and will not be terminated or impaired or become terminable as a result of the transactions contemplated hereby. Upon consummation of such transactions, Buyer will, assuming the related Required Consents have been obtained prior to the Closing Date, have all of the right, title and interest in all the Permits.

App  02-1

Asset Purchase Agreement – Page 21

(c)     Neither Seller nor Swenke is in default under, and no condition exists that with notice or lapse of time or both would constitute a default under, any judgment, order or injunction of any court, arbitrator or governmental body, agency, official or authority which defaults or potential defaults individually or in the aggregate would reasonably be expected to have a Material Adverse Effect.

3.16.  **Employee Matters.**  (a) Except for Swenke, Seller has never, at any time, (i) employed any person; (ii) paid any person wages, salaries or any type of compensation in exchange for employment; or (iii) entered into any oral or written contract or agreement for employment with any person.  Schedule 3.16 sets forth a true and complete list of (i) the names of each person who has ever provided services to Seller, (ii) the dates on which each such person began providing services to Seller, and (iii) any compensation provided by Seller to such person for the provision for those services. None of such persons identified in Schedule 3.16, and no independent contractors of Seller, has indicated to Seller that he or she intends to cease providing services to Seller. Any persons engaged by Seller as independent contractors have been properly classified as such and have been so engaged in accordance with all applicable federal, state and local laws, ordinances, rules and regulations and are terminable at will by Seller.

(b)     Neither Seller nor any member, manager, officer or employee of or independent contractor to Seller, is a party to any pending or threatened (in writing) labor dispute (including without limitation any union representation matter or proceeding) or employment dispute involving Seller or its Affiliates. There are no claims or charges pending or threatened in writing to be brought by any former or current employee or any other Person against Seller arising out of Seller's status as employer or contractor or against any individual arising out of his or her capacity as a member, manager, officer or employee of Seller, before any arbitrator, court, governmental body or administrative agency, whether in the form of claims for wages or other compensation, severance benefits, vacation pay, worker's compensation benefits, or pension or other benefits, or employment discrimination or retaliation, harassment, unfair labor practices, grievances, wrongful discharge or other torts, breach of contract (express or implied) or otherwise.

(c)     Seller has complied in all material respects with all applicable federal, state, and local laws, ordinances, rules, and regulations and requirements relating to the employment of labor, including, but not limited to, the provisions thereof relating to wages, hours, leave, collective bargaining and all other labor union related matters, non-discrimination and non-retaliation and ensuring equality of opportunity for employment and advancement of minorities, women, individuals with disabilities and veterans.

(d)     All personnel, including employees, agents, consultants, and contractors, who have contributed to or participated in the conception and development of any of the Software either (i) have been party to a "work-for-hire" arrangement or agreement with the Seller, in accordance with applicable federal and state law, that has accorded the Seller full, effective, exclusive and original ownership of all tangible and intangible property thereby arising, or (ii) have executed appropriate instruments of assignment in favor of the Seller as assignee that

APP 022

Asset Purchase Agreement – Page 22

have conveyed to the Seller full, effective and exclusive ownership of all tangible and intangible property thereby arising.

(e)    Seller does not make and has not ever made any contributions to any employee pension benefit plans or any other plans that are subject to the Employee Retirement Income Security Act of 1974 ("ERISA").

**3.17. Customers and Suppliers.** Except as otherwise disclosed on Schedule 3.06, Seller has not received notice from and is not otherwise aware that (a) any customer (or group of customers under common ownership or control) has stopped or intends to stop purchasing the products or services of the Business or (b) any supplier (or group of suppliers under common ownership or control) that accounted for a material percentage of the aggregate supplies purchased by the Business during the past 18 months has stopped or intends to stop supplying products or services to the Business.

**3.18. Transactions with Affiliates; Intercompany Arrangements.** Except as set forth on Schedule 3.18, there are no agreements, loans, leases, royalty agreements or other continuing transactions between Seller and (i) any officer, manager or member of Seller or any of their Affiliates or (ii) any member or any officer, manager or member of Seller or any of their Affiliates ("Interested Person"). To the Knowledge of Seller and Swenke, no Interested Person (x) has any material direct or indirect interest in any entity that does business with Seller or (y) has any direct or indirect interest in any property, asset or right that is used by Seller in the conduct of the Business. Except as set forth on Schedule 3.18, no Interested Person has any contractual relationship (including that of creditor or debtor) with Seller other than such relationships as result solely from being an officer, manager or member of Seller.

**3.19. Environmental Matters.** (a) Seller has complied with all federal, state and local laws which are intended to protect the environment and/or human health or safety (collectively, "Environmental Laws"). Seller has not released, handled, generated, used, stored, transported or disposed of any material, substance or waste which is regulated by Environmental Laws ("Hazardous Materials"), except for the use of reasonable amounts of ordinary office and/or office-cleaning supplies in compliance with Environmental Laws. Neither Seller, nor Swenke is aware of any environmental investigation, study, test or analysis, the purpose of which was to discovery, identify, or otherwise characterize the condition of the soil, groundwater, air or the presence of Hazardous Materials at any location at which the Business has been conducted. Seller has no Environmental Liabilities.

(b) "Environmental Liabilities" are any claims, demands, or liabilities under Environmental Law which (i) arise out of or in any way relate to Seller's operations or activities, or any real property at any time owned, operated or leased by Seller, whether contingent or fixed, actual or potential, and (ii) arise from or relate to actions occurring (including any failure to act) or conditions existing on or before the Closing Date.

**3.20. Finders' Fees** Except for PetroGrowth Advisors, whose fees will be paid by Seller, there is no investment banker, broker, finder or other intermediary that has been retained

APP 023

Asset Purchase Agreement – Page 23

by or is authorized to act on behalf of Seller who might be entitled to any fee or commission from Buyer, Seller or any of their respective Affiliates upon consummation of the transactions contemplated by this Agreement.

      3.21    **Securities Law Matters**. Seller understands that the Securities are characterized as "restricted securities" under the federal securities laws and that under such laws and applicable regulations, such securities may be transferred without registration only in limited circumstances. Seller also understands that the certificates evidencing the Share Consideration shall bear legends evidencing the restrictions set forth in this Agreement and any other legends required under applicable securities laws, including a customary Securities Act legend. Seller is acquiring the Securities for its own account and not with a view to distribution within the meaning of Section 2(11) of the Securities Act. Seller is an "accredited investor" as such term is defined in the Securities Act. Seller confirms that Buyer has made available to Seller and its representatives the opportunity to ask questions of the officers of Buyer and to acquire such additional information about the business and financial condition of Buyer as Seller has requested and all such information has been received.

      **3.22. Other Information**. None of the documents or information delivered to Buyer in connection with the transactions contemplated by this Agreement, including, without limitation, the Executive Summary dated August 7, 2002 contains any untrue statement of a material fact or omits to state a material fact necessary in order to make the statements contained therein not misleading. The financial projections relating to Seller delivered to Buyer have been prepared in good faith based on assumptions that management of Seller believe are reasonable, and Seller is not aware of any fact or information that would lead it to believe that such projections are incorrect or misleading in any material respect.

### ARTICLE IV
### REPRESENTATIONS AND WARRANTIES OF BUYER

      Buyer hereby represents and warrants to Seller that:

      **4.01. Organization and Existence**. Buyer is a corporation duly incorporated, validly existing and in good standing under the laws of the State of Delaware and has all corporate powers and all material governmental licenses, authorizations, consents and approvals required to carry on its business as now conducted. Buyer is duly qualified to do business as a foreign corporation and is in good standing in each jurisdiction where the character of the property owned or leased by it or the nature of its activities makes such qualification necessary, except for those jurisdictions where the failure to be so qualified would not, individually or in the aggregate, have a material adverse effect on the business, assets, financial condition or results of operations of Buyer. Buyer has heretofore delivered to Seller a true and complete copy of the certificate of incorporation and bylaws of Buyer as currently in effect.

      **4.02. Corporate Authorization**. The execution, delivery and performance by Buyer of this Agreement, each of the Ancillary Agreements and the consummation by Buyer of the transactions contemplated hereby and thereby are within the corporate powers of Buyer and have

APP    034

Asset Purchase Agreement – Page 24

been duly authorized by all necessary corporate action on the part of Buyer. This Agreement and each of the Ancillary Agreements to which Seller is a party have been duly executed and delivered by Buyer and constitute valid and binding agreements of Buyer enforceable in accordance with its terms, except to the extent that such enforcement is limited by bankruptcy, insolvency or other laws affecting the rights of creditors generally. The issuance, sale and delivery of the Share Consideration in accordance with this Agreement have been duly authorized by all necessary corporate action on the part of Buyer.

4.03. **Governmental Authorization**. The execution, delivery and performance by Buyer of this Agreement and each of the Ancillary Agreements require no action by or in respect of, or filing with, any governmental body, agency, official or authority.

4.04. **Non-Contravention**. The execution, delivery and performance by Buyer of this Agreement and each of the Ancillary Agreements and the consummation by Buyer of the transactions contemplated hereby and thereby (including the issuance, sale and delivery of the Share Consideration to Seller) do not and will not (a) contravene or conflict with the corporate charter or bylaws of Buyer or (b) contravene or conflict with any provision of any law, regulation, judgment, injunction, order or decree binding upon or applicable to Buyer. The issuance of the Share Consideration is not subject to preemptive rights or other preferential rights in any present or future stockholders of Buyer.

4.05. **Financial Statements**. (a) Attached as Schedule 4.05 are true and complete copies of (i) the unaudited balance sheet, income statement and statement of cash flows of Buyer as of and for the period ended September 30, 2002 and (ii) the audited balance sheet, income statement and statement of cash flows of Buyer as of and for the period ended December 31, 2001 (collectively, the "Financial Statements").

(b)     The Financial Statements fairly present in all material respects the financial condition, operating results and cash flows of Buyer as of the dates and during the periods indicated therein in accordance with GAAP during the periods involved, except for the omission of footnote disclosures and normally recurring year-end audit adjustments, all of which adjustments are immaterial in amount and significance

4.06. **Litigation**. There is no action, suit, investigation or proceeding pending against, or to the knowledge of Buyer threatened against or affecting, Buyer before any court or arbitrator or any governmental body, agency or official which in any manner challenges or seeks to prevent, enjoin, alter or materially delay the transactions contemplated hereby.

App 035

Asset Purchase Agreement – Page 25

## ARTICLE V
## ADDITIONAL AGREEMENTS

**5.01. Access to Information.** For a period of five (5) years after the Closing Date, Buyer and its representatives shall have reasonable access to any books and records related to the Business in the possession of Seller as of the Closing to the extent that such access may reasonably be required by Buyer in connection with matters relating to or affected by the Purchased Assets or Assumed Liabilities after the Closing Date; provided, however, that Buyer shall not have access to any of Seller's privileged correspondence or documents if, and solely to the extent that, such correspondence and/or documents (i) relate to a dispute under this Agreement or any Ancillary Agreement or (ii) relate to the enforcement by Seller of this Agreement or any Ancillary Agreement. Such access shall be afforded upon receipt of reasonable advance notice and during normal business hours. If Seller desires to dispose of any of such books and records prior to the expiration of such five-year period, Seller shall, prior to such disposition, give Buyer a reasonable opportunity, at Buyer's expense, to segregate and remove such books and records as Buyer may select.

**5.02. Notices of Certain Events; Continuing Disclosure.** (a) Each of Buyer, Seller and Swenke shall promptly notify the other parties hereto of (i) any notice or other communication from any Person alleging that the consent of such Person is or may be required in connection with the transactions contemplated by this Agreement; (ii) any notice or other communication from any governmental or regulatory agency or authority in connection with the transactions contemplated by this Agreement; and (iii) any failure of such party to comply with or satisfy in any material respect any covenant, condition or agreement to be complied with or satisfied by it or him hereunder.

(b) Each of Buyer, Seller and Swenke shall have the continuing obligation until the fifth anniversary of this Agreement to promptly advise the other party with respect to any matter hereafter arising or discovered that, if existing or known at the date of this Agreement, would have been required to be set forth or described in a Schedule to this Agreement, or that constitutes a breach or prospective breach of this Agreement by such party.

(c) No notice pursuant to this Section shall affect any representation or warranty given by Buyer, Seller or Swenke hereunder or any of the parties' rights under this Agreement, including without limitation under Article VIII.

**5.03. Confidentiality.** Each of the parties hereto hereby agrees that the information obtained in any investigation under this Agreement or with respect to the transactions contemplated hereby, or pursuant to the negotiation and execution of this Agreement or the effectuation of the transaction contemplated hereby, shall be governed by the terms of the Confidentiality Agreement dated July 30, 2002 (the "NDA") between Seller and Buyer as if Swenke were also a party thereto; provided, however that each party may use any such information (and may disclose any such information to its attorneys and advisors) to the extent necessary to enforce the terms and conditions of this Agreement or any Ancillary Agreement or to defend any action to do so.

App 026

Asset Purchase Agreement – Page 26

**5.04. Trademarks; Tradenames.** As soon as practicable after the Closing Date, Seller shall eliminate the use of all of the trademarks, tradenames, service marks and service names used in the Business, in any of their forms or spellings, on all advertising, stationery, business cards, checks, purchase orders and acknowledgments, customer agreements and other contracts and business documents. On or prior to February 1, 2003, Seller shall change the company name of Seller so as to bear no resemblance to the current name of Seller.

**5.05. Further Assurances.** (a) Seller and Swenke agree to execute and deliver such other documents, certificates, agreements and other writings and to take such other actions as may be necessary or desirable in order to vest in Buyer good and marketable title to the Purchased Assets.

(b)    Seller hereby constitutes and appoints, effective as of the Closing Date, Buyer and its successors and assigns as the true and lawful attorney of Seller with full power of substitution in the name of Buyer or in the name of Seller, but for the benefit of Buyer (i) to collect for the account of Buyer any items of Purchased Assets and (ii) to institute and prosecute all proceedings which Buyer may in its sole discretion deem proper in order to assert or enforce any right, title or interest in, to or under the Purchased Assets, and to defend or compromise any and all actions, suits or proceedings in respect of the Purchased Assets. Buyer shall be entitled to retain for its account any amounts collected pursuant to the foregoing powers, including any amounts payable as interest in respect thereof.

**5.06. Public Announcements.** Each of Seller and Swenke agrees to consult with Buyer before issuing any press release or making any public statement with respect to this Agreement or the transactions contemplated hereby and will not issue any such press release or make any such public statement prior to such consultation. Seller and Swenke agree that Buyer may issue press releases and make public statements with respect to this Agreement or the transactions contemplated hereby without consulting with either Seller or Swenke.

**5.07    Restrictions on Distributions.** Prior to the distribution of Securities to a member of Seller, such member shall have entered into Stockholder Agreement and Release in the form attached hereto as Exhibit B (each a "Stockholder Agreement"). Seller shall not distribute the Securities unless and until: (a) the Share Distribution Date; and (b) Seller shall have notified Buyer of the proposed distribution and shall have furnished Buyer with (i) a detailed statement of the circumstances surrounding the disposition and (ii) if requested by Buyer (at Buyer's expense) an opinion of counsel, reasonably satisfactory to Buyer, that such disposition will not require registration of the Securities under the Securities Act, or there is in effect a registration statement under the Securities Act covering such proposed disposition and such disposition is made in accordance with such registration statement. In addition to the foregoing, Seller shall not distribute any Securities to a member of Seller unless and until such member has entered into a Stockholder Agreement with Buyer.

**5.08    Transfer Restrictions; Standoff Agreement.** Except as expressly permitted by Section 5.08, the Seller shall not sell, assign, transfer, pledge, hypothecate, mortgage or dispose,

App 027

Asset Purchase Agreement – Page 27

by gift or otherwise, or in any way encumber, all or any part of the Securities until the Earn-Out Expiration Date. In addition, the Seller agrees in connection with the Buyer's initial public offering of equity securities, upon request of the Buyer or the underwriters managing any underwritten offering of the Buyer's securities, not to sell, make any short sale of, loan, grant any option for the purchase of, or otherwise dispose of any Securities (other than those included in the registration) without the prior written consent of the Buyer or such underwriters, as the case may be, for such period of time (not to exceed one hundred eighty (180) days) from the closing date of such offering as may be requested by the underwriters; provided, however that the executive officers and directors of the Buyer who own stock of Buyer also agree to such restrictions.

   5.09   **Calculation of Cash Receipts; Inspection.**  Until the Earn-Out Expiration Date, Buyer shall calculate all Cash Receipts on a quarterly basis and shall report its calculation to Seller within forty-five (45) days after the end of each quarterly period. Buyer's report of its calculation of Cash Receipts shall be binding and conclusive on the parties, unless Seller objects to such report within thirty (30) days after the receipt thereof by Seller. Any such objection that is timely made by Seller shall survive until (i) such objection is finally resolved by the parties or (ii) for up to an additional 270 days, in the event that Seller exercises it audit right as contemplated by the next sentence of this Section 5.09. Until the seventh anniversary of the Effective Date, Seller shall have the right, on twenty (20) business days prior written notice, at all reasonable times during normal business hours, and Buyer shall make available to Seller and its authorized representatives all books, records and other documentation necessary to determine and verify the accuracy of the Buyer's report and calculation of payments owed under Section 2.07(b), provided that Seller may not exercise its rights under this Section 5.09 more than once in any twelve-month period.

   5.10   **Stock Certificate(s).**  Promptly after Seller changes its company name as contemplated by Section 5.04, Buyer shall issue and deliver to Seller stock certificate(s) representing the Share Consideration (the "Securities").

### ARTICLE VI
### NONCOMPETITION

   6.01   **Certain Acknowledgements.**  Each of Swenke and Seller expressly acknowledges that:

   (a)   "Restricted Business" means any business within the United States that is in competition with the products or services created, developed or under development, manufactured or planning to be manufactured, marketed or planning to be marketed, distributed or planning to be distributed, sold or planning to be sold, by Seller at any time prior to the Closing Date or by the Buyer at any time prior to or after the Closing Date.

   (b)   the Restricted Business is highly competitive, is marketed throughout the United States and in many other locations worldwide, and may require long sales "lead times";

 APP 028

Asset Purchase Agreement -- Page 28

(c)     Buyer expends substantial time and money, on an ongoing basis, to train its employees, maintain and expand its customer base, and improve and develop its Computer Programs, technology, databases, products and services; and

(d)     the covenants of this Article VI (the "Covenants") are a material part of the agreement among the parties hereto and are an integral part of the obligations of Seller hereunder; the Covenants are supported by good and adequate consideration; and the Covenants are reasonable and necessary to protect the legitimate business interests of the Buyer.

6.02    **Non-Competition.**    Seller agrees that for a period of five (5) full years from the Closing Date, it shall not:

(i)     engage, either directly or indirectly, as a principal or for its own account, or solely or jointly with others, or as a stockholder in any corporation or joint stock association, in a Restricted Business; provided that nothing herein shall prohibit the purchase or ownership of up to 1% of the outstanding stock of a publicly-traded company that engages in a Restricted Business; or

(ii)     employ or solicit, or receive or accept the performance of services by, Swenke; or

(iii)     advise any customer or supplier of the Business with respect to its business relationship with Buyer or the Business.

6.03    **Scope of Covenants.** If any provision contained in this Article VI shall for any reason be held invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provisions of this Article VI, but this Article VI shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein. It is the intention of the parties that if any of the restrictions or covenants contained herein are held to cover a geographic area or to be for a length of time which is not permitted by applicable law, or in any way construed to be too broad or to any extent invalid, such provision shall not be construed to be null, void and of no effect, but to the extent such provision would be valid or enforceable under applicable law, a court of competent jurisdiction shall construe and interpret or reform this Article VI to provide for a covenant having the maximum enforceable geographic area, time period and other provisions (not greater than those contained herein) as shall be valid and enforceable under such applicable law. Seller acknowledges that Buyer would be irreparably harmed by any breach of this Article VI and that there would be no adequate remedy at law or in damages to compensate Buyer for any such breach. Seller agrees that Buyer shall be entitled to injunctive relief requiring specific performance by Seller of this Article VI, and Seller consents to the entry thereof.

App 029

Asset Purchase Agreement – Page 29

## ARTICLE VII
## TAX MATTERS

**7.01. Tax Definitions.** The following terms, as used herein, have the following meanings:

"Pre-Closing Tax Period" means any Tax period (or portion thereof) ending on or before the Closing Date.

"Tax" means any federal, state, local or foreign net income, alternative or add-on minimum, gross income, gross receipts, sales, use, value-added, ad valorem, franchise, capital, paid-up capital, profits, lease, service, transfer, greenmail, license, withholding, estimated, payroll, employment, excise, severance, stamp, occupation, premium, property, environmental or windfall profit tax, customs duty or other tax, governmental fee or other like assessment or charge of any kind whatsoever (including liability for Taxes imposed on another Person, whether incurred or borne as a transferee or successor or by contract or otherwise), together with any interest or any penalty, addition to tax or additional amount imposed by any governmental authority (domestic or foreign) responsible for the imposition of any such tax.

"Tax Return" means any return, declaration, report, claim for refund, or information return or statement relating to Taxes, including any schedule or attachment thereto, and including any amendment thereof.

**7.02. Tax Matters.** Seller hereby represents and warrants to Buyer that:

(a)    Seller has timely filed all Tax Returns required to be filed and has timely paid all Taxes owed (whether or not shown or required to be shown on such Tax Returns). All such Tax Returns were complete and correct in all respects. No portion of any Tax Return has been the subject of any audit, action, suit, proceeding, claim or examination by any governmental authority, and no such audit, action, suit, proceeding, claim, deficiency or assessment is pending or, to the knowledge of Seller, threatened. Seller is not currently the beneficiary of any extension of time within which to file any Tax Return, and Seller has not waived any statute of limitation with respect to any Tax or agreed to any extension of time with respect to a Tax assessment or deficiency. No claim has ever been made by a Tax authority in a jurisdiction where Seller does not file Tax Returns that it is or may be subject to taxation by that jurisdiction. Seller does not have any liability for the Taxes of any Person (other than Seller) under Treasury Regulation Section 1.1502-6 (or any corresponding provision of state, local or foreign Tax law), or as a transferee or successor, or by contract, or otherwise. No portion of the Purchase Price is subject to any Tax withholding provision of federal, state, local or foreign law.

(b)    Seller has withheld and paid all Taxes required to have been withheld and paid in connection with amounts paid or owing to any employee, member, independent contractor, creditor, or other third party.

App 030

Asset Purchase Agreement – Page 30

(c)     No state of facts exists or has existed that would constitute grounds for the assessment against Buyer, whether by reason of transferee liability or otherwise, of any liability for any Tax of anyone other than Buyer. The Purchased Assets do not include any stock or other ownership interests in any foreign or domestic corporations, partnerships, joint ventures, limited liability companies, business trusts, or other entities.

(d)     Seller has timely paid all Taxes for the Pre-Closing Tax Period which will have been required to be paid on or prior to the Closing Date, the non-payment of which would result in a Lien on any Purchased Asset, would otherwise adversely affect the Business or would result in Buyer becoming liable or responsible therefor.

(e)     Seller has established, in accordance with GAAP, adequate reserves for the payment of, and will timely pay, all Taxes which arise from or with respect to the Purchased Assets or the operation of the Business and are incurred in or attributable to the Pre-Closing Tax Period, the non-payment of which would result in a Lien on any Purchased Asset, would otherwise adversely affect the Business or would result in Buyer becoming liable therefor.

(f)     Schedule 7.02(f) of the Disclosure Schedule contains a list of all jurisdictions (whether foreign or domestic) to which any Tax is properly payable by Seller.

**7.03.  Tax Cooperation and Other Matters.** (a) Buyer, Swenke and Seller agree to furnish or cause to be furnished to each other, upon request, as promptly as practicable, such information and assistance relating to the Purchased Assets and the Business as is reasonably necessary for the filing of all Tax Returns and making of any election related to Taxes, the preparation for any audit by any governmental authority, and the prosecution or defense of any claim, suit or proceeding relating to any Tax Return.

(b)     Any transfer, documentary, sales, use, stamp, or other Taxes assessed upon or with respect to the transfer of the Purchased Assets to Buyer and any recording or filing fees with respect thereto shall be borne and paid by Seller, and Seller shall promptly reimburse Buyer for any such amounts paid by Buyer.

(c)     Seller has provided Buyer with a clearance certificate or similar document(s) which may be required by any governmental authority in order to relieve Buyer of (i) any obligation to withhold any portion of the Purchase Price and (ii) any liability for Taxes (determined without regard to the provisions of this Agreement assigning responsibility therefor) for which relief is available by reason of the filing of an appropriate certificate.

(d)     No new elections with respect to Taxes, or any changes in current elections with respect to Taxes, affecting the Business or the Purchased Assets shall be made after the date of this Agreement without the prior written consent of Buyer, which consent shall not be unreasonably withheld.

(e)     Buyer and Seller agree to file all Tax Returns consistent with the Allocation Statement and shall not make any inconsistent written statements or take any inconsistent position on any Tax Return, in any refund claim, during the course of any U.S. Internal Revenue

Asset Purchase Agreement – Page 31

Service ("IRS") audit or other Tax audit, for any financial or regulatory purpose, in any litigation or investigation or otherwise. Each party shall notify the other parties if it receives notice that the IRS or other governmental agency proposes any allocation different than that set forth in the Allocation Statement.

## ARTICLE VIII
## SURVIVAL; INDEMNIFICATION

**8.01. Survival.** The covenants, agreements, representations and warranties of the parties hereto contained in this Agreement or the Ancillary Agreements or in any certificate or other writing delivered pursuant hereto or thereto or in connection herewith or therewith shall survive the Closing until the second anniversary of the Closing Date, or

(i)     in the case of Section 3.19 (Environmental Matters), until the fifth anniversary of the Closing Date;

(ii)    in the case of the, covenants, agreements, representations and warranties contained in Section 3.16 (Employee Matters) and Article VII (Tax Matters), until 90 days after the expiration of the statutory period of limitations applicable to third party claims pertaining to such matters, (giving effect to any waiver, mitigation or extension thereof); and

(iii)   in the case of the covenants, agreements and other obligations contained in Article V, Article VI, this Article VIII and Article IX, indefinitely or for such shorter period as is expressly set forth herein or therein.

Notwithstanding the preceding sentence, any covenant, agreement, representation or warranty in respect of which indemnity may be sought under Section 8.02 shall survive the time at which it would otherwise terminate pursuant to the preceding sentence if notice of specific facts alleging the inaccuracy or breach thereof giving rise to such right to indemnity shall have been given to the party against whom such indemnity may be sought prior to such time. In such event, such covenant, agreement, representation or warranty shall survive until such time as each and every claim that is based directly or indirectly upon, or that relates directly or indirectly to, any breach or alleged breach or inaccuracy or alleged inaccuracy thereof has been fully and finally resolved, either by means of a written settlement agreement executed by the parties or by means of a final, non-appealable judgment issued by a court of competent jurisdiction.

**8.02. Indemnification.** (a) Seller and Swenke, hereby agree jointly and severally, to indemnify Buyer against and agree to hold it harmless from any and all damage, loss, liability and expense (including without limitation reasonable expenses of investigation and reasonable attorneys' fees and expenses in connection with any action, suit or proceeding) ("Damage") incurred or suffered by Buyer or any of its Affiliates arising out of:

(i) (A) any misrepresentation or breach of warranty made or to be performed by Seller or Swenke pursuant to the provisions of this Agreement, the Ancillary Agreements

Aff 032

Asset Purchase Agreement – Page 32

and any certificate or other writing delivered pursuant hereto or thereto and (B) any claim, action, suit or proceeding by any third party alleging facts that if proven true would constitute a misrepresentation or breach of warranty by Seller or Swenke (a "Business Third Party Claim");

(ii) any breach of any covenant or agreement made by Seller or Swenke pursuant to this Agreement or the Ancillary Agreements; and

(iii) the failure of Seller and/or Swenke to assume full responsibility for any Excluded Liability or any obligation or liability of the Business relating to the Excluded Assets.

(b)     Buyer hereby indemnifies Seller and Swenke against and agrees to hold each of them harmless from any and all Damages incurred or suffered by Seller or Swenke arising out of:

(i) (A) any misrepresentation or breach of warranty made or to be performed by Buyer pursuant to the provisions of this Agreement and (B) any claim, action, suit or proceeding by any third party alleging facts that if proven true would constitute a misrepresentation or breach of warranty by Buyer (a "Buyer Third Party Claim", and, together with a Business Third Party Claim, a "Third Party Claim");

(ii) any breach of any covenant or agreement made by Buyer pursuant to this Agreement or the Ancillary Agreements; and

(iii) any failure of Buyer to assume full responsibility for an Assumed Liability.

8.03.  **Limitation of Indemnification.**  Notwithstanding the provisions of Section 8.02, except as otherwise set forth in Section 8.03(d) below, the following limitations shall apply:

(a)     Threshold.  Neither Seller and Swenke, on the one hand, nor Buyer, on the other, shall be liable for Damages under Section 8.02(a) or 8.02(b), as applicable, unless the aggregate amount of Damages (determined without regard to any materiality qualification contained in any representations, warranty or covenant giving rise to a claim for indemnity hereunder) exceeds $25,000.  At such time as the Damages payable by Seller and Swenke, on the one hand, or Buyer, on the other, exceed $25,000 in the aggregate, the indemnified party shall be entitled to the full amount of such Damages (and not merely the portion of such Damages exceeding $25,000).

(b)     Ceiling.  The maximum liability of Seller and Swenke, on the one hand, and Buyer, on the other, for Damages under Section 8.02(a) or 8.02(b), as applicable, shall be the Purchase Price.

(c)     Additional Limitations Applicable to Swenke.  In addition to the limitations set forth above, Swenke's indemnification obligations under Section 8.02 shall be limited to, and satisfied exclusively from, one or more (including any combination of) the following: (i) the

APP 033

Asset Purchase Agreement – Page 33

Share Consideration; and/or (ii) until the first anniversary of the Closing Date, an aggregate maximum of $210,000 in cash.

(d)    Exceptions to Limitations. None of the limitations set forth in Section 8.03(a) through 8.03(c) shall apply in the case of an indemnification matter involving (i) intentional misrepresentation, fraud or a criminal matter; (ii) a breach of the representations and warranties contained in Section 3.13 (Technology and Intellectual Property); (iii) Taxes; or (iv) covenants, agreements or other obligations to be performed after the Closing (including without limitation the covenants, agreements and other obligations contained in Article V and Article VI). In addition, unless and until Buyer shall have received binding Stockholder Agreements in the form attached to this Agreement as Exhibit B from each and every Person who held, beneficially or of record, membership interests of Seller on the Closing Date, none of the limitations set forth in Section 8.03(a) through 8.03(c) shall apply to Seller or Swenke in the case of an indemnification matter involving (x) a breach of the representations contained in Section 3.02 or (y) any other claim contemplated to be released pursuant to Section 12 of such Stockholder Agreements.

**8.04. Procedures.** Any party seeking indemnification under Section 8.02 (the "Indemnified Party") shall give prompt notice to the party against whom indemnity is sought (the "Indemnifying Party") of the assertion of any Third Party Claim; provided that no delay on the part of the Indemnified Party in notifying the Indemnifying Party shall relieve the Indemnifying Party of any liability or obligation hereunder, except to the extent that the Indemnifying Party has been prejudiced thereby. The Indemnifying Party may, and at the request of the Indemnified Party shall, participate in and control the defense of any Third Party Claim at its own expense. If the Indemnifying Party assumes control of the defense of any Third Party Claim, the Indemnifying Party shall not be liable under Section 8.02 for any settlement effected by the Indemnified Party without its consent of any Third Party Claim. The party controlling the defense of any third party suit, action or proceeding shall keep the other party advised of the status of such action, suit or proceeding and the defense thereof and shall consider in good faith recommendations made by the other party with respect thereto.

**8.05. Investigations.** No investigation by Buyer pursuant to this Section shall affect any representation or warranty given by Seller or Swenke hereunder or any of Buyer's rights under this Agreement, including without limitation under this Article VIII. Likewise, no investigation by Seller pursuant to this Section shall affect any representation or warranty given by Buyer hereunder or any of Seller's rights under this Agreement, including without limitation under this Article VIII.

**8.06. Remedies.** In addition to the rights and remedies set forth in this Agreement, the parties shall each have and retain all other rights and remedies existing in their favor at law or equity, including without limitation, any actions for specific performance and/or injunctive or other equitable relief (including the remedy of rescission) to enforce or prevent any violation of this Agreement. Without limiting the generality of the foregoing, Seller hereby agrees that in the event Seller fails to convey the Purchased Assets to Buyer in accordance with the provisions of this Agreement, Buyer's remedy at law will be inadequate. In such event, Buyer shall have the

Asset Purchase Agreement – Page 34

right, in addition to all other rights the remedies it may have, to specific performance of the
obligations of Seller to convey the Purchased Assets.

## ARTICLE IX
## MISCELLANEOUS

9.01. Notices. All notices, requests, demands or other communications that are required or
may be given pursuant to the terms of this Agreement shall be in writing and shall be deemed to
have been duly given: (i) on the date of delivery, if personally delivered by hand, (ii) upon the third
day after such notice is deposited in the United States mail, if mailed by registered or certified mail,
postage prepaid, return receipt requested, (iii) upon the date scheduled for delivery after such notice
is sent by a nationally recognized overnight express courier or (iv) by fax upon written confirmation
(including the automatic confirmation that is received from the recipient's fax machine) of receipt
by the recipient of such notice:

if to Buyer, to:                                with a copy to:

    Excelergy Corporation                   Alfred L. Browne, Esq.
    10 Maguire Road, Suite 111              Browne Rosedale & Lanouette LLP
    Lexington, MA  02421                    100 Brickstone Square, 1st Floor
    Attention:  President and Chief         Andover, MA 01810
           Financial Officer            Telecopy: (978) 684-3845
    Telecopy: (781) 372-5298

if to Seller, to:                               with a copy to:

    Forwardmarket, LLC                      David Turner, Jr.
    3102 Maple Avenue                       Scheef & Stone, L.L.P.
    #450                                    5956 Sherry Lane, Suite 1400
    Dallas, TX 75201                        Dallas, TX 75225
    Telecopy:  (214) 853-4262               Telecopy:  (214) 706-4242

9.02. Amendments; No Waivers. (a) Any provision of this Agreement may be amended
if, and only if, such amendment is in writing and signed by Buyer, Seller and Swenke. Any
provision of this Agreement may be waived by Buyer, Seller or Swenke if the waiver is in
writing and signed by the party to be bound.

(b)      No failure or delay by either party in exercising any right, power or privilege
hereunder shall operate as a waiver thereof nor shall any single or partial exercise thereof
preclude any other or further exercise thereof or the exercise of any other right, power or
privilege. The rights and remedies herein provided shall be cumulative and not exclusive of any
rights or remedies provided by law.

Asset Purchase Agreement – Page 35

**9.03. Expenses.** All costs and expenses incurred in connection with this Agreement shall be paid by the party incurring such cost or expense.

**9.04. Successors and Assigns.** The provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns; provided, however, that, Seller and Swenke shall not be entitled to assign or in any way transfer any of their rights or obligations hereunder, by operation of law or otherwise, without the prior written consent of Buyer. Any attempted assignment of such rights by Seller or Swenke without such prior written consent shall be void and prohibited, and all such rights shall thereupon automatically be terminated and of no further force or effect.

**9.05. Governing Law.** This Agreement and the Ancillary Agreements shall be construed in accordance with and governed by the law of the Commonwealth of Massachusetts, without regard to the conflicts of law rules of such state.

**9.06. Counterparts; Effectiveness.** This Agreement may be signed in any number of counterparts, each of which shall be an original, with the same effect as if the signatures thereto and hereto were upon the same instrument. This Agreement shall become effective when each party hereto shall have received a counterpart hereof signed by the other parties hereto.

**9.07. Entire Agreement.** This Agreement and the Ancillary Agreements (together with the NDA) constitute the entire agreement between the parties with respect to the subject matter hereof and supersede all prior agreements, understandings and negotiations, both written and oral, between the parties with respect to the subject matter hereof. No representation, inducement, promise, understanding, condition or warranty not set forth herein has been made or relied upon by either party hereto. None of the provisions of this Agreement and the Ancillary Agreements is intended to confer upon any Person other than the parties hereto any rights or remedies hereunder.

**9.08 Bulk Sales Laws.** Buyer and Seller each hereby waive compliance by Seller with the provisions of the "bulk sales", "bulk transfer" or similar laws of any state. Seller agrees to indemnify and hold Buyer harmless against any and all claims, losses, damages, liabilities, costs and expenses incurred by Buyer or any of its Affiliates as a result of any failure to comply with any such "bulk sales", "bulk transfer" or similar laws.

**9.09. Captions.** The captions herein are included for convenience of reference only and shall be ignored in the construction or interpretation hereof.

**9.10. Jurisdiction.** Any action or proceeding seeking to enforce any provision of, or based on any right arising out of, this Agreement may be brought against any of the parties exclusively in the courts of the State of Commonwealth of Massachusetts or the federal courts of the District of Massachusetts, and each of the parties hereby consents to the jurisdiction of such courts (and of the appropriate appellate courts) in any such action or proceeding and waives any objection to venue laid therein. Process in any such action or proceeding may be served on any party anywhere in the world, whether within or without the Commonwealth of Massachusetts.

App 036

Asset Purchase Agreement – Page 36

**9.11    No Third Party Beneficiaries.** This Agreement is solely for the benefit of the parties and their successors and permitted assigns, and does not confer any rights or remedies on any other person or entity.

*(Remainder of Page Intentionally Left Blank)*

App 037

Asset Purchase Agreement – Page 37

**IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to be duly executed as of the day and year first above written.

**EXCELERGY CORPORATION**

By: _____

Name:   WILLIAM T. HANGNEY

Title:   PRESIDENT & CEO

**FORWARDMARKET, LLC**

By: _____

Name:   KEVIN SWENKE

Title:   PRESIDENT

_____

J. Kevin Swenke

# EXHIBIT 2

## Table C-5.
### U.S. District Courts—Median Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, During the 12-Month Period Ending September 30, 2003

| Circuit and District | Total Cases | | No Court Action | | Court Action | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | Before Pretrial | | During or After Pretrial | | Trial | |
| | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months |
| TOTAL | 192,464 | 9.3 | 34,387 | 6.3 | 134,453 | 8.4 | 18,808 | 13.2 | 3,786 | 28.5 |
| DC | 1,953 | 10.3 | 708 | 8.7 | 1,187 | 11.1 | 42 | 23.4 | 38 | 28.0 |
| 1ST | 5,799 | 11.9 | 1,206 | 8.1 | 3,370 | 10.8 | 1,024 | 15.4 | 199 | 22.3 |
| ME | 498 | 7.9 | 207 | 5.9 | 177 | 8.4 | 84 | 30.6 | 30 | 13.0 |
| MA | 2,616 | 10.7 | 728 | 6.4 | 1,292 | 10.1 | 514 | 16.0 | 82 | 29.0 |
| NH | 445 | 8.8 | 46 | 3.0 | 190 | 4.8 | 201 | 14.5 | 8 | - |
| RI | 510 | 10.0 | 117 | 6.2 | 224 | 9.9 | 152 | 13.2 | 17 | 23.0 |
| PR | 1,730 | 14.2 | 108 | 6.0 | 1,487 | 14.8 | 73 | 16.0 | 62 | 21.8 |
| 2ND | 17,548 | 9.4 | 4,085 | 8.8 | 10,738 | 8.2 | 2,380 | 15.9 | 345 | 26.8 |
| CT | 1,755 | 10.5 | 1,130 | 9.0 | 547 | 10.1 | 19 | 24.0 | 60 | 26.3 |
| NY,N | 1,004 | 13.7 | 122 | 8.4 | 551 | 10.6 | 301 | 17.3 | 30 | 21.0 |
| NY,E | 5,442 | 10.5 | 1,130 | 6.3 | 3,524 | 10.7 | 697 | 18.0 | 91 | 32.0 |
| NY,S | 7,878 | 8.4 | 1,642 | 10.9 | 4,863 | 5.0 | 1,231 | 12.4 | 142 | 23.2 |
| NY,W | 1,151 | 12.4 | 28 | 7.7 | 981 | 11.4 | 130 | 18.4 | 12 | 37.5 |
| VT | 317 | 7.5 | 33 | 4.7 | 272 | 7.4 | 2 | - | 10 | 24.0 |
| 3RD | 21,523 | 8.3 | 2,758 | 5.9 | 16,096 | 5.7 | 2,360 | 13.5 | 349 | 22.3 |
| DE | 1,046 | 11.2 | 72 | 3.0 | 877 | 12.9 | 61 | 12.6 | 36 | 21.0 |
| NJ | 5,166 | 7.9 | 712 | 5.7 | 2,448 | 5.4 | 1,922 | 13.8 | 84 | 30.4 |
| PA,E | 10,762 | 2.7 | 679 | 4.5 | 9,796 | 2.6 | 178 | 10.4 | 109 | 15.6 |
| PA,M | 1,582 | 9.8 | 385 | 6.8 | 1,041 | 8.8 | 88 | 17.2 | 68 | 18.2 |
| PA,W | 2,613 | 10.5 | 817 | 8.9 | 1,645 | 10.7 | 100 | 24.2 | 51 | 32.5 |
| VI | 354 | 15.9 | 93 | 6.0 | 249 | 17.5 | 11 | 24.5 | 1 | - |
| 4TH | 13,856 | 8.8 | 2,870 | 6.7 | 9,132 | 8.3 | 1,389 | 10.9 | 285 | 16.2 |
| MD | 2,892 | 7.5 | 950 | 7.7 | 1,715 | 6.8 | 172 | 10.4 | 55 | 23.0 |
| NC,E | 803 | 10.2 | 186 | 8.3 | 620 | 10.6 | 3 | - | 14 | 18.0 |
| NC,M | 689 | 11.5 | 156 | 6.9 | 311 | 13.2 | 213 | 12.5 | 9 | - |
| NC,W | 670 | 10.8 | 183 | 8.6 | 364 | 9.4 | 92 | 17.5 | 11 | 27.0 |
| SC | 2,911 | 8.2 | 425 | 6.4 | 2,060 | 7.4 | 339 | 14.7 | 87 | 18.2 |
| VA,E | 2,079 | 5.3 | 745 | 4.5 | 1,649 | 5.0 | 509 | 7.7 | 76 | 9.8 |
| VA,W | 1,287 | 10.0 | 160 | 8.8 | 1,062 | 10.0 | 34 | 7.7 | 21 | 17.0 |
| WV,N | 498 | 9.6 | 37 | 8.0 | 450 | 9.0 | 4 | 10.4 | 7 | - |
| WV,S | 927 | 12.3 | 28 | 8.0 | 891 | 12.3 | 3 | - | 5 | - |

## Table C-5. (September 30, 2003—Continued)



| Circuit and District | Total Cases | | No Court Action | | Before Pretrial | | Court Action — During or After Pretrial | | Trial | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months |
| **5TH** | 21,364 | 9.2 | 4,055 | 5.8 | 14,873 | 7.3 | 1,344 | 12.7 | 482 | 18.1 |
| LA.E | 2,914 | 9.8 | 32 | 2.7 | 1,731 | 8.0 | 1,040 | 13.3 | 111 | 15.2 |
| LA.M | 792 | 11.1 | 7 | - | 780 | 11.3 | 1 | - | 4 | - |
| LA.W | 1,592 | 11.5 | 825 | 9.7 | 785 | 11.5 | 27 | 19.0 | 55 | 19.5 |
| MS.N | 1,164 | 8.4 | 190 | 5.8 | 761 | 8.8 | 162 | 14.3 | 31 | 19.0 |
| MS.S | 3,474 | 5.7 | 1,659 | 5.1 | 1,739 | 6.9 | 7 | - | 89 | 19.5 |
| TX.N | 3,045 | 7.2 | 107 | 4.6 | 2,870 | 7.4 | 5 | - | 63 | 18.5 |
| TX.E | 1,619 | 10.9 | 105 | 8.7 | 1,356 | 9.2 | 108 | 13.3 | 49 | 19.8 |
| TX.S | 4,501 | 7.2 | 475 | 7.3 | 3,413 | 8.0 | 548 | 10.4 | 65 | 20.6 |
| TX.W | 2,163 | 9.5 | 655 | 8.1 | 1,438 | 8.1 | 25 | 18.0 | 45 | 17.0 |
| **6TH** | 25,700 | 13.7 | 3,000 | 5.4 | 20,957 | 15.1 | 2,741 | 13.8 | 382 | 20.2 |
| KY.E | 1,946 | 10.7 | 139 | 6.6 | 1,715 | 10.2 | 52 | 18.4 | 42 | 17.7 |
| KY.W | 1,201 | 9.0 | 83 | 6.4 | 884 | 8.8 | 203 | 15.2 | 21 | 28.0 |
| MI.E | 3,497 | 8.7 | 1,147 | 6.5 | 1,198 | 9.0 | 1,065 | 13.7 | 47 | 24.7 |
| MI.W | 1,113 | 8.3 | 135 | 3.0 | 933 | 8.9 | 14 | 17.5 | 31 | 22.5 |
| OH.N | 13,339 | 13.7 | 790 | 5.6 | 11,881 | 13.8 | 620 | 11.1 | 48 | 16.0 |
| OH.S | 2,353 | 11.9 | 432 | 7.8 | 1,532 | 11.8 | 340 | 15.9 | 49 | 22.5 |
| TN.E | 1,224 | 11.0 | 187 | 8.4 | 554 | 8.9 | 445 | 14.0 | 38 | 15.3 |
| TN.M | 1,320 | 12.5 | 33 | 8.7 | 1,235 | 12.5 | 1 | - | 51 | 19.5 |
| TN.W | 805 | 10.5 | 44 | 9.8 | 725 | 9.2 | 1 | - | 35 | 19.0 |
| **7TH** | 15,536 | 6.1 | 2,769 | 5.7 | 10,090 | 5.7 | 1,001 | 12.4 | 278 | 23.0 |
| IL.N | 9,000 | 5.5 | 1,898 | 5.3 | 6,321 | 4.9 | 654 | 12.0 | 127 | 28.2 |
| IL.C | 830 | 8.3 | 135 | 7.0 | 661 | 8.5 | 11 | 20.0 | 23 | 24.0 |
| IL.S | 818 | 9.0 | 48 | 5.3 | 714 | 9.4 | 22 | 23.0 | 34 | 23.5 |
| IN.N | 1,288 | 8.1 | 69 | 3.7 | 605 | 5.8 | 587 | 13.2 | 27 | 23.0 |
| IN.S | 2,244 | 11.9 | 317 | 4.6 | 1,600 | 11.8 | 303 | 15.9 | 24 | 20.0 |
| WI.E | 901 | 8.4 | 249 | 6.5 | 618 | 8.8 | 12 | 18.0 | 22 | 20.0 |
| WI.W | 455 | 4.7 | 53 | 2.1 | 171 | 3.4 | 212 | 6.5 | 19 | 9.4 |
| **8TH** | 11,733 | 9.4 | 2,351 | 8.1 | 7,875 | 8.8 | 1,153 | 13.5 | 354 | 19.8 |
| AR.E | 1,549 | 12.9 | 308 | 12.5 | 1,160 | 12.0 | 19 | 17.5 | 62 | 23.4 |
| AR.W | 994 | 11.6 | 1 | - | 951 | 10.5 | 9 | - | 33 | 14.5 |
| IA.N | 476 | 10.2 | 49 | 6.4 | 387 | 10.7 | 8 | - | 32 | 19.4 |
| IA.S | 627 | 6.5 | 60 | 5.2 | 354 | 8.7 | 191 | 16.3 | 22 | 20.0 |
| MN | 3,281 | 6.5 | 415 | 3.6 | 2,038 | 6.6 | 770 | 11.6 | 38 | 22.4 |
| MO.E | 1,860 | 9.8 | 483 | 9.8 | 1,313 | 9.8 | 2 | - | 82 | 18.5 |
| MO.W | 1,716 | 10.3 | 780 | 8.7 | 817 | 11.8 | 82 | 13.0 | 39 | 19.0 |
| NE | 682 | 10.1 | 52 | 5.3 | 542 | 10.2 | 47 | 18.5 | 41 | 15.3 |
| ND | 242 | 9.8 | 59 | 5.4 | 165 | 9.8 | 10 | 16.5 | 8 | - |
| SD | 324 | 9.4 | 144 | 8.1 | 148 | 9.2 | 15 | 17.0 | 17 | 20.0 |

APP 041

# EXHIBIT 3

## Table C-3A.
### U.S. District Courts—Civil Cases Pending, by Nature of Suit and District, During the 12-Month Period Ending September 30, 2003

| Circuit and District | Total Civil Cases | Total U.S. Civil | Contract | Real Property | Tort Actions | Civil Rights | Prisoner Petitions: Motions to Vacate Sentence | Habeas Corpus General | Death Penalty | Prison Civil Rights | Prison Condition | Mandamus and Other | Forfeiture and Penalties | Labor Suits | Social Security | All Other |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TOTAL | 281,065 | 45,728 | 3,104 | 3,728 | 2,841 | 3,360 | 4,783 | 2,407 | 39 | 728 | 206 | 251 | 1,891 | 404 | 16,927 | 5,151 |
| DC | 3,499 | 1,933 | 264 | 8 | 87 | 477 | 72 | 80 | 1 | 172 | 18 | 9 | 15 | 13 | 47 | 711 |
| **1ST** | | | | | | | | | | | | | | | | |
| ME | 7,304 | 1,315 | 40 | 54 | 144 | 89 | 186 | 54 | · | 28 | 18 | 9 | 78 | 29 | 453 | 171 |
| MA | 370 | 106 | 7 | · | 2 | 7 | 4 | · | · | · | · | · | 3 | · | 73 | 5 |
| NH | 3,695 | 512 | 154 | 25 | 72 | 57 | 63 | 68 | · | 13 | 7 | · | 21 | 14 | 348 | 115 |
| RI | 559 | 81 | 19 | 4 | 2 | 17 | 75 | 3 | · | 4 | 1 | 1 | 18 | 5 | 113 | 5 |
| PR | 2,063 | 506 | 30 | · | 54 | 29 | 121 | 79 | · | 10 | 13 | · | 4 | 14 | 238 | 70 |
| **2ND** | | | | | | | | | | | | | | | | |
| CT | 31,374 | 4,129 | 224 | 146 | 355 | 282 | 500 | 361 | · | 43 | 22 | 81 | 211 | 36 | 1,266 | 582 |
| NY,N | 3,004 | 327 | 9 | 8 | 32 | 40 | · | 47 | · | 3 | · | · | 37 | 2 | 65 | 88 |
| NY,E | 3,040 | 450 | 19 | 9 | 29 | 30 | 34 | 16 | · | 3 | · | 1 | 18 | 8 | 257 | 33 |
| NY,S | 8,527 | 1,560 | 154 | 39 | 178 | 121 | 216 | 116 | · | 28 | 7 | 59 | 73 | 13 | 198 | 198 |
| NY,W | 14,220 | 1,218 | 30 | 9 | 91 | 75 | 234 | 114 | · | 9 | 12 | 19 | 42 | 13 | 335 | 235 |
| VT | 2,439 | 469 | 14 | 8 | 23 | 76 | 14 | 66 | · | 4 | · | 2 | 35 | 3 | 224 | 30 |
| | 344 | 75 | · | 26 | 2 | 1 | · | · | · | · | · | · | 6 | · | 26 | 8 |
| **3RD** | | | | | | | | | | | | | | | | |
| DE | 18,831 | 3,211 | | | | | | | | | | | | | 1,393 | 255 |
| NJ | 1,700 | 109 | | | | | | | | | | | | | 38 | 16 |
| PA,E | 5,894 | 959 | | | | | | | | | | | | | 373 | 93 |
| PA,M | 5,539 | 693 | | | | | | | | | | | | | 356 | 70 |
| PA,W | 1,990 | 590 | | | | | | | | | | | | | 166 | 5 |
| VI | 3,010 | 772 | | | | | | | | | | | | | 459 | 115 |
| | 858 | 88 | | | | | | | | | | | | | 1 | 8 |
| **4TH** | | | | | | | | | | | | | | | | |
| MD | 17,910 | 4,189 | | | | | | | | | | | | | 2,040 | 271 |
| NC,E | 3,279 | 628 | | | | | | | | | | | | | 253 | 71 |
| NC,M | 1,316 | 417 | | | | | | | | | | | | | 257 | 28 |
| NC,W | 1,067 | 325 | | | | | | | | | | | | | 137 | 17 |
| SC | 1,060 | 232 | | | | | | | | | | | | | 348 | 45 |
| VA,E | 4,321 | 880 | | | | | | | | | | | | | 113 | 14 |
| VA,W | 2,323 | 385 | | | | | | | | | | | | | 73 | 70 |
| WV,N | 1,308 | 383 | | | | | | | | | | | | | 336 | 63 |
| WV,S | 726 | 524 | | | | | | | | | | | | | 154 | 54 |
| | 2,510 | 392 | | | | | | | | | | | | | 392 | 13 |

## Table C-3A. (September 30, 2003—Continued)

| Circuit and District | Total Civil Cases | U.S. Cases Total | Contract | Real Property Actions | Tort Actions | Civil Rights | Motions to Vacate Sentence | Habeas Corpus General | Prisoner Petitions Death Penalty | Prisoner Petitions Prison Civil Rights | Prisoner Petitions Prison Condition | Mandamus and Other | Forfeitures and Penalties | Labor Suits | Social Security | All Other |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **5TH** | 36,104 | 4,275 | 309 | 89 | 389 | 328 | 646 | 324 | 11 | 112 | 26 | 15 | 165 | 29 | 1,386 | 472 |
| LA,E | 3,102 | 248 | 10 | 4 | 48 | 13 | 30 | 7 | - | 4 | - | 2 | 2 | 2 | 80 | 16 |
| LA,M | 8,786 | 94 | 11 | 21 | 6 | 6 | 9 | 2 | - | 6 | 1 | - | 1 | 4 | 45 | 35 |
| LA,W | 2,516 | 53 | 2 | 28 | 43 | 7 | 22 | 3 | 1 | 2 | - | - | 6 | 3 | 238 | 24 |
| MS,N | 1,545 | 126 | 9 | 1 | 8 | 6 | 37 | 48 | - | 6 | - | 1 | 3 | 4 | 38 | 9 |
| MS,S | 4,641 | 293 | 5 | 23 | 43 | 23 | 24 | 9 | - | 9 | - | 5 | 10 | 8 | 80 | 23 |
| TX,N | 4,542 | 771 | 10 | 20 | 30 | 36 | 54 | 39 | 5 | 50 | 15 | 2 | 48 | 18 | 346 | 61 |
| TX,E | 771 | 482 | 2 | 12 | 43 | 31 | 20 | 37 | - | - | - | 3 | 20 | 4 | 179 | 65 |
| TX,S | 2,904 | 1,025 | 12 | 12 | 33 | 28 | 12 | 21 | - | - | 1 | - | 10 | 2 | 177 | 23 |
| TX,W | 5,805 | 713 | 254 | 91 | 45 | 83 | 14 | 41 | - | 50 | - | 5 | 48 | 3 | 203 | 93 |
| **6TH** | 36,838 | 4,420 | 127 | 244 | 165 | 238 | 400 | 88 | 2 | 35 | 20 | 11 | 199 | 35 | 2,533 | 327 |
| KY,E | 2,061 | 1,118 | 9 | 8 | 11 | 3 | 9 | 6 | - | 4 | - | - | 61 | 3 | 502 | 18 |
| KY,W | 1,518 | 374 | 16 | 45 | 13 | 17 | 24 | 31 | 5 | 24 | 6 | 5 | 17 | 6 | 155 | 16 |
| MI,E | 19,121 | 866 | 13 | 6 | 8 | 12 | 67 | 21 | - | - | - | - | 9 | 7 | 308 | 24 |
| MI,W | 1,175 | 283 | 5 | 5 | 14 | 8 | 20 | 82 | - | - | - | 5 | 10 | 4 | 198 | 82 |
| OH,N | 5,033 | 519 | 9 | 23 | 17 | 5 | 37 | 1 | - | 2 | 15 | - | 49 | 1 | 275 | 61 |
| OH,S | 3,133 | 544 | 6 | 1 | 27 | 28 | 41 | 7 | 1 | - | - | 2 | 20 | 8 | 304 | 23 |
| TN,E | 1,954 | 472 | 4 | 9 | 21 | 31 | 9 | 15 | - | 2 | - | 3 | 42 | 1 | 275 | 65 |
| TN,M | 1,891 | 235 | 6 | 2 | 7 | 19 | 38 | 7 | - | 50 | - | - | 8 | 8 | 102 | 17 |
| TN,W | 1,246 | 209 | 8 | - | 116 | 25 | 132 | 20 | - | 4 | - | - | 165 | - | 41 | 18 |
| **7TH** | 16,212 | 2,315 | 527 | 188 | 147 | 167 | 288 | 68 | - | 24 | - | 11 | 199 | 45 | 552 | 276 |
| IL,N | 7,825 | 1,173 | 494 | 67 | 80 | 108 | 110 | 12 | - | - | - | - | 165 | 18 | 138 | 172 |
| IL,C | 1,004 | 118 | 6 | 9 | 9 | 9 | 60 | 2 | - | - | - | - | 25 | 2 | 33 | 7 |
| IL,S | 1,229 | 262 | 4 | 25 | 14 | 21 | 35 | 48 | - | 2 | - | 3 | 10 | 4 | 55 | 21 |
| IN,N | 1,742 | 181 | 6 | 8 | 11 | 6 | 60 | 5 | 1 | 9 | 5 | - | 40 | 7 | 188 | 80 |
| IN,S | 2,874 | 373 | 8 | - | 60 | 8 | 60 | 12 | 2 | 2 | - | 2 | 18 | 8 | 275 | 23 |
| WI,E | 1,248 | 161 | 3 | 1 | 9 | 7 | 4 | 7 | - | 7 | - | 3 | 12 | 2 | 88 | 27 |
| WI,W | 290 | 47 | 1 | 2 | 16 | 3 | 6 | 1 | - | - | - | 1 | 9 | - | 8 | 18 |
| **8TH** | 17,150 | 2,931 | 53 | 233 | 147 | 165 | 325 | 59 | 11 | 35 | 26 | 6 | 196 | 33 | 1,569 | 219 |
| AR,E | 2,096 | 578 | 5 | 91 | 18 | 33 | 24 | 19 | 3 | 24 | 13 | 5 | 25 | 2 | 386 | 55 |
| AR,W | 1,054 | 459 | 2 | 59 | 9 | 29 | 25 | 6 | - | 2 | - | - | 15 | 2 | 369 | 15 |
| IA,N | 555 | 187 | - | - | 7 | 21 | 35 | 3 | - | 1 | - | 1 | 8 | 7 | 72 | 24 |
| IA,S | 920 | 188 | 3 | 4 | 11 | 6 | 60 | 14 | 1 | 2 | 1 | - | 10 | 4 | 70 | 49 |
| MN | 6,925 | 266 | 6 | 26 | 29 | 9 | 80 | 15 | 1 | 2 | 1 | 5 | 13 | 1 | 308 | 31 |
| MO,E | 1,971 | 315 | 5 | 11 | 6 | 8 | 73 | 6 | - | 7 | - | - | 14 | 8 | 155 | 46 |
| MO,W | 1,887 | 512 | 2 | 59 | 16 | 7 | 14 | 21 | - | - | - | 1 | 10 | 2 | 96 | 6 |
| NE | 1,040 | 211 | 4 | - | 6 | 31 | 37 | 2 | - | - | - | - | 14 | 1 | 86 | 2 |
| ND | 248 | 82 | 1 | 1 | 9 | - | 4 | - | - | - | - | - | 5 | 1 | 21 | 9 |
| SD | 454 | 133 | - | 2 | 16 | 31 | 16 | 19 | - | - | - | - | 6 | 9 | 47 | 18 |

# EXHIBIT 4

APP 045

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **MASSACHUSETTS** | | | 2004 | 2003 | 2002 | 2001 | 2000 | 1999 | Numerical Standing | |
| | | | | | | | | | U.S. | Circuit |
| **OVERALL CASELOAD STATISTICS** | Filings* | | 3,819 | 3,720 | 3,765 | 3,276 | 3,651 | 3,770 | U.S. | Circuit |
| | Terminations | | 3,683 | 3,513 | 3,565 | 3,470 | 3,501 | 3,842 | | |
| | Pending | | 4,496 | 4,416 | 4,300 | 4,126 | 4,275 | 4,117 | | |
| | % Change in Total Filings | Over Last Year | | 2.7 | | | | | 38 | 2 |
| | | Over Earlier Years | | | 1.4 | 16.6 | 4.6 | 1.3 | 64 | 3 |
| | Number of Judgeships | | 13 | 13 | 13 | 13 | 13 | 13 | | |
| | Vacant Judgeship Months** | | 8.0 | 7.0 | .0 | .0 | 0 | .0 | | |
| **ACTIONS PER JUDGESHIP** | FILINGS | Total | 294 | 285 | 289 | 252 | 281 | 290 | 83 | 2 |
| | | Civil | 255 | 246 | 243 | 222 | 249 | 258 | 74 | 2 |
| | | Criminal Felony | 27 | 31 | 38 | 30 | 32 | 32 | 93 | 5 |
| | | Supervised Release Hearings** | 12 | 8 | 8 | | - | - | 72 | 2 |
| | Pending Cases | | 346 | 340 | 331 | 317 | 329 | 317 | 65 | 1 |
| | Weighted Filings** | | 349 | 344 | 354 | 322 | 364 | 347 | 74 | 1 |
| | Terminations | | 283 | 270 | 274 | 267 | 269 | 296 | 85 | 3 |
| | Trials Completed | | 17 | 15 | 15 | 12 | 13 | 14 | 58 | 2 |
| **MEDIAN TIMES (months)** | From Filing to Disposition | Criminal Felony | 14.9 | 14.3 | 13.4 | 13.2 | 12.6 | 12.4 | 94 | 5 |
| | | Civil** | 9.4 | 10.7 | 11.5 | 10.2 | 10.2 | 10.9 | 42 | 3 |
| | From Filing to Trial** (Civil Only) | | 31.7 | 28.5 | 25.5 | 23.8 | 26.4 | 23.0 | 75 | 4 |
| **OTHER** | Civil Cases Over 3 Years Old** | Number | 215 | 198 | 229 | 275 | 260 | 160 | | |
| | | Percentage | 5.7 | 5.4 | 6.3 | 7.7 | 7.0 | 4.4 | 68 | 4 |
| | Average Number of Felony Defendants Filed Per Case | | 1.5 | 1.4 | 1.6 | 1.6 | 1.5 | 1.7 | | |
| | Jurors | Avg. Present for Jury Selection | 47.60 | 49.14 | 46.26 | 51.51 | 44.40 | 41.94 | | |
| | | Percent Not Selected or Challenged | 27.5 | 33.4 | 23.2 | 26.2 | 14.8 | 15.2 | | |

| 2004 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 3312 | 97 | 24 | 424 | 43 | 34 | 269 | 503 | 581 | 223 | 492 | 10 | 612 |
| Criminal* | 351 | 29 | 8 | 46 | - | 22 | 96 | ** | 4 | 91 | - | 14 | 41 |

\* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
\*\* See "Explanation of Selected Terms."

APP 046

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **TEXAS NORTHERN** | | | 2004 | 2003 | 2002 | 2001 | 2000 | 1999 | Numerical Standing | |
| | | | | | | | | | U.S. | Circuit |
| **OVERALL CASELOAD STATISTICS** | Filings* | | 6,560 | 6,985 | 6,591 | 5,991 | 7,271 | 6,590 | U.S. | Circuit |
| | Terminations | | 7,191 | 6,111 | 6,413 | 6,406 | 7,010 | 6,508 | | |
| | Pending | | 4,686 | 5,455 | 4,496 | 4,342 | 4,786 | 4,586 | | |
| | % Change in Total Filings | Over Last Year | | -6.1 | | | | | 77 | 7 |
| | | Over Earlier Years | | | -.5 | 9.5 | -9.8 | -.5 | 67 | 6 |
| | Number of Judgeships | | 12 | 12 | 12 | 12 | 12 | 12 | | |
| | Vacant Judgeship Months** | | 8.5 | 2.4 | 18.4 | 12.0 | 5.4 | 12.0 | | |
| **ACTIONS PER JUDGESHIP** | **FILINGS** | Total | 547 | 582 | 549 | 499 | 606 | 549 | 25 | 5 |
| | | Civil | 452 | 479 | 462 | 431 | 529 | 473 | 16 | 3 |
| | | Criminal Felony | 66 | 78 | 64 | 68 | 77 | 76 | 51 | 5 |
| | | Supervised Release Hearings** | 29 | 25 | 23 | - | - | - | 24 | 3 |
| | Pending Cases | | 391 | 455 | 375 | 362 | 399 | 382 | 52 | 6 |
| | Weighted Filings** | | 548 | 581 | 520 | 517 | 525 | 577 | 24 | 5 |
| | Terminations | | 599 | 509 | 534 | 534 | 584 | 542 | 13 | 4 |
| | Trials Completed | | 28 | 27 | 24 | 28 | 26 | 25 | 13 | 2 |
| **MEDIAN TIMES (months)** | From Filing to Disposition | Criminal Felony | 6.7 | 5.9 | 6.3 | 5.9 | 5.8 | 5.5 | 26 | 3 |
| | | Civil** | 7.4 | 7.2 | 6.6 | 7.1 | 6.6 | 7.9 | 15 | 3 |
| | From Filing to Trial** (Civil Only) | | 21.7 | 18.6 | 18.7 | 23.3 | 17.0 | 18.5 | 39 | 7 |
| **OTHER** | Civil Cases Over 3 Years Old** | Number | 29 | 126 | 69 | 86 | 62 | 68 | | |
| | | Percentage | .8 | 2.8 | 1.8 | 2.3 | 1.5 | 1.7 | 6 | 1 |
| | Average Number of Felony Defendants Filed Per Case | | 1.5 | 1.5 | 1.7 | 1.7 | 1.5 | 1.6 | | |
| | Jurors | Avg. Present for Jury Selection | 51.06 | 50.46 | 56.30 | 47.80 | 48.05 | 47.60 | | |
| | | Percent Not Selected or Challenged | 43.9 | 54.9 | 54.1 | 52.7 | 48.3 | 54.0 | | |

| 2004 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 5427 | 234 | 21 | 1956 | 74 | 19 | 263 | 628 | 792 | 213 | 731 | 5 | 491 |
| Criminal* | 778 | 166 | 23 | 157 | 4 | 39 | 98 | ** | 24 | 166 | 6 | 26 | 69 |

\* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
\*\* See "Explanation of Selected Terms."

3/14/2005

APP 047

# EXHIBIT 5

Explanation of Terms 05-cv-00166    Document 21    Filed 03/16/2005    Page 51 of 52 Page 1 of 2

# EXPLANATION OF SELECTED TERMS

## Vacant Judgeship Months

"Vacant judgeship months" is the total number of months that vacancies occurred in any judgeship positions in a circuit or district. Public Law Number 107-273, enacted on November 2, 2002, created 15 additional authorized judgeships for the district courts, which became effective on July 15, 2003. On September 30, 2004, a total of 15 vacancies existed in the district courts, one of which originated from the creation of the new judgeships, and 13 vacancies existed in the U.S. courts of appeals (excluding the Federal Circuit). On May 15, 2004, one temporary judgeship in the District of Nebraska lapsed.

## Visiting Judge Activity

Court profiles for both the courts of appeals and district courts reflect only caseloads within the circuit/district; the profiles do not address visiting judge activity in other circuits/districts. Detailed data on visiting judge activity can be found in Tables V-1 and V-2 of *Judicial Business of the United States Courts*.

## Supervised Release Hearings

Beginning with *2002 Federal Court Management Statistics,* data on hearings on violations of supervised release are included in the district court profiles. These hearings, which are conducted when defendants violate the terms of supervised release, can result in the modification of conditions or the revocation of supervised release. In addition to providing data for the category of supervised release hearings filed per authorized judgeship, data on supervised release hearings are included in the totals for overall filings and terminations, filings and terminations per authorized judgeship, and weighted filings per authorized judgeship. These changes to the district court profiles were approved by the Judicial Conference Subcommittee on Judicial Statistics.

## Weighted Filings

Weighted filings statistics account for the different amounts of time district judges require to resolve various types of civil and criminal actions. The federal Judiciary has employed techniques for assigning weights to cases since 1946. In 2004, the Judicial Resources Committee of the Judicial Conference of the United States approved a new civil and criminal case weighting system proposed by the Federal Judicial Center. On a national basis, weighted filings did not change significantly after the implementation of the new case weights. More than two-thirds of all district courts saw their weighted filings change by 10 percent or less. Average civil cases or criminal defendants each receive a weight of approximately 1.0; for more time-consuming cases, higher weights are assessed (e.g., a death-penalty habeas corpus case is assigned a weight of 12.89); and cases demanding relatively little time from judges receive lower weights (e.g., a defaulted student loan case is assigned a weight of 0.031). Probation revocation hearings (both evidentiary and non-evidentiary) are included as part of the weighted filings statistics. For comparative analysis in this report, the totals for weighted civil and criminal filings for prior years have been revised based on the new case weighting system. The weighted totals for criminal defendants include reopenings and transfers. Data on civil cases arising by reopening, remand, and transfer to the district by order of the Judicial Panel on Multidistrict Litigation are not included among the totals for weighted filings.

App 049

## Median Times: Civil

"Median times" are the median time intervals between the filing of cases and their disposition. Civil median times exclude data for civil cases involving land condemnation, prisoner petitions, deportation reviews, recovery of overpayments, and enforcements of judgments. Because courts can quickly process cases involving the recovery of overpayments (which primarily address veterans' benefits) and enforcements of judgments (which primarily address student loans), including data on these cases would shorten the civil median times for some courts to the point of giving an inaccurate impression of the time usually required to process a case in the federal courts.

## Median Times: From Filing to Trial

The median time for civil cases from filing to trial is calculated from the date a case was filed to the date trial began. For any reopened civil case resulting in a second completed trial, the median time remains based on the original filing date and the date the trial was completed.

## Civil Cases Over Three Years Old

Data for cases pending three years or more may not match those presented in the Civil Justice Reform Act (CJRA) reports because the profiles presented herein include data for cases on appeal in other courts (i.e., the Supreme Court, courts of appeals, other district courts, and state courts), whereas the CJRA reporting guidelines exclude such data. Since 2000, data for the Eastern District of Michigan have included between 10,000 and 14,000 silicone breast implant cases assigned to one district judge that technically have been pending, but effectively have been stayed pending the resolution of an appeal in a related bankruptcy matter. Since 1999, the three-year-old civil pending caseload in the Middle District of Louisiana has included more than 7,000 cases related to oil refinery explosions. For comparative purposes, any statistical average should exclude these cases.

## Criminal Felony Filings by Offense

Since 1995, data for all criminal filings involving drug laws have been consolidated under category "F." Category "G," which was used previously for reporting criminal cases involving narcotics, has been discontinued.

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

MAR 24 2005

CLERK, U.S. DISTRICT COURT
By _____
            Deputy

| | |
|---|---|
| FM HOLDINGS, LLC,<br>F/K/A FORWARDMARKET, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>BILL MAHONEY; STEPHEN<br>GREGORIO,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

Civil Action No.
3:05-CV-0166-G

### PLAINTIFF'S MOTION FOR LEAVE TO FILE SUR-REPLY BRIEF TO REPLY BRIEF IN SUPPORT OF MOTION OF DEFENDANT STEPHEN GREGORIO TO TRANSFER VENUE

Plaintiff hereby moves for leave to file a sur-reply brief to the reply brief submitted by Defendant Stephen Gregorio ("Gregorio") regarding his motion to transfer venue. In support of his motion for leave to file a reply brief in excess of ten pages, Gregorio stated that Plaintiff's response brief "set forth arguments not addressed in Gregorio's original brief, including the contention that the forum selection clause in the Asset Purchase Agreement [the 'Agreement'] did not apply to this case." Presumably at least in part on this basis, the Court granted Gregorio's motion for leave.[1] Gregorio's motion for leave, however, was based on a plain falsehood, namely, that Plaintiff *first* argued the relevance of the forum selection clause in its response brief.

---

[1] The Court granted Gregorio's motion for leave on March 16, 2005, but filed and entered the Order on March 18, 2005, which is the date Plaintiff received notice of same by the Court's electronic filing notification system. Lead counsel for Plaintiff, however, was out of the office most of the week of March 14-18, 2005 for Spring Break and was therefore unable to return the phone call of Tim Blank, Gregorio's Massachusetts' counsel, until Monday, March 21, 2005 upon her return to the office. Nor was any attempt made by Gregorio during the week of March 14-18, 2005 to contact Robert Millimet, associate counsel for Plaintiff.

Plaintiff argued that the Agreement's forum selection clause had no relevance to the above-captioned case *only in response to* Gregorio's original motion (pages 4-5, and 9-11)[2]:

> It is not disputed in this case that the Agreement contains express provisions designating Massachusetts courts as the appropriate venue for disputes arising under the Agreement and identifying Massachusetts law as the governing law for such disputes. More specifically, the provisions designate the District of Massachusetts as the agreed-upon federal venue for disputes arising under the Agreement.
> \*\*\*\*
> Plaintiff's choice of venue is entitled to little deference, especially given that in dealing with Defendants in negotiating the Agreement on behalf of Forwardmarket, Swenke (presently the principal owner of Plaintiff) expressly agreed to the provisions of the Agreement designating Massachusetts as the appropriate forum for disputes.
> \*\*\*\*
> [T]he Agreement, which lies at the center of the dispute, contains provisions mandating venue in the District of Massachusetts for disputes arising under the Agreement, and while the present action is not for breach of the Agreement, the existence of the provisions indicates that transfer to the District of Massachusetts is warranted.

Plaintiff's response to this contention – made originally by Gregorio – was limited to footnote 10 on page 22 of its response brief:

> Gregorio (G. Br., p. 9), however, asserts that "Plaintiff's choice of forum is entitled to little deference" supposedly because the Agreement designates Massachusetts as the forum for disputes between the parties. But the Agreement's forum selection clause to which Gregorio refers is irrelevant: it is found in a contract between Excelergy and Plaintiff, not Defendants and Plaintiff, precluding Defendants from claiming any entitlement to invoke it. (Swenke Aff., ¶4, App., p. 2) Further, the Agreement's forum selection clause is expressly narrowly tailored to actions relating to disputes regarding its provisions – which are not at issue in this action – as Gregorio's supporting brief (G. Br., p. 10; emphasis added) admits: "the Agreement, which lies at the center of the dispute, contains provisions mandating venue in the District of Massachusetts *for disputes arising under the Agreement, and while the present action is not for breach of the Agreement . . . .*"

Based on such falsehood, the Court permitted Gregorio to submit a reply brief in excess of ten pages – six pages of which contained argument and authorities about forum selection clauses and

---

[2] On pages 10-11 of his original motion, Gregorio cited some case law regarding the purported relevance of the Agreement's forum selection clause.

why the Agreement's forum selection clause warrants transfer of venue of this action from Texas to Massachusetts.  In fact, in his reply brief, Gregorio for the first time quoted the forum selection clause and argued for the relevance of the particular clause.[3]  Thus, Plaintiff should be permitted to submit a sur-reply brief on this issue.

Gregorio's reply brief also contains numerous other instances of argument and authorities that Gregorio could have included in his original motion but did not.  These instances include the relative weight to afford to the plaintiff's choice of venue, Massachusetts' purported interest in adjudicating this dispute, and court congestion.  As to the plaintiff's choice of venue, Gregorio argued in his original motion (page 9) that this factor was not dispositive in light of the Agreement's forum selection clause, and because "the alleged misconduct in this case occurred in Massachusetts."  Not until his reply brief, however, did Gregorio argue (page 6) that the plaintiff's choice of venue consideration was "overridden" by "the countervailing rule that 'the plaintiff's choice of forum has reduced significance where most of the operative facts occurred outside the district.'"  Nor does Gregorio's original motion make any reference to or any argument regarding Massachusetts' supposed interest in this dispute.  Gregorio's original motion (page 10) also states that "there is . . . no indication of docket congestion in either the proposed transferor or transferee venues."  Thus, because Gregorio presents argument and authorities regarding these issues in his reply brief, Plaintiff should be afforded an opportunity to respond briefly thereto.

Accordingly, for the foregoing reasons, Plaintiff respectfully requests that the Court grant its motion for leave and take into consideration Plaintiff's sur-reply brief, attached hereto as

---

[3] Gregorio (page 2, note 2) claims that he lacked a copy of the Agreement containing the forum selection clause at the time of his original motion.

Exhibit "A," in evaluating Gregorio's (and Defendant Bill Mahoney's) separate motions to transfer venue.

Respectfully submitted,

Kimberly A. Elkjer
Texas State Bar No. 06527040
Robert M. Millimet
Texas State Bar No. 24025538
SCHEEF & STONE, L.L.P.
5956 Sherry Ln., Suite 1400
Dallas, Texas 75225
(214) 706-4200
(214) 706-4242 (Fax)

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF CONFERENCE

Robert M. Millimet, counsel for Plaintiff, attempted on Wednesday, March 23, 2005 to contact Charles R. Biddle, counsel for Defendant Mahoney, and Timothy C. Blank, of counsel for Defendant Gregorio to personally hold separate conferences regarding Plaintiff's motion. Mr. Biddle opposed the motion. Because Mr. Millimet left a message with Mr. Blank that was not returned, Plaintiff files this motion under the assumption that it is being opposed by Defendant Gregorio.

## CERTIFICATE OF SERVICE

I certify that on March 24, 2005, a true and correct copy of the foregoing was served

upon all known counsel of record via first class U.S. mail as follows:

Charles R. Biddle
Ronald O. Holman
HOLMAN ROBERTSON ELDRIDGE
5949 Sherry Lane, Suite 1700
Dallas, Texas 75225

Thomas J. Fisher
SHANNON GRACEY RATLIFF & MILLER, LLP
777 Main Street, Suite 3800
Fort Worth, Texas 76102

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FM HOLDINGS, LLC, | § | |
| F/K/A FORWARDMARKET, LLC, | § | |
| | § | |
| Plaintiff, | § | Civil Action No. |
| | § | 3:05-CV-0166-G |
| vs. | § | |
| | § | |
| BILL MAHONEY; STEPHEN | § | |
| GREGORIO, | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S SUR-REPLY BRIEF TO REPLY BRIEF IN SUPPORT OF MOTION OF
DEFENDANT STEPHEN GREGORIO TO TRANSFER VENUE**

Gregorio's reply brief contention that the Agreement's forum selection clause warrants

transfer of this action from Texas to Massachusetts is spurious. Notwithstanding the myriad case

law propounded by Gregorio in his reply brief in this regard, the Agreement's forum selection

clause simply has no bearing on the venue of this action, because, as Gregorio admits, neither

Gregorio nor Mahoney are a party to the Agreement; therefore, they cannot invoke the clause.

Further, the Agreement is simply not at issue in this action. Rather, this action is based entirely

on Mahoney and Gregorio's misrepresentations; interpretation of the Agreement is not at issue in

this action. Thus, all of Gregorio's cited authority in his reply brief on this issue is

distinguishable.

Moreover, Gregorio's contention that the importance of the plaintiff's choice of venue is

overridden when the operative facts occur outside the district is misguided. Plaintiff alleged in

its complaint that the misrepresentations occurred in Massachusetts but that they were also

received and acted upon in Dallas County, Texas. Gregorio's cited authority, however, relates

only to instances when actionable conduct occurs and is experienced mostly in another forum.

**EXHIBIT "A"**

Gregorio acknowledges (page 6 & note 6), however, that this is not the case here. In addition, Gregorio's contention that Massachusetts has a superior interest in this dispute is unfounded and is irrelevant in light of Plaintiff's choice to bring suit in Texas. Nor does Massachusetts' supposed interest in this dispute undermine or lessen Texas' interest herein.

Finally, Gregorio's submission of federal docket statistics for the Northern District of Texas and the District of Massachusetts should not be considered by the Court. Gregorio could have, but chose not to, discuss this transfer of venue factor in his original motion. In any event, even if the Court were inclined to consider Gregorio's evidence in this regard, the statistics cited by Gregorio nevertheless do not augur in favor of transfer.

Accordingly, the Court should deny Gregorio and Mahoney's separate motions to transfer venue of this action from Texas to Massachusetts. Fundamentally, neither Gregorio nor Mahoney has shown that transfer of venue will do anything but simply transfer the inconvenience inherent in this dispute from Defendants to Plaintiff – which is simply insufficient to overcome the strong presumption in favor of Plaintiff's choice of venue.

## I.     DISCUSSION

### A.     The Agreement's Forum Selection Clause Is Irrelevant

In his reply brief, Gregorio disingenuously contends (page 2) that "Plaintiff's claims are sufficiently based on the rights arising under the Agreement." This is simply a gross mischaracterization of this action. Rather, Plaintiff's claims are against only Mahoney and Gregorio individually; Plaintiff's complaint includes no claim against Excelergy Corporation, which is the only counter-signatory to the Agreement with Plaintiff.

Further, Gregorio's cited authorities all involve one of two assumptions, neither of which is present here: (1) the plaintiff is suing the defendant in tort, not contract, in an attempt to evade

a contractual forum selection clause between the parties; and (2) the plaintiff has sued numerous defendants, only some of whom are technically bound by a contractual forum selection clause. The former assumption – and all of Gregorio's cited authority in this regard – is inapplicable because Plaintiff has not sued Excelergy – the party subject to a forum selection clause – and engaged in artful pleading in an attempt to evade the clause. Rather, Plaintiff has sued only Mahoney and Gregorio individually based on their misrepresentations to Plaintiff, for which they are individually liable under Massachusetts law irrespective of the Agreement. The latter assumption – and all of Gregorio's cited authority in this regard – is also inapplicable because Plaintiff has not sued Excelergy in addition to Mahoney and Gregorio. Excelergy is not a party defendant because the Agreement's relevance to this action is only that it identifies Plaintiff's damages: Mahoney and Gregorio's misrepresentations resulted in the future consideration in lieu of cash that Plaintiff accepted under the Agreement. The interpretation of the Agreement, therefore, is simply not at issue in this action, negating the import and applicability of the forum selection clause.[1]

Gregorio (page 3) cites *American Patriot Ins. Agency, Inc. v. Mutual Risk Mgmt., Ltd.*, 364 F.3d 884 (7th Cir. 2004), in support of his contention that suits for fraud rather than breach of contract do not negate a forum selection clause. Gregorio (pages 4-5) also cites *American Patriot* in support of his contentions that Mahoney and Gregorio not being signatories to the Agreement is irrelevant to the applicability of the forum selection clause, and that Plaintiff's artful pleading does not render the forum selection clause inapplicable. But *American Patriot* is simply a prime example of the aforementioned, inapplicable assumptions on which all of Gregorio's authority is based.

---

[1] Gregorio (page 4) acknowledges that whether a forum selection clause applies to tort claims depends upon whether such claims involve the interpretation of the parties' contract containing the forum selection clause.

*American Patriot* involves multiple defendants and multiple, contemporaneous contracts that were a "package," but only one contract contained a forum selection clause. *See id.* at 888-89. The Seventh Circuit recognized that no reason existed for some of the parties' disputes to be litigated at the site specified in the forum selection clause but others not to be, especially when the defendants to the other contracts lacking a forum selection clause were all affiliates of the signatory to the contract containing the forum selection clause, and all of the defendants worked together on the insurance program that the myriad contracts created. *See id.* at 889. The court determined that the "disputes arising under the other contracts [lacking a forum selection clause] therefore 'concern' the [agreement containing the forum selection clause]." *See id.* The court likewise rejected the argument that the relevant forum selection clause could be defeated by suing – in addition to the signatory to the contract with the forum selection clause – affiliates or employees of the party bound by the forum selection clause, or by suing defendants subject to a contractual forum selection clause in tort rather than in contract. *See id.* But Plaintiff, in contrast, has not sued Excelergy, rendering *American Patriot* and all of Gregorio's other cited authorities based on the aforementioned assumptions inapposite.[2]

Finally, Gregorio cites no authority for the proposition that a person who is not a signatory to an agreement containing a forum selection clause can nevertheless invoke or claim benefit of such clause. In fact, the Agreement (Gregorio Reply Brief Appendix page 37; emphasis in original) expressly provides that it has no third party beneficiaries:

> **No Third Party Beneficiaries.** This Agreement is solely for the benefit of the parties and their successors and permitted assigns, and does not confer any rights or remedies on any other person or entity.

---

[2] Gregorio (pages 3-4, note 4) disputes whether the Agreement's forum selection clause is narrow or broad. But regardless, because Excelergy is not a party to this dispute and because interpretation and construction of the Agreement is not at issue in this action, no claim comes within its purview.

Indeed, Gregorio's contention in this regard (page 4) also assumes that "Defendants were both signatories to the Agreement as officers of Excelergy," but as noted on page 38 of Gregorio's reply brief appendix, Mahoney (as President and CEO of Excleregy), not Gregorio, was the only signatory to the Agreement for Excelergy.

Nor would the Agreement's forum selection clause apply to this dispute even assuming Gregorio could invoke it, as the express terms of the clause demonstrate that it is limited to actions "seeking to enforce any provision of, or based on any right arising out of, this Agreement." Indeed, no dispute exists that no provision of or right in the Agreement is at issue in this action.

Thus, no basis exists for Gregorio's assertion that the Agreement's forum selection clause requires, or is even relevant to, the transfer of this action from Texas to Massachusetts.

### B. Plaintiff's Choice Of Venue Is Not Limited By The Operative Facts

The operative facts underlying this action occurred in Massachusetts *and Texas*. Plaintiff received and acted upon Gregorio's misrepresentations in Texas. Gregorio does not dispute Plaintiff's arguments and evidence submitted in its response brief and appendix in this regard. Thus, because the authority cited by Gregorio regarding this contention (pages 6-7) assumes that almost none of the operative facts occurred in the district of suit – which is clearly not the case here – Gregorio's contention should be rejected and the strong presumption in favor of Plaintiff's choice of forum should be upheld.

### C. Massachusetts Does Not Have A Superior Interest In This Dispute

First, because Plaintiff chose Texas as the place of suit, Massachusetts' supposedly superior interest in adjudicating this dispute is immaterial. Second, Gregorio (page 11) acknowledges that Texas has a significant interest in adjudicating this dispute. Third, the

authority cited by Gregorio (page 11) is readily distinguishable: these cases concern whether Texas or Massachusetts' law applies, not whether maintenance of this suit in Texas is proper. Finally, Gregorio cannot contend in one instant that Massachusetts' interest in this dispute is superior to Texas' based on Massachusetts' purported need to interpret its own law (page 11) and because Massachusetts is supposedly "better equipped" to adjudicate claims based on Massachusetts state law (page 12), yet argue in the next instant (page 12, note 12) that "Gregorio did not (and does not) admit that Plaintiff alleged sufficient contacts to state a claim under Chapter 93A or otherwise under Massachusetts state law." Thus, this supposed factor does not favor transfer, nor does Gregorio's discussion in this regard do anything to undermine Texas' interest in adjudicating this dispute.

**D.    Gregorio Cannot Contest That The Court Congestion Factor Favors Texas**

Initially, as noted in Plaintiff's motion for leave, Gregorio could have argued but did not argue this factor in his original motion. Indeed, Gregorio's original motion (page 10) simply states that "there is . . . no indication of docket congestion in either the proposed transferor or transferee venues." Thus, given that Gregorio presented no argument or evidence on this factor in his original motion, Gregorio's reply brief and appendix in this regard should not be taken into account and/or should be stricken from the record of this case.

Assuming, however, that the Court takes into account Gregorio's argument and authorities regarding this factor, it nevertheless weighs in favor of maintaining venue of this action in Texas. Gregorio (page 13) disputes the utility of the 2003 CJRA Report submitted by Plaintiff in its supplemental response brief, but he does not deny that the statistics contained therein reflect that the Northern District of Texas has less backlog than does the District of Massachusetts. Nor does Gregorio dispute that the 2003 CJRA Report is the most recent CJRA

Report. Further, the statistics submitted by Gregorio also show that the Northern District of Texas is a superior forum than is the District of Massachusetts in terms of court congestion, for, as Gregorio admits (page 14), "the statistics that indicate the median times from filing to disposition" are "[m]ore important":

- For civil case dispositions during the 12-month period ending September 30, 2003, the District of Massachusetts had 2,616 total cases and a median time interval from filing to disposition of 10.7 months (Gregorio Appendix, Exhibit 2, page 40), whereas the Northern District of Texas had 3,045 total cases but a median time interval from filing to disposition of 7.2 months (*id.* p. 41); and

- For civil case dispositions during the 12-month period ending September 30, 2004, the District of Massachusetts had 4,496 total cases and a median time interval from filing to disposition of 9.4 months (Gregorio Appendix, Exhibit 4, page 46), whereas the Northern District of Texas had 4,686 total cases but a median time interval from filing to disposition of 7.4 months (*id.* p. 47).[3]

Thus, notwithstanding Gregorio's assertions to the contrary, and even assuming the Court considers Gregorio's reply brief and appendix, the court congestion factor definitely favors maintaining venue of this suit in Texas.

## II.    CONCLUSION

For the foregoing reasons and the reasons set forth in Plaintiff's response brief and supplemental response brief, Plaintiff respectfully requests that the Court deny Gregorio (and Mahoney's) motion to transfer venue from Texas to Massachusetts. Gregorio has made no demonstration that transfer of venue is warranted under the circumstances. Indeed, Gregorio has

---

[3] Notably, these statistics are so even though the Northern District of Texas had one less judge than the District of Massachusetts as of September 30, 2003 and 2004. (Gregorio Reply Brief Appendix, Exhibit 4, pages 46-47)

not shown that transfer of venue from Texas to Massachusetts will do anything other than simply

eviscerate Plaintiff's choice of venue and impermissibly shift the inconvenience inherent in this

dispute from Defendants to Plaintiff.

Respectfully submitted,

Kimberly A. Elkjer
Texas State Bar No. 06527040
Robert M. Millimet
Texas State Bar No. 24025538
SCHEEF & STONE, L.L.P.
5956 Sherry Ln., Suite 1400
Dallas, Texas 75225
(214) 706-4200
(214) 706-4242 (Fax)

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I certify that on March 24, 2005, a true and correct copy of the foregoing was served

upon all known counsel of record via first class U.S. mail as follows:

Charles R. Biddle
Ronald O. Holman
HOLMAN ROBERTSON ELDRIDGE
5949 Sherry Lane, Suite 1700
Dallas, Texas 75225

Thomas J. Fisher
SHANNON GRACEY RATLIFF & MILLER, LLP
777 Main Street, Suite 3800
Fort Worth, Texas 76102

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FM HOLDINGS, LLC, f/k/a | ) | |
| FORWARDMARKET, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| | ) | |
| VS. | ) | 3:05-CV-0166-G |
| | ) | |
| BILL MAHONEY and | ) | |
| STEPHEN GREGORIO, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the court is the motion of the plaintiff for leave to file a surreply brief to the reply brief in support of the motion of defendant Stephen Gregorio to transfer venue. The plaintiff's motion for leave to file a surreply is **DENIED**.

**SO ORDERED**.

March 28, 2005.

_____
A. JOE FISH
CHIEF JUDGE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

FM HOLDINGS, LLC, f/k/a        )
FORWARDMARKET, LLC,            )
                              )
            Plaintiff,         )          CIVIL ACTION NO.
                              )
VS.                           )          3:05-CV-0166-G
                              )
BILL MAHONEY and              )
STEPHEN GREGORIO,             )
                              )
            Defendants.        )

### ORDER REGARDING INTENTION TO ADMINISTER CASE ELECTRONICALLY

The court has decided that this case should be enrolled in the court's

Electronic Case Filing ("ECF") system.  Accordingly, by **June 6, 2005**, all counsel of

record in this case shall:

1.    Print and review Miscellaneous Order
      Number 61;

2.    Print and review the Administrative
      Procedure Manual;

3.    Complete the online Attorney Tutorial for
      ECF Training;

4.    Print and review the User Guide; and

5.    Complete the Registration Form and forward
it to the clerk's office.

This information is located on the court's website at

http://www.txnd.uscourts.gov/filing/ecf.html

Upon receipt of the completed registration forms or by **June 6, 2005**, the

court will enter an order designating the case as an electronic filing case.  Questions

should be directed to **Autumn Yarnell**, **Operations Support Manager**, at

**214.753.2160** or the **ECF Help Desk** at **1.866.243.2866**.

**SO ORDERED**.

May 26, 2005.

A. JOE FISH
CHIEF JUDGE

- 2 -

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FM HOLDINGS, LLC, f/k/a | ) | |
| FORWARDMARKET, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| | ) | |
| VS. | ) | 3:05-CV-0166-G |
| | ) | |
| BILL MAHONEY and | ) | |
| STEPHEN GREGORIO, | ) | |
| | ) | |
| Defendants. | ) | |

**<u>ORDER</u>**

The court has decided that this case is suitable for electronic case filing.
Accordingly,

1.    The electronic record will be the official court record in this case.

2.    This case will be governed, unless otherwise ordered, by Miscellaneous
Order 61, the CM/ECF Civil and Criminal Administrative Procedures Manual, and
the CM/ECF User Guide.

3.    ECF questions should be directed to **Autumn Yarnell**; at
**214.753.2160** or the **Help Desk** at **1.866.243.2866**.

4.     A paper copy of each document filed electronically must be delivered to the *judge's chambers* within **three days** of the electronic file date.  **The copy must be marked "Judge's Copy" and must have a copy of the Notice of Electronic Filing for that document affixed to the front of the copy.**

**SO ORDERED**.

June 6, 2005.

A. JOE FISH
CHIEF JUDGE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

FM HOLDINGS, LLC f/k/a          )
FORWARDMARKET, LLC,             )
                                )
            Plaintiff,          )          CIVIL ACTION NO.
                                )
VS.                             )          3:05-CV-0166-G
                                )
BILL MAHONEY and                )
STEPHEN GREGORIO,               )
                                )
            Defendants.         )

## MEMORANDUM OPINION AND ORDER

Before the court are (1) the motion of the defendant Bill Mahoney
("Mahoney") to dismiss the claims asserted against him for lack of personal
jurisdiction, or, in the alternative, to dismiss the action for improper venue, or, in the
further alternative, to transfer this action to the District of Massachusetts; and (2) the
motion of the defendant Stephen Gregorio ("Gregorio") to transfer this action to the
District of Massachusetts.  For the reasons discussed below, Mahoney's motion to
dismiss is denied, while the motions of Mahoney and Gregorio to transfer this action
to the District of Massachusetts are granted.

# I.  BACKGROUND

On or about January 1, 2003, the plaintiff FM Holdings, LLC, f/k/a Fowardmarket, LLC ("FM Holdings") -- a Texas limited liability company with its principal place of business in Dallas, Texas -- entered into an Asset Purchase Agreement (the "Agreement") with Excelergy Corporation ("Excelergy"), pursuant to which Excelergy purchased certain assets and assumed certain liabilities of FM Holdings.  Original Petition ("Petition") ¶¶ 2, 8, attached as Exhibit 3 to the Notice of Removal.  In the months prior to the execution of the Agreement, the parties negotiated the Agreement's terms and conditions.  *Id*. ¶ 10.  FM Holdings was represented by Kevin Swenke ("Swenke").  Defendant Bill Mahoney's Brief in Support of Rule 12(b)(2) Motion Objecting to Jurisdiction or Subject to and Without Waiving Bill Mahoney's Rule 12(b)(2) Motion and, in the Alternative, Bill Mahoney's Motion to Dismiss Pursuant to Rule 12(b)(3) for Improper Venue or, Subject to and Without Waiving the Foregoing, in the Alternative, Defendant's Motion to Dismiss Pursuant to 28 U.S.C.A. § 1391 or Subject to and Without Waiving the Foregoing, in the Alternative, Defendant's Motion to Transfer for *Forum Non-Conveniens* and 28 U.S.C.A. § 1404 ("Mahoney's Motion") at 1-2; Affidavit of J. Kevin Swenke ("Swenke Affidavit") ¶¶ 5-6, attached as Exhibit 1 to Appendix in Support of Plaintiff's Brief in Response to Defendant Bill Mahoney's Rule 12(b)(2) and (3) Motions and Motion to Transfer Pursuant to 28 U.S.C.A. § 1404 and for

*Forum Non Conveniens*, and to Defendant Stephen Gregorio's Motion to Transfer Venue. Excelergy was represented by Mahoney, then the Chief Executive Officer of Excelergy, and Gregorio, then the Chief Financial Officer of Excelergy. Petition ¶ 11. Mahoney and Gregorio are both residents of Massachusetts. *Id.* ¶¶ 3-4.

FM Holdings brought this case alleging that during the course of the negotiations Mahoney and Gregorio (collectively, the "defendants") made certain misrepresentations and omissions to FM Holdings, causing it to enter into the Agreement. *Id.* ¶¶ 13-15. Specifically, FM Holdings asserts that one or both of the defendants made the following misrepresentations or omissions: (1) that Excelergy was profitable in the third quarter of 2002; (2) that Excelergy would be profitable in the future; (3) that Excelergy's market value was $100 million; (4) failed to disclose potential liability for Excelergy's breach of a lease agreement with Boston Properties, Inc. ("Boston Properties"); and (5) failed to disclose that Excelergy had made substantial personal loans to Mahoney. *Id.* ¶¶ 14, 16-17, 19, 21, 23, 26. The action was originally filed in the 14th Judicial District Court of Dallas County, Texas on December 20, 2004, and the defendants were served with the petition on December 27, 2004. Petition at 1; Notice of Removal ¶ 1. On January 26, 2005, the action was removed to this court.

## II. ANALYSIS

### A. Personal Jurisdiction

#### 1. *The Factual Standard: A Prima Facie Case*

When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident. *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.), *cert. denied*, 513 U.S. 930 (1994); *Gardemal v. Westin Hotel Company*, 186 F.3d 588, 592 (5th Cir. 1999). If the district court chooses to decide the matter without an evidentiary hearing, the plaintiff may meet its burden by presenting a *prima facie* case for personal jurisdiction. *Wilson*, 20 F.3d at 648; *Gardemal*, 186 F.3d at 592.

The court will take the allegations of the complaint as true, except where they are controverted by opposing affidavits, and all conflicts in the facts are resolved in favor of the plaintiff. *Wilson*, 20 F.3d at 648; *Gardemal*, 186 F.3d at 592. In making its determination, the court may consider affidavits, interrogatories, depositions, oral testimony, or any combination of recognized discovery methods. *Allred v. Moore & Peterson*, 117 F.3d 278, 281(5th Cir. 1997), *cert. denied*, 522 U.S. 1048 (1998); *Thompson v. Chrysler Motors Corporation*, 755 F.2d 1162, 1165 (5th Cir. 1985).

#### 2. *The Legal Standard*

A federal district court may exercise personal jurisdiction over a nonresident defendant if: (1) the long-arm statute of the forum state permits the exercise of

personal jurisdiction over the defendant; and (2) the exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution. *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002); see also *J.R. Stripling v. Jordan Production Company, LLC*, 234 F.3d 863, 869 (5th Cir. 2000). Applying state law, this court must first determine whether Texas, the forum state, could assert long-arm jurisdiction. *Pedelahore v. Astropark, Inc.*, 745 F.2d 346, 347 (5th Cir. 1984). Because the Texas long-arm statute confers jurisdiction to the limits of the federal constitution, *Access Telecom, Inc. v. MCI Telecommunications Corporation*, 197 F.3d 694, 716 (5th Cir. 1999), *cert. denied*, 531 U.S. 917 (2000); *Hall v. Helicopteros Nacionales de Colombia, S.A.*, 638 S.W.2d 870, 872 (Tex. 1982), *rev'd on other grounds*, 466 U.S. 408 (1984), the court need only concern itself with the federal due process inquiry. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999); *Ruston Gas Turbines, Inc. v. Donaldson Company, Inc.*, 9 F.3d 415, 418 (5th Cir. 1993); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 17. 041, *et seq.* (Vernon 1997) (Texas long-arm statute).

### 3. *Due Process Requirements*

Due process requires the satisfaction of two elements to exercise personal jurisdiction over a nonresident defendant: (1) the nonresident must have some minimum contact with the forum that results from an affirmative act on his part such that the nonresident defendant could anticipate being haled into the courts of the forum state; and (2) it must be fair or reasonable to require the nonresident to defend

the suit in the forum state. *Burger King Corporation v. Rudzewicz*, 471 U.S. 462,

474-77 (1985). The Due Process Clause ensures that persons have a "fair warning

that a particular activity may subject [them] to the jurisdiction of a foreign

sovereign." *Id.* at 472 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens,

J., concurring)).

a. Minimum Contacts

To establish minimum contacts, a nonresident defendant must do some act by

which it "purposefully avails itself of the privilege of conducting activities within the

forum State, thus invoking the benefits and protections of its laws." *Hanson v.*

*Denckla*, 357 U.S. 235, 253 (1958) (citing *International Shoe Company v. Washington*,

326 U.S. 310, 319 (1945)); see also *Electrosource, Inc. v. Horizon Battery Technologies,*

*Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999). The unilateral activity of one asserting a

relationship with the nonresident defendant does not satisfy this requirement.

*World-Wide Volkswagen Corporation v. Woodson*, 444 U.S. 286, 298 (1980) (quoting

*Hanson*, 357 U.S. at 253). In determining whether the exercise of jurisdiction is

appropriate, the Supreme Court has considered whether a defendant's contacts with

the forum state make it reasonable to require the defendant to defend the particular

suit in that forum. *Shaffer*, 433 U.S. at 203; *Quill Corporation v. North Dakota*, 504

U.S. 298, 307 (1992).

- 6 -

Minimum contacts can be sufficient to establish two types of *in personam* jurisdiction over a nonresident defendant:  specific jurisdiction and general jurisdiction.  Specific jurisdiction exists if the cause of action is related to, or arises out of, the nonresident defendant's contacts with the forum state and those contacts meet the due process standard.  *Stripling*, 234 F.3d at 871 (quotations and citations omitted).  General jurisdiction, on the other hand, may be found when the claim is unrelated to the nonresident's contacts with the forum, but where those contacts are "continuous and systematic."  *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984); *Alpine View Company Limited v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000).

Under either a specific or general jurisdiction analysis, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum [s]tate."  *Burger King*, 471 U.S. at 474 (quoting *International Shoe*, 326 U.S. at 316).  The "purposeful availment" requirement of the minimum contacts inquiry "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . or of the 'unilateral activity of another party or a third person.'"  *Id.* at 475 (citations omitted).  A plaintiff must establish a substantial connection between the nonresident defendant and the forum state.  *Jones v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1068 n.9 (5th Cir.), *cert. denied*, 506 U.S. 867 (1992).  "[W]hether the minimum

- 7 -

contacts are sufficient to justify subjection of the non-resident to suit in the forum is determined not on a mechanical and quantitative test, but rather under the particular facts upon the *quality and nature* of the activity with relation to the forum state." *Mississippi Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1006 (5th Cir. 1982) (emphasis added); see also *Coats v. Penrod Drilling Corporation*, 5 F.3d 877, 884 (5th Cir. 1993), *cert. denied*, 510 U.S. 1195 (1994).

In the instant action, FM Holdings argues that this court can exercise specific jurisdiction over Mahoney. Plaintiff's Brief in Response to Defendant Bill Mahoney's Rule 12(b)(2) and (3) Motions and Motion to Transfer Pursuant to 28 U.S.C.A. § 1404 and for *Forum Non Conveniens* and to Defendant Stephen Gregorio's Motion to Transfer Venue ("Plaintiff's Response") at 5. FM Holdings has not contended that this court has general personal jurisdiction over Mahoney. Accordingly, the court need only determine if it has specific personal jurisdiction over Mahoney.

FM Holdings asserts that Mahoney is subject to the jurisdiction of this court because his allegedly tortious conduct occurred, at least partly, in Texas. Plaintiff's Response at 5. Specifically, FM Holdings asserts that "Mahoney made numerous actionable misrepresentations to [FM Holdings] in Texas by telephone, facsimile, and email." *Id.* "Such communications into Texas," FM Holdings argues, "constitute purposeful availment of doing business in Texas sufficient to permit the [c]ourt to exercise specific personal jurisdiction over Mahoney." *Id.*

"When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999). "The defendant is purposefully availing himself of 'the privilege of causing a consequence' in Texas." *Id.* (citing *Serras v. First Tennessee Bank National Association*, 875 F.2d 1212 (6th Cir. 1989)). In *Wien Air*, the court held that communications made by a non-resident defendant to the plaintiff's employees in Texas which "contained the promises, assurances, and representations that [were] at the heart of the lawsuit" were sufficient to establish minimum contacts with Texas. *Id.* at 212. The Fifth Circuit made a similar determination in *Lewis v. Fresne*, 252 F.3d 352 (5th Cir. 2001). In *Lewis*, the court held that phone calls made by a non-resident defendant to a plaintiff in Texas were sufficient to establish minimum contacts with Texas, where the purpose of the call was to convince the plaintiff to make a loan to the defendant based on false statements made during the call. *Lewis*, 252 F.3d at 358. In addition to the phone call, another defendant was held to be subject to personal jurisdiction in Texas when he "signed and sent security agreements to [the plaintiff] in Texas" which contained alleged fraudulent representations. *Id.*

In reply, Mahoney cites this court's opinion in *British Aviation Insurance Group v. American Eurocopter Corporation*, No. 3:96-CV-0392-G, 1997 WL 118425 (N.D. Tex. March 12, 1997). Defendant Bill Mahoney's Reply Brief in Response to

Plaintiff FM Holdings, LLC, f/k/a Forwardmarket, LLC's Response ("Mahoney's Reply"). This court's decision in *British Aviation*, however, is distinguishable. There, the court stated that "it is not the small number of [the third-party defendant's] contacts with Texas that concerns the court but rather that these contacts do not appear to be *purposefully directed at Texas*." *Id*. at \*6 (emphasis in original). The non-resident third-party defendant in *British Aviation* was an insurance agency whose sole contact with the Texas plaintiffs was the mailing of insurance certificates. *Id.* However, these certificates, this court held, were incidental to its handling of the policy, and furthermore, Texas entities made up a very small portion of the entities to which the certificates were mailed. *Id.*

Mahoney further argues that because FM Holdings, through Swenke, initiated the talks between the parties, he is not subject to personal jurisdiction in Texas. Mahoney's Reply ¶ 5 (citing *British Aviation*, 1997 WL 118425 at \* 3, for the proposition that "the unilateral activity of one asserting a relationship with the nonresident defendant does not satisfy [the purposeful availment] requirement"). However, it is Mahoney's actions, and not those of FM Holdings, that form the basis of FM Holding's arguments in support of personal jurisdiction.

As stated above, the allegations made in the complaint are to be construed as true, except when they are contradicted by opposing affidavits, and all conflicts must be resolved in favor of the plaintiff. *Wilson*, 20 F.3d at 648. In the original petition,

- 10 -

filed in Texas state court, FM Holdings claimed that the defendants made
misrepresentations and omissions regarding Excelergy's third quarter financial
performance via "email attachments sent to [FM Holdings] in Dallas County, Texas,
in telephone communications from Massachusetts to Plaintiff in Dallas County,
Texas, and in a presentation given to Plaintiff in Massachusetts."  Petition ¶ 14.  FM
Holdings further alleges that:

> [the] [d]efendants' misrepresentations and omissions to
> [FM Holdings] occurred in Massachusetts, but were
> received by [FM Holdings] in Dallas County, Texas.
> Specifically, [the] [d]efendants communicated their
> misrepresentations and omissions . . . via presentations to
> and exchanges with [FM Holdings] in Massachusetts, as
> well as to [FM Holdings] in Dallas County, Texas via
> documents and communications sent to [FM Holdings] by
> email, telephone, and facsimile.

*Id*. ¶ 28.  FM Holdings further asserts that these misrepresentations "were a critical
factor that induced [FM Holdings] to enter into the Agreement."  *Id*. ¶ 27.

In support of his motion to dismiss for lack of personal jurisdiction, Mahoney
has submitted an affidavit in which he states:

> During 2002 [FM Holdings], through its representative,
> Kevin Swenke, contacted me in Massachusetts to introduce
> himself and his company.  Kevin Swenke made numerous
> trips to Boston, Massachusetts to discuss business matters
> with and make presentations to the company with which I
> [(Mahoney)] was employed at the time.  At no time did I
> travel to Texas in connection with the matters about which
> [FM Holdings] now complains.

Affidavit of William T. Mahoney ("Mahoney Affidavit") ¶ 5, attached as Exhibit 1 to Appendix [in Support of Bill Mahoney's Motion to Dismiss for Lack of Jurisdiction]. Nowhere in his affidavit does Mahoney dispute FM Holding's allegations that he directed communications regarding the financial status of Excelergy to FM Holdings in Texas via email, telephone, or facsimile. *See generally* Mahoney Affidavit. Thus, for purposes of determining the instant motion to dismiss, the court accepts as true FM Holdings' uncontroverted allegations that misrepresentations were made by Mahoney and Gregorio via email, telephone, and facsimile communications directed towards FM Holdings in Texas.

Mahoney directed communications regarding the Agreement to FM Holdings in Texas. These communications, FM Holdings alleges, included reports on Excelergy's profits in the third quarter of 2002, its potential profitability in the future, and the market value of the company. Petition ¶¶ 21, 26, 28. The content of the communications from Mahoney to FM Holdings is what gives rise to the causes of action in this case. Moreover, these alleged misrepresentations are at the heart of this action. Mahoney knew that the communications were directed towards FM Holdings in Texas and that the contents of the communications would be relied upon by FM Holdings. These actions represent Mahoney's purposeful availment of doing business in Texas.

- 12 -

b.  Fair Play and Substantial Justice

The due process inquiry limits the court's power to exercise personal jurisdiction over a nonresident if the exercise of jurisdiction under the circumstances would offend "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  In determining whether the exercise of jurisdiction violates traditional notions of fair play and substantial justice, the court evaluates the following factors:  (1) the burden on the defendant by having to litigate in the forum; (2) the forum state's interests in the lawsuit; (3) the plaintiff's interests in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the shared interest of states in furthering fundamental social policies.  *Wien Air*, 195 F.3d at 215 (citing *Ruston Gas*, 9 F.3d at 421); *World-Wide Volkswagen*, 444 U.S. at 292.  It is Mahoney's burden to show that, in light of these factors, conducting litigation in this court would be "so gravely difficult and inconvenient" that he would be at a "severe disadvantage" in comparison to FM Holdings.  *Burger King*, 471 U.S. at 478 (citations omitted).

Mahoney argues that his burden in having to litigate in Texas would be substantial because (1) he and Gregorio are located in Massachusetts; (2) Excelergy is located in Massachusetts; (3) the landlord in the lease agreement which FM Holdings claims Excelergy prematurely terminated is located in Massachusetts; and (4) many of

- 13 -

the witnesses listed by the parties are located in Massachusetts.  Mahoney's Reply

¶ 6.  There is always some burden on a nonresident defendant when he must litigate

in a foreign forum.  The burdens listed by Mahoney, however, are no more onerous

than those that every nonresident defendant faces when litigating outside his home

state.  Furthermore, Mahoney has failed to provide any persuasive argument which

indicates that it would be a "severe disadvantage" to him to litigate this dispute in

Texas.

  The state of Texas clearly has an interest in protecting companies formed

under its laws and based in Texas from the fraudulent acts of nonresidents.  At the

same time, however, Massachusetts clearly has an interest in holding accountable its

residents who violate the Massachusetts Unfair Trade Practices Act.  Thus, this factor

remains balanced, and should not be used to disturb the plaintiff's choice of forum.

  FM Holdings clearly has an interest in convenient and effective relief.  It would

appear that a Texas forum is certainly more convenient for FM Holdings.

Additionally, it cannot be said that relief obtained in this court would be any more or

less effective than relief obtained in the District of Massachusetts.  Also, litigation in

Texas would hinder neither the judicial system's interest in efficient resolution of

controversies nor the shared interest of states in furthering fundamental social

policies.  There is no indication that this court provides a forum that so greatly favors

one party's interests over the other's.  Accordingly, litigating this dispute in Texas does not offend the traditional notions of fair play and substantial justice.

## B. <u>Improper Venue</u>

In an alternative motion, Mahoney seeks dismissal of this action under Rule 12(b)(3) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1391 for improper venue.  Mahoney's Motion ¶ 19.  In its response, FM Holdings asserts that Mahoney waived his objection to venue because this action was removed to this court.  Plaintiff's Response at 13.  Mahoney argues that because he merely assented to Gregorio's removal of this action, he has not waived his improper venue objection.  Mahoney's Reply ¶ 7.

"[Section] 1391 has no application to... a removed action.  The venue of removed actions is governed by 28 U.S.C. . . . [§] 1441(a)."  *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665 (1953).  Generally, "a defendant who removes an action waives his objection to venue."  *Burlington Northern & Santa Fe Railway Company v. Herzog Services, Inc.*, 990 F. Supp. 503, 504 (N.D. Tex. 1998).  Removal is proper only if all served defendants join in the notice of removal.  *Gillis v. Louisiana*, 294 F.3d 755, 759 (5th Cir. 2002).  A defendant effectively joins in the notice of removal if he consents, in writing, to another defendants notice of removal.  *Id*.  By assenting to Gregorio's notice of removal, Mahoney has effectively joined in the removal petition.  Thus, Mahoney has waived his objection to venue.

C. Transfer of Venue under 28 U.S.C. § 1404(a)

When deciding whether to transfer venue, discretion must be exercised according to an "individualized, case-by-case consideration of convenience and fairness." *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964). Here, both Mahoney and Gregorio seek to have this action transferred to the District of Massachusetts pursuant to 28 U.S.C. § 1404(a). Motion to Dismiss ¶¶ 20-25; Brief in Support of Motion of Defendant Stephen Gregorio to Transfer Venue ("Gregorio's Motion") at 1.

1. *The Legal Standard*

A district court may transfer any civil case "[f]or the convenience of parties and witnesses, in the interest of justice, . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of Section 1404(a) "is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense . . . .'" *Van Dusen*, 376 U.S. at 616 (quoting *Continental Grain Company v. Barge FBL-585*, 364 U.S. 19, 26, 27 (1960)). The decision to transfer a pending case is committed to the sound discretion of the district court. *Jarvis Christian College v. Exxon Corporation*, 845 F.2d 523, 528 (5th Cir. 1988); see also *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998), *cert. denied*, 526 U.S. 1157 (1999); *Caldwell v. Palmetto State Savings Bank of South Carolina*, 811 F.2d 916, 919 (5th Cir. 1987). In exercising its discretion, the

- 16 -

court considers "all relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Peteet v. Dow Chemical Company*, 868 F.2d 1428, 1436 (5th Cir.) (internal quotations and citations omitted), *cert. denied*, 493 U.S. 935 (1989).

Generally, the plaintiff is afforded some deference in choosing a forum. *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966); *Lindloff v. Schenectady International*, 950 F. Supp. 183, 185 (E.D. Tex. 1996). However, the plaintiff's choice of forum has reduced significance where most of the operative facts occurred outside the district. *Lindloff*, 950 F. Supp. at 185; see also *Robertson v. Kiamichi Railroad Company, L.L.C.*, 42 F. Supp. 2d 651, 656 (E.D. Tex. 1999).

"The first issue that a district court must address in ruling on a motion to transfer under § 1404(a) is the question of whether the judicial district to which transfer is sought qualifies under the applicable venue statutes as a judicial district where the civil action 'might have been brought.'" *In re Horseshoe Entertainment*, 337 F.3d 429, 433 (5th Cir.), *cert. denied*, 540 U.S. 1049 (2003). This action could have originally been brought in the District of Massachusetts, as both defendants are citizens of Massachusetts and both reside in the district. *See* 28 U.S.C. § 1391(a)(1).

In deciding whether to transfer a case, the court should consider (1) the convenience of the parties, (2) the convenience of material witnesses, (3) the

- 17 -

availability of process to compel the presence of unwilling witnesses, (4) the cost of

obtaining the presence of witnesses, (5) the relative ease of access to sources of proof,

(6) calendar congestion, (7) where the events in issue took place, and (8) the interests

of justice in general.  *Minka Lighting, Inc. v. Trans Globe Imports, Inc.*, No.

3:02-CV-2538-G, 2003 WL 21251684 at *2 (N.D. Tex. May 23, 2003); see also

*Gundle Lining Construction Corporation v. Fireman's Fund Insurance Company*, 844 F.

Supp. 1163, 1165 (S.D. Tex. 1994).  In addition to balancing the above factors,

"[t]he presence of a forum-selection clause [in an agreement between the parties] will

be a significant factor that figures centrally in the district court's calculus."  *Stewart*

*Organization, Inc. v. Ricoh Corporation*, 487 U.S. 22, 29 (1988).  "Under section

1404(a), a forum-selection clause is not to be given either 'dispositive consideration'

or 'no consideration.'"  *Texas Source Group, Inc. v. CCH, Inc.*, 967 F. Supp. 234, 238

(S.D. Tex. 1997) (citing *Stewart*, 487 U.S. at 29, 31).  Therefore, the court's analysis

under 28 U.S.C. § 1404(a) must include the parties' expression of their venue

preference.  *Stewart*, 487 U.S. at 29-30; *Elliott v. Carnival Cruise Lines*, 231 F. Supp.

2d 555, 560 (S.D. Tex. 2002).  Given the significance a valid forum-selection clause

may bear on the court's transfer analysis, the court will first determine whether the

Agreement's forum-selection clause is applicable to this action.

2. *The Forum Selection Clause*

Gregorio asserts that the Agreement's forum selection clause is applicable and warrants the transfer of this case to the United States District Court for the District of Massachusetts. Reply Brief in Support of Motion of Defendant Stephen Gregorio to Transfer Venue ("Gregorio's Reply") at 1-6. The plaintiff counters that the forum selection clause is not applicable to this action because the defendants were not parties to the agreement and because this is not a breach of contract cause of action. Plaintiff's Response at 22 n. 10.

a. Enforceability of the Forum-Selection Clause

The court first addresses whether the forum selection clause contained in the Agreement is enforceable. In deciding this question, the court applies federal law. *Stewart Organization, Inc.*, 487 U.S. at 31-32 (holding that "federal law . . . governs the District Court's decision whether to give effect to the parties' forum-selection clause . . . .").

A forum selection clause is *prima facie* valid and enforceable. *Seattle-First National Bank v. Manges*, 900 F.2d 795, 799 (5th Cir. 1990); *Kevlin Services, Inc. v. Lexington State Bank*, 46 F.3d 13, 15 (5th Cir. 1995); *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 589-95 (1991). To overcome the presumption of validity, the party challenging a forum selection clause has a "heavy burden" of demonstrating that enforcement of the clause would be unreasonable under the circumstances.

- 19 -

*Mitsui & Company (USA), Inc. v. Mira M/V*, 111 F.3d 33, 35 (5th Cir. 1997); see also *M/S Bremen v. Zapata Off-Shore Company*, 407 U.S. 1, 15 (1972).  In general, a court will find it unreasonable to enforce a forum selection clause that is the product of fraud or overreaching, violates strong public policy, or effectively deprives a party of his day in court.  *Mitsui*, 111 F.3d at 35; *M/S Bremen*, 407 U.S. at 15-18.

Neither side has argued that the forum-selection clause is not enforceable *as to the parties to the Agreement*.  Accordingly, the court finds the clause is, as a general matter, enforceable; however, the court must determine whether the scope of the clause encompasses the dispute in this case.

### b.  Scope of Forum-Selection Clause

In resolving whether this case falls within the scope of the Agreement's forum-selection clause, the court must answer two questions:  (1) are Mahoney and Gregorio, as non-parties to the Agreement, subject to the obligations of, and rights conferred by, the forum-selection clause? and (2) does the forum-selection clause cover tort causes of action?  The forum-selection clause will apply to this case only if both questions are answered in the affirmative.

### i.  *Can Mahoney and Gregorio Enforce the Forum-Selection Clause?*

Several courts have held that a non-party to an agreement is bound by the agreement's forum-selection clause where the non-party is so intertwined with the relationship that it was foreseeable he would bound by the clause's restriction.  E.g.,

*Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1299 (11th Cir. 1998), *cert. denied*, 525 U.S. 1093 (1999); *Hugel v. Corporation of Lloyd's*, 999 F.2d 206, 209-210 (7th Cir. 1993); *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 (9th Cir. 1988); *Texas Source Group, Inc.*, 967 F. Supp. at 237; *Clinton v. Janger*, 583 F. Supp. 284, 289-90 (N.D. Ill. 1984).  Gregorio contends, on the basis of this proposition, that he is entitled to enforce the forum-selection clause against FM Holdings.  Gregorio's Reply at 4-5.  The court disagrees with Gregorio and finds that the Agreement's forum-selection clause cannot be enforced against FM Holdings by either defendant.

In certain instances, a non-party to a contract containing a forum-selection clause may fall within the scope of that clause.  However, this is not one of those instances.  In the cases cited by Gregorio where a non-party to an agreement has been included within the scope of a forum-selection clause, the relationship between the non-party and the party to the agreement was much closer than the relationship between Excelergy and Gregorio/Mahoney.  For example, in *Hugel* and *Clinton*, the non-parties to the agreement bound by the forum-selection clause were the owners of the entities that were signatories to the agreement.  *Hugel*, 999 F.2d 206 at 209-210; *Clinton*, 583 F. Supp. at 289-90; see also *Lipcon*, 148 F.3d at 1299 (spouses of owners of the party-entity were bound by the forum-selection clause).  Additionally, in *Manetti-Farrow*, the non-party was an entity related to the entity which was a party to

the agreement. *Manetti-Farrow*, 858 F.2d at 514. Finally, in *Texas Source Group*, the non-party's "relationship with the plaintiffs and the defendants is so inextricably intertwined that he should be subject to the forum-selection clause." *Texas Source Group*, 967 F. Supp. at 237. Here, Mahoney and Gregorio were employees of Excelergy, who acted on its behalf in the negotiation of the Agreement. No party has asserted that Gregorio or Mahoney had a personal stake in the Agreement or its enforcement, other than fulfilling the duties of the positions they held at the time the agreement was consummated.

ii. *Causes of Action Contemplated by the Agreement's Forum-Selection Clause*

Because Mahoney and Gregorio lack the power to invoke the forum-selection clause, the court need not consider whether the forum selection clause applies to the type of claims asserted in the instant case. See *Woolf v. Mary Kay Inc.*, 176 F. Supp. 2d 642, 647 (N.D. Tex. 2001).

3. *Analyzing the Remaining Factors*

Since no valid forum-selection clause exists between the parties to this action, determination of Mahoney's and Gregorio's motions to transfer this action will turn on the seven factors listed above.

a. Factor (1) -- Convenience of the Parties

Whether this action is transferred to Massachusetts or remains in this court, it is clear that at least one party will be inconvenienced by the forum. If the court

- 22 -

transfers the case to the District of Massachusetts, FM Holdings will be inconvenienced. If the court denies the motion to transfer and the action remains in this court, Mahoney and Gregorio will be inconvenienced. Accordingly, this factor provides no guidance in the court's determination of whether transfer is appropriate.

      b.   <u>Factors (2), (3) & (4) -- Convenience of Witnesses, Availability of Process, and Cost of Obtaining Presence of Witnesses</u>

The convenience of the witnesses is often regarded as the most important factor to be considered in deciding whether to transfer venue. *Travelers Indemnity Company of America v. National Union Fire Insurance Company of Pittsburgh, Pennsylvania*, No. 3:02-CV-0585-G, 2002 WL 1575409 at \*2 (N.D. Tex. July 16, 2002); *Gundle*, 844 F. Supp. at 1166; *Fletcher v. Southern Pacific Transportation Company*, 648 F. Supp. 1400, 1401-02 (E.D. Tex. 1986). Of the witnesses, the convenience of the non-party witnesses is accorded the greatest weight. *Travelers Indemnity*, 2002 WL 1575409 at \*2; *Gundle*, 844 F. Supp. at 1166. A party seeking a transfer for the convenience of witnesses "must specifically identify the key witnesses and outline the substance of their testimony." *N2 Consulting, LLC v. Engineered Fastener Company*, No. 3:02-CV-0308-BD, 2002 WL 31246770 at \*3 (N.D. Tex. Oct. 2, 2002) (Kaplan, Magistrate J.) (internal quotations and citations omitted); see also *AMS Staff Leasing v. Starving Students, Inc.*, No. 3:03-CV-0283-BD, 2003 WL 21436476 at \*2 (N.D. Tex. June 18, 2003) (Kaplan, Magistrate J.).

- 23 -

In his motion, Gregorio specifically identifies ten potential non-party witnesses, all of whom reside in Massachusetts. Gregorio's Motion at 3-4. The witnesses listed by Gregorio are current or former employees, directors, or officers of Excelergy. *Id*. Gregorio states that "each of the individuals could potentially provide testimony as to, *inter alia*, the present and past financial condition of Excelergy and the alleged breach of the lease with Boston Properties." *Id*. at 4. Additionally, several of the listed witnesses may provide testimony about the alleged loans made to Mahoney. *Id*.

The plaintiff's potential witnesses include (1) a resident of South Carolina who was vice president of Excelergy at the time of the execution of the Agreement; (2) a resident of California who was a member of the board of directors of Excelergy at the time of the execution of the Agreement; (3) six member/owners of FM Holdings, who are all residents of Texas; (4) FM Holdings' certified public accountant, Leo Preolo, who is a resident of Dallas, Texas; and (5) two executives, both of whom reside in Oklahoma, of the company that developed the software for FM Holdings purchased by Excelergy in the Agreement. Swenke Affidavit ¶¶ 21-31.

In its response, FM Holdings asserts that "more potentially relevant witnesses reside outside of, than in, Massachusetts." Plaintiff's Response at 17. Furthermore, FM Holdings argues that Gregorio has not sufficiently shown that the witnesses identified are key witnesses and that he has not sufficiently outlined the substance of

their testimony.  *Id*. at 17-19.  In his reply, Gregorio asserts that he need only

identify the witnesses and provide a general statement of their testimony.  Gregorio's

Reply at 7-10. Gregorio further argues that because the witnesses listed by FM

Holdings who reside in Texas are party witnesses, less weight should be given to any

inconvenience to them.  *Id*. at 9.

    While Gregorio has specifically identified potential non-party witnesses, he has

only vaguely sketched the substance of their testimony.  He has provided the court

with a broad area about which all ten witnesses may testify -- the past and future

financial condition of Excelergy and the alleged loans to Mahoney.  Gregorio's

Motion at 3-4.  Gregorio has not specified the substance of each witness's testimony;

it thus appears that testimony from all ten witnesses would be cumulative.

Accordingly, it is difficult for the court to give significant weight to Gregorio's

assertion that all of the non-party Massachusetts witnesses would be inconvenienced

if the case were to proceed in this district.

    On the other hand, those witnesses identified by FM Holdings as residents of

Texas cannot be considered true non-party witnesses.  Of the seven potential

witnesses who reside in Texas, six are member/owners of FM Holdings and the other

potential witness is FM Holdings' C.P.A.  Swenke Affidavit ¶¶ 23-29.  The

inconvenience to these seven witnesses, however, must be afforded less weight than

any non-party witnesses.  See *Travelers Indemnity*, 2002 WL 1575409 at *2.  The

remaining non-party witnesses identified by FM Holdings include two residents of Oklahoma, one resident of California, and one resident of South Carolina. *Id*. ¶¶ 21-22, 30-31.

Given the vagueness with which Gregorio describes the testimony of the non-party witnesses who reside in Massachusetts, and the fact that none of FM Holdings' non-party witnesses reside in either Massachusetts or Texas, it is difficult for this court to find one venue more convenient than the other. It would follow that neither venue would significantly minimize the cost of obtaining the presence of these witnesses.

While the court does not find either venue more convenient than another, it appears that the availability of process in Massachusetts is greater than in Texas. The non-party witnesses listed by Gregorio are within the subpoena power of the District of Massachusetts, as all of them reside in that district. Fed. R. Civ. P. 45(b)(2). However, the non-party witnesses identified by FM Holdings are beyond this court's subpoena power.[*] *Id.* The only witnesses identified by either party that may be compelled to appear before this court are the owners of FM Holdings, or its C.P.A. It is doubtful, however, that their appearance in this matter would need to be compelled. Accordingly, the availability of compulsory process weighs slightly in favor of Massachusetts.

---

[*] The closest non-party witness identified by FM Holdings resides in Oklahoma, beyond the 100 mile limit prescribed by Rule 45.

c.  <u>Factors (5) & (7) -- Relative Ease of Access to Sources</u>
<u>of Proof & Where the Events Took Place</u>

Gregorio asserts that "[m]ost or all of the financial and business records of Excelergy related to his case are located at Excelergy's headquarters in Massachusetts and/or are in the custody of Alfred Browne, III, who serves as outside legal counsel to Excelergy in Boston, Massachusetts."  Gregorio's Motion at 3; *see also* Gregorio's Reply at 6-7; Mahoney's Reply ¶ 8.  Gregorio further states that "[v]irtually all of the evidence and witnesses concerning Excelergy's alleged breach of its lease are also in Massachusetts," and "all of the documents requested by FM Holdings in its First Request For Production of Documents to Gregorio are located in Massachusetts." Gregorio's Motion at 4.

In response, FM Holdings asserts that "[it] also possesses relevant documents in Texas, including documentation relating to the injury sustained by [FM Holdings] in Texas."  Plaintiff's Response at 16.  FM Holdings further argues that "maintenance of this action in Texas will not preclude access to any sources of information located in Massachusetts, as the parties may obtain such information from Excelergy or other third parties by non-party subpoena issued by the District Court for the District of Massachusetts pursuant to Rule 45 of the Federal Rules of Civil Procedure."  *Id*. Thus, FM Holdings argues, the ease of access to sources of proof favors neither venue. *Id*. at 17.

FM Holdings does not identify which records exist in Texas. Furthermore, the records to which FM Holdings refers are in its possession, and not in the possession of a third party. Thus, those documents -- whatever they may be -- are more accessible than the documents in the possession of Excelergy, which is not a party to this case. Accordingly, the fifth factor regarding the location of the sources of proof, weighs in favor of transferring this action to Massachusetts.

Gregorio argues that the seventh factor -- where the events took place -- weighs heavily in favor of transferring this action to the District of Massachusetts. Gregorio cites the original petition, wherein FM Holdings averred that the "[d]efendants' misrepresentations and omissions occurred primarily and substantially within Massachusetts." Original Petition ¶ 40. Although the court has concluded that FM Holdings' *prima facie* case sufficed to give the court specific personal jurisdiction over Mahoney, the court agrees with Gregorio's contention that the alleged acts giving rise to this action took place primarily in Massachusetts.

### d. Factor (6) -- Calendar Congestion

The Northern District of Texas and the District of Massachusetts appear to be comparable with respect to the number of civil cases and the amount of time needed to adjudicate a civil dispute. *See* Judicial Caseload Profiles for the United States District Court for the Northern District of Massachusetts and the United States District Court for the Northern District of Texas, Exhibit 4 to Appendix in Support

of Reply Brief in Support of Defendant Stephen Gregorio to Transfer Venue at 045 -

047.  Accordingly, this factor weighs in favor of neither venue.

### e.  Factor (8) -- Interests of Justice in General

"The preference for honoring a plaintiff's choice of forum is simply that, a

preference; it is not a right." *E. I. Dupont de Nemours & Company v. Diamond Shamrock*

*Corporation*, 522 F. Supp. 588, 592 (D. Del. 1981).  Thus, although FM Holdings's

forum choice is clearly a factor to be considered in the venue transfer analysis, "in and

of itself it is neither conclusive nor determinative." *In re Horseshoe Entertainment*, 337

F.3d at 434 (citing *Garner v. Wolfinbarger*, 433 F.2d 117, 119 (5th Cir. 1970));

*Shoemake v. Union Pacific Railroad Company*, 233 F. Supp. 2d 828, 830 (E.D. Tex.

2002).  Here, FM Holding's choice of forum is given less weight because very few of

the operative facts appear to have occurred within this district.  See, *e.g., Minka*

*Lighting*, 2003 WL 21251684 at *4; *Dearing v. Sigma Chemical Company*, 1 F. Supp. 2d

660, 665 (S.D. Tex. 1998); *Quicksilver, Inc. v. Academy Corporation*, No. 3:98-CV-

1772-R, 1998 WL 874929 at *4 (N.D. Tex. Dec. 3, 1998).

Although not every factor weighs in favor of transferring this action, the

balance of the factors indicates that the District of Massachusetts is a more

appropriate and convenient forum.  Those factors that do not weigh in favor of

transferring are neutral; thus, no factor weighs against transferring this action to

Massachusetts.  Considering the reduced significance of FM Holdings' choice of

forum, and the balance of the factors weighing in favor of transfer, the court finds that this case should be transferred to the District of Massachusetts.

### III. CONCLUSION

For the reasons discussed above, Mahoney's motion to dismiss FM Holdings' claims against him is **DENIED**. However, the court finds that "on balance the litigation would more conveniently proceed and the interests of justice be better served" by transferring this action. See *Peteet*, 868 F.2d at 1436. Accordingly, Mahoney's and Gregorio's motions to transfer this action to the District of Massachusetts are **GRANTED**. This case is **TRANSFERRED**, pursuant to 28 U.S.C. § 1404(a), to the **United States District Court for the District of Massachusetts**.

**SO ORDERED**.

June 24, 2005.

_____
A. JOE FISH
CHIEF JUDGE

# CLOSED

**CIVIL NUMBER:  3:05-CV-0166-G**

**DATE:  6/24/2005**

**TRIAL:  YES _____     NO __X_____**

**United States District Court**
**Northern District of Texas**
**Office of the Clerk**

*1100 Commerce Room 14A20*
*Dallas, Texas 75242-1003*

June 28, 2005

U.S. District Court
1 Courthouse Way
Boston, Massachusetts 02210

SUBJECT: FM Holdings LLC vs. Mahoney, et al 3-05-cv-166-G

Dear Sir or Madam:

The above action has been transferred to your court pursuant to the order of A. Joe Fish dated June 24, 2005.

Enclosed is a certified copy of the transfer order and docket sheet. You may access electronically filed documents at our ECF/PACER web address: http://ecf.txnd.uscourts.gov. Any documents not available electronically are enclosed in paper format.

Please acknowledge receipt of the certified copy of the transfer order and docket sheet by returning a received stamped copy of this letter in the enclosed envelope.

Sincerely,
KAREN MITCHELL
*Clerk of Court*

By: _____

J. Baggett
*Deputy Clerk*

Enclosure

# United States District Court
## Northern District of Texas
## Office of the Clerk

*1100 Commerce Room 14A20*
*Dallas, Texas 75242-1003*

FILED

'05 JUL -1 P 1: 40

June 28, 2005

U.S. District Court
1 Courthouse Way
Boston, Massachusetts 02210

# 05 - 11400 MLW

U.S. DISTRICT COURT
DALLAS MASS

SUBJECT: FM Holdings LLC vs. Mahoney, et al 3-05-cv-166-G

Dear Sir or Madam:

The above action has been transferred to your court pursuant to the order of A. Joe Fish dated June 24, 2005.

Enclosed is a certified copy of the transfer order and docket sheet. You may access electronically filed documents at our ECF/PACER web address: http://ecf.txnd.uscourts.gov. Any documents not available electronically are enclosed in paper format.

Please acknowledge receipt of the certified copy of the transfer order and docket sheet by returning a received stamped copy of this letter in the enclosed envelope.

RECEIVED
JUL 11 2005
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

Sincerely,
KAREN MITCHELL
*Clerk of Court*

By:

J. Baggett
*Deputy Clerk*

Enclosure