UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| FM HOLDINGS, LLC f/k/a FORWARDMARKET, LLC,<br><br>Plaintiff,<br><br>v.<br><br>BILL MAHONEY and STEPHEN GREGORIO,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>) Civ. No. 05-11400-MLW<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### UNOPPOSED SECOND MOTION FOR LEAVE TO AMEND COMPLAINT

Pursuant to Fed. R. Civ. P. 15(a), plaintiff FM Holdings, LLC ("FM Holdings") hereby moves to amend its complaint to correct a scriveners' error in the Amended Complaint filed on or about June 16, 2006. Counsel for the defendants has indicated that defendants do not oppose this Motion.

On or about June 16, 2006, FM Holdings filed a Motion for Leave to Amend Complaint to add a count for violation of G.L. c. **110A § 410(a)** of the Uniform Securities Act. That motion was allowed on or about June 24, 2006. In the motion and in the Amended Complaint attached, the statutory reference was misstated as G.L. c. **410A § 110(a)**, transposing the "4" and the "1" in the chapter and section references. FM Holdings now seeks to correct that scriveners' error.

Under Fed.R.Civ.P. 15(a), a party may amend the pleadings at any time by leave of the court, and such "leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). "In the absence of any apparent or declared reason—such as undue

delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave should, as the rules require, be "freely given.'" <u>Foman v. Davis</u>, 371 U.S. 178, 1182 (1962), citing Fed.R.Civ.P. 15(a).  <u>See</u>, <u>e.g.</u>, <u>Colmenares Vivas v. Sun Alliance Ins. Co.</u>, 807 F.2d 1102, 1108 (1st Cir. 1986)(denial only when "bad faith by the moving party, unwarranted delay, or undue prejudice to the opposing party"); <u>Hayes v. New England Millwork Distributors, Inc.</u>, 602 F.2d 15, 19 (1st Cir. 1979) (amendment to pleading should be allowed notwithstanding delay if no prejudice to opposing party).

 There is no bad faith, undue delay, dilatory motive or prejudice attendant upon this Motion.  FM Holdings seeks merely to correct a technical error.  The text of the Second Amended Complaint is otherwise identical to that of the Amended Complaint.

 A copy of the proposed Second Amended Complaint is attached hereto as Exhibit "A."

Wherefore, FM Holdings, LLC respectfully requests that the Court allow this motion to amend.

        FM HOLDINGS, LLC f/k/a
        FORWARDMARKET, LLC,

        By its attorneys,

        s/Kevin S. Murphy/
        _____
        Sanford F. Remz (BBO# 538300)
        Kevin S. Murphy (BBO# 638335)
        YURKO SALVESEN & REMZ, P.C.
        One Washington Mall, 11th Floor
        Boston, MA 02108-2603
        (617) 723-6900

Dated: July 17, 2005

Certification Pursuant To Local Rule 7.1

    The above-signed certifies that the parties have conferred in good faith in attempts to resolve the issues raised herein. Such conference was held by telephone on July 17, 2006, between Kevin S. Murphy and Matthew Lyons. Mr. Lyons stated on July 17, 2006 that the defendants did not oppose this Motion.

## CERTIFICATE OF SERVICE

      I hereby certify that I am causing a true and correct copy of the foregoing Motion For Leave To Amend Complaint to be served by ECF filing and regular mail on counsel of record for the Defendants:

      Timothy C. Blank
      Michael Shin
      Matthew Lyons
      Dechert, LLP
      200 Clarendon Street, 27th Floor
      Boston, MA  02116
      (617) 728-7100

on this 17th day of July, 2006.

                                              s/Kevin S. Murphy/
                                              _____

                                              Kevin S. Murphy

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FM HOLDINGS, LLC f/k/a<br>FORWARDMARKET, LLC,<br><br>                 Plaintiff,<br><br>v.<br><br>BILL MAHONEY and<br>STEPHEN GREGORIO,<br><br>                 Defendants. | Civ. No. 05-11400-MLW |

## SECOND AMENDED COMPLAINT

Plaintiff FM Holdings, LLC, f/k/a Forwardmarket, LLC ("Plaintiff") hereby files its Second Amended Complaint against Defendants Bill Mahoney and Stephen Gregorio (collectively, "Defendants") and shows in support thereof the following:

### Parties

1. Plaintiff FM Holdings, LLC, f/k/a Forwardmarket, LLC, is a Texas limited liability company having its principal place of business in Dallas County, Texas.

2. Defendant Bill Mahoney ("Mahoney") is a Massachusetts resident having his principal residence at 179 Clifton Street, Belmont, Massachusetts 02478.

3. Defendant Stephen Gregorio ("Gregorio") is a Massachusetts resident having his principal residence at 11 Donald Road, Burlington, Massachusetts 01803-1502.

**Factual Background**

4.  Prior to January 1, 2003, Plaintiff conducted a business that, among other things, designed, developed, manufactured, marketed, distributed, licensed, and provided maintenance and support for certain software products for retail energy suppliers.

5.  Effective January 1, 2003, Plaintiff entered into an Asset Purchase Agreement (the "Agreement") with Excelergy Corporation ("Excelergy"), pursuant to which Excelergy purchased certain assets and assumed certain liabilities of Plaintiff.

6.  Plaintiff and Excelergy executed the Agreement in counterparts, with Excelergy executing the Agreement in Massachusetts and Plaintiff executing the Agreement in Dallas County, Texas.

7.  Plaintiff entered into the Agreement after several months of negotiations with Excelergy.

8.  During these negotiations, Excelergy was represented by Defendant Mahoney, the then Chief Executive Officer of Excelergy, and Defendant Gregorio, the then Chief Financial Officer of Excelergy.

9.  Upon information and belief, Defendants acted in concert and/or with the other's knowledge and approval.

10. Plaintiff entered into the Agreement based on certain representations and omissions made by Defendants during these negotiations.

11. Among their misrepresentations and omissions, Defendants represented to Plaintiff that Excelergy's 2002 Third Quarter ("Q3 2002"), which ended September 30, 2002, was the first profitable quarter in Excelergy's history. Defendants made these representations on numerous occasions throughout the negotiations and in advance of the execution of the

Agreement (in November and December 2002) in email attachments sent to Plaintiff in Dallas County, Texas, in telephone communications from Massachusetts to Plaintiff in Dallas County, Texas, and in a presentation given to Plaintiff in Massachusetts.

12. Defendants' representations regarding Excelergy's Q3 2002 financial results – a major milestone for Excelergy – were critical to (a) Plaintiff's determination that Excelergy was a viable, profitable, and healthy company and the appropriate counterparty to the transaction encompassed by the Agreement, and (b) to Plaintiff's allocation of risk regarding consideration within the Agreement.

13. After Plaintiff's execution of the Agreement, however, Excelergy's auditors (upon information and belief, Ernst & Young LLP) discovered that Excelergy needed to restate its Q3 2002 financial results. Excelergy's restated Q3 2002 financial results showed that Excelergy's Q3 2002 was in fact unprofitable: instead of a profit of approximately $202,000, as Defendants reported to Plaintiff before execution of the Agreement, Excelergy's restated Q3 2002 financial results showed a loss of approximately $262,000, indicating that Excelergy had not actually reached the critical milestone of profitability.

14. Upon information and belief, Excelergy's Q3 2002 financial results needed to be restated based on how certain revenues were booked by Defendants for Excelergy.

15. Defendants' representations to Plaintiff regarding Excelergy's Q3 2002 financial results were a critical factor that induced Plaintiff to enter into the Agreement and the primary factor in Plaintiff's willingness to take Excelergy stock and future royalty payments in lieu of only cash as its consideration under the Agreement.

16. Among their misrepresentations and omissions, Defendants also failed to disclose to Plaintiff before execution of the Agreement that Excelergy had intentionally and prematurely

terminated its lease agreement with Boston Properties, Inc. ("BP") for its offices located in Lexington, Massachusetts (the "BP lease"). Upon information and belief, Excelergy breached the BP lease in September 2002 for purely economic reasons; this contingent liability, however, was not itemized or footnoted on Excelergy's Q3 2002 financial results provided to Plaintiff or attached as Schedule 4.05 to the Agreement. Upon information and belief, for Excelergy's breach of the BP lease, BP subsequently received a judgment in the amount of approximately $2.3 million.

17. Plaintiff's lack of knowledge of Excelergy's potential liability for breach of the BP lease was a critical factor that induced Plaintiff to enter into the Agreement. At the time of breach of the BP lease, the contingent liability to Excelergy was as much as twenty percent of its available cash on hand of approximately $11 to $12 million. The impact of this liability was even more significant due to the fact that Excelergy was not yet profitable (as Defendants had represented to Plaintiff).

18. Among their misrepresentations and omissions, Defendants also made numerous representations to Plaintiff during the negotiations (in approximately November and December 2002) that, as shown by Excelergy's Q3 2002 financial results and its 2002 Fourth Quarter ("Q4 2002") operating plan, Excelergy would be "profitable going forward." In fact, Defendant specifically represented to Plaintiff in Dallas County, Texas via telephone, in response to Plaintiff's inquiries, that its Q4 2002 was "going well" and was "on target." However, before execution of the Agreement, Defendants knew, but failed to disclose to Plaintiff, that Excelergy's Q4 2002 financial results were disastrous, resulting in Excelergy losing an estimated $1.8 million for Q4 2002 instead of recording a profit as represented.

19. Defendants' misrepresentations and omissions regarding Excelergy's Q4 2002 financial results were a critical factor that induced Plaintiff to enter into the Agreement.

20. Among their misrepresentations and omissions, Defendants also did not disclose to Plaintiff that, prior to the execution of the Agreement, Excelergy had made substantial personal loans (upon information and belief, between $400,000 and $500,000) to Defendant Mahoney. Plaintiff later learned that these loans amounted to as much as four percent (4%) of Excelergy's available cash on hand.

21. Not only were these personal loans to Defendant Mahoney illustrative of bad business practices, but because these loans were supposed to have been repaid to Excelergy from future bonuses paid to Defendant Mahoney by Excelergy, upon information and belief these loans applied significant pressure on Defendant Mahoney to take shortcuts and reach short-term company milestones to trigger quarterly bonuses.

22. Thus, Plaintiff's lack of knowledge of Excelergy's personal loans to Defendant Mahoney was a critical factor that induced Plaintiff to enter into the Agreement.

23. Among their misrepresentations and omissions, Defendants further made representations to Plaintiff during negotiations (in approximately November and December 2002) regarding the value of Excelergy stock that was part of Plaintiff's compensation under the Agreement. Specifically, Defendants represented to Plaintiff that Excelergy's market value was $100 million based on its size, growth, and profitability. In fact, Defendants represented to Plaintiff that Excelergy was regularly communicating with investment bankers regarding Excelergy's market value and prospects for an initial public offering, and with outside venture capitalists regarding their interest in investing capital in Excelergy. As of today, however,

Excelergy is for sale and, upon information and belief, Excelergy's combined preferred and common stock is worthless.

24. Defendants' representations to Plaintiff regarding the value of Excelergy's stock were a critical factor that induced Plaintiff to enter into the Agreement.

25. Defendants' misrepresentations and omissions to Plaintiff occurred in Massachusetts, but were received by Plaintiff in Dallas County, Texas. Specifically, Defendants communicated their misrepresentations and omissions to Plaintiff in Massachusetts via presentations to and exchanges with Plaintiff in Massachusetts, as well as to Plaintiff in Dallas County, Texas via documents and communications sent to Plaintiff by email, telephone, and facsimile.

26. Since Plaintiff's execution of the Agreement, Defendant Mahoney has resigned from Excelergy without providing customary notice and, upon information and belief, without repaying the personal loans made to him by Excelergy, and Defendant Gregorio has been fired by Excelergy. Thus, Defendants are no longer Excelergy's Chief Executive Officer or Chief Financial Officer, respectively.

## Counts

### Count One - Negligent Misrepresentation

27. Plaintiff realleges and incorporates by reference as if fully set forth herein all allegations contained in Paragraphs 1-29.

28. Defendants' misrepresentations and omissions to Plaintiff were made in the course of Excelergy's business.

29. Defendants' misrepresentations and omissions constituted false information for purposes of inducing Plaintiff to enter into the Agreement.

30. Defendants failed to exercise reasonable care or competence in communicating their misrepresentations and omissions.

31. Plaintiff justifiably relied upon Defendants' misrepresentations and omissions, causing it to enter into the Agreement and suffer pecuniary loss as a result.

32. Plaintiff is therefore entitled to monetary damages in an amount to be determined at trial.

33. All conditions precedent, if any, necessary to maintain this cause of action have been performed or have occurred.

### Count Two - The Massachusetts Unfair Trade Practices Act (Chapter 93A)

34. Plaintiff realleges and incorporates by reference as if fully set forth herein all allegations contained in Paragraph 1-36.

35. Section 11 of Chapter 93A provides a private cause of action to a person who is engaged in business and who suffers a loss as a result of an unfair or deceptive act or practice by another person also engaged in business.

36. Chapter 93A applies to Defendants' misrepresentations and omissions regarding the sale or offering for sale of Excelergy stock.

37. Defendants' misrepresentations and omissions occurred primarily and substantially within Massachusetts.

38. As a result of Defendants' misrepresentations and omissions regarding Excelergy stock, Plaintiff is entitled to recover money damages in an amount to be determined at trial, including actual damages, and double or treble damages if Defendants' misrepresentations and omissions were willful or knowing; costs; and reasonable attorneys' fees.

39. All conditions precedent, if any, necessary to maintain this cause of action have been performed or have occurred.

**Count Three – Violation of Massachusetts Uniform Securities Act G.L. c 110A § 410(a)**

40. Plaintiff realleges and incorporates by reference as if fully set forth herein all allegations contained in Paragraph 1-39.

41. The actions as alleged above constitute the sale or offer for sale of a security in Massachusetts.

42. The actions and omissions as alleged above constitute untrue statements of material fact or omissions to state material facts in connection with the sale or offer for sale of a security.

43. Plaintiff did not know of the falsity of the statements or the omissions.

44. Defendants' actions and omissions as alleged above violate G.L. c. 110A § 410(a).

45. Plaintiff hereby tenders its shares of Excelergy Corporation stock to Defendants pursuant to G.L. c. 110A § 410(a).

46. As a result of Defendants' actions and omissions as alleged above, Plaintiff is entitled to monetary damages in an amount to be determined at trial, including interest, and attorneys' fees.

47. All conditions precedent, if any, necessary to maintain this cause of action have been performed or have occurred.

**Prayer**

Plaintiff respectfully prays that Defendants be cited to appear and answer, and that upon final hearing, Plaintiff take judgment against Defendants for damages in an amount to be determined at trial, plus prejudgment and postjudgment interest at the highest rate allowed by law, their reasonable and necessary attorneys' fees and costs of suit, and such just and further relief to which they may be entitled.

                                    Respectfully submitted,

                                    FM HOLDINGS, LLC f/k/a
                                    FORWARDMARKET, LLC,

                                    By its attorneys,

                                    s/Kevin S. Murphy/

                                    _____
                                    Sanford F. Remz (BBO# 538300)
                                    Kevin S. Murphy (BBO# 638335)
                                    YURKO SALVESEN & REMZ, P.C.
                                    One Washington Mall, 11th Floor
                                    Boston, MA 02108-2603
                                    (617) 723-6900

Dated:  June 16, 2006